## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota by its Attorney General, Keith Ellison, <br><br> Plaintiff, <br><br> v. <br><br> Fleet Farm LLC (f/k/a Mills Fleet Farm LLC), Fleet Farm Group LLC (f/k/a Mills Fleet Farm Group LLC), and Fleet Farm Wholesale Supply Co. LLC (f/k/a Fleet Wholesale Supply Co. LLC), <br><br> Defendants. | Case No.: _____ <br><br><br> **NOTICE OF REMOVAL** |

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1332(d), 1367(a), 1441(a), 1446, and 1453, Defendants Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC (collectively "Fleet Farm" or "Defendants") hereby remove the above-captioned action from the Hennepin County District Court, Minnesota, case number 27-CV-22-14473, to the United States District Court for the District of Minnesota.

As grounds for removal, Fleet Farm states:

1.      Fleet Farm accepted service of the Complaint on or about October 5, 2022.

2.      This Notice of Removal is timely because it is filed within 30 days of service. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354–56 (1999).

- 1 -

177741175

3. The Attorney General's claims arise under federal law and effectively allege that Fleet Farm violated and is liable under a federal statute, the Gun Control Act, 18 U.S.C. § 921, *et seq.*, and its implementing regulations.

4. This Court has original jurisdiction over the subject action pursuant to 28 U.S.C. § 1331 because it presents a federal question and also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this suit is effectively a class action, purportedly brought under Minnesota law, on behalf of Minnesota's residents.

5. Venue is proper.  Pursuant to 28 U.S.C. § 1441(a), this case may be removed from the Hennepin County District Court, Minnesota, to the United States District Court for the District of Minnesota, as the action is pending within the district.

<u>**NATURE OF THE ACTION**</u>

6. On October 5, 2022, the Minnesota Attorney General ("Attorney General") filed *State of Minnesota, by its Attorney General, Keith Ellison v. Fleet Farm LLC, et al.* in the Hennepin County District Court, Minnesota, case number 27-CV-22-14473, alleging claims relating to the commercial sale of firearms.

7. On or about October 5, 2022, Fleet Farm accepted service of the Complaint, attached as **Exhibit A** ("Compl.").

8. The Attorney General's claims in this action arise under federal law and effectively allege that Defendants violated and are liable under a federal statute, the Gun Control Act ("GCA"), 18 U.S.C. § 921, *et seq.*, and various federal regulations.  *See, e.g.*, Compl. ¶¶ 18–36.  In essence, this lawsuit concerns the commercial sales of firearms, and

as the Attorney General acknowledges, "[f]ederal law and regulations closely regulate commercial sales of firearms." *Id.* ¶ 18.

9.    The inherently federal scope of firearm trafficking and firearm violence is confirmed by the Attorney General's recent actions.  In the past three years, the Attorney General has joined and intervened in federal lawsuits, participated in coalitions before federal agencies, written amicus briefs in federal cases, and signed letters to the U.S. Attorney General and the President of the United States, among other actions, aimed at tightening the regulation of firearms in furtherance of addressing firearm violence throughout the nation. Declaration of Andrew W. Davis ("Davis Decl."), Ex. 1 (Washington State Office of the Attorney General press release announcing the filing of a federal lawsuit by a multi-state coalition, including Minnesota through the Attorney General, over certain federal firearm regulations); *id.*, Ex. 2 (Washington State Office of the Attorney General press release announcing a court-ordered injunction issued in the same federal lawsuit); *id.*, Ex. 3 (Office of the Attorney General for the District of Columbia press release announcing the filing of an amicus brief in a federal lawsuit by a multi-state coalition of state attorneys general, including Minnesota, arguing that the Bureau of Alcohol, Tobacco, Firearms, and Explosives must correct its interpretation of the GCA); *id.*, Ex. 4 (co-signing a Washington State Office of the Attorney General letter to President Biden, then-Acting U.S. Attorney General Monty Wilkinson, and then-Acting Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives Regina Lombardo urging for the continued federal regulation of 3D-printed firearms); *id.*, Ex. 5 (Pennsylvania Office of the Attorney General press release announcing the submission

- 3 -

of a comment on a proposed federal rule regarding firearm regulation joined by multiple state attorneys general, including Minnesota); *id.*, Ex. 6 (Minnesota Office of Attorney General press release announcing the filing of another multi-state amicus brief in support of a federal rule tightening the federal regulation of firearms).

