UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

State of Minnesota by its Attorney General,
Keith Ellison,

        Plaintiff,

vs.

Fleet Farm LLC (f/k/a Mills Fleet Farm
LLC), Fleet Farm Group LLC (f/k/a Mills
Fleet Farm Group LLC), and Fleet Farm
Wholesale Supply Co. LLC (f/k/a Fleet
Wholesale Supply Co. LLC),

        Defendants.

Civil No: 22-CV-02694 (JRT/JFD)

**MEMORANDUM OF LAW IN
SUPPORT OF STATE OF
MINNESOTA'S MOTION
TO REMAND TO STATE COURT**

The State of Minnesota's action against Defendants must be remanded to Minnesota state court because this Court lacks subject matter jurisdiction.

On October 5, 2022, the State of Minnesota commenced this action in Minnesota state court against Defendants. The State alleges that, despite substantial warning signs, Defendants sold firearms to straw purchasers, which resulted in harm to Minnesotans. The State's Complaint asserts five causes of action for violations of Minnesota law based on Defendants' sales of firearms to straw purchasers: (1) negligence; (2) negligence per se; (3) negligent entrustment; (4) aiding and abetting; and (5) public nuisance.

On October 26, 2022, Defendants filed a Notice of Removal asserting two grounds for removal: (1) federal question jurisdiction under 28 U.S.C. § 1331 based on the argument that the State's action necessarily raises and requires the resolution of substantial questions of federal law; and (2) jurisdiction under the Class Action Fairness

Act ("CAFA"), 28 U.S.C. § 1332(d), based on the argument that the State's action is "effectively a class action." Neither of the purported grounds supports subject matter jurisdiction in federal court, and Defendants have not met their burden of establishing that there is federal jurisdiction over the State's action.

First, the State's action does not necessarily raise and require the resolution of substantial questions of federal law. Defendants' Notice of Removal asserts that the crux of the State's action is that Defendants violated and are liable under the federal Gun Control Act of 1968. But what the State *actually* alleges is that Fleet Farm violated *Minnesota* law by negligently selling firearms to straw purchasers, aiding and abetting straw purchasers, and creating a public nuisance. Further, the State's reference to both federal and state law means that Fleet Farm can be at fault—*even if federal firearms regulations permitted Fleet Farm's sales to straw purchasers*. Although some of Minnesota's claims may reference federal standards, this is insufficient for federal subject matter jurisdiction.

Second, the State's action is not a class action, and 1332(d) is inapplicable. Every court that has addressed this argument with respect to state law claims—including this Court—has rejected it. Courts uniformly hold that CAFA is not applicable to enforcement actions brought by a State in a *parens patriae* capacity under state common law or state statutes.

Accordingly, there is not federal subject matter jurisdiction over the State's action. That is why the State commenced this action in Minnesota state court, and that is why the Court must remand the State's action to state court.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 5, 2022, Attorney General Keith Ellison commenced this civil enforcement action on behalf of the State of Minnesota against Fleet Farm in Minnesota state court. The Attorney General brought this action pursuant to his *parens patriae* authority under state law.

The State's Complaint alleges that Fleet Farm repeatedly sold handguns to straw purchasers despite warning signs. Specifically, Fleet Farm sold at least 37 firearms to two straw purchasers over the course of 16 months. Minn. Compl., ECF No. 1, Ex. A, at 1, ¶ 1.

One of these guns was fired in a large-scale shootout in a St. Paul bar on October 10, 2021, that ended in the death of a 27-year-old woman and multiple injured and traumatized bystanders. Another gun Fleet Farm sold to this same straw purchaser was found by a six-year-old boy in front of his family's house on September 6, 2021, where the gun was likely discarded by suspects fleeing from another public shooting incident. At least five more firearms that Fleet Farm sold to straw purchasers have been recovered from people who are not permitted to have them. Most of the guns Fleet Farm sold to straw purchasers remain unrecovered, and these guns continue to pose an ongoing threat to the health and safety of Minnesotans. *Id*. at 1–2, ¶ 2.

The State's Complaint alleges that, as a licensed firearms dealer, Fleet Farm has a duty under Minnesota and federal law to prevent unlawful gun purchases. *Id*. at 5–11, ¶ 17–33. The State's Complaint also alleges that Fleet Farm knew or should have known it was selling to straw purchasers who were trafficking firearms. *Id*. at 11–23, ¶ 34–61. And

the State's Complaint alleges that Fleet Farm's sales to straw purchasers contributed to an increase in Minnesota gun trafficking and gun violence. *Id*. at 23–27, ¶ 62–69.

On the basis of these allegations, the State's Complaint asserts five claims against Fleet Farm under Minnesota law: (1) negligence (Count I); (2) negligence per se (Count II); (3) negligent entrustment (Count III); (4) aiding and abetting (Count IV); and (5) public nuisance (Count V). Minn. Compl. at 28–35, ¶¶ 70–113. The State's Complaint alleges only state law claims and does not assert any claims under federal law. *See generally id.* The State seeks a declaration that Fleet Farm violated Minnesota law, injunctive relief—including an injunction against further violations of Minnesota law by Fleet Farm—disgorgement of profits, damages, and other monetary relief. *Id*. at 35–37, ¶¶ 1–7.

