# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota by its Attorney General, Keith Ellison,<br><br>           Plaintiff,<br><br>    v.<br><br>Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC,<br><br>           Defendants. | Case No.:  22-cv-02694 (JRT/JFD) |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO DISMISS</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

   I.    Fleet Farm is subject to a comprehensive federal scheme regulating commercial firearm sales ........................................................................ 3

   II.   The Attorney General blames Fleet Farm for the criminal acts of individuals who purchased or stole firearms from third parties ........................ 6

LEGAL STANDARD ........................................................................................... 9

ARGUMENT .................................................................................................... 9

   I.    The PLCAA bars the negligence, public-nuisance, aiding-and-abetting, and negligent-entrustment claims ...................................................... 9

        A.   The PLCAA preempts the negligence and public-nuisance claims ......... 11

        B.   The PLCAA preempts the aiding-and-abetting claim ............................. 12

        C.   The PLCAA preempts the Attorney General's negligent-entrustment theory ................................................................................ 12

   II.   The negligence claim fails because the complaint does not allege a viable common-law duty of care .......................................................... 14

   III.  The negligence per se and aiding-and-abetting claims fail because the underlying statutes neither create private causes of action nor protect particular classes of individuals ...................................................... 17

        A.   Negligence per se may not be premised on statutes that do not create a private cause of action ........................................................ 17

        B.   Negligence per se may not be premised on statutes that do not protect a particular class of persons ........................................................ 18

        C.   Because the negligence per se claim fails, the aiding-and-abetting claim also fails ........................................................................... 20

   IV.  The aiding-and-abetting claim fails because the complaint contains no plausible allegations that Fleet Farm actually knew about Horton's or Elwood's negligence or substantially assisted them ........................... 21

   V.   The Attorney General has failed to allege negligent entrustment plausibly ........................................................................................ 23

   VI.  The public-nuisance claim fails because the complaint has not alleged Fleet Farm contributed to an actionable nuisance ............................... 26

   VII. All claims fail because the complaint fails to plead a viable proximate-causation theory ............................................................................. 29

CONCLUSION .................................................................................................. 32

## TABLE OF AUTHORITIES

**Cases**                                                                         **Page(s)**

*Alexander v. 1328 Uptown, Inc.*,
  2020 WL 1644246 (D. Minn. Apr. 2, 2020) ............................................................. 18

*Anthony v. Cattle Nat. Bank & Tr. Co.*,
  684 F.3d 738 (8th Cir. 2012) .................................................................................. 17

*Appletree Square 1 Ltd. P'ship v. W.R. Grace & Co.*,
  815 F. Supp. 1266 (D. Minn. 1993) ........................................................................ 28

*Ashley Cnty. v. Pfizer, Inc.*,
  552 F.3d 659 (8th Cir. 2009) ................................................................... 15, 20, 25, 31

*Axelson v. Williamson*,
  324 N.W.2d 241 (Minn. 1982) ...................................................................... 24, 25, 29

*Bachman's v. Florists' Mut. Ins. Co.*,
  525 F. Supp. 3d 984 (D. Minn. 2021) ...................................................................... 4

*In re Bayou Hedge Funds Inv. Litig.*,
  472 F. Supp. 2d 528 (S.D.N.Y. 2007) ..................................................................... 20

*Becker v. Mayo Found.*,
  737 N.W.2d 200 (Minn. 2007) ................................................................................ 18

*Bernethy v. Walt Failor's, Inc.*,
  653 P.2d 280 (Wash. 1982) ..................................................................................... 16

*Bjerke v. Johnson*,
  727 N.W.2d 183 (Minn. Ct. App. 2007) .................................................................. 16

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
  273 F.3d 536 (3d Cir. 2001) .................................................................................... 27

*Chairez v. AW Distributing, Inc.*,
  2021 WL 1600494 (D. Minn. Apr. 23, 2021) .......................................................... 29

*City of Chicago v. Beretta U.S.A. Corp.*,
  821 N.E.2d 1099 (Ill. 2004) .................................................................................... 27

*City of New York v. Beretta U.S.A. Corp.*,
  524 F.3d 384 (2d Cir. 2008) ............................................................................. 11, 12

*City of W. St. Paul v. Krengel*,
  768 N.W.2d 352 (Minn. 2009) .................................................................. 28

*Corporan v. Wal-Mart Stores E., LP*,
  2016 WL 3881341 (D. Kan. July 18, 2016) ............................................... 17

*Corrie v. Caterpillar, Inc.*,
  403 F. Supp. 2d 1019 (W.D. Wash. 2005) .................................................. 15

*CSM Equities, LLC v. Woodland Vill. Invs. Ltd.*,
  2016 WL 281131 (Minn. Ct. App. Jan. 25, 2016) ...................................... 21

*Doe 169 v. Brandon*,
  845 N.W.2d 174 (Minn. 2014) .................................................................. 29

*Dornquast v. Dornquast*,
  2018 WL 1145716 (Minn. Ct. App. Mar. 5, 2018) ..................................... 24

*E.S. Robbins Corp. v. Eastman Chem. Co.*,
  912 F. Supp. 1476 (N.D. Ala. 1995) .......................................................... 28

*Elder v. Allstate Ins. Co.*,
  341 F. Supp. 2d 1095 (D. Minn. 2004) ...................................................... 17

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*,
  2022 WL 4597526 (D. Mass. Sept. 30, 2022) ...................................... 11, 12

*Fenrich v. The Blake Sch.*,
  920 N.W.2d 195 (Minn. 2018) .............................................................. 14, 16

*Ferring B.V. v. Allergan, Inc.*,
  932 F. Supp. 2d 493 (S.D.N.Y. 2013) ....................................................... 22

*Gelman Scis., Inc. v. Dow Chem. Co.*,
  508 N.W.2d 142 (Mich. Ct. App. 1993) .................................................... 28

*Gradjelick v. Hance*,
  646 N.W.2d 225 (Minn. 2002) .................................................................. 29

*Green Plains Otter Tail, LLC v. Pro-Environmental, Inc.*,
  953 F.3d 541 (8th Cir. 2020) ..................................................................... 29

*Hack v. Johnson*,
  275 N.W. 381 (Minn. 1937) ................................................................. 30, 31

*Hamilton v. Beretta U.S.A. Corp.*,
  750 N.E.2d 1055 (N.Y. 2001) ........................................................................ 25

*Haynes v. Abdelwahed*,
  1997 WL 406644 (Minn. Ct. App. July 22, 1997) ...................................... 19

*Hilligoss v. Cross Cos.*,
  228 N.W.2d 585 (Minn. 1975) ...................................................................... 30

*State ex rel. Hunter v. Johnson & Johnson*,
  499 P.3d 719 (Okla. 2021) ............................................................................ 27

*Ileto v. Glock, Inc.*,
  565 F.3d 1126 (9th Cir. 2009) ...................................................................... 11

*Islam v. Creative Tours Micronesia, Inc.*,
  36 F.3d 1102, 1994 WL 477543 (9th Cir. 1994) ........................................ 25

*Jefferies v. Dist. of Columbia*,
  916 F. Supp. 2d 42 (D.D.C. 2013) .............................................................. 11

*Johnson v. Johnson*,
  611 N.W.2d 823 (Minn. Ct. App. 2000) ............................................... 23, 25

*Kamal v. Baker Tilly US, LLP*,
  2022 WL 1050053 (D. Minn. Apr. 7, 2022) ............................................... 22

*Knight v. Wal-Mart Stores, Inc.*,
  889 F. Supp. 1532 (S.D. Ga. 1995) ............................................................. 16

*Kronzer v. First Nat'l Bank of Minneapolis*,
  235 N.W.2d 187 (Minn. 1975) ...................................................................... 19

*Labzda v. Purdue Pharma, L.P.*,
  292 F. Supp. 2d 1346 (S.D. Fla. 2003) ....................................................... 16

*In re Lead Paint Litig.*,
  924 A.2d 484 (N.J. 2007) .............................................................................. 28

*Lind v. Slowinski*,
  450 N.W.2d 353 (Minn. Ct. App. 1990) ..................................................... 24

*Lubbers v. Anderson*,
  539 N.W.2d 398 (Minn. 1995) ...................................................................... 29

*McDonough v. Anoka Cnty.*,
  799 F.3d 931 (8th Cir. 2015) ................................................ 9

*Meyer v. Lindala*,
  675 N.W.2d 635 (Minn. Ct. App. 2004) ................................ 17

*Moody v. Hecht*,
  1994 WL 233609 (Minn. Ct. App. May 31, 1994) ................. 16

