UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota by its Attorney General, Keith Ellison,<br><br>          Plaintiff,<br><br>    vs.<br><br>Fleet Farm LLC (f/k/a Mills Fleet Farm LLC), Fleet Farm Group LLC (f/k/a Mills Fleet Farm Group LLC), and Fleet Farm Wholesale Supply Co. LLC (f/k/a Fleet Wholesale Supply Co. LLC),<br><br>          Defendants. | Civil No: 22-CV-02694 (JRT/JFD)<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF STATE OF MINNESOTA'S MOTION TO REMAND TO STATE COURT** |

The State of Minnesota's action must be remanded to state court because, as shown in the State's moving brief, the State's state law claims do not give rise to federal jurisdiction. Defendants fail to refute the State's showing and fail to establish that this Court has subject matter jurisdiction, despite it being Defendants' burden to do so.

Defendants wrongly portray the State's Complaint as concealing the purported federal nature of the State's claims to avoid federal jurisdiction. Def. Mem. (ECF No. 25) at 1, 3, 16, 29. Defendants' portrayal mischaracterizes the State's Complaint, which does not shy away from providing the federal regulatory context related to the State's state-law claims and is far from an instance of so-called "artful pleading." The State brought this action in state court because the State believed there is no federal jurisdiction, as the State has now demonstrated.

There is not federal question jurisdiction for this action under 28 U.S.C. § 1331. Defendants fail to establish the four requirements for such jurisdiction when only state law claims are asserted in accordance with *Grable & Sons Metal Products, Inc. v. Darue Eng. & Mf'g*, 545 U.S. 308 (2005), and *Gunn v. Minton*, 568 U.S. 251 (2013). Defendants' core argument is that a federal issue is necessarily raised in the State's Complaint because "the sole source of Fleet Farm's alleged duties is the federal GCA, its implementing regulations, and federal agency guidelines." Def. Mem. at 2. But the premise of Defendants' core argument is false because the State's Complaint does not allege federal law as the sole source Defendants' duties. Instead, the State's Complaint also relies on both Minnesota common law and Minnesota statutes as the source of Defendants' duties. Therefore, the State's claims do not *necessarily* raise federal issues because the State can prevail on all of its claims independent of federal law. Moreover, none of the remaining *Grable* and *Gunn* requirements are satisfied. Accordingly, there is no federal question jurisdiction.

Nor is there jurisdiction over this *parens patriae* action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The State's action is brought on behalf of the public and is not a class action, in either form or function. Defendants effectively concede that there is no CAFA jurisdiction and rest on the fact that the issue has not yet been decided by the Eighth Circuit. That the issue is open in the Eighth Circuit may be enough to satisfy Rule 11, but it is far from enough to meet Defendants' burden to establish jurisdiction.

# ARGUMENT

I. **THE STATE'S ACTION DOES NOT ARISE UNDER FEDERAL LAW AS REQUIRED FOR FEDERAL QUESTION JURISDICTION UNDER 28 U.S.C. § 1331.**

Defendants fail to refute the State's showing that none of the four requirements in *Gunn* are satisfied, let alone all of them, as needed for federal question jurisdiction in the absence of any federal claims. 568 U.S. at 256 ("[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.").

Despite the four requirements for federal jurisdiction delineated in *Gunn*, Defendants assert that only one thing—whether a claim is "federal ***in nature***"—is "controlling."[1] Def. Mem. at 6 (emphasis in original) (citing 14C Charles Alan Wright et al., Fed. Prac. & Proc. § 3722.1 (4th ed. 2020); *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 928 (5th Cir. 1997)). This is incorrect, and neither *Federal Practice and Procedure* nor *Sam L. Majors Jewelers* supports Defendants' broad assertion that the federal "nature" of a complaint is controlling.[2] In assessing whether state-law claims give

---

[1] Defendants wrongly assert that the Attorney General's advocacy regarding gun violence and firearms regulation have bearing on the jurisdictional analysis before this Court and even go so far as to assert that "[t]he federal nature of the complaint is further confirmed by the Attorney General's recent practices." Def. Mem. at 5. This advocacy has no relevance to this lawsuit, in general, and specifically has no relevance to the *Grable* inquiry.

