UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

State of Minnesota by its Attorney General,
Keith Ellison,

        Plaintiff,

    vs.

Fleet Farm LLC (f/k/a Mills Fleet Farm
LLC), Fleet Farm Group LLC (f/k/a Mills
Fleet Farm Group LLC), and Fleet Farm
Wholesale Supply Co. LLC (f/k/a Fleet
Wholesale Supply Co. LLC),

        Defendants.

Civil No: 22-CV-02694 (JRT/JFD)

**NOTICE OF SUPPLEMENTAL
AUTHORITY REGARDING STATE
OF MINNESOTA'S MOTION TO
REMAND**

The State of Minnesota notifies the Court of supplemental and new authority that is

pertinent and significant with respect to the State's pending Motion to Remand (ECF No.

12).

On March 23, 2023, the United States Court of Appeals for the Eighth Circuit issued

the attached decision in *American Petroleum Institute et al. v. State of Minnesota*, No. 21-

8005. The Eighth Circuit's decision affirms the District Court's remand of a separate action

brought by the State of Minnesota and addresses both of Defendants' asserted grounds for

federal jurisdiction in this action: *Grable & Sons Metal Prods., Inc. v. Darue Eng'g &

Mfg.*, 545 U.S. 308 (2005), and the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)

("CAFA").

With respect to *Grable*, the Eighth Circuit emphasized in its new decision that "[a]

federal issue is *necessarily* raised when it 'is a necessary element of one of the well-pleaded

1

state claims' in the plaintiff's complaint." *American Petroleum Institute*, slip op. at 8 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 13 (1983)). The Eighth Circuit also explained that "[a] removing defendant 'should be able to point to the specific elements of [the plaintiff's] state law claims' that require proof under federal law." *American Petroleum Institute*, slip op. at 8-9 (quoting *Cent. Iowa Power Coop v. Midwest Indep. Transmission Sys. Oper., Inc.*, 561 F.3d 904, 914 (8th Cir. 2009)). The Eighth Circuit held there was not federal question jurisdiction under *Grable* because, "[a]lthough the Energy Companies list a variety of federal interests potentially impacted should a court hold them liable, they fail to identify which specific elements of Minnesota's claims require the court to either interpret and apply federal common law or second-guess Congress's [] rationales . . . ." *American Petroleum Institute*, slip op. at 9-10. Thus, the "necessarily raised" requirement was not satisfied. *Id*.

With respect to CAFA, the Eighth Circuit rejected the defendants' argument that a State's *parens patriae* action is a class action: "But a State's exercise of parens patriae authority is not the same as a class action, even when the State seeks recovery for and on behalf of its citizens' injuries." *American Petroleum Institute*, slip op. at 16-18. Thus, the Eighth Circuit has now joined every other court to have addressed the issue in concluding that CAFA is not applicable to *parens patriae* actions brought by a State under state law. As a result, Defendants' assertion of jurisdiction under CAFA is now foreclosed by Eighth Circuit law.

Dated:  March 24, 2023

KEITH ELLISON
Attorney General
State of Minnesota

**/s/ Katherine A. Moerke**

KATHERINE A. MOERKE (#0312277)
Assistant Attorney General
JAMES W. CANADAY (#030234X)
Deputy Attorney General
JASON T. PLEGGENKUHLE (#0391772)
Assistant Attorney General
ERIC J. MALONEY (#0396326)
Assistant Attorney General

445 Minnesota Street, Suite 1200
St. Paul, Minnesota 55101-2130
(651) 728-7174
katherine.moerke@ag.state.mn.us
james.canaday@ag.state.mn.us
jason.pleggenkuhle@ag.state.mn.us
eric.maloney@ag.state.mn.us
*Attorneys for State of Minnesota*

# United States Court of Appeals
## For the Eighth Circuit
_____

No. 21-1752
_____

State of Minnesota, by its Attorney General Keith Ellison

*Plaintiff - Appellee*

v.

American Petroleum Institute; Exxon Mobil Corporation; ExxonMobil Oil Corporation; Koch Industries; Flint Hills Resources LP; Flint Hills Resources Pine Bend

*Defendants - Appellants*

------------------------------

Energy Policy Advocates

*Amicus on Behalf of Appellant(s)*

National League of Cities; United States Conference of Mayors; International Municipal Lawyers Association; Scholars of Foreign Relations and Federal Courts; State of Washington; State of California; State of Connecticut; State of Delaware; State of Hawaii; State of Illinois; State of Maine; State of Maryland; State of Massachusetts; State of Michigan; State of New Mexico; State of New York; State of Oregon; State of Pennsylvania; State of Vermont; State of Wisconsin; District of Columbia; Public Citizen; Robert Brulle; Center for Climate Integrity; Justin Farrell; Benjamin Franta; Fresh Energy; Stephan Lewandowsky; MN350; Minnesota Center for Environmental Advocacy; Naomi Oreskes; Geoffrey Supran; Union of Concerned Scientists; Natural Resources Defense Council

*Amici on Behalf of Appellee(s)*
_____

No. 21-8005

_____

American Petroleum Institute; Exxon Mobil Corporation; ExxonMobil Oil Corporation; Koch Industries; Flint Hills Resources LP; Flint Hills Resources Pine Bend

*Petitioner*s

v.

