## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

STATE OF MINNESOTA,

                    Plaintiff,

v.

FLEET FARM LLC, FLEET FARM GROUP
LLC, FLEET FARM WHOLESALE SUPPLY CO.
LLC,

                    Defendants.

Civil No. 22-2694 (JRT/JFD)

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION TO
REMAND AND DENYING DEFENDANT'S
MOTION TO DISMISS**

---

Eric John Maloney, Jason T. Pleggenkuhle, Katherine A. Moerke, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1200, Saint Paul, MN 55101, for Plaintiff.

Andrew W. Davis, Andrew Leiendecker, Sharon Robin Markowitz, Todd A. Noteboom, **STINSON LLP**, 50 South Sixth Street, Suite 2600, Minneapolis, MN 55402, for Defendants.

The State of Minnesota ("the State") brought this action in Minnesota state court against Fleet Farm LLC (formerly known as Mills Fleet Farm LLC), Fleet Farm Group LLC (formerly known as Mills Fleet Farm Group LLC), and Fleet Farm Wholesale Supply Co (formerly known as Fleet Wholesale Supply Co. LLC) (together, "Fleet Farm" or "Defendants") for allegedly selling firearms to individuals that Fleet Farm knew or should have known were straw purchasers of weapons—meaning they were purchasing firearms for others who could not legally obtain or possess one.  The State's Complaint alleged five different theories of liability: negligence, negligence per se, negligent entrustment, aiding

and abetting, and public nuisance.  The Defendants subsequently removed this action to federal court.  The State has now filed a Motion to Remand to State Court, and the Defendants have filed a Motion to Dismiss.

First, although the State's Complaint only raises causes of action based on state law, the Court concludes that this case falls under the small subset of cases where a federal issue is so pervasively involved in the Complaint as to justify federal jurisdiction. The State extensively relies on federal laws, regulations, and guidance related to firearm dealers and sales that a federal issue is necessarily raised.  Furthermore, the Court finds that federal law is the only possible source for the duties of care that are necessary under the State's negligence claim, which is at the crux of the Complaint.  Therefore, the Court will deny the State's Motion to Remand.

Second, the Court finds that the State's Complaint is not preempted by the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901, *et seq*. ("PLCAA" or "the Act").  The PLCAA protects federally licensed firearm dealers from lawsuits stemming from the illegal use of lawfully-obtained firearms and promotes a cohesive set of federal firearm industry regulations.  However, the PLCAA excepts certain actions that are predicated on the violation of a state or federal statute governing firearms.  Because the Court finds that the negligence, public nuisance, and aiding-and-abetting claims are each at least partially predicated on the violation of state and federal statutes governing

firearms, the Court concludes that the entire action is exempt from the PLCAA and may proceed.

Third, the Court finds that each of the claims are plausibly alleged at this early stage of the litigation. The State plausibly alleged proximate cause for each of the claims because, assuming the factual allegations in the Complaint are true, a reasonable jury may conclude that Fleet Farm should have known there was a high likelihood that the firearms would be given to wrongdoers who were highly likely to injure others. The State properly alleged its negligence claims because the straw purchasers' actions plausibly gave rise to a duty of care when it should have become apparent to Fleet Farm that the purchases were not legitimate.

The State plausibly alleged the public nuisance claim because the State claims that the act of selling firearms to a known or suspected straw purchaser can constitute a public nuisance since the proliferation of illegal firearms reasonably endangers the safety and health of the community.

The aiding and abetting claim is also sufficiently alleged because the straw purchasers committed the tort of negligence per se and because the State plausibly alleged the knowledge necessary under state law. The Complaint alleges substantial assistance sufficient for an aiding and abetting claim assuming that Fleet Farm ignored, as alleged, the apparent red flags from the sales.

Similarly, the State sufficiently alleges negligent entrustment based on the apparent red flags from the straw purchasers, which would have alerted a reasonable firearms dealer that the sale created an unreasonable risk of physical harm to the buyer or others.

Finally, the State plausibly alleged negligence per se based on statutes designed to protect the public from firearms possessed by criminals and others not permitted to possess them.  The Court will therefore deny the Defendants' Motion to Dismiss and allow the action to proceed.

**BACKGROUND**

## I.    FACTS

The State of Minnesota sued Fleet Farm in Minnesota state court for allegedly selling handguns to straw purchasers.  (See generally Notice of Removal, Ex. A ("Compl."), Oct. 26, 2022, Docket No. 1-1.)  A straw purchase occurs when a person knowingly purchases a firearm at the request of someone who is not eligible to possess the firearm. (Compl. ¶ 1.)  The State alleges that Fleet Farm sold at least 37 firearms to two straw purchasers over the course of 16 months.  (*Id.*)  In particular, the State claims that Fleet Farm disregarded well-known and blatant warning signs of straw purchasing such as: "(1) multiple purchases of similar handguns (especially 9mm caliber); (2) buying sprees over concentrated periods of time; and (3) staggered visits to different Fleet Farm locations to elude multiple sale reporting requirements."  (*Id.* ¶ 36.)  The State considers these practices "hallmark 'red flags' of illegal gun trafficking by straw purchasers."  (*Id.*)

The State claims that Fleet Farm turned a blind eye to these "flagrantly suspicious circumstances," "knew or consciously avoided knowing that these individuals were straw purchasing firearms" and "aided and abetted their illegal and criminal conduct." (*Id.* ¶ 4.)

## A. Federal Regulations

The State relies heavily on federal and state laws and regulations throughout its Complaint.  Therefore, a background explanation of these laws and regulations is helpful to follow the allegations set forth in this action.

### 1. ATF Form 4473

The Complaint relies upon the federal Gun Control Act of 1968 ("GCA"), 18 U.S.C. §§ 921–931.  The GCA created a nationwide licensing scheme for firearm dealers.  (*Id.* ¶ 18.)  Under the GCA, a person is prohibited from "engag[ing] in manufacturing, importing, or dealing in firearms" without becoming a federal firearms licensee ("FFL").  (*Id.*)  Federal law requires FFLs to be trained on how to spot persons prohibited from possessing firearms, how to spot traffickers and straw purchasers, and on other federal regulations of firearms.  (*Id.* ¶ 20.)

