UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota, by its Attorney General, Keith Ellison,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Fleet Farm LLC (f/k/a Mills Fleet Farm LLC), Fleet Farm Group LLC (f/k/a Mills Fleet Farm Group LLC), and Fleet Farm Wholesale Supply Co. LLC (f/k/a Fleet Wholesale Supply Co. LLC),<br><br>　　　　Defendants. | Case No.: 22-CV-02694 (JRT/JFD)<br><br><br>**STATE OF MINNESOTA'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANTS** |

PLEASE TAKE NOTICE that Defendants must respond to these Requests for Production within thirty (30) days from the date of service hereof pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure.

**INSTRUCTIONS**

1.　　Preface each answer and response with the Request to which it is addressed. If you are unable to fully answer or respond, submit as much information as is available, explain why your answer or response is incomplete, and state the source or sources from which a complete answer or response may be obtained.

2.　　Whenever these Requests seek information specific to persons or activities in Minnesota that you are unable to produce separately, you should provide the information without regard to geographic limitation.

3.　　Produced documents should be segregated and clearly marked or labeled as to the specific Request to which they are responsive and are being produced. Each produced document should be numbered consecutively and marked with a prefix and consecutive document control number (*i.e.*, Bates numbers).

4.　　If you assert any objection to any Request, state the reason for your objection. If you object to any Request in whole or in part on the basis of any claimed privilege or protection, identify the statement, communication, or subject matter for which you claim privilege or protection and set forth the factual basis on which you base your privilege or protection claim.

5.    **Documents should be produced in accordance with the Office of the Minnesota Attorney General Production Format Specifications attached as Exhibit A.**  All originals should be preserved until final resolution of this matter.

6.    All documents and data compilations that relate to the subject matter of these Requests must be preserved, and any ongoing process of document destruction involving such documents or data must cease.  Failure to preserve such documents or data may result in legal action by this Office and may be regarded as spoliation of evidence.

7.    If any document or data compilation relating to the subject matter of these Requests is or has been discarded, destroyed, or redacted in whole or in part, please immediately notify the State of the following: (a) the date of the discard, destruction, or redaction; (b) the reason for the discard, destruction, or redaction; and (c) the person who discarded, destroyed, or redacted the document or data compilation.

8.    Pursuant to Fed. R. Civ. P. 26(e), you are under a continuing duty to supplement your responses if you learn that a response you made is in some material respect incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

9.    Provide all information and documents for the time period **from October 5, 2016, through the date of your response**, unless otherwise specifically indicated.  If it is necessary to refer to a prior time to fully answer an Interrogatory or respond to a Document Request, you should do so.

## DEFINITIONS

1.    **"Defendants," "Fleet Farm," "you," or "your"** means Fleet Farm LLC (f/k/a Mills Fleet Farm LLC), Fleet Farm Group LLC (f/k/a Mills Fleet Farm Group LLC), and Fleet Farm Wholesale Supply Co. LLC (f/k/a Fleet Wholesale Supply Co. LLC), and any of their predecessors, successors, divisions, parents, subsidiaries, affiliates, and any other entity in which Fleet Farm has a management or controlling interest.  These terms also include all present and former directors, officers, and managers of Fleet Farm.

2.    **"Agreement"** means any written or oral understanding, promise or condition, or any document or communication containing any such understanding, promise or condition, including any draft, amendment, or modification thereto. This includes but is not limited to all contracts and service agreements.

3.    **"ATF"** means the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives.

4.    **"BCA"** means the Minnesota Bureau of Criminal Apprehension.

2

5.    **"Document"** means all written, graphic, or recorded matter of any kind or description, however created or rendered, including, but not limited to, written communications, letters, correspondence, facsimiles, email, text messages, instant messages, social media posts, memoranda, minutes, notes, films, audio or video recordings of any type, transcripts, contracts, agreements, purchase or sales orders, memoranda of telephone conversations of personal conversations, diaries, desk calendars, interoffice communications, reports, studies, bills, receipts, checks, checkbooks, statements, and invoices.

