

Andrew Davis
DIRECT: 612.335.1556
OFFICE: 612.335.1500

Andrew.Davis@stinson.com

October 3, 2023

**VIA EMAIL**

Katherine Moerke
Assistant Attorney General
Office of the Minnesota Attorney General

Re:     *State of Minnesota v. Fleet Farm LLC, et al.*, Case No. 0:22-cv-02694-JRT-JFD

Counsel,

On behalf of Defendants Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC (together, "Defendants"), I write in response to your September 25, 2023 letter ("Letter"), in which Plaintiff reiterates certain perceived deficiencies with Defendants' August 21, 2023 responses to Plaintiffs' initial discovery requests. The issues raised in the Letter remain nonexistent and/or premature. Defendants are actively engaged in gathering documents responsive to Plaintiffs' initial discovery requests, and given that the parties have until August 2024 to complete fact discovery, there is no basis for asserting in September 2023—more than ten months before the close of fact discovery—Defendants have been dilatory in any way.

Plaintiff's Letter addresses two topics: (1) Defendants' interrogatory responses invoking Fed. R. Civ. P. 33(d); and (2) the procedure by which Defendants will be producing documents, or making documents available for on-site inspection.

**Defendants' Interrogatory Responses Invoking Fed. R. Civ. P. 33(d)**

During our September 21 meet-and-confer teleconference, we asked if Plaintiff had any authority supporting the proposition that a party invoking Fed. R. Civ. P. 33(d) must produce those documents ***simultaneously*** with its interrogatory responses. The decisions cited in Plaintiff's Letter do not stand for the proposition that documents referenced pursuant to Rule 33(d) must be produced simultaneously with a party's interrogatory responses. Indeed, all of these decisions involved disputes regarding the sufficiency of a party's interrogatory responses invoking Rule 33(d) ***after*** responsive documents had been produced—not at the outset of a 12-month fact-discovery window. And as previously explained, Defendants are aware of their obligation under Rule 33(d) to "specify[] the records that must be reviewed[] in sufficient detail to enable the

Katherine Moerke
October 3, 2023
Page 2

interrogating party to locate and identify them as readily as the responding party could."
Fed. R. Civ. P. 33(d).

Given this, there is no reasonable dispute over **when** Defendants are required to "specify[]
the records that must be reviewed[]"—Defendants will specify the records invoked
pursuant to Rule 33(d) following the production of those records. Instead, the only dispute
appears to concern the level of specificity Plaintiff is demanding Defendants provide
pursuant to Rule 33(d). And, as indicated by the below chart, by cross-referencing their
interrogatory responses to their responses to certain requests for production, Defendants
have "specif[ied] the records" Plaintiff will need to review to ascertain the answers to their
interrogatories (to the extent Defendants have not objected to answering portions of
certain interrogatories[1]):

| ROG | Cross-Referenced RFP(s) | Specific Records to Review to Determine Answer(s) to ROG |
|---|---|---|
| 5 | 19, 20 | • Internal training materials related to firearm transactions.<br>• Documents reflecting the frequency and substance of trainings regarding firearm sales. |
| 6 | 12, 13, 14 | • Document's relating to Elwood's, Horton's, Young-Duncan's, Jackson's, or Walker's alleged purchases of firearms from Fleet Farm stores (e.g., ATF Form 4473s), which will reflect which employees interacted with these individuals. |
| 7 | 9, 10, 11 | • Certain communications with ATF/BCA reflecting which employees interacted with law enforcement regarding firearm sales. |
| 9 | 12 | • Documents reflecting any investigation into Elwood's or Horton's purchase of firearms. |

---

[1] For example, Defendants have objected to Interrogatory No. 9 on a number of grounds,
including that seeking "every instance in which Fleet Farm investigated or audited its
employees' compliance with Fleet Farm [firearm] policies and procedures" is overly broad,
unduly burdensome, and seeks information disproportionate to the needs of the case. By
cross-referencing the documents Defendants will be producing in response to Request for
Production No. 12, Defendants' answer makes clear that Defendants will explain to
Plaintiff "whether Fleet Farm investigated its firearms sales to Jerome Horton and Sarah
Elwood," and the explanatory documents will be included among the documents
Defendants produce in response to Request for Production No. 12.

