

Andrew Davis
DIRECT: 612.335.1556
OFFICE: 612.335.1500

Andrew.Davis@stinson.com

November 10, 2023

**VIA EMAIL**

| Katherine A. Moerke | Megan Walsh |
|---|---|
| Eric J. Maloney | Arielle Hugel |
| James W. Canaday | William Roberts |
| Jason T. Pleggenkuhle | Nick Taylor |
| Office of the Minnesota Attorney General | University of Minnesota Law School |
| 445 Minnesota Street, Suite 1200 | 190 Mondale Hall |
| St. Paul, MN 55101-2130 | 229 19th Avenue South |
| katherine.moerke@ag.state.mn.us | Minneapolis, MN 55455 |
| eric.maloney@ag.state.mn.us | wals0270@umn.edu |
| james.canaday@ag.state.mn.us | hugel004@umn.edu |
| jason.pleggenkuhle@ag.state.mn.us | robe2331@umn.edu |
| | tayl1110@umn.edu |

Re:   *State of Minnesota v. Fleet Farm LLC, et al.*, Case No. 0:22-cv-02694-JRT-JFD

Counsel,

On behalf of Defendants Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC (together, "Defendants" or "Fleet Farm"), I write in response to Plaintiff's November 1, 2023 email, which concerned two items: (1) Fleet Farm's proposed process for producing relevant documents in response to Plaintiff's Request for Production No. 6; and (2) the relevant time period for discovery in this case.  These items are addressed in turn.

**Plaintiff's Request for Production No. 6**

Plaintiff's Request for Production No. 6 broadly seeks "[a]ll firearm transaction records, including acquisition and disposition records, since January 1, 2017."  In response, Fleet Farm noted this request was "overly broad and unduly burdensome," and the scope of the undefined terms "firearm transactions records" and "acquisition and disposition records" was unclear.  Fleet Farm then stated it would "conduct a *reasonable* search and produce, at a *reasonable time*, ATF Form 4473s, ATF Form 3310.4s, and the Acquisition and Disposition ("A&D") logs from Fleet Farm retail stores in Minnesota and the Fleet Farm

50 South Sixth Street, Suite 2600, Minneapolis, MN 55402

STINSON LLP   \   STINSON.COM

November 10, 2023
Page 2

distribution center located in Chippewa Falls, Wisconsin," from October 5, 2016, through October 5, 2022. As relevant here, Fleet Farm also objected to Plaintiff's discovery requests to the extent they "purport to require Defendants to . . . create, generate, or organize documents," or "call for the production of documents that . . . are not easily retrievable at reasonable expense." (General Objections ¶¶ 4, 11.) Fleet Farm explained that in response to each discovery request, it would "perform a *reasonably* diligent search of readily accessible documents in its possession," and that "[a]ny decision by Defendants to provide any documents or information, notwithstanding the objectionable nature of any part of the Request, should not be construed as a stipulation that the material is discoverable, [or] a waiver of Defendants' objections to these Requests." (*Id.* ¶¶ 6, 9 (emphasis added).) And Fleet Farm expressly noted it "ha[s] not completed [its] discovery, investigation, or preparation for trial of this matter," and "information provided in response to these Requests is provided *without prejudice to* [Fleet Farm's] right to make further objections" to the Requests. (*Id.* ¶ 16 (emphasis added).)

As its discovery responses made clear, Fleet Farm has continued to investigate the claims in this case, as well as the burdens associated with responding to Plaintiff's discovery requests. This ongoing investigation resulted in my October 27, 2023 email, wherein I reminded Plaintiff that Fleet Farm maintains the Form 4473s in hard copy at the individual store level, and explained there are roughly 150,000 distinct Form 4473s stored at Fleet Farm's Minnesota store locations reflecting firearm sales between January 1, 2017 and October 5, 2022. Consistent with Fleet Farm's discovery responses—as well as its broader effort to avoid unnecessary discovery disputes by negotiating the parameters of its document collection and production efforts—I also explained that it would *not* be a "reasonable search" for Fleet Farm to collect, review, scan, and produce all 150,000 Form 4473s, particularly as the vast majority of these forms either: (1) relate to long guns (*e.g.*, hunting rifles, shotguns, and similar hunting firearms)[1]; or (2) reflect single firearm purchases by law-abiding citizens. The forms falling into either of these categories, I explained, have no possible bearing on or relevance to Plaintiff's claims.

Instead, I again explained that—consistent with Fleet Farm's discovery responses—Fleet Farm was willing to conduct the following "reasonable search" to produce documents responsive to Request for Production No. 6:

---

[1] Fleet Farm estimates that more than 80,000 of the firearm transactions reflected on the Form 4473s from the relevant time period are purchases of long guns.

