**The Office of**
**Minnesota Attorney General Keith Ellison**
helping people afford their lives and live with dignity, safety, and respect  •  www.ag.state.mn.us

Via e-mail

November 22, 2023

Andrew W. Davis
Andrew P. Leiendecker
Todd Noteboom
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402

Re:    *State v. Fleet Farm LLC, et al.*, Case No.: 0:22-cv-02694-JRT-JFD

Dear Counsel:

We write to address deficiencies with Defendants' Responses and Objections to Plaintiff's First Set of Requests for Production ("Defendants' RFP Responses") and Defendants' Responses and Objections to Plaintiff's First Set of Interrogatories ("Defendants' Interrogatory Responses") served on August 21, 2023, in addition to the overarching deficiencies set forth in our September 18, 2023 letter.

The State served its first round of discovery requests on July 20, 2023 ("Plaintiff's RFPs" and "Plaintiff's Interrogatories" respectively). Defendants responded on August 21, 2023. Their responses contained significant deficiencies, as noted in the State's September 18, 2023 letter. The State focused on two overarching deficiencies: (1) Defendants' refusal to produce documents until after a search criteria protocol has been established, and (2) Defendants' responses to Plaintiff's Interrogatories by referencing documents produced in response to Plaintiff's RFPs without having produced such documents.

After five letters, a meet-and-confer, and multiple emails exchanged between the parties, these two overarching deficiencies have yet to be fully cured. Three months after serving their Responses, Defendants have neither produced additional responsive documents, nor proposed a deadline by which they will do so within a "reasonable time," as required by Rule 34(b)(2)(B).

Defendants have produced only 159 documents thus far. We appreciate that Defendants "agree to identify by Bates number the specific records that Plaintiff should review to determine the answer to the aforementioned interrogatories." However, Defendants have not provided a date by which we can expect these Bates numbers and related production, well beyond Defendants' 30-day deadline to respond to Plaintiff's Interrogatories.

We write to address further deficiencies with Defendants' Responses, starting with some additional overarching issues.

Counsel for Fleet Farm, LLC, et al.
November 22, 2023
Page 2

## I.      Overarching Deficiencies with Fleet Farm's Discovery Responses and Recurring Objections

### A.      Fleet Farm's Failure to Specify a Deadline for Production

As discussed in Plaintiff's letters dated September 18, 2023 and September 25, 2023 and Plaintiff's email to counsel on October 24, 2023, Defendants stipulate in their Responses or through cross references to **Document Request Nos. 1, 2, 5–10, 12–20, 23–29, and 31**, that Defendants will produce responsive documents and that such production will occur "at a reasonable time." Additionally, several of Defendants' Interrogatory Responses depend on these same incomplete Requests for Production including **Interrogatory Nos. 5–7, 9, and 11–15**.

Under Rule 34(b)(2)(B), "production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response." We are now four months beyond Plaintiff's RFPs, and Defendants have failed to produce anything in addition to their first production of 159 documents. Nor has Defendant proposed any dates for such production. As reiterated below, Plaintiff asks Defendants to propose deadlines for a "reasonable time" for production responsive to each RFP as required by Rule 34(b)(2)(B).

### B.      Fleet Farm's Objections to Producing Documents Within Plaintiff's Control

In response to **Document Request Nos. 2, 5, 8, and 12**, Defendants object on the grounds that the "information [is] already in Plaintiff's possession, custody, or control." The State asks Defendants to specifically identify which documents it believes are within Plaintiff's control when responding, as required by Rule 34(b)(2)(B) ("[S]tate with specificity the grounds for objecting to the request, including reasons . . . ."). Otherwise, the States ask the Defendants to proceed by producing documents responsive to the above-mentioned requests to the extent such documents are within Defendant's possession or control and fall outside of Plaintiff's possession or control.

### C.      Fleet Farm's Production Related to Documents Outside of Minnesota

In Defendants' RFP Responses, **General Objection No. 15** seeks to narrow Plaintiff's requests to only those stores in Minnesota identified in the Complaint. The State contends that documents outside of Fleet Farm's Minnesota stores could be relevant to the claims in this case, especially as it relates to buyers from Minnesota who make purchases in other states at a Fleet Farm store. To the extent this imposes burden on the Defendants, such burden is limited by the fact the State defines "Minnesota Store" in **Definition No. 6** of Plaintiff's RFPs and use that definition to limit the scope of our discovery requests where applicable.

Counsel for Fleet Farm, LLC, et al.
November 22, 2023
Page 3

**D.      Fleet Farm's Misstatements as to the Scope of Discovery as Limited to Documents Reasonably Calculated to Lead to the Discovery of Admissible Evidence**

Defendants object to many of the State's requests on the basis they are "not reasonably calculated to lead to the discovery of admissible evidence." However, the "reasonably calculated to lead to admissible evidence" standard is not the current standard governing discovery. Rule 26(b)(1) describes the permissible scope of discovery as #"any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." The 2015 amendments to Rule 26 "restore[d] the proportionality factors to their original place in defining the scope of discovery." Rule 26 advisory committee's note to 2015 amendment. As amended, the rule still allows for "[d]iscovery of nonprivileged information not admissible in evidence ... so long as it is otherwise within the scope of discovery." *Id.*; *see Deluxe Fin. Servs., LLC v. Shaw*, No. 16-CV-3065, 2017 WL 7369890, at *4 (D. Minn. Feb. 13, 2017). Defendants' objections on this basis are accordingly unpersuasive. Defendants are not permitted to withhold documents on the basis they are "not reasonably calculated to lead to the discovery of admissible evidence."

