

Andrew Davis
DIRECT: 612.335.1556
OFFICE: 612.335.1500

Andrew.Davis@stinson.com

January 24, 2024

**<u>VIA EMAIL</u>**

Katherine A. Moerke                     Megan Walsh
Eric J. Maloney                         Arielle Hugel
James W. Canaday                        William Roberts
Jason T. Pleggenkuhle                   Nick Taylor
Office of the Minnesota Attorney General    University of Minnesota Law School
445 Minnesota Street, Suite 1200        190 Mondale Hall
St. Paul, MN 55101-2130                 229 19th Avenue South
katherine.moerke@ag.state.mn.us         Minneapolis, MN 55455
eric.maloney@ag.state.mn.us             wals0270@umn.edu
james.canaday@ag.state.mn.us            hugel004@umn.edu
jason.pleggenkuhle@ag.state.mn.us       robe2331@umn.edu
                                        tayl1110@umn.edu

Re:     *State of Minnesota v. Fleet Farm LLC, et al.*, Case No. 0:22-cv-02694-JRT-JFD

Counsel:

On behalf of Defendants Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC (together, "Fleet Farm"), I write in response to Plaintiff's December 22, 2023 letter regarding the production of certain ATF Form 4473s and 3310.4s in response to Plaintiff's Request for Production No. 6.

To start, Fleet Farm reiterates its view that the vast majority of Form 4473s (and 3310.4s) have no conceivable relevance to this case. As Plaintiff has acknowledged, "an ATF Form 4473 itself does not indicate whether the purchaser was actually law-abiding or not." *See* Pl.'s Nov. 17, 2023 Ltr. 3. Given this, Fleet Farm would be well-positioned to object to the production of *any* Form 4473s on the basis that they are irrelevant. But in the spirit of compromise, and in an effort to avoid unnecessary motion practice, Fleet Farm has offered to produce Form 4473s that could arguably be construed as reflecting purchasing patterns similar to those alleged in the complaint. Producing Form 4473s beyond this scope would be improper: such forms are irrelevant, there are substantial burdens associated with collecting and producing the forms, and any production will implicate significant privacy concerns.

Fleet Farm also appreciates Plaintiff has recognized that the customer information provided in Fleet Farm's A&D logs should be no broader than the Form 4473s produced in this case, and that it is appropriate for Fleet Farm to "redact personally identifying information (i.e., names, addresses, phone numbers, etc.) for all purchasers other than purchasers" whose Form 4473s are produced. *See* Pl.'s Dec. 22, 2023 Ltr. 3. Once the parties reach agreement as to the appropriate scope of

Katherine A. Moerke, et al.
January 24, 2024
Page 2


Form 4473s to be produced, Fleet Farm will take steps to produce its A&D logs with appropriate corresponding redactions.[1]

Turning to the appropriate scope of production of Form 4473s (and any corresponding Form 3310.4s), as relevant here, on November 17, 2023, Plaintiff proposed that Fleet Farm produce "[a]ll Form 4473s for purchases where the same purchaser purchased multiple firearms from Fleet Farm retail stores from October 5, 2016 to the present." *See* Pl.'s Nov. 17, 2023 Ltr. 3.  On December 5, Fleet Farm rejected this proposal, and offered to produce "all Form 4473s (and, where applicable, the corresponding Form 3310.4s) for purchasers who purchased thirteen or more handguns from one or more Fleet Farm store in Minnesota in the time period of January 1, 2017 through October 5, 2022." *See* Defs.' Dec. 5, 2023 Ltr. 6–7.  During the parties' December 20 meet and confer, Plaintiff rejected Fleet Farm's offer.  Plaintiff indicated it believed a quantitative limit of "thirteen or more handguns" was too narrow, but acknowledged it was unlikely that an individual purchasing two firearms in a nearly six-year window could have any relevance to its claims.  On December 22, following the meet and confer, Plaintiff proposed that Fleet Farm produce "Form 4473s and Form 3310.4s" for "purchasers who purchased two or more firearms from any Fleet Farm stores within any 14-day period."  *See* Pl.'s Dec. 22, 2023 Ltr. 3.

Plaintiff's proposal is unworkable for three primary reasons.

***First***, the proposal is not tailored to seek information with conceivable relevance to the claims in this case.  To start, Plaintiff has not addressed the fact that long-gun purchases are not relevant—this case is focused on alleged straw purchasing of ***handguns*** from Fleet Farm's Minnesota stores.  *See* Defs.' Dec. 5, 2023 Ltr. 5–6; Compl. ¶¶ 1, 3–4, 25, 30–31, 35–37, 39, 41–42, 44–45, 47, 49, 55.  Plaintiff has also failed to proffer any explanation for why all instances of an individual purchasing "two or more firearms from any Fleet Farm stores within any 14-day period" are relevant to its claims.  As with Plaintiff's prior proposal, this proposal would undoubtedly encompass numerous instances of individuals lawfully purchasing a small number of firearms from a Fleet Farm store within a short time period (for example, purchasing a handgun for self-defense and a rifle for hunting, or purchasing two hunting rifles), and engaging in no further firearm purchases.  It is implausible to suggest such purchasing patterns are relevant to Plaintiff's claims.  Although Fleet Farm disputes that the number of firearms purchased by an individual alone can be a sufficient basis for contending a person was likely to be a straw purchaser,[2] at minimum the

---

[1] Fleet Farm also notes the A&D logs are duplicative of the Form 4473s, as the information contained in the logs is also reflected on the Form 4473s.

