**The Office of**
**Minnesota Attorney General Keith Ellison**
helping people afford their lives and live with dignity, safety, and respect  •  *www.ag.state.mn.us*

Via e-mail

January 26, 2024

Andrew W. Davis
Andrew P. Leiendecker
Todd Noteboom
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402

Re:   *State v. Fleet Farm LLC, et al.*, Case No.: 0:22-cv-02694-JRT-JFD

Dear Counsel:

We write to follow up on the meet and confer call held on December 20, 2023 about deficiencies in Fleet Farm's discovery. The issues discussed have been addressed multiple times, including in the State's November 22, 2023 Letter, Defendants' December 5, 2023 Letter, and other correspondence regarding Defendants' August 21, 2023 Responses to Plaintiff's First Set of Discovery Requests. Given the extensive correspondence regarding Defendants' discovery deficiencies, the State seeks prompt resolution on these issues or, as needed, will move to compel on these issues.

## I.    Outstanding Issues with Fleet Farm's Discovery

The State further addresses arguments made by Defendants during the December 20 meet and confer in hopes of moving the discovery process forward on the following outstanding issues without needing to bring a motion to compel on all of them:

### A.  Discovery End Date

At the meet and confer on December 20, the State proposed August 2, 2024, i.e., the end of fact discovery per the scheduling order, as the end date for the relevant discovery period. Defendants categorized the State's proposed deadline as "unworkable" but agreed to discuss the State's proposal with their client. Please confirm that Fleet Farm will produce responsive documents and information that post-date the Complaint through the discovery period set by the court in this case. As noted by the State in the parties' meet-and-confer, the caselaw Fleet Farm cited in its December 5 letter does not support its argument that post-Complaint information and documents are somehow not subject to discovery. Instead, the cases support the State's proposition that "courts allow discovery of documents post-dating the filing of a complaint." *Ramos v. Banner Health*, 2018 WL 4700707, at *3 (D. Colo Aug. 8, 2018). Because the State is seeking to enjoin

Counsel for Fleet Farm, LLC, et al.
January 26, 2024
Page 2

ongoing misconduct, the end date for responsive discovery must continue past the date of the complaint.

### B. Firearms Records (Document Requests Nos. 6 and 8)

The parties have exchanged extensive correspondence regarding the discovery of A&D Logs, Forms 4473, and Forms 3310.4 and devoted a significant portion of time during the December 20 meet and confer to discussing **Document Requests Nos. 6 and 8**. As indicated in the State's January 25, 2024, email, the State will move to compel.

### C. Fleet Farm's Licensure Documents (Document Request No. 5)

In **Document Request No. 5**, the State requests the following: "*All* documents related to the licensure of Fleet Farm and its Minnesota Stores to sell firearms under state and federal law, including but not limited to licensure applications *and supporting materials* . . . ." (emphasis added). Thank you for confirming that Defendants' production will include all documentation sent to the ATF with applications for a federal firearms license.

In addition, "supporting materials" include Defendants' internal communications regarding the preparation of and compilation of information for each application for a federal firearms license. Defendants assert that such information is not relevant to the claims of the case. As noted in the Complaint, "[f]irearms dealers are required to know the federal firearms laws and regulations. ATF agents review the applicable laws and regulations with firearms dealers when they initially receive their license and during ATF audits." Compl. ¶ 33. Thus, the production of internal communications regarding licensure applications may demonstrate Defendants' awareness and understanding of their duties as a federally licensed firearms retailer, may identify individuals responsible for compliance, and may provide relevant information regarding whether Defendants complied with their duties. This request does not impose a significant burden because ATF licensure applications are submitted once per year. The State asks Defendants to produce Defendants' internal communications regarding the preparation of and compilation of information for FFL licensing applications. Please confirm Defendants will do so.

### D. Individuals with Relevant Factual Knowledge (Interrogatory No. 2)

The State asks Defendants to "[i]dentify all persons who have or may have factual knowledge relating to the allegations, claims, denials, and defenses set forth in the pleadings . . . includ[ing] all current or former Fleet Farm employees, agents, managers, directors, and principals that had any role in establishing, modifying, overseeing, and/or monitoring Fleet Farm's policies, procedures, or practices regarding firearm sales." Defendants have only identified those in corporate leadership responsible for "establishing, modifying, overseeing, and/or monitoring Fleet Farm's policies, procedures, or practices regarding firearm sales." During the December 20 meet and confer, the State noted that such policies are also implemented by employees not listed in Defendant's' response to **Interrogatory No. 2** and not within the corporate leadership. For

Counsel for Fleet Farm, LLC, et al.
January 26, 2024
Page 3

example, individuals within regional management or management at the store-level, especially in the identified Minnesota stores, would have knowledge relevant to the claims of this case.

