

Andrew Davis
DIRECT: 612.335.1556
OFFICE: 612.335.1500

Andrew.Davis@stinson.com

February 2, 2024

**<u>VIA EMAIL</u>**

Katherine A. Moerke
Eric J. Maloney
James W. Canaday
Jason T. Pleggenkuhle
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
katherine.moerke@ag.state.mn.us
eric.maloney@ag.state.mn.us
james.canaday@ag.state.mn.us
jason.pleggenkuhle@ag.state.mn.us

Megan Walsh
Arielle Hugel
William Roberts
Nick Taylor
University of Minnesota Law School
190 Mondale Hall
229 19th Avenue South
Minneapolis, MN 55455
wals0270@umn.edu
hugel004@umn.edu
robe2331@umn.edu
tayl1110@umn.edu

Re:     *State of Minnesota v. Fleet Farm LLC, et al.*, Case No. 0:22-cv-02694-JRT-JFD

Counsel,

On behalf of Defendants Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC (together, "Fleet Farm"), I write in response to Plaintiff's January 26, 2024 letter. Your letter proceeds in two parts, with the first "address[ing] arguments made by Defendants during the December 20 meet and confer," and the second seeking to "clarif[y] several outstanding issues related to" certain discovery requests. Each item raised in the letter is addressed in turn below, and we are happy to meet and confer to discuss any of the issues raised by your (or Fleet Farm's) letter.

1.  **Issues Plaintiff views as "outstanding."**

**Discovery End Date.** Fleet Farm continues to believe October 5, 2022 is the appropriate end date when defining the relevant time period for discovery. *See* Defs.' Dec. 5, 2023 Ltr. 3–4. Fleet Farm notes that Plaintiff does not address any of the practical impossibilities that would result from defining the relevant time period for discovery as ending on the date fact discovery closes. Fleet Farm also notes that in the *Ramos* decision cited in Plaintiff's letter, the court *did not* order that the relevant time period for all discovery be coextensive with the fact discovery deadline. *See Ramos v. Banner Health*, 2018 WL 4700707 (D. Colo. Aug. 8, 2018).

**Firearm Records.** Fleet Farm refers Plaintiff to its prior communications regarding the appropriate scope of production of ATF Form 4473s and 3310.4s, as well as certain A&D logs. *See* Defs.' Jan. 24, 2024 Ltr.; Defs.' Dec. 5, 2023 Ltr. 4–7. Fleet Farm also notes that, to the extent the Court orders that the relevant time period for discovery runs through the close of fact discovery, Fleet Farm will be unable to produce any ATF Form 4473s or 3310.4s maintained in hard copy until after



Katherine A. Moerke, et al.
February 2, 2024
Page 2

that time, given the significant time and cost burdens associated with gathering and producing even a subset of these forms.  *See* Defs.' Jan. 24, 2024 Ltr.; Defs.' Dec. 5, 2023 Ltr. 4–7.

**Fleet Farm's Licensure Documents.**  It is incorrect for Plaintiff to contend that "'supporting materials' include Defendants' internal communications regarding the preparation of and compilation of information for each application for a federal firearms license."  Pl.'s Jan. 26, 2024 Ltr. 2.  Request for Production No. 5 seeks "licensure applications and supporting materials and licensure renewals and supporting materials."  By its plain language, RFP No. 5 is seeking license and renewal applications, as well as the materials supporting *those applications*.  Because internal communications fall outside RFP No. 5's scope, Fleet Farm will not produce such communications.  Moreover, such communications are irrelevant for the reasons described in prior correspondence and during the parties' December 20 meet and confer.  *See* Defs.' Dec. 5, 2023 Ltr. 7.

**Individuals with Relevant Factual Knowledge.**  Fleet Farm will not provide a list of all "Fleet Farm employees and/or store management that are responsible for implementation of company-wide policies in the stores" and "employees who work the firearms counter in Fleet Farm's Minnesota stores."  Pl.'s Jan. 26, 2024 Ltr. 3.  By seeking the identity of *all* employees who worked "the firearms counter" (meaning, presumably, all persons who worked in Fleet Farm's Sporting Goods department) at *seventeen* different Fleet Farm stores over more than half a decade, Plaintiff is asking Fleet Farm to disclose the identities of hundreds, if not thousands, of individuals.  By any measure, such a request is unduly burdensome.  That said, in the spirit of compromise, Fleet Farm will agree to amend its response to Interrogatory No. 2 to identify: (1) the individuals who were regional, general, or store managers at the Fleet Farm stores from which Jerome Horton or Sarah Elwood purchased firearms at the time those purchases occurred; and (2) the individuals who "work[ed] the firearms counter" at these stores and sold firearms to Jerome Horton or Sarah Elwood.  **Please let us know if Plaintiff accepts this compromise offer.**

