**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

State of Minnesota by its Attorney
General, Keith Ellison,                    Case No.: 0:22-cv-02694-JRT-JFD

         Plaintiff,

       v.

Fleet Farm LLC, Fleet Farm Group
LLC, and Fleet Farm Wholesale
Supply Co. LLC,

         Defendants.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL RESPONSE TO SUBPOENA *DUCES TECUM***

## INTRODUCTION

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC (collectively, "Fleet Farm") issued identical subpoenas *duces tecum* to eight Minnesota federal firearm licensees ("FFL"), including nonparties Bill's Gun Shop and Range ("Bill's") and Capra's Sporting Goods ("Capra's"). Fleet Farm now respectfully moves the Court to compel both Bill's and Capra's to respond the subpoena and produce the subpoenaed documents.[1]

Bill's objects to the subpoena primarily on the grounds that its internal policies and procedures concerning firearm sales constitute trade secrets, and that the existing

---

[1] As the Court is aware, Fleet Farm is involved in additional disputes with three of the other FFLs regarding the subpoena. The Modern Sportsman filed a motion to quash the subpoena (ECF Docs. 101, 102, 103), which is scheduled to be heard on August 13, 2024. DKMAGS and Sportsman's Guide consented to the IDR process, a conference for which has not yet been scheduled at the time of filing this Memorandum.

1

190974990

Protective Order does not contain sufficient protections for the production of such information to a competitor. While Fleet Farm disputes that Bill's has established its firearm policies and procedures—and more specifically, those that address straw purchasing—constitute trade secrets, the resolution of this dispute is straightforward: the Court can either order the production of such information marked as Confidential under the existing Protective Order, or the Court can amend the Protective Order to include an Attorney's Eyes Only provision (should it agree with Bill's trade secret argument). Additionally, the Court should compel Capra's to respond to the subpoena and produce the requested documents because Capra's has failed to respond at all.

## **BACKGROUND**

The subpoena contains five narrowly tailored requests for documents:

> **REQUEST NO. 1.** All documents reflecting Your policies and procedures relating to firearm transactions, including, but not limited to, those relating to monitoring for and preventing straw purchasing.
>
> **REQUEST NO. 2.** All documents related to Jerome Horton or Sarah Jean Elwood, the individuals identified in Paragraphs 37 through 61 of the Complaint.
>
> **REQUEST NO. 3.** All documents related to Gabriel Lee Young-Duncan, Jeffrey Jackson, Geryiell Walker, or Wayne Danielson.
>
> **REQUEST NO. 4.** All documents reflecting or relating to communications to or from ATF, the BCA, or any other Minnesota state or local law enforcement agency regarding Jerome Horton, Sarah Jean Elwood, or the October 10, 2021 shooting incident at the Seventh Street Truck Park in St. Paul, Minnesota.

2

> **REQUEST NO. 5.** All documents reflecting communications to or from the Office of the Minnesota Attorney General relating to Your sales of firearms to Jerome Horton or Sarah Jean Elwood, or to Your policies and procedures concerning firearm transactions, including, but not limited to, those relating to monitoring for and preventing straw purchasing.

Declaration of Zachary Wright ("Wright Decl."), Exhibit A, at 7. The subpoena required a response by June 28, 2024. *Id.* at 1.

### *Bill's Gun Shop and Range*

The subpoena was personally served on Bill's on May 31, 2024. Wright Decl., Exhibit B. Bill's responded and objected to the subpoena on June 13, 2024. Wright Decl., Exhibit C. With respect to Requests 2 and 3, Bill's produced responsive documents. *Id.* at 1–2. With respect to Requests 4 and 5, Bill's stated it had no responsive documents. *Id.* at 2. With respect to Request 1, Bill's responded as follows:

> "Bill's objects to this request because it seeks discovery of confidential, proprietary, trade-secret information. Fleet Farm is a direct competitor of Bill's and it has no substantial need to access Bill's proprietary information. Moreover, disclosure of the information sought will have an adverse effect on the efficacy of those procedures. Certainly, disclosure to the public would result in the public being able to circumvent the procedures and place to prevent straw purchases."

