**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| State of Minnesota by its Attorney General, Keith Ellison,<br><br>Plaintiff,<br><br>v.<br><br>Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC,<br><br>Defendants. | Case No.: 0:22-cv-02694-JRT-JFD<br><br>**STATE OF MINNESOTA'S MEMORANDUM IN SUPPORT OF MOTION TO FURTHER MODIFY AMENDED PRETRIAL SCHEDULING ORDER AND COMPEL DISCOVERY** |

In accordance with Federal Rules of Civil Procedure 16(b)(4) and 37(c) and District of Minnesota Local Rules 16.3 and 37.1, the State of Minnesota moves the Court to further modify the Amended Pretrial Scheduling Order and compel discovery from Fleet Farm because of an extraordinarily relevant document produced just last week by Fleet Farm and Fleet Farm's failure to produce related documents.

In this lawsuit, the State alleges that Fleet Farm sold 24 firearms to straw purchaser Jerome Horton during a four-month period in 2021 and 13 firearms to straw purchaser Sarah Elwood during a 12-month period in 2020 and 2021—and that Fleet Farm knew or should have known that Horton and Elwood were straw purchasers. The State of Minnesota requested all Fleet Farm documents about Horton and Elwood, and Fleet Farm agreed to provide them. Yet, less than two weeks before the fact discovery deadline of August 2, 2024, Fleet Farm belatedly produced a document, FF_0075711, which is a Blaine Store Incident Report (the "Detailed Incident Report") with narrative "Detail" showing that a Blaine Fleet Farm manager raised the alarm about Fleet Farm's repeated sales to Horton

1

and was ignored by Fleet Farm's firearms compliance team.[1] Ex. 1. The Detailed Incident Report demonstrates that Fleet Farm knew or should have known that Horton was a straw buyer by at least July 31, 2021—halfway through Horton's straw buying spree—and failed to take action to prevent future purchases by Horton. And Fleet Farm only produced this document after the State discovered that Fleet Farm had not produced all documents about Horton based on a non-party production of documents.

The Detailed Incident Report demonstrates that, on July 31, 2021—during the very sale at which Fleet Farm sold Horton the Mossberg handgun used in the October 2021 Truck Park shooting in St. Paul—a former Fleet Farm manager was concerned that Horton was a straw buyer *and* reported his concerns to Fleet Farm firearms compliance personnel. Specifically, the narrative detail provided in this document by former Fleet Farm manager Cory Klebs describes Fleet Farm's sale of three 9mm handguns to Horton on July 31, 2021, Klebs' concerns that Horton might be a straw purchaser, Klebs' communication of his concerns and question about whether Fleet Farm should keep selling firearms to Horton to firearms compliance personnel Michelle Granato, and Klebs' recollection that Fleet Farm firearms compliance personnel never responded to him. *Id*. at 2. Despite the existence of this document, and the fact that Klebs suspected Horton of being a straw buyer, Fleet Farm

---

[1] Fleet Farm designated the Detailed Incident Report as confidential under the Protective Order and demanded redaction of all narrative "Detail" in the Detailed Incident Report about "Recollecting 7-31-21 Purchase." The State does not agree that the narrative Detail is appropriately designated as confidential, but the State is filing a redacted version of the document and this memorandum and the unredacted versions under temporary seal given Fleet Farm's designation and position.

failed to identify Klebs as a relevant witness, and Fleet Farm failed to search for or produce custodial documents from Klebs during the year-long discovery period in this case.

Because of this recently produced highly relevant document—plus Fleet Farm's failure to produce the July 31, 2021 communication from Cory Klebs to Michelle Granato referenced in this document—the State seeks to compel the following discovery from Fleet Farm that is all responsive to prior discovery requests from the State:

- Production of all documents from Cory Klebs' email, electronic files, and physical files related to Jerome Horton;
- Production of all emails from Michelle Granato's email box about the July 31, 2021 sales to Jerome Horton that would not have been captured by only electronically searching for the term "Horton" (e.g., if Klebs' email to Granato did not OCR the 3310.4 forms);
- Production of all Fleet Farm Store Incident Reports related to Jerome Horton;
- Production of all hard copy documents related to Jerome Horton, including all receipts for Fleet Farm sales of firearms and accessories to him;
- Production of all relevant and responsive documents regarding Horton in any back-up repositories for email boxes of Michelle Granato, Mike Radl[2], and Cory Klebs;
- Production of all emails of any Fleet Farm employee regarding Cory Klebs' concerns about Jerome Horton that are reflected in the Detailed Incident Report; and
- Provide amended answers to the State's Interrogatories No. 2, 6, and 9 that are complete and identity all relevant Fleet Farm personnel.

