**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| State of Minnesota by its Attorney General, Keith Ellison,<br><br>Plaintiff,<br><br>v.<br><br>Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC,<br><br>Defendants. | Case No.: 0:22-cv-02694-JRT-JFD<br><br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION TO FURTHER MODIFY AMENDED PRETRIAL SCHEDULING ORDER AND COMPEL DISCOVERY** |

## <u>INTRODUCTION</u>

When the State filed this lawsuit in October 2022, it alleged that Fleet Farm had engaged in a widespread and persistent pattern of selling multiple handguns to untold numbers of straw purchasers, causing irreparable harm to the health and well-being of Minnesotans, and contributing to an ongoing gun trafficking crisis in Minnesota. The scope of the State's allegations was breathtaking. Now, two years later—and after exhaustive written discovery, numerous depositions, and the production of over 16,000 documents totaling 80,000 pages, including Fleet Farm's acquisition and disposition logs reflecting handgun transactions for individuals who acquired four or more handguns from Fleet Farm's Minnesota stores during any fourteen-day window between October 5, 2016 and October 1, 2023, *see* ECF Doc. 90 at 61:12–62:2—the State is appropriately walking these allegations back. Indeed, the State's Motion makes clear that its claims now concern *only* purchases by Jerome Horton and Sarah Elwood. *See* ECF Doc. 135 ("Pl.'s Br.") at 1.

Following its review of Fleet Farm's records and the depositions of numerous Fleet Farm witnesses, the State has no evidence of *any* straw purchasers other than Horton and Elwood (each of whom long ago pled guilty in federal court to intentionally deceiving Fleet Farm when they purchased firearms). With fact discovery now about to close, the State has seized on a minor technical error in Fleet Farm's document production—which was immediately investigated and correct by Fleet Farm, and confirmed to be an isolated incident—as a crowbar to re-open discovery.[1] Specifically, in July, it was discovered that a small number of documents *collected* by Fleet Farm had not been transmitted to counsel due to an unknown technological issue. Fleet Farm immediately investigated the source and scope of this error, confirmed it was an isolated incident, and, within one day of discovering the error, produced twenty-one documents to Plaintiff, the vast majority of which are versions of email strings that had been produced previously. Contained within this production is a single document, FF_0075711, which contains a brief narrative written by a Blaine store Operations Manager (Cory Klebs) in late-February 2022, regarding his recollection of a July 31, 2021 transaction with Horton, including: (1) his recollection of what documents he reviewed as part of the sale, (2) his belief that he "e-scanned" information to Granato to request input on whether any future sales should be stopped,

---

[1] In total, Fleet Farm has produced over 16,000 documents totaling nearly 80,000 pages. Thus, the State seeks to re-open discovery in this case, and take intrusive discovery-on-discovery, based solely on the production of a single document seven weeks before the current close of the fact-discovery period, and with a deposition pending of the key author of the document in question. By contrast, the State has produced just shy of 250 documents totaling a little under 2,000 pages. *See* **Decl. of Andrew Davis ("Davis Decl.") ¶** 15.

(3) his recollection (seven months after the fact) that he "never go[t] a response back" from Granato, and (4) his recollection that the individual who sold the firearms to Horton (whom the State deposed after this document was produced) ***"did not" have "any reason to believe that this could be a straw purchase."*** ECF Doc. 138-1 at 2.

Against this backdrop, the State's motion can be seen for what it is: an attempt to take a ***single*** document produced seven weeks before the close of fact discovery and use it as the basis for redoing discovery into Horton's and Elwood's transactions, because the State's discovery efforts to date have failed to uncover evidence consistent with the allegations in the complaint.

The State's Motion seeks to compel Fleet Farm to produce documents that either ***do not exist*** or that are outside the agreed scope of collection, and to re-open a deposition so that the State may inquire about a topic on which the witness has already testified. The State also asks the Court to further modify the pretrial scheduling order to permit it to serve intrusive and unwarranted discovery-on-discovery related to Fleet Farm's retention practices in an ill-disguised search for evidence of alleged spoliation (which again does not exist). The State's Motion should be denied for four main reasons.

