UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota by its Attorney General, Keith Ellison,<br><br>Plaintiff,<br><br>v.<br><br>Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC,<br><br>Defendants. | Case No. 22-cv-02694 (JRT/JFD)<br><br>**DECLARATION OF ANDREW W. DAVIS IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO AMEND AND COMPEL** |

I, Andrew W. Davis, state that the following are true and correct factual statements of which I have personal knowledge:

1. I am a partner at Stinson LLP and am licensed to practice law in the State of Minnesota.

2. I am one of the attorneys representing Defendants Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC (together, "Fleet Farm") in the above-captioned matter.

3. I submit this declaration in support of Defendants' Opposition to Plaintiff's Motion to Amend and Compel ("Opposition").

4. Fleet Farm and the State engaged in extensive discussions regarding the scope of collection for documents responsive to the State's Requests for Production, including both the custodians whose files would be searched and the search terms that would be utilized to identify responsive documents.

- 1 -

191830725

5. Fleet Farm made its initial proposal of custodians on November 7, 2023. The parties then continued conferring on this topic, with the State providing input later that month.

6. Although the discussions continued for several months, Fleet Farm made a substantial production of documents in mid-December 2023.

7. Included among these documents were emails showing Cory Klebs' involvement as Operations Manager in the investigation of the July 31, 2021 sale to Horton. True and correct copies of examples of such emails are attached hereto as **Exhibits A** and **B**.

8. More than a month later, the State asked Fleet Farm for additional—Jana Cartier, Chris McCool, and Nick Widi (all senior-level management). Cory Klebs was not on the State's list. A true and correct copy of this response is attached hereto as **Exhibit C**. Fleet Farm agreed to include these individuals as custodians.

9. A month later, the Parties conferred as to the scope of Fleet Farm's response to Interrogatory No. 2 and whether additional custodians should be added, including various store managers. Once again, Cory Klebs was not on either parties' list of proposed Fleet Farm custodians. A true and correct copy of the State's correspondence on this matter, dated March 14, 2024, is attached hereto as **Exhibit D**.

10. In its response back to the State, Fleet Farm explained it had limited its custodian list to those individuals who had actually developed and implemented Fleet Farm's firearm training policies and that expanding the list to include other individuals was unnecessary absent additional justification from the State (it is also for this reason that

Klebs was not included on Fleet Farm's custodian list). Fleet Farm also disclosed its search methodology for collecting ESI. A true and correct copy of this correspondence is attached hereto as **Exhibit E**.

11. The State later indicated its agreement to the custodial list. A true and correct copy of this correspondence is attached hereto as **Exhibit F**.

12. All non-privileged, responsive documents from the agreed-upon list of custodians that hit on the agreed-upon list of search terms were produced months ago.

13. Although all requests broadly seeking communications regarding straw purchasing, Horton, Elwood, or other similar policies were subject to the keyword searching agreement, Fleet Farm also asked its custodians to specifically identify the location of email, non-email ESI, or paper documents that may be responsive to the State's requests. This extensive interview process included Granato, and Fleet Farm collected and searched (and produced, to the extent they were responsive and non-privileged) all documents contained in locations identified by Granato. Fleet Farm asked each of its custodians about the location of potentially relevant paper documents and then separately performed a collection compliant with the Court's orders regarding "no sale" records.

14. To facilitate collection from Fleet Farm, counsel provided Fleet Farm with sharefile links to upload both email PST files and any non-email ESI or scanned paper documents. Counsel received files that had been collected by Fleet Farm as part of its collection, including LPMS reports, and produced all responsive documents in May and early June 2024, prior to the deposition of any Fleet Farm employee.

15. In total, Fleet Farm has produced over 16,000 documents totaling nearly 80,000 pages. Thus, the State seeks to re-open discovery in this case, and take intrusive discovery-on-discovery, based solely on the production of a single document seven weeks before the current close of the fact-discovery period, and with a deposition pending of the key author of the document in question. By contrast, the State has produced just shy of 250 documents totaling a little under 2,000 pages

16. Prior to July 11, 2024, I was unaware that a small number of documents sent by Fleet Farm via the ShareFile link were not received by me or my team.

17. Upon receiving the State's July 11 letter, Fleet Farm immediately investigated the State's assertion that the ATF had produced certain documents that it had not.

18. As it relates to Horton, these ATF-produced documents fell into two categories. All but one of the documents were part of a single email chain from 2021 that—as of the October 2022 filing of this lawsuit—no longer existed due to Fleet Farm's routine destruction protocols. The one remaining document was FF_0075711.

19. Through its investigation, Fleet Farm learned that FF_0075711 had been collected as part of the LPMS collection, but was not included in the files received by counsel.

20. Upon receiving materials Mr. Radl had re-collected from the LPMS, my team confirmed that while certain files had been previously received and produced, twenty-one documents had not been received or produced.

21.   Fleet Farm made a supplemental production of these twenty-one documents on July 19, just one day after confirming the issue.

22.   On July 26, the State sent a letter regarding FF_0075711, seeking to re-open Granato's deposition, take the deposition of Klebs as its eleventh deposition, and serve five additional requests for production or interrogatories on a range of topics.

23.   This letter demanded Fleet Farm respond within eight hours, which Fleet Farm did.

24.   In its July 26 response letter and during a July 30 meet-and-confer discussion, Fleet Farm provided the State with a further explanation of how it collected documents and why this document was not previously produced.

25.   Fleet Farm also questioned the practicality of the State's requested new discovery, explaining all non-privileged, responsive documents regarding Horton had already been collected pursuant to the parties' agreement and produced.

26.   At the end of the meet-and-confer, the State indicated it would consider the information provided about the collection and had not yet decided whether it would move to compel for additional discovery requests.

27.   The next day, at approximately 12:00 p.m., the State sent another letter containing a new set of demands, including specific requests for the collection of Klebs' emails and for discovery-on-discovery. This was the first time these issues were raised, and the State demanded Fleet Farm respond by 9:30 a.m. the following morning.

28.   Fleet Farm did so, but explained it could not provide detailed answers to the specific requests for discovery-on-discovery or to the specific requests related to Horton

until the following week. A true and correct copy of this response is attached hereto as **Exhibit G**.

29. There is good reason why Klebs was not previously identified in Fleet Farm's interrogatory responses. Fleet Farm's response to Interrogatory No. 2 was limited, without objection from the State, to: (1) individuals who "held corporate leadership positions in, and may have unique knowledge regarding, the establishment, modification, oversight, and/or monitoring of [Fleet Farm's] policies, procedures, and practices relating to firearm sales"; (2) "general managers of (or regional directors overseeing) Fleet Farm stores where Jerome Horton or Sarah Elwood purchased firearms, at the time those purchases occurred; and (3) by reference to Interrogatory No. 6, the individuals who directly sold firearms to Horton or Elwood. Attached hereto as **Exhibit H** are true and correct copies of these responses.

30. Attached hereto as **Exhibit I** are true and correct excerpts from the deposition of Michelle Granato.

31. Attached hereto as **Exhibit J** is a true and correct copy of Fleet Farm's retention policy.

32. Fleet Farm does not maintain back-up repositories. Unless a legal hold is applied, all email is subject to the routine destruction set forth in Fleet Farm's retention policy.

191830725

- 7 -

This declaration is made pursuant to 28 U.S.C. § 1746, and I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 14, 2024, in Minneapolis, Minnesota.

*/s/ Andrew W. Davis*
Andrew W. Davis