# EXHIBIT E



Andrew Davis<br>
DIRECT: 612.335.1556<br>
OFFICE: 612.335.1500<br><br>
Andrew.Davis@stinson.com

March 29, 2024

**VIA EMAIL**

| | |
|---|---|
| Katherine A. Moerke | Megan Walsh |
| Eric J. Maloney | Arielle Hugel |
| James W. Canaday | William Roberts |
| Jason T. Pleggenkuhle | Nick Taylor |
| Office of the Minnesota Attorney General | University of Minnesota Law School |
| 445 Minnesota Street, Suite 1200 | 190 Mondale Hall |
| St. Paul, MN 55101-2130 | 229 19th Avenue South |
| katherine.moerke@ag.state.mn.us | Minneapolis, MN 55455 |
| eric.maloney@ag.state.mn.us | wals0270@umn.edu |
| james.canaday@ag.state.mn.us | hugel004@umn.edu |
| jason.pleggenkuhle@ag.state.mn.us | robe2331@umn.edu |
| | tayl1110@umn.edu |

Re:   *State of Minnesota v. Fleet Farm LLC, et al.*, Case No. 0:22-cv-02694-JRT-JFD

Counsel:

I write in response to your March 14 email regarding Fleet Farm's search terms and custodians.

Beginning with custodians, your March 14 email asks whether Fleet Farm will run search terms on the additional individuals identified in Fleet Farm's February 20, 2024 Amended Responses and Objections to Plaintiff's Interrogatory No. 2. Although your email suggests these individuals were identified as "possessing factual knowledge relating to the allegations, claims, denials, and defenses set forth in the pleadings," that misstates the parties' prior correspondences that led to Fleet Farm's amended response to ROG No. 2.

These individuals were identified in response to Plaintiff's unsupported demand that, in response to ROG No. 2, Fleet Farm provide Plaintiff with a list of ***all*** "employees in regional and/or store management" and ***all*** "employees who work the firearms counter in Fleet Farm's Minnesota stores." Pl.'s Jan. 26, 2024 Ltr. 3. Fleet Farm explained this demand was unsupported, and would seek the disclosure of "hundreds, if not thousands, of individuals," but "in the spirit of compromise," Fleet Farm would identify "the individuals who were regional, general, or store managers at the Fleet Farm stores from which Jerome Horton or Sarah Elwood purchased firearms at the time those purchases occurred." Defs.' Feb. 2, 2024 Ltr. 2.

Katherine A. Moerke, et al.
March 29, 2024
Page 2

Because Fleet Farm's firearm training policies are developed and implemented by the persons who have already been identified as custodians, and because there is no basis to believe that certain store managers have relevant and unique ESI (indeed, Fleet Farm's document productions to date already reflect the instances where these individuals have been involved in discussions with Fleet Farm leadership regarding firearm policies), Plaintiff has not offered a valid basis for expanding Fleet Farm's already extensive document review and production to include additional custodians. To the extent Plaintiff believes that Fleet Farm's current list of custodians is insufficient, please articulate both: (1) the specific basis and support for that belief; and (2) the specific reasons Plaintiff believes it is necessary to review the custodial files of the store managers identified in response to ROG No. 2.

On the issue of ESI platforms, Fleet Farm has made it clear that it has complied with its discovery obligations and collected from all ESI sources that may contain responsive information. Plaintiff is not entitled to "discovery on discovery" absent extenuating circumstances that simply do not exist here. Regardless, in an attempt to resolve this dispute, Fleet Farm's custodial searches consisted of a search of email, chat messages, calendars, local computer files, cloud storage (such as sharepoint), shared files, and any relevant databases to which the custodians had access and indicated may possess responsive information. All custodians were also interviewed about their use of mobile devices to conduct relevant work, and no custodian's mobile device is likely to contain responsive information.

Turning to search terms, Fleet Farm's responses to the four items raised in your email are addressed below:

- **Row 2**: Your email misstates the scope of RFP No. 7, which is limited to trace reports and related information "***exchanged between Fleet Farm and ATF***." Accordingly, Fleet Farm will not expand Row 2 to encompass internal communications about trace requests that are not otherwise responsive to RFP No. 7 or another RFP.

- **Row 16**: As reflected in the hit report that Fleet Farm provided on February 21, 2024, on two prior occasions (November 17, 2023 and January 29, 2024), Plaintiff proposed using a "(.gov or ATF)" modifier to this search. Fleet Farm will continue to use that modifier, but in the spirit of compromise, is willing to expand the modifier to include the following terms, consist with the parties' agreement in Row 3: (".gov" OR "state.mn.us" OR "ATF" OR "BCA" or "police department" OR "sheriff"). With this expanded modifier, the searches detailed in Fleet Farm's February 21, 2024 correspondence will encompass, respectively, 2,823 documents (2,956 including families) and 199 documents (218 including families). Reviewing this volume of documents for responsiveness to a single RFP is more than reasonable.

Katherine A. Moerke, et al.
March 29, 2024
Page 3

- **Rows 20 and 21**: Fleet Farm will not run these search terms. Fleet Farm has been gathering and processing any and all surveillance video responsive to RFP No. 15, and that process has taken longer than expected due to the size of the video files. Fleet Farm anticipates producing all of these videos, potentially in physical format, to Plaintiff alongside its next production. As for RFP No. 16, Fleet Farm has already explained that it has produced the only responsive data-retention policy, and will not run any search terms relating to this request.

- **Rows 27 through 30**: In response to RFP No. 2, Fleet Farm stated it would produce any non-privileged documents that "they may use in response to Plaintiff's claims or in support of their defenses." Fleet Farm is not intending to use any documents regarding Douglas Sutton, Shamar Scott, Jorge Olivares, or Orlando Holden. RFP No. 14 is limited to seeking documents related to five identified individuals, none of whom are Sutton, Scott, Olivares, or Holden. And in response to RFP No. 26, Fleet Farm stated it would produce (and has produced) documents sufficient to determine the identities of persons Fleet Farm has identified as a suspected straw purchaser and/or reported to ATF. Accordingly, none of these RFPs, or Fleet Farm's responses to the RFPs, support running search terms for four individuals who are not mentioned in the complaint and to whom, to the best of its knowledge, Fleet Farm has never sold firearms.[1]

Sincerely,

**Stinson LLP**

Andrew W. Davis

cc: Todd Noteboom
Andrew Leiendecker
Zachary Hemenway
Courtney Harrison
Zachary Wright

---

[1] It is unclear why Plaintiff continues to request that Fleet Farm run searches for Plaintiff's proposed terms in Rows 28 through 30, as the hit report Fleet Farm provided on February 21 indicates that these proposed searches will produce *zero* results.

3