UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

State of Minnesota, *by its*        )   File No. 0:22-cv-02694
*Attorney General, Keith*           )          (JRT/JFD)
*Ellison*,                          )
                                    )
                Plaintiff,          )
                                    )
v.                                  )
                                    )
Fleet Farm LLC, et al.,             )   St. Paul, Minnesota
                                    )   **August 21, 2024**
                Defendants.         )   3:30 p.m.
                                    )
------------------------------------------------------------

BEFORE THE HONORABLE JOHN F. DOCHERTY
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

**(MOTION HEARING)**

**APPEARANCES**:

For the Plaintiff:      MINNESOTA ATTORNEY GENERAL'S OFFICE
                        **Katherine Moerke**
                        **Eric J. Maloney**
                        445 Minnesota Street, Suite 1200
                        St. Paul, Minnesota 55124

For the Defendants:     STINSON LLP
                        **Andrew W. Davis**
                        **Zach Wright**
                        50 South Sixth Street, Suite 2600
                        Minneapolis, Minnesota 55402

Court Reporter:         Nancy J. Meyer
                        Registered Diplomate Reporter
                        Certified Realtime Reporter
                        Warren E. Burger Federal Building
                        and U.S. Courthouse
                        316 North Robert Street
                        St. Paul, Minnesota 55101

Proceedings reported by certified stenographer; transcript
produced with computer technology.

**P R O C E E D I N G S**

**IN OPEN COURT**

THE COURT:  We're here this afternoon for argument on a motion brought by the plaintiffs to further modify the amended pretrial scheduling order and to compel discovery.

We'll begin by getting appearances, please, beginning with the moving party, the plaintiff.

MS. MOERKE:  Katherine Moerke on behalf of the State of Minnesota.

THE COURT:  Good afternoon, Ms. Moerke.

MR. MALONEY:  Good afternoon, Your Honor. Assistant Attorney General Eric Maloney on behalf of the State.

THE COURT:  Good afternoon, Mr. Maloney.

For the defense.

MR. DAVIS:  Good afternoon, Your Honor.  Andy Davis on behalf of Fleet Farm.

MR. WRIGHT:  Good afternoon, Your Honor.  Zach Wright on behalf of the defendant.

THE COURT:  Mr. Wright, good afternoon.

Before we begin, I understand it's controversial, but at the moment my understanding is that the document that started all this is under seal.  I want, therefore -- until that's -- well, if that's going to be lifted, it'll be the

subject of further proceedings.  It's not lifted right now. Whatever one's views are about the rectitude of having that under seal, let's not talk about it.  I've read it.  I know what it says.  I don't think it's necessary to talk about its contents for purposes of this afternoon's hearing.  And so I'm going to ask counsel to just stay above the level at which there would be a problem with the seal.

Any issues with that, Ms. Moerke?

MS. MOERKE:  Your Honor, no issues.  Although I'm not sure Fleet Farm continues to maintain that it should be under seal given that they quoted it in their own filing.

THE COURT:  Well, I can ask them about that, but absent that, any issues?

MS. MOERKE:  Not at all, Your Honor.

THE COURT:  Okay.  Thank you.

Mr. Davis.

MR. DAVIS:  Your Honor, we would prefer that it remain under seal and be handled per the local rules with respect to sealed documents, and we can address it at that time.  We think that in its entirety it does contain information that we believe is confidential to Fleet Farm and should be protected.  While -- while particular excerpts may not be confidential in isolation, in its entirety, that continues to be our position; that we would agree with the Court.

THE COURT:  All right.  Well, let's stay away from talking about the document's contents this afternoon because, as I say, if the seal is to be lifted -- and I understand the State may have the view that it ought to be -- that is not something that's before the Court this afternoon.  We'll deal with that later.  So for this afternoon, let's just play it safe.  All right?

Who is going to be arguing for the State?

MS. MOERKE:  I am, Your Honor.

THE COURT:  Come on up.

MS. MOERKE:  Good afternoon, Your Honor.  Fleet Farm sold 24 firearms to straw buyer Jerome Horton during four months in 2021.  Fleet Farm denies that it knew or should have known that he was a straw buyer.  The week before discovery ended, Fleet Farm produced a document -- some of the contents of which are redacted and under seal -- that shows that Fleet Farm knew or should have known that Horton was a straw buyer on July 31st, 2021.  That was halfway through Mr. Horton's buying spree at Fleet Farm and before Fleet Farm went on to sell 11 more guns to Horton that day.

And I am going to direct the Court's attention -- I have copies if it would be helpful of unredacted -- the key exhibit, but I can also just speak to it.

THE COURT:  If you can speak to it without going

into the contents -- and I really don't want to be sitting up here for the duration of this hearing on the edge of my chair waiting for someone to cross the line. So just please be careful. I have read the document multiple times. I'm quite familiar with it. You don't need to quote chapter and verse in order for me to get your point.

MS. MOERKE: Thank you, Your Honor.

And, certainly, there are journal notes that are redacted. Nothing else is redacted. I do want to point out that this is a Blaine store incident report. It's an official document that Fleet Farm creates and puts in its loss management system.

