## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota by its Attorney General, Keith Ellison,<br><br>    Plaintiff,<br><br>  v.<br><br>Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC,<br><br>    Defendants. | Case No.: 0:22-cv-02694-JRT-JFD<br><br>**DECLARATION OF ANDREW GRAHAM IN SUPPORT OF FLEET FARM'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF JOSEPH BISBEE** |

I, Andrew Graham, state that the following are true and correct factual statements of which I have personal knowledge:

1.    I am the Chief Executive Officer and Founder of Graham Industry Advisors, which specializes in advising Federal Firearm Licensees ("FFLs") on business operations, business infrastructure, and regulatory compliance matters.

2.    Prior to founding Graham Industry Advisors, I spent approximately 35 years serving in various roles within the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), including Deputy Assistant Director of Enforcement Program Services (May 2020 – December 2022); Deputy Assistant Director of Industry Operations – Regulatory Enforcement (October 2014 – May 2020); Director of Industry Operations, Denver Field Division (October 2006 – October 2014); Acting Director of Industry Operations, Phoenix Field Division (July – October 2006); Area Supervisor Denver Office, Phoenix Field Division (May 2004 – October 2007); Training Manager and Program Manager, Federal

Law Enforcement Training Center (February 2000 – May 2004); and Industry Operations Investigator, Nashville Field Office (July 1987 – January 2000).

3.    I have been engaged by Defendants Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC (together, "Fleet Farm") to provide expert testimony in the above-captioned matter.

4.    I submit this declaration in support of Fleet Farm's Motion to Exclude Certain Testimony of Joseph Bisbee.

5.    ATF's organizational structure has evolved over time, but since at least 1986, a clear demarcation has been drawn between ATF's Criminal Enforcement Directorate and its Regulatory Enforcement Directorate (also known as the Industry Operations Directorate). Federal criminal investigators or special agents are classified by the Office of Personnel Management (OPM) under GS-1811 series, under Criminal Enforcement, while Inspection Investigation Enforcement and compliance personnel are classified by OPM under series GS-1801, assigned under ATF Regulatory Enforcement.

6.    Historically, ATF was run by its Director and Deputy Director, with eight separate Directorates reporting to the Deputy Director:  Office of Public and Governmental Affairs; Office of Strategic Intelligence and Information; Office of Science and Technology; Office of Management; Office of Enforcement Programs and Services; Office of Field Operations; Office of Human Resources and Professional Development; and Office of Professional Responsibility and Security Operations.  This is reflected in the October 17, 2005 organizational chart available on the Department of Justice's website, attached as **Exhibit 1**, and in the May 16, 2013 organizational chart available on ATF's

website, attached as **Exhibit 2**. A similar structure is also reflected in the February 18, 2022 organizational chart available on the Department of Justice's website, attached as **Exhibit 3**.[1]

7.    ATF's Criminal Enforcement Directorate and its Industry Operations Directorate are contained within the Office of Field Operations, which houses all twenty-five of ATF's Field Divisions that report to an Assistant Director.

8.    Within each Field Division, the Criminal Enforcement directorate and Industry Operations directorate are distinct and apart, with separate chains of command leading up to the Special Agent in Charge ("SAC"), who oversees the entire field division.

9.    The Criminal Enforcement division consists of at least one Assistant Special Agent in Charge ("ASAC") (in some divisions, there are multiple ASACs in the Criminal Enforcement unit), and a Group Supervisor ("GS"), also known as a Resident Agent-in-Charge ("RAC"). Special agents report to the GS/RAC, who in turn report to the ASAC(s), who in turn reports to the Field Division SAC.

10.    A special agent's primary responsibilities include working with local, state, and other federal agencies to investigate suspected criminal activities, including serving warrants and enforcing the criminal provisions of the Gun Control Act ("GCA"), such as those provisions prohibiting certain categories of persons from possessing firearms.