10.     As further illustration of the federal nature of this litigation, the Complaint contends that there were 4,605 firearms recovered by local law enforcement in connection with criminal investigations in Minnesota in 2021, 4,072 in 2020, and 4,112 in 2019. Compl. ¶ 63. But the very reports that the Complaint relies on indicate—and the Complaint fails to state—that a substantial number of those firearms were traced to sales in other states: 2,704 of those weapons were traced back to retail sales in Minnesota in 2021, 2,297 in 2020, and 2,167 in 2019. *See id.* ¶ 63 (citing Bureau of Alcohol, Tobacco, Firearms, and Explosives, *Firearms Trace Data: Minnesota – 2021*, https://perma.cc/P3K5-VFA4; Bureau of Alcohol, Tobacco, Firearms, and Explosives, *Firearms Trace Data: Minnesota – 2020*, https://perma.cc/HA2A-3V3X; Bureau of Alcohol, Tobacco, Firearms, and Explosives, *Firearms Trace Data: Minnesota – 2019*, https://perma.cc/7VPN-49QG). The remaining firearms were traced to initial retail sales from, in 2021 alone, nearly every state in the nation. *Id.* Nationwide firearms tracing data show that Minnesota has consistently been among the states with the fewest crime firearms traced back to retail sales within its borders, while recovery of such firearms has risen nationally. Davis Decl. Exs. 7–14 (Bureau of Alcohol, Tobacco, Firearms, and Explosives, *Number of Firearms Sourced and Recovered in the United States and Territories*, report years 2014-2021).

- 4 -

11.     Given the federal nature of firearms sales and trafficking, it should come as no surprise that the kinds of issues identified in the Attorney General's Complaint are addressed by a comprehensive set of federal laws and regulations. Simply put, the Attorney General's Complaint is at best an attempt to enforce federal laws and regulations through a state-law theory of liability, and seeks to recoup damages for the alleged injuries to the people of Minnesota caused by alleged violation of those federal laws and regulations. The federal courts are the proper forum to adjudicate the Attorney General's claims.

## TIMELINESS OF REMOVAL

12.     Fleet Farm accepted service of the Complaint on or about October 5, 2022.

13.     In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed because it is filed within 30 days of Fleet Farm accepting service of the Complaint.  *See Murphy Bros.*, 526 U.S. at 354–56.

## PROPRIETY OF VENUE

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the Hennepin County District Court, Minnesota, where the state court action was pending prior to removal, is a state court within this federal district.

## GROUNDS FOR REMOVAL

15.     This Court has original jurisdiction over this action on multiple grounds. *First*, this Court has original jurisdiction over this case under 28 U.S.C. § 1331 because this case raises disputed and substantial federal questions arising under federal statutes and regulations, warranting the exercise of federal question jurisdiction under *Grable & Sons Metal P., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). *Second*, this Court has

- 5 -

original jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this suit is effectively a class action, brought on behalf of Minnesota's residents and consumers.[1]

## I.      Removal is Proper Because This Court has Jurisdiction Under *Grable*.

16.     Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because the Attorney General's claims present a substantial federal question under the GCA, 18 U.S.C. § 921, *et seq.*, and its implementing regulations.

17.     The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

18.     "[W]hether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the complaint. *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002) (citation omitted). Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808–09 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)); *see also, e.g.*, *Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020) (concluding federal question raised where

---

[1] If the Attorney General challenges this Court's jurisdiction, Fleet Farm reserves the right to further elaborate on these grounds beyond their specific articulations in this Notice.

- 6 -

"Plaintiffs' dependence on federal law permeates the allegations such that the [claims purportedly brought under state law] cannot be adjudicated without reliance on and explication of federal law"), *cert. denied*, 141 S. Ct. 621 (2020).

19.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *accord Grable*, 545 U.S. at 314.  "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313–14).

20.     As set forth below, all four requirements for federal jurisdiction over the Attorney General's claims are satisfied.

21.     Although the Attorney General ostensibly pleads its claims against Fleet Farm as state-law claims, it bases the underlying theory of liability on alleged violations of federal law or alleged duties arising out of federal law, specifically the GCA and related federal regulations.

22.     Where, as here, purported state law claims are premised on violations of a duty contained in a federal statute, a federal court has jurisdiction over those claims. *Wullschleger*, 953 F.3d at 521-22; *see also, e.g.*, *Bd. of Comm'rs of Se. La. Flood Protection Auth.-East v. Tenn. Gas Pipeline Co.,* 850 F.3d 714, 722-23 (5th Cir. 2017) (concluding federal-question jurisdiction existed because claims were premised on failure

to satisfy a standard of care established in federal statute), *cert. denied*, 138 S. Ct. 420.

Federal jurisdiction is established if there is no "state law grounding for the duty that the

[plaintiff] would need to establish for the Defendants to be liable," because the absence of

any such state source "means that the duty would have to be drawn from federal law."