On October 17, 2022, Defendants' counsel called the Minnesota Attorney General's Office and requested a 60-day extension to respond to the complaint. On October 18, 2022, the State responded to Defendants' counsel and agreed to double the time to respond to the complaint, such that Defendants' response to the complaint would be due by November 16, 2022.

On October 27, 2022, Defendants filed a Notice of Removal, which removed the State's action from Minnesota state court to this Court. Defendants' Notice of Removal asserts that there is federal subject matter jurisdiction over the State's action under both 28 U.S.C. § 1331 and 28 U.S.C. § 1332(d).

**ARGUMENT**

There is not subject matter jurisdiction for the State of Minnesota's action against Defendants in federal court. Thus, the State's action must be remanded to Minnesota state court.

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation omitted). Defendants may remove a civil action to federal court only if the action could have been filed originally in federal court. *See* 28 U.S.C. § 1441(a)–(b); *Gore v. Trans World Airlin*es, 210 F.3d 944, 948 (8th Cir. 2000). Defendants bear the burden of demonstrating that removal was proper, and "all doubts about federal jurisdiction must be resolved in favor of remand." *Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc*., 561 F.3d 904, 912 (8th Cir. 2009). Remand is mandatory "at any time before final judgment [if] it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

Neither of Defendants' two asserted grounds for removal supports removal. First, there is not jurisdiction under 28 U.S.C. § 1331 because the State's action does not necessarily raise and require the resolution of substantial questions of federal law. Second, there is not jurisdiction under 28 U.S.C. § 1332(d) because the State's *parens patriae* action is not a class action.

5

I.  **THE STATE'S ACTION DOES NOT ARISE UNDER FEDERAL LAW AS REQUIRED FOR FEDERAL QUESTION JURISDICTION UNDER 28 U.S.C. § 1331.**

The State of Minnesota's action does not arise "under the Constitution, laws, or treaties of the United States," as required for federal subject matter jurisdiction. 28 U.S.C. § 1331. An action can arise under federal law in two ways. *Gunn v. Minton*, 568 U.S. 251, 257 (2013). Neither way applies here.

First, an action arises under federal law when the asserted claims are brought under federal law. *Id.* Although Defendants wrongly suggest that the State asserts claims under federal law (*see, e.g.*, Def. Not. at 2, 5), Defendants do not contend that this type of federal question jurisdiction exists in this case, and it does not.

Second, when the asserted claims are brought under state law, there is a "special and small category" of actions that may be considered to arise under federal law such that a federal court may exercise jurisdiction. *Id.* at 258 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). This "slim category" of actions has four requirements that must all be met for a federal court to exercise federal question jurisdiction. Federal jurisdiction may be asserted over a state law claim only if a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 258 (citing *Grable & Sons Metal Products, Inc. v. Darue Eng. & Mf'g*,

545 U.S. 308, 313–14 (2005)). None of these four requirements is met here, let alone all of them.[1]

Defendants assert that the crux of the State's action is that Defendants violated and are liable under the federal Gun Control Act of 1968. *See, e.g.*, Def. Not. at 2 ("The Attorney General's claims arise under federal law and effectively allege that Fleet Farm violated and is liable under a federal statute, the Gun Control Act, 18 U.S.C. § 921, *et seq.*, and its implementing regulations."); *id.* at 5 ("Simply put, the Attorney General's Complaint is at best an attempt to enforce federal laws and regulations through a state-law theory of liability."). But the State's action brings only state law claims. Further, because the State's claims reference both federal and state law, Fleet Farm can be liable for selling firearms to straw purchasers despite the presence of clear red flags and warning signs—*even if federal firearms law permitted these sales*. Thus, none of the *Grable* requirements are met.

### A.    No Federal Issue Is Necessarily Raised by the State's Claims.

Some of the claims asserted in the State's action *might* relate to federal issues, but no federal issue is *necessarily* raised by these claims, as required for federal question

---

[1] Defendants emphasize one sentence from an Eighth Circuit decision stating that—in that particular case—"Plaintiffs' dependence on federal law permeates the allegations such that the antitrust and unjust enrichment claims cannot be adjudicated without reliance on and explication of federal law." *See Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020); Def. Not. at 6–7, ¶ 18; *id.* at 18, ¶ 41. But the four requirements delineated in *Gunn* remain the test for federal question jurisdiction when no asserted claims are brought under federal law. Defendants may be hinting at a preemption defense, but the well-pleaded complaint rule means that federal question jurisdiction must be presented on the face of the Complaint, not an anticipated defense. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004).

jurisdiction under *Grable* and *Gunn*. A federal issue is "necessarily raised" for subject-matter jurisdiction purposes only when "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 28. The Eighth Circuit has reiterated that "[t]his inquiry demands precision" and a removing defendant "should be able to point to the specific elements of [the plaintiff's] state law claims" requiring proof under federal law. *Cent. Iowa Power Co-op*, 561 F.3d at 914.