*In re Netgain Tech., LLC*,
  2022 WL 1810606 (D. Minn. June 2, 2022) ........................... 14

*Palmer v. Cnty. of Anoka*,
  200 F. Supp. 3d 842 (D. Minn. 2016) ..................................... 3

*Pavlides v. Niles Gun Show, Inc.*,
  637 N.E.2d 404 (Ohio Ct. App. 1994) ................................... 16

*Perez v. Costco Wholesale Corp.*,
  2015 WL 1034141 (S.D. Cal. Mar. 10, 2015) ....................... 23

*Phillips v. Lucky Gunner, LLC*,
  84 F. Supp. 3d 1216 (D. Colo. 2015) .................................... 26

*RSM, Inc. v. Herbert*,
  466 F.3d 316 (4th Cir. 2006) ................................................ 19

*Matter of S.W.T.'s Welfare*, 277 N.W.2d 507 (Minn. 1979) ............................................. 20

*Shawano Gun & Loan v. Hughes*,
  2010 WL 3062847 (E.D. Wis. Aug. 2, 2010) ........................ 19

*Slezak v. Ousdigian*,
  110 N.W.2d 1 (Minn. 1961) .................................................. 18

*Smits as Tr. for Short v. Park Nicollet Health Servs.*,
  979 N.W.2d 436 (Minn. 2022) .............................................. 14

*Soto v. Bushmaster Firearms Int'l, LLC*,
  2016 WL 8115354 (Conn. Super. Ct. Oct. 14, 2016) ......... 13, 14

*Soto v. Bushmaster Firearms Int'l, LLC*,
  202 A.3d 262 (Conn. 2019) ............................................. 13, 25

*Soto v. Shealey*,
  331 F. Supp. 3d 879 (D. Minn. 2018) .................................... 24

*People ex rel. Spitzer v. Sturm, Ruger & Co.*,
  309 A.D.2d 91 (N.Y. App. Div. 2003) ....................................................... 27

*State v. Back*,
  775 N.W.2d 866 (Minn. 2009) .................................................................. 16

*State v. Red Owl Stores, Inc.*,
  92 N.W.2d 103 (Minn. 1958) .................................................................... 26

*Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.*,
  984 F.2d 915 (8th Cir. 1993) .............................................................. 27, 28

*In re TMJ Implants Prods. Liability Litig.*,
  880 F. Supp. 1311 (D. Minn. 1995) .......................................................... 29

*United States v. Plummer Excavating, Inc.*,
  65 F. Supp. 2d 1013 (D. Minn. 1999) ....................................................... 13

*Valentine v. On Target, Inc.*,
  727 A.2d 947 (Md. Ct. App. 1999) ........................................................... 15

*Varga v. U.S. Bank Nat'l Ass'n*,
  952 F. Supp. 2d 850 (D. Minn. 2013) ....................................................... 22

*Vind v. McGuire*,
  2013 WL 6152312 (Minn. Ct. App. Nov. 25, 2013) .................................. 17

*Wilson v. Ark. Dep't of Human Servs.*,
  850 F.3d 368 (8th Cir. 2017) ..................................................................... 9

*Young v. Bryco Arms*,
  821 N.E.2d 1087 (Ill. 2004) ............................................................... 30, 31

*Zayed v. Associated Bank, N.A.*,
  779 F.3d 727 (8th Cir. 2015) ............................................... 20, 21, 22, 23

*Zayed v. Associated Bank, N.A.*,
  913 F.3d 709 (8th Cir. 2019) ............................................... 20, 21, 22, 23

## **Statutes**

15 U.S.C. § 7901 ........................................................................................ 9, 10

15 U.S.C. § 7902 ............................................................................................ 10

15 U.S.C. § 7903 .................................................................... 10, 11, 12, 13

18 U.S.C. § 921 ................................................................................................ 10

18 U.S.C. § 922 ........................................................................................... *passim*

18 U.S.C. § 923 ......................................................................................... 3, 4, 5

Cal. Penal Code § 27535 .................................................................................. 1

Minn. Stat. § 609.01 ...................................................................................... 19

Minn. Stat. § 624.7131 .................................................................................... 6

Minn. Stat. § 624.7132 ................................................................................ 1, 18

Minn. Stat. § 624.7133 .................................................................................. 18

**<u>Other Authorities</u>**

27 C.F.R. § 478.21 ........................................................................................ 18

27 C.F.R. § 478.23 .......................................................................................... 4

27 C.F.R. § 478.25a ........................................................................................ 4

27 C.F.R. §§ 478.41-.60 .................................................................................. 3

27 C.F.R. § 478.45 .......................................................................................... 3

27 C.F.R. § 478.49 .......................................................................................... 3

27 C.F.R. § 478.50 .......................................................................................... 6

27 C.F.R. § 478.73 .......................................................................................... 3

27 C.F.R. § 478.99 .......................................................................................... 3

27 C.F.R. § 478.102 ..................................................................................... 4, 5

27 C.F.R. § 478.121 ........................................................................................ 4

27 C.F.R. § 478.123 ........................................................................................ 4

27 C.F.R. § 478.124 .................................................................................... 4, 18

27 C.F.R. § 478.125 ........................................................................................ 4

27 C.F.R. § 478.126a .................................................................................... 5, 6

28 C.F.R. § 25.6 ................................................................................................. 5

58 Am. Jur. 2d Nuisances § 66 ........................................................................ 29

65 C.J.S. Negligence § 203 ............................................................................. 30

H.R. Rep. No. 109-124 (2005) ........................................................................ 13

Restatement (Second) of Torts § 286 .............................................................. 19

Restatement (Second) of Torts § 288 .............................................................. 19

Restatement (Second) of Torts § 390 ................................................... 24, 25, 26

*United States v. Elwood*, Case No. 0:21-cr-00147, ECF Doc. 97
(D. Minn. Dec. 28, 2021) ............................................................................. 7

*United States v. Elwood*, Case No. 0:21-cv-00147, ECF Doc. 33
(D. Minn. June 24, 2021) ............................................................................ 8

*United States v. Horton*, Case No. 0:22-cr-00006, ECF Doc. 1-1
(D. Minn. Oct. 18, 2021) ............................................................................. 7

## INTRODUCTION

The parties agree on one thing: gun violence is a serious problem in this country. To address this, the federal government has enacted a comprehensive system regulating commercial firearm sales. This system requires customers pass a comprehensive background check and, when necessary, obtain a state-issued permit. 18 U.S.C. § 922(s)-(t). Some states go further, limiting the number of firearms an individual may purchase in a particular time period. *E.g.*, Cal. Penal Code § 27535. But not Minnesota. Here, neither the Legislature nor the Executive has enacted or promulgated such restrictions—there are no "limit[s] or restrict[ions] [on] the number of [firearms] a person may acquire," Minn. Stat. § 624.7132, subd. 9. Instead, the Attorney General is now attempting to use litigation to arbitrarily target one law-abiding retailer, contending it has failed to comply with standards the State of Minnesota and Attorney General declined to enact. This approach to addressing gun violence in Minnesota is deeply flawed and not legally viable.

Defendants Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC (together, "Fleet Farm"), operate seventeen stores in Minnesota, all of which hold federal firearm licenses. A comprehensive federal scheme regulates the stores' firearm sales, and the stores ***never*** sell firearms without federal authorization. Despite this, the Attorney General asserts numerous claims against Fleet Farm that are barred by federal law and call for vast expansions of tort law. This ill-disguised attempt at legislation by litigation should be dismissed with prejudice.

To start, the Attorney General's negligence, public-nuisance, aiding-and-abetting, and negligent-entrustment claims are preempted by the Protection of Lawful Commerce in Arms Act ("PLCAA"), which broadly prohibits claims against firearm dealers unless they fall within narrow statutory exceptions.  Preemption aside, the Attorney General has not stated plausible claims.  Minnesota law does not recognize any general duty owed by firearm sellers to the public when selling firearms to competent adults.  Without such a duty, the negligence claim fails.  Similarly, the negligence per se and aiding-and-abetting claims fail because negligence per se cannot be premised on statutes that do not create private causes of action and do not protect a particular class of individuals.

Nor does the Attorney General allege plausibly that Fleet Farm had actual knowledge purchasers would negligently and illegally resell their firearms, which is fatal to the aiding-and-abetting "claim" (if such a claim exists).  Likewise, the negligent-entrustment claim fails because the complaint does not allege Fleet Farm sold firearms to "incompetent" or "inexperienced" persons or had common-law duties to investigate purchasers beyond those mandated by federal law.  And the public-nuisance claim fails because the complaint has not alleged plausibly that Fleet Farm interfered with a viable "public right" or controlled the instrumentality causing the alleged nuisance.  Lastly, all claims fail because multiple superseding events establish that, as a matter of law, Fleet Farm did not proximately cause the asserted injuries.