[2] *Federal Practice* stated that the quoted footnote using the word "nature" supported a "version of the artful-pleading doctrine that the Supreme Court initially enunciated but later rejected," which "took the position that assertion of the defense of federal claim preclusion against a state-law claim made a case removable." Fed. Prac. & Proc. § 3722 (citing *Federated Department Stores, Incorporated v. Moitie*, 452 U.S. 394 (1981)). The *Sam L.*

rise to federal jurisdiction, the purported federal "nature" of a complaint is not the standard for federal question jurisdiction. *See generally Grable*, 545 U.S. 308; *Gunn*, 568 U.S. 251.

Moreover, Defendants' assertion that "a plaintiff's characterization of claims as state-law claims is of no moment" is not only wrong, but also bizarre. *See* Def. Mem. at 4. It is precisely because the State's action asserts only state law claims—as opposed to any federal law claims—that all four requirements in *Grable* and *Gunn* must be satisfied for federal question jurisdiction. It is entirely appropriate for the State to decide to plead state law claims and seek adjudication of these claims in state court. *See Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.2d 519, 521 (8th Cir. 2020) (reciting the Supreme Court's "'rule'" that "'the plaintiff [is] the master of the claim'" and "'may avoid federal jurisdiction by exclusive reliance on state law'") (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

Defendants also wrongly attempt to shift their burden of showing that federal jurisdiction is appropriate onto the State. Defendants fault the State for quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983), and suggesting that the decision "creates a presumption against federal jurisdiction." Def. Mem. at 7 n.3. *But there is a presumption that there is no federal jurisdiction unless and until Defendants meet their burden to establish jurisdiction*: "As federal courts are courts of limited jurisdiction, '[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.'" *Dakota, Minnesota*

---

*Majors Jewelers* decision held there was federal jurisdiction in that case because—unlike in this case—*federal common law* controlled the claims. 117 F.3d at 923.

*& E. R.R. Corp. v. Schieffer*, 715 F.3d 712, 712 (8th Cir. 2013) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, (1994) (citations omitted); *see also Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009) ("Critically, the party seeking removal has the burden to establish federal subject matter jurisdiction, . . .; all doubts about federal jurisdiction must be resolved in favor of remand."). Defendants fail to rebut this presumption and fail to meet their burden.

    A.    **No Federal Issue Is Necessarily Raised by Any of the State's Claims.**

        1.    **Federal Law Is Not the Only Source of Defendants' Alleged Duties and Wrongful Conduct.**

Defendants repeatedly—but wrongly—argue that a federal issue is necessarily raised by the State's claims because federal law is the "only possible source" of Defendants' alleged duties and wrongful conduct.[3] *See* Def. Mem. at 8; *see also id.* at 1, 2, 4, 12, 15, 16, 21, 28. Despite its repetition, Defendants' argument is wrong. None of the State's five claims rely solely on federal law.[4] Thus, no federal issue is necessarily raised by any of the State's claims.

---

[3] Defendants also wrongly state that the State's Complaint alleges that "any such 'red flags' [of straw purchasing] are established solely by ATF." Def. Mem. at 16 (citing Compl. ¶¶ 25, 30). The State's Complaint does provide a list of red flags that warn of a risk of straw purchasing. Compl. at 8, ¶ 25. But the State's Complaint does not plead that such red flags are established by the ATF, much less "solely" by the ATF. *See id.* Similarly, Defendants state that the State "offers no allegations regarding Fleet Farm's actual policies for selling firearms, instead asserting in broad strokes that Fleet Farm has violated federal laws and regulations.'" Def. Mem. at 4. But the State's claims against Fleet Farm are based on Fleet's Farms' conduct, not its policies.