State of Minnesota

*Respondent*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 15, 2022
Filed: March 23, 2023

_____

Before GRASZ, STRAS, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Minnesota sued a litany of fossil fuel producers[1] (together, the Energy Companies) in state court for common law fraud and violations of Minnesota's consumer protection statutes.  In doing so, it joined the growing list of states and municipalities trying to hold fossil fuel producers responsible for alleged misrepresentations about the effects fossil fuels have had on the environment.  The

_____

[1]American Petroleum Institute, Exxon Mobil Corporation, ExxonMobil Oil Corporation, Koch Industries, Flint Hills Resources LP, and Flint Hills Resources Pine Bend.

-2-

Energy Companies removed to federal court. The district court[2] granted Minnesota's motion to remand, and the Energy Companies appealed. We affirm.

## I.

Minnesota claims that the Energy Companies have known for decades that the production and use of fossil fuels damages the environment. Instead of owning up to these harmful effects, Minnesota alleges the Energy Companies engaged in a misinformation campaign to deceive consumers and suppress the truth about climate change. Minnesota claims that this deception resulted in more fossil fuel being sold, accelerating climate change and causing wide-ranging harm to Minnesota, its citizens, and fossil fuel consumers.

Minnesota sued the Energy Companies in state court. It alleged exclusively state law claims—common law fraud and violations of various Minnesota consumer protection statutes.[3] The Energy Companies removed the case under the general removal statute, 28 U.S.C. § 1441, and the federal officer removal statute, 28 U.S.C. § 1442. Minnesota filed a motion to remand, which the district court granted. The court reasoned that it lacked original jurisdiction and that the claims didn't have sufficient connection to the Energy Companies' purported federally directed activities. The Energy Companies appeal, maintaining that federal original jurisdiction exists and that the case is otherwise removable under § 1442.

Minnesota is not the first state or local government to file this type of climate change litigation. Nor is this the first time that the Energy Companies, or their oil-producing peers, have made these jurisdictional arguments. But our sister circuits rejected them in each case. *See, e.g.*, *Rhode Island v. Shell Oil Prods. Co., L.L.C.* (*Shell Oil III*), 35 F.4th 44 (1st Cir. 2022); *City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022); *Mayor & City Council of Balt. v. BP P.L.C.* (*Baltimore*

---

[2]The Honorable John R. Tunheim, then Chief Judge, United States District Court for the District of Minnesota.

[3]Minn. Stat. §§ 325D.44(1), 325F.67, 325F.69(1).

-3-

*III*), 31 F.4th 178 (4th Cir. 2022); *Cnty. of San Mateo v. Chevron Corp.* (*San Mateo III*), 32 F.4th 733 (9th Cir. 2022); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.* (*Boulder III*), 25 F.4th 1238 (10th Cir. 2022).  *But cf. City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021).  Today, we join them.

## II.

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation omitted).  28 U.S.C. § 1441 allows the defendants in state court civil actions to remove the case to federal court if the case "originally could have been filed there."  *Baker v. Martin Marietta Materials, Inc.*, 745 F.3d 919, 923 (8th Cir. 2014) (quotation omitted).  In other words, the federal court must have original jurisdiction over the case.  Removal is permitted as long as at least one claim falls within the original jurisdiction of the federal court.  *See In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1059–60 (8th Cir. 2018); 28 U.S.C. § 1367(a).  We review the district court's decision to remand *de novo*.  *See Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009).

## A.

28 U.S.C. § 1331 establishes that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  In addition to cases arising under federal positive law, federal courts also have jurisdiction over "claims founded upon federal common law."  *Illinois v. City of Milwaukee*, 406 U.S. 91, 100 (1972), *recognized as superseded by statute on other grounds*, *Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 419 (2011). This is known as federal question jurisdiction.  Generally, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.  The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted).  However, the potential

-4-

applicability of a defense arising under federal law doesn't create jurisdiction. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004).  We call this pair of principles the well-pleaded complaint rule.

But "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 22 (1983).[4]  There are two important exceptions to the well-pleaded complaint rule: when the state-law claims (1) are completely preempted by federal law or (2) necessarily raise a substantial, disputed federal question.  *Shell Oil III*, 35 F.4th at 51–52.  If either exception is met, the case is removable although no federal question appears on the face of the complaint.

Although Minnesota's complaint pleads exclusively state-law torts, the Energy Companies insist that both exceptions apply because federal common law governing transboundary pollution provides the rule of decision for Minnesota's claims.  We address each exception in turn.

i.

Complete preemption applies when "the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar*, 482 U.S. at 393 (quotation omitted).  Complete preemption "exists only where federal preemption is so strong that 'there is no such thing as a state-law claim.'" *Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 248 (8th Cir. 2012) (quoting

---

[4]This principle has also been described as artful pleading, which occurs when a plaintiff disguises federal claims as state ones.  *See* 14C Wright et al., *Federal Practice & Procedure* § 3722.1 (artful pleading).  The Energy Companies argue that artful pleading is a separate exception to the well-pleaded complaint rule.  We have never applied the doctrine as a standalone exception, so we decline to do so here. *See generally Johnson* v. *Humphreys*, 949 F.3d 413 (8th Cir. 2020); *In re Otter Tail Power Co.*, 116 F.3d 1207 (8th Cir. 1997).

*Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 11 (2003)) (cleaned up).  When federal law completely preempts state law, the cause of action is removable even if it's based entirely in state law.  *Franchise Tax Bd.*, 463 U.S. at 23.  But less aggressive forms of preemption, such as ordinary preemption, do not provide a basis for removal.  *See Johnson*, 701 F.3d at 248 ("Ordinary preemption is a federal defense that exists where a federal law has superseded a state law claim.").