The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") plays a central role in enforcing the GCA and other aspects of federal regulations of firearms.  (*Id.* ¶ 18.)  Federal law requires all firearm dealers to conduct a background check, examine the purchaser's identification, and record the transaction on a firearm transaction record ("ATF Form 4473") prior to transferring a firearm to a person who is not a licensed dealer.  (*Id.* ¶ 21.)  ATF Form 4473 includes an explicit warning to purchasers that makes clear that

they must be the "actual transferee/buyer of the firearm(s) listed." (*Id.* ¶ 22.)  Firearm

dealers such as Fleet Farm can refuse to sell firearms to any buyer that it suspects to be a

straw purchaser and are in fact prohibited from selling the firearm if they know or have

reason to know that the ATF Form 4473 is inaccurate. (*Id.* ¶ 26.)  ATF Form 4473 further

includes an assertion by the firearm dealer that it is their belief that the sale is lawful. (*Id.*

¶ 26.)  Additionally, ATF Form 4473 "makes clear that all firearm dealers must do more

than simply run a background check." (*Id.* ¶ 27.)  Dealers are warned that 18 U.S.C. §

922(d) prohibits firearm transfers if the seller "knows or has reasonable cause to believe"

that the sale is prohibited—even if the dealer has complied with background check

requirements. (*Id.*)

Federal rules further require that dealers keep records of all transactions. (*Id.* ¶

31.)  A dealer violates federal law if it knowingly makes false statements or

misrepresentations in those records or if it fails to properly maintain said records. (*Id.*)

Finally, firearm dealers review federal firearm laws and regulations with ATF

agents when they receive their license and during ATF audits. (*Id.* ¶ 33.) FFLs must certify

that they have reviewed laws and regulations related to firearm transaction records,

conducting transfers between firearm dealers, engaging in firearms dealings, and straw

purchasing. (*Id.*)

### 2. Red Flags

Federal regulations identify certain "red flags" of straw purchasers.  For example,

federal law regards the purchase of more than one handgun in a short period as a

potential indicator of trafficking.  (*Id.* ¶ 30.)  Therefore, ATF Form 3310.4 requires firearm dealers to report all transactions in which an unlicensed buyer purchases two or more handguns within five business days to local law enforcement.  (*Id.*)  Other red flags include purchasing firearms with cash; the buyer being accompanied to the store by others who leave before the transaction or don't buy firearms themselves; and buyers communicating with others about which firearms to purchase via phone call or text message.  (*Id.* ¶ 25.)

### B.  State regulations

The Minnesota Gun Control Act establishes categories of persons who are prohibited from possessing firearms and requires that purchasers obtain a Minnesota permit before buying a pistol or semiautomatic military-style assault weapon ("SAMSAW") from a firearms dealer.  (*Id.* ¶ 19.)  State law also criminalizes straw purchases; under Minnesota state law, it is illegal to transfer a pistol or a SAMSAW "to a person who has made a false statement in order to become a transferee, if the transferor knows or has reason to know the transferee has made the false statement."  (*Id.* ¶ 29 (quoting Minn. Stat. 624.7132, subd. 15(a)(2).)

### C.  Straw Purchases

The State alleges that Fleet farm knew or should have known it was selling to straw purchasers who were trafficking arms.  (*Id.* ¶¶ 34–61.)  The Complaint focuses on two individuals: Jerome Horton and Sarah Elwood.  (*Id.* ¶¶ 37, 53.)

### 1. Jerome Horton

Horton purchased 24 firearms from Fleet Farm in a four-month span between mid-June and mid-October 2021.  (*Id.* ¶ 38.)  Horton purchased multiple guns at once on five different days, made multiple purchases at the same location within five business days on several occasions, purchased nearly all the same caliber (9mm) of a handgun, and staggered purchases of single handguns within days or weeks of each other at different Fleet Farm locations.  (*Id.* ¶ 41.)  Horton was also recorded by Fleet Farm surveillance videos using his phone to either take photographs or video in connection with the purchase of a handgun on October 17, 2021.  (*Id.* ¶ 42.)  The State alleges that some of these purchases necessitated that Fleet Farm submit additional paperwork to the ATF because of indicators of unlawful gun trafficking.  (*Id.* ¶ 41.)  These behaviors allegedly put Fleet Farm on notice that Horton was engaged in straw purchasing, but Fleet Farm continued to sell guns to Horton anyway.  (*Id.* ¶ 43.) Horton was charged by information on January 18, 2022, and ultimately pled guilty to one count of making false statements in the course of purchasing a firearm.  (*Id.* ¶ 50.)

### 2. Sarah Elwood

Fleet Farm sold 13 firearms to Elwood in the 12-month span from June 2020 to May 2021.  (*Id.* ¶ 54.)  Many of these were sold on the same day, including three days in which Fleet Farm sold her multiple handguns just days apart.  (*Id.* ¶ 55.)  The State argues that the sheer volume of purchases by Elwood within a short time put Fleet Farm on notice that she may have been a straw purchaser.  (*Id.* ¶ 57.)  Additionally, multiple

purchases required additional paperwork to the ATF because of indicators of unlawful gun trafficking. (*Id.* ¶ 57.) Like Horton, Elwood ultimately pleaded guilty to one count of making false statements during the purchase of a firearms. (*Id.* ¶ 59.)

### D. Injuries

The Complaint alleges that guns sold by Fleet Farm to straw purchasers, including Horton, caused harm to residents of Minnesota. (*Id.* ¶ 45.) Multiple guns originating from Fleet Farm have been found in the possession of individuals without a permit to carry a handgun. (*Id.* ¶¶ 45, 47–49.) One of the guns purchased by Horton was used in a large-scale shootout in a St. Paul bar on October 10, 2021, that resulted in the death of a 27-year-old woman and multiple injured bystanders. (*Id.* ¶¶ 2, 49.) Another was found by a six-year-old boy in the front yard of his house, which was likely discarded by a fleeing suspect involved in an earlier Minneapolis public shooting incident. (*Id.* ¶ 46.) More generally, the State links Fleet Farm's failure to stop straw purchases to the general increase in gun violence in the state of Minnesota. (*Id.* ¶¶ 62–69.)