6.    **"Minnesota Store"** means any Fleet Farm retail store location with an address in Minnesota.

7.    **"Policies and procedures"** means all formal and/or informal rules, guidelines, guidance, advice, FAQs, scripts, handbooks, presentations, and/or training materials.

8.    **"Relate**," "**related to,**" or "**regarding**" means referring, discussing, concerning, or pertaining in any way, directly or indirectly.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**DOCUMENT REQUEST NO. 1.**

All documents referenced, consulted, or relied upon in answering the State's Interrogatories.

**DOCUMENT REQUEST NO. 2.**

All documents relating to the allegations, claims, denials, and defenses set forth in the pleadings.

**DOCUMENT REQUEST NO. 3.**

The governing documents for Fleet Farm, regardless of date, including but not limited to, any state registration documents, articles of incorporation and any amendments thereto, operating agreements and any amendments or exhibits thereto, and all other documents sufficient to show Fleet Farm's legal identity, organization and ownership.

**DOCUMENT REQUEST NO. 4.**

Organizational charts or similar documents sufficient to show (a) the organizational structure of Fleet Farm, (b) the organizational structure of Fleet Farm in relation to any parents,

sisters, subsidiaries, divisions, affiliates, merged or acquired predecessors, successors, assumed names, or any other affiliated entity or component, and (c) the hierarchy of senior management personnel within Fleet Farm; (d) the hierarchy of management personnel involved in the sale of firearms at Minnesota Stores.

**DOCUMENT REQUEST NO. 5.**

All documents related to the licensure of Fleet Farm and its Minnesota Stores to sell firearms under state and federal law, including but not limited to licensure applications and supporting materials and licensure renewals and supporting materials.

**DOCUMENT REQUEST NO. 6.**

All firearms transaction records, including acquisition and disposition records, since January 1, 2017.

**DOCUMENT REQUEST NO. 7.**

All trace reports or other information related to firearm traces exchanged between Fleet Farm and the ATF since January 1, 2017.

**DOCUMENT REQUEST NO. 8.**

All sales and transaction forms provided by Fleet Farm to the ATF or the BCA since January 1, 2017, including all Reports of Multiple Sale or Other Disposition of Pistols and Revolvers (Form 3310.4) and Firearms Transaction Records (Form 4473).

**DOCUMENT REQUEST NO. 9.**

All communications between Fleet Farm and the ATF since January 1, 2017.

**DOCUMENT REQUEST NO. 10.**

All communications between Fleet Farm and the BCA since January 1, 2017.

**DOCUMENT REQUEST NO. 11.**

All communications between Fleet Farm and any Minnesota state or local law enforcement agency since January 1, 2017.

**DOCUMENT REQUEST NO. 12.**

All documents related to Sarah Elwood and Jerome Horton or Fleet Farm's firearm sales to these individuals, including National Instant Criminal Background Check System requests and responses referenced in Fleet Farm's Answer, and all trace requests, receipts, invoices, video footage, notes, emails, and communications internally within Fleet Farm and externally with the ATF or other third parties.

**DOCUMENT REQUEST NO. 13.**

All communications related to Gabriel Lee Young-Duncan, Jeffrey Jackson, or Geryiell Walker.

**DOCUMENT REQUEST NO. 14.**

All documents requested by or otherwise provided to any law enforcement agency related to Jerome Horton, Gabriel Lee Young-Duncan, Sarah Elwood, Jeffrey Jackson, and Geryiell Walker.

**DOCUMENT REQUEST NO. 15.**

All audio and video recordings from your Blaine, Brooklyn Park, Lakeville, and Oakdale stores, including surveillance video from cameras or other recording equipment both inside and outside of the stores, for all dates of sales identified in Paragraphs 38 and 54 of the State's Complaint.

**DOCUMENT REQUEST NO. 16.**

All documents related to Fleet Farm's data retention policies, procedures, and practices, including Fleet Farm's retention and deletion of surveillance video and audio recordings.