Katherine Moerke
October 3, 2023
Page 3

| ROG | Cross-Referenced RFP(s) | Specific Records to Review to Determine Answer(s) to ROG |
|---|---|---|
| 11 | 23, 24 | • Documents identifying instances in which an employee decided not to complete a firearm sale for reasons other than NICS sending a "Denied" message, and persons to whom Fleet Farm has refused to sell firearms. |
| 12 | 26 | • Documents identifying persons Fleet Farm identified as a suspected straw purchaser, and/or reported to ATF. |
| 13 | 16 | • Fleet Farm's retention policy for video recordings |
| 14 | 17 | • Communications with ATF relating to the October 10, 2021 shooting in St. Paul. |
| 15 | 9, 10 | • Communications with ATF/BCA relating to Defendants' firearm-sales practices, including inspections or audits of retail stores. |

But in the spirit of compromise, Defendants will also agree to identify by Bates number the specific records that Plaintiff should review to determine the answer to the aforementioned interrogatories. Defendants will provide this information in the cover letter transmitting the productions that contain the at-issue records, and those productions will occur in accordance with Defendants' obligations under the Scheduling Order governing this action. *See* ECF Doc. 41. Defendants reiterate that the broad and burdensome nature of these interrogatories—many of which are wholly duplicative of requests for production and purport to require Defendants to prepare voluminous, itemized lists of broad categories of information—necessitate the invocation of Rule 33(d), as the burden of ascertaining the answers to these interrogatories will be substantially the same for both Plaintiff and Defendants.

To start, Defendants have already produced to Plaintiff the records providing the answer to Interrogatory No. 5. Records responsive to Interrogatory No. 5 are: FF_0000001 – FF_0000007, FF_0000012 – FF_0000033, FF_0000038 – FF_0000048, FF_0000062 – FF_0000126, FF_0000133 – FF_0000200, FF_0000207, FF_0000212 – FF_0000227, FF_0000258, FF_0000271 – FF_0000306, FF_0000314 – FF_0000330, FF_0000341 – FF_0000362, FF_0000375 – FF_0000437, FF_0000445 – FF_0000466, FF_0000489 – FF_0000569, FF_0000596 – FF_0000606, FF_0000618 – FF_0000712, and FF_0000721 – FF_0000957.

Katherine Moerke
October 3, 2023
Page 4

Defendants will provide this same information after they have produced records that provide the answers to Interrogatories 6, 7, 9, 11, 12, 13, 14, and 15.[2]

Alternatively, Plaintiff's Letter asks if Defendants will agree to amend any of their Interrogatory responses to "provide narrative answers." As explained in Defendants' objections and above, read literally, the interrogatories to which Defendants have invoked Rule 33(d) cannot reasonably be answered with a narrative given the overly broad, burdensome, and vague and ambiguous nature of the interrogatories. That said, in the spirit of compromise, Defendants will agree to provide narrative answers as outlined below to the following interrogatories—in lieu of identifying responsive documents pursuant to Rule 33(d)—should Plaintiff agree that the proposed response described below will fully satisfy the interrogatory.

**Interrogatory No. 6**: This interrogatory asks Defendants to "[i]dentify every . . . employee, agent, manager, director, or principal who has spoken in person, communicated with, or otherwise contacted" Horton, Young-Duncan, Elwood, Jackson, or Walker, and to "describe the date and location of each meeting, communication, or contact." As written, the burden for Defendants to derive a comprehensive narrative answer to this interrogatory is substantially the same as the burden on Plaintiff to review documents reflecting the identities of all Fleet Farm personnel who have interacted with these individuals.