November 10, 2023
Page 3

> (1) Fleet Farm will review its internal Acquisition and Disposition (A & D) Log and identify those instances in which 2 or more handguns were purchased at a Fleet Farm retail store in Minnesota by a single purchaser within a five day period, for the period from January 1, 2017 through October 5, 2022; and (2) Fleet Farm will then identify, collect, and produce the applicable Form 4473 for each such sale.

To be clear, this proposal would include *all* circumstances where an individual purchased multiple firearms from Fleet Farm within a period of five business days—irrespective of whether these purchases were made in the same transaction or from the same Fleet Farm retail store. For example, if an individual purchased one handgun from Fleet Farm's Brooklyn Park retail store on November 6, and then purchased one handgun from Fleet Farm's separately licensed Blaine retail store on November 9, the Form 4473s corresponding to *both* of those sales would be produced.

Plaintiff responded to Fleet Farm's proposal on November 1. In this response, Plaintiff broadly demanded Fleet Farm produce all Form 4473s dating back to January 1, 2017. Plaintiff did not provide any substantive response to Fleet Farm's explanation that the vast majority of these forms have no conceivable relevance to the claims in this case—on the contrary, Plaintiff did not even attempt to explain how all of these documents are relevant.

Fleet Farm reiterates its position that being required to produce all Form 4473s between January 1, 2017 and October 5, 2022 would be "overly broad" and "unduly burdensome," both because such a production would require an unreasonable search and because the vast majority of Form 4473s plainly have no relevance to Plaintiff's claims.

Beginning with relevance, the allegations in the complaint establish the only relevant firearms in this case are handguns, and that Plaintiff is concerned about the prospect of a single individual purchasing multiple handguns from one or more FFLs within a concentrated period of time. Accordingly, only firearm transactions potentially reflecting these concerns are relevant to the claims and issues in this case, and are thus discoverable. *See* Fed. R. Civ. P. 26(b)(1).

The complaint is unambiguous: Plaintiff is concerned about Fleet Farm "s[elling] *handguns* to straw purchasers." Compl. ¶ 1 (emphasis added); *see also, e.g.*, *id.* ¶ 3 (alleging "straw purchasers secured sought-after handguns from . . . Fleet Farm"); *id.* ¶ 30 (explaining federal law seeks "to monitor and deter handgun trafficking" by requiring FFLs to complete ATF Form 3310.4); *id.* ¶ 35 (alleging that Fleet Farm "lists 235 different handgun models

November 10, 2023
Page 4

for sale" on its website); *id.* ¶ 41 (suggesting it was a "red flag of straw purchasing" that Horton purchased guns that were "nearly all the same caliber (9mm) of handgun"); *id.* ¶ 44 (alleging Horton "transferred six . . . handguns [purchased from Fleet Farm stores] to Gabriel Young-Duncan"). And Plaintiff is not concerned ***generally*** about Fleet Farm's handgun sales: Plaintiff is specifically concerned about the sale of ***multiple*** handguns to the same person in a concentrated time period. *E.g.*, *id.* ¶ 4 (alleging Fleet Farm "sold multiple handguns to straw purchasers in single transactions or in multiple sales over very short periods of time"); *id.* ¶ 25 (identifying "[m]ultiple firearm purchases in a single transaction or separate one-gun transactions in short periods of time" and "[m]ultiple handgun purchases" as purported "red flags" of a straw purchase); *id.* ¶ 31 (citing federal laws relating to "reports of multiple sales of handguns"); *id.* ¶ 36 (alleging Fleet Farm disregarded "multiple purchases of similar handguns" and "buying sprees over concentrated periods of time"); *id.* ¶ 38 (highlighting "multiple firearm purchases on the same day"); *id.* ¶ 39 (alleging Fleet Farm "sold multiple handguns to Horton in very short periods of time"); *id.* ¶ 41 (emphasizing that "Fleet Farm also made multiple sales to Horton . . . within five business days on several occasions"); *id.* ¶ 54 (highlighting "multiple firearm purchases on the same day"); *id.* ¶ 55 (alleging Fleet Farm "sold multiple handguns in the same day to Horton on four different occasions," and emphasizing "three days in which Fleet Farm sold her multiple handguns mere days apart"); *id.*, Requested Relief ¶ 2(d) (asking the Court to order Fleet Farm to "conduct heightened screening . . . of sales to individuals that make multiple purchases of firearms from different store locations or within short, staggered periods of time").