**E.      Fleet Farm's Boilerplate Objections Lacking Specificity**

Defendants have largely relied on boilerplate objections to the State's requests. In numerous responses to the Plaintiff's RFPs and Plaintiff's Interrogatories, Defendants object and allege the requests are "overly broad and unduly burdensome" and "seek information irrelevant to the claims and defenses in this suit," but fail to provide evidence supporting these objections. A party resisting production cannot use boilerplate objections to meet its burden. *Lynch v. Experian Info. Sols., Inc.*, 569 F. Supp. 3d 959, 963 (D. Minn. 2021) ("Routine, [b]oilerplate objections, without more specific explanations for any refusal to provide information, are not consistent with the Federal Rules of Civil Procedure." (quotation omitted)). Defendants cannot withhold discovery on the basis of such boilerplate objection. Further, because Defendants' objections are not stated with specificity, it is impossible for the State to know whether Defendants have provided full and complete responses to its discovery requests.

**F.      Fleet Farm's Efforts to Limit the Time Period for Discovery**

Defendants' attempts to limit the time period for responsive discovery are unwarranted.

The parties have exchanged numerous communications concerning the relevant time period for which the State seeks document production.

- In Plaintiff's RFPs served on July 20, 2023, the State, in Instruction No. 9, requested Defendants to produce documents from October 5, 2016 through the Defendants' date of response (which was ultimately August 21, 2023).

Counsel for Fleet Farm, LLC, et al.
November 22, 2023
Page 4

- In Plaintiff's RFPs served on July 20, 2023, the State further limited the relevant time period for producing documents to "since January 1, 2017" for **Document Request Nos. 6–11**.
- In Plaintiff's Interrogatories served on July 20, 2023, the State requested in Instruction No. 7 that the relevant period be October 5, 2016 through the present.
- In Defendants' RFP Responses served on August 21, 2023, they arbitrarily narrow their production to the time period between October 5, 2016 and October 5, 2022 in **General Objection No. 22**.
- In Defendants' Interrogatory Responses served on August 21, 2023, they arbitrarily narrow their production to the time period between October 5, 2016 and October 5, 2022 in **General Objection No. 14**.
- In Defendants' October 27, 2023 email to Plaintiff, they asked whether the State preferred October 5, 2016 or January 1, 2017 for the start of the relevant discovery period.
- In response, Plaintiff sent an email to Defendants on November 1, 2023 that the State does not object to increasing the relevant discovery period to begin on October 5, 2016, with respect to RFP No. 6. However, the State does not agree on ending the relevant time period on October 5, 2022, as suggested in **General Objection No. 22** of Defendants' Response to Plaintiff's First Set of Requests for Production served on August 21, 2023 and **General Objection No. 14** of Defendants' Response to Plaintiff's First Set of Interrogatories served on August 21, 2023.
- In a letter dated November 10, 2023, Defendants contends "Plaintiff does not explain what end date it believes is appropriate for defining the relevant time period, or offer any rationale supporting its position."
- The State's November 17 letter emphasized that Defendants have an ongoing obligation to supplement their discovery responses, as required by Rule 26(e).

The State agrees that the beginning of the relevant time period for responding to Plaintiff's first set of discovery requests is October 5, 2016, as the Defendants have previously suggested. The State further maintains that the relevant time period for responding to Plaintiff's first set of discovery requests continues through the present pursuant to Rule 26(e). The State recognizes that production will proceed on a rolling basis; however, this does not remove Defendants' obligation to identify dates for production as required by Rule 34(b)(2)(B).

II.     **Fleet Farm's Deficient Responses to the State's Requests for Production**

    A.     **Fleet Farm's Documents Relied on in Litigation (Document Request Nos. 1, 2, 29, and 30)**

The State has requested that Defendants produce documents used in answering the State's Interrogatories (**Document Request No. 1**), relating to the pleadings (**Document Request No. 2**), related to witness statements taken about what is described in the State's Complaint (**Document Request No. 29**), and all communication among Fleet Farm employees regarding this lawsuit

Counsel for Fleet Farm, LLC, et al.
November 22, 2023
Page 5

(**Document Request No. 30**). These requests are intimately relevant to the lawsuit and do not burden Defendant to the extent that such documentation already exists.

In response, Defendants have yet to produce or identify any documents responsive to the above-mentioned RFP.

The State understands that these Requests may implicate privileged documents and expects such documents to be promptly identified in Defendants' privilege log. However, the State is not sympathetic to Defendants' objections that such requests are duplicative of other Requests and Interrogatories when there are overwhelming deficiencies and a pervasive lack of document production.

Despite those objections, Defendants have specified they will produce documents in response to **Document Request Nos. 1 and 2** "at a reasonable time." Seeing as Defendants' Interrogatory Responses were served on August 21, 2023, the State believes that three months is enough time to identify documents Defendants have already used in the course of litigation. Because no further review of documents is required, it would be reasonable to produce such documents immediately in response to **Document Request No. 1**. The State recognizes that production in response to **Document Request No. 2** is likely to occur on a rolling basis and asks Defendants to propose deadlines.

Defendants attempt to narrow the scope of **Document Request No. 29** by promising to produce "non-privileged documents reflecting any interviews or statements taken from Fleet Farm employees" in response. The request was not limited to interviews or statements taken only from Fleet Farm employees, however, and Defendants must produce all documents relating to interviews or statements from *any* person related to the incidents described in the State's Complaint.