[2] Indeed, numerous sources have recognized that many law-abiding citizens collect and own a large number of firearms.  *E.g.*, Kim Parker, et al., *The demographics of gun ownership*, PEW RESEARCH CENTER (June 22, 2017), https://www.pewresearch.org/social-trends/2017/06/22/the-demographics-of-gun-ownership/; Lois Beckett, *Meet America's gun super-owners – with an average of 17 firearms each*, THE GUARDIAN (Sept. 20, 2016), https://www.theguardian.com/us-news/2016/sep/20/gun-ownership-america-firearms-super-owners.

187032404

Katherine A. Moerke, et al.
January 24, 2024
Page 3

production of Form 4473s must be tethered to purchasing patterns that are arguably analogous to those alleged in the complaint.

***Second***, the proposal does not sufficiently account for the substantial burdens associated with producing all Form 4473s for individuals who "purchased two or more firearms from any Fleet Farm store[] within any 14-day period." Fleet Farm has determined there may be as many as 150,000 Form 4473s reflecting firearm transactions at its Minnesota stores from the time period of January 1, 2017 through October 5, 2022. Plaintiff's current proposal encompasses nearly 25,000 of those forms, and would require persons to travel to all seventeen Fleet Farm stores throughout Minnesota to carefully review, segregate, collect, unstaple, scan, restaple, and re-file close to 200,000 pages of Form 4473s (and, where applicable, the accompanying Form 3310.4s). *See* Def.'s Dec. 5, 2023 Ltr. 5–6. This is an extraordinary burden on Fleet Farm,[3] making Plaintiff's proposal vastly disproportional to the needs of the case. Indeed, the burden Fleet Farm will bear in producing any Form 4473s requires that the scope of production be narrowly tailored to materials that have some conceivable relevance to the actual claims in this case.

***Third***, the proposal does not adequately address the unique and substantial privacy interests implicated by Fleet Farm providing Plaintiff with documentation of thousands of law-abiding citizens' firearm purchases. Among other things, federal law imposes limitations on NICS' ability to retain personal identifiable information related to authorized firearms transactions, and requires the destruction of all data relating to authorized firearm transactions (except the transaction number) within 90 days. *See* 28 C.F.R. § 25.9(b)(1)(iii). These destruction obligations extend to state and local law enforcement agencies serving as points of contact between FFLs and NICS. *See id.*, subd. (d). Further, information provided to NICS may not be used by any federal entity "to establish any system for the registration of firearms, [law-abiding] firearm owners, or firearm transactions or dispositions." *Id.*, subd. (b)(3). And Minnesota law imposes similar limitations, allowing an individual to request that "no record be maintained" identifying them as the transferee in an approved firearm transaction. *See* Minn. Stat. § 624.7132, subd. 10. Given these limitations, discovery of such information must be narrowly tailored to seek only information that has some conceivable connection to Plaintiff's claims.

Accordingly, Fleet Farm must reject Plaintiff's December 22 proposal. Instead, Fleet Farm reiterates its offer to produce the Form 4473s (and, where applicable, the corresponding Form 3310.4s) for purchasers who purchased thirteen or more handguns from one or more Fleet Farm store(s) in Minnesota between January 1, 2017 and October 5, 2022, along with a redacted copy of the applicable A & D logs.

To be clear, Fleet Farm disputes the relevancy of the requested Form 4473s. In the spirit of compromise, however, Fleet Farm's offer is tailored to capture those Fleet Farm customers with

---

[3] As Fleet Farm has already explained, this burden is not lessened by having Plaintiff undertake these efforts, because Fleet Farm would have to deploy resources to accompany and monitor Plaintiff's document inspection and collection activities. *See* Defs.' Dec. 5, 2023 Ltr. 6. Nor can the burden be alleviated by moving Fleet Farm records off site, as federal law requires that Form 4473s be maintained by the FFL on site. *See* 18 U.S.C. § 923(g)(1)(A); 27 C.F.R. § 478.121(a); 27 C.F.R. § 478.124(f).

187032404

Katherine A. Moerke, et al.
January 24, 2024
Page 4

purchasing patterns arguably similar to Jerome Horton or Sarah Elwood—who purchased thirteen and twenty-four firearms, respectively, from Fleet Farm during the relevant time period. *See* Compl. ¶¶ 38, 54. Indeed, Fleet Farm's proposal is far more expansive, as it spans a nearly six-year time period, rather than the four-month (Horton) and twelve-month (Elwood) periods at issue in the Plaintiff's Complaint. *See id.*

Limiting Fleet Farm's production of Form 4473s (and the unredacted portions of Fleet Farm's A&D logs) to individuals who have purchased thirteen or more handguns is a reasonable compromise that will still result in Plaintiff obtaining purchase information with any conceivable relevance to its claims. This proposal is directly tied to Plaintiff's allegations and would alleviate (though not eliminate) Fleet Farm's substantial burden in collecting these forms, as well as Plaintiff's burden in reviewing and analyzing potentially hundreds of thousands of pages of irrelevant material.

*       *       *

Please let us know by Wednesday, February 1, 2024, if Plaintiff accepts this proposal.

Sincerely,

**Stinson LLP**

Andrew W. Davis

cc:    Todd Noteboom
       Andrew Leiendecker
       Zachary Wright

187032404