In the spirit of compromise, the State asks that Defendants amend their response to capture "all persons who have or may have factual knowledge relating to the allegations, claims, denials, and defenses set forth in the pleadings." This should include, for example, Fleet Farm employees in regional and/or store management that are responsible for implementation of company-wide policies in the stores, employees who work the firearms counter in Fleet Farm's Minnesota stores, etc. Defendants argued that forthcoming document production would identify such individuals and thus amending the response is unnecessary. However, Defendants' response remains deficient if Defendants do not identify documents by Bates number that provide the information sought in **Interrogatory No. 2**.

### E. Fleet Farm's Corporate/Organizational Structure (Document Requests Nos. 3 and 4; Interrogatory Nos. 3 and 4)

Defendants' proposal to amend their response to **Interrogatory No. 2** to include hierarchical relationships among the individuals who work on sales practices and policies related to firearms transactions is insufficient to meet their discovery obligations. Although the hierarchy within Fleet Farm of their firearms department is relevant to the claims of the case, other departments within Fleet Farm interface with the sales of firearms and are relevant to this case. Defendants have asked the State to propose what other parts of Fleet Farm's internal organizational structure are relevant to the claims in this case. That task is difficult in light of Defendants' limited production to date and the asymmetry between the parties' knowledge of Fleet Farm's organizational structure. Given these asymmetries, the burden is lower for Fleet Farm to produce Defendants' entire organizational charts, documents most corporations maintain in the normal course of business, than to carve out employees who work specifically on firearms transactions. The State agreed to propose individual departments that it believes have relevant documents and information, and it asks Defendants to include information related to the following departments, should they exist, or equivalent departments of a different name: Safety, Compliance, Human Resources.

Second, Defendants' response to **Document Request No. 3**, seeking "documents sufficient to show Fleet Farm's legal identity, organization and ownership," is deficient. This information is relevant to the claims and *defenses* of this case because Defendants' Answer asserts that the State failed to name the correct parties, and it has not amended its Answer to remove that defense. *See* Answ. at *26 ("Plaintiff has failed to join all necessary parties . . . ."). As discussed in the meet and confer, such information is relevant in that the State seeks injunctive relief and has an interest in confirming which parties would need to be bound by any injunctive relief granted in this action. The cases cited in Defendants' December 5 letter fail to address the State's argument with respect to injunctive relief, as sought in this case, whereas cases about injunctive relief recognize the need for corporate structure discovery. *See Smiths Group, PLC v. Frisbie*, 2013 WL 268988, at *6 (D. Minn. Jan. 24, 2013) (granting discovery on corporate structure in a case for injunctive relief).

Counsel for Fleet Farm, LLC, et al.
January 26, 2024
Page 4

### F. Fleet Farm's Data Retention Policies (Document Request No. 16)

The State seeks discovery of "[a]ll documents related to Fleet Farm's data retention policies, procedures, and practices, including Fleet Farm's retention and deletion of surveillance video and audio recordings." Defendants have agreed to produce Fleet Farm's data retention policies related to video surveillance but have declined to produce any policies related to Fleet Farm's general data and document retention policies. Producing such documents is a standard civil litigation practice, and initial discovery on Defendants' document/data retention policies is relevant in assessing the Defendants' document production. Without such production, there is no way to evaluate whether Defendants may have deleted relevant documents pursuant to their document retention and deletion practices.