**Fleet Farm's Corporate/Organizational Structure.**  In the spirit of compromise, Fleet Farm will produce internal organizational charts for the three Fleet Farm entities named in the complaint.  Fleet Farm will not produce documents reflecting, or otherwise provide information regarding, Fleet Farm's "legal identity, organization and ownership" for the reasons previously identified and discussed.  *See* Defs.' Dec. 5, 2023 Ltr. 9.  Fleet Farm reiterates—as it has done on several occasions—that it does not contend Plaintiff has named the wrong Fleet Farm entities in this case.  And *Smiths Group, plc v. Frisbie*, 2013 WL 268988 (D. Minn. Jan. 24, 2013), is not on point.  There, the court permitted discovery into the citizenship of the plaintiff's corporate structure because the defendant contended that structure was relevant to determine whether jurisdiction was proper under 28 U.S.C. § 1332(a).  *See Smiths Group, plc v. Frisbie*, Case No. 0:13-cv-52, ECF Doc. 22 at 3 n.2, 10–13 (D. Minn. Jan. 16, 2013).

**Fleet Farm's Data Retention Policies.**  Fleet Farm has already produced its email retention policy. *See* FF_0014679–FF_0014696.  Our understanding is that this is Fleet Farm's only written retention policy.  And as previously discussed, Fleet Farm will be amending its response to Interrogatory No. 13 to detail the typical surveillance utilized at Fleet Farm's Minnesota stores and explain the general retention period for surveillance in those stores.

187175685

Katherine A. Moerke, et al.
February 2, 2024
Page 3

**Internal Communciations regarding Lawsuit.**  Fleet Farm refers Plaintiff to its December 5 letter for its position on this issue.  *See* Defs.' Dec. 5, 2023 Ltr. 10–11.

**Fleet Farm's Employee Evaluations.**  Fleet Farm appreciates that Plaintiff has confirmed the scope of these discovery requests are limited to "disciplinary actions" relating to firearm sales policies or procedures (RFP No. 21), and documents reflecting performance "evaluations only about employees who had been disciplined for actions related to firearms" (RFP No. 22).  These requests remain unduly burdensome for the reasons previously explained.  *See* Defs.' Dec. 5, 2023 Ltr. 11.  But in the spirit of compromise, Fleet Farm will offer to produce any records reflecting "disciplinary actions" relating to firearm sales of any individual Plaintiff identifies to Fleet Farm as potentially being relevant to its claims, as well as any corresponding performance evaluations.  For example, on Plaintiff's request, Fleet Farm will produce such records (if they exist) for any of the individuals that sold firearms to Jerome Horton or Sarah Elwood.  These individuals' identities are readily available to Plaintiff because their names are on the Form 4473s for those sales.  *E.g.*, FF_0000588.  **Please let us know if Plaintiff accepts this compromise offer.**

2.  **Issues Plaintiff seeks to "clarif[y]."**

**Fleet Farm's Production Related to Documents Outside of Minnesota.**  Fleet Farm does not understand what Plaintiff means when it asserts "the scope of responsive documents from Fleet Farm's corporate headquarters (located in Wisconsin) are documents that relate to Minnesota stores."  Pl.'s Jan. 26, 2024 Ltr. 6.  Fleet Farm refers Plaintiff to its prior letter and discovery responses, which explain unambiguously what Fleet Farm believes is the appropriate geographic scope for particular discovery requests.

**Interrogatory No. 11.**  Fleet Farm did not state that it will amend its response to Interrogatory No. 11—rather, it will produce documents sufficient to ascertain the answer to Interrogatory No. 11, and consistent with Rule 33(d) and prior practice in this case, Fleet Farm will specifically identify these documents in the cover letter accompanying the production(s).

**Fleet Farm's Surveillance.**  Fleet Farm has agreed to provide retention and surveillance information in the manner described in the "**Fleet Farm's Data Retention Policies**" paragraph above.  As for surveillance footage, Fleet Farm agreed to produce any and all surveillance footage depicting or otherwise reflecting firearm transactions involving Jerome Horton or Sarah Elwood.  Fleet Farm will be producing these materials in the near future.

**Fleet Farm's Documents Identifying Straw Purchasers.**  Fleet Farm did not agree to "describe what communications went out to law enforcement and to which law enforcement agency."  Pl.'s Jan. 26, 2024 Ltr. 7.  Rather, Fleet Farm confirmed it would be producing documents reflecting Fleet Farm personnel identifying persons as suspected straw purchasers of firearms, and/or reporting such persons to law enforcement.

Plaintiff has accurately described the parties' discussions regarding trace reports, communications with law enforcement, witness statements, production of documents related to the individuals identified in RFP Nos. 12–14 and 18, and Fleet Farm's training policies and procedures.

187175685

Katherine A. Moerke, et al.
February 2, 2024
Page 4

Sincerely,

**Stinson LLP**

Andrew W. Davis

cc:    Todd Noteboom
        Andrew Leiendecker
        Courtney Harrison
        Zachary Wright

187175685