*Id.* at 1. Counsel were unable to resolve the objections during meet-and-confer discussions. During those discussions, Bill's also questioned the relevancy of the documents and whether Fleet Farm had a substantial need for them. Fleet Farm now respectfully moves to enforce the subpoena and compel Bill's produce responsive documents accordingly.

190974990

***Capra's Sporting Goods***

The subpoena was personally served on Capra's on May 29, 2024 "by handing to and leaving with Margaret Thibault, Store Manager."  Wright Decl., Exhibit D.  The subpoena was also sent to Capra's via certified U.S. mail, and the return receipt indicates Capra's received the subpoena on May 30, 2024.  Wright Decl., Exhibit E.  Capra's did not respond to the subpoena by the June 28, 2024 deadline.  To date, Capra's still has not responded to the subpoena, despite multiple efforts to contact Capra's.  *See* Wright Decl. at ¶¶ 10–13.  Fleet Farm now respectfully moves to compel Capra's to respond to the subpoena and produce responsive documents accordingly.

## ARGUMENT

"As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things . . . ."  Fed. R. Civ. P. 34(c).  The Court should compel Bill's to produce responsive documents according to the subpoena here.  To that end, the Court should either order the production of any confidential information pursuant to the terms of the existing Protective Order, ECF Doc. 49, or amend the Protective Order to provide an Attorneys' Eyes Only provision and order the production of any trade secret documents pursuant to the amended Protective Order.  The Court should similarly compel Capra's to respond to the subpoena and produce responsive documents.

I.    **Bill's has not shown its policies and procedures for monitoring for and preventing straw purchases are trade secrets.**

Bill's objects to the subpoena's request for its policies and procedures relating to monitoring for and preventing straw purchasing "because it seeks discovery of

4

190974990

confidential, proprietary, trade-secret information," and asserts "Fleet Farm is a direct competitor of Bill's and it has no substantial need to access Bill's proprietary information." Wright Decl., Exhibit C, at 1.

Rule 45(e)(2)(A) requires that "[a] person withholding subpoenaed information under a claim that it is privileged . . . must" both "expressly make the claim" and "describe the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." When a subpoena respondent asserts that discovery will cause competitive injury because of the revelation of trade secrets or confidential information, "it cannot generally rely upon conclusory statements, but must present evidence of specific damage likely to result from disclosure." *Nanninga v. Best Buy Co.*, 2005 WL 8163317, at *6 (D. Minn. Aug. 10, 2005) (citing *Culligan v. Yamaha Motor Corp., USA*, 110 F.R.D. 122, 125 (S.D.N.Y. 1986)).

Bill's has not met this burden. It does not explain why the policies are trade secrets, how it has taken steps to keep those policies secret, nor how Fleet Farm could obtain substantial economic value by obtaining the policies. *See Hot Stuff Foods, LLC v. Dornbach*, 726 F. Supp. 2d 1038, 1044 (D. Minn. 2010) ("Merely stating that the information is confidential is insufficient. Rather, [a party] must set forth facts showing that the information had independent economic value due to its secrecy."). By Bill's own description, the policies pertain to compliance with the same laws and regulations all FFLs must comply with, including Fleet Farm.[2]

---

[2]  Notably, courts (including this Court) have held in other contexts that such internal policies and procedures are not "trade secrets." *See Menzies Aviation (USA), Inc. v. Wilcox*,

5

In fact, Bill's objection undercuts the argument that its policies should not be produced.  Bill's states that "disclosure of the information sought will have an adverse effect on the efficacy of those procedures. Certainly, disclosure to the public would result in the public being able to circumvent the procedures and [sic] place to prevent straw purchases."  Wright Decl., Exhibit C, at 1.  That is precisely what Fleet Farm and the subpoena seek to *avoid* happening here.  Fleet Farm appreciates the sensitivities with sharing any internal policies and procedures, and, as a result, insisted on the confidentiality provisions of the Protective Order.[3] Accordingly, if the Court agrees that Bill's has not met its burden, it should order Bill's to produce such information, designated as Confidential under the existing Protective Order.  If the Court determines Bill's has established that its policies and procedures related to straw purchasing constitute trade secrets, Fleet Farm respectfully submits the Court should amend the Protective Order to include an Attorneys' Eyes Only provision, and order Bill's to produce such information in accordance with the amended Protective Order.  *See Datcard Sys., Inc. v. PacsGear, Inc.*, 2011 WL 2491366,