In addition, given the circumstances and timing of the production of the Detailed Incident Report, coupled with Fleet Farm's failure to produce the July 31, 2021 communication between Klebs and Granato about Horton's straw purchasing that is referenced in the Detailed Incident Report, the State also seeks modest expansions to the

---

[2] Mike Radl is Fleet Farm's Safety and Firearm compliance manager and was Granato's supervisor in 2021.

discovery limits and timing in the Amended Pretrial Scheduling Order to obtain the following discovery about Fleet Farm's production of documents in this matter:

- The production of all relevant Fleet Farm litigation hold(s) related to Jerome Horton or Sarah Elwood or, at a minimum, relevant information from all such litigation hold(s);
- Information sufficient to show when Fleet Farm became aware of possible litigation related to the October 2021 mass shooting at the Truck Park Bar;
- Information about how Fleet Farm searched for and collected documents in the LPMS database, including all relevant "Store Incident Reports";
- Information about how Fleet Farm searched hard copy documents and physical materials; and
- Information about how documents were collected from Fleet Farm but not transferred to Fleet Farm counsel for review via an FTP transfer, as Fleet Farm stated in its July 19, 2024 email.

The State seeks this discovery during the five-week extension to the prior fact discovery deadline that the Court approved in the Amended Pretrial Scheduling Order. ECF No. 131. Given the State's diligence throughout discovery, Fleet Farm's failure to produce this document sooner, and the obvious significance of the Detailed Incident Report and related facts, there is good cause for the State's request to take this additional discovery.

## BACKGROUND

I. **The State Served Requests for Production Seeking All Fleet Farm Documents About Straw Purchaser Jerome Horton, and Fleet Farm Agreed to Provide Them—But Did Not.**

On July 20, 2023, in accordance with Federal Rule of Civil Procedure 26(d)(1), the State served its First Set of Requests for Production and its First Set of Interrogatories on Fleet Farm following the parties' Rule 26(f) conference. Fleet Farm served written responses to the State's discovery requests on August 21, 2023. Exs. 2, 3.

4

The State's Request for Production No. 12 sought "[a]ll documents related to Sarah Elwood and Jerome Horton or Fleet Farm's firearm sales to these individuals." Ex. 2 at 14. Fleet Farm agreed to produce these documents. *Id*. at 14-15. As explained below, however, Fleet Farm did not timely produce all its documents regarding Jerome Horton.

**II.    The State Served Multiple Interrogatories Seeking Identities of Fleet Farm Employees with Relevant Knowledge About Straw Purchaser Jerome Horton, and Fleet Farm Agreed to Identify Them—But Did Not.**

The State served multiple interrogatories on Fleet Farm about people with relevant knowledge, including people who interacted with Jerome Horton. Fleet Farm never identified Cory Klebs—even though Cory Klebs had concerns about Horton being a straw buyer on July 31, 2021.

The State's Interrogatory No. 2 asked Fleet Farm to identify all people with factual knowledge about the State's allegations:

> Identify all persons who have or may have factual knowledge relating to the allegations, claims, denials, and defenses set forth in the pleadings, including Fleet Farm's claim that Plaintiff has failed to join all necessary parties, including, but not limited to, other third parties whom Plaintiff alleges engaged in the unlawful sale or use of firearms in Minnesota. Your response should include all current or former Fleet Farm employees, agents, managers, directors, and principals that had any role in establishing, modifying, overseeing, and/or monitoring Fleet Farm's policies, procedures, or practices regarding firearm sales.

Ex. 3 at 5-6. Fleet Farm did not identify Cory Klebs in its original response to Interrogatory No. 2 or Fleet Farm's amended response. *See* Ex. 3 at 6-8; Ex. 4 at 2-6.

The State's Interrogatory No. 6 asked Fleet Farm to identify all Fleet Farm employees who had spoken or interacted with Jerome Horton:

> Identify every Fleet Farm employee, agent, manager, director, or principal who has spoken in person, communicated with, or otherwise contacted Jerome Horton, Gabriel Lee Young-Duncan, Sarah Elwood, Jeffrey Jackson, or Geryiell Walker, and describe the date and location of each meeting, communication, or contact.

Ex. 3 at 10. Fleet Farm did not identify Cory Klebs in its original response to Interrogatory No. 6 or Fleet Farm's amended response. *See* Ex. 3 at 11; Ex. 4 at 6-9.