***First***, the State's request to compel Fleet Farm to collect, review, and produce responsive documents from Cory Klebs' custodial files is improper because, as has been explained to the State repeatedly, Fleet Farm has already produced all non-privileged, responsive documents pursuant to the parties' agreed-upon scope of production. At least eight months ago, the State learned three Fleet Farm employees were involved in an ATF investigation of Horton's July 31, 2021 purchase of certain handguns from Fleet Farm's

Blaine store. These individuals were Michelle Granato (Firearms Specialist), Mike Radl (Safety & Firearms Compliance Manager), and Cory Klebs (Operations Manager for Fleet Farm's Blaine location). At the time Fleet Farm produced this information to the State, the parties were actively discussing custodians, with Fleet Farm proposing a list of management-level employees (including Radl and Granato) and the State proposing lower-level employees (such as store managers). ***Although the State was aware of Klebs' role and involvement, at no point did the State request Klebs be made a custodian***, despite making such a request as to other Fleet Farm employees. Several months after Fleet Farm produced information regarding Klebs' involvement, the parties reached an agreement on custodians and keyword searches that would be used to search those custodial files. The parties also reached an agreement on the non-email ESI and paper documents that would be collected and produced.

***Second***, there is no basis to re-open Michelle Granato's deposition, because Granato has already testified as to everything she recalls about Klebs during an exhaustive, all-day deposition that the State elected to take on June 19 (well before the close of fact discovery). Granato testified that she did not have any memory of Klebs. It would be improper to permit the State to re-open a deposition to revisit topics on which it has already questioned Granato.

***Third***, to the extent the State claims to have been prejudiced by the timing of the production of this document—which occurred two full weeks before the then-existing fact-discovery deadline, and seven full weeks before the extended deadline—any such prejudice is cured in full by the upcoming deposition of Klebs. The State has already scheduled the

deposition of Klebs (as its tenth and final deposition), so will have an opportunity to question him about his involvement with the July 31, 2021 sale to Horton and ATF's subsequent investigation of Horton.

**Fourth**, Fleet Farm's thorough explanation to the State of the circumstances surrounding FF_0075711's production shows that discovery-on-discovery is unwarranted.

There is simply no basis to re-open or expand discovery now, and the State's motion should be denied in its entirety.

## BACKGROUND

As is encouraged by the District of Minnesota's eDiscovery Protocol, and at Fleet Farm's initiative, Fleet Farm and the State engaged in extensive discussions regarding the scope of collection for documents responsive to the State's Requests for Production, including both the custodians whose files would be searched and the search terms that would be utilized to identify responsive documents. As the State acknowledges, Fleet Farm made its initial proposal of custodians on November 7, 2023. *See* Pl.'s Br. 12 n.8. The parties then continued conferring on this topic, with the State providing input later that month. **Davis Decl.** ¶ 5. Although the discussions continued for several months, Fleet Farm made a substantial production of documents in mid-December 2023. *Id*. ¶ 6. Included among these documents were emails showing Cory Klebs' involvement as

Operations Manager in the investigation of the July 31, 2021 sale to Horton.  *Id*. ¶ 7; *see* Exs. A–B.[2]

More than a month later, the State asked Fleet Farm for additional custodians – Jana Cartier, Chris McCool, and Nick Widi (all senior-level management).  Cory Klebs was not on the State's list.  **Davis Decl.** ¶ 8; Ex. C. A month later, the Parties conferred as to the scope of Fleet Farm's response to Interrogatory No. 2 and whether additional custodians should be added, including various store managers. **Davis Decl.** ¶ 9; Ex. D.