After -- and some of the contents, of course, indicate that another communication was made, Your Honor. So not only is it difficult to imagine a more relevant document than the one we're talking about, but this document shows that Fleet Farm provided -- failed to provide other discovery, discovery the State requested in numerous ways.

We believe there is a communication from Cory Klebs to Michelle Granato that may exist and has not been searched for, certainly has not been produced because Fleet Farm never searched documents of store manager Cory Klebs or --

THE COURT: Well, but Cory Klebs also wasn't on the document custodian list despite numerous attempts -- or numerous opportunities to put in there, nor was he on the

26(a)(1) list of individuals with knowledge, was he?

MS. MOERKE:  He was not on either of those, Your Honor, and there's no way the State could have known to put in there --

THE COURT:  Not until late last year, around December; correct?

MS. MOERKE:  Not correct at all, Your Honor.

THE COURT:  Why not?

MS. MOERKE:  Because Fleet Farm cites two exhibits in -- and I want to be clear.  The State asked Fleet Farm in interrogatories to identify people directly involved in sales to Horton.  It's now clear Fleet Farm did not do that.  So it's not just the document request.  It's that as well; that Fleet Farm did not respond to.

And in response to failing to identify Klebs as a witness and to do a diligent investigation, Fleet Farm makes this argument that the State somehow should have known last year to identify Klebs as a custodian.  Fleet Farm did produce a fair number of documents, Your Honor, and those documents identify numerous employees.  The State was not in a position to say that -- that all of those employees or to somehow guess they had some direct roles in the sales to Horton.

Fleet Farm points to two exhibits.  It's Fleet Farm's Exhibits A and B, which are Exhibit 148 -- or excuse me, ECF

No. 148 and ECF No. 148-1.  And Fleet Farm says that the State should have known from those documents that Klebs was involved in the July 31st, 2021, sales to Horton.  I can quote from Fleet Farm's brief.  Those assertions are false, Your Honor.  These exhibits show only that in October 2021, Cory Klebs was involved in collecting and sending paperwork to the ATF.  These documents do not in any way indicate that Cory Klebs had been involved in a purchase and -- and had concerns about it.  So that -- that is -- is an unreasonable argument that Fleet Farm makes to justify its failure.

Specifically, Fleet Farm says in its brief that the State was aware of Klebs' role and involvement and that we knew of Klebs' involvement with the July 31st, 2021, transaction with Horton since December 2023.  In fact, that's what Your Honor just asked me about.

THE COURT:  Uh-huh.

MS. MOERKE:  That's Fleet Farm memorandum at 4 and 19.  And the evidence that Fleet Farm cites are Exhibits A and B.  They do not show that, Your Honor.  We did not know. We did not know until July 26th that Cory Klebs was involved in a sale to Jerome Horton on July 31st, 2021.

Your Honor, Fleet Farm also provided a 30(b)(6) deposition in this case.  It was the first deposition we noticed.  We noticed it in January.  We finally had the opportunity to take the deposition of -- of a 30(b)(6)

designee in June.  One of the topics was, of course, Fleet Farm's sales to Horton.  That witness had -- also did not identify Klebs as being involved; and, in fact, he had not talked to any employees.  And when we asked him if any employees had concerns, he said, "Not that I know of, no."

And that's despite the fact, Your Honor, that this 30(b)(6) witness of Fleet Farm in preparing to give this testimony had spoken to Mike Radl.  Mike Radl is one of the two main Fleet Farm employees charged at their corporate headquarters with compliance.  At the time, Michelle Granato reported to Mike Radl.  And it's Mike Radl who has searched this loss management database and found -- found this report not long ago that has been produced to us and is the reason that brings us here.

I also, Your Honor, want to make it clear that while the parties certainly discussed custodians, we had no -- we did not agree on some protocol for agreeing to custodians, and we never did and with good reason.  We knew -- the State knew at every point that we weren't in the position to identify who the appropriate custodians would be.  We served document requests, and it was Fleet Farm's job to identify where appropriate information was.

And at the end of the day, Your Honor, discovery is a tool to search for the truth.  And we now know that -- that Cory Klebs should have been a custodian.  We should have

known this some time ago and, certainly, that emails used by the sporting goods team at the gun counter and the scanner at the gun counter should have been searched as well.

So the stake -- the State -- excuse me -- seeks limited discovery with its motion, and this is mostly discovery that Fleet Farm should already have produced related to these newly discovered facts.  The State does not seek to fully open -- reopen discovery as Fleet Farm says.  The State does not want delay.  The State just wants to discover the truth.

And that's three buckets, Your Honor.  The first is to reopen the deposition of Michelle Granato.  We could have asked for more, Your Honor.  We could have asked to reopen the deposition of Mike Radl, and we could have asked to redo the 30(b)(6) deposition because it's now clear that we had the most relevant information that we could have asked about.  But we didn't.  We kept it narrow.

The State is entitled to know whether Michelle Granato is going to admit or deny the facts that are in this new key document.  We are entitled to learn that before she's a witness at trial; to present her with evidence and not just ask about a name in a vacuum and say do you know John -- John Doe, but say this person said this and to really -- to drill down on it.  It would have been the focus of the deposition.  So that's the first thing we seek,

Your Honor.