---

[1] These charts are available online at the following links:

- https://www.justice.gov/archive/jmd/mps/2012/manual/orgcharts/atf.pdf (Oct. 17, 2005 chart)
- https://www.atf.gov/file/147966/download  (May 16, 2013 chart)
- https://www.justice.gov/file/1290726/dl?inline (February 18, 2022 chart)

Special agents do not have any job responsibilities relating to conducting compliance inspections of federal firearm licensees ("FFLs"), and do not otherwise have any involvement in enforcing or training FFLs regarding their compliance obligations under federal regulations and ATF guidelines, including their obligations relating to monitoring for or preventing straw purchases.  Per ATF's website, special agents have the following responsibilities: (1) "Investigation of criminal acts relating to arson, alcohol, explosives, firearms and tobacco"; (2) "Witness interrogation as part of criminal investigations"; (3) "Evidence collection, analysis and documentation"; (4) "Search warrant execution"; (5) "Participation in interagency task forces"; (6) "Undercover operations"; (7) "Crime scene management"; (8) "Basic firearms competencies"; (9) "Firearms and ammunition identification"; (10) "Firearms and tactical training"; and (11) "Close-quarters defensive countermeasures."  A true and correct copy of ATF's description of special agents' responsibilities is attached as **Exhibit 4** (https://www.atf.gov/careers/becoming-special-agent).

11.    A group supervisor, also known as a Resident Agent in Charge, has supervisory authority over special agents within a particular Field Division and is assigned specific areas of responsibilities to manage (e.g., arson & explosives, gang firearm trafficking etc.).  Neither Group supervisors nor special agents assigned to criminal enforcement offices have any job responsibilities relating to conducting compliance inspections of FFLs, and do not otherwise have any involvement in enforcing or training FFLs regarding their compliance obligations under federal law, including obligations relating to monitoring for or preventing straw purchases.

- 4 -

12.    Separately, the Industry Operations Field Offices in each Field Division are led by a Director of Industry Operations ("DIO") and Area Supervisor(s) ("AS"). Industry operations investigators ("IOIs") report to the AS, who in turn reports to the DIO, who in turn reports to the Field Division SAC.

13.    An IOI supports ATF's industry operations, and the regulatory side of the ATF mission by, among other things, conducting regulatory compliance inspections of FFLs to identify violations of federal and state laws and regulations regarding firearm sales, inspecting FFL records and inventories, examining FFLs' GCA records to uncover evidence of trafficking or other illicit activity, and working with FFLs to help them understand and comply with their obligations under federal statutes and regulations, and to improve the safety and security of their premises and procedures relating to firearm sales, including best practices for monitoring for and preventing straw purchases and other illicit activity.

14.    A DIO has oversight of the FFLs that fall within the particular Field Division's jurisdiction and reports to the Field Division SAC on all FFL regulatory operation matters that occur within the division. This includes the results of all regulatory on-site inspections, resulting in warning letters, warning conferences, and license revocation activity.

15.    Mr. Bisbee's report indicates that he held four positions during his time at ATF: special agent, project officer, assistant country attaché, and group supervisor.

16.    As described above, the special agent and group supervisor positions fall within the Criminal Enforcement directorate and are occupied by special agents of an ATF Field Division, focused on the law enforcement duties identified above.

17.    A project officer typically works out of ATF headquarters in Washington, DC, or remotely while being assigned to a headquarters directorate and is charged with developing special projects that may support field-level law-enforcement or the other ATF offices described in paragraph 6, above (e.g., the Office of Strategic Intelligence and Information or the Office of Management, Field Operations Field Management Staff).  By way of example, a project officer may be tasked with analyzing firearm trace data to enhance law enforcement initiatives by identifying trafficking patterns and prohibited possessors; tasked to evaluate mission expenses and year-over-year budgets; tasked to evaluate and improve ATF's ballistic and weapon program for agents; or overseeing acquisitions of or purchase orders for equipment used by ATF special agents and investigators.   In the ordinary course, a project officer has no connection with or responsibility for FFL licensing, regulatory enforcement, operating standards, or training associated with ATF's Industry Operations' regulatory enforcement role.

18.    An assistant country attaché serves as the liaison between the ATF and a designated country, operating as a spokesperson for ATF, assisting the country's law enforcement lead agency to develop criminal enforcement strategies, understanding the value of firearm trace data, and disrupting the illegal flow of firearms in and out of the country, among other things. This liaison position establishes a pathway for providing the country with ATF resources and law enforcement training.

This declaration is made pursuant to 28 U.S.C. § 1746, and I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 1st, 2025, in  HAYMARKET , Virginia.

Andrew Graham

- 7 -