*Tenn. Gas Pipeline Co.*, 850 F.3d at 723.  A claim premised on the breach of such a duty

"cannot be resolved without a determination whether . . . federal statutes create [such] a

duty," and therefore necessarily raises a federal question.  *Id.*; *see also, e.g.*, *Wullschleger*,

953 F.3d at 522; *Hughes v. Chevron Phillips Chem. Co.,* 478 F. App'x 167, 170–71 (5th

Cir. 2012) (concluding plaintiff's state-law claims gave rise to federal-question jurisdiction

because resolving those claims relied on a duty arising under federal law).

23.     The Attorney General's own words indicate that its claims "cannot be

adjudicated without reliance on and explication of federal law."  *Wullschleger*, 953 F.3d at

521-22 ("In the case before us, plaintiffs rely explicitly on federal law throughout their

pleadings.").  Specifically, the Attorney General pleads that:

a.    "***Federal*** laws and regulations closely regulate commercial
sales of firearms."  Compl. ¶ 18 (emphasis added).

b.    "***Federal*** firearm laws carry a purpose: to prevent crime by
keeping guns out of the hand of certain persons who have a
heightened risk of misusing firearms . . . ." *Id.* ¶ 19 (emphasis
added).

c.    "Congress designed ***federal*** law to [prevent crime] by
channeling firearms commerce through firearms dealers." *Id.*
¶ 20 (emphasis added).

d.    ***Federal*** regulation of "the distribution of firearms is intended
to prevent trafficking and reduce access to firearms by persons
prohibited from possessing them."  *Id.*

- 8 -

e.    "The *federal* Gun Control Act . . . create[s] a nationwide licensing scheme for firearm dealers." *Id.* ¶ 18 (emphasis added).

f.    "Under the *federal* Gun Control Act, "persons wishing to engage in the . . . dealing of firearms must first obtain a license and become a federal firearms licensee ('FFL'), as Fleet Farm retail stores have done." *Id.* (emphasis added).

g.    *Federal* law "categorically prohibit[s] [a person] from 'engag[ing] in the business of . . . dealing in firearms' without a *federal* firearms license." *Id.* (emphasis added) (quoting 18 U.S.C. §§ 922(a)(1), 923(a)).

h.    "Congress strengthened *federal* prohibitions on straw purchasing by . . . explicitly criminaliz[ing] straw purchasing in which any person knowingly purchases, or conspires to purchase a firearm at the request or demand of another person, knowing or having reasonable cause to believe that the other person (or the ultimate end user) is ineligible to possess the firearm or intends to use the firearm" in several illegal ways. *Id.* ¶ 23 (emphasis added) (citing 18 U.S.C. § 932(b)).

24.    The Attorney General also acknowledges that a *federal* agency, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is "charged with enforcing these dealer-license provisions." *Id.* ¶ 18.  As the agency charged with enforcing the federal GCA's dealer-license provisions, the ATF has taken a number of federal actions, including:

a.    Training gun dealers "on how to spot traffickers and straw purchasers through multiple publications and programs sponsored by ATF and the gun industry, including [ATF's] 'Don't Lie for the Other Guy' program, newsletters, reference guides, regulatory updates, and ATF seminars." *Id.* ¶ 20.

b.    Identifying and publishing "red flags that indicate a straw purchase to firearms dealers." *Id.* ¶ 25 (listing seven red flags and citing the ATF's July 2004 "Inspections of Firearms

Dealers by the Bureau of Alcohol, Tobacco, Firearms, and Explosives" report).[2]

25.     And when it comes to the specific alleged wrongful conduct at issue in this case—Fleet Farm's sale of firearms to certain individuals—the Attorney General cites exclusively federal law as providing the basis for Fleet Farm's obligations:

a.     "Before transferring a firearm to any person who is not a licensed dealer, all firearms dealers, including Fleet Farm, must conduct a background check, examine the individual's identification, and record the transaction on a firearms transaction record ('ATF Form 4473')." *Id.* ¶ 21 (citing 18 U.S.C. § 922(t)(1); 27 C.F.R. §§ 478.102, 478.124(a)).

b.     The federal ATF Form 4473 requires a firearm purchaser to verify that they are not a straw purchaser. *Id.* ¶ 22. A purchaser "violates ***federal law*** by filling out the form inaccurately." *Id.* (emphasis added).

c.     Firearms dealers are "prohibited from completing [a] sale if [they] know[] or ha[ve] reason to know that the ATF Form 4473 is inaccurate." *Id.* ¶ 26.

d.     The federal ATF Form 4473 requires "[f]irearms dealers . . . to certify . . . that it is their 'belief that it is not unlawful [ ] to sell, deliver, transport, or otherwise dispose of the firearm(s) listed on this form to the" purchaser. *Id.* (alteration in original).

e.     "The notices and instructions" on the federal ATF Form 4473 form require that the firearms dealer "determine the lawfulness of the transaction," "maintain proper records of the transaction," and "stop the transaction if there is reasonable cause to believe that the [buyer] is prohibited from receiving or possessing a firearm." *Id.* ¶ 27.