"A federal question is not 'necessarily' raised under [28 U.S.C.] § 1331 unless it is essential to resolving a state-law claim, meaning that '*every* legal theory supporting the claim requires the resolution of a federal issue.'" *Burrell v. Bayer Corp.*, 918 F.3d 372, 383 (4th Cir. 2019) (quoting *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004)). "[W]hen a claim is supported by alternative and independent theories, one of which does not implicate federal law, the claim does not 'arise under' federal law." *Corporan v. Wal-Mart Stores East, LP*, 194 F. Supp. 3d 1128, 1132 (D. Kan. 2016) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809–10 (1988)).

First, because the State's Complaint cites both federal and state laws with respect to the State's claims means that these claims do not *necessarily* raise a federal issue.[2] The State's three negligence claims—negligence (Count I), negligence per se (Count II), and negligent entrustment (Count III)—cite both federal and state law. *See* Minn. Compl. at 5–11, ¶¶ 17–33; *id*. at 28–31, ¶¶ 70–96. Likewise, the State's aiding and abetting claim (Count IV) also cites both federal and state law. *See, e.g.*, *id*. at 32, ¶¶ 99 ("Defendants

---

[2] Defendants concede that the State's Complaint cites state law as a basis for the State's claims against Defendants. Def. Not. of Rem. at 12, ¶ 29.

knew or reasonably should have known that the individuals identified above were committing the tort of negligence per se by engaging in straw purchasing and/or unlicensed dealings in firearms to prohibited persons in violation of state and federal law . . . ."); *see also generally id.* at 32, ¶¶ 97–103. Similarly, the State's public nuisance claim both cites federal and state law. *See generally id.* at 32–35, ¶¶ 104–113. Thus, the State could prevail on its claims against Defendants without proving any violations of federal law, rendering resolution of a question of federal law potentially unnecessary in this action.

For this reason, another decision involving state law tort claims based on selling a firearm to straw purchaser rejected the same argument Defendants make here and granted a motion to remand based on lack of federal question jurisdiction:

> In asserting federal jurisdiction under the *Gunn* test, defendants argue that plaintiffs' petition necessarily raises a federal issue because plaintiffs' negligence per se claim requires plaintiff to prove that defendants violated the federal Gun Control Act, as specifically alleged by plaintiffs in their petition. The court disagrees. To begin, plaintiffs allege in support of their negligence per se claim that defendants violated "various federal and state laws" governing the sale and marketing of firearms. While plaintiffs have not yet identified any specific state laws, the petition on its face does not "necessarily" raise a federal issue.

*Corporan v. Wal-Mart Stores East, LP*, 194 F. Supp. 3d 1128, 1131 (D. Kan. 2016). Further, unlike the *Corporan* case, the State's Complaint does cite specific state laws throughout. Minn. Compl., ECF No. 1, Ex. A, at 6, ¶ 19; *id.* at 7-8, ¶ 24; *id.* at 18-19, ¶ 52; *id.* at 22-23, ¶ 61; *id.* at 28, ¶ 75; *id.* at 29, ¶ 81; *id.* at 30, ¶ 84; *id.* at 32, ¶ 99.

Additional remand decisions involving state tort claims uniformly rule the same way. In a recent decision involving federal firearms laws, the court granted a motion to

remand and concluded that a federal issue was not necessarily raised by the plaintiffs'
negligence claims because "the interpretation or application of section 922(x) is not
necessary" for those claims. *Tisdale v. Pagourtzis*, No. 3:20-cv-140 et al., 2020 WL
7170491, at *4 (S.D. Tex. Dec. 7, 2020). Likewise, in another decision involving gun
violence, the district court granted a motion to remand and concluded that the claims
asserted under state law—including, like here, negligence, negligence per se, negligent
entrustment, aiding and abetting, and public nuisance—did not necessarily raise a federal
issue. *Daniel v. Armslist, LLC*, No. 15-C-1387, 2016 WL 660894, at *3 (E.D. Wis.
Feb. 17, 2016). Specifically, the court reasoned that, because the claims cited both federal
and state law, the plaintiff could prevail on these claims without proving a violation of
federal law. *Id*. Other decisions have reached the same conclusion. *See, e.g.*, *Abdale v.
North Shore–Long Island Jewish Health System, Inc*., No. 13–CV–1238, 2014 WL
2945741, at *4 (E.D.N.Y. June 30, 2014) (concluding that a complaint alleging
negligence per se based on violations of state and federal law does not create a
"necessary" federal-law question because the negligence per se claim relies on alternative
grounds for finding the presumption of negligence—i.e., violations of state or federal
law); *DeLuca v. Tonawanda Coke Corp*., No. 10–CV–859S, 2011 WL 3799985, at *5
(W.D.N.Y. Aug. 26, 2011) (granting motion to remand because the allegation that
defendants violated "State and Federal law" "does not create a "necessary' federal-law
question" with respect to state law claims, including negligence, negligence per se, and
nuisance).[3]