## BACKGROUND[1]

### I.    Fleet Farm is subject to a comprehensive federal scheme regulating commercial firearm sales.

This lawsuit arises from Fleet Farm's commercial firearm sales, which the federal government "closely regulate[s]."   ECF Doc. 1-1 ("Compl.") ¶ 18.   Fleet Farm has seventeen Minnesota stores, each of which is a separate federal firearm licensee ("FFL"). *Id.* ¶ 13.   As FFLs, the stores are subject to myriad federal laws, regulations, and agency guidelines governing firearm sales.

In 1968, the federal Gun Control Act ("GCA") created "a nationwide licensing scheme for firearm dealers."   *Id.* ¶ 18.   The GCA and its implementing regulations are enforced by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").   Under the GCA, persons wishing to sell firearms must obtain a federal license.   27 C.F.R. §§ 478.41-.60.   Federal law imposes numerous licensing prerequisites, and licensees may not sell firearms to certain individuals, including felons, unlawful controlled-substance users, and persons subject to certain restraining orders.   18 U.S.C. §§ 922(d), 923; 27 C.F.R. § 478.99.   FFL licenses are subject to renewal, and ATF may revoke licenses and impose fines if an FFL willfully violates the GCA or its implementing regulations.   18 U.S.C. § 923(b), (e)-(f); 27 C.F.R. §§ 478.45, 478.49, 478.73.   FFLs must maintain records relating to firearm sales, and ATF may conduct warrant inspections for suspected GCA violations   and   warrantless   inspections   for   compliance   purposes,   including   to

---

[1] Fleet Farm disputes many of the complaint's factual allegations, but assumes their truth for purposes of this motion. *See Palmer v. Cnty. of Anoka*, 200 F. Supp. 3d 842, 847 (D. Minn. 2016).

- 3 -

investigate third-party criminal conduct and trace firearms used in crimes.  18 U.S.C. § 923(g)(1)(A)-(C); 27 C.F.R. §§ 478.23, 478.25a, 478.121.

Before completing any "over-the-counter transfer," FFLs must require customers to complete ATF Form 4473s, which FFLs submit to the federal "national instant criminal background check system" ("NICS").  18 U.S.C. § 922(t)(1); 27 C.F.R. §§ 478.102, 478.124; Nov. 23, 2022 Decl. of Andrew W. Davis ("Davis Decl."), Ex. A ("Form 4473") at 1[2]; Compl. ¶¶ 21-22.  Among other things, Form 4473s require customers provide background information and certify they are "the actual transferee/buyer of the firearm(s)" and are not felons, under indictment for a felony, unlawful controlled-substance users, or in the United States illegally.  Form 4473 at 1; Compl. ¶ 22.  Form 4473 also requires FFLs describe the firearm(s) being purchased, state whether NICS authorized the sale, and affirm their belief that "it is not unlawful … to sell … the firearm(s) listed on th[e] form."  Form 4473 at 3; Compl. ¶ 26.  FFLs must also "determine the lawfulness of the transaction and maintain proper records of the transaction," and "stop the transaction if there is reasonable cause to believe that the [customer] is prohibited from receiving or possessing a firearm."  Form 4473 at 3; Compl. ¶ 27.  After selling a firearm, FFLs must permanently retain the Form 4473, and if a transaction is denied or cancelled by NICS (or not completed for any reason), the form must be retained for five years.  Form 4473 at 3; 27 C.F.R. §§ 478.123(b), 478.125(e); Compl. ¶ 31.

---

[2] ATF Forms 3310.4 and 4473 are referenced in the complaint, Compl. ¶¶ 22, 30, so are properly considered at this stage.  *Bachman's v. Florists' Mut. Ins. Co.*, 525 F. Supp. 3d 984, 986 (D. Minn. 2021).

As discussed, FFLs must submit Form 4473s to NICS before completing a sale. 18 U.S.C. § 922(t)(1)(A). NICS advises FFLs if there is "any information [indicating] that the purchaser is prohibited by law from possessing or receiving a firearm" by sending one of four responses: "Proceed," "Denied," "Cancelled," or "Delayed." Form 4473 at 6. "Proceed" authorizes the transaction immediately, and "Denied" or "Cancelled" prohibits the transaction. *Id.*; 28 C.F.R. § 25.6(c)(1)(iv)(A), (C). If NICS sends a "Delayed" response, an FFL may not sell the firearm "unless 3 business days have elapsed and … NICS … has not advised the [FFL] that the [customer]'s receipt or possession of the firearm would be in violation of law."[3] Form 4473 at 6; 27 C.F.R. § 478.102(a)(2)(ii); 28 C.F.R. § 25.6(c)(1)(iv)(B).

GCA regulations also require FFLs submit a Form 3310.4 to report selling to a customer "at one time or during any five consecutive business days, two or more pistols, or revolvers, or any combination of pistols and revolvers totaling two or more." 27 C.F.R. § 478.126a; *see also* Compl. ¶ 30; Davis Decl., Ex. B ("Form 3310.4"). Form 3310.4s are generated automatically, and FFLs must submit them to ATF (with a second copy to local law enforcement) and retain one copy for their records. 18 U.S.C. § 923(g)(3)(A); 27 C.F.R. § 478.126a; Compl. ¶ 30. FFLs may proceed with a sale even if a Form 3310.4 is generated—GCA regulations contemplate FFLs selling multiple firearms to an individual

---

[3] In this litigation, Fleet Farm will demonstrate its policy is to not sell a firearm until it has received a "Proceed" message from NICS, even if more than three business days have passed since submitting the Form 4473.

during a single transaction or within a five-business-day period.  27 C.F.R. § 478.126a;

Form 3310.4 at 2.[4]

## II.   The Attorney General blames Fleet Farm for the criminal acts of individuals who purchased or stole firearms from third parties.

Pursuant to federal law, Fleet Farm stores hold separate federal firearm licenses.

Compl. ¶¶ 13, 34-36; *see also* 27 C.F.R. § 478.50 (explaining "separate license[s] must be

obtained for each location" at which firearms are sold).  As FFLs, Fleet Farm stores require

customers to complete Form 4473s, and will not complete a transaction until authorized by

NICS.  *Id.* ¶ 21.  When appropriate and required, Fleet Farm stores also submit Form

3310.4s.  *Id.* ¶ 30.  The complaint does not allege Fleet Farm stores ever failed to require

customers to complete Form 4473s, failed to submit Form 4473s, or sold firearms without

federal approval.  In fact, the complaint says ***nothing*** about Fleet Farm's firearm policies—

which, if this case proceeds, Fleet Farm will demonstrate go well beyond federal

requirements.  Instead, the complaint focuses on third-party criminal conduct, and seeks to

assign liability to Fleet Farm for unforeseeable, intentional third-party misconduct.

***First***, the complaint asserts Jerome Horton purchased thirty-three firearms from

FFLs throughout the Twin Cities—including twenty-four firearms from four Fleet Farm

stores.  *Id.* ¶¶ 37-38.  Horton sometimes purchased multiple firearms in a single transaction,

and once used his phone to "take photographs or video" while purchasing a firearm.  *Id.*

¶¶ 38-39, 42.  Horton resold some of these firearms to "criminals and prohibited persons,"

---

[4] Additionally, Minnesota requires persons hold either a permit to carry or a transferee permit to purchase a handgun.  *See* Minn. Stat. § 624.7131.

and had several stolen from him.  *Id.* ¶¶ 37, 44.  The complaint attributes some of these resold or stolen firearms to criminal acts by third parties with no direct connection to Fleet Farm.  *Id.* ¶¶ 44-49.  Horton was charged in federal court, and pleaded guilty to "making false statements in the course of purchasing a firearm."  *Id.* ¶ 50.  The complaint does not allege Fleet Farm ever failed to submit a Form 4473 for Horton's firearm purchases.  It does not allege NICS ever "delayed," "cancelled," or "denied" his purchases.  It does not allege Fleet Farm failed to submit a required Form 3310.4 in connection with Horton's purchases.  And despite alleging Horton straw purchased firearms from multiple FFLs, *id.* ¶ 50,[5] only Fleet Farm is blamed for harms caused by third-party criminals who later acquired Horton's firearms.