[4] Defendants emphasize that "none of the state statutes referenced in the complaint are even cited in the Attorney General's remand brief." Def. Mem. at 2; *id*. at 13-14. The relevant inquiry is whether the State's *Complaint* necessarily raises a federal issue, however, and

5

First, the State's ordinary negligence claim (Count I) alleges a general duty of care under Minnesota common law:

> At all relevant times, Defendants owed the State of Minnesota and its citizens the general duty imposed on all persons and entities to not expose others to reasonably foreseeable risks of injury. Defendants had a duty to exercise reasonable care in distributing and selling firearms and to refrain from engaging in any activity creating reasonably foreseeable risks of injury to others. A breach of such duty constitutes negligence.

Compl. (ECF No. 1, Ex. A) at 28, ¶ 71. The State's moving brief pointed out the Complaint's allegation of the general duty of care under Minnesota law (ECF No. 15 at 12) but Defendants fail to rebut this point. Instead, Defendants simply assert without support that this allegation "is of no moment." *See* Def. Mem. at 16 n.12.

Further, Defendants admit that it is entirely possible for a firearms dealer to have a general duty under state common-law negligence principles. *See* Def. Mem. at 19 (recognizing that "Texas courts expressly recognize that 'under common-law negligence principles and without the assistance of negligence per se … ammunition sellers owe a duty of ordinary care toward third parties who might be injured by an unreasonable sale of ammunition'"). The fact that Minnesota courts have not yet had occasion to expressly recognize a specific duty of care by firearms dealers does not mean the general duty of care does not apply. Accordingly, there is "state law grounding for the duty that the [Attorney General] would need to establish for [Fleet Farm] to be liable," and any such duty would not "have to be drawn from federal law." *See* Def. Mem. at 16 (quoting *Bd. of Comm'rs of*

---

the State's Motion to Remand cites paragraphs of the Complaint that encapsulate state statutes. ECF No. 15 at 4, 8, 9.

*Se. La. Flood Protection Auth.-East v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 722–23 (5th Cir. 2017)). This case is not like *Louisiana Flood* where federal law was "the exclusive basis for holding Defendants liable." *La. Flood*, 850 F.3d at 722.

Second, the State's negligence per se claim (Count II) alleges duty based on both federal and state law:

> Under the law, and due to Defendants' responsibilities as a federally licensed dealer of an especially dangerous product, Defendants owed a duty of care to Minnesota citizens and the State. These laws include, but are not limited to, the provisions of the federal Gun Control Act (18 U.S.C §§ 921–931) and its implementing regulations (27 C.F.R. Part 478), and the Minnesota Gun Control Act (Minn. Stat. §§ 624.71–624.7192).

Compl. at 29, ¶ 81. Thus, the State's negligence per se claim does not rely solely on a duty established by federal law.

Indeed, Minnesota has a separate and independent regime of gun laws that supplement, and are not merely duplicative of, federal law. In 1975, the Minnesota Legislature enacted the Minnesota Gun Control Act, Minnesota Statutes §§ 624.71 to 624.7192, as a state complement to the federal Gun Control Act. Among other things, the Minnesota establishes categories of persons who are prohibited from possessing firearms (Minn. Stat. § 624.713) and requires purchasers to obtain a Minnesota permit—including a separate state-mandated background check—before buying a pistol or semiautomatic military-style assault weapon (SAMSAW) from an firearms dealer (Minn. Stat. § 624.7131). The Minnesota Gun Control Act expressly imposes certain specific duties on firearms dealers (Minn. Stat. §§ 624.7161, 624.7162), and the State alleges that other requirements, including the state law's prohibitions on straw purchasing and sales by

7

firearms dealers to straw purchasers (Minn. Stat. §§ 624.7132 and 624.7133), create additional duties for firearms dealers.