To determine whether a state-law claim is completely preempted, we ask whether Congress intended a federal statute to provide "the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action."  *Beneficial Nat'l Bank*, 539 U.S. at 8.  Because "[t]he lack of a substitute federal [cause of] action would make it doubtful that Congress intended" to preempt state-law claims, "without a federal cause of action which in effect replaces a state law claim, there is an exceptionally strong presumption against complete preemption."  *Johnson*, 701 F.3d at 252.  Complete preemption is very rare.  The Supreme Court has applied it to only three statutes:  § 301 of the Labor Management Relations Act, *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 560–61 (1968); § 502(a) of ERISA, *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987); and §§ 85 and 86 of the National Bank Act, *Beneficial Nat'l Bank*, 539 U.S. at 10–11.

Contrary to the Energy Companies' insistence, federal common law on transboundary pollution does not completely preempt Minnesota's claims.  At several points in our nation's history, courts have applied federal common law to public nuisance claims involving transboundary air or water pollution.  *Boulder III*, 25 F.4th at 1258–61 (detailing the history of federal common law in pollution cases); *City of New York v. Chevron Corp.*, 993 F.3d 81, 91 (2d Cir. 2021) (collecting cases).  And the Second Circuit recently held that federal common law still provides a defense—ordinary preemption—to state-law public nuisance.  *New York*, 993 F.3d

-6-

at 94–95.  Though, there is a serious question about whether, and to what extent, this area of federal common law survived subsequent federal environmental legislation.[5]

Even if federal common law still exists in this space and provides a cause of action to govern transboundary pollution cases, that remedy doesn't occupy the same substantive realm as state-law fraud, negligence, products liability, or consumer protection claims.  There is no substitute federal cause of action for the state-law causes of action Minnesota brings, which means we apply the strong presumption against complete preemption.  And more importantly, the federal law at issue is common law, not statutory.  Because Congress has not acted, the presence of federal common law here does not express Congressional intent of any kind—much less intent to completely displace any particular state-law claim.  *Boulder III*, 25 F.4th at 1262.

Because Congress has not acted to displace the state-law claims, and federal common law does not supply a substitute cause of action, the state-law claims are not completely preempted.

ii.

The second exception to the well-pleaded complaint rule is when the complaint includes "claims recognized under state law that nonetheless turn on substantial questions of federal law."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  When that's true, we treat the claims as arising under federal law even though state law creates the cause of action.

---

[5]Some of our sister circuits have addressed both whether the Clean Air Act displaced federal common law on transboundary pollution, *Baltimore III*, 31 F.4th at 204, and whether the Clean Air Act preempts state-law claims seeking to recover damages for the effects of climate change, *Boulder III*, 25 F.4th at 1265.  We decline to reach either question.  Unlike in those cases, the Energy Companies didn't raise the CAA as a basis for complete preemption here.  And, even assuming that federal common law still exists in this space, it doesn't completely preempt Minnesota's claims for the reasons explained below.

-7-

*Franchise Tax Bd.*, 463 U.S. at 13.  This is because "there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts."  *Gunn*, 568 U.S. at 258 (citation omitted).  The *Grable* doctrine, as we call it, applies to a "special and small category" of cases.  *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).  Under *Grable*, federal question jurisdiction exists "if a federal issue is:  (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258.

The best example is *Grable* itself.  In that case, the IRS seized and sold Grable's property to satisfy his tax liability.  *Grable*, 545 U.S. at 310.  Grable tried to invalidate the sale by filing a quiet title claim in state court, arguing that the buyer's title was invalid because the IRS did not follow the notice requirements prescribed by federal law.  *Id.* at 311.  The buyer promptly removed to federal court. *Id.*  Although Grable pled a purely state-law claim, the dispositive issue of whether the IRS had valid title over the property depended entirely on whether the IRS followed those federal notice requirements.  *Id.* at 315–16.  Because the dispositive state-law issue ultimately depended on the resolution of a federal-law issue—the notice requirements—the Supreme Court held that the quiet-title claim arose under federal law.  *Id.*  In other words, while state law provided the mechanism for the lawsuit, the legal questions central to the case were exclusively federal.

A federal issue is necessarily raised when it "is a *necessary* element of one of the well-pleaded state claims" in the plaintiff's complaint.  *Franchise Tax Bd.*, 463 U.S. at 13 (emphasis added); *see also Boulder III*, 25 F.4th at 1266 ("To determine whether an issue is 'necessarily' raised, the Supreme Court has focused on whether the issue is an 'essential element' of a plaintiff's claim." (citation omitted)).  "This inquiry demands precision."  *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Oper., Inc.*, 561 F.3d 904, 914 (8th Cir. 2009).  A removing

-8-

defendant "should be able to point to the specific elements of [the plaintiff's] state law claims" that require proof under federal law. *Id.*

The Energy Companies argue that Minnesota's claims "necessarily raise issues governed by federal common law and amount to a collateral attack on cost-benefit analyses committed to, and already performed by, the federal government." App. Br. at 34. To date, none of our sister circuits have found that argument persuasive. *See, e.g.*, *Shell Oil III*, 35 F.4th at 57 ("[F]aced with comparable arguments, cases akin to this one flatly reject the idea that federal law is an essential element to the kind of classic state-law claims [the State] raises." (emphasis omitted) (citing *San Mateo III*, 32 F.4th at 747–48; *Baltimore III*, 31 F.4th at 208–15)). We agree with them.