## II.   PROCEDURAL HISTORY

The State filed this action against Fleet Farm in Minnesota state court. (*See generally* Compl.) The State brings five claims under state law: negligence, negligence per se, negligent entrustment, aiding-and-abetting, and public nuisance. (*Id.* at 28–36.) The State seeks injunctive and monetary relief on behalf of the people of the State of Minnesota. (*Id.* at 35–37.)

Fleet Farm removed this action to federal court on October 26, 2022.  (Notice of Removal, Oct. 26, 2022, Docket No. 1.)  Fleet Farm argued that the Court has original jurisdiction under 28 U.S.C. § 1331 both because there is a federal question and under the Class Action Fairness Act (28 U.S.C. § 1332(d)) ("CAFA") because this is effectively a class action on behalf of Minnesota's residents.  (*Id.* ¶ 4.)

The State then moved to remand this action to Minnesota state court, arguing that the Court lacks subject matter jurisdiction.  (Motion to Remand, Nov. 7, 2022, Docket No. 12.)  Fleet Farm has moved to dismiss pursuant to Rule 12(b)(6).  (Mot. Dismiss, Nov. 23, 2022, Docket No. 18.)  The Court will address each motion.

DISCUSSION

## I.   MOTION TO REMAND

### A.  Remand Standard

Typically, a defendant may remove a civil action to federal court only if the action could have been filed originally in federal court.  *See* 28 U.S.C. § 1441(a); *Gore v. Trans World Airlines*, 210 F.3d 944, 948 (8th Cir. 2000).  The party seeking removal bears the burden of demonstrating that removal was proper, and "all doubts about federal jurisdiction must be resolved in favor of remand."  *Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009).  Remand is mandatory "at any time before final judgment [if] it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c).

-10-

"[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.  The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted).  But a plaintiff may not defeat federal jurisdiction through artful pleading, in which a "plaintiff disguises federal claims as state ones."  *Minnesota by Ellison v. Am. Petroleum Inst.*, No. 20-1636, 2021 WL 1215656, at *2 n.4 (D. Minn. Mar. 31, 2021).  Thus, "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues."  *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). The Supreme Court determined that a "federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *Id.*  The proper inquiry for the Court is whether "a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Id.* at 314.

## B.  Remand Analysis

The State challenges the Court's jurisdiction over this case because it represents that all of its claims are grounded in state law independent of federal law.  Fleet Farm argues that the State's theory of liability hinges entirely on alleged violations of federal legal duties and thus the Complaint necessarily raises federal issues.  This question is

analyzed using the *Grable* doctrine, in which federal jurisdiction exists over state law claims if a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Minnesota v. Am. Petroleum Inst.*, No. 20-1636, 2021 WL 1215656, at *6 (D. Minn. Mar. 31, 2021) (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). Additionally, the Court only needs jurisdiction over one of the claims to exercise supplemental jurisdiction over the rest. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 563 (2005).[1] The Court will consider each of the *Grable* factors.

### 1. Necessarily Raised

"A federal issue is necessarily raised when it 'is a *necessary* element of one of the well-pleaded state claims' in the plaintiff's complaint." *Am. Petroleum Inst.*, No. 21-1752, 2023 WL 2607545, at *4 (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 13 (1983). The Eighth Circuit has found that a federal question is necessarily raised when "federal law permeates the allegations such that [the state law claims] cannot be adjudicated without reliance on and explication of federal law." *Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020). The plaintiffs in *Wullschleger* brought

---

[1] As the Supreme Court explained, "[n]othing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the plaintiff's] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction . . . Once the case was removed, the District Court had original jurisdiction over the federal-law claims and supplemental jurisdiction under § 1367(a) over the state-law claims." *Exxon Mobil Corp.*, 545 U.S. at 563 (internal citations and quotations omitted).

a lawsuit in Missouri state court against producers of prescription pet foods and alleged that defendants had deceived plaintiffs and others into believing the products were approved by the United States Food and Drug Administration. *Id.* at 520. Like in the case at hand, the plaintiffs in *Wullschleger* alleged only state law claims, including under Missouri antitrust laws. The Eighth Circuit found that the federal court had jurisdiction because the plaintiffs "elected to premise [their claims] on violations and interpretation of federal law" and extensively recounted how the defendants conduct over five years violated federal law and FDA guidance. *Id.* at 522.

Applying that same logic here, the Court has jurisdiction over these claims because the State details how Fleet Farm is failing its obligations as a federally licensed arms dealer. It focuses extensively on the ATF Forms and their required disclosures and certifications. Additionally, the State's Complaint goes into great detail on the importance of federal firearm laws and regulations. In fact, the State's negligence claim seems premised on the fact that Fleet Farm violated its duty of care by not following federal guidance for FFLs.[2]

---

[2] In its reply, the State noted that although the Complaint provides a list of red flags, it does not plead that they were solely established by the ATF. (Pl.'s Reply Mem. Supp. Mot. Remand at 5 n.3, Dec. 9, 2022, Docket No. 27.) But the Complaint details various red flags in its discussion of how straw purchasers commonly falsely certify ATF Form 4473. (Compl. ¶ 25.) Additionally, the Complaint alleges that "[f]ederal law regards the purchase of more than one handgun in a short period as a potential indication that the purchaser could be involved in trafficking." (*Id.* ¶ 30.) The Complaint does not cite any parallel guidance from the state.

-13-

The State argues that it may rely solely on state law to establish its claims.  But the Minnesota statutes cited by the Complaint cannot settle the core dispute in this litigation: what duties Fleet Farm had in the course of selling firearms to apparent straw purchasers. As the Fifth Circuit explained, "[t]he type of claim that creates a federal question under *Grable* is typically a state-law claim premised on some component of federal law. For example, a negligence claim that is premised on the existence of a duty established by federal law creates a federal question."  *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 588 (5th Cir. 2022).  The State's negligence claim is unquestionably premised on duties established by federal law.