**DOCUMENT REQUEST NO. 17.**

All documents supporting or contradicting Fleet Farm's public statement issued on October 5, 2022, that "at the time of the tragic shooting in Saint Paul described in the Attorney General's complaint, we were told by the Bureau of Alcohol, Tobacco and Firearms that our team members had 'done nothing wrong' and had complied with all applicable gun laws," including any records of when and how such statements were made.

**DOCUMENT REQUEST NO. 18.**

All records reflecting any sales of firearms by Fleet Farm to Wayne Danielson, including invoices, receipts, and Forms 4473.

**DOCUMENT REQUEST NO. 19.**

All documents used or relating to the training of Fleet Farm retail store employees relating to sales of firearms, straw purchaser awareness, detection, and/or prevention, compliance with state and federal firearms laws, or reporting suspicious behavior to law enforcement, including the ATF and National Sports Shooting Foundation materials and documents referenced in Fleet Farm's Answer.

**DOCUMENT REQUEST NO. 20.**

All documents related to or showing any training schedules for Fleet Farm retail store employees relating to sales of firearms.

**DOCUMENT REQUEST NO. 21.**

All documents related to any Fleet Farm employees, agent, manager, director, or principal against whom Fleet Farm has taken or is taking disciplinary action for violating any Fleet Farm policy or procedure related to the sale of firearms in Minnesota.

**DOCUMENT REQUEST NO. 22.**

All documents related to performance evaluations or promotions of Fleet Farm employees, agent, manager, director, or principal involved in the sale of firearms in Minnesota.

**DOCUMENT REQUEST NO. 23.**

All documents related to any instance in which Fleet Farm decided not to complete a firearms sale in Minnesota.

**DOCUMENT REQUEST NO. 24.**

All documents related to any person for whom Fleet Farm has limited or ceased selling firearms to in Minnesota.

**DOCUMENT REQUEST NO. 25.**

All documents sufficient to show the identity of any person that Fleet Farm has identified as a straw purchaser of firearms to whom Fleet Farm sold firearms in Minnesota.

**DOCUMENT REQUEST NO. 26.**

All documents related to any person that Fleet Farm has identified as a straw purchaser of firearms in Minnesota and/or reported to federal, state, or local law enforcement as a suspected straw purchaser of firearms in Minnesota.

**DOCUMENT REQUEST NO. 27.**

All documents related to any discipline, audit, request for information, inspection, warning letter, warning conference, report of violations, remedial trainings or presentations, or other inquiries or actions taken by federal, state, or local authorities regarding the sale of firearms by Fleet Farm and its Minnesota Stores, including all documents related to any "Closing Conference" held by the ATF at a Fleet Farm retail store, as described in Fleet Farm's Answer.

**DOCUMENT REQUEST NO. 28.**

All documents related to any policy or procedure governing or informing Fleet Farm's compliance with federal and state law, cooperation with law enforcement, or reporting of suspicious activity to any law enforcement agency.

**DOCUMENT REQUEST NO. 29.**

All documents, including recordings, writings, notes, or transcriptions, relating to any statements taken from any witnesses relating to the incidents described in the State's Complaint.

**DOCUMENT REQUEST NO. 30.**

All communications made or received by any Fleet Farm employees, agent, manager, director, or principal regarding this lawsuit.

**DOCUMENT REQUEST NO. 31.**

All insurance policies in effect that may provide coverage for the incidents described in the State's Complaint.