That said, based on a reasonable investigation of the allegations and to the best of Defendants' knowledge, the only "employee[s], agent[s], manager[s], director[s], or principal[s]" who would have interacted with the aforementioned individuals are the store clerks who were involved in the at-issue firearm transactions. Accordingly, Defendants are willing to amend their response to Interrogatory No. 6 to provide a list of the store clerks who sold a firearm to Horton and Elwood,[3] if Plaintiff confirms in writing that such a list will be deemed a complete and satisfactory response to Interrogatory No. 6.

**Interrogatory No. 7**: This interrogatory asks Defendants to "[i]dentify every . . . employee, agent, manager, director, or principal who as spoken in person, communicated with, or otherwise contacted the ATF, the BCA, or any other Minnesota law enforcement

---

[2] Pursuant to Fed. R. Civ. P. 26(e)(1), Defendants reserve the right to amend their interrogatory responses following the production of documents in this action.

[3] Based on their reasonable investigation to date, Defendants are not aware of any instances of Jackson, Walker, or Young-Duncan purchasing or attempting to purchase a firearm from a Fleet Farm retail store.

Katherine Moerke
October 3, 2023
Page 5

agency regarding a firearm sale at a Minnesota Store, and describe the date and location of each meeting, communication, or contact." This interrogatory is broad, and read literally would include every single interaction between Defendants' employees and a law enforcement agency relating to firearms, including the ***tens of thousands*** of ATF forms submitted to law enforcement every year, as well as any and all emails sent between Defendants and law enforcement. It is not reasonable to demand that Defendants distill all of these communications into a narrative answer, and the burden for Defendants to derive such an answer is substantially the same as the burden on Plaintiff to review all of the documents reflecting communications between Defendants' employees and law enforcement. Indeed, Interrogatory No. 7 is a textbook example of an interrogatory seeking information that would be most efficiently obtained by a request for production, which may explain why Interrogatory No. 7 is entirely duplicative of Requests for Production Nos. 9, 10, and 11.

That said, Defendants presume Interrogatory No. 7 is targeted towards ascertaining the identities of the individuals holding leadership positions at Fleet Farm that had primary responsibility for communicating with law enforcement relating to firearm sales. Accordingly, Defendants are willing to amend their response to Interrogatory No. 7 to provide a list of individuals in leadership positions at Fleet Farm during the Relevant Time Period who had primary responsibility for communicating with law enforcement on issues relating to firearm sales, if Plaintiff confirms in writing that such a list will be deemed a complete and satisfactory response to Interrogatory No. 6.

## Defendants' Responses to Plaintiff's Requests for Production

Plaintiff's Letter also misstates Defendants' position regarding their suggested process for identifying responsive ESI. To be clear, Defendants have not taken the position that conferring on custodians and terms is a pre-requisite to document production. In fact, Defendants have already produced electronic documents in this case. Rather, Defendants believe—as recognized by the Court's guidelines[4]—that engaging in such discussions is a productive and advisable process, particularly in cases such as this one with asymmetrical discovery obligations and broad discovery requests.

Defendants anticipate beginning to produce documents on a rolling basis in the near future, and will follow-up regarding a potential procedure for the production of certain

---

[4] *See* Discussion of Electronic Discovery at Rule 26(f) Conferences: A Guide for Practitioners (January 2021), Federal Practice Committee of the U.S. District Court, District of Minnesota, at 8.

Katherine Moerke
October 3, 2023
Page 6

hard copy documents like the ATF Form 4473s.  Based on Plaintiff's Letter, our understanding is Plaintiff is no longer demanding Defendants produce all documents by October 6, 2023, approximately ten months before the Court-imposed August 2, 2024 deadline to complete fact discovery.  *See* Pl.'s Sept. 18, 2023 Ltr.

*     *     *

Defendants will continue working to gather responsive materials, making document productions, specifying the records that Plaintiff should review to ascertain the answers to certain interrogatories, and engaging with Plaintiff on electronic discovery issues.  And as we noted during our September 21 teleconference, we believe focusing in these areas and addressing any discovery disputes when they are timely will best serve the parties, the Court, and the discovery process.

Sincerely,

**Stinson LLP**

Andrew W. Davis