Relevance is necessarily determined by reference to the allegations and claims in the case. By the complaint's own language, the only relevant firearm transactions in this case—and thus the only relevant Form 4473s—are those involving: (1) at least one handgun; and (2) an individual purchasing multiple handguns in either [a] the same transaction, or [b] multiple transactions occurring with a concentrated time period (*i.e.*, within the five business-day period recognized by federal law). Form 4473s that either exclusively concern long guns or reflect purchases by individuals who did not acquire multiple handguns within a concentrated time period do not have any relevance to the claims and issues in this case. These purchases' lack of relevance—coupled with the significant privacy interests that would be implicated by providing the Attorney General with a comprehensive list of law-abiding citizens' firearm purchases from a more than half-decade-long period—weighs strongly in favor of Fleet Farm's position. *See* Fed. R. Civ. P. 26(b)(1).

November 10, 2023
Page 5

Turning to the issue of burden, the burdensome nature of requiring Fleet Farm to physically inspect and scan 150,000 documents—the vast majority of which have no conceivable relevance to any claim or issue in this case—is obvious on its face. *See* Fed. R. Civ. P. 26(b)(1). As Plaintiff may know, federal law requires Fleet Farm's separately licensed retail stores to maintain copies of ATF Form 4473s *on their premises*. *See* 18 U.S.C. § 923(g)(1)(A) ("Each . . . licensed dealer shall maintain such records of . . . sale . . . at his place of business . . . ."); 27 C.F.R. § 478.121(a) ("The records pertaining to firearm transactions . . . shall be retained on the licensed premises . . . ."); 27 C.F.R. § 478.129(b) (only authorizing an FFL to store "[p]aper forms *over 20 years of age* . . . at a separate warehouse" (emphasis added)). Accordingly, the only way to obtain copies of all 150,000 Form 4473s is to physically travel to all seventeen stores located throughout Minnesota, and sort through and scan those Forms. Each Form 4473 consists of at least seven stapled pages (with additional pages for Form 4473s accompanied by Form 3310.4s). Producing all Form 4473s would thus require carefully collecting, unstapling, scanning, and restapling more than *63,000* pages *at each Fleet Farm store* (assuming the Form 4473s are divided equally among Fleet Farm store locations), and the total number of pages of Form 4473s across Fleet Farm's Minnesota stores would likely exceed *one million*. Accordingly, the process of collecting and scanning all Form 4473s would be incredibly onerous—requiring a multi-month process involving multiple individuals spending the better part of a week (at minimum) traveling to and scanning documents at Fleet Farm stores located across the state. The sheer volume of materials and the time and expense required to produce them render Plaintiff's request unduly burdensome, especially because: (1) the vast majority of these Forms are irrelevant; and (2) to the extent any of the Forms have conceivable relevance, Fleet Farm has agreed to undergo a more efficient and less burdensome (though still very time consuming) process of making them available.

With these considerations in mind, Defendants believe it is eminently reasonable to: (1) produce all Form 4473s from the relevant time period reflecting instances where an individual bought multiple handguns from one or more Fleet Farm stores within a five-business-day window; and (2) not produce Form 4473s from the relevant time period reflecting purchases of long guns or purchases by individuals who did not purchase multiple handguns from one or more Fleet Farms stores within a five-business-day window. This proposal would result in Plaintiff receiving *all* ATF Form 4473s that have any conceivable relevance to the claims in this case.

In light of the additional information provided by this letter, please let Defendants know whether the above-proposed protocol for searching for and producing documents responsive

November 10, 2023
Page 6

to Request for Production No. 6 is acceptable. If you have an alternative proposal short of the production of all Form 4473s, we are happy to consider it. Otherwise, we ask that you please explain how ATF Form 4473s other than those reflecting an individual purchasing multiple handguns within a five-business-day window are relevant to Plaintiff's claims. Specifically, please explain: (1) why ATF Form 4473s reflecting long gun purchases are relevant to Plaintiff's claims; and (2) why ATF Form 4473s reflecting a single firearm sale to a law-abiding citizen are relevant to Plaintiff's claims.

**Relevant Time Period for Discovery**

Plaintiff's letter also notes that "the State does not agree to the end date of October 2 [sic], 2022 . . . for responsive document production." Plaintiff does not explain what end date it believes is appropriate for defining the relevant time period, or offer any rationale supporting its position. Please let us know: (1) what end date Plaintiff is proposing, and (2) the rationale for Plaintiff's proposal. Once we know the basis for Plaintiff's apparent objection to its defined "Relevant Time Period" and its alternative proposal, we are happy to meet and confer to discuss the issue.

Sincerely,

**Stinson LLP**

Andrew W. Davis

cc:    Todd Noteboom
       Andrew Leiendecker