The State asks Defendant to propose deadlines for production for both **Document Request Nos. 12 and 29** as their Response points to documents being produced in **Document Request No. 12** as well.

Finally, Defendants have improperly declined to respond to **Document Request No. 30** on multiple grounds, none of which specifically absolve them from a duty to produce, as described above. The State expects Defendant to produce all nonprivileged internal communications including, but not limited to, ones made or received by the following individuals:

- Those listed in Fleet Farm's Initial Disclosures dated August 10, 2023
- Those listed in response to **Interrogatory No. 1**
- Those listed in response to **Interrogatory No. 2**

The State recognizes that production in response to **Document Request No. 30** will proceed on a rolling basis and asks Defendants to propose deadlines.

Counsel for Fleet Farm, LLC, et al.
November 22, 2023
Page 6

### B. Fleet Farm's Corporate/Organizational Structure (Document Request Nos. 3 and 4)

Defendants take the position that they will not produce documents in response to **Document Request No. 3** and parts (a)-(c) of **Document Request No. 4** on the grounds that they are overly broad and unduly burdensome and irrelevant to the claims in this suit. This is basic information commonly sought in litigation involving corporate entities, and the foundational information sought in these documents is essential to understanding the relationship among Fleet Farm entities and how the hierarchical nature of Fleet Farm's management relates to oversight in the sale of firearms. Such factual information is a major component of Defendants' business and at issue in this suit. The fact that Defendants do not contend that Plaintiff has failed to name the correct corporate entities in the lawsuit does not have any bearing on the discoverable nature of this information. The State requests responsive documents as soon as possible considering such documents are readily available at any company.

As for part (d) of **Document Request No. 4**, Defendants' Response is deficient in that it only points to the list of individuals from Fleet Farm's Initial Disclosures from August 10, 2023. The Initial Disclosures merely list individuals and job titles. The State has requested documents showing the hierarchical relationships of management personnel at Fleet Farm. These documents are relevant for all the reasons in the above paragraph, and Defendants are obligated to produce, as soon as possible, any documents that demonstrate the hierarchy of management personnel among Fleet Farm's Minnesota Stores whether they name specific individuals or establish the relationship between certain job titles within the company.

### C. Fleet Farm's Licensure Documents (Document Request No. 5)

Documents related to Fleet Farm's licensures as a firearms retailer are relevant to the claims of the case, particularly because Fleet Farm is subject to compliance obligations that arise out of its position as a federal- and state-licensed firearms retailer. The State accepts Defendants narrowing of the production to documents related to their licensure since 2016 until the present, as it falls within the State's proposed relevant time period. However, to the extent that Defendants' response to **Document Request No. 5** suggests that Defendants will not produce "supporting materials" related to Fleet Farm's licensure applications and renewals, this response is deficient. Such documents are equally relevant and not unduly burdensome to include with the documents Defendants have already agreed to produce. Further, the State requests Defendants propose a deadline for when they expect to produce responsive documents.

### D. Fleet Farm's ATF Records (Document Request Nos. 6 and 8)

The State requested Defendants produce all firearms transaction records, including acquisition and disposition records, since January 1, 2017 (**Document Request No. 6**) and all sales and transaction forms provided by Fleet Farm to the ATF or the BCA since January 1, 2017 (**Document Request No. 8**).

Counsel for Fleet Farm, LLC, et al.
November 22, 2023
Page 7

The State and Defendants have exchanged numerous communications regarding the scope of **Document Request No. 6.** Please refer to the separate correspondence on this issue, including the State's November 17, 2023 letter.

Defendant's proposal to narrow **Document Request No. 8** to only ATF Form 4473 and ATF Form 3310.4 for attempted or completed firearm transactions during the defined time period is inadequate. **Document Request No. 8** seeks *all* sales and transaction forms provided by Fleet Farm to the ATF and BCA, not just ATF Form 4473 and ATF Form 3310.4. Defendants' sales and transaction forms are highly relevant to the claims in this action and are accordingly within the scope of discovery. To the extent that Defendants provided any sales and transaction forms to the ATF or the BCA that are not ATF Form 4473 or Form 3310.4, Defendants remain obligated to produce them. Any documentation Defendants provide to the ATF or BCA should be easily accessible records maintained by Defendants, and Defendants provide no reason as to why production of such documents would constitute an undue burden.

### E.    Fleet Farm's Communications and Forms Shared with Law Enforcement (Document Request Nos. 7, 9, 10, 11, and 27)

The State made several requests seeking discovery related to communications and forms shared between law enforcement and Defendants: all trace reports or other information related to firearm traces exchanged between Fleet Farm and the ATF (**Document Request No. 7**); all communications between Fleet Farm and the ATF (**Document Request No. 9**); all communications between Fleet Farm and the BCA (**Document Request No. 10**); all communications between Fleet Farm and any Minnesota state or local law enforcement agency (**Document Request No. 11**); and all documents related to any discipline, audit, request for information, inspection, warning letter, warning conference, report of violations, remedial trainings or presentations, or other inquiries or actions taken by federal, state, or local authorities regarding the sale of firearms by Fleet Farm and its Minnesota Stores **(Document Request No. 27).**

The State disagrees that "trace reports or other information related to firearm traces exchanged between Fleet Farm and the ATF" sought in **Document Request No. 7** are irrelevant to the claims and defenses in this litigation. Defendants' proposal to narrow **Document Request No. 7** to communications between Defendants and the ATF "relating to requests that Defendants run a trace on a specific firearm serial number" is not sufficient to meet their obligations. *All* trace reports or other information related to firearm traces between the ATF and Fleet Farm, not just one-sided requests from the ATF, are relevant to Plaintiff's claims. Such documents relate to Fleet Farm's breach of its duty to notice red flags that its firearms were being sold to straw purchasers. Defendants' additional objection that **Document Request No. 7** is overly broad and unduly burdensome is also unsubstantiated. The request specifically seeks a subset of information exchanged between Defendants and the ATF within the relevant time period. The request is narrowly tailored to the issues of the case and is not overbroad. The State sees no reason as to why producing such information would constitute an undue burden.