In addition, although Defendants contend these documents have limited relevance, the minimal burden producing data/document retention policies are proportional to their relevance. *See Edwards v. McDermott Int'l, Inc.*, 2021 U.S. Dist. LEXIS 244022, at *7–8 (S.D. Tex. Dec. 22, 2021) ("[D]iscovery of ESI retention and disposition policies is fair game, especially when, as here, the burden on Defendants to produce such policies is minimal. This is a view shared by the majority of courts across the country that have considered the issue."). Defendants' case law addresses Rule 30(b)(6) notices—a different scope of information beyond what is requested in **Document Request No. 16**. *Compare Berry v. Hennepin Cnty.*, 2023 WL 1777467, at *6 (D. Minn. Feb. 6, 2023) (discussing how data retention policies are improper for a Rule 30(b)(6) deposition when those policies are irrelevant to a claim in the case), *with Edwards v. McDermott Int'l, Inc.*, 2021 U.S. Dist. LEXIS 244022, at *7–8 (S.D. Tex. Dec. 22, 2021 ("Although I generally oppose so-called 'discovery on discovery,' I am of the view that discovery of ESI retention and disposition policies is fair game, especially when, as here, the burden on Defendants to produce such policies is minimal. This is a view shared by the majority of courts across the country that have considered the issue. *See Burd v. Ford Motor Co.*, No. 3:13-CV-20976, 2015 U.S. Dist. LEXIS 88518, 2015 WL 4137915, at *9 (S.D.W. Va. July 8, 2015) ('[D]iscovery of document retention and disposition policies is not contingent upon a claim of spoliation or proof of discovery abuses.'); *Newman v. Borders*, 257 F.R.D. 1, 3 (D.D.C. 2009) ('That a party's document retention policies, including its policies as to electronically stored information, may be a fit subject of discovery cannot be gainsaid.')").

### G. Internal Communications Regarding Lawsuit (Document Request No. 30)

Defendants refuse to produce internal communications about this lawsuit, claiming such communications are irrelevant. The State maintains that internal communications discussing the substance of the lawsuit are relevant and responsive. The State confirmed that pure transmittal communications sharing the existence of the lawsuit need not be produced. But to the extent communications relate to the lawsuit beyond pure transmittal (i.e., "it's about time they caught us" or "this lawsuit is bogus") and are non-privileged, such communications must be produced. These communications are highly relevant, particularly when considering the allegations of ongoing conduct and should be produced. *See, e.g.*, *Shopman's Loc. Union 502 Pension Fund v. Samuel Grossi & Sons, Inc.*, 2022 WL 129684, at *8 (E.D. Pa. Jan. 13, 2022) ("This request is proper

Counsel for Fleet Farm, LLC, et al.
January 26, 2024
Page 5

insofar as it seeks nonprivileged documents concerning this litigation itself.”). Please confirm Defendants will do so.

>  **H. Fleet Farm's Employee Evaluations (Document Requests Nos. 21 and 22 and Interrogatory Nos. 8 and 9)**

During the December 20 meet and confer call, the State noted that **Document Request No. 21** is already limited to disciplinary actions and offered to limit **Document Request No. 22** to evaluations only about employees who had been disciplined for actions related to firearms. Defendants maintained that, even with this limitation, **Document Request Nos. 21 and 22** would still impose an undue burden, arguing that because Fleet Farm lacks a user-friendly Human Resources database, Defendants cannot easily identify employees who have been disciplined due to firearm related conduct. The State suggested that Defendants could satisfy **Document Requests No. 21 and 22** by fulfilling **Interrogatory Nos. 8 and 9** by instructing HR managers to provide narrative responses. Defendants insisted that the only way to produce such a response would involve HR going through all evaluations one by one, which would impose an undue burden.

The allegedly undue burden of this request is entirely due to Fleet Farm's poor record keeping, rather than the particulars of the request, which the State has already agreed to narrow. Although the State is sympathetic to Fleet Farm lacking a user-friendly HR database, that reality does not impose an *undue* burden on Defendants and does not excuse them from producing discovery relevant to claims in this case. *See, e.g., Batchelor v. City of Chicago*, WL 13647794, at *9 (N.D. Ill. Nov. 17, 2020) (“Courts have rejected objections to voluminous productions based on unwieldy or disorganized storage and filing systems.”); *Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. 57, 61 (D. Mass. 2005) (“[I]t is [defendant's] own record keeping policies which have contributed significantly to the burden imposed on it. Courts have been loathe to reward (and possibly encourage) poor record keeping by shielding companies with inefficient recording methods from discovery.”); *Trask v. Olin Corp.*, 298 F.R.D. 244, 266–67 (W.D. Pa. 2014) (rejecting undue burden claim where the “substantial expense” the defendant would incur was “largely because of the significant time needed to go through its files to determine what information was contained therein,” and “[t]he expense of production [wa]s thus due—at least in part—to the state of [defendant]'s record keeping”).

Finally, Defendants have failed to propose any alternative manner in which they could respond to the State's request. For example, as an alternative to searching through the Human Resources database, Defendants could communicate with HR managers throughout Fleet Farm and inquire about their knowledge of discipline related to firearms. Please confirm Defendants will produce responsive documents or information, as limited.