---

978 F. Supp. 2d 983, 995 (D. Minn. 2013) (observing "mere variations on widely used processes" in the airline industry "cannot be trade secrets") (citation omitted); *Clayton v. Tri City Acceptance, Inc.*, 2019 WL 5458002, at \*5–6 (W.D. Ky. Oct. 24, 2019) (denying request for protective order because there was not "anything unique or distinctive about the procedures at issue" regarding legal compliance) (cleaned up); *Motto v. Corr. Med. Services*, 2009 WL 347432, at \*2 (S.D.W. Va. Feb. 9, 2009) (allowing production of policies and procedures where "the documents at issue are industry-standard policies and procedures which have been tailored for conditions at [defendants' facility]").

[3] Those provisions include a limitation that information marked confidential can be shared with a party "only provided that such information . . . is divulged only to employees of the party whose assistance is necessary to conduct this litigation and provided that such employees first execute the" Declaration of Confidentiality. Protective Order, ECF Doc. 49, at ¶ 3(b)(vii).

190974990

at *2 (D. Minn. June 23, 2011) (ordering production of trade secret information pursuant to attorneys' eyes only provision in protective order).

## II.    The subpoena seeks relevant documents.

Bill's also disputes the relevancy of its straw purchase policies and procedures to this case. This argument should be rejected.

The scope of discovery permitted by a subpoena is the same as permitted by Rule 26. *Chesemore v. All. Holdings, Inc.*, 270 F.R.D. 633, 534 (D. Minn. 2010) (citing 1991 Advisory Committee Notes to Rule 45(a)). A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also Keefe v. City of Minneapolis*, 2012 WL 7766299, at *3 (D. Minn. May 25, 2012) ("Pursuant to a subpoena, a non-party can be compelled to produce evidence regarding any matter relevant to the claim or defense of any party, unless a privilege applies."). Rule 26(b)(1) "is liberal in scope and interpretation." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). "A discovery request is relevant unless the information sought can have no possible bearing on the claims or defenses of the case." *Lynch v. Experian Info. Sols., Inc.,* 569 F. Supp. 3d 959, 963 (D. Minn. 2021), *aff'd*, 581 F. Supp. 3d 1122 (D. Minn. 2022). Once the requesting party makes a threshold showing of relevancy, the burden shifts to the non-party to show why the requested information is irrelevant. *Beyond Blond Prods., LLC v. Hall*, 2022 WL 3444039, at *2 (D. Minn. Aug. 17, 2022) (enforcing and compelling compliance with subpoena) (citing *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. Apr. 26, 2021)).

190974990

The subpoena seeks documents that clearly bear on the claims and defenses in this case.  For its negligence claim, Plaintiff must establish Fleet Farm's duty of care and that it breached that duty.  *See Fenrich v. The Blake Sch.*, 920 N.W.2d 195, 201 (Minn. 2018) (stating negligence claim requires "(1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of that duty being the proximate cause of the injury").  Industry standards and practices among FFLs for detecting and preventing straw purchasing are relevant to the duty of care.  *See, e.g., Schmidt v. Beninga*, 173 N.W.2d 401, 408 (Minn. 1970) (observing evidence of industry custom is relevant to the duty of care).  Thus, the policies and procedures of Minnesota-based FFLs such as Bill's related to straw purchasing are relevant to Plaintiff's negligence claim.

Plaintiff must also prove causation and damages as elements of its negligence and public nuisance claims.  *See Fenrich*, 920 N.W.2d at 201.  While Plaintiff has to date refused to quantify damages in this case, it has identified among its claimed harms the alleged "unlawful proliferation of firearms" in the State of Minnesota and unlawfully sold firearms that remain unaccounted for. Wright Decl., Exhibit K, at 16–17 (Response to Interrogatory No. 11). Plaintiff also asserts that ***any*** firearm sale to a straw purchaser "constitutes a breach" of the duty of care, regardless of the circumstances surrounding that sale.  *Id.* at 17–18 (Response to Interrogatory No. 12).  Bill's, along with all of the other FFLs subpoenaed by Fleet Farm, sold handguns to Sarah Elwood and/or Jerome Horton, the two straw purchasers identified in Plaintiff's Amended Complaint against Fleet Farm. ECF Doc. 79, at ¶¶ 37–61.  Specifically, Bill's sold forty-six (46) handguns to Elwood