The State's Interrogatory No. 9 asked Fleet Farm to identify any investigation into Fleet Farm's firearm sales to Jerome Horton—and to specify what personnel were involved:

> Describe every instance in which Fleet Farm investigated or audited its employees' compliance with Fleet Farm policies and procedures related to the sale of firearms, including whether Fleet Farm investigated its firearms sales to Jerome Horton or Sarah Elwood. For each investigation or audit identified, specify when it took place, which store(s) and/or personnel Fleet Farm investigated or audited, what conduct the investigation or audit reviewed, the findings of the investigation or audit, and the recommendation(s) of the investigation or audit, if any.

Ex. 3 at 13.

Fleet Farm did not identify Cory Klebs in its original response to Interrogatory No. 9 or Fleet Farm's amended response after the Court ordered Fleet Farm to provide a narrative answer to Interrogatory No. 9 and other interrogatories on March 12, 2024. *See* Ex. 3 at 13-14; Ex 5 at 7-9.

## III. Documents Produced by Third Party ATF Showed That Fleet Farm Had Failed to Produce Fleet Farm Documents About Straw Purchaser Jerome Horton.

On June 24, 2024, Fleet Farm produced Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") documents to the State that Fleet Farm had obtained via a subpoena

to the ATF. One of these documents—ATF0001503—is a Fleet Farm "Blaine Store Incident Report" dated October 18, 2021 (the "Incident Report"), that is specifically about Fleet Farm's sales to straw purchaser Jerome Horton and references a "Store Case #" of "2021-3100-ASST-40." Ex. 6. The State investigated and determined that Fleet Farm had not produced the Incident Report and other Fleet Farm documents regarding Horton produced by the ATF.

Thus, on July 11, 2024, the State of Minnesota wrote to Fleet Farm and explained that the production of documents by the ATF indicated that Fleet Farm had failed to produce relevant documents regarding Horton:

> In response to Fleet Farm's subpoena for documents, the ATF produced Fleet Farm documents regarding Jerome Horton that do not appear to have been produced to the State by Fleet Farm. These documents include, but are not necessarily limited to, ATF0001503, ATF0002337, ATF0002339, ATF0002365, ATF0002379, ATF0002382, and ATF0002384. Such documents are responsive to the State of Minnesota's Requests for Production Nos. 2 and 12. Given this apparent deficiency in Fleet Farm's production, we are concerned that Fleet Farm has not adequately searched for and produced relevant documents regarding Jerome Horton, and we expect Fleet Farm to take measures to promptly correct this deficiency.

Ex. 7 at 1.

The parties met and conferred about the State's July 11 letter on Friday, July 19, 2024. Fleet Farm counsel represented that some of the "alleged 'discrepancies' identified by the State are . . . due to a technological issue that resulted in a small number of documents not getting produced despite being collected (and which are being produced now)." Ex. 8 (July 19, 2024 email from Fleet Farm counsel). Specifically, Fleet Farm counsel stated that "Fleet Farm searched and collected responsive documents from its [Loss

7

Management Prevention System] and sent those documents to counsel," but that, "[d]ue to an apparent technological issue, not all of the documents that were sent by Fleet Farm via an FTP transfer were received by counsel." *Id*. Fleet Farm counsel also conceded that they failed to notice the problem until the State's July 11 letter (without specifying when Fleet Farm attempted to transfer the loss management documents to counsel) and attempted to minimize the impact of their mistake by asserting that "these documents are largely duplicative of other files produced by Fleet Farm or by the ATF." *Id*.

In addition to explaining why certain documents had not been previously produced, Fleet Farm's July 19, 2024 email also wrongly stated that the State "was not seeking paper documents." *Id*. The State only agreed to limitations on paper documents with respect to all buyers of more than one gun from Fleet Farm in response to Requests for Production No. 6 and 8—as the State was seeking the electronic A&D logs in the discovery dispute that was before the Court on March 12, 2024. The State has never indicated it was not seeking paper documents regarding Jerome Horton or Sarah Elwood. Fleet Farm's July 19, 2024 email was the first time the State learned that Fleet Farm may not have adequately collected non-ESI.

Fleet Farm proceeded to produce 21 new documents on July 19, 2024, but Fleet Farm did not produce the documents in a manner where they could be reviewed by the State because Fleet Farm applied already-used bates numbers. Ex. 9. In response to the State's request, Fleet Farm reproduced these 21 documents with non-duplicative numbering on Monday afternoon, July 22, 2024.