Once again, Cory Klebs was not on either parties' list of proposed Fleet Farm custodians.  Fleet Farm explained it had limited its custodian list to those individuals who had actually developed and implemented Fleet Farm's firearm training policies and that expanding the list to include other individuals was unnecessary absent additional justification from the State (it is also for this reason that Klebs was not included on Fleet Farm's custodian list).  **Davis Decl.** ¶ 10; Ex. E.   In this same email, Fleet Farm disclosed its search methodology for collecting ESI.

After receiving this letter—and more than four months after Fleet Farm had disclosed documents that unambiguously reflected Klebs' involvement in Horton's July 31, 2021 transaction—the State indicated its agreement on the custodial list.  **Davis Decl.** ¶ 11; Ex. F.

---

[2] All Exhibits ("Ex(s).") cited in this memorandum are attached to the August 14, 2024 Declaration of Andrew W. Davis.

All non-privileged, responsive documents from the agreed-upon list of custodians that hit on the agreed-upon list of search terms were produced months ago. **Davis Decl.** ¶ 12. Fleet Farm—cognizant of the eDiscovery Protocol's direction that "[k]eyword searching . . . is just one way to cull the universe of ESI to make the review for relevance and responsiveness more cost-effective" and "the producing party has ultimate responsibility for complying with that party's discovery obligations"[3]—has not relied solely on keyword searching to identify responsive documents. Although all requests broadly seeking communications regarding straw purchasing, Horton, Elwood, or other similar policies were subject to the keyword searching agreement, Fleet Farm also asked its custodians to specifically identify the location of email, non-email ESI, or paper[4] documents that may be responsive to the State's requests. *Id*. at ¶ 13. This extensive interview process included Granato, and Fleet Farm collected and searched (and produced, to the extent they were responsive and non-privileged) all documents contained in locations identified by Granato. *Id.*

Separately, Fleet Farm searched databases and repositories for responsive documents. This included searching Fleet Farm's Loss Prevention Management System ("LPMS"), which houses store security reports for incidents such as shoplifting. *See* **Decl.**

---

[3] *Discussion of Electronic Discovery at Rule 26(f) Conferences: A Guide for Practitioners*, pp. 8-9, https://www.mnd.uscourts.gov/sites/mnd/files/eDiscovery-Guide.pdf.

[4] The State asserts Fleet Farm failed to search for paper documents. This is incorrect. Fleet Farm asked each of its custodians about the location of potentially relevant paper documents and then separately performed a collection compliant with the Court's orders regarding "no sale" records. **Davis Decl.** ¶ 13.

**of Mike Radl ("Radl Decl.")** ¶ 4. The LPMS can only be searched by last name or by incident number: there is no further keyword-searching functionality. *Id*. ¶ 5. Fleet Farm first searched for all reports involving Horton or Elwood, and collected all responsive documents. *Id*. ¶ 6. Separately, Fleet Farm manually reviewed the LPMS to locate any reports related to firearm safety or straw purchasing, and collected all such documents. *Id*. ¶ 7. The results of both searches were uploaded to counsel via a secure ShareFile link. *Id*. ¶ 8.

Counsel received files, including LPMS reports, and produced all responsive documents in May and early June, prior to the deposition of any Fleet Farm employee. **Davis Decl.** ¶ 14. At that time, counsel was unaware that a *de minimis* amount of the materials ***sent*** by Fleet Farm via the ShareFile link were not ***received*** by counsel. *Id*. ¶ 16. Upon receiving the State's July 11 letter, Fleet Farm immediately investigated the State's assertion that the ATF had produced certain documents that it had not. *Id*. ¶ 17. As it relates to Horton, these ATF-produced documents fell into two categories. All but one of the documents were part of a single email chain from 2021 that—as of the October 2022 filing of this lawsuit—no longer existed due to Fleet Farm's routine destruction protocols. *Id*. ¶ 18. The one remaining document was the LPMS report that is the basis of the State's motion: FF_0075711.