The second thing we seek is for Fleet Farm to produce the discovery -- to produce relevant discovery that the State requested, you know, more than a year ago. And I want to be clear that at all times Fleet Farm really told the State that it was doing it. In fact, in the letter that -- the letter where Fleet Farm says -- you know, like, it was telling us that the custodians were only management -- I want to find for you what --

THE COURT: When was that letter?

MS. MOERKE: I've got it right here. It was March 29th, 2024. It was a long letter from Fleet Farm. It's Exhibit E in their briefing. It's ECF 147.3. Fleet Farm made a point that custodians were managers. Fleet Farm also told the State -- this is on page 2 of that -- "there is no basis to believe that certain store managers have relevant and unique ESI." Told us there's no reason to believe that. And who has the duty to investigate and the ability to talk to people involved with the sales? Fleet Farm, not the State.

And Fleet Farm also said on page 2, "Fleet Farm has made it clear that it has complied with its discovery obligations and collected from all ESI sources that may contain responsive information."

So, Your Honor, not only is Fleet Farm trying to

conceal -- or really prevent the State from obtaining highly relevant discovery and obscure the search for the truth based on a procedural argument, but the procedural argument is quite flawed, Your Honor.  The State could not have known about Cory Klebs.

So back to the discovery that the State seeks:  the reopening the deposition of Granato and the production of documents, Your Honor.  It's clear right now that there may be more highly relevant documents in Fleet Farm's possession.  They may be in Cory Klebs' custodial files.  They may be, as I mentioned, in emails associated with the Blaine store sporting goods counter.  They may also be from other people involved in the sales to Horton.

What's now clear is that when Fleet Farm answered Interrogatory 6, they simply took the names of Fleet Farm employees on -- on the forms, the firearms forms, for sales to Jerome Horton.  They just put those names in a rog answer.  They did not actually investigate.  And we now know that more than one person is involved in every sale of a gun at Fleet Farm.  There's always at a minimum a second person who double-checks the paperwork.  None of those people were identified to the State.  That's what Cory Klebs was doing.  So Fleet Farm should investigate that as well.

And, finally, Your Honor, the State seeks discovery into discovery.  That is warranted here.  It is still not

clear.  I have read Fleet Farm's emails and letters multiple times.  I have read and re-read the declarations that were submitted by Fleet -- by Mike Radl and by Fleet Farm's counsel.  It's not clear to me that what -- why this document was not produced.  In fact, Fleet Farm says --

THE COURT:  Let me interrupt with a question.  As to the first batch of discovery that you were talking about, that's discovery that was served and that you're now seeking to compel?

MS. MOERKE:  Yes.

THE COURT:  As to the discovery you're talking about now, it's not clear to me if any discovery has yet been propounded.  In other words, is there anything to compel?

MS. MOERKE:  No, Your Honor, it has not.

THE COURT:  I wanted to get that clear.

MS. MOERKE:  Yep.  That's exactly right, Your Honor.  And I know our motion is entitled, you know, first, the motion to modify; second, the motion to compel.  What we've been talking about so far is mostly discovery to compel.  It was requested a year ago.  It wasn't provided.

What we are also asking the Court to do is to allow this -- this small modification to allow us to propound limited discovery on discovery.  We're prepared to do so within 48 hours of the Court ruling and to ask Fleet Farm to

respond on an expedited basis to that, say two weeks, so there's no -- no delay in other court case deadlines. But we would need permission from the Court to propound that discovery. If we had propounded it already, Your Honor, it would have violated the original scheduling order and then the amended scheduling order. So that's why we seek permission before propounding it.

Because Fleet Farm says in its brief, it says there was an unknown technological issue that Fleet Farm confirmed was an isolated incident. And I really don't know how you can confirm that an unknown issue is isolated.

I also -- in reading these declarations, it's really not clear to me that this -- and this document, this Blaine store incident report with the journal notes from February 2022 was ever collected and transmitted to counsel. Mr. Radl's declaration says that the only ways to search this database are with a name or an incident number. He plainly only searched for the name the first time around.

Then when the State reviewed the ATF documents and saw that ATF had produced Fleet Farm documents, we pointed this out to the State -- I mean -- excuse me -- to Fleet Farm. Of course, that's all how this all came to light. And it was then that there was an incident number that Mr. Radl could search. And if you look at the State's Exhibit 1, it's this -- it's on the front page. It hasn't

been redacted.  It's -- it's Store Case No. 2021-3100-ASST-40.

Within the last month when this all developed, it's -- it certainly appears possible, if not likely, that that is how Mr. Radl found this detailed incident report with the journal notes is by searching not just by Horton's name but with this store case number.  We don't know if there were other incident reports like this as important as this that came out of other stores.  We simply don't know.

THE COURT:  Okay.

MS. MOERKE:  Your Honor, I would like to save some time for rebuttal, if I can, ask to --

THE COURT:  Sure.

MS. MOERKE:  -- grant the State's motion.  And thank you, Your Honor.

THE COURT:  You're welcome.

Mr. Davis, is it you or Mr. Wright?

MR. DAVIS:  I will speak.  Thank you, Your Honor.  Good afternoon.

THE COURT:  Good afternoon.