---

[2] The ATF is also empowered to, among other things, verify that firearms dealers are complying with the GCA and federal regulations, conduct inspections of firearms dealers, renew licenses, and take enforcement action against firearms dealers that are not meeting federal requirements. *See, e.g.*, 18 U.S.C. §§ 922(t)(1), 923(g); 27 C.F.R. §§ 478.45, 478.73.

177741175

f.   "*Federal law* regards the purchase of more than one handgun in a short period as a potential indication that the purchaser could be involved in trafficking." *Id.* ¶ 30 (emphasis added). Accordingly, "*federal law* requires a firearms dealer to report all transactions in which an unlicensed buyer purchases two or more handguns within five business days" on the federal ATF Form 3310.4. *Id.* (emphasis added) (citing 18 U.S.C. § 923(g)(3)(A); 27 C.F.R. § 478.126a).

g.   "Federal rules require all firearms dealers to keep a record of all transactions with unlicensed persons in an acquisition and disposition book." *Id.* ¶ 31 (citing 27 C.F.R. §§ 478.123(b), 478.125(e)). "A firearms dealer violates *federal law* by . . . failing to maintain" these required records. *Id.* (emphasis added) (citing 18 U.S.C. §§ 922(m), 924(a)(1)(A), (a)(3)).

h.   "*Federal law* also enlists dealers . . . in working to detect illegal transactions and trafficking after a firearm is used unlawfully," and ATF is responsible for maintain "The National Tracing Center," which "tracks the path of [a] firearm from its manufacturer through the distribution chain to the last retail sale transaction between a firearms dealer and purchaser." *Id.* ¶ 32 (emphasis added) (citing Bureau of Alcohol, Tobacco, Firearms, and Explosives, *Firearms Trace Data – 2019*, https://perma.cc/P8P3-BGYS).

26.   Finally, the Attorney General summarizes Fleet Farm's alleged duty by stating:

> Firearms dealers are required to know the *federal firearms laws and regulations*. ATF agents review the applicable laws and regulations with firearms dealers when they initially receive their license and during ATF audits. At the conclusion of an audit, the ATF requires firearms dealers to certify acknowledgement of *federal laws and regulations*. The acknowledgement form includes certification that the firearms dealer has reviewed laws and regulations regarding all of the following: (i) completing and maintaining firearm transaction records; (ii) conducting transfers between firearms dealers; (iii) engaging in the business of firearms dealing; and (iv) straw purchasing.

*Id.* ¶ 33 (emphasis added).

- 11 -

27.    And tellingly, the Attorney General concedes that two of the individuals Fleet Farm purportedly aided and abetted in completing straw purchases—the only two such individuals that the Complaint identifies—were charged under ***federal law***, not state law.  *See id.* ¶¶ 37, 42–44, 50, 53, 59, 97–103.

28.    Put simply, the Attorney General's purported state-law claims rest entirely on an alleged duty created under federal law and regulations.

29.    Despite its thorough description of the federal gun-regulation framework and allegations that Fleet Farm's alleged duty arises from that framework, the Attorney General purports to also identify Minnesota law as a basis for its claims against Fleet Farm.  *See id.* ¶¶ 52, 61 (citing Minn. Stat. § 624.7132, subd. 15(a)(2), (4); Minn. Stat. § 624.7133).  But the Attorney General acknowledges that the referenced Minnesota laws are entirely duplicative of their federal counterparts.  To illustrate:

    a.    The Attorney General alleges that "[f]ederal firearms laws carry a purpose: to prevent crime by keeping guns out of the hands of certain persons who have a heightened risk of misusing firearms," and that Minnesota law "***reflects this purpose***, as it establishes categories or persons who are prohibited from possessing firearms  .  .  .  and requires purchasers to obtain a Minnesota permit" to buy a qualifying firearm.  *Id.* ¶ 19 (emphasis added).  *Compare* 18 U.S.C. § 921, *et seq.*, *with* Minn. Stat. §§ 624.713, 624.7131.

    b.    The Attorney General alleges that "Congress strengthened federal prohibitions on straw purchasing by passing the Bipartisan Safer Communities Act in June 2022, which explicitly criminalizes straw purchasing," and that "Minnesota law ***echoes*** this prohibition on straw purchasing," Compl. ¶¶ 23–24 (emphasis added).  *Compare* 18 U.S.C. § 932(b), *with* Minn. Stat. § 624.7133.

- 12 -

c.   The Attorney General alleges that the Bipartisan Safer Communities Act "further prohibit[s] the transfer of a firearm if the firearms dealer knows or has reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony under federal law," and that "*[s]imilarly*, Minnesota law creates potential criminal liability for firearms dealers that have reason to believe they are selling to a straw purchaser," Compl. ¶¶ 28–29 (emphasis added). *Compare* 18 U.S.C. § 933(a)(1), *with* Minn. Stat. § 624.7132, subd. 15(a)(2).