---

[3] Defendants' assertion that the Minnesota laws referenced in the State's Complaint "are

Second, the fact that the State's Complaint asserts alternate theories of negligence means that the State's action does not arise under federal law based solely on the negligence per se claim's reference to federal laws and regulations. As the *Corporan* court explained, given the plaintiffs' alternate theories of negligence, "proof that defendants violated the Gun Control Act is not necessary for plaintiffs to prevail on their negligence claim":

> In this case, plaintiffs' negligence per se "claim" is more accurately described as an alternative theory of negligence premised—like each theory in the petition—on defendants' transfer of the firearm to a straw purchaser. While plaintiffs have separated this negligence action into separate counts for purposes of their petition, the case is a state law negligence action based on the sale of the firearm to Reidle. Thus, even if plaintiffs' theory of negligence per se relies exclusively on a violation of the federal Gun Control Act, no federal subject matter jurisdiction exists because plaintiffs' reliance on the federal statute for negligence per se is not essential to the other theories of negligence set forth in the petition. In other words, proof that defendants violated the Gun Control Act is not necessary for plaintiffs to prevail on their negligence claim. Rather, a violation of the Gun Control Act is just one way plaintiffs intend to establish their state law claim that defendants were negligent and even if plaintiffs do not establish a violation of the Gun Control Act, they might still be entitled to recover under an alternative theory of negligence.

*Corporan*, 194 F. Supp. 3d at 1132; *see also Mulcahey v. Columbia Organic Chem. Co*., 29 F.3d 148, 154 (4th Cir. 1994) (reversing district court decision declining removal because federal question jurisdiction did not exist when plaintiffs relied on federal law violations in state law negligence per se claim but negligence per se was only one of the

---

entirely duplicative of their federal counterparts" (Def. Not. at 12–13, ¶ 29) is both incorrect and not the relevant requirement under *Grable*. Instead, the relevant requirement is whether a federal issue is necessarily raised, and, as shown, a federal issue is not necessarily raised because the State's allegations are based on both federal and state law.

plaintiffs' theories of recovery); *Daniel*, 2016 WL 660894, at *3 (granting motion to remand based on lack of jurisdiction when plaintiff relied on violations of Gun Control Act in support of negligence claim because that theory was only one among several negligence theories); *Abbott v. Tonawanda Coke Corp.*, No. 11–CV–549S, 2012 WL 42414, at *4 (W.D.N.Y. Jan. 9, 2012) (granting motion to remand because plaintiffs' alternative theory of negligence per se based on violations of federal law was not essential to their negligence theory).

Here, like in *Corporan* and these other cases, the State of Minnesota's negligence claims are based on alternative theories of negligence all premised on Fleet Farm's sales of firearms to straw purchasers. Not all of these negligence theories are based on violations of the Gun Control Act. For example, the ordinary negligence claim asserted in Count I alleges a general duty of care that Defendants owed and breached. Minn. Compl., ECF No. 1, Ex. A, at 28, ¶ 71 ("At all relevant times, Defendants owed the State of Minnesota and its citizens the general duty imposed on all persons and entities to not expose others to reasonably foreseeable risks of injury. Defendants had a duty to exercise reasonable care in distributing and selling firearms and to refrain from engaging in any activity creating reasonably foreseeable risks of injury to others. A breach of such duty constitutes negligence."). Moreover, as discussed above, even the negligence per se claim is based on allegations of both federal and state law. Thus, no federal issue is *necessarily* raised in this action, and there is no subject matter jurisdiction.

Defendants fail to show otherwise in their Notice of Removal. Defendants wrongly assert that, "[w]here, as here, purported state law claims are premised on

violations of a duty contained in a federal statute, a federal court has jurisdiction over those claims." Def. Not. at 7–8, ¶ 22 (citing *Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 521–22 (8th Cir. 2020); *Bd. of Comm'rs of Se. La. Flood Protection Auth.-East v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 722–23 (5th Cir. 2017)). Defendants' broad assertion is an incorrect statement of the law, as shown by the decisions discussed and cited just above. Moreover, neither of the two decisions cited by Defendants supports their broad assertion.

*Wullschleger* did not involve the same claims asserted by the State in this action, and the word "duty" does not appear anywhere in the *Wullschleger* opinion. Furthermore, and contrary to Defendants' broad assertion, *Wullschleger* recognized that "*Merrell Dow* forecloses the removal of state law claims that merely include a violation of federal law as an element of the offense, without other reliance on federal law," as is the case here. *See Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 521 (8th Cir. 2020). Finally, in *Wullschleger*, plaintiffs explicitly sought declaratory and injunctive relief related to violations of federal law in finding that federal jurisdiction was proper. 953 F.3d at 522. Here, the State's action requests a declaratory judgment that Defendants violated *Minnesota* law and that Defendants be enjoined from violating *Minnesota* law—not federal law. Minn. Compl., ECF No. 1, Ex. A, at 35–36, ¶¶ 1, 3.