**Second**, the complaint contends Sarah Elwood and co-conspirators purchased ninety-seven firearms from nine FFLs in Minnesota.  *Id.* ¶ 53.  One of these sellers was a Fleet Farm store, which allegedly sold Elwood thirteen firearms over a twelve-month period.  *Id.* ¶¶ 53-54.  Elwood sometimes purchased multiple firearms on the same day, and most of the purchased firearms were small-caliber handguns.  *Id.* ¶ 57.  Elwood was charged in federal court for "dealing in firearms without a license, conspiracy to make false statements during purchase of firearms, and making false statements during purchase of firearms," and pleaded guilty to "making false statements during the purchase of firearms" from Bill's Gun Shop and Range.  *Id.* ¶ 59; *see also United States v. Elwood*, Case No.

---

[5] Public records indicate Horton also purchased firearms from DKMags Inc. and Frontiersman Sports.  *United States v. Horton*, Case No. 0:22-cr-00006, ECF Doc. 1-1 ¶¶ 9, 12 (D. Minn. Oct. 18, 2021).

0:21-cr-00147, ECF Doc. 97 at 1-2 (D. Minn. Dec. 28, 2021).   As with Horton, the complaint does not allege Fleet Farm ever failed to submit a Form 4473 or required Form 3310.4 for Elwood's purchases, or that NICS ever "delayed," "cancelled," or "denied" her purchases.   And despite being just one of nine sellers from whom Elwood purchased firearms,[6] the complaint blames only Fleet Farm for harms caused by the third-party criminals who came to possess Elwood's firearms.[7]

The complaint contains *zero* allegations regarding Fleet Farm's policies for selling firearms—it does not allege Fleet Farm ever failed to submit required federal forms or ever failed to obtain federal approval for a firearm sale, and it proffers no allegations regarding sales to individuals other than Horton and Elwood.[8]

These sparse allegations provide the basis for the Attorney General's negligence, negligence per se, negligent-entrustment, aiding-and-abetting, and public-nuisance claims. Compl. ¶¶ 70-113.

---

[6] Of the ninety-seven firearms Elwood purchased, *eighty-four* were purchased from non-Fleet Farm FFLs, including: two Bill's Gun Shop and Range stores; DKMags, Inc.; Capra's Sporting Goods; The Modern Sportsman; Metro Pawn and Gun; Realm Firearms; and Sportsman's Guide.  *United States v. Elwood*, Case No. 0:21-cv-00147, ECF Doc. 33 ¶ 10 (D. Minn. June 24, 2021).

[7] The only criminal act the State connects to Fleet Farm's sales to Elwood is one incident where an individual was charged with "using [a firearm] to threaten someone in public." Compl. ¶ 60.

[8] The complaint also alleges gun trafficking and gun violence rose in Minnesota during the COVID-19 pandemic.  Compl. ¶¶ 62-69.  This section contains no allegations attributing increases in gun trafficking and violence to Fleet Farm policies or conduct.

<u>L</u><u>EGAL</u> <u>S</u><u>TANDARD</u>

On a motion to dismiss, this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor.  *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015).  But this Court should not accept as true "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, or legal conclusions couched as factual allegations."  *Id.* (cleaned up).  To survive a motion to dismiss, a complaint's allegations must be plausible, meaning the pleaded facts must create a "reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  The plausibility standard is not met if there are "lawful, obvious alternative explanations for the alleged conduct."  *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 373 (8th Cir. 2017) (cleaned up).

<u>A</u><u>RGUMENT</u>

## I.   The PLCAA bars the negligence, public-nuisance, aiding-and-abetting, and negligent-entrustment claims.

As a threshold matter, federal law bars four of the Attorney General's claims.  The PLCAA is a federal statute enacted for the purpose of "prohibit[ing] causes of action against … [firearm] dealers … for the harm solely caused by the criminal or unlawful misuse of firearm products … by others."  15 U.S.C. § 7901(b)(1).  In enacting the statute, Congress found, as relevant here, that:

> (5) Businesses in the United States that are engaged in interstate and foreign commerce through the lawful … sale to the public of firearms … are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products ….[;] [and]
>
> (6) The possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system, erodes public

confidence in [the] Nation's laws, threatens the diminution of a basic constitutional right and civil liberty, [and] invites the disassembly and destabilization of other industries and economic sectors lawfully competing in the free enterprise system of the United States ….

*Id.*, subd. (a)(5)-(6).

Accordingly, the PLCAA provides "[a] qualified civil liability action may not be brought in any Federal or State court." *Id.* § 7902. "Qualified civil liability action" is defined as any civil action "brought by any person against a … seller of a qualified product[9] … for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party." *Id.* § 7903(5)(A). As narrow exceptions to this blanket prohibition, the PLCAA authorizes six claims, including claims: (1) "brought against a seller for negligent entrustment or negligence per se"; and (2) "in which a … seller of a [firearm] knowingly violated a State or Federal statute ***applicable to the sale … of the [firearm]***, and the violation was a proximate cause of the harm for which relief is sought," known as the "predicate exception." *Id.*, subd. (5)(A)(ii)-(iii) (emphasis added).

Here, the PLCAA preempts the negligence, public-nuisance, aiding-and-abetting, and negligent-entrustment claims.

---

[9] "Qualified product" is defined as "a firearm," including "any weapon" that can "expel a projectile by the action of an explosive." 15 U.S.C. § 7903(4); 18 U.S.C. § 921(a)(3)(A).

**A.      The PLCAA preempts the negligence and public-nuisance claims.**

The Attorney General's negligence claim asserts "multiple instances of negligence under Minnesota law," premised on a common-law liability theory.  Compl. ¶¶ 71-73, 79.  The PLCAA preempts this claim because it does not assert a "knowing[] violat[ion] [of] a State or Federal statute" specifically applicable to firearm sales.[10]  15 U.S.C. § 7903(5)(A)(iii); *see also, e.g.*, *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1138 (9th Cir. 2009) (concluding word "applicable" in the predicate exception did not include general common-law or statutory tort claims); *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 404 (2d Cir. 2008) (holding predicate exception is limited to claims premised on statutes "regulat[ing] the firearms industry").  Numerous courts have thus concluded the PLCAA preempts common-law negligence claims.  *E.g.*, *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 2022 WL 4597526, at *16 (D. Mass. Sept. 30, 2022); *Jefferies v. Dist. of Columbia*, 916 F. Supp. 2d 42, 46-47 (D.D.C. 2013).

The PLCAA likewise bars the public-nuisance claim.  The claim is based only on Minnesota's criminal public-nuisance statute's definition of public nuisance as "a condition which unreasonably annoys, injures or endangers the safety, health, morals, comfort, or repose of any considerable number of members of the public."  Compl. ¶ 105 (quoting Minn. Stat. § 609.74).  This statute does not reference firearms, and is a general tort statute not sufficiently "applicable to the sale or marketing of [firearms]" to constitute

---

[10] To the extent the negligence claim is premised on statutory violations, *see* Compl. ¶¶ 74-75, the complaint does not allege plausibly that Fleet Farm committed a "knowing" violation.  *Infra* Sections III.B & IV.

a predicate statute.  15 U.S.C. § 7903(5)(A)(iii); *see also, e.g.*, *City of New York*, 524 F.3d at 399-400; *Estados Unidos Mexicanos*, 2022 WL 4597526, at *16.

### B.      The PLCAA preempts the aiding-and-abetting claim.

The PLCAA bars the Attorney General's aiding-and-abetting claim.  Setting aside that aiding-and-abetting is not a standalone claim under Minnesota law, *infra* pp. 20-21, the PLCAA only expressly authorizes aiding-and-abetting claims premised on a seller: (1) knowingly aiding or abetting a person in making a false statement relating to the sale of a firearm, or (2) knowing or having reasonable cause to believe "the actual buyer of the [firearm] was prohibited from possessing or receiving a firearm … under [18 U.S.C. § 922(g) or (n)]."  15 U.S.C. § 7903(5)(A)(iii)(I)-(II).  Neither provision applies.  The complaint does not allege plausibly that Fleet Farm had ***actual knowledge*** of false statements made in connection with firearm purchases.  *Infra* Section IV.  And it does not allege Horton or Elwood were prohibited from purchasing firearms under 18 U.S.C. § 922(g) or (n), *see* Compl. ¶¶ 52, 61, 99, or that Fleet Farm actually knew they were planning to resell firearms to individuals prohibited from purchasing firearms under those provisions.