Third, the State's final negligence claim, negligent entrustment (Count III), alleges that Defendants supplied firearms to others and Defendants knew or had reason to know the firearms were likely to be used for physical harm. Compl. at 30-31, ¶¶ 88-96. These allegations correspond with the elements of a negligent entrustment claim under Minnesota law—not federal law. *See Johnson v. Johnson*, 611 N.W.2d 823, 826 (Minn. Ct. 2000) (recognizing that "Minnesota has adopted Restatement (Second) of Torts § 390 on negligent entrustment"); Restatement (Second) of Torts § 390. Indeed, Defendants concede that the State's negligent entrustment claim does not rely on federal law at all. Def. Mem. at 15 n. 9.

Fourth, the State's aiding and abetting claim (Count IV) cites both federal and state law: "Defendants knew or reasonably should have known that the individuals identified above were committing the tort of negligence per se by engaging in straw purchasing and/or unlicensed dealings in firearms to prohibited persons in violation of state and federal law. . . ." Compl. at 32, ¶¶ 99; *see also generally id.* at 32, ¶¶ 97–103. Minnesota law prohibits straw purchasing, and the State alleges that Defendants aided and abetted this straw purchasing under Minnesota law. *See* Minn. Stat. § 624.7133.

Fifth, the State's public nuisance claim (Count V) cites both federal and state law. *See generally id*. at 32–35, ¶¶ 104–113.

In sum, the State alleges that Defendants engaged in wrongful conduct based on multiple suspicious sales of firearms to multiple straw purchasers, even if these sales did

8

not violate federal law.[5] Compl. at 13, ¶ 37 – 23, ¶ 61. Accordingly, none of the State's claims necessarily raise a federal issue. Just like the argument rejected in *Daniel*, Defendants' argument for jurisdiction "wrongly presumes that [the State] cannot prevail on these claims unless [the State] proves a violation of federal law." *Daniel v. Armslist, LLC*, No. 15-C-1387, 2016 2016 WL 660894, at *3 (E.D. Wis. Feb. 17, 2016). This presumption is wrong because—like in *Daniel*—the State alleges that Defendants violated federal law *and state law. See id.* ("To the contrary, in Count II (negligence per se), Daniel alleges that the Armslist Defendants and Linn "violated federal, *state, and local statutes*, regulations, and ordinances . . . ." (emphasis in original)). Defendants emphasize that one of the Wisconsin state statutes relied on in *Daniel* had "no federal counterpart," but that was not the rationale for the *Daniel* court's decision. *See* Def. Mem. at 19. The lack of a "federal counterpart" appears to be the standard on which Defendants rely, but it is not the actual *Grable* standard.[6]

---

[5] Defendants assert that "it is simply wrong to assert Fleet Farm could be liable for negligence "even if federal firearms regulations permitted Fleet Farm's sales." Def. Mem. at 14. But Defendants' assertion is directly contrary to the State's allegations that Defendants are liable for negligence based on their general duty, as well as duties based on federal and state statutes.

[6] Likewise, Defendants argue that the Minnesota statutes do not "supply a standalone basis" beyond federal law (Def. Mem. at 13-14) but this is not true as shown above. The Minnesota GCA imposes its own permitting and background check requirements separate and apart from the federal GCA, and the Minnesota GCA explicitly prohibits straw selling and requires dealers not to sell firearms to suspected straw purchasers. *See, e.g.*, Minn. Stat. §§ 624.714, 624.7133, 624.7132, subd. 15(a)(2) (prohibiting firearm sellers from transferring a firearm if they know or have reason to know the recipient made a false statement in order to receive the firearm).

Finally, Defendants attempt to put the burden of proving jurisdiction onto the State by arguing that "[t]he Attorney General makes no meaningful, non-conclusory effort to explain how *every* claim in the complaint may be resolved without reliance on federal law." Def. Mem. at 21. This argument ignores that Defendants bear the burden to establish federal court jurisdiction. *See Cent. Iowa Power*, 561 F.3d at 912. Moreover, Defendants' argument is false. In the State's moving brief, the State cited the specific paragraphs of the Complaint referencing Minnesota law with respect to each of the five claims. Minn. Mot. to Remand (ECF No. 15) at 8-9. Accordingly, *Corporan v. Wal-Mart Stores East, LP*, 194 F. Supp. 3d 1128 (D. Kan. 2016), remains persuasive despite Defendants' arguments otherwise. *See* Def. Mem. at 17-18. The State has demonstrated that none of its claims necessarily raises a federal issue.