Although the Energy Companies list a variety of federal interests potentially impacted should a court hold them liable, they fail to identify which specific elements of Minnesota's claims require the court to either interpret and apply federal common law or second-guess Congress's cost-benefit rationales in allowing the production and sale of fossil fuels.[6] Unlike *Grable*, where deciding ownership of the property under state law required the court to determine whether the IRS properly followed federal notice requirements, resolving only the *merits* of Minnesota's claims does not require the court to resolve any questions governed by federal law.

To be fair, allowing the State to recover damages for injuries caused by climate change may have the practical effect of impacting the Energy Companies' ability to produce and sell fossil fuels, thereby affecting any federal interest that

---

[6]Though failure to warn under Minnesota law does require the involvement of a *dangerous* product, it does not require a court to determine whether a product is unreasonably dangerous or opine on whether it should be sold generally. *See, e.g.*, *Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 582 (Minn. 2012) (explaining that the duty to warn consists of "two duties: (1) the duty to give adequate instructions for safe use; and (2) the duty to warn of dangers inherent in improper usage." (citation omitted) (cleaned up)).

-9-

relies in part on the availability and affordability of energy.  But, as the Tenth Circuit reasoned, "any implied conflict between the . . . state-law claims and federal cost-benefit determinations speaks to a potential defense on the merits of those claims, specifically a preemption defense, rather than to the jurisdictional issue."  *Boulder III*, 25 F.4th at 1266.  Because federal law is not a necessary element to any of Minnesota's claims, the complaint doesn't "necessarily raise" a federal issue.

Because the "necessarily raised" element is not satisfied, the *Grable* exception to the well-pleaded complaint rule does not apply to Minnesota's claims.

## B.

The Energy Companies also argue that federal question jurisdiction exists under the Outer Continental Shelf Lands Act (OCSLA).  The OCSLA gives federal courts original jurisdiction over "cases and controversies arising out of, or in connection with (A) any operation conducted on the [O]uter Continental Shelf . . . , or which involves rights to such minerals, or (B) the cancellation, suspension, or termination of a lease or permit under this subchapter."  43 U.S.C. § 1349(b)(1).  To determine whether there is jurisdiction, we consider "whether (1) the activities that caused the injury constituted an 'operation' 'conducted on the [OCS]' that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation."  *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014).  Some of our sister circuits have interpreted the second element to require "a but-for connection."  *See id.* (quotation omitted).  Others have held that a causal connection is not required and only a "close link" is necessary.  *See Hoboken*, 45 F.4th at 709.  Although either approach allows broad jurisdiction, "the statute must stop somewhere."  *Id.* at 710; *see Boulder III*, 25 F.4th at 1273 (quotation omitted) ("[A] blind application . . . would result in federal court jurisdiction over all state law claims even tangentially related to offshore oil production on the OCS.").

Neither requirement is met here.  Contrary to the Energy Companies' argument, the activity causing injury in this case is not the mere production of fossil

-10-

fuels—some of which occurred on OCS leases—but rather the alleged "misinformation campaign" carried out via false advertising and misrepresentations in Minnesota. Because there is no indication that the Energy Companies' marketing activities are an "operation" under § 1349(b)(1) or were conducted on the OCS, the first prong of OCSLA jurisdiction isn't met.

Even if the relevant activity was an OCSLA operation, the nexus to Minnesota's claims is lacking under the "but-for" or "close link" approach. Minnesota's challenge to the Energy Companies' marketing activities has no connection to their OCS-based fossil fuel production. Even if they hadn't conducted operations on the OCS, the Energy Companies still would have marketed and sold fossil fuels in Minnesota—because the OCS is just one of many sites the companies produce fossil fuels from.[7] As a result, there is no connection, causal or otherwise, between Minnesota's claims and the OCSLA operations.

Precedent from the Fifth Circuit, which has taken the lead in interpreting OCSLA jurisdiction, supports our conclusion. The Fifth Circuit has found federal jurisdiction under § 1349 only in cases involving close connections to fossil fuel operations on the outer continental shelf—"[t]hey each feature either claims with a direct physical connection to an OCS operation (collision, death, personal injury, loss of wildlife, toxic exposure) or a contract or property dispute directly related to an OCS operation."[8] *Boulder III*, 25 F.4th at 1273 (collecting cases); *see also*

---

[7]*See Maps: Oil and Gas Exploration, Resources, and Production*, U.S. ENERGY INFO. ADMIN., https://www.eia.gov/maps/maps.htm (compiling maps of oil production sites in the United States). The Complaint lists some of these other drilling locations, which include sites in Canada and North Dakota. Appx. at 28.

[8]*See In re Deepwater Horizon*, 745 F.3d 157, 163–64 (5th Cir. 2014) (finding removal jurisdiction over a lawsuit to recover damages to wildlife caused by the blowout of an OCS drilling rig*); Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013) (finding removal jurisdiction over a lawsuit involving the death of an OCS rig worker in a workplace accident); *Tenn. Gas Pipeline v. Hous. Cas. Ins. Co.*, 87 F.3d 150, 155 (5th Cir. 1996) (finding removal jurisdiction over claims

-11-

*Hoboken*, 49 F.4th at 712 (describing four buckets of § 1349 cases: "disputes about who may operate on the Shelf[,] [c]ases about transporting oil or gas from the Shelf[,] [d]isputes over first-order contracts to buy oil or gas produced on the Shelf[,] [a]nd tort suits about accidents on the Shelf." (citation omitted) (collecting cases)). But claims "one step removed from the actual transfer of minerals to shore" are not sufficiently connected, such as "a contractual dispute over the control of an entity which operates a gas pipeline." *United Offshore Co. v. S. Deepwater Pipeline Co.*, 899 F.2d 405, 407 (5th Cir. 1990). The connection between the Energy Companies' marketing activities and their OCS operations is even more attenuated. Because neither requirement is met, there is no federal jurisdiction under § 1349.