As the Complaint makes clear, the State is not suing Fleet Farm for violations of either the federal or state gun control laws.  Rather, the State claims that Fleet Farm violated various traditional duties of care under state law.[3]  The crux of the negligence claim is not that state laws were violated, but that Fleet Farm acted unreasonably in light of federal and state regulations and guidance.  This question will invariably entail an exploration of the duties and responsibilities of FFLs at the federal level.  And the answer

---

[3] For example, under the negligence claim, the Complaint alleges that "Defendants had a duty to exercise reasonable care in distributing and selling firearms and to refrain from engaging in any activity creating reasonably foreseeable risks of injury to others."  (Compl. ¶ 71.)  The Complaint also alleges that Defendants failed to exercise reasonable care when they "knew or should have known" that they were selling firearms "destined for the illegal stream of commerce and into the hands of persons ineligible to possess a firearm."  (*Id.* ¶ 72.)  The Complaint then goes on to state that Defendants "**further** breached their duty" by engaging in conduct that violated federal and state law.  (*Id.* ¶¶ 74–75 (emphasis added).)

will hinge directly on the practices, trainings, and requirements mandated by federal law and regulations. *See Bd. Of Comm'rs of Se. La. Flood Prot. Auth.–E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 723 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 420 (2017) ("The absence of any state law grounding for the duty that the Board would need to establish for the Defendants to be liable means that that duty would have to be drawn from federal law.").

Finally, the State points to the Eighth Circuit's recent decision in *American Petroleum Institute*. 2021 WL 1215656 at *1. The Eighth Circuit affirmed this Court's remand to state court of a lawsuit filed by the State of Minnesota against American Petroleum Institute, and other fossil fuel producers, alleging common law fraud and violations of state consumer protection statutes. *Id.* That case is distinguishable from the present one because the defendants there failed to specify which elements of the State's claim required the Court to interpret or apply federal law. *Id.* at *4. The fact that several clearly federal interests would be impacted should a court hold the defendants liable was not enough to necessarily raise a federal issue. *Id.* In contrast, in this case, the State has elected to raise a claim with an element that cannot be established without exploration of federal laws and regulations: the duties of FFLs.

Therefore, federal issues are necessarily raised by the Complaint.

### 2. Actually Disputed

The State argues that even if a federal issue is present, there is no dispute over the content of federal firearms laws and regulations. However, the scope of the alleged duties under the GCA and its implementing regulations, and guidance, specifically

revolving around issues of red flags, will likely be a central aspect of this litigation.  Fleet Farm contends that the parties are not in agreement regarding the regulations.  For example, Fleet Farm argues that it cannot be held liable because the ATF approved each of the sales at issue.  In contrast, the State argues that Fleet Farm had duties beyond conducting background checks and receiving approval from the ATF for each sale.  Therefore, the Court concludes that the scope of the duties created by federal regulations and guidance is actually in dispute.

### 3.  Substantiality

A federal issue is substantial if "state adjudication would undermine the development of a uniform body of federal law" and the case "presents a nearly pure issue of law that would have applications to other federal cases."  *Bd. Of Comm'rs of Se. La. Flood Prot. Auth.–E.*, 850 F.3d at 724 (quotations omitted).  The Supreme Court has explained that the "substantially" requirement relates to the federal system, not to the importance to the parties.  *Gunn*, 568 U.S. at 260.

The State points to *Merrell Dow Pharms. Inc. v. Thompson*, in which the Supreme court held that a state law tort claim alleging a drug was misbranded in violation of federal law was not sufficient to confer federal jurisdiction.  478 U.S. 804, 814 (1986).  The *Merrell Dow* Court concluded that the federal issue was insufficiently substantial to confer federal-question jurisdiction because Congress did not create a cause of action under the federal law at issue.  *Id.*  But the Supreme Court later stated that the "broad language" in *Merrell Dow* must be read in context and does not "overturn[] decades of precedent"

-16-

authorizing federal jurisdiction whether or not a federal law created a private cause of action. *Grable*, 545 U.S. at 317.

In adopting the GCA, Congress recognized the importance of a consistent, nationwide approach to regulating firearm sales and deemed it necessary to enact federal control over interstate and foreign commerce of firearms by creating a federal scheme of regulations over the sale of firearms. *See generally* 15 U.S.C. § 7901(a). Other courts have similarly concluded that federal issues are substantial when they involve complex federal regulatory schemes. *See Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 195 (2nd Cir. 2005).

At issue is not just the Gun Control Act, but also the various regulations and enforcement requirements by the ATF. A central question in this case is likely to be how similarly situated firearm dealers would have acted. *See* Restament (Second) of Torts § 283 (Am. L. Inst. 1965) ("Unless the actor is a child, the standard of conduct to which he must conform to avoid being negligent is that of a reasonable man **under like circumstances**.") (emphasis added). The resolution of this case is likely to have a substantial impact on how future firearm retailers—in and out of Minnesota—act in similar circumstances. Therefore, the Court concludes that the federal issue in this case is substantial.

### 4. Federal-State Balance

The final *Grable* requirement is that the federal issue raised must be capable of resolution "without disrupting the federal-state balance approved by Congress." *Gunn*,

568 U.S. at 258.  Commercial firearms are predominantly regulated at the federal level.

As the Complaint makes clear, firearm dealers must be federally licensed, are directly

regulated by the ATF, and receive the majority of their training and guidance from federal

sources.  Therefore, Fleet Farm's duties are largely established at the federal level—not

by the state.  The central issue in this litigation will be the contours of those federal

regulations and duties, rather than the contours of state law.  In fact, once the federal

issues are resolved, the application of state law should be relatively straightforward.

Therefore, the Court may resolve the central issues in this case without disturbing the

federal-state balance.

Accordingly, all the *Grable* requirements are satisfied.  The issues at play in this

litigation are inherently interlaced with federal law issues, so the Court may exercise

jurisdiction over this action.  The Court will therefore deny the State's Motion to Remand.[4]

---

[4] Because the Court denies the State's Motion to Remand under the *Grable doctrine*, the Court need not consider the Defendant's claim of jurisdiction under CAFA.  However, the Court will note that it has previously declared that similar *parens patriae* actions brought by the State of Minnesota are not covered under CAFA.  *See Am. Petroleum Inst.,* 2021 WL 1215656, at *12 ("[E]very court to have addressed the application of CAFA to actions brought by a State in *parens patriae* under state common law or consumer protection statutes has found that CAFA is not applicable.").

## II.   MOTION TO DISMISS

### A. Motion to Dismiss Standard

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In reviewing a Rule 12(b)(6) motion to dismiss, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Fleet Farm urges the Court to dismiss all claims under Rule 12(b)(6) either because the Protection of Lawful Commerce in Arms Act ("PLCAA" or "the Act") preempts the

claims, or because the State failed to plausibly allege them.  The Court will first address issues of preemption and then consider whether each claim is plausibly plead.