Dated:  July 20, 2023

KEITH ELLISON
Attorney General
State of Minnesota

JAMES W. CANADAY (#030234X)
Deputy Attorney General

**/s/ Eric J. Maloney**
ERIC J. MALONEY (#0396326)
Assistant Attorney General

JASON PLEGGENKUHLE (#0391772)
Assistant Attorney General

KATHERINE MOERKE (#0312277)
Assistant Attorney General

445 Minnesota Street, Suite 1200
St. Paul, Minnesota 55101-2130
james.canaday@ag.state.mn.us
Telephone: (651) 757-1421
eric.maloney@ag.state.mn.us
Telephone: (651) 757-1021
jason.pleggenkuhle@ag.state.mn.us
Telephone: (651) 757-1147
katherine.moerke@ag.state.mn.us
Telephone: (651) 757-1288

*Attorneys for State of Minnesota*

9

**Exhibit A**
**Office of the Minnesota Attorney General**
**Production Format Specifications**

Electronically Stored Information ("ESI") and paper documents must be produced in a format consistent with loading into document review software, including images, native files, text, and associated metadata. **If you are unable to produce data in this manner, then you must provide the information in native electronic format with unaltered metadata.** (Note: An Adobe PDF file is <u>not</u> considered a native file unless the document was initially created as a PDF.) All paper documents must be scanned for production.

I.    **SPECIFICATIONS**

A. **Document Numbering.** Documents must be numbered and identified with a sequential, padded identifier (e.g., ABC000001). Document numbering must contain no spaces between the prefix and number. Document numbering must avoid ambiguous characters such as "O" or "l" or "I" unless the prefix is separated by a hyphen ("-") or underscore ("_"). If suffixing is required, the producing party must utilize a four-digit dot format (e.g., ABC00000001.0001). Parties producing documents in response to a Civil Investigative Demand (CID) are encouraged to include "CID" in the document numbering (e.g., ABC-CID-000001).

B. **Images.** Paper documents and ESI that is conducive to being displayed in an image form must be produced as black & white single page TIFF images. All pages in color must be produced as color images and must be delivered as JPEG images. Production images must be named to match the corresponding page document number endorsement (e.g., ABC000001.tif).

- Production images for presentations (PowerPoint) must contain the presentation slides, presentation notes, and any other speaker information or hidden content.
- Production images for word processing documents (Word) must contain track changes, comments, and any other hidden content.

C. **Image Cross-Reference File**. Each production set must include an image cross-reference file (.OPT) which links the images to the database records.

   Sample OPT image load file:

   IMG0000001,,..\001\ IMG0000001.TIF,Y,,,
   IMG0000002,,..\001\ IMG0000002.TIF,,,,
   IMG0000003,,..\001\ IMG0000003.TIF,,,,
   IMG0000004,,..\001\ IMG0000004.TIF,Y,,,

D. **Data File**. Each production set must include a delimited load file (.DAT) that contains all the fielded information that will be loaded into the database.

E.  **Text Files**. Each production must include searchable text files (.TXT) which must be produced as separate document-level text files, not as fields within the .DAT file. Text files must be named to correspond to the first page document number of the corresponding document being produced (e.g., ABC000001.txt). For unredacted documents, provide the unaltered extracted text. For redacted documents or documents without extracted text, provide the OCR-generated text.

F.  **Native Files**. Electronic files that cannot be readily converted to an image format must be produced with a TIFF image placeholder and in their native file format. Examples of files that cannot readily be converted to image format include spreadsheets (Excel), databases, AutoCAD drawings, audio files, and video files. Native files must be named to match the endorsed document number on the corresponding TIFF image placeholder page (e.g., ABC000001.xlsx). In the event produced files require the use of proprietary software not commonly found in the workplace, the AGO will explore other format options with the producing party.

- **Spreadsheets**. Excel spreadsheets must be produced as a native file along with the extracted text and relevant metadata identified below for the entire spreadsheet, plus a document-numbered TIFF image slip-sheet stating the document has been produced in native format.

- **Presentations**. PowerPoint presentations must be produced as a native file along with the extracted text and metadata identified below for the entire presentation.

- **QuickBooks.** QuickBooks data should be produced in native format as either the company file (.qbw) or as a backup file (.qbb).