Counsel for Fleet Farm, LLC, et al.
November 22, 2023
Page 8

Similarly, Defendant's attempts to narrow **Document Request Nos. 9, 10, and 11** on the grounds of relevancy are equally unavailing. *All* communications between Defendants and the ATF, BCA, and any Minnesota state or local law enforcement agency are relevant to this suit because they relate to Defendants' awareness of the prevalence of sales to straw purchasers within its stores and potential red flags. If helpful to Defendants, the State is willing to meet and confer to clarify "Minnesota state or local law enforcement agency" in **Document Request No. 11**.

Further, Defendants object to the State's requests for "all communications" between Fleet Farm, the ATF, the BCA, and any Minnesota state or local law enforcement agency in **Document Request Nos. 9, 10, and 11**, respectively. The State disagrees that **Request Nos. 9, 10, and 11 are** "overly broad and unduly burdensome," as these requests specifically seek communications between Defendants and specific law enforcement entities within the relevant time period.

Defendants' response to **Document Request No. 27**, which references responses to **Document Request Nos. 7–10** is deficient. Although there may be overlap between **Document Request No. 27** and **Document Request Nos. 7–10**, **Document Request No. 27** seeks relevant information that is not covered by **Document Request Nos. 7–10**, such as internal communications about the closing conference and discipline or audits against Defendants related to the sale of firearms. Defendants are obligated to search and produce documents responsive to **Document Request No. 27.** Defendants object largely on the grounds that the term "discipline" and phrases "report of violations," "remedial trainings or presentations," and "other inquiries or actions taken" are vague and ambiguous. The State disagrees that these terms are confusing but is willing to confer if helpful to Defendants. Defendants further argue **Document Request No. 27** is "overly broad and unduly burdensome." But the request is narrowly tailored to documents related to any "discipline, audit, request for information" and the like taken by law enforcement regarding firearm sales. Responding to this request in its entirety should not impose an undue burden on Defendants.

F. **Fleet Farm's Documents and Communications Related to Individuals Involved in Straw-Purchasing Schemes (Document Request Nos. 12, 13, 14, and 18)**

The State seeks all documents related to Sarah Elwood and Jerome Horton (**Document Request No. 12**); all communications related to Gabriel Lee Young-Duncan, Jeffrey Jackson, or Geryiell Walker (**Document Request No. 13**); all documents requested by or otherwise provided to any law enforcement agency related to any of the aforementioned individuals (**Document Request No. 14**); and all records reflecting any sales of firearms by Fleet Farm to Wayne Danielson (**Document Request No. 18**). The State takes issue with Defendant's response to **Document Request Nos. 12, 13, and 14.**

Defendants' attempts to narrow **Document Requests Nos. 12, 13, and 14** to responses pertaining only to the listed individuals' firearms transactions are deficient. Defendants argue that **Document Request No. 12** is irrelevant and should be narrowed to documents related to Elwood's and Horton's "purchase of firearms from Fleet Farm retail stores in Minnesota." **Document Request No. 12** is highly relevant to the claims and defenses as it relates to the extent to which

Counsel for Fleet Farm, LLC, et al.
November 22, 2023
Page 9

Defendants had reason to know Elwood and Horton. Outside of any documents related to Elwood and Horton's purchases of firearms at Fleet Farm, the additional discovery requested by the State is relevant to the claims at issue in this matter, such as, but not limited to internal communications within Fleet Farm regarding Elwood or Horton before or after firearm purchases, potential communications from third parties regarding those individuals, etc. Because the State is entitled to discovery beyond documents related to Elwood's and Horton's firearm purchases, including the request for video footage, Defendants' response to **Document Request No. 12** is deficient.

Likewise, the State rejects Defendants' proposal to narrow **Document Request No. 13** to "communications related to attempted or completed firearm transactions by these individuals." Young-Duncan, Jackson, and Walker were involved in schemes to straw-purchase firearms from Defendants that spanned many months, and *any* communications related to those individuals could shed light on what Defendants knew about Young-Duncan, Jackson, and Walker.

Defendants' proposed narrowing of **Document Request No. 14** is equally unavailing. As discussed above, Defendants' objection that **Document Request No. 14** is irrelevant because it should be limited to commercial firearm transactions is unpersuasive. The extent of Defendants' cooperation with law enforcement regarding these individuals is a central issue in this matter. Defendants are obligated to re-produce to the State the documents specifically pertaining to **Document Request No. 14** to the extent such documents are not already within the scope of **Document Request Nos. 6–13**.

Last, citing no specific facts or analysis, Defendants additionally object to **Document Request No. 13** on grounds that it is overly broad and unduly burdensome. To the contrary, the request is narrowly tailored to target only three individuals who were known conspirators in straw-purchasing schemes involving Fleet Farm. Due to the narrow scope of this request, easily identifiable search terms, and the limited number of responsive documents, especially since these individuals are not alleged to have interacted with Fleet Farm directly, the State contests that this request is overly broad and unduly burdensome.