## II.     Clarifications Regarding Fleet Farm's Discovery

During the December 20 meet and confer, Defendants clarified several outstanding issues related to the following discovery requests:

Counsel for Fleet Farm, LLC, et al.
January 26, 2024
Page 6

- **Fleet Farm's Production Related to Documents Outside of Minnesota:** The State clarified that the scope of responsive documents from Fleet Farm's corporate headquarters (located in Wisconsin) are documents that relate to Minnesota stores. Please confirm or let us know if Fleet Farm is not willing to produce any such documents for any specific document request.

- **Trace Reports Exchanged between Fleet Farm and the ATF (Document Request No. 7):** Defendants confirmed they would produce responsive documents.

- **Fleet Farm's Communications with Law Enforcement (Document Requests Nos. 9, 10, 11, and 27):** The State and Defendants confirmed that **Document Requests Nos. 9, 10, and 11** pertain only to communications related to firearm transactions. Defendants also clarified they would produce responsive communications with the ATF, FBI, and BCA. Defendants additionally confirmed they would produce communications with Minnesota state and local law enforcement. Finally, the State and Defendants confirmed that **Document Request No. 27** is a catch-all, meaning that to the extent any applicable communication is not captured by **Document Requests Nos. 9, 10, and 11**, such communications would be produced pursuant to **Document Requests No. 27.**

- **Fleet Farm's Documents Relied on in Litigation (Document Request No. 29):** Defendants assured the State they have not taken witness statements from individuals that are not employees of Fleet Farm. Defendants also confirmed that any such documents that do exist would be produced subject to any privilege and work product concerns.

- **Interrogatory No. 11:** The State resolved the confusion about the heading used for this request in the State's November 22 Letter as requested by Defendants. Defendants confirmed they will produce documents in response to **Document Requests Nos. 23 and 24** and subsequently amend their interrogatory response.

- **Fleet Farm's Documents and Communications Related to Individuals Involved in Straw-Purchasing Schemes (Document Requests Nos. 12, 13, 14, and 18):** Defendants confirmed that absent, any assertion of work product or attorney-client privilege, they will produce all documents related to the named straw-purchasers in **Document Requests Nos. 12, 13 and 14**, even to the extent such documents are unrelated to firearm transactions. Defendants also confirmed they will produce documents pursuant to **Documents Request No. 18.**

- **Fleet Farm's Surveillance (Interrogatory No. 13):** Defendants agreed to amend their response to **Interrogatory No. 13** to include a description of surveillance technology in other places beyond their surveillance technology at firearms counters at their Minnesota stores. Defendants also confirmed that video surveillance retention policies produced in

Counsel for Fleet Farm, LLC, et al.
January 26, 2024
Page 7

response to **Document Request No. 16** would reflect any such surveillance technology. Finally, Defendants confirmed that any footage produced in response to **Document Request No. 15** would include all surveillance footage throughout and outside the identified Minnesota Fleet Farm stores at the times identified.

- **Fleet Farm's Training Policies and Procedures (Document Requests Nos. 19, 20, and 28):** Defendants agreed to produce training policies that are related to firearm transactions. The State further clarified that the scope of **Document Requests Nos. 19, 20, and 28** includes more generalized policies that may apply to firearms transactions, but do not only apply to firearms transactions. Defendants agreed to confirm that Defendants have produced general trainings that apply to firearms transactions. Finally, Defendants agreed to look into whether training policies developed outside of Fleet Farm, but shared with employees, would be produced.

- **Fleet Farm's Documents Identifying Straw Purchasers (Document Requests Nos. 25 and 26):** Defendants agreed to identify known straw purchasers, and for each, describe what communications went out to law enforcement and to which law enforcement agency. Defendants also agreed to include communications to law enforcement for reporting straw purchasers beyond those that went to ATF.

In addition to issues resolved during the December 20 meet and confer, the parties confirmed that Defendants will produce documents responsive to the following requests:

- Fleet Farm's Documents Relied on in Litigation (Document Requests Nos. 1, 2)
- Fleet Farm's Internal Sales Information (Documents Request Nos. 23, 24)

***

We ask that Defendants address the outstanding issues identified above and confirm the production of documents on resolved issues in writing by February 2, 2024, or the State will be forced to include these outstanding issues in its forthcoming Motion to Compel.

Sincerely,

KATHERINE MOERKE
Assistant Attorney General
(651) 728-7174
katherine.moerke@ag.state.mn.us

cc: Eric Maloney, Office of Minnesota Attorney General
    Megan Walsh, Arielle Hugel, William Roberts, and Nick Taylor, University of Minnesota Law
    School