8

between May 2020 and May 2021.[4]  Wright Decl., Exhibit L, at ¶ 10 (Elwood Indictment). Elwood pled guilty to straw purchasing each of those handguns.  Wright Decl., Exhibit M, at ¶ 2 (Elwood Plea Agreement).  Fleet Farm vigorously disputes that its lawful firearm sales were negligent, or that such sales are a substantial cause of the harms claimed by Plaintiff.  But under the State's theory, the role that other Minnesota FFLs like Bill's have played in contributing to the alleged harm of unlawful proliferation of firearms, through sales of handguns to individuals later determined to be straw purchasers, is relevant to the element of causation and damages.  It is also relevant to Fleet Farm's affirmative defenses in the case, including its third affirmative defense (proximate causation), fourth affirmative defense (comparative or contributory fault), and thirteenth affirmative defense (failure to join necessary parties).  ECF Doc. 99 at 26–27.

Bill's fails to meet its burden here because it has not provided any explanation as to why the subpoenaed documents are irrelevant.  Bill's does not mention or explain its relevancy position in its response and objections to the subpoena.  Fleet Farm understands Bill's relevancy argument to be that Bill's straw purchase policies and procedures cannot set the industry standard.  But that argument incorrectly frames the liberal relevancy inquiry; the question is whether Bill's straw purchase policies and procedures "can have no possible bearing on the claims or defenses of the case," *Lynch*, 569 F. Supp. 3d at 963 (D. Minn. 2021).  Bill's fails to offer any explanation as to why its straw purchase policies

---

[4] By contrast, Plaintiff alleges Fleet Farm sold 13 handguns to Elwood during a 13-month period between May 2020 and May 2021.

190974990

have no possible bearing on the claims and defenses in this case.[5]  Its relevancy argument should be rejected.

### III.  Bill's demand that Fleet Farm show a substantial need for the documents is misplaced.

Bill's demand that Fleet Farm demonstrate it has a "substantial need" for Bill's straw purchase policies and procedures appears tied to Rule 45(d)(3)(C), which states: "In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party: . . . shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship."  Consistent with that language, Rule 45(d)(3)(B) provides "the court . . . may, on motion, quash or modify the subpoena if it requires . . . disclosing a trade secret."  Bill's has not moved to quash the subpoena; it has objected to the subpoena's request for its straw purchase policies and procedures on trade secret grounds.

Regardless, Fleet Farm does have a substantial need for the straw purchase policies and procedures.  In *Nanninga*, this Court enforced a subpoena to a nonparty over that nonparty's objection that the subpoena sought trade secret information and compelled

---

[5]  Likewise, Bill's conclusion that its straw purchase policies and procedures are irrelevant here does not follow from its assertion that expert testimony is more appropriate in this case.  Whether subject matter is appropriate for expert testimony does not determine whether discovery of information bearing on that subject matter is relevant. *John Doe I v. Mulcahy, Inc.*, 2008 WL 4572515, at *5 (D. Minn. Oct. 14, 2008) ("Reviewing the relevancy standard under Rule 26, the court concluded that the requested discovery was relevant, regardless of whether the plaintiff intended to present any expert testimony . . . ." (citing *EEOC v. Sheffield Financial, LLC*, 2007 WL 1726560 (M.D.N.C. June 13, 2007)).

190974990

production of the allegedly trade secret documents. *Nanninga*, 2005 WL 8163317, at \*6. There, this Court concluded the subpoenaing party had a substantial need for the information because "there [were] no other readily available sources of this information." *Id.* at \*7. The same is true here: Bill's is the only source for its straw purchase policies and procedures, which are relevant to Fleet Farm's defenses to Plaintiff's claims. Indeed, Fleet Farm has sought this information from both Plaintiff and ATF to no avail. Fleet Farm requested Plaintiff produce "documents relating to actual or suspected straw purchases of firearms from" Bill's, among others, and Plaintiff has refused to produce documents on grounds of relevance and privilege (based on Plaintiff's privilege log, it has no responsive ATF forms in its possession). Wright Decl., Exhibit N, at 12–13 (Response to Document Request No. 12). Fleet Farm also subpoenaed ATF for "documents related to . . . Sarah Jean Elwood," one of "the straw purchasers identified in Paragraphs 37 through 61 of the Complaint," and ATF has not produced responsive Forms 4473 or 3310.4, nor is it clear such Forms are in its possession.[6] Wright Decl., Exhibit O, at 6 (subpoena to ATF excerpt).