8

**IV.    The State Has Served Ten Deposition Notices of Current and Former Fleet Farm Employees and Has Taken Seven of These Ten Depositions So Far.**

The Pretrial Scheduling Order allowed up to ten fact depositions per party. ECF 41 at 2. By July 18, 2024, the State had served notices for ten depositions based on the discovery provided by Fleet Farm up to that point, seeking to complete depositions by the fact discovery deadline of August 2, 2024.

On January 29, 2024, the State served a Rule 30(b)(6) Deposition Notice on Fleet Farm. Moerke Decl. ¶ 13. Fleet Farm did not provide a Rule 30(b)(6) witness for deposition, however, until June 13, 2024. *Id*.

On April 16, 2024, the State served Deposition Notices for Michelle Granato on May 9, 2024 and Mike Radl on May 10, 2024.[3] *Id*. ¶ 14. Fleet Farm did not provide these witnesses for deposition until June 19 and June 20, 2024. *Id*.

On May 3, 2024, the State served Deposition Notices for Derrick Hoernke on May 30, 2024 and Brad Hansen on May 31, 2024. *Id*. ¶ 15. Fleet Farm did not provide these witnesses for deposition until June 26, 2024 and July 17, 2024.[4] *Id*.

On June 17, 2024, the State served a Deposition Notice for Branden Sierakowski on July 16, 2024. *Id*. ¶ 16. Fleet Farm provided this witness for deposition on July 24, 2024. *Id*.

---

[3] The State began noticing individual depositions of Fleet Farm employees after the Court ordered Fleet Farm to provide discovery Fleet Farm had been resisting on March 12, 2024.
[4] Brad Hansen no longer works for Fleet Farm, but Fleet Farm's counsel represented him with respect to his deposition.

On July 1, 2024, the State served a Notice of Subpoena for former Fleet Farm employee Bret Nordquist on July 19, 2024. *Id*. ¶ 17. Fleet Farm's counsel represented this witness and provided him for deposition on July 30, 2024.[5] *Id*.

On July 18, 2024, the State served Deposition Notices for three more Fleet Farm witnesses (Gary Hallfielder on July 30, 2024 and Zach Adams Lohse on July 29, 2024, as well as a Notice of Subpoena to Eric Bongard for deposition on August 2, 2024). *Id*. ¶ 18. None of these depositions have taken place.

**V.      The Court Approved a Modest Extension of Deadlines in the Pretrial Scheduling Order to Complete Already Noticed Discovery.**

On Monday, July 22, 2024, the State asked Fleet Farm whether it would consent to a modest extension of the fact discovery deadline and other deadlines so that the parties could complete the three depositions that had been timely noticed but not scheduled, and Fleet Farm subsequently agreed. The parties filed the Joint Motion to Modify the Pretrial Scheduling Order on Thursday, July 25, 2024. ECF No. 126. The Court issued an Amended Pretrial Scheduling Order in accordance with the Joint Motion on July 29, 2024. ECF No. 131.

**VI.     On July 25, 2024, After Filing the Joint Motion to Modify the Scheduling Order, the State Discovered the Document Showing Fleet Farm's Knowledge About Straw Purchaser Jerome Horton on July 31, 2021.**

On Thursday evening, July 25, 2024, after filing the Joint Motion to Modify the Pretrial Scheduling Order and after haven taken a deposition in this case on Wednesday, July 24, 2024, the State of Minnesota reviewed the documents that Fleet Farm had

---

[5] Bret Nordquist no longer works for Fleet Farm.

produced earlier that week on Monday, July 22, 2024, as a result of the State's July 11, 2024 letter.

One of the documents produced on July 22, the Detailed Incident Report (FF_0075711), is highly relevant—and indeed central—to the State's allegations in this lawsuit. Ex. 1. Like the Incident Report produced by the ATF (ATF0001503), the Detailed Incident Report is also a Blaine Store Incident Report regarding Jerome Horton with the Store Case # of 2021-3100-ASST-40. *Id*. But in the Detailed Incident Report, there is also a "Journal Notes" section with a "Journal Date" of February 25, 2022, created by Fleet Farm employee Cory Klebs.[6] *Id*. Klebs' Journal Notes have substantial narrative "Detail" about Fleet Farm's sales of firearms to Jerome Horton on July 31, 2021, which Klebs summarized as "Recollecting 7-31-21 Purchase."[7] *Id*.

Klebs' narrative detail in the Detailed Incident Report describes Klebs' role in Fleet Farm's sales of three firearms to Horton on July 31, 2021, Klebs' concerns that Horton might be a straw purchaser, Klebs' communication of his concerns and his question about whether Fleet Farm should keep selling firearms to Horton to firearms compliance personnel Michelle Granato, and Klebs' recollection that he never received a response:

- "on 7/31/2021 I Operations Manager Cory Daniel Klebs (04/08/1991) was the closing manager for the evening and remember getting called to the Gun Counter to complete a double check on a firearm sale per company policy just before 5pm from team member Bret Nordquist."