Through its investigation, Fleet Farm learned that FF_0075711 had been collected as part of the LPMS collection, but was not included in the files received by counsel. *Id*. ¶ 19. Fleet Farm immediately commenced a new review of the LPMS for all files related to Horton (or Elwood) and specifically looked for the report identified by the State. *See*

**Radl Decl.** ¶ 9.   All of those documents (which Fleet Farm believes were previously collected and sent to counsel) were then re-sent to counsel.  *Id*. ¶ 10.  Counsel confirmed that although certain of these files had been previously received (and produced), twenty-one documents had not been received or produced.  **Davis Decl.** ¶ 20.  Fleet Farm corrected this issue with a production on July 19, and explained to the State why the identified email communications with Granato had not been produced.[5]  FF_0075711 was included in this production.[6]

On July 26, the State sent a letter regarding FF_0075711, seeking to re-open Granato's deposition, take the deposition of Klebs as its eleventh deposition, and serve five additional requests for production or interrogatories on a range of topics.  **Davis Decl.** ¶ 22.  This letter demanded Fleet Farm respond within eight hours, which Fleet Farm did.  *Id*. ¶ 23.[7]

---

[5] The State acknowledges it received documents on this day, but claims it was unable to review them until a corrected production was made the following Monday.  *See* Pl.'s Br. 8.  The production was small, and a review of the production would have shown images of all produced documents, including the at-issue report.

[6] The State claims Fleet Farm still has not produced an "identical" version of the document produced by the ATF.  *See* Pl.'s Br. 11 n 7.  That is for good reason: the document, in the exact form it existed when sent to the ATF, no longer exists consistent with Fleet Farm's document retention protocols.  The State acknowledges FF_0075711 is identical to the ATF-produced report save for the addition of the "journal notes" from Mr. Klebs.  As the long-ago produced emails show, Fleet Farm provided information to the ATF regarding the July sale in October 2021.  **Decl. Davis** ¶ 7; Exs. A–B.  By contrast, and as the State acknowledges, the report notes from Mr. Klebs were entered in late February 2022, more than four months after the report was provided to ATF.  *See* Pl.'s Br. 11.

[7] The State's letter was sent the day after the parties filed a joint motion to modify the pretrial scheduling order.  *See* ECF Doc. 126.  At no time during the parties' negotiations regarding the joint motion—which was designed to accommodate the State's three

In its July 26 response letter and during a July 30 meet-and-confer discussion, Fleet Farm provided the State with a further explanation of how it collected documents and why this document was not previously produced. *Id*. ¶ 24. Fleet Farm also questioned the practicality of the State's requested new discovery, explaining all non-privileged, responsive documents regarding Horton had already been collected pursuant to the parties' agreement and produced. *Id*. ¶ 25. At the end of the meet-and-confer, the State indicated it would consider the information provided about the collection and had not yet decided whether it would move to compel for additional discovery requests.

The next day, at approximately 12:00 p.m., the State sent another letter containing a new set of demands, including specific requests for the collection of Klebs' emails and for discovery-on-discovery. *Id*. This was the first time these issues were raised, and the State demanded Fleet Farm respond by 9:30 a.m. the following morning. *Id*. ¶ 26. Fleet Farm did so, but explained it could not provide detailed answers to the specific requests for discovery-on-discovery or to the specific requests related to Horton until the following week. *Id*. ¶ 28; Ex. G. The State then filed the instant motion.

---

remaining depositions in this case—did the State raise any of topics that are at issue in its pending motion.

## ARGUMENT

**I.     Fleet Farm Has Complied with its Discovery Obligations—There is Nothing to Compel.**

**A.     Fleet Farm Complied with its Production Obligations.**

The State seeks "complete discovery about [Fleet Farm's] sales to Jerome Horton, Fleet Farm employee concerns that Horton was a straw purchaser, and the communication of these concerns to Fleet Farm compliance personnel." Pl.'s Br. 14. There is just one problem: Fleet Farm has already produced all such documents that are within the agreed scope of collection and production.