MR. DAVIS:  The State seeks to reopen discovery based on the production of a single document made some seven weeks before the end of the discovery period.

THE COURT:  It was -- it was quite a document, though, wasn't it?

MR. DAVIS:  Well, Your Honor, I won't speak to the specifics of it.

THE COURT:  No.

MR. DAVIS:  I will say our view is that, first of all, there's an entirely innocuous explanation for the late production of this document, which is set forth in detail in declarations.

THE COURT:  But with respect, Mr. Davis, it actually isn't.  It describes an unknown technological flaw.  It describes that it was -- or that corrective action was taken promptly, for which I commend you, but there really isn't a lot of detail about what happened.  I'm not sure that I actually need a lot of detail about what happened.

I don't think it will change the decision to say that I take it on faith that it was a perfectly innocent mistake.  These things happen.  But I don't know that I can agree with you that there's a -- there's certainly a lot of ink devoted to it, I'm not sure there's a great deal of -- it's low-grade ore.  There's a lot there, and you've got to refine it to get to what's left.

MR. DAVIS:  I'm happy to answer any questions that you have about that process.

THE COURT:  I actually don't have any questions because I don't -- at least based on what I know now, I don't think that's terribly important.  I think what's

important is this happened, this document came to light, and where do we go from here.

MR. DAVIS:  Sure, Your Honor.  We can start from that place.  You know, specifically, based on the document that was produced that we're here to talk about, the State's motion seeks new discovery into Fleet Farm's documents related to its sales to Jerome Horton, it seeks to reopen the deposition of Michelle Granato, and it seeks intrusive discovery on discovery.

And our position is that none of that is warranted here.  First, with respect to just reopening discovery, Fleet Farm has complied fully with all of its discovery obligations in this case.  Fleet Farm has conducted an exhaustive collection of both electronic and paper documents based upon -- based on agreed-upon custodians using agreed-upon search terms.

THE COURT:  Well, here I do need to ask.  I mean, the State was just saying that there actually wasn't an agreement on custodians, there wasn't an agreement on search terms; that they served document requests and left it to you to figure out how to comply with them.  You're now telling me that this was the subject of negotiated agreement.

MR. DAVIS:  It was, Your Honor.  And we've included the -- the relevant correspondence as attachments to my exhibit.  There was extensive back-and-forth

negotiation about search terms, negotiation about which custodians to include.  They came back several times with new search terms.  We took those into account.  Some of them we ended up rejecting.  Many of them we accepted.  Same with custodians.  They came back with additional custodians.  We accepted those custodians and proceeded accordingly.

From the very beginning of this case, consistent with the Court's ESI protocol, we sought to engage the Attorney General in a process, an iterative process, to make sure that we were responsive to the discovery that they were propounding on us and that our search efforts were consistent with their expectations and consistent with the propounded discovery.

Fleet Farm has produced approximately 16,000 documents totaling some 80,000 pages.  This has necessarily included all documents related to straw purchases made by Jerome Horton and Sarah Elwood.  It's included all of the Fleet Farm's store incident reports.  It's also included Fleet Farm's A&D logs, as you have ordered us to produce pursuant to the last time in March when we were before the Court.

So the only possible new discovery at this point would relate to discovery related to Cory Klebs, a former operations manager at the Blaine store, during the summer of 2021.  The State has had ample opportunity to request Cory

Klebs as a custodian.  They were aware of Mr. Klebs as of December of 2023.  Mr. Klebs --

THE COURT:  Well, I don't doubt they were, quote, aware of Mr. Klebs, but there's awareness of Mr. Klebs that he exists, There's awareness of Mr. Klebs that he's an operations manager, and then there's awareness of Mr. Klebs, that he participated in a sale at the end of July of 2021 to Jerome Horton.  And what Ms. Moerke is telling me is that that last level of awareness they did not have because they were not told.

MR. DAVIS:  Well, Your Honor, the -- if you look at the exhibit, Exhibit A, which is attached to my declaration, it is one of the emails we pointed to in the brief which does include Cory Klebs' email correspondence with Derrick Hoernke and a number of other Fleet Farm employees.

I will concede that email does not show Cory Klebs necessarily involved in the 7/31 transaction, but it makes clear that he was involved from the very beginning with the ATF investigation as to each sale to Jerome Horton during -- during that time period when he was the operations manager at Blaine.

THE COURT:  And?

MR. DAVIS:  So at the time when we were negotiating search terms with the State, the State's theory

of the case was much broader than the theory of the case it is now presenting to the Court.  They were concerned with Fleet Farm policies and procedures related to firearm sales at large in the state of Minnesota.  For that reason, Fleet Farm focused its efforts in terms of identifying custodians on those individuals who were at the policy level with respect to Fleet Farm firearm sales.

Fleet Farm did identify those individuals who were at the point of contact with -- with Jerome Horton or Sarah Elwood at the time of the sale.  Those individuals were identified.  For the most part, those individuals were not proposed to be custodians by the State of Minnesota.  And so -- and we made that clear to the State.  We made it clear that our position with respect to custodians was really related to those individuals who had a management-level decision-making capability with respect to Fleet Farm policies and procedures related to firearm sales.