30.   Equally telling is what the Attorney General does ***not*** allege. It does ***not*** allege that any Minnesota law or agency provides warning signs or indicators of potential straw purchases or trafficking. *See, e.g.*, Compl. ¶¶ 25, 30 (alleging list of straw purchase red flags published by ATF and that federal law "regards the purchase of more than one handgun in a short period as a potential indication that the purchaser could be involved in trafficking"). It does ***not*** allege that any Minnesota agency plays an independent role in firearm regulation separate and distinct from ATF or that any Minnesota law charges any state agency with such a role. *See, e.g.*, *id.* ¶¶ 30, 32 (alleging that firearms dealers must transmit copies of ATF forms to local law enforcement and "a law enforcement agency" may "request a trace report from ATF's National Tracing Center"). It does ***not*** allege that a state permit is required for Fleet Farm to engage in the practice of lawfully selling firearms. *See, e.g., id.,* ¶¶ 18–19 (alleging that federal law requires a firearm dealer obtain a license, "as Fleet Farm retail stores have done," and that Minnesota law requires that firearm "purchasers" obtain a "Minnesota permit," not dealers).

31.   Under the artful pleading doctrine, the Attorney General "may not defeat removal by omitting to plead necessary federal questions." *Gore v. Trans World Airlines*,

- 13 -

210 F.3d 944, 950 (8th Cir. 2000) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998)); *see also, e.g.*, *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560–61 (6th Cir. 2007) (stating that "plaintiffs may not avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims" and recommending that courts "consider whether the facts alleged in the complaint actually implicate a federal cause of action"). And here, as described above, *supra* ¶ 26, the Attorney General has not even "artfully . . . omit[ted]" to plead a federal question here.  The Attorney General summarizes Fleet Farm's alleged duty in paragraph 33 of the Complaint as related entirely to, and based exclusively on, federal law.  *See* Compl. ¶ 33.

32.    The Attorney General's theories of liability against Fleet Farm, as pleaded in the Complaint, are thus predicated on allegations that Fleet Farm breached an alleged duty that is inextricably connected to, and the existence of which is entirely dependent on, requirements imposed by federal law.

33.    The federal question presented by Plaintiffs' claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258.

34.    ***First,*** Plaintiffs' claims "necessarily raise[]" a federal question because the asserted right to relief under state law necessarily requires resolution of a federal question. *See Wullschleger*, 953 F.3d at 522 (concluding "a federal issue surrounding the state law claims" was "necessarily raised" where the state law claims "cannot be adjudicated without reliance on and explication of federal law" and "necessarily require[] the interpretation and

application of federal law"); *Tenn. Gas Pipeline Co.*, 850 F.3d at 722–23 (concluding a federal question was necessarily raised where negligence and public-nuisance claims relied on the court's interpretation of the scope of a duty of care contained in federal law); *Hughes,* 478 F. App'x at 170–71 (holding plaintiff's state law claims gave rise to federal question jurisdiction because resolution of the claims relied on duty contained in federal law); *see also, e.g.*, *North Carolina ex rel. N.C. Dep't of Admin. v. Alcoa Power Generating, Inc.,* 853 F.3d 140, 146 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 981 (2018) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (quoting *Franchise Tax Bd.*, 463 U.S. at 9)); *NASDAQ OMX Grp., Inc. v. UBS Securities, LLC,* 770 F.3d 1010, 1021–23 (2d Cir. 2014) (holding a duty derived from the Exchange Act to operate a fair and orderly market underpinned plaintiff's contract and tort claims and therefore necessarily raised a federal question); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.,* 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law or if the action requires construction of a federal statute, or at least a distinctive policy of a federal statute requires the application of federal legal principles"), *aff'd*, 987 F. App'x 156 (3rd Cir. 2004).

35.    The Attorney General's claims against Fleet Farm require the Attorney General to establish that Fleet Farm breached a duty established by, inextricably connected

177741175

to, and the existence of which is entirely dependent on federal law and regulations controlling the sale of firearms.

36.     Although plaintiffs are masters of their complaints—and "may avoid federal jurisdiction by **exclusive** reliance on state law," *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987) (emphasis added)—the Attorney General here necessarily relies on alleged violations of federal law as the basis for its purported state-law claims.[3]   The Attorney General "may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd.*, 463 U.S. at 22.

37.     In sum, despite the Attorney General's not-so-artful attempt to omit any federal question, the Complaint necessarily raises substantial federal issues—namely, whether Fleet Farm violated any alleged duty created by the GCA, related federal regulations, and ATF guidance.