Likewise, the *Board of Commissioners* decision did not hold what Defendants assert. This decision found there was federal question jurisdiction when federal law was "the exclusive basis for holding Defendants liable." *Bd. of Comm'rs of Se. La. Flood Protection Auth.-East*, 850 F.3d at 722 ("[T]he Board's complaint draws on federal law

as the exclusive basis for holding Defendants liable for some of their actions, including for the 'unauthorized alteration' of federal levee systems and for dredging and modifying lands away from their "natural state."). Here, federal law is not the exclusive basis for holding Defendants liable, as shown above.[4]

Indeed, the elements of duty and breach are fundamentally issues of Minnesota state law. Whether Defendants owed a legal duty of care is a question of state law. *See Montemayor v. Sebright Prods., Inc.*, 898 N.W.2d 623, 629 (Minn. 2017). The question of whether to impose a legal duty is "one of policy." *Erickson v. Curtis Inv. Co.*, 447 N.W.2d 165, 169 (Minn. 1989). A legal duty depends "on the relationship of the parties and the foreseeable risk involved." *Erickson*, 447 N.W.2d at 168–69. What risk is foreseeable "depends heavily on the facts and circumstances of each case." *Doe 169 v. Brandon*, 845 N.W.2d 174, 179 (Minn. 2014). Further, when the issue of foreseeability is not clear and reasonable persons might draw different conclusions based on the evidence presented, "close cases" must be submitted to a jury. *Senogles v. Carlson*, 902 N.W.2d 38, 43 (Minn. 2017). Even for negligence per se claims, the Minnesota Supreme Court provides a four-part test to determine whether a statutory violation is negligence. *See*

---

[4] Defendants incorrectly state that "[t]he Attorney General summarizes Fleet Farm's alleged duty in paragraph 33 of the Complaint as related entirely to, and based exclusively on, federal law." Def. Not. at 14, ¶ 31 (citing Compl. ¶ 33). Paragraph 33 of the State's Complaint is not a summary of Defendants' duties, as Defendants incorrectly state. Moreover, there are multiple grounds for Defendants' alleged duties and breaches, including federal law, state statutes, and the general duty imposed on all persons and entities under Minnesota law to not expose others to reasonably foreseeable risks of injury. *See, e.g.*, Minn. Compl., ECF No. 1, Ex. A, at 28, ¶ 71.

*Johnson v. Famers and Merchants State Bank of Balaton*, 320 N.W.2d 892, 897 (Minn. 1982).

In sum, Defendants misstate both the State's claims and what is required to prove the State's claims under Minnesota law. Although Defendants have identified ways in which the State's claims may be related to federal law, "it takes more than a federal element to open the 'arising under' door" to federal jurisdiction." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006)) (quoting *Grable*, 545 U.S. at 313). The federal issues that Defendants identify are not necessarily raised by the Complaint's state-law claims, and these claims do not "necessarily turn on some construction of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983).

Accordingly, no federal issue is necessarily raised by the State's claims. Because all four elements delineated in *Gunn* are required for federal jurisdiction, there is no federal jurisdiction. Moreover, none of the other three requirements to exercise federal jurisdiction is satisfied either.

**B.    No Federal Issue Is Actually Disputed in The State's Action.**

Although the State's claims cite federal issues and might (i.e., not necessarily) relate to federal issues, these federal issues are not disputed. In other words, there is not a dispute about the content of federal firearms laws and regulations with respect to these claims. Instead, Defendants will likely dispute elements of Minnesota law in defense to the State's action, including whether Defendants have a duty of care under Minnesota law and whether they breached that duty under Minnesota law.

Thus, no federal issue is actually disputed in the State's action. As a result, there is no federal subject matter jurisdiction under 28 U.S.C § 1331 for this reason alone, but neither the third nor the fourth requirement is met either.

### C.     No Federal Issue Is Substantial in the State's Action.

Even if the Court were to find that Defendants' alleged violation of the Gun Control Act is a necessary element to the State's claims in this action (which it is not), there would still not be federal question jurisdiction because the federal issue is not sufficiently substantial.

In *Gunn*, the Supreme Court explained that the "substantially" requirement under *Grable* relates to the federal system as a whole rather than the significance of a federal issue in a particular action:

> [I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim "necessarily raise[s]" a disputed federal issue, as *Grable* separately requires. The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole.

*Gunn*, 568 U.S. at 260. Substantiality factors include whether a federal issue is a pure question of law, whether the outcome will control many other cases, and whether the federal government has a strong interest in litigating the issue in a federal forum. *See MDS Inc. v. Rad Source Techs., Inc*., 720 F.3d 833, 842 (11th Cir. 2013) (summarizing Supreme Court decisions and holding that the district court did not have subject matter jurisdiction). If a federal issue raised by state law claims is not substantial to the federal system as a whole, there is no federal jurisdiction under *Grable* and *Gunn*.