### C.      The PLCAA preempts the Attorney General's negligent-entrustment theory.

Lastly, the PLCAA preempts the Attorney General's negligent-entrustment theory. The PLCAA carves out "negligent entrustment" from the prohibition on civil actions, but limits "negligent entrustment" to "supplying … a [firearm] by a seller ***for use by*** another person when the seller knows, or reasonably should know, the person to whom the

- 12 -

[firearm] is supplied *is likely to, and does, use* the [firearm] in a manner involving unreasonable risk of physical injury to the person or others."  15 U.S.C. § 7903(5)(B) (emphases added).  The term "use" in the statutory definition of "negligent entrustment" is ambiguous, and legislative history shows it does not include reselling.  *E.g.*, *United States v. Plummer Excavating, Inc.*, 65 F. Supp. 2d 1013, 1015 (D. Minn. 1999) (explaining courts may use legislative history to interpret an ambiguous statute).  History shows Congress understood the PLCAA's negligent-entrustment exception did not apply where a dealer "recklessly sell[s] to gun traffickers knowing (or with reason to know) that the trafficker intends to resell the guns to criminals" or if "the persons to whom [the dealer] sold the guns did not commit the underlying criminal acts."  *See Soto v. Bushmaster Firearms Int'l, LLC*, 2016 WL 8115354, at *14 (Conn. Super. Ct. Oct. 14, 2016) (quoting H.R. Rep. No. 107-727, pt. 2, at 51 (2002); H.R. Rep. No. 109-124, at 144 (2005)).[11]  The exception only covers claims arising from "initial transfers completed between the original seller and purchaser of a gun"—not "secondary transfers even when the original seller is aware of the purchaser's intent to resell to a particular individual."  *Id.* (quoting H.R. Rep. No. 107-727, pt. 2, at 51 (2002)); *see also* H.R. Rep. No. 109-124, at 143 (2005) (explaining exception "cover[s] only cases where the dealer knows or should know that the person who is buying the gun is likely to misuse it and the buyer *does*, in fact, misuse it," and the PLCAA preempts claims based on "dealers negligently selling guns to traffickers who, in turn,

---

[11] The Connecticut Supreme Court affirmed *Soto* because plaintiffs failed to state a negligent-entrustment claim under state law, and did not consider whether the PLCAA preempted the claim.  *See Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 280-83 (Conn. 2019).

supply criminals"). Put simply, "Congress contemplated negligent entrustment to include only direct entrustments to a shooter." *Soto*, 2016 WL 8115354, at *15. Because the complaint alleges Fleet Farm sold firearms to third parties who, in turn, sold or transferred them again before they were used to commit crimes, the negligent-entrustment theory does not meet the PLCAA's definition of "negligent entrustment" and is preempted.

## II.   The negligence claim fails because the complaint does not allege a viable common-law duty of care.

The existence of a duty is a legal question. *Smits as Tr. for Short v. Park Nicollet Health Servs.*, 979 N.W.2d 436, 445 (Minn. 2022). To determine whether a duty exists, courts consider: "(1) the foreseeability of harm to the plaintiff, (2) the connection between the defendant's conduct and the injury suffered, (3) the moral blame attached to the defendant's conduct, (4) the policy of preventing future harm, and (5) the burden to the defendant and community of imposing a duty to exercise care with resulting liability for breach." *In re Netgain Tech., LLC*, 2022 WL 1810606, at *11 (D. Minn. June 2, 2022) (citation omitted). "[A] person does not owe a duty of care to another if harm is caused by a third party's conduct" unless there is a "special relationship" between plaintiff and defendant or "defendant's own conduct creates a foreseeable risk of injury to a foreseeable plaintiff." *Fenrich v. The Blake Sch.*, 920 N.W.2d 195, 201-02 (Minn. 2018) (cleaned up).

To support its negligence claim, the Attorney General appears to allege Fleet Farm breached two duties: (1) a general duty, seemingly owed to all persons in Minnesota, "to exercise reasonable care in distributing and selling firearms"; and (2) a duty to protect

against harm caused by third parties who unlawfully used or possessed firearms initially purchased from Fleet Farm.  Compl. ¶¶ 71-73.  Neither is viable.

The complaint does not allege plausibly that Fleet Farm owes a duty of care to all Minnesotans in connection with firearm sales beyond that contemplated by federal law and the negligent-entrustment doctrine.  Fleet Farm is unaware of any Minnesota caselaw imposing common-law duties on firearm sellers in connection with lawful sales to competent adults, let alone a duty to somehow ensure third-party non-customers do not later obtain those firearms and use them to commit crimes.  *E.g.*, *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 673 (8th Cir. 2009) ("[I]t is not the role of a federal court to expand state law in ways not foreshadowed by state precedent." (cleaned up)).  Other courts have rejected such a broad duty.  For example, in *Valentine v. On Target, Inc.*, the Maryland Court of Appeals declined to impose a duty of care on firearm sellers based on it being "generally foreseeable that guns are … used in the commission of crimes."  727 A.2d 947, 950-51 (Md. Ct. App. 1999).  The court explained "[o]ne cannot be expected to owe a duty to the world at large to protect it against the actions of third parties," and imposing that duty "would [place] a tremendous burden on [sellers] while providing only a hypothetical benefit to the public at best."  *Id.* at 953; *cf. Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019, 1030-31 (W.D. Wash. 2005) (concluding neither causation nor duty were present where claims were premised on the "lawful sale of a non-defective product that a customer intentionally used to injure a third party").[12]

---

[12] To be clear, Fleet Farm does not contend it never owes a duty of care to certain members of the public.  Rather, Minnesota common law does not impose any such general duty

The complaint also fails to allege Fleet Farm's own conduct—commercial firearm sales—"create[d] a foreseeable risk of injury to a foreseeable plaintiff."  *Fenrich*, 920 N.W.2d at 202.  Here, the question turns on "whether the specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility."  *Id.* at 205 (cleaned up).  Minnesota, like other jurisdictions, recognizes "there is generally no duty to protect strangers from the criminal actions of a third party."  *State v. Back*, 775 N.W.2d 866, 870 (Minn. 2009); *accord Bjerke v. Johnson*, 727 N.W.2d 183, 189 (Minn. Ct. App. 2007); *Moody v. Hecht*, 1994 WL 233609, at *1 (Minn. Ct. App. May 31, 1994).  As discussed below, *infra* Section VII, the complaint makes clear any alleged harm suffered by the State and its residents occurred because of third parties intentionally misusing lawful products to commit crimes.  *Cf. Labzda v. Purdue Pharma, L.P.*, 292 F. Supp. 2d 1346, 1353-55 (S.D. Fla. 2003) (concluding drug manufacturer did not owe duty to police use of lawful medication).  These actions constitute superseding events as a matter of law and, along with being fatal to any proximate-causation argument, mean as a matter of law Fleet Farm cannot be held liable for the intentional or negligent actions of third parties.

---

outside the negligent-entrustment context.  *E.g.*, *Knight v. Wal-Mart Stores, Inc.*, 889 F. Supp. 1532, 1537-39 (S.D. Ga. 1995) (declining to recognize duty "where a reasonable salesperson would have no idea that the purchaser has previously been institutionalized or adjudicated mentally incompetent," but recognizing duty to not sell firearms to "mentally defective person[s]"); *Pavlides v. Niles Gun Show, Inc.*, 637 N.E.2d 404, 409 (Ohio Ct. App. 1994) (recognizing duty to prevent minors from entering gun show displaying unsecured firearms); *Bernethy v. Walt Failor's, Inc.*, 653 P.2d 280, 283 (Wash. 1982) (limiting "general duty" to "not furnish[ing] a dangerous instrumentality such as a gun to an incompetent," including persons "incompetent due to intoxication").

- 16 -

**III.   The negligence per se and aiding-and-abetting claims fail because the underlying statutes neither create private causes of action nor protect particular classes of individuals.**

The negligence per se claim fails because the underlying statutes do not create private causes of action, and because they protect the general public as a whole. Because the aiding-and-abetting "claim" is premised exclusively on third parties' purported negligent violations of these same statutes, that claim also fails.

**A.   Negligence per se may not be premised on statutes that do not create a private cause of action.**

A statutory violation cannot provide the predicate for a negligence per se claim if that underlying statute does not create a private cause of action. *E.g.*, *Elder v. Allstate Ins. Co.*, 341 F. Supp. 2d 1095, 1100-02 (D. Minn. 2004) (explaining because negligence per se "does not create new causes of action, but only recognizes a legislatively created standard of care to be exercised where there is an underlying common law duty," statutes lacking private causes of action are "not amenable to a negligence per se claim"); *accord Vind v. McGuire*, 2013 WL 6152312, at *4 (Minn. Ct. App. Nov. 25, 2013); *Meyer v. Lindala*, 675 N.W.2d 635, 641 (Minn. Ct. App. 2004).