### 2. *Wullschleger* Is Not Inconsistent with Holding That the State's Claims Do Not Necessarily Raise a Federal Issue.

Finally, Defendants argue that holding the State's claims do not necessarily raise a federal issue would be inconsistent with *Wullschleger*, 953 F.3d 519. *See* Def. Mem. at 20-22. Defendants are wrong.

First, Defendants misrepresent *Wullschleger*. Contrary to Defendants' argument, *Wullschleger* did not hold that the four requirements in *Grable* and *Gunn* are always satisfied where state-law claims are predicated on violations of federal statutes that establish a comprehensive regulatory scheme. *See* Def. Mem. at 7-8 (citing *Wullschleger*, 953 F.3d at 522). Instead, *Wullschleger* held only that the four requirements were satisfied in that particular case. 953 F.3d at 522. As the Supreme Court has emphasized, there is no

bright line rule in evaluating these requirements. *Grable*, 545 U.S. at 317 (discussing *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986)). Instead, as Defendants recognize, "[d]etermining if federal jurisdiction is present 'calls for a common-sense accommodation of judgment to the kaleidoscopic situations that present a federal issue.'" Def. Mem. at 7 (quoting *Grable*, 545 U.S. at 312–13).

Further, *Wullschleger* concluded that some of the plaintiff's claims in that case—for violation of the Missouri Merchandising Practices Act (MMPA)—did not depend on federal law. 953 F.3d at 521. Thus, these MMPA claims did not necessarily raise a federal issue and did not give rise to federal question jurisdiction because "'the presence of a claimed violation of [federal law] as an element of a state cause of action' is insufficient on its own to confer federal jurisdiction." *Wullschleger*, 953 F.3d at 521 (quoting *Merrell Dow*, 478 U.S. at 814). Indeed, *Wullschleger* recognized that "*Merrell Dow* forecloses the removal of state law claims that merely include a violation of federal law as an element of the offense, without other reliance on federal law." 953 F.3d at 521.

Instead of basing federal jurisdiction on the MMPA claims that did not necessarily raise an issue of federal law, *Wullschleger concluded there was federal jurisdiction based on other claims* (for antitrust and unjust enrichment) that were *entirely dependent* on federal law. *Id.* at 522 (emphasizing plaintiff's reliance on facts showing non-compliance with federal law and holding that "the antitrust and unjust enrichment claims cannot be adjudicated without reliance on and explication of federal law"). As demonstrated, none of the State's claims in this action are dependent on federal law.

11

### B. No Federal Issue Is Actually Disputed in the State's Action.

Defendants assert that the "parties 'actually dispute' the federal issue" but fail to identify a single disputed federal issue. *See* Def. Mem. at 22. Instead, Defendants merely theorize that "the parties will undoubtedly dispute the scope of alleged duties arising under the GCA and its implementing regulations, and whether Fleet Farm violated any duties relating to monitoring for 'red flags' of straw purchasing or whether specific firearms sales were consistent with federal law." *Id*. This is insufficient. The State and Defendants have not put forth any dueling interpretations about federal law or regulations. Defendants attempts to justify their failure to identify any disputed federal issues by asserting that "Fleet Farm's compliance with, the federal laws and regulations cited in the Attorney General's complaint implicate transaction-specific questions ill-suited for the Rule 12 stage." Def. Mem. at 22 n.15. But it is Defendants' burden to establish jurisdiction.

Rather than any actually disputed federal issues, what the parties will undoubtedly dispute in this matter is Defendants' actions and whether these actions satisfy the elements of the five claims brought under Minnesota state law. As demonstrated in the State's moving brief, the elements of duty and breach with respect to negligence claims are fundamental issues of Minnesota state law. *See* Minn. Mem. at 14 (explaining and citing relevant Minnesota authority).