III.

Next, the Energy Companies argue the case is removable under 28 U.S.C. § 1442, the federal officer removal statute. That statute authorizes removal of civil and criminal cases "against or directed to . . . any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." § 1442(a). The federal officer removal statute's basic purpose is:

> to protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Federal Government acting within the scope of their authority.

---

resulting from a ship allision with an OCS oil rig platform); *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 567–68 (5th Cir. 1994) (exercising original jurisdiction over a lawsuit seeking to partition property located on the OCS); *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1210 (5th Cir. 1988) (finding removal jurisdiction over a contract dispute involving natural gas extracted from OCS wells); *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1227 (5th Cir. 1985) (exercising original jurisdiction over a contract dispute involving construction of a stationary offshore platform on the OCS).

-12-

*Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 150 (2007) (quotation omitted) (cleaned up). To effectuate that purpose, § 1442 "grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction." *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012) (quotation omitted), *abrogated on other grounds by BP P.L.C. v. Mayor and City Council of Balt.*, 141 S. Ct. 1532, 1538 (2021). Unlike general removal, § 1442 is liberally construed and not constrained by the well-pleaded complaint rule. *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021).

Section 1442(a)(1) removal applies to private parties "who lawfully assist" federal officers "in the performance of [their] official dut[ies]." *Davis v. South Carolina*, 107 U.S. 597, 600 (1883). This requires the private party to be "authorized to act with or for federal officers or agents in affirmatively executing duties under federal law." *Watson*, 551 U.S. at 151 (citation omitted) (cleaned up). This applies to private corporations as well. *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 136 (2d Cir. 2008). To remove the case, a private defendant must establish that (1) it acted under the direction of a federal officer, (2) there is a connection between the claims and the official authority, (3) the defendant has a colorable federal defense to the plaintiffs' claims, and (4) the defendant is a "person," within the meaning of the statute. *Bulic*, 22 F.4th at 738.[9]

Even if the Energy Companies have acted under a federal officer, those activities must have sufficient connection to Minnesota's claims. *Graves v. 3M Co.*, 17 F.4th 764, 769 (8th Cir. 2021). We have historically required a "causal connection" to the conduct charged in the complaint. *Watson v. Philip Morris Cos., Inc.*, 420 F.3d 852, 861 (8th Cir. 2005), *rev'd on other grounds*, 551 U.S. 142 (2007). That standard required "that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Id.* (citation omitted).

---

[9]The parties do not dispute that the Energy Companies are "persons" under § 1442.

-13-

Congress later passed the Removal Clarification Act of 2011, which added the words "or relating to" into § 1442(a)(1).  Pub. L. No. 112-51, sec. 2(b)(1)(A), 125 Stat. 545 (2011).[10]   Some of our sister circuits have recognized that this amendment changed the requirement to a lower "relates to" standard.  *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 35 (1st Cir. 2022); *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 471 (3d Cir. 2015); *Baltimore III*, 31 F.4th at 233; *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (en banc); *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944 (7th Cir. 2020); s*ee also Ohio State Chiropractic Ass'n v. Humana Health Plan Inc.*, 647 F. App'x 619, 624 (6th Cir. 2016) (recognizing that the Removal Clarification Act was "intended to broaden the universe of acts that enable Federal officers to remove to Federal court." (quotation omitted)); *Boulder III*, 25 F.4th at 1251 (citing and incorporating the Fourth and Fifth Circuits' standard);  Under this standard, the requirement is met if the charged conduct has a "connection" or "association" with the federal action.  *Baltimore III*, 31 F.4th at 233.

---

[10]That section, as amended, reads:

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, ~~sued~~ in an official or individual ~~capacity for~~ capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1) (amended 2011) (strikethrough denoting deletion; underline denoting addition).

-14-

Though we have continued to describe the standard in terms of "causal connection," *see Buljic*, 22 F.4th at 738; *Graves*, 17 F.4th at 769, the causal connection required by § 1442(a)(1) is for the activity in question to relate to a federal office. *See Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1144 (11th Cir. 2017) (using what it called a "causal connection" standard that is identical to the "relates to" standard described by the other circuits).

Despite this lower, post-amendment standard, the connection between Minnesota's claims and military fuel production, OCS operations, or participation in the strategic petroleum infrastructure is still too remote. Again, Minnesota alleges that the Energy Companies fraudulently marketed their products and misinformed their customers about the dangers of fossil fuel use, thereby enhancing both their sales and their contribution to climate change. Although the "relating to" requirement presents a low bar, the Energy Companies fall short of that threshold. As the district court explained, the Energy Companies "do not claim that any federal officer directed their respective marketing or sales activities, consumer-facing outreach, or even their climate-related data collection." *Minnesota v. Am. Petroleum Inst.*, 20-CV-1636-JRT, 2021 WL 1215656, at *9 (D. Minn. March 31, 2021). The Energy Companies' production of military-grade fuel, operation of federal oil leases, and participation in strategic energy infrastructure, even if done at federal direction, bears little to no relationship with how they conducted their marketing activities to the general public. At most, those activities relate to the general production of fossil fuels. But none of Minnesota's claims try to hold the Energy Companies liable for production activities—only marketing.[11] *See Baltimore III*, 31 F.4th at 233–34. As