## B.  Preemption Under The PLCAA

Congress enacted the PLCAA after finding that lawsuits were being commenced against businesses for selling firearms that operate as designed and intended.  The plaintiffs in those lawsuits usually sought monetary damages and other relief for harm caused by the misuse of firearms by third parties, including criminals.  15 U.S.C. §§ 7901(a)(3).

The PLCAA immunizes firearm dealers from such lawsuits by mandating that a "qualified civil liability action may not be brought in any Federal or State court."  15 U.S.C. § 7902(a).  A qualified civil action is:

> a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a [firearm], or trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines or penalties, or other relief, resulting from the criminal or unlawful misuse of a [firearm] by the person or a third party.

15 U.S.C. § 7903(5)(A).  The PLCAA has six exceptions to the qualified civil liability definition.  Relevant to this lawsuit are the following exceptions:

> (ii) an action brought against a seller for negligent entrustment or negligence per se;
>
> (iii) an action in which a manufacturer or seller of a [firearm] knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought[.]

15 U.S.C. §§ 7903(5)(A).  Section 7903(5)(A)(iii) is referred to as the "predicate exception"

because "its operation requires an underlying or predicate statutory violation."  *See City*

*of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 351 (E.D.N.Y. 2007).  Under this

exception, the "plaintiff not only must present a cognizable claim, he or she also must

allege a knowing violation of a 'predicate statute.'"  *Ileto v. Glock, Inc.*, 565 F.3d 1126,

1132 (9th Cir. 2009) (citing *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 390 (2d

Cir. 2008)).  Additionally, the predicate statute must regulate the firearms industry

specifically.  *Beretta*, 524 F.3d at 404.

The question before the Court is whether any of the State's claims fall under the

exceptions to the PLCAA.  Only one claim needs to survive the preemption analysis for the

entire suit to move forward because the PLCAA preempts "qualified civil liability actions,"

not claims.[5]  *See* 15 U.S.C. §  7903(5)(A) (defining "qualified civil liability action").

_____

[5] Other courts have come to the same conclusion.  *See Chiapperini v. Gander Mountain Co., Inc.*, 13 N.Y.S. 3d 777, 787 (Sup. Ct. Monroe Cnty. 2014) ("[T]his Court finds two applicable PLCAA exceptions thereby permitting the entire Complaint to proceed through litigation, without the need for a claim-by-claim PLCAA analysis."); *Williams v. Beemiller, Inc.*, 100 A.D.3d 143, 151 (N.Y. App. Div. 2012), *op. am. on reargument*, 103 A.D.3d 1191 (N.Y. App. Div. 2013) ("In light of our conclusion that this action falls within the PLCAA's predicate exception and therefore is not precluded by the Act . . . we need not address plaintiffs' further contention that this action falls within the PLCAA's negligent entrustment or negligence per se exception.").

CASE 0:22-cv-02694-JRT-JFD   Doc. 36   Filed 06/27/23   Page 22 of 37

Fleet Farm argues that the negligence, public nuisance, aiding and abetting and negligent entrustment claims are preempted by the PLCAA.[6]  The Court will analyze each claim separately.

### 1. Negligence

Fleet Farm argues that the negligence claim is preempted because the State does not assert a knowing violation of a state or federal statute as required under the predicate exception.  However, the State plausibly alleges that Fleet Farm had actual knowledge that it was facilitating straw purchases, in violation of federal and state firearm laws.  It is therefore not preempted.  Of course, the validity of that allegation is an issue to be further explored through discovery, and if necessary, decided by a jury.

Additionally, Fleet Farm urges the Court to find that the PLCAA preempts common law negligence claims.  *See Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.,* No. 21-11269, 2022 WL 4597526, at *16 (D. Mass. Sept 30, 2022); *Jefferies v. Dist. of Columbia*, 916 F. Supp. 2d 42, 46–47 (D.D.C. 2013).  But the PLCAA does not preempt all claims based on common law, but rather any claims (common law or statutory) that **are not predicated** on the violation of a federal or state statute regarding the regulation of firearms.  The cases Fleet Farm points to are distinguishable because neither involve claims of negligence at least partially grounded on statutory violations.  In this case, the

---

[6] Both negligent entrustment and negligence per se are explicitly excepted by the PLCAA. Fleet Farm does not argue that the negligence per se claim is preempted and only argues that the State's claim for negligent entrustment does not fit the definition in the PLCAA.

-22-

negligence claim is at least partly predicated on the violation of various federal and state statutes.  (*See* Compl. ¶¶ 74–75.)  These statutes concern the regulation of firearms as required by the PLCAA predicate exception.  *See* 15 U.S.C. §§ 7903(5)(A)(iii).  Thus, the negligence claim is not preempted.[7]

### 2.  Public Nuisance

The Court similarly concludes that the public nuisance claim is not preempted for the same reasons the negligence claim is not preempted.  Fleet Farm argues that the State's public nuisance claim is preempted because the claim is based on Minnesota's criminal public-nuisance statute, which does not reference firearms.  The Court disagrees because although the Complaint relies on Minn. Stat. § 609.74 as the foundation for its cause of action, the claim is partially predicated on the violation of same statutes as the negligence claim, and which the Court concluded fit the predicate exception.  Furthermore, other courts have recognized that public nuisance claims can be predicated on the violation of other federal and state laws. *Beemiller*, 100 A.D.3d at 152.  Therefore, the Court concludes that the State's action is not preempted by the PLCAA.

--------

[7] Other courts considering whether negligence claims are preempted by the PLCAA have arrived at a similar conclusion.  *See e.g.*, *A-1 Jewelry*, 247 F.R.D. at 353 ("Because the instant action alleges violations of several federal and state statutes by the defendants, it falls within the predicate exception of PLCAA.  The PLCAA does not bar this action."); *Beemiller*, 100 A.D.3d at 147–51 (reversing the lower court's dismissal of a complaint with negligence and public nuisance claims under the PLCAA because plaintiffs "sufficiently alleged that defendants knowingly violated various federal and state statutes applicable to the sale or marketing of firearms within the meaning of the PLCAA's predicate exception").