- **Audio from Telephone Recording Systems.** Audio files from telephone recording systems must be produced in a format that is playable using common media players. Additionally, the call information (metadata) related to each audio recording must be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields if they are maintained:

| Field Name | Description of Field |
|---|---|
| Caller Name | Caller's name |
| Caller Account Number | Caller's account number or similar identifier |
| Originating Number | Caller's phone number |
| Called Party Name | Called party's name |
| Terminating Number | Called party's phone number |
| Date | Date of call |
| Duration | Duration of call |
| Time | Time of call |
| Filename | Filename of audio file |

2

G. **Social Media Data.** Social media content should be preserved and produced in a format which includes metadata such as the URL or location/path, date/time captured, and other available properties. Most social media platforms, including Facebook[1], Instagram[2], and Twitter[3], provide a free data download tool which allows an account user to download their own data in electronic format.

H. **Mobile Device Data.** Mobile device data (e.g., text messages and chat/instant messaging) should be preserved and produced in electronic format. There are several low-cost applications which allow a user to extract text messages and other content from Android and iOS devices in electronic format. A forensic collection may also be appropriate depending on, for example, if relevant data has been deleted from the device.

I. **Deduplication**. Removal of duplicate documents must only be done on exact duplicate documents (based on MD5 or SHA1 or SHA256 hash values at the document level) *across all custodians* (global), and the All Custodians field will list each Custodian, who was a source of that document prior to deduplication. If a party is unable to provide such information within the All Custodians field, or if global deduplication would otherwise limit the ability to provide that a particular document was possessed by a custodian, then removal of duplicate documents must only be done on exact duplicate documents (based on MD5 or SHA1 or SHA256 hash values at the document level) *within a custodian*. If your production will be deduplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of your production.

J. **Redactions**. ESI and scanned paper documents requiring redaction must be redacted prior to production. If available, native spreadsheet redactions are preferred over TIFF redactions to maintain the usability of the spreadsheet.

K. **Family Groups.** All document family groups, including email attachments and embedded files, must be produced together and children files must follow parent files sequentially in the document numbering. Section II identifies how the family documents must be produced to maintain the relationships.

L. **System Files**. Common operating system and program files need not be produced when removed as part of a DeNIST[4] process.

M. **Endorsements**. The producing party will brand all images with its corresponding document number (e.g., ABC000001) in the lower right-hand corner, using a consistent font type and size. The document number must not obscure any part of the underlying data. The producing party will brand all TIFF/JPEG images in the lower left-hand corner with applicable confidentiality designations (e.g., Confidential)., if any.

---

[1] https://www.facebook.com/help/212802592074644
[2] https://help.instagram.com/contact/505535973176353
[3] https://help.twitter.com/en/managing-your-account/how-to-download-your-twitter-archive
[4] https://www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl

N. **Malware**. All produced data must be free of viruses, malware, or other malicious content. Any files with viruses or malware must be quarantined by the producing party and noted in a log provided with the production data, which shall include all available metadata associated with the file(s), including Custodian information.

O. **Password Protected**. Documents must be produced decrypted. For any files where passwords are required, the producing party must provide a list of passwords necessary to view the document. If such protected data is encountered but unable to be processed, each file or container shall be reported as an exception in an accompanying log and shall include all available metadata associated with the file(s), including Custodian information.

P. **Paper Documents**. Paper documents must be scanned in a unitized format to clearly identify where one document starts and stops. **Combined scans of entire folders or boxes of documents are not acceptable**. Scanned documents must <u>not</u> be deduplicated – either by hash value or by human review. Custodian information must be provided for all paper documents to readily identify the source of the document.

## II.  METADATA AND CODED FIELDS

A. **Metadata**. The exchange of select metadata significantly enhances the usability and search characteristics of each production set. The producing party is not obligated to manually populate any of the fields below if such fields cannot be extracted from a file or generated by a document review software. Absent an agreement to the contrary, the metadata fields and coded field information listed below must be provided in a delimited file for every production.