### G.    Fleet Farm's October 5, 2022 Public Statement (Document Request No. 17)

Defendants rely on the defense that they abided by all obligations required by a Federal Firearms License, and Plaintiff's request for "all documents supporting or contradicting Fleet Farm's public statement issued on October 5, 2022" in **Document Request No. 17** seeks information relevant to that defense. Plaintiffs disagrees that "supporting or contradicting" is vague and ambiguous; such language indicates that Defendants cannot avoid producing documents that may include information inconsistent with the information included in their public statement.

Additionally, **Document Request No. 17** is only duplicative of **Document Request No. 9** to the extent Defendants propose narrowing the request. Defendants are obligated to respond in full to **Document Request No. 17**, including, but not limited to internal documents relating to the public statement on October 5, 2022, and records of how and when the statement was made. All of the requested information is unlikely to be found in communications with the ATF alone. The State asks Defendants to respond to the full scope of their request and propose a deadline for responsive production to cure the deficiencies in their response.

Counsel for Fleet Farm, LLC, et al.
November 22, 2023
Page 10

        **H.**      **Fleet Farm's Policies and Procedures (Document Request Nos. 16, 19, 20, and 28)**

The State seeks all documents related to Fleet Farm's data retention policies, procedures, and practices (**Document Request No. 16**); all documents used or relating to the training of Fleet Farm retail store employees relating to sales of firearms, straw purchaser awareness, detection, and/or prevention, compliance with state and federal firearms laws, or reporting suspicious behavior to law enforcement **(Document Request No. 19);** all documents related to or showing any training schedules for Fleet Farm retail employees **(Document Request No. 20);** and all documents related to any policy or procedure governing or informing Fleet Farm's compliance with federal and state law, cooperation with law enforcement, or reporting of suspicious activity to any law enforcement agency **(Document Request No. 28)**. The State disagrees with Defendants' response to **Document Request Nos. 16, 19, and 28.**

Defendants' attempts to narrow **Document Requests Nos. 16, 19, and 28** are deficient. Defendants argue that **Document Request No. 16** is irrelevant and should be narrowed to only retention policies related to video recordings at Fleet Farm stores. The State fails to see how **Document Request No. 16** is irrelevant to the claims and defenses in this lawsuit. Knowledge of Defendants' data retention policies, procedures, and practices are sufficiently related to understanding their controls, policies, and oversight of the sale of firearms, which is a major component of their business and at issue in this suit. Defendants' response narrowing **Document Request No. 16** to only retention policies related to video recordings is deficient.

Similarly, Defendants' response improperly narrows **Document Request No. 19** to only "internal training materials related to firearm transactions…" The State's request is highly relevant to the claims and defenses in this case. **Document Request No. 19** is targeted to helping the State understand the training Fleet Farm retail employees had or should have had, shedding light on the extent to which Defendants had reason to know its firearms were being straw-purchased. Further, Defendants assert that "reporting suspicious behavior to law enforcement" encompasses behavior unrelated to an attempted or completed firearm transaction and is therefore irrelevant. To the contrary, training relating to "reporting suspicious behavior to law enforcement" pertaining to and outside the context of firearms transactions is wholly relevant to the claims and defenses in this lawsuit.

Defendants' attempt to satisfy **Document Request No. 28** by referring to **Document Request No. 19**, which solely seeks training documents, is deficient. **Document Request No. 28** captures a broader scope of documents that are relevant to the claims and defenses in this case. Defendants' understanding of its obligations to comply with federal and state law, cooperate with law enforcement, and report suspicious activity directly relates to what Defendants knew or should have known about straw purchases. The State is willing to limit this to documents related directly or indirectly to firearms, including policies directly about firearms or more general policies that implicate firearm sales, like those related to shoplifting or crime.

Further, Defendants object to the **Document Request Nos. 16, 19, 20, and 28** on the grounds that the requests are overly broad and unduly burdensome. However, **Document Request**

Counsel for Fleet Farm, LLC, et al.
November 22, 2023
Page 11

**No. 16** is narrowly tailored to seek Defendants' data retention policies, procedures, and practices, a finite universe of documents that should easily be identifiable and accessible to Defendants. Similarly, the State fails to see how **Document Request No. 19**, is overly broad or unduly burdensome because the State specifically seeks documents related to Defendants' internal trainings, documents that again should be easily identifiable and accessible to Defendants. The same is true for Defendants' identical objection to **Document Request No. 20.** As for **Document Request No. 28**, Plaintiff's request for documents relating to Defendants' cooperation with law enforcement, and reports to law enforcement are relevant to the claims in this matter, and do not constitute an undue burden.

### I.      Fleet Farm's Employee Evaluations (Document Request Nos. 21 and 22)

The State requested all documents related to any Fleet Farm employees, agent, manager, director, or principal against whom Fleet Farm has taken or is taking disciplinary action for violating any Fleet Farm policy or procedure related to the sale of firearms in Minnesota (**Document Request No. 21**) and all documents related to performance evaluations or promotions of Fleet Farm employees, agent, manager, director, or principal involved in the sale of firearms in Minnesota (**Document Request No. 22)**. However, Defendants entirely refused to produce documents responsive to either request. Defendants are obligated to fulfill **Document Request Nos. 21 and 22.**

The State contests Defendants' claim that **Document Request Nos. 21 and 22** are irrelevant to the claims and defenses in this suit. Understanding Defendants' disciplinary actions against employees for violations related to firearm sales gets at the heart of the claims of this action: the extent to which Defendants knew or had reason to know its firearms were being straw-purchased. Likewise, performance evaluations of Fleet Farm employees involved in the sale of firearms could demonstrate Defendants' knowledge of its employees' practices and actions, including selling firearms to straw-purchasers. Defendants' disciplinary conduct is direct evidence as to whether and how their firearm-related policies are actually enforced against employees.