Moreover, the *Nanninga* Court recognized that the "release of allegedly confidential information to [the subpoenaing party] can be managed through a protective order by this

---

[6] ATF has elsewhere taken the position that it is forbidden from producing firearm transaction forms such as Forms 4473 and 3310.4. *See Brady Ctr. to Prevent Gun Violence v. U.S. Dep't of Just.*, 410 F. Supp. 3d 225, 241–43 (D.D.C. 2019) (concluding ATF "has permissibly redacted information that was derived directly from the Forms 4473 or like forms, that it reviewed in the course of the relevant [firearms] inspections" because those forms were "subject to the Tiahrt Rider," which "prohibits the expenditure of appropriated funds" to disclose certain firearms regulatory information); *see also* Consolidated and Further Continuing Appropriations Act of 2012, Pub. L. No. 112-55, 125 Stat. 552, 609 (2011).

11

Court." *Id.* The same is true here, as Fleet Farm explained to Bill's during its meet-and-confer discussions.

## IV.   Fleet Farm has taken reasonable steps to avoid imposing undue burden or expense on Bill's.

In satisfaction of its obligation under Rule 45(d)(1), Fleet Farm has taken "reasonable steps to avoid imposing undue burden or expense on" Bill's. Fleet Farm has agreed to limit its requests to address Bill's concerns—specifically, Fleet Farm seeks to compel production of Bill's policies and procedures responsive to Request No. 1 only insofar as those policies and procedures "relating to monitoring for and preventing straw purchasing." *Beyond Blond Prods.*, 2022 WL 3444039, at *4 (finding no undue burden where subpoenaing party "offered to further limit some" of its requests). Additionally, as discussed above, Fleet Farm has explained to Bill's that the Protective Order in this case, ECF Doc. 49, allows Bill's to produce documents as "confidential" and accordingly limit the scope of persons such documents can be provided to. Any other burden is not a valid basis for asserting undue burden. *See Cedar Rapids Lodge & Suites, LLC v. Seibert*, 2018 WL 3019899, at *2 (D. Minn. June 18, 2018) (quoting *Honda Lease Trust v. Middlesex Mut. Assur. Co.*, 2008 WL 349239, at *5 (D. Conn. Feb. 6, 2008)).

## V.   Capra's should be compelled to respond to the subpoena because it has failed to respond at all.

"As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things . . . ." Fed. R. Civ. P. 34(c); *see, e.g.*, *Henderson as Tr. for Henderson v. City of Woodbury*, 2016 WL 11020059 (D. Minn. Nov. 4, 2016) (compelling nonresponsive party to comply with subpoena), *report and recommendation adopted sub*

190974990

*nom. Henderson v. City of Woodbury*, 2016 WL 11020058 (D. Minn. Dec. 1, 2016).

Because Capra's has not responded to the subpoena at all, the Court should compel Capra's

respond and produce responsive documents accordingly.

## CONCLUSION

For the foregoing reasons, Fleet Farm respectfully requests the Court enforce the

subpoena and compel Bill's and Capra's to produce responsive documents.

Dated:  July 12, 2024                              Respectfully submitted,

*/s/ Todd A. Noteboom*
Todd A. Noteboom (#0240047)
Andrew W. Davis (#0386634)
Sharon R. Markowitz (#0392043)
Andrew P. Leiendecker (#0399107)
Zachary J. Wright (#0402945)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
todd.noteboom@stinson.com
andrew.davis@stinson.com
sharon.markowitz@stinson.com
andrew.leiendecker@stinson.com
zachary.wright@stinson.com

**ATTORNEYS FOR DEFENDANTS**

190974990