---

[6] During the subsequent deposition of former Fleet Farm employee Bret Nordquist on July 30, 2024, who sold firearms to Horton on July 31, 2021, Nordquist testified that Klebs was involved in Fleet Farm's firearm sales to Horton that day because Klebs was the "cosigner" or "double check" of the paperwork before the transaction was completed.

[7] Fleet Farm did not produce a duplicate copy of the Incident Report (ATF0001503).

- "I arrived at the counter and was presented 3 handguns that were involved in the sale."

- "The name on the provided document were Jerome Fletcher Horton Jr. Around this time Nordquist pointed out that the sale was flagged in the system for having a previous ATF form 3310 issued on 7/27/2021. I found this odd . . ."

- "I then double checked with Nordquist if he had any reason to believe that this could be a straw purchase and he stated that he did not."

- "After the purchase was finalized and the firearms were disposed of Nordquist printed the ATF 3310 form that was just generated and we completed our process of sending the info to our local CLEO via email and mail."

- "I then took the information we had at the time and e-scanned the info over to Michelle Granato at our corporate office to see if she could give any input on the sales if we should stop any future sales which we never go[t] a response back."

*Id.*

Fleet Farm has not produced the communication from Klebs to Granato on July 31, 2021 referenced in the Detailed Incident Report regarding Klebs' concerns about Horton being a straw buyer and questioning whether Fleet Farm should continue selling firearms to Horton. Indeed, Fleet Farm has not produced any custodial documents from Klebs because Fleet Farm never searched Klebs' documents at all.[8]

---

[8] The ESI Protocol did not require agreement about search terms and custodians between the parties. *See generally* ECF No. 53. Nonetheless, the parties communicated about Fleet Farm's collection of ESI, and Fleet Farm's list of custodians did not include Cory Klebs. Ex. 10 (Nov. 7, 2023 email from Fleet Farm). Because Fleet Farm failed to even identify Klebs as a witness with relevant knowledge, the State did not know that Klebs should have been a custodian.

The next morning, Friday, July 26, 2024, after having reviewed the Detailed Incident Report the prior evening, the State of Minnesota sent a letter to Fleet Farm explaining that, if Fleet Farm had produced the Detailed Incident Report earlier in discovery, the State would have noticed different depositions, including of Cory Klebs, and the State would have questioned Michelle Granato extensively about this document during her deposition on June 19, 2024. Ex. 11. Accordingly, the State asked Fleet Farm to agree to ask the Court that the State be permitted additional discovery. *Id.*

Fleet Farm refused.[9] Ex. 12.

## ARGUMENT

The State asks the Court to compel Fleet Farm to provide complete discovery about its sales to Jerome Horton, Fleet Farm employee concerns that Horton was a straw purchaser, and the communication of these concerns to Fleet Farm firearms compliance personnel. There can be no question that this discovery is responsive to the State's prior discovery requests and central to the State's allegations in this lawsuit, such that this discovery is fully proportional and should be provided.

In addition, given the unusual circumstances and timing of Fleet Farm's production of the Detailed Incident Report and failure to produce the communication from Klebs to Granato referenced in the Detailed Incident Report, the State also asks the Court to modify the Pretrial Scheduling Order to permit limited discovery about Fleet Farm's collection and

---

[9] Fleet Farm stated it would not object if the State noticed a deposition of Cory Klebs and withdrew a deposition notice for one of the previously noticed witnesses. In order to minimize the disruption to case scheduling, the State agreed to withdraw the notice of deposition to Zachary Adams Lohse and depose Cory Klebs instead.

production of documents. The circumstances and timing coupled with the State's diligence provide good cause to modify discovery limits and for the State to seek such "discovery on discovery."