From the outset of this case, the State has been focused on Jerome Horton and his handgun purchases from Fleet Farm, including the July 31, 2021 purchase from Fleet Farm's Blaine store, and the State has known since at least mid-December 2023 (more than eight months ago) that Cory Klebs had some involvement with the ATF's investigation of that particular purchase. Yet, the State—despite actively seeking to add *other* individuals as custodians such as general managers and store managers—never requested to have Klebs included as a document custodian.[8] The State seeks to do so now, for the first time, *after* the close of document discovery and just a few weeks before the close of all fact discovery. *See* ECF Doc. 131.

---

[8] Klebs was not on Fleet Farm's initial proposed custodial list (or list of persons with relevant knowledge) because as noted above, Fleet Farm has, at all times, focused on the decisionmakers and management-level employees directly involved in training, policies, and procedures regarding gun safety and straw purchasing. Given the State's Complaint alleges improper training, policies, and procedures related to straw purchasing, *see* ECF Doc. 79 ¶ 36, such a custodian pool is appropriate and proportional. Indeed, the parties reached agreement on the appropriate custodian pool without court involvement.

In similar circumstances, other courts in this district have denied a motion to compel additional search terms and custodians. For example, in *City of Wyoming v. Procter & Gamble Co.*, the plaintiffs filed a motion to compel the production of additional documents from three document custodians, the addition of three new document custodians, and four additional search terms regarding certain projects. 2018 WL 3647225, at *1 (D. Minn. Aug. 1, 2018). Magistrate Leung denied the motion in an oral ruling, reasoning that Plaintiffs already had sufficient time to pursue the contested matters and chose not to do so. *Id*. Judge Tunheim affirmed this ruling, agreeing with Magistrate Leung's reasoning that despite the plaintiffs' allegations that the defendant had withheld certain documents, there was no evidence the discovery disclosures or responses were made "in bad faith or without a sound factual and legal basis." *Id*. at *2. He also agreed with the observations that: (1) the defendant had previously produced documents mentioning the custodians and terms the plaintiffs sought to add, (2) plaintiffs had a prior version of the document they now sought from defendant, and (3) the defendant had produced all copies of the reports already. *See id*. In sum:

> Federal Rule of Civil Procedure 1 dictates that all the federal rules must be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." (Tr. at 54.) The Magistrate Judge did not abuse his broad discretion by limiting the extent of the parties' discovery pursuant to this rule and pursuant to Rule 26(b)(2)(C)(ii) based on his conclusion that Plaintiffs "had ample opportunity to raise these issues with [the defendant] and with the Court if need be, yet instead waited until at or near the close of discovery."

*Id*.

*City of Wyoming*'s reasoning is also applicable here.  Fleet Farm and the State had ample opportunities to meet and confer on the scope of collection, and Fleet Farm has completed a full collection of documents pursuant to the parties' agreed-upon scope of collection and produced all non-privileged, responsive documents regarding Horton.  Fleet Farm's productions of documents regarding Horton have included:

- All emails from Michelle Granato's email box about the July 31, 2021 sales to Jerome Horton that would not have been captured by only electronically searching for the term "Horton"[9];

- All Fleet Farm Store Incident Reports related to Horton;

- All hard-copy documents related to Horton, including all receipts for Fleet Farm sales of firearms and accessories to him[10];

- All relevant and responsive documents regarding Horton in any back-up repositories for email boxes of Granato, Radl, and Klebs[11]; and

- All emails of any Fleet Farm employee regarding Klebs' concerns about Horton—to the extent such emails are contained within the inboxes of the agreed-upon custodians.

---

[9] As an initial matter, it is irrelevant whether Klebs' email "OCR'd" the forms because counsel applied OCR to all documents before keyword searching.  Regardless, Fleet Farm has confirmed all responsive, non-privileged documents have been produced.  **Davis Decl.** ¶¶ 12, 25.