And so that is the direction we went.  Those are of the custodians we identified.  Mr. Klebs was not included within that list.  They didn't request that he be included, and we didn't -- we did not see, at least based on the information we had, that it was appropriate to include Mr. Klebs.

THE COURT:  All right.  Anything else?

MR. DAVIS:  The State has had the opportunity to

depose several witnesses about the document in question. They have now noticed the deposition of Mr. Klebs for Monday; so they will have an opportunity to ask Mr. Klebs about the document in question.  So they will have an opportunity, and they have had an opportunity to ask numerous Fleet Farm witnesses about this particular transaction on July 31st of 2021.

On the issue of -- of Michelle Granato, reopening Michelle Granato's deposition, there's no basis for reopening Ms. Granato's deposition.  The State took that deposition on June 19th, electing to do so more than six weeks before the then-existing fact discovery deadline. Ms. Granato was asked about Cory Klebs during that deposition.  She --

THE COURT:  Well, let's cut to the chase here. Was this document that we mustn't talk about shown to Ms. Granato during that deposition?

MR. DAVIS:  It was not.

THE COURT:  Okay.  And Ms. Granato's deposition was taken on the 19th of June, and that was six weeks before the fact discovery deadline.  But this document wouldn't have been discovered even by that, would it?

MR. DAVIS:  It would not.

THE COURT:  Okay.

MR. DAVIS:  However, she was questioned

extensively about the transaction in question, the 7/31/21 transaction involving Jerome Horton.

THE COURT: Well, I'm sure she was, but she wasn't shown this document. This -- she wasn't shown this document and asked if it jogged her memory, if it brought up any associations, if it reminded her of anything. But none of that was done, was it? Because it couldn't have been done.

MR. DAVIS: Well, that -- yes, Your Honor, that is correct because that document had not been produced. She was not asked about the document.

She was, however, asked about the transaction. That transaction, in fact, shows up in Fleet Farm training documents later in 2021. Excerpts of the Form 3310 that come from that particular transaction were used in training documents that Fleet Farm used with all store employees who were involved in firearm sales.

And each -- each witness that has been deposed in this case has been questioned extensively about those precise transactions and whether those transactions gave rise to any suspicions on the part of those individuals who were either involved at the point of sale or were involved in training employees on those particular issues.

THE COURT: Let me make sure I understand. What exactly is being included -- or was included in Fleet Farm training documents? Was it information about this

transaction, or was it this very document?

MR. DAVIS:  Not this very document.

THE COURT:  All right.

MR. DAVIS:  No dispute there.  Extensive questions about this transaction, extensive questions about the number of firearms involved in this transaction.  Extensive questions about whether the number of firearms sold or the dates in which those firearms sold reflected in 3310s would have given rise to suspicion on the part of individuals involved in those sales or individuals involved in headquarters who were maybe reviewing those -- those issues.

So while the document, conceivably, was not part of that deposition, hasn't been part of any deposition except for the last few, the content of the document has been examined extensively by each Fleet Farm witness who's been deposed in this case so far.

Ms. Granato was asked if she could recall anything about Cory Klebs.  She didn't remember Cory Klebs.  And so, you know, I don't think that this document is going to change that testimony.  She was presented with, several times, questions about whether she was aware of Mr. Klebs.  She said she did not -- she was not.  So in our view, a second deposition of Ms. Granato would be -- would be duplicative.

Again, the State has already noticed the deposition

of Cory Klebs for Monday.  So the State will have an opportunity to ask whatever questions it wants about this document.  At a minimum, if the Court is inclined to order Michelle Granato to sit for a second deposition, it should order that that deposition should be limited to questions specifically related to this document; that it not exceed 60 minutes in length; and that it take place in Appleton, Wisconsin.

With respect to discovery on discovery, Your Honor, again, we believe we have sufficiently and exhaustively explained the circumstances for a late production, albeit still within the timeline of the Court's discovery schedule. We don't believe that discovery on discovery is warranted here.  It will be -- it will likely cause delay.  We are approaching the very end of discovery in this case.

Again, we have explained, to the extent that we can, in the briefing and in declarations our understanding of what transpired here to -- to result in a production of this document late in the discovery schedule.

THE COURT:  Well, when you use that phrase "to the extent that we can," what does that mean?  Does that mean there are things you don't know, or does that mean there are things you know but they're confidential so you're not going to talk about them?  I mean, if I was just to ask you point-blank what technological glitch, would you decline to

answer because it hasn't -- it's not known what the precise technological glitch was or would you decline to answer because you know it but it's confidential between you and your client?

MR. DAVIS:  It is not confidential.  I would have to speculate because what we have in the declarations is Mike Radl confident that all responsive documents were identified, collected, and then loaded into an FTP site, which is the process we used for certain hard-copy documents.  Some small portion of those documents for an unknown technological reason did not end up within Stinson's FTP, you know, receptive portion of that site.

So if I were to speculate, something -- some technological issue happened from loading those documents and us receiving those documents.  And if you look at the 21 documents -- there were 21 of them -- that were -- this unknown technological reason didn't make it to us, there is, of course, this document, but there are a number of other documents.  There are other incident reports.  There are 4473s.  There's some email correspondence.