38.     **Second**, this federal issue is "actually disputed" because the parties disagree as to the existence and scope of alleged duties arising under the GCA, related federal

---

[3] It is not necessary for federal jurisdiction that Fleet Farm establish that **all** of the Attorney General's counts against it raise a federal question. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 166 (1997) ("Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'"). Because this Court has original jurisdiction over at least some counts against Fleet Farm, it has supplemental jurisdiction over the Attorney General's remaining counts, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a); *accord Starkey v. Amber Enters., Inc.*, 987 F.3d 758, 765 (8th Cir. 2021). The presence of state-law claims, if any, therefore does not defeat this Court's original jurisdiction over the federal claims.

- 16 -

regulations and ATF guidance, and whether Fleet Farm violated any such duty.  Indeed, this federal issue is the "central point of dispute."  *Gunn*, 568 U.S. at 259.

39.     ***Third***, the federal issue presented by Plaintiffs' claim is "substantial."  *Id.* at 258.  The substantiality inquiry as it pertains to federal-question jurisdiction is distinct from the underlying merits of the Attorney General's claims and has no bearing on the strength of those claims because "[t]he substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole."  *Id.* at 260.  Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will undermine "the development of a uniform body of [federal] law."  *Id.* at 260–61 (quoting *Grable*, 545 U.S. at 315; *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 162 (1989)).  As the Supreme Court explained in *Grable,* "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  545 U.S. at 312; *see also, e.g.*, *Martinson v. Mahube-Otwa Cmty. Action P'ship, Inc.*, 371 F. Supp. 3d 568, 574 (D. Minn. 2019) (explaining that "[a]n issue of federal law is substantial when it is important to the federal system as a whole, not merely when it is 'significant to the particular parties in the immediate suit.'" (quoting *Gunn*, 568 U.S. at 260)).

40.     The Attorney General's theories of liability necessarily require that a court determine a question relating to the important federal issue that is the regulation of firearms.   Indeed, in enacting the GCA, Congress recognized the importance of a

nationwide approach to regulating firearms, as well as the inadequacy of state regulation of the same. *See* Gun Control Act of 1968, Pub. L. No. 90-351, § 901, 82 Stat. 225 (1968) ("The Congress hereby finds and declares . . . that only through ***adequate Federal control*** over interstate and foreign commerce in these weapons, and over all persons engaging in the businesses of importing, manufacturing, or dealing in them, can this grave problem [of firearms trafficking] be properly dealt with, and effective State and local regulation of this traffic be made possible." (emphasis added)).

41.     The GCA's text also recognizes the strong federal interest in regulating firearms in a uniform manner. For example, the GCA explains that "[s]tates, localities, and school systems find it almost impossible to handle gun-related crime by themselves." 18 U.S.C. § 922(q)(1)(H); *see also, e.g.*, *id.* at § 922(q)(1)(A) ("The Congress finds and declares that . . . crime, particularly crime involving drugs and guns, is a pervasive, ***nationwide problem***. . . ." (emphasis added)). This issue is important to "the federal system as a whole" and, as discussed above, is necessarily raised as the basis of the Attorney General's claims. *Gunn*, 568 U.S. at 260. It does not arise under federal law "in a merely hypothetical sense." *Id.* at 261. Thus, "[g]iven that . . . the plaintiffs' claims turn on the interpretation of the federal [laws and] regulations governing" the regulation of firearms "and the importance of those [laws and] regulations to the Congressional scheme, this case plainly falls within the narrow swath of cases described in *Grable*." *Anversa v. Partners Healthcare Sys., Inc.,* 835 F.3d 167, 174 n.5 (1st Cir. 2016); *see also, e.g.*, *Wullschleger*, 953 F.3d at 521–22 ("Plaintiffs' dependence on federal law permeates the

allegations such that the [state law] claims cannot be adjudicated without reliance on and explication of federal law.").

42.     The Attorney General's attempt to enforce the GCA raises a substantial federal question even if the GCA does not itself provide for a private right of action. In *Grable,* the Supreme Court held that lack of a federal cause of action does not foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[] decades of precedent," and "convert[] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable,* 545 U.S. at 317; *see also, e.g., Ranck v. Mt. Hood Cable Reg. Comm'n*, 2017 WL 1752954, at \*4–5 (D. Or. May 2, 2017) (concluding state-law claims based on violations of Cable Communications Policy Act raised substantial federal questions and satisfied *Grable* even though no private right of action existed under Act).

43.     **Fourth**, and finally, the federal issue is also capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. As the Complaint itself alleges, firearm regulation exists first and foremost at the federal level, and the alleged duties that the Attorney General asserts that Fleet Farm violated arise under that federal framework.  Resolving the Attorney General's claims in federal court would not "disrupt[] the federal-state balance approved by Congress"—it would *maintain* that balance.  *Id.*  By exercising jurisdiction, this Court would not be "upsetting the state-federal line drawn (or at least assumed) by Congress;" instead, this Court would be *upholding* that line.  *Grable*, 545 U.S. at 314.