16

For example, in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, the Supreme Court held there was no federal subject matter jurisdiction for state law tort claims alleging that a drug was misbranded in violation of federal law and that this violation created a rebuttable presumption of negligence and caused the injuries at issue. 478 U.S. 804, 814 (1986). The Supreme Court concluded that such allegations established only "the presence of a federal issue in a state-created cause of action" that was "insufficiently 'substantial' to confer federal-question jurisdiction." *Id*. at 810, 814.

Later, in *Grable*, the Supreme Court affirmed the continuing vitality of *Merrell Dow*, explaining that federal-question jurisdiction over state-law tort claims based on violations of federal standards would disrupt the division of responsibilities between federal and state courts. *Grable*, 545 U.S. at 318–19. Specifically, the Supreme Court relied upon the nature of the action as a state tort claim—in which federal statutes and regulations are commonly given negligence per se effect—and the lack of a federal private right of action in determining that adjudicating the action in federal court would flout Congress's intended division of responsibilities between federal and state courts. *Grable*, 545 U.S. at 318–319 (citing *Merrell Dow*, 478 U.S. at 811–12).

Like the state-law allegations in *Merrell Dow* that related to violations of the Food, Drug, and Cosmetic Act, the State's allegations here that relate to violations of the Gun Control Act are among the "garden-variety tort claims" that are simply unimportant to the federal system as a whole, especially given the lack of a private cause of action in the Gun Control Act. *Tisdale*, 2020 WL 7170491, at *5–6; *see also Mays v. City of Flint*, 871 F.3d 437, 449–50 (6th Cir. 2017) (citing *Merrell Dow*, 478 U.S. at 814, and *Grable*,

545 U.S. at 318–19); *Corporan*, 194 F. Supp. 3d at 1133–34 ("The Gun Control Act referenced by plaintiffs in their petition does not create a private, federal cause of action and the petition reveals a fact-bound, private dispute between parties with no direct interest by the United States. In such circumstances, the exercise of federal question jurisdiction is not appropriate."). The State's action does not include any federal issues that are pure questions of law that would control other federal cases. Instead, this action is the type of "fact-bound and situation-specific" action that is "poles apart" from the federal tax question in *Grable*. *Empire Healthchoice* 547 U.S. at 700–01. Nor does the federal government have any interest, let alone a substantial interest, in litigating federal issues that may be raised in this action in a federal forum.

Accordingly, no federal issue is substantial in the State's action in the relevant sense—that is, substantial to the federal system as a whole. As a result, there is no federal subject matter jurisdiction under 28 U.S.C § 1331.

### D.   Adjudication of the State's Claims in Federal Court Would Disrupt the Federal-State Balance.

Even if all the other three requirements for jurisdiction under *Grable* were met, which they are not, the fourth requirement is not met. A federal court cannot "entertain" the State's claims against Defendants in this action "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *See Gunn*, 568 U.S. at 258 (2013).

In *Grable*, the Supreme Court explained that, as in *Merrell Dow*, exercising federal jurisdiction over state-law tort claims based on violations of federal standards, in

the absence of a federal right of action, would be enormously disruptive of the proper

division of responsibility as between federal and state courts:

> The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings. A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts. Expressing concern over the "increased volume of federal litigation," and noting the importance of adhering to "legislative intent," *Merrell Dow* thought it improbable that the Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating federal law "solely because the violation of the federal statute is said to [create] a rebuttable presumption [of negligence]... under state law."

*Grable*, 545 U.S. at 318–19 (citations omitted). The Supreme Court also emphasized the

number of state cases that would end up in federal court without such limitations on

federal question jurisdiction:

> [E]xercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases.

*Id*. at 318.

The same consideration of the practical consequences to federal courts' caseloads

that drove the *Merrell Dow* decision apply in this case. In sum, the State's action

asserting Minnesota state law claims belongs in state court so as to not "materially affect,

or threaten to affect, the normal currents of litigation." *Grable*, 545 U.S. at 319.

The exercise of federal jurisdiction would be particularly perilous here because

this action was brought by the State in Minnesota state court in order to protect public

health and welfare. Comity requires that federal courts refrain from "snatch[ing] cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21 n.22. There is no such clear rule here, and the State's action must be remanded.

This is especially true because the Attorney General is acting on behalf of the State of Minnesota to vindicate sovereign state rights pursuant to his *parens patriae* authority. The Attorney General is the chief law enforcement officer of the State, having statutory and "extensive common-law powers" to bring actions and proceedings as deemed necessary "for the enforcement of the laws of the state, the preservation of order, and the protection of public rights." *Slezak v. Ousdigian*, 110 N.W.2d 1, 5 (Minn. 1961). This is a traditional *parens patriae* action asserting state law tort and public nuisance claims to protect the public's health and safety. Accordingly, the State's action is exactly the type of action that would disrupt the federal-state balance if litigated in federal court.