Here, the negligence per se claim is premised on statutes that do not create private causes of action. The touchstone for determining if a statute confers private causes of action is congressional intent. *Anthony v. Cattle Nat. Bank & Tr. Co.*, 684 F.3d 738, 739 (8th Cir. 2012). The GCA does not contemplate private causes of action—it is a criminal statute providing criminal penalties for violations, *see* 18 U.S.C. §§ 922-24, and does not contemplate private actions against the firearm industry. *E.g.*, *Corporan v. Wal-Mart*

- 17 -

*Stores E., LP*, 2016 WL 3881341, at *5 (D. Kan. July 18, 2016) (holding GCA does not provide basis for negligence per se claim).[13]   Likewise, the cited Minnesota statutes establish criminal penalties—not private civil remedies.  *See* Minn. Stat. § 624.7132, subd. 15(a)(2), (4) (making statutory violations gross misdemeanors); *id.* § 624.7133 (same); *see also Becker v. Mayo Found.*, 737 N.W.2d 200, 208 (Minn. 2007) (concluding statute did not create private cause of action in part because "the legislature chose to impose criminal, but not civil, penalties").

Because the statutes invoked by the Attorney General do not contemplate private causes of action, the negligence per se claim should be dismissed.[14]

## B.  Negligence per se may not be premised on statutes that do not protect a particular class of persons.

Additionally, Minnesota law recognizes "[n]ot all statutes … create a tort duty of care," and follows the Restatement to determine if a statutory violation constitutes negligence per se.  *Alexander v. 1328 Uptown, Inc.*, 2020 WL 1644246, at *8-9 (D. Minn. Apr. 2, 2020).  A negligence per se claim must be premised on a statute "whose purpose is … exclusively or in part: (a) to protect a class of persons which includes the one whose interest is invaded, and (b) to protect the particular interest which is invaded, and (c) to protect that interest against the kind of harm which has resulted, and (d) to protect that

---

[13] The cited federal regulations likewise do not contemplate private causes of action.  *See* 27 C.F.R. § 478.21(a); *id.* § 478.124(c)(1), (5).

[14] That the plaintiff is the Attorney General makes no difference.  Although *parens patriae* empowers the Attorney General to "enforce[] … the laws of the state," *Slezak v. Ousdigian*, 110 N.W.2d 1, 5 (Minn. 1961), it does not authorize rewriting and expanding common-law doctrines.

- 18 -

interest against the particular hazard from which the harm results."  Restatement (Second) of Torts § 286 (1965).  The corollary to this rule is negligence per se may not be premised on a statute whose purpose is to "protect the interests of the state" or "secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public."  *Kronzer v. First Nat'l Bank of Minneapolis*, 235 N.W.2d 187, 193 (Minn. 1975) (citation omitted).

Statutes "designed to protect the public at large rather than a particular class of individuals" do not provide the basis for negligence per se claims.  *Id.*; *see also, e.g.*, *Haynes v. Abdelwahed*, 1997 WL 406644, at *1 (Minn. Ct. App. July 22, 1997) (explaining in assessing negligence per se claim, courts consider if at-issue law is "designed to protect a particular class of persons rather than the public as a whole"); Restatement (Second) of Torts § 288, cmt. b (explaining "legislative enactments and regulations … intended only for the protection of the interests of the community as such, or of the public at large …. will … not be adopted … as the standard of a reasonable man").  Here again, the statutes invoked by the Attorney General protect the public at large, not particular classes of persons.  *E.g.*, *RSM, Inc. v. Herbert*, 466 F.3d 316, 324 (4th Cir. 2006) (explaining the GCA protects "public safety" and safeguards against "lawlessness and violent crime" (citation omitted)); *Shawano Gun & Loan v. Hughes*, 2010 WL 3062847, at *6 (E.D. Wis. Aug. 2, 2010) ("An overarching purpose of the GCA is to protect the public …."); Minn. Stat. § 609.01 (explaining one purpose of Minnesota's criminal laws is to protect "public safety and welfare").  They thus cannot supply the basis for a negligence per se claim.

C.     **Because the negligence per se claim fails, the aiding-and-abetting claim also fails.**

The Attorney General's aiding-and-abetting claim is legally unsound.    The complaint does not allege Fleet Farm aided and abetted intentional conduct; instead, it alleges Fleet Farm somehow aided and abetted Horton's and Elwood's negligence per se in transferring firearms to third parties.   *See* Compl. ¶ 99.   This is not a viable legal theory. "Few states recognize aiding and abetting liability predicated on a third party's negligence," *In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007), and Fleet Farm is not aware of any Minnesota authority recognizing such a claim in the civil context.[15]   *E.g.*, *Ashley Cnty.*, 552 F.3d at 673.   Moreover, under Minnesota law "[a]iding and abetting is not an independent tort, but a theory of liability under which a party may be held jointly and severally liable for the underlying tort." *Zayed v. Associated Bank, N.A.* ("*Zayed II*"), 913 F.3d 709, 714 (8th Cir. 2019).   Thus, the Attorney General has no aiding-and-abetting "claim" at all, but only a flawed liability theory.

Regardless, because the Attorney General has not pleaded a viable negligence per se claim, the aiding-and-abetting "claim" also fails.   An aiding-and-abetting theory requires demonstrating "the primary tortfeasor ... commit[s] a tort that causes an injury to the plaintiff." *Zayed v. Associated Bank, N.A.* ("*Zayed I*"), 779 F.3d 727, 733 (8th Cir. 2015) (quoting *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 187 (Minn. 1999)). But the Attorney General asserts Fleet Farm aided and abetted Horton and Elwood in

---

[15] Minnesota recognizes that in the criminal context "a person may be criminally liable for aiding criminally negligent manslaughter." *Matter of S.W.T.'s Welfare*, 277 N.W.2d 507, 514 (Minn. 1979).

negligently violating the same laws supplying the basis for the negligence per se claim. *Compare* Compl. ¶ 84 (asserting Fleet Farm committed negligence per se by violating nine statutes and regulations), *with id.* ¶¶ 99-100 (alleging Fleet Farm "substantially assisted" Horton and Elwood "commit[] the tort of negligence per se" by violating these same laws). Because none of these laws create private causes of action or protect particular classes of individuals, *supra* Section III.A-B, the Attorney General cannot assert a negligence per se claim against Horton or Elwood premised on those statutes, and Fleet Farm necessarily cannot have aided and abetted a non-actionable negligence per se claim.  *E.g.*, *CSM Equities, LLC v. Woodland Vill. Invs. Ltd.*, 2016 WL 281131, at *8 (Minn. Ct. App. Jan. 25, 2016) ("[T]o state a claim for aiding and abetting … the plaintiff must show that the primary tort-feasor committed a tort that injured the plaintiff.").

## IV. The aiding-and-abetting claim fails because the complaint contains no plausible allegations that Fleet Farm actually knew about Horton's or Elwood's negligence or substantially assisted them.

Setting aside the above defects, the aiding-and-abetting "claim" fails because the complaint has not alleged plausibly that Fleet Farm had actual knowledge of Horton's or Elwood's negligence or substantially assisted them.

To state an aiding-and-abetting theory, a plaintiff must allege the defendant "know[s] that the primary tortfeasor's conduct constitutes a breach of duty." *Zayed I*, 779 F.3d at 733.   Aiding-and-abetting liability "is based on a proof of a scienter—the defendants must ***know*** that the conduct they are aiding and abetting is a tort." *Id.* at 735 (quoting *Witzman*, 601 N.W.2d at 186).  This is "a crucial element in aiding or abetting cases," *id.* (cleaned up), and requires evidence showing "actual knowledge," *Zayed II*, 913

F.3d at 715. Plaintiff must allege "more than awareness of the conduct in question, that it raised 'red flags,' or even that it amounted to gross negligence." *Id.* (cleaned up); *see also, e.g.*, *Kamal v. Baker Tilly US, LLP*, 2022 WL 1050053, at *10 (D. Minn. Apr. 7, 2022) ("Actual knowledge is more than awareness that conduct raised 'red flags' that, with the benefit of hindsight, should have prompted further investigation or inquiry." (cleaned up)); *Varga v. U.S. Bank Nat'l Ass'n*, 952 F. Supp. 2d 850, 857-58 (D. Minn. 2013) ("[C]ircumstantial evidence must demonstrate that the aider-and-abettor ***actually knew*** of the underlying wrongs committed."), *aff'd*, 764 F.3d 833 (8th Cir. 2014); *Ferring B.V. v. Allergan, Inc.*, 932 F. Supp. 2d 493, 507 (S.D.N.Y. 2013) (explaining "aiding and abetting breaches of common law duty" requires "actual knowledge"). Aiding-and-abetting theories must be pleaded with particularity. *Zayed I*, 779 F.3d at 733.