### C. No Federal Issue Is Substantial in the State's Action.

Defendants argue that—because there is a strong federal interest in firearms regulation—there is a substantial federal issue in the State's action. This does not follow.

12

In particular, Defendants assert that the "scope of obligations the GCA places on FFLs . . . presents legal questions with broad federal significance" such as the "ATF's enforcement of the GCA and the circumstances under which an FFL may be fined or have its license suspended." Def. Mem. at 24. But a state court ruling on Defendants' liability for negligence and other state law claims is separate and distinct from the ATF and its licensing enforcement under the GCA. In short, the situation in this case is like the situation in *Merrell Dow*, where a state court ruling on a drug manufacturer's negligence liability was separate from the FDA and its administration of the FDCA. *See Merrell Dow*, 478 U.S. at 814.

Defendants wrongly fault the State for stating that federal-question jurisdiction over state-law claims based on violations of federal standards would disrupt the division of responsibilities between federal and state courts. *See* Def. Mem. at 26-27, 29. *Grable* held that the existence of a federal private cause of action is not always required for exercising federal-question jurisdiction.[7] *Grable*, 545 U.S. at 311-12. But *Grable* also explained that the existence or lack of a private cause of action is still relevant and that *Merrell Dow*'s holding rested on both the requirements of substantiality and the federal-state balance:

> *Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the "sensitive judgments about congressional intent" that § 1331 requires. The absence of any federal cause of action affected *Merrell Dow's* result two ways. The Court saw the fact as worth some consideration in the assessment of substantiality. But its primary importance emerged when the Court treated the combination of no federal cause of action and no preemption of state

---

[7] Contrary to Defendants' suggestions (*see* Def. Mem. at 26-27, 29), the State does not argue that a federal cause of action is required for exercising federal-question jurisdiction over state law claims.

13

> remedies for misbranding as an important clue to Congress's conception of
> the scope of jurisdiction to be exercised under § 1331.

*Grable*, 545 U.S. at 318. Accordingly, the lack of a federal private cause of action for violating the GCA is relevant and supports the conclusion that the federal issues that might arise in this action are not substantial. Further, like in *Merrell Dow*, the lack of a federal private cause of action combined with the lack of federal preemption of state laws regulating firearms support the conclusion that adjudication of the State's claims in federal court would disrupt the federal-state balance (i.e., the fourth *Gunn* requirement).

Defendants state that "courts in recent years have concluded a federal issue may be 'substantial' even where the at-issue federal statute does not provide a private cause of action" based on only three examples: *Grable*, *Wullschleger*, and *Ranck v. Mt. Hood Cable Reg. Comm'n*, 2017 WL 1752954, at *4-5 (D. Or. May 2, 2017). Def. Mem. at 27. The State has thoroughly distinguished *Grable* and *Wullscheleger*. As for *Ranck*, all of the claims in that case—unlike this case—turned on an issue of federal law. 2017 WL 1752954, at *2 ("Here, all of plaintiff's claims turn on the federal issue of whether the FCA [Cable Communications Policy Act] allows defendants' use of [certain] fees."). Contrary to Defendants' suggestion otherwise, many cases find that the lack of a federal private cause of action supports the conclusion that there is no substantial federal interest. *See, e.g.*, *Mays v. City of Flint*, 871 F.3d 437, 449–50 (6th Cir. 2017) ("[Where Congress has not created a private cause of action for violations of a federal statute, there is less likely to be a substantial interest in favor of removal. . . . And there is no private right of action for damages arising from a violation of the SDWA [Safe Drinking Water Act] or the LCR

14

[the EPA's Lead and Copper Rule]."); *Tisdale v. Pagourtzis*, No. 3:20-cv-140 et al., 2020 WL 7170491, at *5-6 (S.D. Tex. Dec. 7, 2020); *Corporan*, 194 F. Supp. 3d at 1133–34.[8]

Further, the federal issues that might arise in this case are not substantial—or necessarily raised and disputed—unlike the cases on which Defendants rely that involve specific, contested questions interpreting a complex federal regulatory scheme (Def. Mem. at 25):

- In *NASDAQ OMX*, the necessarily raised and actually disputed federal issue was whether "NASDAQ violated its Exchange Act obligation to provide a fair and orderly market in conducting an IPO." *NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014).