---

[11]We note that Minnesota has no nuisance claim in its complaint. The federal common law applies to suits "brought by one State to abate pollution emanating from another state." *Am. Elec. Power Co.*, 564 U.S. at 421 (collecting cases). We believe that a nuisance claim creates a stronger case for federal jurisdiction, and as the claims move away from "abat[ing] pollution emanating from another state," the case becomes weaker. *Am. Elec. Power Co.*, 564 U.S. at 421; *see In re Otter Tail Power Co.*, 116 F.3d 1207, 1214 (8th Cir. 1997). *But see Hoboken*, 49 F.4th at 712 (holding that City's nuisance claim was still "too far away from Shelf oil production.").

-15-

a result, the relationship between Minnesota's claims and "any federal authority over a portion of [the Energy Companies'] production and sale of fossil-fuel products is too tenuous to support removal under § 1442." *Id.* at 234. Because the claims do not satisfy all four requirements, the Energy Companies cannot remove under § 1442.[12]

IV.

Finally, the Energy Companies argue that the Class Action Fairness Act (CAFA) provides a basis for removal. Although this is a novel argument, we are not persuaded.

CAFA allows the defendant in a civil class action to remove a case if (1) more than $5 million is in controversy and (2) the parties are minimally diverse. 28 U.S.C. § 1332(d)(2). The statute defines "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." § 1332(d)(1)(B). Here, Minnesota exercised its authority under Minn. Stat. § 8.31, which allows the State's Attorney General to file civil actions to enforce state law and distribute any recovery to injured consumers. The Energy Companies argue that § 8.31 is a "similar State statute" under CAFA because it allows Minnesota to represent a larger class of affected, but unnamed, individuals— similar to the named plaintiffs in a Rule 23 class action.

But a State's exercise of *parens patriae*[13] authority is not the same as a class action, even when the State seeks recovery for and on behalf of its citizens' injuries.

---

[12]Because the Energy Companies fail the first and second prongs of federal officer removal, we do not address whether they have a colorable federal defense.

[13]"The doctrine of *parens patriae* allows a sovereign to bring an action on behalf of the interest of all of its citizens." *United States v. Santee Sioux Tribe of Neb.*, 254 F.3d 728, 734 (8th Cir. 2001) (citing *Louisiana v. Texas*, 176 U.S. 1, 19 (1900)).

-16-

The Supreme Court has held that civil suits filed by a state executive to enforce consumer protection laws are not "mass actions" under § 1332(d)(11)(B)(i)—a category of civil cases that try common issues of law or fact for at least 100 plaintiffs and classify as a "class action" for CAFA removal purposes. *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 164 (2014). And at least half of our sister circuits have held that state-led civil enforcement actions likewise don't quality as "class actions" under the statute. *See Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 212–20 (2d Cir. 2013); *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.* 646 F.3d 169, 176 (4th Cir. 2011); *Mississippi ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796, 799 (5th Cir. 2012), *rev'd on other grounds*, 571 U.S. 161 (2014); *Nessel ex rel. Mich. v. AmeriGas Partners, L.P.*, 954 F.3d 831, 838 (6th Cir. 2020); *LG Display Co. v. Madigan*, 665 F.3d 768, 770–72 (7th Cir. 2011); *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847–49 (9th Cir. 2011).

We reach the same conclusion here. Though § 8.31 authorizes Minnesota to file claims and recover for injuries felt by Minnesotans, it bears little similarity to Rule 23. As we have previously explained, "Rule 23(a) of the Federal Rules of Civil Procedure establishes four prerequisites to the maintenance of a class action." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559 (8th Cir. 1982). First, "the class must be 'so numerous that joinder of all members is impracticable.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(1)). Next, there must be "questions of law or fact common to the class," and "the claims or defenses of the class representative must be 'typical of the claims or defenses of the class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(2)–(3)). And finally, the representative party must be able to "fairly and adequately protect the interests of the class." *Id.* (quoting Fed. R. Civ. P. 23(a)(4)). "The Rule's four requirements—numerosity, commonality, typicality, and adequate representation" are the defining characteristics of Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011); *see also Paxton*, 688 F.2d at 559.

Minn. Stat. § 8.31 has no such requirements. Neither the State nor the Attorney General needs to suffer a sufficiently common injury—or any injury for that matter—to pursue claims on behalf of Minnesota residents. Nor does the State's

-17-

exercise of this authority bar Minnesota residents from pursuing these claims, to the extent a private cause of action exists, on their own.  We conclude that § 8.31 does not provide a similar mechanism to Rule 23, which means this lawsuit is not a removable "class action" under CAFA.

## V.

For the foregoing reasons, we hold that Minnesota's claims are not removable under the general removal statute, the federal officer removal statute, the Outer Continental Shelf Lands Act, or the Class Action Fairness Act.  The district court was correct to remand the case, so we affirm.  Accordingly, we deny as moot the petition for permission to appeal in case 21-8005.

STRAS, Circuit Judge, concurring.

Artful pleading comes in many forms.  This is one of them.  Minnesota purports to bring state-law consumer-protection claims against a group of energy companies.  But its lawsuit takes aim at the production and sale of fossil fuels worldwide.  I agree with the court that, as the law stands now, the suit does not "aris[e] under" federal law.  28 U.S.C. § 1331.  I write separately, however, to explain why it *should*.