### 3. Aiding-and-Abetting

Fleet Farm argues that the PLCAA prohibits the State's aiding-and-abetting claims because it does not fit within either of the pair of exception examples mentioned under the predicate exception. *See* 15 U.S.C. §§ 7903(5)(A)(iii)(I)–(II). Fleet Farm would have the Court read the statute as establishing an exclusive set of instances where aiding-and-abetting claims are excepted from the PLCAA. However, the statute's wording evidences that this is not an exhaustive list. Instead, Congress included those as examples of the kind of claims that are excepted as evidenced by the use of the word "including." *See* 15 U.S.C. §§ 7903(5)(A)(iii) ("an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, **including**—") (emphasis added).

The State does not attempt to bring its aiding-and-abetting claim through these exceptions. Rather, it argues that the two straw purchasers committed negligence per se themselves, and that Fleet Farm aided and abetted the tort of negligence per se when it knew or reasonably should have known that the individuals were straw purchasers and directly violating federal and state regulation of firearm sales. Thus, the Court concludes the aiding-and-abetting claim, as alleged, falls under the predicate exception and is not preempted.

### 4. Negligent entrustment

Finally, Fleet Farm argues that the PLCAA preempts the State's negligent-entrustment theory because it has a specific carve out in the statute for negligent-entrustment, and the State's claim does not fit within it.  *See* 15 U.S.C. § 7903(5)(A)(ii). The PLCAA defines negligent entrustment as "supplying of a [firearm] by a seller **for use** by another person when the seller knows, or reasonably should know, the person whom the product is supplied is **likely to, and does, use** the product in a manger involving unreasonable risk of physical injury to the person or others."  15 U.S.C. §§ 7903(5)(B) (emphasis added).  Fleet Farm suggests that the term "use" is ambiguous, and that the legislative history of the act suggests it does not include reselling.  *See Soto Bushmaster Firearms Int'l, LLC*, 2016 WL 8115354, at *14–15 (Conn. Super. Ct. Oct. 14, 2016) (finding the term "use" to be ambiguous, reviewing the legislative history, and concluding that "Congress contemplated negligent entrustment to include only direct entrustment to a shooter").

The Court agrees with Fleet Farm that the present case does not meet the definition of negligent entrustment under the PLCAA because the straw purchasers did not use the firearms themselves, but rather transferred them to others who then caused the injuries.  However, the negligent entrustment claim remains alive in this case because only one claim must survive the preemption analysis for the entire action to move forward.

-25-

### C. Failure to State A Claim

Having determined that this action is not preempted by the PLCAA, the Court will now assess whether each claim has been adequately alleged and can withstand Fleet Farm's challenge under Federal Rule of Civil Procedure 12(b)(6).

#### 1. Negligence

To establish a negligence claim under Minnesota law, the State must allege: "(1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of the duty being the proximate cause of the injury." *Gradjelick v. Hance*, 646 N.W.2d 225, 230 (Minn. 2002). In Minnesota, "general negligence law imposes a general duty of reasonable care when the defendant's own conduct creates a foreseeable risk of injury to a foreseeable plaintiff." *Domagala v. Rolland*, 805 N.W.2d 14, 23 (Minn. 2011). Minnesota also imposes a duty of reasonable care when the defendant's conduct creates a dangerous situation. *Id.* at 26. Although foreseeability of injury is ordinarily decided by the court, "[i]n close cases, the issue of foreseeability should be submitted to the jury." *Id.* at 27; *see also Ileto v. Glock Inc.*, 349 F.3d 1191, 1204 (9th Cir. 2003) ("Although whether a duty exists is a question of law, foreseeability often is a question left for the jury to decide.")

*Duty and Foreseeability*

Although this is a close case, the State has alleged sufficient facts for a reasonable jury to conclude that Fleet Farm created a foreseeable risk of injury to residents of Minnesota. Assuming the facts asserted in the Complaint to be true, the sale of firearms

to individuals that Fleet Farm had reason to believe were straw purchasers created a foreseeable risk of injury. The risk from these sales is evident given the myriad of regulations, training, and resources provided to Fleet Farm and other FFLs to identify and prevent straw purchases. Discovery is warranted to determine, among other things, whether Fleet Farm recognized the alleged "red flags" as such, and to determine what additional information Fleet Farm knew about each of the straw purchasers.

*Proximate Cause*

Fleet Farm argues that the State has failed to plausibly plead proximate cause. This analysis applies to not only the State's negligence claim, but also its other claims.

In Minnesota, "the law is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others, then [they are] liable for any injury proximately resulting from it, although [they] could not have anticipated the particular injury which did happen." *Dellwo v. Pearson*, 259 Minn. 452, 455 (Minn. 1961). However, proximate cause requires "a showing that the defendant's 'conduct was a substantial factor in bringing about the injury.'" *Lubbers v. Anderson,* 539 N.W.2d 398, 401–02 (Minn. 1995). "Generally, proximate cause is a question of fact for the jury" unless "reasonable minds can arrive at only one conclusion." *Id.* at 402.

Fleet Farm argues that any causal chain has been broken by superseding events— specifically the criminal acts of third parties that Fleet Farm did not control or transact with. It is true that the criminal act of a third person could break the chain of causation if

the criminal act was not reasonably foreseeable.  *See Hilligross v. Cross Cos.*, 228 N.W.2d

585, 586 (Minn. 1975).   However, the inverse is also true.   Where a criminal act is

reasonably foreseeable, then that act does not break the causal chain.  *Id.*

In this case, the State has plausibly alleged that Fleet Farm knew or should have

known that it was selling firearms to straw purchasers, who by definition are purchasing

weapons for people who cannot purchase weapons legally.   A reasonable jury may

conclude, depending on facts yet to be determined, that Fleet Farm should have known

there was a high likelihood that the firearms would end with wrongdoers who were highly

likely to injure others.   Other courts have similarly concluded that firearm sales can give

rise to the foreseeability of subsequent gun trafficking and violence.  *See e.g., Beemiller*,

100 A.D.3d at 153–54; *Knight v. Wal-Mart Stores, Inc.,* 889 F. Supp. 1532, 1541–42 (S.D.

Ga. 1995) ("Cases dealing with gun purchasers who then harm third parties hold that the

gun seller may be held liable for foreseeable harm resulting from the sale, despite several

intervening acts.").