4

| Field Name | Example / Format | Description of the Field | Scanned Paper | ESI |
|---|---|---|---|---|
| Begin Bates | ABC0000001 (Unique ID) | Document number associated with the first page of a document. | X | X |
| End Bates | ABC0000003 | Document number associated with the last page of a document. | X | X |
| Beg Attach | ABC0000001 | Document number associated with the first page of the parent document. | | X |
| End Attach | ABC0000008 | Document number associated with the last page of the last attachment. | | X |
| Protective Designation | Confidential | The protective designation, if any, for the document | X | X |
| Page Count | 10 | The number of pages for a document. | X | X |
| Has Redactions | Y/N | Y/N indicating if document has redactions. | X | X |
| Was Hard Copy | Y/N | Y/N field indicating if the document is a hard copy which has been scanned | X | X |
| Custodian | Smith, John | Email: Mailbox where the email resided. Native: Name of the individual, department, or data source from where the document originated from. | X | X |
| All Custodians | Smith, John; Jones, Mary | All custodians with same document prior to deduplication | | X |
| Author | jsmith | The author of a standalone e-file or attachment from metadata | | X |
| File Name | Document Name.xlsx | The file name of the native (original) file | | X |
| File Size | Numeric | Size of the original file processed, regardless of whether the file is produced in native format. | | X |
| File Extension | XLSX | The file extension of the original file processed, regardless of whether the file is produced in native format. | | X |

5

| Date Created | 1/1/2018 | For e-files and attachments, the document's creation date or operating system creation date. | | X |
| Date Last Modified | 3/1/2018 | For e-files and attachments, the document's last modified date or operating system last modified date. | | X |
| Date Sent | 1/1/2018 | The sent date of the email message. | | X |
| Date Received | 1/1/2018 | The received date of the email message. | | X |
| Time Sent | 7:00 AM | The sent time of the email message. | | |
| Time Received | 7:00 AM | The received time of the email message. | | |
| MD5 or SHA1 Hash | Alphanumeric | The calculated MD5 or SHA1 hash value of the document. | | X |
| Document Title | New Document | The extracted document title of native file from file properties. | | X |
| From | Joe Smith <jsmith@email.com> | The display name and email address of the author of an email. If only email address is given, then just list the email address. | | X |
| To | Joe Smith <jsmith@email.com>; tjones@email.com | Recipient(s) **semi-colon must be used to separate multiple entries. | | X |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | Carbon copy recipient(s) **semi-colon must be used to separate multiple entries. | | X |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | Blind carbon copy recipient(s) **semi-colon must be used to separate multiple entries. | | X |
| Subject | Re: Urgent Message | The subject of the email message. | | X |
| Time Zone Processed | PST, CST, EST, etc. | The time zone files were processed in to properly identify date and time values. | | X |
| Native Link | NATIVES/ABC00001.xls | The full path to a native file of the document. | | X |

6

| | | | Scanned Paper | ESI |
|---|---|---|---|---|
| Text Link | TEXT/ABC00001.txt | The full path to the extracted or OCR text of the document. | X | X |

**B. Optional Coded Fields.** The exchange of coded fields can significantly enhance the efficiency of responding to requests for production, interrogatories and preparing redaction logs. The producing party is not required to provide any of the coded fields below but may reference these coded fields when responding to requests for production of documents and interrogatories in lieu of document number ranges.

| Field Name | Example / Format | Description | Scanned Paper | ESI |
|---|---|---|---|---|
| Document Request | 01; 09 | A list of numbers that correspond to an associated request for production of documents. **semi-colon must be used to separate multiple entries. | X | X |
| Interrogatory | 14; 23 | A delimited list of numbers that correspond to an associated interrogatory. **semi-colon must be used to separate multiple entries. | X | X |
| Redaction Reason | Attorney-Client Communication; Work Product | A delimited list of the reason for a redaction on each document. **semi-colon must be used to separate multiple entries. | X | X |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2023, I served State of Minnesota's First Set of Requests for Production to Defendants on Defendants via email to counsel for Defendants.

/s/ Eric J. Maloney