Further, Defendants argue that both requests are overly broad and unduly burdensome. **Document Request No. 21** is narrowly tailored as it is limited to disciplinary actions taken related to the sale of firearms in Minnesota. Unless Defendants have a significant number of employees it has taken disciplinary action against due to violations of policies related to the sale of firearms, producing such documents to the State should not constitute an undue burden. Similarly, **Document Request No. 22** is not overly broad because it only seeks performance evaluations for those involved in the sale of firearms in Minnesota. These carve outs are not unduly burdensome on Defendants.

### J.      Fleet Farm's Internal Sales Information (Document Request Nos. 15, 23, and 24)

Plaintiff requested that Defendants produce surveillance footage (**Document Request No. 15**), documents related to denied sales (**Document Request No. 23**), and documents related to people to whom Fleet Farm refuses to sell (**Document Request No. 24**). Production responsive to

Counsel for Fleet Farm, LLC, et al.
November 22, 2023
Page 12

these requests are directly relevant straw purchasing of firearms from Fleet Farm and to Fleet Farm's ability to recognize that behavior.

Specifically, the State rejects Defendants' narrowing of **Document Request No. 15** to be limited to video recordings of the firearm sales counter. Behaviors and signs of straw purchasing occur in other parts of the store and even directly outside of the store. Defendants incorrectly exclude audio recordings from their response when producing audio recordings, along with any video recordings, is not especially burdensome in light of the limiting parameters provided in the Request.

Additionally, Defendants' objection that **Document Request No. 15** is overly broad and unduly burdensome lacks any specificity, thus their Response is deficient. Plaintiff's request is limited to specific locations where, and dates when, known straw purchases took place. For example, the State could have sought footage from any date Horton and Elwood entered a retail store owned by Defendants, but instead opted for a more targeted request of known straw-purchase dates.

To the extent such surveillance footage exists from other areas within the stores and immediately outside the stores, both in audio and video form, the State asks Defendants to produce it along with the footage they already agreed to produce in their Response to **Document Request No. 15**.

The State asks that Defendants propose a reasonable timeline for production of the described documents responsive to **Document Request Nos. 23 and 24**, which include all documents related to an incomplete firearm sale or a person Fleet Farm refuses to sell to and is not duplicative of other Requests in that it seeks internal documents beyond what is being produced in response to other Requests. For example, there may be responsive documents beyond the ATF forms being produced in response to **Document Request No. 6**.

K.      **Fleet Farm's Documents Identifying Straw Purchasers (Document Request No. 25 and 26)**

The State asked Defendants to produce documents showing the identity of straw purchasers Fleet Farm has sold to (**Document Request No. 25**) and all other documents related to the identification and reporting of straw purchasers (**Document Request No. 26**). Defendants object on the grounds that these requests are overly broad and unduly burdensome and irrelevant to the suit. Documentation regarding straw purchasers is obviously relevant in a lawsuit against Defendants attempting to hold them liable for selling to straw purchasers. Additionally, the burden of producing such documents is limited by only requesting documents related to straw purchasers, not all customers, within Defendants' possession.

The Defendants promise to produce "documents sufficient to ascertain the identities of persons Fleet Farm has (1) identified as a suspected straw purchaser of firearms and/or (2) reported to the ATF." To be fully responsive to **Document Request No. 26**, the State asks Defendants to produce not only "documents sufficient to ascertain the identities" but "[a]ll documents *related to* related to any person that Fleet Farm has identified as a straw purchaser" (emphasis added).

Counsel for Fleet Farm, LLC, et al.
November 22, 2023
Page 13

Additionally, the State does not accept the Defendants narrowing of the request to those "reported to the ATF" when **Document Request No. 26** asks for those "reported to federal, state, and local law enforcement." The State is willing to meet and confer to the extent Defendants still find that terminology vague and ambiguous. Additionally, the State asks Defendants to propose a deadline for production in response to **Document Request No. 26**.

### L.    Insurance Policies (Document Request No. 31)

Thank you for agreeing to produce insurance policies that are applicable to this action. In Defendants' response to **Document Request No. 31**, Defendants assert that they have begun the task of reviewing their insurance agreements for those applicable to this action. The State requests that Defendant produce all identified policies or to propose a deadline to do so.

### III.    Fleet Farm's Deficient Responses to the State's Interrogatories

### A.    Individuals with Relevant Factual Knowledge (Interrogatory No. 2)

The State disputes that **Interrogatory No. 2** qualifies as a premature contention interrogatory as the identification of individuals with factual knowledge about "Fleet Farm's policies, procedures, or practices regarding firearm sales" does not relate to an "opinion or contention that relates to fact or the application of law to fact," which would require the completion of fact or expert discovery. Fed. R. Civ. P. 33(a)(2). Additionally, the Defendants' objection that the interrogatory is overly broad and unduly burdensome is addressed by the State's narrowing of the request to an established time period and to individuals with knowledge of *firearm* sales policies and procedures. The State appreciates that Defendants identified individuals in corporate leadership that possess such knowledge. However, Defendants must supplement their response to identify "all . . . employees [and] agents", including those outside of corporate leadership. The State asks that Defendants agree within two weeks to amend their response to cure these deficiencies by January 5, 2024.