**I.     Fleet Farm Should Be Compelled to Provide Complete Discovery About Its Sales to Jerome Horton, Fleet Farm Employee Concerns That Horton Was a Straw Purchaser, and the Communication of These Concerns to Fleet Farm Compliance Personnel.**

Fleet Farm should be compelled to provide complete discovery about its firearm sales to Jerome Horton, Fleet Farm's investigation of these sales, Fleet Farm employee concerns that Horton was a straw purchaser, and the communication of these concerns to Fleet Farm compliance personnel, including at least the following:

- Production of all documents from Cory Klebs' email, electronic files, and physical files related to Jerome Horton;
- Production of all emails from Michelle Granato's email box about the July 31, 2021 sales to Jerome Horton that would not have been captured by only electronically searching for the term "Horton" (e.g., if Klebs' email to Granato did not OCR the 3310.4 forms);
- Production of all Fleet Farm Store Incident Reports related to Jerome Horton;
- Production of all hard copy documents related to Jerome Horton, including all receipts for Fleet Farm sales of firearms and accessories to him;
- Production of all relevant and responsive documents regarding Horton in any back-up repositories for email boxes of Michelle Granato, Mike Radl, and Cory Klebs;
- Production of all emails of any Fleet Farm employee regarding Cory Klebs' concerns about Jerome Horton that are reflected in the Detailed Incident Report; and
- Provide amended answers to the State's Interrogatories No. 2, 6, and 9 that are complete and identity all relevant Fleet Farm personnel.

All of this discovery was requested by the State more than a year ago. And given the extraordinary relevance and indeed, centrality, of missing documents and information to the State's allegations, compelling Fleet Farm to provide such comprehensive discovery

14

is fully proportional. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").

Fleet Farm's July 26 letter wrongly argues that there is "no authority supporting the notion that the later production of the Detailed Incident Report provides a basis" for such discovery. Ex. 12. Not only did Fleet Farm not produce this incredibly relevant document until almost the end of discovery after the State had taken most depositions, but also Fleet Farm did not identify Cory Klebs' role and recollections in Fleet Farm's investigation of firearm sales to Jerome Horton at any point during discovery. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), . . . the court, on motion and after giving an opportunity to be heard . . . may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi)." Fed. R. Civ. P. 37(c).

First, the State should be permitted to re-open the deposition of Michelle Granato to ask her about the Detailed Incident Report and the communication from Cory Klebs to her referenced in this document. Fleet Farm's knowledge about Horton being a straw buyer is a key issue in this lawsuit. If the Detailed Incident Report had been timely produced, it would have been a central part of the State's deposition of Granato—and Radl, who worked hand in glove with Granato on firearms compliance.

15

This is exactly the type of circumstance warranting the reopening of a deposition: "Re-opening a deposition for the limited purpose of examining a witness on documents belatedly produced after the conclusion of that witness's deposition is an approach recognized by courts as an appropriate resolution to circumstances such as those here." *Krueger v. Ameriprise Financial, Inc*., No. 11–2781 (SRN/JSM), 2014 WL 8108458, at *8-9 (D. Minn. July 7, 2014) (ordering that multiple depositions be re-opened in light of the late discovery and production of relevant documents and further ordering that "Plaintiffs may take the depositions in person and will not be restricted to videotaped depositions") (citing *BreathableBaby, LLC v. Crown Crafts, Inc*., No. 12–cv–94 (PJS/TNL), 2013WL 3350594, at *7 (D. Minn. May 31, 2013); *Adams v. Cline Agency, Inc*., No. 10–2758, 2013 WL 2444696, at*4 (D. Colo. June 5, 2013); *Stephen v. Hanley*, No. 03–6226, 2009 WL 1437613, at *5 (E.D.N.Y. May 20, 2009)).

Next, Fleet Farm has not produced the communication from Klebs to Granato on July 31, 2021 regarding Klebs' concerns about Horton being a straw buyer and question whether Fleet Farm should continue selling firearms to Horton referenced in the Detailed Incident Report. Thus, either this communication was not preserved, or this communication was not collected and produced. Accordingly, Fleet Farm should be compelled to (1) individually search and review all Granato emails on or near the date of July 31, 2021, not only those with the search term "Horton"; and (2) search Cory Klebs' emails for documents regarding Horton, which Fleet Farm has never even done.

Fleet Farm should also be compelled to collect and produce all Store Incident Reports regarding Horton. To date, there have been only two versions of the same Blaine

Store Incident Report produced related to the sales on July 31, 2021: the Incident Report (ATF0001503) and the Detailed Incident Report (FF_0075711). The Detailed Incident Report is a different version of the Incident Report that includes the addition of journal notes from Cory Klebs made in February 2022. And Fleet Farm never produced its own duplicate copy of the Incident Report. During the parties' July 30, 2024 meet-and-confer discussion, Fleet Farm represented that Fleet Farm employee Mike Radl was responsible for collecting "Store Incident Reports" in the LPMS (Fleet Farm's Loss Prevention Management System), but provided no detail about his process for doing so or his expertise in searching this system. Fleet Farm should be compelled to search for any other versions of this same document with additional journal notes:

> Though custodian self-collection of ESI can save on costs and allow for a more efficient discovery process, "custodial self-collection can be a risky move" because clients may fail at: identifying all sources of responsive information, preserving all evidence subject to a litigation hold, finding or providing all the necessary ESI evidence due to lack of expertise or out of sheer self-interest, and fail at fully documenting how they conducted their searches such that their counsel is unable to defend an alleged lack of production. . . . Here, it is evident such pitfalls have arisen.