[10] These documents were produced long ago, as part of the email communications with the ATF related to Horton's purchases.  **Davis Decl.** ¶¶ 12, 25.  The discussion of "paper documents" in the meet-and-confer correspondence was not related to the collection of paper files for Horton, and instead reflected discussion about paper files related to another individual irrelevant to this Motion.

[11] Fleet Farm does not maintain back-up repositories. **Davis Decl.** ¶ 32. Unless a legal hold is applied, all email is subject to the routine destruction procedures set forth in the document retention protocol previously produced to the State. *Id*. ¶¶ 31, Ex. J; 32.  Thus, even though Klebs was not a custodian, Fleet Farm can confirm it does not have any "back-up repository" for his email that can be searched.

In short, Fleet Farm has complied with its discovery obligations, as established by the Parties' agreed-upon process, just like the defendant in *City of Wyoming*. Accordingly, the only discovery that could conceivably remain as to Horton is a potential ***new*** collection from a ***new*** custodian: Cory Klebs.[12] *See* Pl.'s Br. 18. But the parties engaged in extensive discussions about custodians, and the State was well-aware of Klebs—including the fact that he collected documents and information relevant to Horton's July 31, 2021 transaction—and chose to not even ask Fleet Farm to include him as a potential custodian. It is only now, ***after*** the close of document discovery and just a few weeks away from the close of all fact discovery, that the State seeks to re-open an issue that was resolved months ago. There is simply no basis to do so, as the court recognized in *City of Wyoming*.

### B.      Fleet Farm's Interrogatory Responses are Complete and Accurate.

The State also asks the Court to compel Fleet Farm to provide amended answers to its Interrogatory Nos. 2, 6, and 9. *See* Pl.'s Br. 18. But the State does not articulate any proper basis for requiring amended answers.

With respect to Interrogatory Nos. 2 and 6, as of this filing and in the spirit of compromise, Fleet Farm has served on the State supplemental responses to Interrogatory Nos. 2 and 6 that identify Klebs.[13] With the service of these supplemental responses, the dispute as to Interrogatory Nos. 2 and 6 has been mooted.

---

[12] For avoidance of doubt, although Mr. Klebs left Fleet Farm months before the Complaint was filed, he was subject to a legal hold related to the Horton incident, and his emails were preserved.

[13] There is good reason why Klebs was not previously identified in Fleet Farm's interrogatory responses. Fleet Farm's response to Interrogatory No. 2 was limited, without

Turning to Interrogatory No. 9, which seeks information about instances in which Fleet Farm "audited" or "investigated" "employee[] compliance with [its] policies and procedures related to the sale of firearms," there is nothing to supplement. *Id.* at 13. At most, FF_0075711 indicates Klebs had a ***question*** about whether to make future sales to Horton. Nothing in FF_0075711 reflects a Fleet Farm investigation or audit of employee compliance with its firearm policies or procedures that should have been disclosed.

### C.    There is No Proper Basis to Re-Open Granato's Deposition Because She Has Testified to the Extent of Her Recollection.

Finally, the State seeks to re-open the deposition of Granato, but there is nothing left to ask about. The State already asked Granato about Klebs, and she did not recall who he was. Ex. I at 152:24–155:21. She was also asked about her recollection of Fleet Farm's sales to Jerome Horton and the ATF investigation of Horton, and she testified as to everything she could recall. *See id.* at 177:14–219:18. Re-opening Granato's deposition to ask her about this single document will not yield anything new, as she has ***already*** testified to the best of her recollection about Klebs, Fleet Farm's sales to Horton, and the ATF investigation of Horton. Indeed, the only result that will come from requiring Granato to sit for a second deposition will be imposing a burden on Granato.