So the suggestion that there was something untoward about not disclosing this particular document simply doesn't -- doesn't hold up.  Within the context of the 21 documents, it was clear there was some technological error.  Again, I'm not sure we can get to the bottom of it other

than speculating as to what may have happened between Mr. Radl loading those documents into an FTP site and then a very small number of those documents not making it to Stinson.

THE COURT:  All right.  Anything else?

MR. DAVIS:  Nothing further.  Your Honor, we feel there's no basis to compel discovery, and we would urge the Court to deny the motion.

THE COURT:  Thank you.

Ms. Moerke, you can have some rebuttal.  Of course, it's got to be limited to what Mr. Davis said, in responding to it.

MS. MOERKE:  Yes, Your Honor.  Thank you.

To address the most recent thing Mr. Davis said first, we don't know whether Mr. Radl loaded these documents in the first place.  We don't know.  We don't know if it was a tech issue or anything else.

I'm glad Mr. Davis mentioned that Cory Klebs' deposition is scheduled for Monday.  The State is prepared to go forward, if needed, on Monday, Your Honor.  But given the timing, would ask if the Court does -- does order that Fleet Farm is compelled to provide responsive discovery that would include Klebs' responsive documents, that we be permitted to reschedule that deposition at a time when we have time to review those documents.

Fleet Farm, again, insists there was an agreement on custodians and pointed to its exhibit. It's -- Fleet Farm's Exhibit ECF 147-4 shows the opposite. AGO counsel says the State is not insisting on additional custodians or ESI sources for the time being but reserves the right to do so in the future.

THE COURT: But that leaves open the possibility of the body of custodians that had been identified had been agreed to. In other words, what you just quoted me says we don't need any more. Any more than what? And the "what" could be an agreed-upon universe of custodians.

MS. MOERKE: Understood, Your Honor, and that's a fair point. There's also no evidence we ever agreed. We never had any agreement, no requirement to agree.

THE COURT: Well, as the lawyer on the case, do you know whether there was an agreement?

MS. MOERKE: I do know, Your Honor. There was no agreement. Absolutely not.

THE COURT: Okay.

MS. MOERKE: Never an agreement. In fact, we said we don't know. And -- and not only was there no agreement, Fleet Farm continued to tell us -- right? -- in that very exhibit I quoted before and even just now in their argument that Fleet Farm has complied; we've identified all relevant custodians.

And, you know, Fleet Farm has devoted a little bit of its theme to saying the State's allegations have changed. But I want to tell you what has not changed, Your Honor. I don't think our allegations have changed. And at the core of our allegations from the very beginning was the allegation that Fleet Farm knew or should have known it was selling to these straw buyers.

In fact, in the court order denying Fleet Farm's motion to dismiss the complaint, the order said that one of the core issues for discovery is whether Fleet Farm had reason to know that Horton and Elwood were straw buyers. And that's now what we've discovered evidence of.

Ms. Granato was not questioned extensively about Cory Klebs. I found the relevant piece of that deposition. It's short. The state attorney asked, "Do you know who Cory Klebs is?" Ms. Granato said, "No, I don't. His name was on an email about something else entirely," and we asked that.

The content -- I think this is plainly obvious, but I have to respond to it. The content of the document at issue has not been examined. There was no way that we could have done that given the passage -- given the way time works, Your Honor. And finally --

THE COURT: Has this document been used in other depositions?

MS. MOERKE: It has been used in the last two.

Certainly, one of the last two, Your Honor, and I think two of them.

THE COURT: All right.

MS. MOERKE: Yep. As soon as we had it, we used it.

And, finally, Your Honor, we are not -- I don't think have accused Fleet Farm of deliberate wrongdoing, nor are we demanding perfection. But Fleet Farm has not been diligent, and now that's clear. Now we know that, and the answer is not nothing.

Thank you, Your Honor.

THE COURT: Thank you. All right. We're going to take a short break. Just stay where you are. I'll be back as soon as I can.

(Recess taken from 4:09 p.m. to 4:12 p.m.)

THE COURT: All right. I understand, of course, that we have some timing issues here, and so I wanted to rule from the bench, if I possibly could. And I can, and so I'm going to. There will not be a written order forthcoming on this. There is a transcript being made, and the transcript of what I am about to say will be the order of the Court for any purposes, including asking for further review from the district judge.

I want to start off by making clear that I am not -- I don't see any evidence that anything malicious or

underhanded was done.  I don't see any nefarious motives.  If such evidence comes to light down the road, that will be further down the road.  But I do want to make clear I meant what I said during the hearing itself, which is that this situation has developed and where do we go from here.

And it might well have developed through nobody's fault or through somebody's fault, but not malice.  But I want to deal with the situation and not go about assigning blame or talking about people's attitudes or lack of attitudes.

There is a document that has recently been discovered by Fleet Farm and that has been turned over to the State.  I have read the document.  The document is under seal.  I will not talk much about the document.  It deals with a July 31st sale of handguns, plural, to Jerome Horton by a Fleet Farm store in Blaine.