- 19 -

44.     In sum, removal of this action is appropriate because the Attorney General's "state-law claims necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.*

## II.     Removal is Also Proper Because This Court has Original Jurisdiction Under CAFA.

45.     Additionally, and in the alternative, this Court has original jurisdiction under the Class Action Fairness Act ("CAFA"), 28, U.S.C. § 1332(d), because the Attorney General effectively seeks to represent a class of Minnesota consumers and residents, and CAFA's statutory requirements are satisfied.

46.     CAFA permits removal of: (i) any "class action"; (ii) where minimal diversity exists; (iii) at least 100 class members are represented; and (iv) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs." 28 U.S.C. § 1332(d)(1), (2), (5); *see also* 28 U.S.C. § 1453(b).  Each of these requirements is satisfied here.

47.     ***First***, this action meets CAFA's broad, statutory definition of "class action." CAFA's legislative history provides that "the definition of 'class action' is to be interpreted liberally.  Its application should not be confined solely to lawsuits that are labelled 'class actions.' . . . Generally speaking, lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions."  S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34 (formatting altered).  Notably, Congress did not exempt actions by attorneys general from CAFA.  To the contrary,

Congress rejected an amendment proposing such an exemption.  *See* 151 Cong. Rec. S1,157-65 (daily ed. Feb. 9, 2005) (statement of Sen. Mark Pryor).

48.    In the context of determining what is a "class action" for purposes of CAFA, courts do not "prioritize a complaint's use of magic words over its factual allegations." *Williams v. Emps. Mut. Cas. Co.*, 845 F.3d 891, 901 (8th Cir. 2017).  Indeed, allowing plaintiffs to avoid federal jurisdiction simply by omitting explicit references to the representative nature of their complaint "would promote the kind of procedural gaming CAFA was enacted to prevent."  *Id.*  Therefore, CAFA permits removal of a suit that is "in substance a class action," notwithstanding a plaintiff's "attempt to disguise the true nature of the suit."  *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2013).

49.    Here, the Attorney General seeks to represent a class of similarly situated persons purportedly injured by a common cause; namely, Minnesota residents and citizens injured by gun violence.  Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* § 1.1 (4th Ed. 2002) (explaining a class action is a "representative suit[] on behalf of [a] group[] of persons similarly situated"); *see also, e.g.*, *Commonwealth* v. *Chatham Dev. Co.*, 731 N.E.2d 89, 91 (Mass. 2000) ("An action brought by the Attorney General under [state consumer fraud statute] is comparable to a class action.").

50.    The Attorney General has brought this action on behalf of "the public," "Minnesotans," and Minnesota's "citizens" and "residents."  Compl. ¶¶ 1–2, 5, 8, 15, 34,

45, 51, 68–69, 71, 78, 81, 83-85, 90, 95, 102, 108–09.[4]  And the Complaint's central theory is that "the public," "Minnesotans," and Minnesota's "citizens" and "residents" have all been injured by the common cause of gun violence, allegedly caused by Fleet Farm.  *Id.* ¶¶ 52, 61–69, 78, 86, 95, 102, 109.  This is in substance a class action.

51.     ***Second***, minimal diversity exists.  Minimal diversity demands only that "any member of a class of plaintiffs" be "a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  For purposes of CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  *Id.* § (d)(10).  The putative class of Minnesota consumers includes citizens of the State of Minnesota.  Compl. ¶¶ 71, 78, 81, 83–85, 90, 95, 102, 109.  As the Complaint alleges, Defendant Fleet Farm LLC is a Delaware limited liability company with its principal place of business in Appleton, Wisconsin.  *Id.* ¶ 8.  Minimal diversity is therefore satisfied.

52.     ***Third***, at least 100 class members are represented.  As described above, the Attorney General sues on behalf of "the public," "Minnesotans," and Minnesota's "citizens" and "residents."  *Supra* ¶ 50.  There are more than 100 Minnesotans and Minnesota citizens and residents.  Thus, the requisite class size is present here.

53.     ***Fourth***, although the Complaint does not allege a specific amount in controversy, the Attorney General's allegations demonstrate that CAFA's $5,000,000 threshold is easily satisfied.  *See* 28 U.S.C. § 1332(d)(2).

---

[4] The Attorney General also purports to bring this case on behalf of Minnesota "visitors." Compl. ¶ 109.