## II.   THE STATE'S ACTION IS NOT A CLASS ACTION AS REQUIRED FOR FEDERAL JURISDICTION UNDER 28 U.S.C. § 1332(D).

Despite uniform caselaw to the contrary, Defendants assert that there is federal jurisdiction for the State's action because it "is effectively a class action." Not. of Rem. at 2, ¶ 4; *id*. at 5–6, ¶ 15. This Court has already heard and rejected the identical argument made by the defendants in another *parens patriae* action brought by the State of Minnesota. *See State of Minnesota v. American Petroleum Institute, Exxon Mobil Corp. et al*., Civil No. 20-1636, slip. op. at 30–32 (D. Minn. March 31, 2021) ("Because neither the Eighth Circuit nor any other court has applied CAFA to a State Attorney General's

representative action in this way, and because Defendants have not demonstrated that this action was brought under or would meet the standards of either Rule 23 or any state rule for class certification, CAFA is not applicable here.").

Like in the *Exxon* action, Defendants assert there is jurisdiction over the State's action under CAFA, 28 U.S.C. § 1453(b) because the State's action is "effectively" a class action. Def. Not. at 20, ¶ 45. But an identical argument was made, and rejected, in *Exxon,* and Defendants have done nothing to distinguish the present action to show why a different result is warranted here. For the same reasons the Court rejected the class action argument in Exxon, the Court should reject the argument here.

CAFA expands federal diversity jurisdiction to allow for minimal diversity in class actions in which more than $5 million is in controversy and there are greater than 100 members of proposed plaintiff classes. 28 U.S.C. § 1332(d)(2)(5), (6); *Pirozzi v. Massage Envy Franchising, Inc*., 938 F.3d 981, 983 (8th Cir. 2019). By its plain language, federal jurisdiction under CAFA is limited to "civil action[s] filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332 (d)(1)(B).

In the Eighth Circuit, as the Court explained in *Exxon*, an action can be interpreted as a class action subject to CAFA even where Plaintiff has omitted reference to the authorizing procedural rule or statute, *but only where the state class action rule actually governs the action*. *See Williams v. Emp'rs Mut. Cas. Co*., 845 F.3d 891, 901 (8th Cir. 2017). The State did not bring this action under Rule 23 or a "similar State statute or rule

of judicial procedure," and Defendants have identified no state statute or procedural rule

that would classify or govern a suit of this nature as a class action.[5] Because neither the

Eighth Circuit nor any other court has applied CAFA to a State Attorney General's

representative action in this way, and because Defendants have not demonstrated that the

State's action was brought under or would meet the standards of either Rule 23 or any

state rule for class certification, CAFA is not applicable here.

Further, every court to have addressed the application of CAFA to actions brought

by a State in *parens patriae* under state law has found that CAFA is not applicable.[6] This

---

[5] The decisions Defendants cite do not support their argument that the present action should, or even could, be subject to CAFA. *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740 (7th Cir. 2013), and *Williams*, 845 F.3d 891 are decisions in which representatives of certified classes attempted to make separate claims against the same defendants as individuals. In both of those decisions, courts found that omitting reference to the existing class or applicable state statute did not allow the defendant to avoid CAFA jurisdiction. Neither of these cases dealt with an action brought by an Attorney General on behalf of a state where no class action has been claimed or certified. *Dart Cherokee Basin Op. Co. LLC v. Owens* addressed a case filed as a class action in state court, where the dispute was about whether the amount in controversy met the $5 million CAFA threshold. 574 U.S. 81, 85 (2014). Further, *Commonwealth v. Chatham Dev. Co.*, 731 N.E.2d 89, 91 (Mass. 2000), simply comments that an Attorney General action is "comparable" to a class action—not that an Attorney General action is effectively a class action—and this decision did not address jurisdiction under CAFA.

[6] *See Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 164 (2014) (*parens patriae* suit is not a "mass action" under CAFA); *Hawaii ex rel. Louie v. HSBC Bank Nevada*, 761 F.3d 1027, 1040 (9th Cir. 2014) ("Failure to request class status or its equivalent is fatal to CAFA jurisdiction."); *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 212–20 (2d Cir. 2013) (determining *parens patriae* action was not "filed under" state statute or rule of judicial procedure "similar" to federal class action rule, and thus action did not qualify as a "class action" within the meaning of CAFA); *Mississippi ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796, 799 (5th Cir. 2012), *rev'd on other grounds*, 571 U.S. 161 (2014) (holding *parens patriae* action to enforce state law did not justify removal under CAFA); *LG Display Co. v. Madigan*, 665 F.3d 768, 770–72 (7th Cir. 2011) (holding that *parens patriae* case brought by Attorney General was brought

is because, as Minnesota courts have long recognized, when the Attorney General brings an action pursuant to his *parens patriae* authority, such an action is distinct from an action brought on behalf of specific individuals. *See Curtis v. Altria*, 813 N.W.2d 891, 898–99 (Minn. 2012) (explaining that, although a private litigant may bring a lawsuit under Minnesota Statutes section 8.31, subdivision 3a, and seek class certification, the Attorney General may bring a lawsuit on behalf of the State and its citizens without obtaining class certification); *State ex rel. Hatch v. Cross Country Bank, Inc*., 703 N.W.2d 562, 569–70 (Minn. App. 2005) (holding that, because an action brought by the Attorney General was not brought on behalf of specific victims, an arbitration agreement to which the victims were parties did not apply); *see also Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 600–01 (1982) (explaining that a *parens patriae* suit "does not involve the States stepping in to represent the interests of particular citizens who, for whatever reason, cannot represent themselves.").