Here, to state an aiding-and-abetting theory, the complaint must allege with particularity that Fleet Farm had actual knowledge Horton and Elwood would negligently violate the GCA. The complaint contains no such allegations. Although it asserts Fleet Farm should have known Horton and Elwood were engaged in straw purchasing based on certain "red flags," Compl. ¶¶ 40, 56, it contains no non-conclusory facts supporting the notion that, at the time of sale, Fleet Farm ***actually knew*** Horton or Elwood would negligently violate federal law by transferring those firearms to unidentified third parties ineligible to possess firearms. *E.g., Zayed II*, 913 F.3d at 715-19 (alleging awareness of "red flags," but not actual knowledge of wrongful conduct, is insufficient).

***Second***, an aiding-and-abetting theory requires a plaintiff to allege plausibly that the defendant "substantially assist[ed] or encourage[d] the primary tortfeasor in the

achievement of the breach." *Zayed I*, 779 F.3d at 733.   To establish "substantial assistance," a plaintiff must allege the defendant provided "something more than … routine professional services." *Id.* at 735 (cleaned up).   Instead, the defendant must have taken an "affirmative step," and "fail[ing] to object to [wrongful conduct] is not enough." *Id.* (cleaned up).   Nor is conduct "inadvertently advanc[ing]" the underlying tort "substantial assistance." *Id.* at 720 (cleaned up).   Here, the complaint alleges Fleet Farm "substantially assisted" Horton and Elwood by selling firearms.   Compl. ¶ 100.   But providing "routine professional services" does not constitute "substantial assistance." *Zayed I*, 779 F.3d at 735; *see also, e.g.*, *Perez v. Costco Wholesale Corp.*, 2015 WL 1034141, at *8 (S.D. Cal. Mar. 10, 2015) ("Even if there were any factual allegations to support [defendant]'s knowing what its customers would do with the products it sold, a store's arm's-length sale of a product in the ordinary course of business generally does not amount to substantial assistance or encouragement.").   Because Fleet Farm's routine firearm sales are the only alleged "assistance," the aiding-and-abetting theory fails.

## V.   The Attorney General has failed to allege negligent entrustment plausibly.

Minnesota's negligent-entrustment doctrine is also based on the Restatement. *Johnson v. Johnson*, 611 N.W.2d 823, 826 (Minn. Ct. App. 2000).   Accordingly, the complaint must allege plausibly that: (1) Fleet Farm "supplies directly or through a third person"; (2) "a chattel for the use of another whom [Fleet Farm] knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use"; and (3) physical harm resulted.

- 23 -

Restatement (Second) of Torts § 390; *accord Soto v. Shealey*, 331 F. Supp. 3d 879, 887 (D. Minn. 2018). The complaint fails to allege negligent entrustment for three reasons.

*First*, the Attorney General has not alleged proximate cause plausibly. *Infra* Section VII.

*Second*, the Attorney General has not alleged plausibly that Horton or Elwood were likely to use firearms in a manner involving unreasonable risk to others "because of [their] youth, inexperience, or otherwise." Restatement (Second) of Torts § 390. Minnesota law generally limits negligent entrustment to circumstances where property is entrusted to "incompetent or inexperienced person[s]." *Axelson v. Williamson*, 324 N.W.2d 241, 243 (Minn. 1982); *see also Lind v. Slowinski*, 450 N.W.2d 353, 357 (Minn. Ct. App. 1990) (explaining a person may negligently entrust a vehicle to an "incompetent driver" (citation omitted)); Restatement (Second) of Torts § 390, cmt. c (explaining doctrine applies where property recipient "is one of a class which is legally recognized as so incompetent as to prevent them from being responsible for their actions" or if the seller knows the recipient has a "condition … mak[ing] him incapable of exercising the care which it is reasonable to expect of a normal sober adult"). Fleet Farm is aware of no Minnesota authority recognizing negligent entrustment where the defendant entrusts property to a competent adult who later transfers the property to another person who uses it to commit—or transfers it to yet another person who commits—a criminal act.[16] Absent such authority, this Court

---

[16] Although the Restatement includes the phrase "or otherwise," *ejusdem generis* and *noscitur a sociis* require this phrase be read in the context of—and limited by—the preceding terms "youth" and "inexperience." *E.g.*, *Dornquast v. Dornquast*, 2018 WL 1145716, at *3 (Minn. Ct. App. Mar. 5, 2018). A narrow reading of the phrase is consistent

should not countenance the Attorney General's dramatic expansion of the negligent-entrustment doctrine.  *E.g.*, *Ashley Cnty.*, 552 F.3d at 673; *cf. Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 282 (Conn. 2019) (declining to extend negligent-entrustment doctrine to cover firearm sellers on the basis that "some small subset of buyers will share [assault] weapons with their young adult sons and some much smaller subset of young adult males will use those weapons to commit terrible, random crimes").

**Third**, the complaint does not allege plausibly that Fleet Farm knew or had reason to know Horton or Elwood were "likely … to use [firearms] in a manner involving unreasonable risk of physical harm to … others whom [Fleet Farm] should [have] expect[ed] to share in or be endangered."  Restatement (Second) of Torts § 390.  Aside from the obligation to not sell firearms to incompetent or inexperienced persons, Minnesota common law recognizes—consistent with the Restatement—that sellers do not have an independent duty to investigate a purchaser before completing a sale.  *Johnson*, 611 N.W.2d at 825-26; *see also, e.g.*, *Islam v. Creative Tours Micronesia, Inc.*, 36 F.3d 1102, 1994 WL 477543, at *1 (9th Cir. 1994) (explaining courts have "unanimously concluded" section 390 "do[es] not create an affirmative duty of inquiry"); *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1065-66 (N.Y. 2001) (cautioning against "imposing novel theories of tort liability while the difficult problem of illegal gun sales … remains the focus of a national policy debate" and there is already "a statutory and regulatory scheme to ensure seller 'responsibility' through licensing requirements").

---

with the general practice of limiting negligence entrustment to situations where the recipient is "incompetent or inexperienced."  *Axelson*, 324 N.W.2d at 243.

On this issue, the negligent-entrustment claim fails for the same reasons it was rejected in *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216 (D. Colo. 2015). There, the district court concluded that under Restatement section 390, a seller has no independent "duty to investigate the background of the person to whom chattel is entrusted," and that a person purchased a large quantity of ammunition did not make the purchase "inherently suspicious." *Id.* at 1225-26. Critically, the court explained, "there [we]re no allegations that the quantities [of ammunition] purchased … exceed[ed] any state or federal law placing limits on the amount of ammunition or other dangerous material a person may possess at any one time." *Id.* at 1226. So too here—Fleet Farm had no duty to investigate Horton's and Elwood's backgrounds beyond what was mandated by federal law; the complaint does not (and cannot) allege Fleet Farm sold any firearms to Horton or Elwood without federal authorization; and the complaint does not (and cannot) allege the quantity of firearms purchased by Horton and Elwood exceeded federal or state limits. Accordingly, the negligent-entrustment claim fails.

## VI. The public-nuisance claim fails because the complaint has not alleged Fleet Farm contributed to an actionable nuisance.

The public-nuisance claim fails on multiple grounds. Although the complaint references Minnesota's criminal public-nuisance statute, it appears to advance a common-law public-nuisance claim. Besides not alleging proximate cause, *infra* Section VII, the public-nuisance claim should be dismissed for two reasons.

***First***, the Attorney General has not alleged plausibly that Fleet Farm's conduct interfered with "public rights" or "endanger[ed] public health." *State v. Red Owl Stores,*

*Inc.*, 92 N.W.2d 103, 110 (Minn. 1958).  Although Minnesota courts have not directly addressed this issue, other jurisdictions have concluded common-law public nuisance cannot be premised on using a "legal product (be it a gun … or some other instrumentality) in a manner that may create a risk of harm to another." *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1116-21 (Ill. 2004); *see also, e.g.*, *Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 540 (3d Cir. 2001) (declining to extend public-nuisance doctrine to claims against firearm manufacturers because "no New Jersey court has ever allowed a public nuisance claim to proceed against manufacturers for lawful products that are lawfully placed in the stream of commerce"); *People ex rel. Spitzer v. Sturm, Ruger & Co.*, 309 A.D.2d 91, 96 (N.Y. App. Div. 2003) (declining to expand public-nuisance doctrine to include negligent-marketing claims against handgun manufacturers and sellers because "giving a green light to [such claims] will … likely open the courthouse doors to a flood of limitless, similar theories of public nuisance … against a wide and varied array of other commercial … activities").  Condoning such a broad expansion of public-nuisance law would create "a monster that w[ill] devour in one gulp the entire law of tort." *Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.*, 984 F.2d 915, 921 (8th Cir. 1993); *see also, e.g.*, *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 729-31 (Okla. 2021) (declining to "[e]xtend[] public nuisance law to the manufacturing, marketing, and selling of products").