- In *Grable*, the necessarily raised and actually disputed federal issue was whether there was notice within the meaning of a federal tax statutory provision—and this was "the only legal or factual issue contested in the case." 545 U.S. at 314-15.

- In *Louisiana Flood*, the "complaint draws on federal law as the exclusive basis for holding Defendants liable for some of their actions," and the necessarily raised and actually disputed federal issue was the "'unauthorized

---

[8] Many cases do not even reach the questions of whether a federal issue is substantial or whether exercising jurisdiction would disturb the federal-balance when the courts decide that there is no federal issue that is necessarily raised or actually disputed. *See, e.g.*, *Daniel*, 2016 WL 660894, at *3-4; *DeLuca v. Tonawanda Coke Corp.*, No. 10–CV–859S, 2011 WL 3799985, at *7 (W.D.N.Y. Aug. 26, 2011) ("This Court, however, cannot even undertake to evaluate the congressionally-mandated balance between federal and state judicial responsibilities unless there is a "necessary" question of federal law, which, as discussed, is not present here.").

15

alteration' of federal levee systems and for dredging and modifying lands away from their 'natural state.'" 850 F.3d at 723-24.

- In *Broder v. Cablevision Systems Corp.*, the necessarily raised and actually disputed federal issue was whether certain cable rates violated the uniform rate requirement of 47 U.S.C. § 543(d). 418 F.3d 187, 194-96 (2d Cir. 2005).

- In *N.Y. City Health*, the necessarily raised and actually disputed federal issue was the interpretation of certain Medicare reimbursement regulations. *N.Y. City Health & Hosp. Corp. v. WellCare of N.Y., Inc.*, 769 F. Supp. 2d 250, 256-57 (S.D.N.Y. 2011).

- Finally, in *Hayes v. American Airlines*, the necessarily raised and actually disputed federal issue was whether certain airfare refunds were "mandated by the relevant federal statutes and regulations." 2005 WL 2367623, at *4 (E.D.N.Y. Sept. 27, 2005).

Thus, the federal issues in those cases were fundamentally different and more complex than the fact issues related to federal law that might possibly—but not necessarily—arise in this case, like whether or not Defendants submitted certain ATF forms. Put another way, the actually disputed federal issues in those cases were uniquely federal questions—i.e., NASDAQ's compliance with federal stock exchange requirements, the meaning of a federal tax provision, the regulation of national waterways, cable television rates, Medicare reimbursements, and airfare refunds—and therefore more

16

substantial than the federal interests involved in the State of Minnesota's state law claims based on Defendants' sales of firearms to straw purchasers.

### D. Adjudication of the State's Claims in Federal Court Would Disrupt the Federal-State Balance.

In attempting to satisfy this fourth requirement for federal question jurisdiction, Defendants again incorrectly assert that their alleged duties in the State's Complaint "arise solely" under federal law. Def. Mem. at 28.

Defendants further argue that the State "is not merely asking a state court to interpret and apply a discrete portion of federal law to a unique factual scenario, as was the case in *Merrell Dow*." Def. Mem. at 29. But, at most, that is exactly what the State's Complaint is doing. Likewise, Defendants argue that the State "is also asking a state court to apply these federal principles to factual scenarios that are in no way unique." Def. Mem. at 29. Contrary to this argument, the State's Complaint details specific factual scenarios—Defendants' specific sales of specific firearms to specific individuals that resulted in specific harm to Minnesotans. Compl. at 13, ¶ 37 – 23, ¶ 61. Defendants' briefing entirely ignores all of these specific factual allegations that are indeed unique to Fleet Farm.