## I.

There is no hiding the obvious, and Minnesota does not even try: it seeks a global remedy for a global issue.  According to the complaint, energy production has "caused a substantial portion of global atmospheric greenhouse-gas concentrations."  Those gases, the argument goes, have resulted in "climate change"—a label that appears in the complaint over 200 times.  The relief sought is ambitious too: a far-reaching injunction, restitution, and disgorgement of "all profits made as a result of [the companies'] unlawful conduct."  The case, in other words, presents "a clash

-18-

over regulating worldwide greenhouse gas emissions and slowing global climate change." *City of New York v. Chevron Corp.*, 993 F.3d 81, 91 (2d Cir. 2021).

A.

Minnesota has strong views about how to deal with the issue. Other states do too. *See* Brief of Indiana et al. as Amici Curiae in Support of Petitioners at 1, *Suncor Energy (U.S.A.) Inc. v. Bd. of Cnty. Comm'rs*, No. 21-1550 (U.S. July 11, 2022). They do not believe that "one or two" individual states like Minnesota should be able to "dictate environmental policy for other sovereign States." *Id.* at 7. This is, in effect, an interstate dispute.

Not surprisingly, disputes between states are as old as the country itself. *See, e.g.*, Charles Warren, *The Supreme Court and Sovereign States* 38–44 (1924) (listing examples); *see also* Thomas Paine, *Common Sense* 69–70 (1776) (discussing a "difference between Pennsylvania and Connecticut, respecting some unlocated lands"); Don Faber, *The Toledo War: The First Michigan-Ohio Rivalry* (2008) (describing a boundary dispute over the Toledo Strip). Interstate disputes were so common and complicated, in fact, that the Framers specifically vested original jurisdiction over them in the Supreme Court. *See* U.S. Const. art. III, § 2 (giving the Supreme Court original jurisdiction over "all Cases . . . in which a State shall be Party"); *Delaware v. New York*, 507 U.S. 490, 500 (1993); Warren, *supra*, at 65–67. The rule of decision in these cases has always been "known and settled principles of national or municipal jurisprudence"—what we now know as the federal common law. *Rhode Island v. Massachusetts*, 37 U.S. (12 Pet.) 657, 737 (1838); *Lessee of Marlatt v. Silk*, 36 U.S. (11 Pet.) 1, 22–23 (1837) (explaining that "the rule of decision" in cases involving interstate compacts "is not to be collected from the decisions of either state, but is one, if we may so speak, of an international character").

State law is no substitute. *See Connecticut v. Massachusetts*, 282 U.S. 660, 670 (1931) (rejecting reliance on "the same rules of law that are applied in such

-19-

States for the solution of similar questions of private right"); *see also Hinderlider v. La Plata River & Cherry Creek Ditch Co.*, 304 U.S. 92, 110 (1938) (noting that "neither the statutes nor the decisions of either State can be conclusive" of their respective water rights).  When it comes to "outside nuisances" like this one, courts have long looked to common-law principles like "considerations [of] equity," "quasi-sovereign interests," and the need for "caution."  *Georgia v. Tenn. Copper Co.*, 206 U.S. 230, 237–38 (1907) (emphasis omitted); *Missouri v. Illinois*, 200 U.S. 496, 520–21 (1906).  Applying state law, by contrast, only raises the risk of conflict between states, which never "agree[d] to submit to whatever might be done" to their citizens.  *Tennessee Copper*, 206 U.S. at 237.  For that reason, state law has never "st[oo]d in the way" of using "recognized" (federal) common-law principles.  *Missouri*, 200 U.S. at 520; *see* The Federalist No. 80 (Alexander Hamilton) ("Whatever practices may have a tendency to disturb the harmony between the States, are proper objects of federal superintendence and control.").

The point is that federal law still reigns supreme in these types of disputes, notwithstanding *Erie*'s famous declaration that "[t]here is no federal general common law."  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see Collins v. Virginia*, 138 S. Ct. 1663, 1678–79 (2018) (Thomas, J., concurring) (explaining why the federal common law may have preemptive force).  The reason is the "'overriding . . . need for a uniform rule of decision' on matters influencing national energy and environmental policy."  *City of New York*, 993 F.3d at 91–92 (quoting *Illinois v. City of Milwaukee*, 406 U.S. 91, 105 n.6 (1972), *superseded by statute*, Federal Water Pollution Control Act Amendments of 1972, Pub. L. No. 92-500, 86 Stat. 816).  As the Second Circuit has put it in circumstances like these, conflicts between states with different tolerances for greenhouse-gas emissions can only be resolved at the federal level because of the "unique[] federal interests" involved.  *Id.* at 90; *see Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 496–97 (1987) (warning that regulation by multiple states "would lead to chaotic confrontation" (citation omitted)).

-20-

Today's lawsuit is as good an example as any. Minnesota accuses the energy companies of "caus[ing] a substantial portion of *global* atmospheric greenhouse-gas concentrations, and the attendant historical, projected, and committed disruptions to the environment" that go with them. (Emphasis added). Although those "disruptions" have allegedly led to a host of costly problems within Minnesota, they are by no means limited to the "effects of [local] emissions." *City of New York*, 993 F.3d at 92. Rather, the complaint claims that the companies encouraged the consumption of fossil fuels "both in *and outside of* Minnesota," (emphasis added), meaning that it "intends to hold the [companies] liable, under [state] law, for the effects of emissions made around the globe," *City of New York*, 993 F.3d at 92.