Therefore, the Court concludes that the State has plausibly alleged proximate

cause.  Because Fleet Farm does not challenge the remaining negligence factors, the Court

finds that the State has adequately pled its negligence claim at this stage of the litigation.

### 2. Public Nuisance

Under Minnesota law, public nuisance is defined as an "act or failure to perform a

legal duty" that "maintains or permits a condition which unreasonably annoys, injures or

endangers the safety, health, morals, comfort, or repose of any considerable number of

members of the public," or any other act or omission that the law has declared a public

nuisance.  Minn. Stat. § 609.74.

Fleet Farm argues that the State has not plausibly alleged that Fleet Farm's conduct

interfered with "public rights" or "endanger[ed] public health."  *See State v. Red Owl*

*Stores*, *Inc.*, 253 Minn. 236, 245 (Minn. 1958).  However, the State's Complaint plausibly

connects the straw purchases by two individuals to interference with public rights and

general endangerment of public health.  The Complaint alleges that Fleet Farm had reason

to know that at least two individuals were engaging in straw purchases, and those

purchases were connected to various incidents, including a shootout in St. Paul.  The State

also connected one of the straw purchases to a firearm found by a six-year-old boy in

front of his house, likely discarded by a suspect fleeing a shooting incident.  These are

clear examples of how illegally-obtained firearms endanger the public in a way that legal

firearms typically do not.   The Complaint also alleges that Fleet Farm's conduct

contributes to the rise in gun crimes and that between 2019 and 2021 there was a 168%

increase in guns being recovered as part of a crime within six months from purchase.

(Compl. ¶ 65.)  The State plausibly alleges that the unlawful proliferation of firearms

interferes with rights common to the public and deprives Minnesotans of peaceful use of

public spaces.  (Compl. ¶ 109.)

Fleet Farm focuses on the fact that firearms are legal products and argues that

other courts have concluded that public nuisance claims cannot be premised on using a

legal product. *Cf. City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1117–21 (Ill. 2004). However, this argument fails for three reasons. First, the State is not relying on a common law public nuisance claim, but rather one based on statute. Second, although Minnesota courts have not directly addressed this issue, they have allowed public nuisance claims similar to those brought by the State involving legal products. *See State v. Juul Labs, Inc.*, No. 19-19888, 2021 WL 2692131, at *4–5 (Minn. Dist. Ct. June 21, 2021) (JUUL nicotine products); *State v. Purdue Pharma L.P.*, No. 18-10788, 2019 WL 11729023, at *4 (Minn. Dist. Ct. Jan. 4, 2019) (opioids). Additionally, other jurisdictions have recognized public nuisance claims against firearm dealers akin to the State's claim here. *E.g.*, *Ileto*, 349 F.3d at 1211 n.26; *A-1 Jewelry*, 247 F.R.D. at 343; *City of Boston v. Smith & Wesson Corp.*, No. 199902590, 2000 WL 1473568, at *14 (Mass. Super. Ct. July 13, 2000). Lastly, Fleet Farm characterizes the State's claim as one involving a nuisance based on a legal product, but that argument ignores the critical and distinguishing factor between this and other cases involving misuse of a firearm: straw purchasing is illegal.

Fleet Farm also argues that it cannot be liable for a public nuisance because it did not control the instrumentality when the nuisance was created, i.e., it did not control firearms when they were given from straw purchasers to individuals not permitted to possess firearms. But there is no such requirement under Minnesota law. Fleet Farm relies on two federal court cases for this proposition: *Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993) and *Appletree Square 1 Ltd. P'ship v. W.R.*

*Grace & Co.,* 815 F. Supp. 1266, 1274 n.13 (D. Minn. 1993). *Tioga* does not control in this case because it involved North Dakota law. *Appletree Square 1* is also not persuasive because it relied on a Minnesota Supreme Court case dealing with a different nuisance statute.

Even assuming there is a control requirement, the State plausibly alleged that Fleet Farm controlled the instrumentalities that caused the nuisance. Unlike in other cases where a product is legally sold and later used in a way that endangers the public, the very act of selling firearms to suspected straw purchasers endangers the public and is part of the nuisance. Therefore, the Court finds that the State has plausibly alleged its public nuisance claim.

### 3. Aiding and abetting

A claim for aiding and abetting the tortious conduct of another has three elements:

> (1) the primary tort-feasor must commit a tort that causes an injury to the plaintiff;
>
> (2) the defendant must know that the primary tort-feasor's conduct constitutes a breach of duty; and
>
> (3) the defendant must substantially assist or encourage the primary tort-feasor in the achievement of the breach.

*Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 187 (Minn. 1999). Knowledge and substantial assistance are evaluated "in tandem," meaning when there is a minimal showing of substantial assistance there must be a greater showing of scienter. *Id.* at 188. In this case, the tort committed by the straw purchasers was negligence per se by

engaging in straw purchasing and unlicensed firearm dealing, and so the first element was properly pled.

With regard to the second element, the parties disagree about whether Minnesota law requires the defendant to have actual knowledge or if constructive knowledge suffices. The Court will not address this dispute in detail because the Court concludes that the State has sufficiently pled enough facts at this stage to suggest actual knowledge. The State plausibly alleges that the straw purchasers' behavior was such that it reasonably put Fleet Farm on notice that the sales were not legitimate purchases. (*See* Compl. ¶¶ 36, 99.)

Finally, Fleet Farm argues that the third element cannot be met because "routine professional services" like selling firearms cannot constitute substantial assistance. *See Zayed v. Associated Bank, N.A.* ("*Zayed I*"), 779 F.3d 727, 735 (8th Cir. 2015). But Fleet Farms omits an important part of the analysis: some knowledge of the wrongdoing. In *Zayed I*, the Eighth Circuit noted that "in cases involving professionals, most courts have recognized that 'substantial services' means something more than the provision of routine professional services." *Id.* (citing *Witzman,* 601 N.W.2d at 188–89.) The Eighth Circuit recognized that "[s]ome affirmative step is required," meaning that the assistance "must further the [tort] itself, and not merely constitute general aid to the tortfeasor." *Id.* (citations omitted). Furthermore, the Eighth Circuit was relying on a proposition from *Witzman*, wherein the Minnesota Supreme Court simply required that the assistance

provided be accompanied by some level of knowledge of the wrongdoing.  Thus, the degree of assistance and the level of knowledge must be considered together.