### B.    Fleet Farm's Corporate/Organizational Structure (Interrogatory Nos. 3 and 4)

The State has asked Defendants to describe their relationship among each other and with other entities involved in the corporate structure (**Interrogatory No. 3**) and to describe any changes to that corporate structure including changes in the personnel of corporate leadership (**Interrogatory No. 4**). Defendants refuse to respond to these interrogatories, claiming that they are overly broad and unduly burdensome, as well as irrelevant to the claims in the case.

The State has sufficiently narrowed its request to describe the corporate structure during the years provided and seeks information Defendants have readily available, such as corporate governing documents and the names of officers and directors. Such foundational information about Defendants' governance and how Defendants conduct business is relevant to the claims in this case to the extent that any identified individuals or entities may have contributed to Fleet Farm's oversight in allowing straw purchases. Additionally, the fact that Defendants do not contend that

Counsel for Fleet Farm, LLC, et al.
November 22, 2023
Page 14

Plaintiff has failed to name the correct corporate entities in the lawsuit does not have any bearing on the discoverable nature of this information.

Finally, Defendants claim these requests are duplicative of **Document Request Nos. 3 and 4**. While **Interrogatories Nos. 3 and 4** could be answered by reference to specific Bates numbers of documents responsive to these Interrogatories, Defendants have yet to respond to any of the discovery requests related to their corporate structure/organization. The State asks Defendants to cure these deficiencies as soon as possible by providing a narrative response to **Interrogatory Nos. 3 and 4** or identify the Bates numbers of sufficiently responsive documents in compliance with Rule 33(d).

### C.     Fleet Farm's Internal Policies (Interrogatory No. 5)

Defendants respond to **Interrogatory No. 5** by reference to the documents mentioned in Defendants' Initial Disclosures and the documents to be produced in response to **Document Request Nos. 19 and 20**. In their letter dated October 3, 2023, Defendants identify, by Bates number, documents in their first round of production responsive to this request. The State asks Defendants to clarify whether these documents represent their entire response to **Interrogatory No. 5** or if they will rely on documents in future productions. Defendants have an ongoing duty to supplement discovery responses pursuant to Rule 26(e).

### D.     Fleet Farm's Employees in Contact with Straw Purchasers (Interrogatory No. 6)

The State asks Defendants to describe each Fleet Farm employee or agent who has communicated with or contacted Jerome Horton, Gabriel Lee Young-Duncan, Sarah Elwood, Jeffrey Jackson, or Geryiell Walker. Defendants' objection that this interrogatory is premature because no depositions have occurred holds little weight. The information requested in **Interrogatory No. 6** is needed to inform the decision as to who should be deposed. It is not overly broad or unduly burdensome for Defendants to identify the employees who have contacted the five individuals in **Interrogatory No. 6**, nor is it premature, as Fleet Farm has likely gathered this information in connection with the criminal investigation and prosecutions of Jerome Horton and Sarah Elwood and their related Fleet Farm transactions. Compl. ¶¶ 37–61.

Identifying those employees who had contact or communication with the five individuals identified in **Interrogatory No. 6** is proportional to the needs of the case. Indeed, Plaintiff's claims relate to the practices and actions of Fleet Farm related to these individuals. Defendants' employees who had contact or communication with Horton, Elwood, Young-Duncan, Jackson, and Walker is necessarily relevant to the claims of this case.

To cure the deficiencies in their response, the Defendants should identify the requested employees in narrative form or by identifying Bates numbers of produced documents sufficient to demonstrate which of Defendants' employees and agents had contact with the individuals listed in **Interrogatory No. 6**.

Counsel for Fleet Farm, LLC, et al.
November 22, 2023
Page 15

**E.    Fleet Farm's Communications with Agencies (Interrogatory Nos. 7 and 15)**

The State asked Defendants to identify every Fleet Farm employee who has communicated with the ATF, BCA, and relevant state agencies (**Interrogatory No. 7**) and any investigations and contacts from federal, state, and local agencies regarding Defendants' sale of any firearm in Defendants' Minnesota Stores (**Interrogatory No. 15**).

Defendants cannot rely on boilerplate objections to withhold providing a response. Individuals responsible for communication with the ATF, BCA, and Minnesota law enforcement will have meaningful information regarding Defendants' compliance with federal regulations and practices related to Defendants' sale of firearms. Therefore, regardless of their level of knowledge, it is not overly broad or unduly burdensome to identify such individuals. Additionally, Fleet Farm should already be aware of "any investigations, compliance inspections, warning letters or warning conferences, remedial trainings, presentations, inquiries, or contacts," and it is not unduly burdensome to produce related documents in Defendants' custody and control.

Defendants refer Plaintiff to the documents produced in response to **Document Request Nos. 9–11**, but they have yet to produce any documents according to these requests. To cure deficiencies in their responses, Defendants should amend to include a narrative response, or they should identify documents, by Bates number, that are responsive.

**F.    Fleet Farm's Employee Evaluations and Investigations (Interrogatory Nos. 8 and 9)**

The State requested Defendants to identify and detail the conduct of every employee against whom Defendants have taken or are taking disciplinary action for violating any policy or procedure related to the sale of firearms (**Interrogatory No. 8**); and describe every instance in which it investigated or audited its employees' compliance with its policies and procedures related to the sale of firearms, including whether Fleet Farm investigated its firearms sales to Jerome Horton or Sarah Elwood. (**Interrogatory No. 9**). However, Defendant refused to respond to **Interrogatory No. 8** in any manner. And Defendant's response to **Interrogatory No. 9** referring to their forthcoming production to **Document Request No. 12** is deficient.

Contrary to Defendants' objections, **Interrogatory No. 8** is not overly broad and unduly burdensome, because it asks Defendants to identify only those who have incurred disciplinary action for violating policies related to the sale of firearms, and subsequently describe the infraction and discipline. Unless Defendants have had to discipline a multitude of Fleet Farm employees due to violations of company firearm sales policies, responding to **Interrogatory No. 8** should not impose an undue burden on Defendants. If there are many employees who have been disciplined, such information would necessarily be relevant to the claims in the Complaint.

Defendants also object to **Interrogatory No. 8** on the grounds that it seeks information irrelevant to the claims and defenses in this suit. However, understanding Defendants' disciplinary actions against employees for violations related to firearm sales gets at the heart of the claims of this action: the extent to which Defendant had reason to know its firearms were being sold contrary

Counsel for Fleet Farm, LLC, et al.
November 22, 2023
Page 16

to Fleet Farm policies or procedures related to the sale of firearms. Similarly, the State disputes that the and the phrases "disciplinary action" and "related to the sale of firearms" are vague and ambiguous. Further, Defendant objects to **Interrogatory No. 8** on the grounds that it is duplicative of **Document Request No. 21**. This objection is meaningless as Defendants refused to produce any documents responsive to **Document Request No. 21**. Defendants are obligated to identify the requested employees and detail of their conduct in narrative form.

Likewise, **Interrogatory No. 9** is not overly broad or unduly burdensome because it seeks a specific subset of Defendant's investigations and audits of its employees. And **Interrogatory No. 9** is relevant because understanding the extent to which Defendant investigated or audited its employees' compliance with firearm sales policies directly relates to the extent to which Defendant had reason to know its firearms were being straw-purchased. Further, the State contests that the phrases "investigated or audited" and "related to the sale of firearms" are vague and ambiguous, but the State will confer to clarify these terms if necessary.

Defendants' response to **Interrogatory No. 9, which** references **Document Request No. 12,** is not sufficient. Whereas **Document Request No. 12** only pertains to Elwood and Horton, **Interrogatory No. 9** seeks information relating to all instances of investigation or auditing of employees' compliance with policies related to the sale of firearms. Finally, Defendants' objections that **Interrogatory No. 9** is duplicative of **Document Request Nos. 21 and 22** are meaningless because Defendants refused to produce documents responsive to either.

### G.      Fleet Farm's Communications with Law Enforcement (Interrogatory No. 11)

The State asked Defendants to identify every requested firearms sale in Minnesota that Defendants decided not to complete and every person for whom Defendants limited or ceased firearms sales in Minnesota, including a description of each instance. Defendants answered by referring to their forthcoming production in response to **Document Request Nos. 23 and 24**. This answer is deficient because Defendants cannot satisfy their discovery burden by referring to documents they have not yet produced. To cure their deficiencies, Defendants should either draft a narrative response or refer to responsive documents specifically by Bates number.

### H.      Fleet Farm's Documents Related to Elwood and Horton (Interrogatory No. 12)

The State asked Defendants to identify every person that Defendants have identified or suspected to be a straw purchaser related to Fleet Farm's sales of firearms in Minnesota. Defendants answered by referring to their forthcoming production in **Document Request No. 26**. This answer is deficient because Defendants cannot satisfy their discovery burden by referring to documents they have not yet produced. To cure their deficiencies, Defendants should either draft a narrative response or refer to responsive documents specifically by Bates number.

### I.      Fleet Farm's Surveillance (Interrogatory No. 13)

The State asks Defendants to describe their surveillance infrastructure in their stores, what kind of surveillance technology and recordings are used, and their policies for reviewing such data.

Counsel for Fleet Farm, LLC, et al.
November 22, 2023
Page 17

Defendants state that the interrogatory is overly broad and unduly burdensome; and include in their narrative response only a description of surveillance technology at and near the firearms counter. Behaviors indicative of straw purchasing do not occur only at the sales counter or only inside the store. The State asks Defendants to supplement their response to **Interrogatory No. 13** to provide sufficient information for *all* surveillance technology at their stores.

Additionally, the State is satisfied by Defendants' response that **Document Request No. 16** is sufficient in answering the parts of **Interrogatory No. 13** seeking information about data retention and review policies. The State reiterates its request for Defendants to propose a deadline for such production. To cure their deficiencies, Defendants should either draft a narrative response or refer to responsive documents specifically by Bates number.

### J.    Fleet Farm's October 5, 2022 Statement (Interrogatory No. 14)

Defendants, despite their objections, have decided to respond to **Interrogatory No. 14** by referencing the documents mentioned in Defendants' Initial Disclosures and the documents to be produced in response to **Document Request No. 17**. However, Defendants have yet to produce responsive documents related to their public statement made on October 5, 2022. The State asks that they cure the deficiencies in their response by identifying documents by Bates number that respond to **Document Request No. 17** or provide a narrative response.

**\*\*\***

Please let us know if you are available to meet and confer about these deficiencies during one of the following time frames: Monday, December 11 between 9:30 and 11; Tuesday, December 12 between 10 and 11, 12 and 1, 2 and 3, or 4 and 5; Wednesday, December 13, between 9:30 and 11 or 3 and 5; or Wednesday, December 20 between 3 and 5.

Sincerely,

KATHERINE MOERKE
Assistant Attorney General
(651) 728-7174
katherine.moerke@ag.state.mn.us

cc: Eric Maloney, Office of Minnesota Attorney General
Megan Walsh, Arielle Hugel, William Roberts, and Nick Taylor, University of Minnesota Law School