*Thomas v. Marshall Public Schools*, 690 F.Supp.3d 941, 962-63 (D. Minn. 2023) (internal quotations omitted).

Fleet Farm should also be compelled to collect and produce all hard copy documents regarding Horton. Fleet Farm has recently argued that the State "was not seeking paper documents." Ex. 8 (July 19, 2024 email). But the State was not seeking paper documents only with respect to Requests for Production No. 6 and 8—and the related dispute about A&D logs and forms 4473 and 3310 about various firearms purchasers that was before the

17

Court for a hearing on March 12, 2024. The State has never indicated it was not seeking paper documents regarding Jerome Horton or Sarah Elwood—it is a substantial problem and deficiency if Fleet Farm did not search and produce these.

Next, Fleet Farm should be compelled to search any backup repositories of email boxes for Granato, Mike Radl, and Klebs to collect any documents related to the Detailed Incident Report and the communication to Granato from Klebs referenced in this document. Given the significance of this evidence to the State's allegations, this is proportional.

Next, Fleet Farm should be required to collect and produce any and all emails of any Fleet Farm employee about Klebs' concerns about Horton that are reflected in the Detailed Incident Report. Searching for "Klebs" and "Horton" is proportional given the relevance and relative burden.

Finally, Fleet Farm should be compelled to provide amended and complete answers to the State's Interrogatories No. 2, 6, and 9, including identifying all relevant Fleet Farm personnel. Federal Rule of Civil Procedure 26(g) provides that discovery responses require a "reasonable inquiry" to ensure that the response is both complete and accurate. *Id*. ("By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry . . . with respect to a disclosure, it is complete and correct as of the time it is made.").

**II.    There Is Good Cause for the State's Proposed Modification of the Pretrial Scheduling Order, and Limited Discovery on Discovery Is Warranted.**

The State has proceeded diligently in seeking discovery throughout this case to meet deadlines and comply with the discovery limits in the Pretrial Scheduling Order. More than a year ago, the State served requests for production seeking all Fleet Farm documents about Jerome Horton and multiple interrogatories seeking the identities of all past or current Fleet Farm employees with relevant knowledge. The State began noticing depositions in January 2024, and timely noticed multiple depositions after the Court's March 12, 2024 Order compelling discovery from Fleet Farm and Fleet Farm's eventual production of these documents. The State decided what depositions to notice based on the discovery Fleet Farm provided, including Fleet Farm's document production, interrogatory answers, and, once depositions began, deposition testimony by Fleet Farm's witnesses.

The State could not have known that Fleet Farm had not produced all relevant Fleet Farm documents about Horton until the State received the production from the ATF. And the State moved promptly once it discovered this problem in Fleet Farm's production. Indeed, it was the State's prompt action that led to the production of the Detailed Incident Report on July 22, 2024.

If Fleet Farm had timely produced the Detailed Incident Report, the State would have questioned Michelle Granato extensively about this key document during her deposition on June 19, 2024. Plus, the State would have pressed Fleet Farm on related discovery, including the failure to produce the communication from Klebs to Granato

19

documented in the Detailed Incident Report. The State would also have questioned numerous deposition witnesses about the Incident Report and the Detailed Incident Report.

Accordingly, the State seeks the following discovery about Fleet Farm's collection and production of documents:

- The production of all relevant Fleet Farm litigation hold(s) related to Jerome Horton or Sarah Elwood or, at a minimum, relevant information from all such litigation hold(s);
- Information sufficient to show when Fleet Farm became aware of possible litigation related to the October 2021 mass shooting at the Truck Park Bar;
- Information about how Fleet Farm searched for and collected documents in the LPMS database, including all relevant "Store Incident Reports";
- Information about how Fleet Farm searched hard copy documents and physical materials; and
- Information about how documents were collected from Fleet Farm but not transferred to Fleet Farm counsel for review via an FTP transfer, as Fleet Farm stated in its July 19, 2024 email.

This is one of the situations where such discovery on discovery is appropriate. *See Thomas v. Marshall Public Schools*, 690 F.Supp.3d 941, 952-54, 962-63 (D. Minn. 2023) (ordering limited discovery into the sufficiency of Defendants' document production when there were apparent problems with relevant documents not being produced by Defendants but produced by non-parties); *see also, e.g.*, *Catlin v. Wal–Mart Stores, Inc.*, No. 0:15–cv–00004–DWF–KMM, 2016 WL 7974070, at *1 (Sep. 22, 2016) ("There are circumstances where . . . collateral discovery—also known as discovery on discovery—is warranted." (internal quotation omitted)); *Vieste, LLC v. Hill Redwood Dev.*, No. 09-4024, 2011 WL 2198257, at *1 (N.D. Cal. June 6, 2011) (explaining that reasonable grounds for discovery on discovery can include an absence of documents produced from certain custodians or timeframes).

In particular, discovery about Fleet Farm's failure to timely produce the Detailed Incident Report and failure to ever produce the referenced communication by Klebs to Granato about Horton is relevant to ascertain whether evidence has been spoliated and relief for such spoliation is needed. *See Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir. 1993) (affirming the imposition of sanctions for the destruction of evidence where there was a finding that the spoliators (including the party's counsel) "knew or should have known" that the evidence would be relevant to imminent litigation); *Card Tech. Corp. v. DataCard Inc.*, 249 F.R.D. 567, 571 (D. Minn. 2008) (recognizing that, in some circumstances, "[t]he judicial admission of certain facts as established in response to a Rule 37(b)(2) motion is not necessarily a severe sanction," because "[t]he presumption of certain facts does not offend the right to due process and can be narrowly tailored to provide the information not produced in discovery.").

Moreover, there is good cause to allow this discovery because of the State's diligence throughout discovery, and Fleet Farm's recent production of the Detailed Incident Report. "Good cause may be shown by pointing to . . . newly discovered facts." *Ellingsworth v. Vermeer Mfg. Co.*, 949 F.3d 1097, 1100 (8th Cir. 2020); *see also, e.g.*, *Portz v. St. Cloud State University*, No. 16-1115 (JRT/LIB), 2017 WL 3332220, at *2-4 (D. Minn. Aug. 4, 2017) (finding good cause to modify Scheduling Order because "Defendants delayed production of requested discovery" and "[c]rucially, . . . the documents provided [two weeks before] . . . provide a good faith basis").

Fleet Farm's July 26, 2024 letter argues that the State has not been diligent because the State took *four days* to review the documents after Fleet Farm properly produced them

on July 22, 2024. Ex. 12. But the State acted promptly, if not immediately, in reviewing Fleet Farm's production of documents while also taking a deposition in this case, and that is more than sufficient. *See Ratzlaff v. Experian Info. Solutions, Inc.*, No. 20-cv-773-DSD-KMM, 2020 WL 13049249, at *1 (D. Minn. Dec. 5, 2020) (finding good cause to modify Pretrial Scheduling Order when the motion "was filed little more than two weeks after the change in the law to which it responds," and "the promptness of Plaintiffs' motion in this respect demonstrates their diligence"). Moreover, the State acted immediately after discovering this key evidence, by communicating with Fleet Farm early in the day on Friday, July 26, 2024, and contacting the Court to request a motion hearing that afternoon when Fleet Farm rejected the State's request.

In sum, the State's diligence, the new evidence and facts, and the circumstances of the discovery of the new evidence and facts warrant the additional discovery sought by the State.

## CONCLUSION

For the reasons demonstrated above, the State's Motion to Further Modify the Amended Pretrial Schedule and Compel Discovery should be granted.

Dated:  August 2, 2024

KEITH ELLISON
Attorney General
State of Minnesota

JAMES W. CANADAY (#030234X)
Deputy Attorney General

**/s/ *Katherine A. Moerke***
KATHERINE MOERKE (#0312277)
JASON PLEGGENKUHLE (#0391772)
ERIC J. MALONEY (#0396326)
Assistant Attorneys General

445 Minnesota Street, Suite 1200
St. Paul, Minnesota 55101-2130
james.canaday@ag.state.mn.us
Telephone: (651) 757-1421
katherine.moerke@ag.state.mn.us
Telephone: (651) 757-1288
eric.maloney@ag.state.mn.us
Telephone: (651) 757-1021
jason.pleggenkuhle@ag.state.mn.us
Telephone: (651) 757-1147

**UNIVERSITY OF MINNESOTA GUN
VIOLENCE PREVENTION CLINIC**

MEGAN WALSH (#0394837)
Special Assistant Attorney General

University of Minnesota Law School
190 Mondale Hall
229 19th Avenue South
Minneapolis, MN 55455
Phone: 612-625-5515
wals0270@umn.edu

*Attorneys for State of Minnesota*

23