---

objection from the State, to: (1) individuals who "held corporate leadership positions in, and may have unique knowledge regarding, the establishment, modification, oversight, and/or monitoring of [Fleet Farm's] policies, procedures, and practices relating to firearm sales"; (2) "general managers of (or regional directors overseeing) Fleet Farm stores where Jerome Horton or Sarah Elwood purchased firearms, at the time those purchases occurred; and (3) by reference to Interrogatory No. 6, the individuals who directly sold firearms to Horton or Elwood. *See* Ex. H at 2–6.

Indeed, the only method of discovery likely to yield **new** information is the deposition of Klebs himself, and the State has already noticed his deposition as its tenth and final deposition.  There is no need to ask Granato about a topic on which she has already testified when the person who **sent** the "newly-produced" document will be deposed just a few days after the Court considers this Motion.

\* \* \*

Ultimately, the State's Motion to Compel is an exercise in futility. Other than potentially responsive documents in the inbox of a custodian the State chose not to pursue, no other documents exist to produce, and all responsive documents that **do** exist have been produced. And other than additional confirmation that Granato recalls nothing more of Klebs or Fleet Farm's sales to Horton, it is likely that no further testimony will be yielded on this topic.  The State's Motion to Compel should be denied.

## II. There is No Good Cause to Modify the Pretrial Order, and Discovery on Discovery Isn't Warranted Here.

The State also argues the Court should amend the (recently amended) Pretrial Order to permit new discovery-on-discovery into Fleet Farm's search methodologies. Doing so requires the State to both: (1) establish good cause for the proposed modification; and (2) explain the proposed modification's effect on any deadlines.  *See* D. Minn. LR 16.3(b). Because the State seeks to amend discovery deadlines, the State must also: (1) describe what discovery remains to be completed; (2) describe the discovery that has been completed; (3) explain why not all discovery has been completed; and (4) state how long it will take to complete discovery.  *See id.*, subd. (c).

The State fails to satisfy both sets of requirements.  At the outset, the State's Motion fails to acknowledge how much **prior** discovery has been completed, nor does it explain how long it will take to complete the discovery it now requests. That is likely because the State does not know and instead seeks to embark on a yet another fishing expedition that will postpone all future deadlines with no end in sight. The Motion could be denied on these grounds alone.

But even if the State had complied with the requirements of D. Minn. LR 16.3(c), the State's Motion still fails because it cannot show good cause exists to modify the discovery deadline.  As an initial matter, the requests for information regarding how the LPMS was searched and for information regarding how documents were collected from Fleet Farm but not transferred have surely been satisfied by the information provided in this brief, the accompanying declarations from Fleet Farm and counsel, not to mention the numerous correspondence and discussions between counsel on this topic.[14]  Putting that aside, the circumstances here simply do not merit discovery-on-discovery—and they certainly do not warrant the threat of spoliation sanctions, as implied by the State.

As the State's own cases explain, "parties are not expected to meet a standard of perfection in the preservation and production of documents, particularly where ESI is implicated." *Thomas v. Marshall Pub. Sch.*, 690 F. Supp. 3d 941, 963 (D. Minn. 2023)

---

[14] As noted above, the State moved to compel this information without giving Fleet Farm proper time to respond to the demand. Fleet Farm continues to believe that at least some of these issues could have been obviated had the State given Fleet Farm more time to respond to the detailed requests.

(quotation omitted). "Rather, the standard is one of reasonableness; has the party taken reasonable steps under the circumstances of the case to preserve that which is reasonably related to the subject matter of the litigation and thus potentially subject to discovery." *Id*. The Sedona Conference echoes this, explaining "[p]reservation efforts need not be heroic or unduly burdensome." *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, Comment 5.e (2018).[15]

As Fleet Farm's counsel has already explained to the State, Fleet Farm's document retention policies save all emails for a period of 90-days unless those emails are filed in a user-created folder. **Davis Decl.** ¶ 31; Ex. J. Thus, emails sent on July 31, 2021 would be preserved until approximately October 29, 2021, unless either: (1) a custodian filed that email in a user-created folder, or (2) a legal hold is implemented during that timeframe. The State filed its lawsuit in October 2022, more than a year after the transaction with Horton on July 31, 2021 (and almost a year after the shooting and resulting ATF investigation). "The obligation to preserve evidence begins when a party knows or should

---

[15] Also relevant here, the Sedona Principles address considerations for the court in resolving a motion that alleges a party's discovery response was inadequate:

> On such a motion, a court should consider: Sedona Principle 2 and the proportionality limits of Rule 26(b)(1); how the moving party can meet its burden without the need for extensive discovery about the responding party's efforts to respond to the discovery request; and that, consistent with Principle 6, the responding party is in the best position to determine the appropriate methods for preserving, retrieving, reviewing, and producing ESI.

*Id*., cmt. 7.a.

have known that evidence is relevant to future or current litigation." *E\*Trade Sec. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 588 (D. Minn. 2005). The State does not explain how or why Fleet Farm should have anticipated a lawsuit (which was filed in October 2022) in October 2021, such that emails from July 2021 would have been preserved. Nor could it.

Regardless, Fleet Farm's diligence in retaining and producing documents is demonstrated by the production of the emails that *do* exist from 2021, including the October 2021 emails between Granato, Klebs, and Radl regarding the July 31, 2021 Horton transaction that were produced in December 2023. And unlike cases in which counsel relies *solely* on self-collection from custodians (such that discovery-on-discovery may be appropriate in limited circumstances), *e.g.*, *Thomas*, 690 F. Supp. 3d at 963, Fleet Farm conducted a thorough, hybrid collection that included both agreed upon keyword searching/custodians and targeted collections from custodians and databases. *Supra* pp. 7–8.

Given the State's knowledge of Klebs' involvement with the July 31, 2021 transaction with Horton since December 2023, the thoroughness of Fleet Farm's collection, and the fact that only *one* document related to that July 31, 2021 transaction was produced later than the rest (but still within the discovery period), there is no reason to broaden discovery or permit intrusive discovery-on-discovery into Fleet Farm's legal holds and search methodologies. Indeed, much of the requested information would be privileged. "Litigation hold letters are protected by attorney-client privilege," and that privilege is only "overcome when spoliation has occurred." *Nekch v. Wisc. Cent. Ltd.*, 2017 WL 11454634, at \*5 (D. Minn. Sept. 12, 2017) (citations omitted). Given Fleet Farm's fulsome

explanation of its internal discovery processes, the State's requested discovery-on-discovery would simply bog this case down and cause further delay, with no corresponding benefit.

Nor has any spoliation occurred here that would justify discovery-on-discovery, much less intrusive discovery into information protected by privilege. Fleet Farm has provided an explanation of why this document was produced later than the rest, and took immediate action to confirm that this was an isolated incident. *Supra* pp. 7–9. Moreover, Fleet Farm has explained in detail the steps it took to confirm this incident was isolated and the search methodologies used to identify documents related to Horton. *Supra* pp. 9–10. Given these circumstances, the State's Motion should be denied.

## **CONCLUSION**

For the foregoing reasons, Fleet Farm respectfully requests the Court deny the State's Motion.

Dated:  August 14, 2024                    Respectfully submitted,

                                           /s/ Andrew W. Davis
                                           Todd A. Noteboom (#0240047)
                                           Andrew W. Davis (#0386634)
                                           Sharon R. Markowitz (#0392043)
                                           Andrew P. Leiendecker (#0399107)
                                           Zachary J. Wright (#0402945)
                                           STINSON LLP
                                           50 South Sixth Street, Suite 2600
                                           Minneapolis, MN 55402
                                           (612) 335-1500
                                           todd.noteboom@stinson.com
                                           andrew.davis@stinson.com
                                           sharon.markowitz@stinson.com
                                           andrew.leiendecker@stinson.com
                                           Zachary.wright@stinson.com

                                           **ATTORNEYS FOR DEFENDANTS**