The document is, in my opinion, an important one; and, therefore, there are going to have to be some changes to this case's schedule and some orders issued.  And here they are:

First of all, let's talk about existing requests for discovery made by the State, which they now seek to compel.  Fleet Farm shall produce the following discovery -- I find that this discovery, especially now, is relevant.  It is proportional.  It is responsive to previously served

discovery requests.

Number one, all documents from Cory Klebs' email, electronic files, and physical files related to Jerome Horton.

Two, all emails from Michelle Granato's email box about the July 31, 2021, sales to Jerome Horton if those documents would not have been electronically captured by only searching for the term Horton.  So, for example, incident report numbers, other search terms.

Three, all -- stress all -- Fleet Farm store incident reports related to Jerome Horton.

Four, all hard-copy documents related to Jerome Horton, including receipts for sales of firearms and firearms accessories by Fleet Farm to Jerome Horton.

Five, all relevant and responsive documents regarding Horton in any backup repositories for email boxes of the following:  Michelle Granato, Mike Radl, and Cory Klebs, if such backup repositories actually exist.

Six, all emails of any Fleet Farm employee regarding Cory Klebs' concerns about Jerome Horton that are the subject of the detailed incident report.

And unless it has been mooted by Fleet Farm's recent supplementation, Fleet Farm will amend its answers to State's Interrogatories 2, 6, and 9 to the extent that that is required by this recent discovery.

And, Mr. Davis, I will give Fleet Farm two weeks from today to produce this material.

Let's transition then to what we're referring to as discovery upon discovery.  As we pointed out during the hearing itself, there has been no discovery propounded and there is, therefore, nothing to compel at this point.  Therefore, I am not at this point compelling Fleet Farm to produce so-called discovery on discovery.

However, the State of Minnesota was diligent in attempting to meet the fact discovery deadline.  The State has described in its motion papers some limited discovery requests that it would like to serve but cannot because of timing; and, therefore, I will extend the fact discovery deadline in this case for the limited purpose of serving that discovery through and including September 30th, 2024.

And then lastly, yes, the deposition of Michelle Granato will be reopened.  That will take place on or before September 6th of 2024.  It will be limited to one hour.  It will be to allow her -- or to be questioned about FF_0075711 and Cory Klebs and related circumstances.  I didn't get a reaction from the State concerning taking that deposition in Appleton, Wisconsin.

Ms. Moerke, any objection to doing that?

MS. MOERKE:  We do not object, Your Honor.

THE COURT:  Very well.  The -- the reopened

deposition of Ms. Granato will take place at a suitable location in Appleton, Wisconsin, on or before September 6, 2024.  That is, I believe, all that I need to say.

Ms. Moerke, is there any requests for clarification, or is all of this clear?

MS. MOERKE:  Perhaps two things, Your Honor.  Should I approach the podium, or can you hear me?

THE COURT:  Well, I can hear you, but you need to speak into a microphone for the recording equipment.  That's the thing.

MS. MOERKE:  Your Honor, thank you for the specificity.  I want to clarify.  For the existing discovery, you said that Fleet Farm needs to produce all emails -- Fleet Farm employee emails regarding -- I think this was number six -- regarding Klebs' concerns about Horton.  I just want to clarify that should include emails that may not be assigned to a specific individual, but may be from a scanner or from a group email of the sporting goods counter?

THE COURT:  Can you explain that distinction a little more.  I'm not --

MS. MOERKE:  Yeah.  Our understanding from discovery is that there were group emails used.  We --

THE COURT:  So they don't originate with any person?  I mean --

MS. MOERKE:  Exactly.

THE COURT:  I can send an email to all magistrate judges, District of Minnesota, but it is an email coming from me and I'm identified as the sender.

MS. MOERKE:  Yes.  Here it's that we know that sporting goods employees had to check an address that was the sporting goods counter, and I believe they could reply from that address as well.  So it was a group email for the sporting goods counter.

And the other thing that I think probably exists -- but I don't know -- in my own experience, you can scan documents in the workplace and then they -- they are sent from an email address that is linked to the scanner.  And so here my guess is that when someone spoke about e-scanning a document, that likely meant feeding a hard-copy document into a scanner where the -- where the sender -- the email account would be linked to the scanner.  I'm sorry.

THE COURT:  I want to hear from Mr. Davis about this one.

MS. MOERKE:  Okay.

THE COURT:  What's the second thing you have?

MS. MOERKE:  Let me see.  I think when you talked about all documents regarding Horton and receipts, we wanted to make sure it included ammunition.

THE COURT:  Well, it says firearms accessories.

MS. MOERKE: Perfect. I think that's it, Your Honor. Thank you.

THE COURT: All right. Mr. Davis, come on up. I mean, I'm familiar with the concept -- well, we all are, actually, because we practice in federal court and there's such a thing as CM/ECF, and it's not a person. There's a person behind the screen, but it's not an identifiable court employee. So what Ms. Moerke is describing is familiar to me.

Does this track with your understanding of how Fleet Farm does things as well, this sporting goods group email?

MR. DAVIS: If I'm understanding Ms. Moerke's question, I think she's looking to confirm that the process we go through now would capture communications from -- that are referenced in the document at issue here today from Cory Klebs to Michelle Granato. Because there was a mention of an e-scan, which if you just heard that, you would think, well, maybe someone went to the scanner and scanned it and it was sent electronically from a generic, you know, email that's associated with the scanner or a printer as opposed to an individual.

THE COURT: Exactly.

MR. DAVIS: I can represent to the Court based on documents that I've seen that I don't think it's going to be

necessary to go through that process based on the way in which a transmission did occur.  I'm confident that we can capture the transmission that Ms. Moerke is talking about without having to --

THE COURT:  Okay.  Well --

MR. DAVIS:  -- go -- sorry to interrupt.

THE COURT:  No, no.  I just -- I think you are -- I don't think you and I are tracking exactly.  My order was all emails of any Fleet Farm employee regarding Cory Klebs' concerns about Jerome Horton that are reflected in the detailed incident report.

And I think that what Ms. Moerke is saying is let's not allow the word employee to become a limitation if there are emails that are not attributable to a specific employee but are something like a group email.  Like -- oh, I don't know -- deltareservations.com, you know, that is not -- there is -- there are people who work on that.  It's their whole job to work on that, but you wouldn't say that belongs to Joe Smith.  Do you see what I'm saying?

MR. DAVIS:  I do.

THE COURT:  Okay.  So here's what I'm going to do. I'm just -- and if this becomes unnecessary, it becomes unnecessary.  But just to make sure we capture this, all Fleet Farm emails regarding Cory Klebs' concerns about Jerome Horton, et cetera.  Okay?

MR. DAVIS:  So just to clarify, when we're talking about all Fleet Farm emails --

THE COURT:  Yes.

MR. DAVIS:  -- so we do have a universe of document custodians right now.

THE COURT:  Yep.

MR. DAVIS:  And --

THE COURT:  And you're going to go beyond those, and you are going to look for emails -- any Fleet Farm emails regarding what Cory Klebs said in that detailed incident report.  So if somebody in Farmington -- I don't even know if you've got a store in Farmington -- says I saw this detailed incident report that Cory Klebs wrote and it made me think of X, Y, Z, then over it goes.  And that might mean you'll need to do searches on the email servers as a whole for an incident report or a name.

MR. DAVIS:  Yeah.  And I will -- I understand -- I understand Your Honor's order.

THE COURT:  Okay.

MR. DAVIS:  What I'm not prepared to discuss at this point -- because I would want to consult with my ESI team -- is just the capability to search on every --

THE COURT:  That's fine.

MR. DAVIS:  -- Fleet Farm employee email account for an email like this.

THE COURT:  Right.  Well, you might not -- I mean, I don't know what the search protocols are either.  Obviously, people who are likely to be concerned about this, like, you know, firearms people, and there are people who are not.  I mean, I'd be very surprised if this was found in the fly fishing section in Duluth, just to, you know, say it that way.

But you do what you need to do.  And if it is extraordinarily onerous, get back to me.  We'll see what can be done.  But, you know, obviously, this -- I mean, look, this is not a good situation, and it's -- I'm determined to get it fixed.  And I understand, you know, you're the messenger.  This isn't personal.  But things are going to have to be done to get things right.

MR. DAVIS:  Understood.

THE COURT:  Okay.  Anything else?

MR. DAVIS:  Nothing from me.

THE COURT:  Okay.  Ms. Moerke?

MS. MOERKE:  Pardon me, Your Honor, but I think this is important.  You have ordered that Fleet Farm produce additional discovery within two weeks?

THE COURT:  Yes.

MS. MOERKE:  May the State take the Klebs deposition and the Granato deposition after that discovery has been produced so that we may use additional relevant

documents related to this new document?

THE COURT: In principle, yes. I suspect that Mr. Davis is going to get back and say that two weeks is -- it can't be done in two weeks; that some of it can and some of it can't. And then we'll have to work it out, but I'm hoping we can work that out with phone conferences and not with formal motions, but we'll see what happens.

MS. MOERKE: And, Your Honor, we'll be very happy to do that. Does that mean, then, we do not need to depose Granato before September 6th if we do not have all the documents?

THE COURT: If you've got the documents, I mean, yes, I want to stick to these deadlines. If you're ready to go on September 6th because you've got the documents in time, fine. If you don't have the documents or you've got the documents late at night on September 5th, no.

MS. MOERKE: Thank you, Your Honor.

THE COURT: And you don't need to depose Klebs on Monday.

MS. MOERKE: Thank you.

THE COURT: You can -- all right. So is that canceled? Because I'd like Mr. Davis to hear if it is.

MS. MOERKE: Yes, Your Honor, we would like to depose Klebs after the additional documents are produced.

THE COURT: Very well. The Klebs deposition for

Monday is off the calendar.

All right.  Anything else from anybody?  Okay.
Thanks very much.  Court is adjourned.

(Proceedings were concluded at 4:29 p.m.)

CERTIFICATE OF COURT REPORTER

I, Nancy J. Meyer, Registered Diplomate Reporter, Certified Realtime Reporter, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenograph notes and is a full, true, and complete transcript of the proceedings to the best of my ability.

Dated this 22nd day of August, 2024.


/s/ *Nancy J. Meyer*
Nancy J. Meyer
Official Court Reporter
Registered Diplomate Reporter
Certified Realtime Reporter