54.     In noticing removal, a defendant need only include a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co.* v. *Owens,* 574 U.S. 81, 89 (2014); *see also Waters* v. *Ferrara Candy Co.,* 873 F.3d 633, 635 (8th Cir. 2017) ("When a defendant removes a civil action to federal court and its notice of removal includes a good faith, plausible allegation that the amount in controversy exceeds CAFA's jurisdictional threshold, the 'allegation should be accepted when not contested by the plaintiff or questioned by the court.'" (quoting *Owens,* 574 U.S. at 86)).  The amount in controversy includes the value of any claimed injunctive relief. *See, e.g.*, *James Neff Kramper Fam. Farm P'ship* v. *IBP, Inc.,* 393 F.3d 828, 833 (8th Cir. 2005) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." (quoting *Hunt* v. *Wash. State Apple Advert. Comm'n,* 432 U.S. 333, 347 (1977))).

55.     Here, the Complaint seeks various forms of injunctive relief—with the costs of that relief to be paid by Fleet Farm—including, among other things, that Fleet Farm submit to a court-appointed monitor and Fleet Farm personnel involved in the sale of firearms attend mandatory and ongoing training by a court-approved training entity. Compl., Requested Relief ¶ 2.  The Complaint also seeks judgment against Fleet Farm "for damages for injury sustained as a result of" Fleet Farm's alleged breaches of its alleged duties and for "monetary relief, including but not limited to abatement, . . . as necessary to remedy the harm and injury to the State resulting from" Fleet Farm's alleged acts and omissions.  *Id.* Requested Relief ¶¶ 4, 6.  Further, the Complaint seeks the "disgorge[ment]

of all profits from" Fleet Farm's allegedly "unlawful sales of firearms in Minnesota."  *Id.*, Requested Relief ¶ 5.

56.     Although Fleet Farm denies that the Attorney General is entitled to any relief, equitable or otherwise, Fleet Farm believes, in good faith, that the amount in controversy exceeds five million dollars ($5,000,000) exclusive of costs and interest and, therefore, satisfies CAFA's amount-in-controversy threshold.  28 U.S.C. § 1332(d)(2).

57.     Finally, CAFA's purposes are best served by litigating this case in federal court, as the statute was intended "to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications."  S. Rep. No. 109-14, at 35; *see also, e.g.*, *Dart Cherokee,* 574 U.S. at 89 ("CAFA's primary objective is to ensur[e] Federal court consideration of interstate cases of national importance." (cleaned up)); *Standard Fire Ins. Co.* v. *Knowles,* 568 U.S. 588, 595 (2013) (same).  As described more fully above, this lawsuit implicates issues of national importance.  It belongs in federal court.

58.     Accordingly, CAFA jurisdiction is proper because the Attorney General has filed what is in substance a "class action" on behalf of more than 100 purported class members, for which there is minimal diversity, and an amount in controversy in excess of $5,000,000.

## COMPLIANCE WITH OTHER REMOVAL REQUIREMENTS

59.     Based on the foregoing, this Court has original jurisdiction of this action under 28 U.S.C. §§ 1331, 1332(d), 1441(a), 1446, and 1453.  To the extent any part of the Attorney General's causes of action can be construed as non-federal, this Court has supplemental jurisdiction over them under 28 U.S.C. § 1367(a) because they form part of

- 24 -

the same case or controversy as those causes of action over which the Court has original jurisdiction.

60.     Copies of all process, pleadings, and orders from the state-court action being removed to this Court that Fleet Farm has obtained from the Hennepin County District Court and which are in the possession of Fleet Farm are attached hereto as **Exhibits A** through **L**.  Pursuant to 28 U.S.C. § 1446(a), this constitutes "a copy of all process, pleadings, and orders" received by Fleet Farm in the action.

61.     Pursuant to 28 U.S.C. § 1446(d), Fleet Farm will promptly file a copy of this Notice of Removal, as well as a Notice of Filing of this Notice of Removal attached hereto as **Exhibit M**, with the Clerk of Hennepin County District Court, and serve a copy of the same on all parties.

62.     This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11, as required by 28 U.S.C. § 1446(a).

63.     Fleet Farm reserves the right to amend or supplement this Notice of Removal. Fleet Farm also reserves all defenses and objections available under applicable law, and the filing of this Notice of Removal is subject to, and without waiver of, any such defenses or objections.

WHEREFORE, Defendants respectfully give notice that this action is hereby removed from the Hennepin County District Court to the United States District Court for the District of Minnesota.

177741175

Respectfully submitted,

Dated:  October 26, 2022

*/s/ Todd A. Noteboom*
Todd A. Noteboom (#0240047)
Andrew W. Davis (#0386634)
Sharon R. Markowitz (#0392043)
Andrew P. Leiendecker (#0399107)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
todd.noteboom@stinson.com
andrew.davis@stinson.com
sharon.markowitz@stinson.com
andrew.leiendecker@stinson.com

**Attorneys for Defendants**

177741175