Minnesota courts have also recognized that, when the Attorney General seeks relief under the pare*ns patriae* doctrine, the Attorney General is asserting a quasi-

---

under state anti-trust law that did not impose any of the familiar Rule 23 constraints); *Washington v. Chimei Innolux Corp*., 659 F.3d 842, 847–49 (9th Cir. 2011) ("*[P]arens patriae* suits filed by state Attorneys General may not be removed to federal court because the suits are not 'class actions' within the plain meaning of CAFA."); *W. Va. ex rel. McGraw v. CVS Pharmacy, Inc*., 646 F.3d 169, 174–78 (4th Cir. 2011) (concluding that a West Virginia *parens patriae* action could not properly be removed to federal court under CAFA); *Massachusetts v. Exxon Mobil Corp*., 462 F. Supp. 3d 31, 48–51 (D. Mass. 2020) (finding CAFA does not apply to *parens patriae* Attorney General actions); *Town of Randolph v. Purdue Pharma L.P*., No. 19-10813, 2019 WL 2394253, at *4 (D. Mass. June 6, 2019) (finding no federal jurisdiction under CAFA in parens patriae opioid action); *City of Galax, Virginia v. Purdue Pharma, L.P*., No. 18-617, 2019 WL 653010, at *5–6 (W.D. Va. Feb. 14, 2019) (same).

sovereign, public interest of the state—namely, protecting the economic health of Minnesota's citizens—that surpasses the interests of individual citizens. *See, e.g.*, *State v. Minnesota Sch. of Bus., Inc.*, 935 N.W.2d 124, 138–39 (Minn. 2019) ("The United States District Court for the District of Minnesota and the Minnesota Court of Appeals also have correctly recognized the State's common law *parens patriae* authority to seek restitution for Minnesotans based on its quasi-sovereign interest in their economic health."); *State ex rel. Hatch v. Cross Country Bank, Inc.*, 703 N.W.2d 562, 569–70 (Minn. App. 2005) ("The state . . . is pursuing its claim, not with the purpose of obtaining relief for particular victims, but to vindicate a "quasi-sovereign" interest: protecting the privacy of its citizens. A parens patriae claim is founded on the state's assertion of a "quasi-sovereign" interest that grows out of, but surpasses, the interests of individual citizens."); *State by Humphrey v. Standard Oil Co.*, 568 F. Supp. 556, 563 (D. Minn. 1983) (stating that "the parens patriae doctrine allows a state to maintain a legal action where state citizens have been harmed, where the state maintains a quasi-sovereign interest . . . . A state maintains a quasi-sovereign interest . . . where the health and well-being of its residents is affected") (citation omitted). Accordingly, in addition to this Court's analysis and decision in the *Exxon* case, which fully applies to this case, Minnesota law shows that a *parens patriae* action by the Attorney General on behalf of the State is not an action on behalf of individual citizens. Thus, this *parens patriae* action cannot be certified as a class action, and there is not jurisdiction under CAFA here.

In sum, Defendants' argument for federal jurisdiction under CAFA lacks any basis in the law and demonstrates a serious misunderstanding of the States' claims. There is no CAFA jurisdiction, and this action must be remanded.

## CONCLUSION

For the reasons set forth above, the State of Minnesota's action should be remanded to Minnesota state court because there is no federal subject matter jurisdiction.

Dated:  November 7, 2022                    KEITH ELLISON
                                           Attorney General
                                           State of Minnesota

                                           **/s/ Katherine A. Moerke**
                                           KATHERINE A. MOERKE (#0312277)
                                           Assistant Attorney General
                                           JAMES W. CANADAY (#030234X)
                                           Deputy Attorney General
                                           JASON T. PLEGGENKUHLE (#0391772)
                                           Assistant Attorney General
                                           ERIC J. MALONEY (#0396326)
                                           Assistant Attorney General

                                           445 Minnesota Street, Suite 1200
                                           St. Paul, Minnesota 55101-2130
                                           (651) 757-1021
                                           eric.maloney@ag.state.mn.us
                                           james.canaday@ag.state.mn.us
                                           jason.pleggenkuhle@ag.state.mn.us
                                           katherine.moerke@ag.state.mn.us
                                           *Attorneys for State of Minnesota*