**Second**, the public-nuisance claim fails because Fleet Farm was not "in control of the instrumentality alleged to constitute a nuisance" at the time the nuisance occurred. *Tioga*, 984 F.2d at 920.  "Minnesota nuisance law does not apply … where the alleged

- 27 -

wrongdoer no longer owns or controls the property from which the nuisance arises." *Appletree Square 1 Ltd. P'ship v. W.R. Grace & Co.*, 815 F. Supp. 1266, 1274 n.13 (D. Minn. 1993)[17]; *cf. City of W. St. Paul v. Krengel*, 768 N.W.2d 352, 356 n.6 (Minn. 2009) (explaining Minnesota's civil public-nuisance statute requires defendant have "control of [the] real property"). This limitation makes good sense, as "without control [over the instrumentality] a defendant cannot abate [a] nuisance." *Tioga*, 984 F.2d at 920 (concluding defendant selling "asbestos-containing material" could not be held liable under nuisance theory because the defendant "lacked control of the product after the sale").

Here, the instrumentalities causing the purported public nuisance are firearms, and the alleged nuisance occurs when those firearms are "misuse[d]" or "used in the commission of crimes." Compl. ¶¶ 108-10. The complaint makes clear that at the time of the purported nuisance acts, the firearms were in the hands of individuals with no connection to Fleet Farm. *Id.* ¶¶ 45-49, 51, 60. Fleet Farm unquestionably lacked control over the firearms when they were allegedly discharged, used to threaten others, used in shootings, or possessed by unauthorized persons. *See id.* The public-nuisance claim should thus be dismissed.

---

[17] *Accord E.S. Robbins Corp. v. Eastman Chem. Co.*, 912 F. Supp. 1476, 1494 (N.D. Ala. 1995); *Gelman Scis., Inc. v. Dow Chem. Co.*, 508 N.W.2d 142, 144 (Mich. Ct. App. 1993); *In re Lead Paint Litig.*, 924 A.2d 484, 499 (N.J. 2007).

**VII.   All claims fail because the complaint fails to plead a viable proximate-causation theory.**

All of the Attorney General's claims require proving Fleet Farm proximately caused the purported injuries.[18]  Proximate cause is absent as a matter of law if "reasonable minds" would not find it present.  *E.g.*, *Lubbers v. Anderson*, 539 N.W.2d 398, 402 (Minn. 1995) (explaining proximate cause is a legal question if "reasonable minds can arrive at only one conclusion").  And proximate cause exists only where "an injury follows in an unbroken sequence, without an intervening efficient cause, from the [defendant's] original negligent act."  *Green Plains Otter Tail, LLC v. Pro-Environmental, Inc.*, 953 F.3d 541, 547 (8th Cir. 2020) (cleaned up).  Superseding events will "break[] the chain of causation and prevent[] the original negligent actor from being liable for the final injury," and to determine if an event is superseding, courts consider if it: "occurred after the original negligence"; was not "brought about by the original negligence"; "actively worked to bring about a result which would not otherwise have followed from the original negligence"; and was not "reasonably foreseeable by the original wrongdoer."  *Id.* (quotation omitted).  An injury is not reasonably foreseeable if "the connection between defendant's conduct and the plaintiff's injury [i]s too attenuated."  *Id.* (cleaned up).

---

[18] *E.g.*, *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014) (negligence); *Gradjelick v. Hance*, 646 N.W.2d 225, 232 (Minn. 2002) (negligence per se); *Axelson*, 324 N.W.2d at 244 (negligent entrustment); *In re TMJ Implants Prods. Liability Litig.*, 880 F. Supp. 1311, 1319 (D. Minn. 1995) (aiding and abetting); *Chairez v. AW Distributing, Inc.*, 2021 WL 1600494, at *9-10 (D. Minn. Apr. 23, 2021) (public nuisance); 58 Am. Jur. 2d Nuisances § 66 (same).

Minnesota recognizes "[a]s a general rule, a criminal act of a third person is an intervening efficient cause sufficient to break the chain of causation" if the criminal act was not "reasonably foreseeable." *Hilligoss v. Cross Cos.*, 228 N.W.2d 585, 586 (Minn. 1975). This rule echoes the foundational principle that merely "furnish[ing] a condition by which the injury by the subsequent independent act of a third person occurred" does not proximately cause that injury. *Hack v. Johnson*, 275 N.W. 381, 385 (Minn. 1937); *accord* 65 C.J.S. Negligence § 203. Here, at most, the complaint alleges Fleet Farm furnished a condition by which disconnected third parties committed independent criminal acts. Proximate causation is lacking as a matter of law.

The Illinois Supreme Court affirmed a dismissal on this basis in *Young v. Bryco Arms*, 821 N.E.2d 1087 (Ill. 2004). There, plaintiffs asserted negligence and public-nuisance claims against various actors in the firearm industry relating to homicides involving "illegal firearms." *Id.* at 1090. These defendants included "dealer[s] … who sold the guns used to kill [plaintiffs'] sons." *Id.* at 1091. The court affirmed dismissal because plaintiffs' proximate-causation theory failed as matter of law. It explained the firearm dealers "merely create[d] a condition that makes the eventual harm [from illegal use of a firearm] possible," and it was unreasonable "to expect [them] to foresee that the aggregate effect of the lawful … sale of firearms will be the creation of a[n] [alleged] public nuisance." *Id.* at 1091. The court supported this conclusion based on: (1) "the possession and use of firearms" being "highly regulated by law," and (2) the person whose criminal conduct "directly caused the injury" being several causal steps removed from defendants. *Id.* at 1090-91.

- 30 -

Similarly, in *Ashley County*, the Eighth Circuit affirmed dismissal of claims against manufacturers and distributers of over-the-counter cold and allergy medications that allegedly caused a methamphetamine epidemic. *See* 552 F.3d at 662-64. The court concluded proximate cause was absent because "[t]he criminal actions of the methamphetamine cooks and those further down the illegal line of manufacturing and distributing methamphetamine [we]re sufficient to stand as the cause of injury to the Counties," and were "totally independent of the Defendants' actions of selling cold medicine … even if the manufacturers knew that cooks purchased their products to use in manufacturing methamphetamine." *Id.* at 670 (cleaned up).

This case is similar to *Young* and *Ashley County*. Here, the Attorney General has alleged Fleet Farm's firearm sales may have "create[d] a condition" that ultimately resulted in illegal firearm use and corresponding harm. *Young*, 821 N.E.2d at 1091; *accord Hack*, 275 N.W. at 385. But the complaint makes clear there are multiple causal steps between a straw purchaser obtaining a firearm from Fleet Farm and that firearm's ultimate criminal use. *See Ashley Cnty.*, 552 F.3d at 670; *Young*, 821 N.E.2d at 1090-91. These intervening steps include: NICS authorizing Fleet Farm to proceed with the transaction, Compl. ¶ 21; Form 4473 at 6; the purchaser's subsequent sale of the firearm to a third party, Compl. ¶¶ 1-3, 36-37, 44, 53; further sale(s) or transfer(s) of the firearm into the "black market," *id.* ¶¶ 3, 36, 44, 53; potential theft of the firearm, *id.* ¶ 37; and the firearm's ultimate criminal use (or possession) by an end-user with no connection to Fleet Farm, *id.* ¶¶ 5, 23, 45-49, 60. These intervening steps compel one conclusion: Fleet Farm could not have reasonably foreseen any particular firearm transaction being used by non-purchasers to

commit a crime, let alone reasonably foreseen its lawful commercial activity would purportedly contribute to a "rise in crime guns[,] gun trafficking[,] … gun violence," and "[g]un suicides," allegedly "depriv[ing] Minnesota residents and visitors of the peaceful use of … public places." *Id.* ¶¶ 67, 69, 109. The complaint fails to allege proximate cause as a matter of law, and all claims should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss all claims in the Attorney General's complaint with prejudice.

Dated:  November 23, 2022

*/s/ Todd A. Noteboom*
Todd A. Noteboom (#0240047)
Andrew W. Davis (#0386634)
Sharon R. Markowitz (#0392043)
Andrew P. Leiendecker (#0399107)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
todd.noteboom@stinson.com
andrew.davis@stinson.com
sharon.markowitz@stinson.com
andrew.leiendecker@stinson.com

**ATTORNEYS FOR DEFENDANTS**