Litigating state law claims against Fleet Farm based on these specific facts in federal court would improperly disrupt the federal-state balance. This is especially true in this action in which the State's chief law enforcement officer brings these claims on behalf of the public. Federal courts should be especially reticent to take jurisdiction of an action brought by the State in its quasi-sovereign *parens patriae* capacity exercising police powers in state court.

17

## II.  THE STATE'S ACTION IS NOT A CLASS ACTION AS REQUIRED FOR FEDERAL JURISDICTION UNDER 28 U.S.C. § 1332(D).

Defendants fail to refute the State's showing that this *parens patriae* action is not a class action as required for jurisdiction under 28 U.S.C. § 1332(d). Defendants also fail to distinguish this Court's decision and reasoning in *State of Minnesota v. American Petroleum Institute, Exxon Mobil Corp.et al*., Civil No. 20-1636, slip. op. at 30–32 (D. Minn. March 31, 2021).

Instead, Defendants emphasize that the Eighth Circuit has not held that a state attorney general's *parens patriae* action may not constitute a "class action" for CAFA purposes. Defendants' argument—i.e., that no Eighth Circuit decision forecloses Defendants' assertion of jurisdiction under CAFA—is insufficient to meet Defendants' burden to establish subject matter jurisdiction. *See Cent. Iowa*, 561 F.3d at 912.

Defendants also cite a district court decision recognizing that there is no controlling Eighth Circuit law on the issue of whether a state attorney general action may constitute a "class action" for CAFA purposes. *See Missouri ex rel. Koster v. Portfolio Recovery Assocs., Inc*., 686 F. Supp. 2d 942, 944 (E.D. Mo. 2010), *cited in* Def. Mem. at 32. This 2010 decision noted that "[f]ew courts have addressed whether suits by state attorneys general are class actions for purposes of the CAFA." *Id*. at 944. Since that time, however, numerous courts have addressed this issue. As demonstrated in the State's moving brief, these decisions uniformly hold that CAFA is not applicable to state *parens patriae* actions. *See* Minn. Mot. to Remand at 22-23 n.6. Indeed, even before these additional decisions were made in the last ten-plus years, the 2010 decision cited by Defendants also reached

18

the same holding. *Missouri ex rel. Koster*, 686 F. Supp. 2d at 944-47 ("This suit is not a 'class action' under the CAFA.").

Finally, Defendants wrongly assert that the State "challenges only whether this case meets the definition of 'class action'" and thereby concedes other CAFA requirements. *See* Def. Mem. at 30. The State does not concede that this case meets the other CAFA requirements. As demonstrated in the State's moving brief, this action is a *parens patriae* action asserting a quasi-sovereign interest, and the State represents the public interest—the State does not represent individuals, let alone individual class members. State Mot. to Remand at 22-24. Moreover, Fleet Farm has provided no evidence showing that the amount in controversy will be more than $5 million.

In sum, the State's action is not a class action as required for federal jurisdiction under 28 U.S.C. § 1332(d), and Defendants have failed to show otherwise.

## CONCLUSION

For the reasons demonstrated above and in the State's opening brief, this action should be remanded to Minnesota state court.

Dated: December 9, 2022	KEITH ELLISON
	Attorney General
	State of Minnesota

	**/s/ Katherine A. Moerke**
	KATHERINE A. MOERKE (#0312277)
	Assistant Attorney General
	JAMES W. CANADAY (#030234X)
	Deputy Attorney General
	JASON T. PLEGGENKUHLE (#0391772)
	Assistant Attorney General
	ERIC J. MALONEY (#0396326)
	Assistant Attorney General

	445 Minnesota Street, Suite 1400
	St. Paul, Minnesota 55101-2130
	(651) 728-7174
	katherine.moerke@ag.state.mn.us
	james.canaday@ag.state.mn.us
	jason.pleggenkuhle@ag.state.mn.us
	eric.maloney@ag.state.mn.us
	*Attorneys for State of Minnesota*