Minnesota's end game is equally clear: change the companies' behavior on a global scale. "[T]he obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 637 (2012) (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247 (1959)); *see Cipollone v. Liggett Grp.*, 505 U.S. 504, 548 (1992) (Scalia, J., concurring in the judgment in part and dissenting in part) (observing that "general tort-law duties" can "impose 'requirement[s] or prohibition[s]'" on private parties (quoting 15 U.S.C. § 1334(b)). And the wide-ranging request for injunctive relief speaks for itself.

The problem, of course, is that the state's attempt to set national energy policy through its own consumer-protection laws would "effectively override . . . the policy choices made by" the federal government and other states. *Ouellette*, 479 U.S. at 495. Regulating the production and sale of fossil fuels worldwide, in other words, is "simply beyond the limits of state law." *City of New York*, 993 F.3d at 92.

## B.

Yet somehow, when interstate disputes are litigated through the surrogate of a private party as the defendant, fifty state courts get to handle them. Under the well-pleaded complaint rule, federal preemption operates only "as a defense to the

-21-

allegations in a plaintiff's complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). And a defense, "even [one that] is anticipated in the plaintiff's complaint, and even if both parties admit that [it] is the only question truly at issue in the case," is not a reason to remove a case to federal court. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 14 (1983).

Most of the time, the well-pleaded complaint rule works well. After all, federal courts can't know what they don't know. The complaint usually does not say whether a federal defense is available and, if so, whether anyone will raise it. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 153 (1908); *see also Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005) (requiring a "disputed federal issue"). Nor does it generally say whether the federal issue, if raised, will play a "substantial" role in the litigation. *Grable*, 545 U.S. at 314–15.

None of those mysteries exist here. The complaint itself all but dares the companies to raise a federal-preemption defense. And no one doubts that they will or that it will be the focal point of the litigation. There is no reason for the removal rules to operate in such a confounding way.

And at one point, they didn't. *See Tennessee v. Union & Planters' Bank*, 152 U.S. 454, 460 (1894) (collecting cases). If there was a "real and substantial dispute or controversy which depend[ed] altogether upon the construction and effect of an act of Congress," even if "the claim . . . might[] possibly be determined by reference alone to State enactments," it was removable. *R.R. Co. v. Mississippi*, 102 U.S. 135, 140 (1880); *see Union & Planters' Bank*, 152 U.S. at 460–62 (discussing the history). Perhaps for a "uniquely federal interest[]" like interstate pollution, it *should* still be that way. *City of New York*, 993 F.3d at 90; *see Franchise Tax Bd.*, 463 U.S. at 11–12 (describing the well-pleaded complaint rule "as a quick rule of thumb" that "may produce awkward results").

-22-

C.

But only Congress or the Supreme Court gets to make that call.  And we have our marching orders: even the strongest arguments for removal don't work here.

One is complete preemption.  In rare cases, a federal statute "may so completely pre-empt" state law that any claim within its scope "is necessarily federal."  *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).  In those circumstances, we can take "a peek behind" the complaint to figure out whether the suit raises a federal question.  *Krakowski v. Allied Pilots Ass'n*, 973 F.3d 833, 836 (8th Cir. 2020).  The problem is that the energy companies identify no federal *statute* that completely preempts the consumer-protection claims in Minnesota's complaint.  *See ante*, at 5–7; *see also Krakowski*, 973 F.3d at 839–40 (explaining why "a judicial creation" cannot give rise to complete preemption (quotation marks omitted)).

The other is the substantial-federal-question test.  *See Grable*, 545 U.S. at 314–15; *see also Gunn v. Minton*, 568 U.S. 251, 258 (2013).  It applies when state-law claims "implicate significant federal issues."  *Grable*, 545 U.S. at 312.  At first glance, this possibility looks promising because regulating interstate pollution does, as I explain above, have a long federal pedigree.  But Minnesota's consumer-protection claims do not "necessarily require application of [federal] law."  *Gunn*, 568 U.S. at 259; *see ante*, at 7–10.  Even if federal questions are lying in wait, Minnesota has artfully pleaded around them.[14]

_____

[14]Although at times we have described the artful-pleading doctrine as "limited" to complete preemption, *M. Nahas & Co. v. First Nat'l Bank of Hot Springs*, 930 F.2d 608, 612 (8th Cir. 1991), it is best understood as an umbrella term that applies whenever the complaint obscures the suit's federal nature, *see* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3722.1 (4th ed. 2022); *see also Ohio ex rel. Skaggs v. Brunner*, 629 F.3d 527, 532 (6th Cir. 2010) (recognizing that the description might apply when "federal issues necessarily must be resolved to address the state law causes of action").

-23-

II.

For the time being, that is.  As the case progresses, Minnesota may make it even clearer that the case necessarily "turn[s] on substantial questions of federal law." *Grable*, 545 U.S. at 312.  And developments along those lines could give rise to federal jurisdiction.  *See* 28 U.S.C. § 1446(b)(3) (authorizing removal "within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable"); *see also Parish of Plaquemines v. Chevron USA, Inc.*, 7 F.4th 362, 365 (5th Cir. 2021); *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1220–21 (8th Cir. 2006).  Until then, however, I am duty bound to agree that this lawsuit does not "aris[e] under" federal law.  28 U.S.C. § 1331.

_____

-24-