Here, the State has properly pled that Fleet Farm provided substantial assistance because it plausibly alleges that Fleet Farm recognized—or at least turned a blind eye towards—clear signs of straw purchases.  A reasonable firearm dealer would have denied the purchases, even if the purchaser passed a background check, but Fleet Farm did not. The validity of this assertion is a question of fact well suited for discovery.  Thus, the State has plausibly pled its claim for aiding and abetting.

### 4.  Negligent entrustment

To state a claim for negligent entrustment under Minnesota law, the complaint must allege plausibly that: (1) Fleet Farm "supplie[d] directly or through a third party"; (2) "a chattel for the use of another whom [Fleet Farm] knows or has reason to know to be likely because of [their] youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to [themselves] and others whom the supplier should expect to share in or be endangered by its use"; and (3) that physical harm resulted. Restatement (Second) of Torts § 390 (Am. L. Inst. 1977); *see also Johnson v. Johnson*, 611 N.W.2d 823, 826 (Minn. Ct. App. 2000).

Fleet Farm argues that the second element in this claim is not met because the State has not plausibly alleged that either Horton or Elwood was likely to use the firearms in a manner involving unreasonable risk due to their "youth, inexperience, or otherwise." Specifically, Fleet Farm urges the Court to find that the term "otherwise" must be read to

-33-

mean something along the lines of "youth or inexperience."  The Court declines to adapt such a reading and concludes that the nature of straw purchasing gives rise to the same kind of increased risk of harm that inexperience or youth does.  The very nature of straw purchasing gives a reason to believe the purchaser cannot be trusted to use the firearm in a reasonably safe manner.

Fleet Farm also argues that the claim must fail because there is no obligation for arms dealers to investigate buyers beyond what is required by law.  However, the State specifically alleges that Fleet Farm already knew or had reason to know that Horton and Elwood were straw purchasers based on red flags that were or should have been apparent to Fleet Farm.  Assuming the factual allegations in the Complaint as true, no additional investigation was necessary for Fleet Farm to turn down the sales.  Therefore, the State has plausibly plead its negligent entrustment claim.[8]

### 5. Negligence Per Se

Under Minnesota law, negligence per se is a "form of ordinary negligence that results from a violation of a statute."  *Seim v. Garavalia*, 306 N.W.2d 806, 810 (Minn. 1981).  The fundamental rule in Minnesota is that "breach of a statute gives rise to negligence per se if the persons harmed by that violation are within the intended

---

[8] Fleet Farm challenges whether negligent entrustment requires that the initial transferee actually use the property at issue under the PLCAA.  However, Fleet Farm only raises this issue as part of their preemption analysis.  The same issue could apply here.  But because Fleet Farm did not raise the argument in this context, the Court will not consider it at this time.

protection of the statute and the harm suffered is of the type the legislation was intended

to prevent." *Pacific Indem. Co. v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548 (Minn. 1977),

*superseded by statute on other grounds*, Act of Apr. 7, 1980, ch. 518, § 2, 1980 Minn. Laws

595, 596 (codified as amended at Minn. Stat. § 541.051 (2020)).  Minnesota follows the

Restatement's approach to determine whether the statute can give rise to negligence per

se:

> (1) The intent of the statute is to protect a class of which plaintiff is a member, but only if (2) the plaintiff's injury involves an invasion of the particular interest protected by the statute, (3) was caused by the particular hazard or form of harm against which the enactment was designed to give protection and (4) it was proximately caused by its violation.

*Johnson v. Farmers & Merchants State Bank of Balaton*, 320 N.W.2d 892, 897 (Minn.

1982).

In this case, the State alleges that Fleet Farm owed a duty of care to Minnesotans

under both the Minnesota Gun Control Act and the federal Gun Control Act, and that it

was negligent per se when it breached that duty by selling firearms to people they knew

or should have known were straw purchasers in violation of state and federal law.

Fleet Farm argues that negligence per se is not applicable because these statutes

do not protect a group that is specific enough and thus "within the intended protection

of the statute."  Fleet Farm points to a Minnesota Supreme Court decision in which the

Court suggested that negligence per se cannot be premised on a statute whose purpose

is to "protect the interest of the state" or "secure to individuals the enjoyments of rights

or privileges to which they are entitled only as members of the public." *Kronzer v. First Nat'l Bank of Minneapolis*, 305 Minn. 415, 424 (Minn. 1975) (citation omitted).  However, the language Fleet Farm relies on is dicta as the Minnesota Supreme Court did not need to address the issue to settle the question before it.  *Id.* at 426 ("We need not decide, however, the difficult question whether we would adopt Minn. Stat. § 481.02 as a standard of care in a proper civil case . . .").

Ultimately, Fleet Farm argues that statute protects too broad a group for violation of the statute to constitute negligence per se.  But the laws at issue are specifically designed to protect Minnesotans from gun violence, rather than just to promote the general welfare of the state.  The Court is not persuaded that a statute cannot be the basis for a negligence per se claim simply because it results in protection for too many people.

Fleet Farm also argues that the negligence per se claim fails because none of the statutes relied upon by the State create a private right of action.  This argument is in direct conflict with Minnesota law since negligence per se claims may arise for violations of penal statutes that otherwise do not provide for a civil action.  *See Seim*, 306 N.W.2d at 810.  Here, the cause of action is ordinary negligence under Minnesota law and the negligence per se claim just substitutes the standard of care.  The State has plausibly alleged its negligence per se claim.

-36-

**CONCLUSION**

The Court concludes that it has jurisdiction over this action because the Complaint necessarily raises a disputed and substantial federal issue, capable of resolution without disrupting the federal-state balance, and will therefore deny the State's Motion to Remand. Moreover, this action is not preempted by the PLCAA and each of the claims are plausibly alleged, so the Court will deny the Fleet Farm's Motion to Dismiss.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1. State of Minnesota's Motion to Remand to State Court [Docket No. 12] is **DENIED**.

2. Defendants' Motion to Dismiss [Docket No. 18] is **DENIED**.

DATED: June 27, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge