# EXHIBIT B

Exhibit 1

**Expert Report of Gary Kleck**

*State of Minnesota v. Fleet Farm LLC, et al.*, **Case No. 0:22-cv-02694-JRT-JFD**

**Personal Background and Qualifications**

1.     I am Dr. Gary Kleck, Emeritus Professor of Criminology & Criminal Justice at Florida State University. This report sets forth my qualifications, opinions, and scholarly foundation for those opinions.

**Background & Qualifications**

2.     I am an emeritus Professor of Criminology and Criminal Justice at Florida State University. I received my doctorate in Sociology from the University of Illinois in 1979, where I received the University of Illinois Foundation Fellowship in Sociology. I was, at the time of my retirement in May 2016, the David J. Bordua Professor of Criminology at Florida State University, where I served on the faculty from 1978 to 2016. My research has focused on the impact of firearms and gun control on violence, and I have been called "the dominant social scientist in the field of guns and crime." (William J. Vizzard, Shots in the Dark: The Policy, Politics, and Symbolism of Gun Control, 2003, p. 183).

3.     I have published the most comprehensive reviews of evidence concerning guns and violence in the scholarly literature, which informs and serves as part of the basis of my opinions. I am the author of Point Blank: Guns and Violence in America, which won the 1993 Michael J. Hindelang Award of the American Society of Criminology, awarded to the book of the previous several years which "made the most outstanding contribution to criminology." I also authored Targeting Guns (1997) and, with Don B. Kates, Jr., The Great American Gun Debate (1997) and Armed (2001) - books that likewise addressed the topic of guns and violence.

4.     I have also published scholarly research articles in virtually all the leading professional journals in my field. Specifically, my articles have been published in the American Sociological Review, American Journal of Sociology, Social Forces, Social Problems, Criminology, Journal of Criminal Law and Criminology, Law & Society Review, Journal of Research in Crime and Delinquency, Journal of Quantitative Criminology, Law & Contemporary Problems, Law and Human Behavior, Law & Policy Quarterly, Violence and Victims, Journal of the American Medical Association, and other scholarly journals.

5.     I have testified before Congress and state legislatures on gun control issues and worked as a consultant to the National Research Council, National Academy of Sciences Panel on the Understanding and

2

Prevention of Violence, as a member of the U.S. Sentencing Commission's Drugs-Violence Task Force, and as a member of the Institute of Medicine and National Research Council Committee on Priorities for a Public Health Research Agenda to Reduce the Threat of Firearm-Related Violence. I am a referee for over a dozen professional journals and serve as a grant's consultant to the National Science Foundation.

6. Finally, I have taught doctoral students how to do research and evaluate the quality of research evidence and have taught graduate courses on research design and causal inference, statistical techniques, and survey research methodology.

7. My current curriculum vitae, which includes a full list of my qualifications and publications, is attached hereto as Appendix A.

**Legal Cases in Which I Have Served as an Expert Witness**

8. In the past ten years, I have been deposed and/or testified at trial in the following matters:

*Heller v. District of Columbia, D.D.C.* (deposed July 2, 2013).

*Cook et al. v. Hickenlooper, D. Colo.* (deposed and testified Mar. or April 2013).

*Wilson v. Cook County* (deposed Sept. 16, 2013).

*Kolbe v. O'Malley, D. Md.* (deposed Jan. 2, 2014).

*Barbra Schlifer Commemorative Clinic v. HMQ Canada* ("Crossexamined" [Canadian term for deposed] Feb. 24, 2014).

*Friedman v. City of Highland Park* (deposed May or June 2014).

*Tracy Rifle and Pistol v. Harris, E.D. Cal.* (deposed Nov. 2, 2016).

*Flanagan v. Becerra, U.S. District Court, Central District of California.* Deposed July 25, 2017.

*Worman v. Baker, U.S. District Court for the District of Massachusetts.* Deposed October 25, 2017.

*Duncan v. Becerra, U.S. District Court, Southern District of California.* Deposed January 3, 2018.

*MSI v. Hogan, U.S. District Court, District of Maryland.* Deposed May 18, 2018.

*Association Of New Jersey Rifle & Pistol Clubs, Inc., et al. v. Grewel et al., United States District Court District Of New Jersey.* Deposed 8-2-18. Trial testimony 8-17-18.

*Rupp v. Becerra., U. S. District Court, Central District of California. Deposed 12-12-18.*

3

*NRA v. Swearingen, United States District Court for the Northern District of Florida,* Deposed via Zoom 8-13-20.

*Maryland Shall Issue v. Anne Arundel County. United States District Court for Maryland.* Deposed via Zoom on 9-29-22.

*Oregon Firearms Federation v. Brown. United States District Court for the District of Oregon Portland Division.* Deposed via Zoom 1-27-23.

**Compensation**

9.      I am being compensated for my time in this case at an hourly rate of $500 per hour. My compensation is not contingent on the results of my analysis or the substance of my testimony.

**Summary of Opinions**

1. Straw purchases of handguns from FFLs contribute no more than a negligible share of guns used to commit crimes. There is no reliable and relevant evidence showing that straw purchases are a significant source of guns used to commit crimes.

2. The straw purchases of Jerome Horton and Sarah Elwood cannot be shown to be a significant cause of the alleged increase in gun trafficking or gun crime in Minnesota. Further, there is no evidence that any of the ultimate recipients of these guns could not have obtained guns from other sources or by other means that did not involve straw purchasing.

3. Sales of multiple guns at the same time are not suspect and rarely involve guns later used to commit crimes. Rather, multiple gun sales are routine and commonplace, and guns sold in multiples are no more likely to later be used in crimes than guns sold one at a time.

**Detailed Opinions and Supportive Evidence**

1.      *Straw purchases of handguns from FFLs are at best a negligible source of guns used to commit crimes. There is no reliable and relevant evidence showing that straw purchases provide a significant source of guns used to commit crimes.*

The Plaintiff asserts that straw purchasing is "one of the most prevalent ways that firearms can get into the hands of criminals," even claiming that ATF has identified it as "*the* most common channel for the diversion of firearms into the black market" (State of Minnesota 2024, paragraph 62, emphasis added). Support for this assertion relies entirely on a single source (see their footnote 7), an ATF report titled <u>Following the Gun: Enforcing Federal Laws Against Firearms Traffickers.</u> This report simply does not address the relative prevalence of different modes of criminal gun acquisition, nor was it intended to do so. Instead, it addresses ATF enforcement priorities. It describes – as its title indicates – ATF efforts in enforcing federal gun laws. It reports the share of ATF *investigations* of gun trafficking that somehow involved straw purchasing, and the share of firearms linked with *ATF-investigations* that involved straw purchasing – *not* the share of all guns acquired or used by criminals that somehow involved straw purchasing.

This distinction is critical since it would be perfectly feasible that, for example, 90% of firearms *linked with ATF investigations* had been straw-purchased, even if only 1 or 2% of all guns acquired by criminals involved straw purchasing. ATF does not analyze representative samples of crime guns, or the channels used to move guns from legal sources to criminals. They do not randomly select either crime guns to investigate or do anything else that would ensure that they were analyzing a representative sample of crime guns or the channels through which they move on the way to criminals. ATF publications even include a specific disclaimer stating that their reports do *not* concern representative samples of crime guns (ATF 2021). The text of this disclaimer is worth quoting in full:

> Firearms selected for tracing are not chosen for purposes of determining which types, makes or models of firearms are used for illicit purposes. The firearms selected do not constitute a random sample and should not be considered representative of the larger universe of all firearms used by criminals, or any subset of that universe. Firearms are normally traced to the first retail seller, and *sources reported for firearms traced do not necessarily represent the sources or methods by which firearms in general are acquired for use in crime* (ATF 2021, emphasis added).

ATF investigates potential sources of crime guns partly on the basis of how feasible it is for them to investigate the sources. Some sources of crime guns are more easily discovered than others. For example, ATF would not normally know about firearms stolen in residential burglaries, no matter how common they might

actually be as sources of crime guns (Wright and Rossi 1986, Chapter 10).  Local law enforcement agencies would normally be the agencies responsible for investigating the typical burglary of a private residence, and even those agencies would not normally be able to investigate burglaries that were not reported to the police.  Likewise, if a convicted felon bought a gun from a friend or relative who had not engaged in straw purchasing[1] or done anything else illegal to acquire the gun, the sale might well involve a violation of federal firearms law, but ATF would not normally have any way of knowing about the sale.

In sharp contrast, sales of firearms by FFLs and by sellers at public events like gun shows and flea markets are eminently "discoverable" by ATF.  ATF has comprehensive lists of FFLs and is legally authorized to examine their records of acquisitions and sales and to inventory their stock.  ATF is also informed of each legal multiple gun sale because FFLs are required to file a special form with ATF for each such sale (the ATF Form 3310.4).  Likewise, firearms sold at gun shows and flea markets are highly discoverable by ATF given that these are public, advertised events and any of them could easily be investigated by ATF agents if the agency chose to do so.  As a result, if any straw purchasing went on at gun stores, gun shows or flea markets, such activity would be far more "discoverable" by ATF than thefts from gun owners or single transfers of firearms between friends or family members.

In sum, data on ATF investigations necessarily reflect how "discoverable" potential channels or sources of crime guns are, and consequently cannot be legitimately used to assess the prevalence of a given channel or source of crime guns.  Therefore, there is no legitimate foundation for the Plaintiff's assertion that straw purchasing of guns from FFLs is one of "the most prevalent ways that firearms can get into the hands of criminals."  It is particularly misleading to cite Following the Gun or other ATF descriptions of their investigative activities as if they can reveal anything about the share of all crime guns that reached criminals'

---

[1] This example would not meet the generally understood definition of a straw purchase, which is defined as "an illegal firearm purchase where the actual buyer of the gun, being unable to pass the required federal background check or desiring to not have his or her name associated with the transaction, uses a proxy buyer who can pass the required background check to purchase the firearm for him/her."  See NSSF, Don't Lie for the Other Guy, at
https://www.dontlie.org/faq.cfm#:~:text=A%20straw%20purchase%20is%20an,the%20firearm%20for%20him%2Fher..

possession via a given channel.  The same criticism would apply to more recent ATF reports on their investigative activities (e.g., ATF 2022).

Leaving aside this irrelevant source of information, what share of guns acquired by criminals are known to have been acquired as a result, direct or indirect,[2] of straw purchasing?  Answering this question requires an estimate of the total number of firearms acquired by criminals via *all* channels.  This figure can be estimated by using known numbers of firearms stolen (100% of which go directly to criminals, by definition) and extrapolating this number to the total acquired by criminals by all methods based on estimates (derived from surveys of criminals) of the proportion of guns acquired by criminals by stealing.

The most recent national estimates of the annual volume of firearms thefts come from the National Crime Victimization Survey (NCVS) and pertain to 2014-2018.  These data indicate that there were an average of 249,000 firearms stolen per year, of which about 55% were handguns (Bureau of Justice Statistics 2022, p. 9) or 137,170 handguns stolen per year.

What share of firearms acquired by criminals were acquired via theft?  A national survey of incarcerated criminals, conducted by university researchers, found that 32% of the felons' most recently acquired guns were acquired by the criminal personally stealing the gun (Wright and Rossi 1986, p. 105).  This would imply that the total number acquired by all methods would be 3.125 times the number stolen (100%/32%=3.125).  A more recent national survey of inmates conducted by the U.S. Census Bureau found that just 10% of guns acquired by criminals were acquired in this way, implying that the total number acquired would be 10 times the number stolen (100%/10% = 10).  This very wide range of estimates of the stolen share of guns implies that the total number of guns acquired by criminals per year by all methods is anywhere from 779,375 to 2,494,000 (428,656 to 1,371,700 of them handguns).

What share of this huge number of guns going to criminals got to them as a result of straw purchasing?  Surveys of criminals have not addressed this issue.  The only numbers of straw-purchased guns we know of for

---

[2] A person might acquire a gun directly by purchasing it themselves from a straw purchaser, or indirectly by getting it from another person who bought the gun from a straw purchaser.

sure are those uncovered in investigations by ATF or other law enforcement agencies.  ATF data covering the nation for 2017-2021 indicate that 230,000 firearms were trafficked via all channels over those five years, or about 46,000 firearms per year.  In 2018 (the most recent year for which we have gun theft data), 37.9% of trafficked guns uncovered in ATF investigations involved straw purchasing (ATF 2022, p. 3), implying about 17,434 guns trafficked per year via straw purchasing. Even using the more conservative estimate of the total volume of guns acquired by criminals per year (779,375), the number of guns known to have been straw-purchased would claim just **2.2%** of all guns acquired by criminals.  Using the higher estimate of total gun acquired by criminals per year (2,494,000), the known straw-purchased share would be just 0.699% (approximately 7/10ths of one percent) of all guns acquired by criminals – a miniscule share by any standard.

It is very likely that some straw purchases went undiscovered by ATF, but any idea as to their number would have to be based on sheer speculation. We only know that known instances of straw purchasing account for hardly any of the guns that get into criminals' possession each year.

Some people have claimed that many FFLs have stated a *willingness* to sell guns to straw purchasers (e.g. Wintemute 2013).  The studies in question, however, appear to have established nothing more than the willingness of some FFLs to make perfectly lawful sales to people buying a gun to give as a gift to another person.

One indication of how unimportant straw purchasing firearms from FFLs is as a source of criminal firearms is the rarity of ATF revocation of dealer licenses for this kind of violation.  For a dealer to knowingly or negligently cooperate with straw purchasers working with gun traffickers would be a serious offense and would certainly warrant revocation, yet ATF data indicate that *any* kind of FFL misconduct, including knowing or negligent cooperation with straw purchasing, that was serious enough to warrant revocation or its equivalent is extremely rare. Even after the Biden administration initiated an enhanced regulatory enforcement policy in 2021, just 250 FFLs were revoked, along with another 173 FFLs who voluntarily ceased operations after compliance inspections – at a time when there were 133,955 active firearms licenses (ATF 2023).  That is, even after ATF intensified their enforcement activities, only 3/10ths of one percent of FFLs lost their license for *any*

kind of violation, not just involvement in straw purchasing. Notably, Fleet Farm has not had any of its Minnesota licenses revoked for any reason during the period from October 2016 through October 2023, which I understand to be the relevant time period for this matter.

*Conclusion: In sum, guns known to have been straw purchased claim a negligible share of the firearms acquired by criminals – the exact opposite of the position promoted by the Plaintiff. Further, the source used to support the contrary claim concerns only where ATF chose to focus their investigative efforts, not the relative prevalence of different channels used to move guns into criminals' hands. Straw purchasing is thus a negligible source of crime guns.*

*Opinion 2. The straw purchases of Horton and Elwood cannot be shown to be a significant cause of the alleged increase in gun trafficking or gun crime in Minnesota. Further, there is no evidence that any of the ultimate recipients of these guns could not have obtained guns from other sources or by other means that did not involve straw purchasing.*

Only a small share of all the guns acquired by criminals, regardless of the method of acquisition, are used to commit violent crimes. As previously established, the total volume of firearms acquired by criminals each year is enormous – 779,375 to 2,494,000 each year. What share of these are used in violent crimes? The highest estimates of the number of violent crimes involving the use of firearms come from the National Crime Victimization Survey (NCVS), which estimates the total number of crimes, both those reported to law enforcement and those not reported. In 2022, the most recent year for which NCVS data are available, there were an estimated 6,230,150 violent crime incidents, of which 10% involved firearms in some way, implying about 623,015 violent crime incidents with firearms (BJS 2022). It should be noted that many of these only involved the offender possessing a firearm, without any affirmative evidence that the offender actually used the gun, either to attack or threaten the victim (Kleck 1997, pp. 6-7), but for present purposes we will generously assume all involved actual use of the gun in a threat or an attack. We will also generously assume that a different gun was used in each of these 623,015 gun-involved crimes, thereby maximizing the number of crime-

9

involved guns.  Given that some crime guns are used in multiple violent crimes, such as robberies, the true number of different crime-involved guns would actually be smaller.

Many of the guns used to commit violent crimes in 2022 were acquired in some year prior to 2022 – many long before 2022. We will assume, however, that all guns used to commit violent crimes in 2022 had been acquired just in the 10 years before 2022.  Our more conservative estimate of the total number of guns acquired by criminals via all methods was 779,375 per year.  Assuming this annual average applied to the 10 years preceding 2022, criminals acquired 7,793,750 guns in that period.  Assuming all firearms used to commit violent crimes in 2022 were acquired in the preceding 10 years, the upper-limit estimate of 623,015 guns used to commit violent crimes represents just 8% of the guns acquired by criminals in the previous 10 years.  Of course, this number would be an even smaller share of guns acquired over a longer span of the past. On the other hand, if we use the higher estimate of 2,494,000 guns acquired annually by criminals, the number acquired in the previous 10 years would be 24,940,000; so 623,015 guns used to commit violent crimes would constitute just 2.5% of all the guns acquired by criminals.  Put another way, this latter estimate implies that 97.5% or more of the guns acquired by criminals would *not* be used to commit a violent crime.

What do crime data specifically pertaining to Minnesota indicate regarding the share of violent crime that firearms straw-purchased from Fleet Farm might have been involved in?  According to the Minnesota Department of Public Safety, for 2021-2023 (the most recent data available), there were 412 firearm homicides, 87 firearm rapes, 4,623 firearm robberies, and 10,718 firearm aggravated assaults known to police, for a total of 15,840 violent crimes committed with firearms in Minnesota (Minnesota Department of Public Safety 2024). There were 24 firearms sold by Fleet Farm to Jerome Horton and 13 sold to Sarah Elwood, for a total of 37. Even if we ignore the Plaintiff's own evidence suggesting the vast majority of the firearms purchased by Horton or Elwood were not used in violent crime, and instead assume that every single one of these 37 guns was used to commit a violent crime, all of them in Minnesota, these guns would have claimed, at most, 0.234% – *just 1 in 428* –  of the violent crimes committed with firearms in Minnesota.  This is far too small a share of the state's violent firearm crime problem to have had any detectable impact on the violent crime rate.

10

Furthermore, there is no reason to believe that any of the persons who purchased these 37 guns could not have acquired firearms from other sources other than a straw purchaser. Quite the contrary. Interviews with criminals have revealed that most of those who had acquired guns had multiple sources that they could have used to acquire guns (Wright and Rossi 1986; Sheley and Wright 1995; May and Jarjoura 2006). This implies that criminals who acquired firearms straw-purchased from Fleet Farm also could have acquired guns by other means. Put another way, it is possible that *none* of those who acquired these guns became armed with firearms only because of the actions of straw purchasers. In sum, it is highly unlikely that the tiny volume of straw purchasing that occurred in Fleet Farm stores could have had any detectable effect on the share of Minnesota criminals who possessed guns and were thereby in a position to commit crimes with guns.

*Conclusion: Data for the U.S. as a whole indicate that only a miniscule share of the guns acquired by criminals are used to commit a violent crime. Guns acquired as a result of straw purchases from FFLs must therefore claim an even smaller share of the guns used to commit violent crimes. Regarding the handful of guns straw-purchased by Horton and Elwood, those straw purchases cannot be shown to be a significant cause of the alleged increase in gun trafficking or gun crime in Minnesota.*

*Opinion 3: Sales of multiple guns at the same time are not suspect and rarely involve guns later used to commit crimes. Rather, multiple gun sales are routine and commonplace, and guns sold in multiples are no more likely to later be used in crimes than guns sold one at a time.*

The Plaintiff suggests that Fleet Farm employees should have been suspicious of attempts to buy multiple firearms at the same time (State of Minnesota 2024, pp. 9-10, 12-15). This might seem plausible if one were referring to purchases of, say, dozens of guns in one transaction, but the Fleet Farm sales in question did not involve numbers of guns even remotely that large. Indeed, all but one of the multiple gun sales cited in the Complaint involved just *two* guns sold at a store on the same day – the minimum number that would qualify as multiple firearms. And the single exception involved just three guns (State of Minnesota 2024, pp. 13-14, 20).

11

Persons unfamiliar with the lawful firearms business might think that even sales of just two or three guns at the same time are suspect, and would stand out as unusual to gun store employees. In fact, multiple sales of guns are commonplace. Koper (2005) studied 180,246 handguns sold by licensed gun dealers in Maryland in 1990-1996, and found that 49,361, or 27% of them were sold as part of a multiple-gun sale (p. 758). In short, it is commonplace for guns to be sold in multiples and there is therefore no reason for gun store employees to perceive attempts to buy multiple guns at the same time as noteworthy or for such attempts to stand out as suspicious, absent other suspicious indicators. Rather, multiple-gun sales are a routine part of the activities of retail gun stores like the Fleet Farm stores involved in the present case. Indeed, Minnesota law does not limit the number of firearms or handguns that can be purchased at one time, even though some other states have enacted such restrictions.

One might nevertheless argue that even if multiple gun sales are commonplace, they should be suspect because guns sold in multiples are especially likely to later be used in crimes. One way to detect later use of a firearm in crime is to note whether it had been recovered by law enforcement in connection with a crime. Although not all guns used in crimes will be recovered by law enforcement, the best information we have on whether guns were used in crimes is whether they were recovered by law enforcement in connection with a crime. An ATF trace can be conducted on guns so recovered, to identify the business that first sold the gun at retail, the identity of the first retail purchaser, and other details such as how many guns were sold at the same time. If guns purchased in multiples really were more likely to later be used in crimes, the percent of guns sold in multiple-gun sales that were later recovered by law enforcement should be larger than the percent of guns sold in single-gun sales that were later recovered by law enforcement.

Koper (2005) tested this proposition by measuring the percent of guns later recovered by law enforcement for these two sets of guns. He found that as of March 2000, of the 180,246 handguns sold in Maryland in 1990-1996, 3.7% of single-sale handguns had been recovered by law enforcement, while just 3.3% of multiple-sale handguns had been recovered. That is, handguns sold in batches were actually slightly *less* likely to be later used in crime than handguns sold one at a time (p. 758). Thus, there is no factual basis for

Fleet Farm employees or other gun store employees to believe that guns sold in multiples are more likely to later be used in crime and to be suspect for that reason.

*Conclusion: The sales referenced in the Complaint do not indicate a suspicious purchasing pattern. In fact, data shows that sales of multiple guns at the same time are commonplace. Data also shows that guns sold in multiple-gun sales are no more likely to later be used in crime than guns sold one at a time. This indicates that there is no basis for Fleet Farm employees to be suspicious of firearm customers solely because customers may purchase more than one gun in a single transaction.*

In the event that additional information is made available to me, I reserve the right to supplement or amend my opinions.

Dated: _October 4, 2024_    _Gary Kleck_

Gary Kleck

14

**Appendix A**

CURRICULUM VITAE

GARY KLECK

(Updated November 27, 2023)

PERSONAL

Place of Birth:            Lombard, Illinois

Date of Birth:            March 2, 1951

Address:                  College of Criminology and Criminal Justice
                          The Florida State University
                          112 S. Copeland Street
                          Tallahassee, FL 32306-1273

                          Tallahassee, Florida 32306-1127

Telephone Number:         Home: (850) 559-0922

e-mail Address:           gkleck@fsu.edu

website:                  http://criminology.fsu.edu/faculty-and-staff/college-faculty/gary-
                          kleck/

CURRENT POSITION

David J. Bordua Emeritus Professor of Criminology, Florida State University

COURTESY APPOINTMENT

Courtesy Professor, College of Law, Florida State University

PROFESSIONAL MEMBERSHIPS

American Society of Criminology

Academy of Criminal Justice Sciences

EDUCATION

A.B.        1973 - University of Illinois, with High Honors and with Distinction in
            Sociology

A.M.   1975 - University of Illinois at Urbana, in Sociology

Ph.D.   1979 - University of Illinois at Urbana, in Sociology

## ACADEMIC HONORS

National Merit Scholar, 1969

Freshman James Scholar, University of Illinois, 1969

Graduated from University of Illinois with High Honors and with Distinction in Sociology, 1973

University of Illinois Foundation Fellowship in Sociology, 1975-76

1993 Winner of the Michael J. Hindelang Award of the American Society of Criminology, for the book that made "the most outstanding contribution to criminology"   (for Point Blank: Guns and Violence in America).

Awarded Named Professorship, Florida State University, 2012.

Nominated for University Teaching Award, Florida State University, 2014.

Paper of the Year awarded by Criminal Justice Review for "Does Gun Control Reduce Crime?," Volume 4, pp. 488-513 (2016).

## TEACHING POSITIONS

Fall, 1991 to   Professor, College of Criminology and Criminal Justice,
May 2016        Florida State University

Fall, 1984 to   Associate Professor, School of Criminology,
Spring, 1991     Florida State University.

Fall, 1979    Assistant Professor, School of  Criminology,
to Spring, 1984    Florida State University.

Fall, 1978 to   Instructor, School of Criminology,
Spring, 1979    Florida State University.

## COURSES TAUGHT

4

Criminology, Applied Statistics, Regression, Introduction to Research Methods, Law Enforcement, Research Methods in Criminology, Guns and Violence, Violence Theory Seminar, Crime Control, Assessing Evidence, Survey Research, Research Design and Causal Inference.

DISSERTATION

Homicide, Capital Punishment, and Gun Ownership:  An Aggregate Analysis of U.S. Homicide Trends from 1947 to 1976.  Department of Sociology, University of Illinois, Urbana.  1979.

PUBLICATIONS (sole author unless otherwise noted)

BOOKS

1991, 2005   Point Blank: Guns and Violence in America.  Hawthorne, N.Y.: Aldine de Gruyter.  Winner of the 1993 Michael J. Hindelang award of the American Society of Criminology.  Republished in 2005 in paperback by Transaction Publishers.

Reviewed in Contemporary Sociology, American Journal of Sociology, Social Forces, Journal of Criminal Law and Criminology, The Criminologist, The Public Interest, Criminal Law Forum, Social Science Review, Criminal Justice Abstracts, Crime, Criminal Justice and Law Enforcement, Newsletter of Public Policy Currents, Commonweal, Choice, and others.

1997   Targeting Guns: Firearms and their Control. Hawthorne, N.Y.: Aldine de Gruyter.

1997   The Great American Gun Debate: Essays on Firearms and Violence (with Don B. Kates, Jr.).  San Francisco: Pacific Research Institute for Public Policy.

2001   (with Don B. Kates) Armed: New Perspectives on Gun Control.  N.Y.: Prometheus Books.

Selected to Choice: Current Reviews for Academic Libraries' 39th annual "Outstanding Academic Title List," awarded for "excellence in scholarship and presentation, the significance of their contribution to their field, and their value as an important treatment of their topic."  Awarded to less than one percent of books.

2017   (with Brion Sever) Punishment and Crime: The Limits of Punitive Crime Control. NY: Routledge.

RESEARCH MONOGRAPH

1979    Bordua, David J., Alan J. Lizotte, and Gary Kleck. <u>Patterns of Firearms Ownership, Use and Regulation in Illinois</u>.  A Report to the Illinois Law Enforcement Commission, Springfield, Illinois.

ARTICLES IN PEER-REVIEWED JOURNALS

1979    "Capital punishment, gun ownership, and homicide." <u>American Journal of Sociology</u> 84(4):882-910.

1981    "Racial discrimination in criminal sentencing: A critical evaluation of the evidence with additional evidence on the death penalty." <u>American Sociological Review</u> 46(6):783-804.

1982    "On the use of self-report data to determine the class distribution of criminal behavior." <u>American Sociological Review</u> 47(3):427-33.

1983    (with David Bordua) "The factual foundation for certain key assumptions of gun control."  <u>Law and Policy Quarterly</u> 5(3):271-298.

1985     "Life support for ailing hypotheses:  modes of summarizing the evidence on racial discrimination in criminal sentencing."  <u>Law and Human Behavior</u> 9(3):271-285.

1986     "Evidence that 'Saturday Night Specials' not very important for crime." <u>Sociology and Social Research</u> 70(4):303-307.

1987     "American's foreign wars and the legitimation of domestic violence." <u>Sociological Inquiry</u> 57(3):237-250.

1988    "Crime control through the private use of armed force."  <u>Social Problems</u> 35(1):1-21.

1988    "Miscounting suicides."  <u>Suicide and Life-Threatening Behavior</u> 18(3):219-236.

1990    (with Susan Sayles) "Rape and resistance."  <u>Social Problems</u> 37(2):149-162.

1991    (with Karen McElrath) "The effects of weaponry on human violence."  <u>Social Forces</u> 69(3):669-92.

1993    (with Miriam DeLone) "Victim resistance and offender weapon effects in robbery." <u>Journal of Quantitative Criminology</u> 9(1):55-82.

1993    (with E. Britt Patterson)  "The impact of gun control and gun ownership levels on violence rates."  Journal of Quantitative Criminology 9(3):249-287.

1993    "Bad data and the 'Evil Empire': interpreting poll data on gun control."  Violence and Victims 8(4):367-376.

1995    "Guns and violence: an interpretive review of the field."  Social Pathology 1(1):12-47.

1995    "Using speculation to meet evidence."  Journal of Quantitative Criminology 11(4):411-424.

1995    (with Marc Gertz) "Armed resistance to crime: the prevalence and nature of self-defense with a gun."   Journal of Criminal Law & Criminology 86(1):150-187.

1996    "Crime, culture conflict and sources of support for gun control: a multi-level application of the General Social Surveys."  American Behavioral Scientist 39(4):387-404.

1996    (with Chester Britt III and David J. Bordua) "A reassessment of the D.C. gun law: some cautionary notes on the use of interrupted time series designs for policy impact assessment." Law & Society Review 30(2):361-380.

1996    (with Chester Britt III and David J. Bordua) "Avoidance and misunderstanding." Law & Society Review 30(2):393-397.

1997    (with Marc Gertz) "The illegitimacy of one-sided speculation: getting the defensive gun use estimate down."  Journal of Criminal Law and Criminology 87(4):1446-1461.

1997    (with Tomislav Kovandzic and Marc Gertz) "Defensive gun use: vengeful vigilante imagery vs. reality: results from the National Self-Defense Survey." Journal of Criminal Justice 26(3):251-258.

1998    (with Marc Gertz) "Carrying guns for protection: results from the National Self-Defense Survey." Journal of Research in Crime and Delinquency 35(2):193-224.

1998    "What are the risks and benefits of keeping a gun in the home?"  Journal of the American Medical Association 280(5):473-475.

1998    (with Charles Crawford and Ted Chiricos) "Race, racial threat, and sentencing of habitual offenders."  Criminology 36(3):481-511.

1999    (with Michael Hogan) "A national case-control study of homicide offending and

7

gun ownership." <u>Social Problems</u> 46(2):275-293.

1999   "BATF gun trace data and the role of organized gun trafficking in supplying guns to criminals."   <u>St. Louis University Public Law Review</u> 18(1):23-45.

2001   "Can owning a gun really triple the owner's chances of being murdered?" <u>Homicide Studies</u> 5:64-77.

2002   (with Theodore Chiricos) "Unemployment and property crime: a target-specific assessment of  opportunity and motivation as mediating factors." <u>Criminology</u> 40(3):649-680.

2004   "Measures of gun ownership levels for macro-level crime and violence research." <u>Journal of Research in Crime and Delinquency</u> 41(1):3-36.

2004   (with Jongyeon Tark) "Resisting crime: the effects of victim action on the outcomes of crimes." <u>Criminology</u> 42(4):861-909.

2005   (with Brion Sever, Spencer Li, and Marc Gertz) "The missing link in general deterrence research." <u>Criminology</u> 43(3):623-660.

2006   (with Jongyeon Tark and Jon J. Bellows) "What methods are most frequently used in research in criminology and criminal justice?" <u>Journal of Criminal Justice</u> 34(2):147-152.

2007   "Are police officers more likely to kill African-American suspects?" <u>Psychological Reports</u> 100(1):31-34.

2007   (with Shun-Yung Wang and Jongyeon Tark) "Article productivity among the faculty of criminology and criminal justice doctoral programs, 2000-2005." <u>Journal of Criminal Justice Education</u> 18(3):385-405.

2008   (with Jongyeon Tark, Laura Bedard, and Dominique Roe-Sepowitz) "Crime victimization and divorce." <u>International Review of Victimology</u> 15(1):1-17.

2009   "Mass shootings in schools: the worst possible case for gun control."  <u>American Behavioral Scientist</u> 52:1447-1464.

2009   (with Shun-Yung Wang) "The myth of big-time gun trafficking and the overinterpretation of gun tracing data." <u>UCLA Law Review</u> 56(5):1233-1294.

2009   (with Tomislav Kovandzic)  "City-level characteristics and individual handgun ownership: effects of collective security and homicide." <u>Journal of Contemporary Criminal Justice</u> 25(1):45-66.

8

2009    (with Marc Gertz and Jason Bratton)  "Why do people support gun control?"
        Journal of Criminal Justice 37(5):496-504.

2011    (with James C. Barnes)  "Article productivity among the faculty of criminology
        and criminal justice doctoral programs, 2005-2009."  Journal of Criminal Justice
        Education 22(1):43-66.

2011    (with Tomislav Kovandzic, Mark Saber, and Will Hauser).  "The effect of
        perceived risk and victimization on plans to purchase a gun for self-protection."
        Journal of  Criminal Justice 39(4):312-319.

2013    (with Will Hauser)  "Guns and fear: a one-way street?"  Crime and Delinquency
        59:271-291.

2013    "Gun control after Heller and McDonald: what cannot be done and what ought to
        be done."  Fordham Urban Law Journal 39(5):1383-1420.

2013    (with J. C. Barnes)  "Deterrence and macro-level perceptions of punishment
        risks: is there a "collective wisdom?"  Crime and Delinquency 59(7):1006-1035.

2013    (with Tomislav Kovandzic and Mark Schaffer) "Estimating the causal effect of
        gun prevalence on homicide rates: A local average treatment effect
        approach."  Journal of Quantitative Criminology 28(4):477-541.

2014    (with Jongyeon Tark) "Resisting rape: the effects of victim self-protection on
        rape completion and injury."  Violence Against Women 23(3): 270-292.

2014    (with J. C. Barnes) "Do more police generate more crime deterrence?"
        Crime and Delinquency 60(5):716-738.

2015    "The impact of gun ownership rates on crime rates:  a methodological review
        of the evidence."  Journal of  Criminal Justice 43(1):40-48.

2016    (with Tomislav Kovandzic and Jon Bellows)  "Does gun control reduce violent
        crime?"  Criminal Justice Review 41:488-513.

2016    "Objective risks and individual perceptions of those risks."  Criminology &
        Public Policy 15:767-775.

2016    (with Dylan Jackson)  "What kind of joblessness affects crime?  A national
        case-control study of serious property crime."  Journal of Quantitative
        Criminology 32:489-513.

2016    "Large-capacity magazines and the casualty counts in mass shootings: the plausibility of linkages." Justice Research and Policy 17:28-47.

2017    (**w**ith Will Hauser) "The impact of police strength and arrest productivity on fear of crime and subjective assessments of the police." American Journal of Criminal Justice 42:86-111.

2017    (with Dylan Jackson) "Does crime cause punitiveness?" Crime & Delinquency. 63(12):1572-1599.

2017    (with Bethany Mims) "Article productivity among the faculty of criminology and criminal justice doctoral programs, 2010-2014." Journal of Criminal Justice Education 28(4):467-487.

2018    (**w**ith Moonki Hong) "The short-term deterrent effect of executions: an analysis of daily homicide counts." Crime & Delinquency 64(7):939-970.

2018    "Response errors in survey estimates of defensive gun use." Crime & Delinquency 64(9):1119-1142.

2019    "Macro-level research on the effect of firearms prevalence on suicide rates: a systematic review and new evidence." Social Science Quarterly 100(3):936-950.

2019    "Regulating guns among young adults." American Journal of Criminal Justice 44:689-704.

2021    "What do CDC's surveys say about the prevalence of defensive gun use?" American Journal of Criminal Justice 46:401-421.

2021    "The continuing vitality of bad research on guns and violence: a comment on Fridel." Justice Quarterly 38(5):916-924.

2021    "Compliance with universal background check gun laws." Journal of Crime and Justice 44(4):414-418.

2021    Tomislav Kovandzic and Kleck. "The impact of firearm levels on homicide rates: the effects of controlling for cultural differences in cross-national research." American Journal of Criminal Justice 47(1):41-55.

2021    "The futility of nonresponse responses: a reply to Fridel." Justice Quarterly 38(5):943-954.

2022    "The cross-national association of gun ownership rates and suicide rates: an analysis of 192 nations." Archives of Suicide Research 26(3):1478-1486.

10

.

OTHER PUBLISHED ARTICLES

1985    "Policy lessons from recent gun control research." Law and Contemporary Problems 49(1):35-62.

1992    "Assault weapons aren't the problem." New York Times September 1, 1992, p. A15.  Invited Op-Ed page article.

1993    "The incidence of violence among young people." The Public Perspective 4:3-6.  Invited article.

1994    "Guns and self-protection." Journal of the Medical Association of Georgia 83:42.  Invited editorial.

1998    "Using speculation to meet evidence: reply to Alba and Messner." Journal on Firearms and Public Policy 9:13-49.

1998    "Has the gun deterrence hypothesis been discredited?" Journal on Firearms and Public Policy 10:65-75.

1999    "There are no lessons to be learned from Littleton." Criminal Justice Ethics 18(1):2, 61-63.  Invited commentary.

1999    "Risks and benefits of gun ownership - reply." Journal of the American Medical Association 282(2):136-136.

1999    "The misfire that wounded Colt's." New York Times October 23, 1999.  Invited Op-Ed page article.

1999    "Degrading scientific standards to get the defensive gun use estimate down." Journal on Firearms and Public Policy 11:77-137.

2000    "Guns aren't ready to be smart." New York Times March 11, 2000.  Invited Op-Ed page article.

2000    (with Chester Britt III and David J. Bordua) "The emperor has no clothes: using interrupted time series designs to evaluate social policy impact." Journal on Firearms and Public Policy 12:197-247.

2001    "School lesson: armed self-defense works." Wall Street Journal March 27, 2001.  Invited opinion article.

11

2001    "Impossible policy evaluations and impossible conclusions: a comment on Koper and Roth." Journal of Quantitative Criminology 17:75-80.

2001    "Absolutist politics in a moderate package: prohibitionist intentions of the gun control movement." Journal on Firearms and Public Policy 13:1-43.

2002    "Research agenda on guns, violence, and gun control." Journal on Firearms and Public Policy 14:51-72.

2006    "Off target." New York Sun January 5, 2006.  Invited opinion article.

2009    "How not to study the effect of gun levels on violence rates." Journal on Firearms and Public Policy 21:65-93.

2011    "Mass killings aren't the real gun problem --- how to tailor gun-control measures to common crimes, not aberrant catastrophes." Wall Street Journal January 15, 2011.  Invited opinion article.

2011    "The myth of big-time gun trafficking." Wall Street Journal May 21, 2011. Invited opinion article.

2015    "Defensive gun ownership is not a myth: why my critics still have it wrong." Politico Magazine, February 17, 2015.  Online at Politico.Com.


BOOK CHAPTERS

1984    (with David Bordua)  "The assumptions of gun control."  Pp. 23-48 in Don B. Kates, Jr. (ed.) Firearms and Violence: Issues of Regulation. Cambridge, Mass.: Ballinger.

(Also appeared in Federal Regulation of Firearms, report prepared by the Congressional Research Service, Library of Congress, for the Committee on the Judiciary, United States Senate, 1982).

1984    "The relationship between gun ownership levels and rates of violence in the U.S." Pp. 99-135 in Kates, above.

1984    "Handgun-only gun control: a policy disaster in the making." Pp. 167-199 in Kates, above.

1996    "Racial discrimination in criminal sentencing."  Pp. 339-344 in Crime and Society, Volume III – Readings: Criminal Justice, edited by George Bridges, Robert D. Crutchfield, and Joseph G. Weis.  Thousand Oaks, Calif.: Pine

12

Forge Press.

1996    "Gun buy-back programs: nothing succeeds like failure."  Pp. 29-53 in
        Under Fire: Gun Buy-Backs, Exchanges and Amnesty Programs, edited by
        Martha R. Plotkin.  Washington, D.C.: Police Executive Research Forum.

2000    "Firearms and crime."  Pp. 230-234 in the Encyclopedia of Criminology and
        Deviant Behavior, edited by Clifton D. Bryant.  Philadelphia: Taylor
        & Francis, Inc.

2001    (with Leroy Gould and Marc Gertz) "Crime as social interaction."  Pp. 101-114 in
        What is Crime?: Controversy over the Nature of Crime and What to Do About It,
        edited by Stuart Henry and Mark M. Lanier.  Lanham, Md.: Rowman and
        Littlefield.

2003    "Constricted rationality and the limits of general deterrence."  Chapter 13 in
        Punishment and Social Control: Enlarged Second Edition, edited by Thomas G.
        Blomberg.  New York: Aldine de Gruyter.

2004    "The great American gun debate: what research has to say."  Pp. 470-487 in The
        Criminal Justice System: Politics and Policies, 9th edition, edited by George F.
        Cole, Marc Gertz, and Amy Bunger.  Belmont, CA: Wadsworth-Thomson.

2008    "Gun control." Article in The Encyclopedia of Social Problems, edited by
        Vincent N. Parrillo. Thousand Oaks, CA: Sage.

2009    "Guns and crime." Invited chapter.  Pp. 85-92 in 21st Century Criminology: A
        Reference Handbook, edited by J. Mitchell Miller. Thousand Oaks, CA: Sage.

2012    Kovandzic, Tomislav, Mark E. Schaffer, and Gary Kleck. "Gun prevalence,
        homicide rates and causality: A GMM approach to endogeneity bias."  Chapter
        6, pp. 76-92 in The Sage Handbook of Criminological Research Methods, edited
        by David Gadd, Susanne Karstedt, and  Steven F. Messner.  Thousand Oaks, CA:
        Sage.

2012    (with Kelly Roberts) "What survey modes are most effective in eliciting
        self-reports of criminal or delinquent behavior?"  Pp. 415-439 in Handbook of
        Survey Methodology for the Social Sciences, edited by Lior Gideon.  NY:
        Springer.

2013    "An overview of gun control policy in the United States."  Pp. 562-579 in The
        Criminal Justice System, 10th edition. Edited by George F. Cole and Marc G.
        Gertz. Wadsworth.

13

2014   "Deterrence: actual vs. perceived risk of punishment.  Article in Encyclopedia of Criminology and Criminal Justice.  Berlin: Springer Verlag.

2019   "The effect of firearms on suicide."  Pp. 309-329 in Gun Studies: Interdisciplinary Approaches to Politics, Policy, and Practice, edited by Jennifer Carlson, Kristin Goss, and Harel Shapira. NY: Routledge.

2019   "Gun control."  Pp. 153-166 in The Handbook of Social Control, edited by Mattieu Deflem.  Hoboken, NJ: Wiley-Blackwell.

2021   "Research on guns and crime."  Chapter in The Encyclopedia of Research Methods and Statistical Techniques in Criminology and Criminal Justice, edited by J. C. Barnes and David R. Forde for Wiley Blackwell.

## BOOK REVIEWS

1978   Review of Murder in Space City: A Cultural Analysis of Houston Homicide Patterns, by Henry Lundsgaarde.  Contemporary Sociology 7:291-293.

1984   Review of Under the Gun, by James Wright et al. Contemporary Sociology 13:294-296.

1984   Review of Social Control, ed. by Jack Gibbs.  Social Forces 63: 579-581.

1985    Review of Armed and Considered Dangerous, by James Wright and Peter Rossi, Social Forces 66:1139-1140.

1988   Review of The Citizen's Guide to Gun Control, by Franklin Zimring and Gordon Hawkins, Contemporary Sociology 17:363-364.

1989   Review of Sociological Justice, by Donald Black, Contemporary Sociology 19:261-3.

1991   Review of Equal Justice and the Death Penalty, by David C. Baldus, George G. Woodworth, and Charles A. Pulaski, Jr.  Contemporary Sociology 20:598-9.

1999    Review of Crime is Not the Problem, by Franklin E. Zimring and Gordon Hawkins.  American Journal of Sociology 104(5):1543-1544.

2001   Review of Gun Violence: the Real Costs, by Philip J. Cook and Jens Ludwig.  Criminal Law Bulletin 37(5):544-547.

2010   Review of  Homicide and Gun Control: The Brady Handgun Violence Prevention

14

Act and Homicide Rates, by J. D. Monroe. <u>Criminal Justice Review</u> 35(1):118-120.


## LETTERS PUBLISHED IN SCHOLARLY JOURNALS

1987    "Accidental firearm fatalities."  <u>American Journal of Public Health</u> 77:513.

1992    "Suicide in the home in relation to gun ownership." <u>The New England Journal of Medicine</u> 327:1878.

1993    "Gun ownership and crime."  <u>Canadian Medical Association Journal</u> 149:1773-1774.

1999    "Risks and benefits of gun ownership."  <u>Journal of the American Medical Association</u> 282:136.

2000    (with Thomas Marvell) "Impact of the Brady Act on homicide and suicide rates." <u>Journal of the American Medical Association</u> 284:2718-2719.

2001    "Violence, drugs, guns (and Switzerland)."  <u>Scientific American</u> 284(2):12.

2002    "Doubts about undercounts of gun accident deaths." <u>Injury Prevention Online</u> (September 19, 2002). Published online at <u>http://ip.bmjjournals.com/cgi/eletters</u> /8/3/252.

2005    "Firearms, violence, and self-protection."  <u>Science</u> 309:1674. September 9, 2005.

## UNPUBLISHED REPORT

1987    <u>Violence, Fear, and Guns at Florida State University: A Report to the President's Committee on Student Safety and Welfare</u>. Reports results of campus crime victimization survey and review of campus police statistics on gun violence (32 pages).

## RESEARCH FUNDING

1994    "The Impact of Drug Enforcement on Urban Drug Use Levels and Crime Rates." $9,500 awarded by the U.S. Sentencing Commission.

1997    "Testing a Fundamental Assumption of Deterrence-Based Crime Control Policy." $80,590 awarded by the Charles E. Culpeper Foundation to study the link between actual and perceived punishment levels.

PRESENTED PAPERS

1976    "Firearms, homicide, and the death penalty:  a simultaneous equations analysis."  Presented at the annual meetings of the Illinois Sociological Association, Chicago.

1979    "The assumptions of gun control."  Presented at the annual meetings of the American Sociological Association, New York City.

1981    "Lethality comparisons between handguns and weapons which might be substituted in assault if handguns were prohibited."  Presented at the annual meetings of the American Society of Criminology, Washington, D.C.

1982    "Life support for ailing hypotheses:  Modes of summarizing the evidence on racial discrimination."  Presented at the annual meetings of the American Society of Criminology, Toronto.

1984    "Policy lessons from recent gun control research."  Presented at the Duke University Law School Conference on Gun Control.

1985    "Policy lessons from recent gun control research." Presented at the annual meetings of the American Society of Criminology, San Diego.

1986    "Miscounting suicides."  Presented at the annual meetings of the American Sociological Association, Chicago.

1987    (with Theodore G. Chiricos, Michael Hays, and Laura Myers) "Unemployment and crime: a comparison of motivation and opportunity effects."  Presented at the annual meetings of the American Society of Criminology, Montreal.

1988    "Suicide, guns and gun control."  Presented at the annual meetings of the Popular Culture Association, New Orleans.

1988    (with Susan Sayles)  "Rape and resistance."  Presented at the annual meetings of the American Society of Criminology, Chicago.

1989    (with Karen McElrath)  "The impact of weaponry on human violence."  Presented at the annual meetings of the American Sociological Association, San Francisco.

1989    (with Britt Patterson)  "The impact of gun control and gun ownership levels on city violence rates."  Presented at the annual meetings of the American Society of Criminology, Reno.

1990    "Guns and violence: a summary of the field."  Presented at the annual meetings of the American Political Science Association, Washington, D.C.

1991    "Victim resistance and weapons effects in robbery."  Presented at the annual meetings of the American Society of Criminology, San Francisco.

1991    "News media bias in covering gun control issues."  Presented at the annual meetings of the American Society of Criminology, San Francisco.

1992    "Interrupted time series designs: time for a re-evaluation."  Presented at the annual meetings of the American Society of Criminology, New Orleans.

1993    (with Chester Britt III and David J. Bordua) "The emperor has no clothes: Using interrupted time series designs to evaluate social policy impact." Presented at the annual meetings of the American Society of Criminology, Phoenix.

1993    "Crime, culture conflict and support for gun laws: a multi-level application of the General Social Surveys."  Presented at the annual meetings of the American Society of Criminology, Phoenix.

1994    (with Marc Gertz) "Armed resistance to crime: the prevalence and nature of self-defense with a gun."   Presented at the annual meetings of the American Society of Criminology, Miami.

1995    (with Tom Jordan) "The impact of drug enforcement and penalty levels on urban drug use levels and crime rates."  Presented at the annual meetings of the American Society of Criminology, Boston.

1996    (with Michael Hogan) "A national case-control study of homicide offending and gun ownership." Presented at the annual meetings of the American Society of Criminology, Chicago.

1997    "Evaluating the Brady Act and increasing the utility of BATF tracing data." Presented at the annual meetings of the Homicide Research Working Group, Shepherdstown, West Virginia.

1997    "Crime, collective security, and gun ownership: a multi-level application of the General Social Surveys."  Presented at the annual meetings of the American Society of Criminology, San Diego.

1998    (with Brion Sever and Marc Gertz) "Testing a fundamental assumption of deterrence-based crime control policy."  Presented at the annual meetings of the American Society of Criminology, Washington, D.C.

1998    "Measuring macro-level gun ownership levels." Presented at the annual meetings of the American Society of Criminology, Washington, D.C.

1999    "Can owning a gun really triple the owner's chances of being murdered?" Presented at the annual meetings of the American Society of Criminology, Toronto.

2000    "Absolutist politics in a moderate package: prohibitionist intentions of the gun control movement."  Presented at the annual meetings of the American Society of Criminology, San Francisco.

2001    (with Tomislav V. Kovandzic) "The impact of gun laws and gun levels on crime rates."  Presented at the annual meetings of the American Society of Criminology, Atlanta.

2001    "Measures of gun ownership levels for macro-level violence research."  Presented at the annual meetings of the American Society of Criminology, Atlanta.

2002    "The effects of gun ownership levels and gun control laws on urban crime rates." Presented at the annual meetings of the American Society of Criminology, Chicago.

2003    (with Tomislav V. Kovandzic) "The effect of gun levels on violence rates depends on who has them." Presented at the annual meetings of the American Society of Criminology, Denver.

2003    (with KyuBeom Choi) "Filling in the gap in the causal link of deterrence." Presented at the annual meetings of the American Society of Criminology, Denver.

2004    (with Tomislav Kovandzic) "Do violent crime rates and police strength levels in the community influence whether individuals own guns?" Presented at the annual meetings of the American Society of Criminology, Nashville.

2004    (with Jongyeon Tark) "Resisting crime: the effects of victim action on the outcomes of crime." Presented at the annual meetings of the American Society of Criminology, Nashville.

2004    (with Jongyeon Tark) "The impact of self-protection on rape completion and injury." Presented at the annual meetings of the American Society of Criminology, Nashville.

2004    (with Kyubeom Choi) "The perceptual gap phenomenon and deterrence as psychological coercion." Presented at the annual meetings of the American

18

Society of Criminology, Nashville.

2005    (with Jongyeon Tark) "Who resists crime?" Presented at the annual meetings of the American Society of Criminology, Toronto.

2005    (with Jongyeon Tark and Laura Bedard) "Crime and marriage."  Presented at the annual meetings of the American Society of Criminology, Toronto.

2006    (with Shun-Yang Kevin Wang) "Organized gun trafficking, 'crime guns,' and crime rates."  Presented at the annual meetings of the American Society of Criminology, Los Angeles.

2006    "Are police officers more likely to kill black suspects?"  Presented at the annual meetings of the American Society of Criminology, Los Angeles.

2007    (with Shun-Yang Kevin Wang) "The myth of big-time gun trafficking. "Presented at the annual meetings of the American Society of Criminology, Atlanta.

2007    (with Marc Gertz and Jason Bratton)  "Why do people support gun control?" Presented at the annual meetings of the American Society of Criminology, Atlanta.

2010    (with J. C. Barnes)  "Deterrence and macro-level perceptions of punishment risks: Is there a "collective wisdom?"  Presented at the annual meetings of the American Society of Criminology,  St. Louis.

2011    "The myth of big-time gun trafficking."  Presented at UCLA Law Review Symposium, "The Second Amendment and the Right to Bear Arms After DC v. Heller." January 23, 2009, Los Angeles.

2009    (with Shun-Yung Wang) "Employment and crime and delinquency of working youth: A longitudinal study of youth employment."  Presented at the annual meetings of the American Society of Criminology, November 6, 2009, Philadelphia, PA.

2009    (with J. C. Barnes)  "Do more police generate more deterrence?"  Presented at the annual meetings of the American Society of Criminology, November 4, 2009, Philadelphia, PA.

2010    (with J. C. Barnes) "Article productivity among the faculty of criminology and criminal justice doctoral programs, 2005-2009."  Presented at the annual meetings of the American Society of Criminology, November 18, 2010, San Francisco, CA.

2012    (with Will Hauser) "Fear of crime and gun ownership." Presented at the annual meetings of the American Society of Criminology, November 18, 2010, San Francisco, CA.

2010    "Errors in survey estimates of defensive gun use frequency: results from national Internet survey experiments." Presented at the annual meetings of the American Society of Criminology, November 19, 2010, San Francisco, CA.

2010    (with Mark Faber and Tomislav Kovandzic) "Perceived risk, criminal victimization, and prospective gun ownership." Presented at the annual meetings of the American Society of Criminology, November 19, 2010, San Francisco, CA.

2013    (with Shun-young Wang) "The impact of job quality and career commitment on delinquency: conditional or universal?" Presented at the annual meetings of the American Society of Criminology, November 17, 2011, Washington, D.C.

2011    (with Moonki Hong) "The short-term deterrent effect of executions on homicides in the United States, 1984-1998." Presented at the annual meetings of the American Society of Criminology, November 16, 2011, Washington, D.C.

2011    (with Kelly Roberts) "Which survey modes are most effective in getting people to admit illegal behaviors?" Presented at the annual meetings of the American Society of Criminology, November 17, 2011, Washington, D.C.

2011    (with Will Hauser) "Pick on someone your own size: do health, fitness, and size influence victim selection?" Presented at the annual meetings of the American Society of Criminology, November 18, 2011, Washington, D.C.

2011    (with Tomislav Kovandzic) "Is the macro-level crime/punishment association spurious?" Presented at the annual meetings of the American Society of Criminology, November 18, 2011, Washington, D.C.

2012     (with Dylan Jackson) "Adult unemployment and serious property crime: a national case-control study." Presented at the annual meetings of the American Society of Criminology, November 15, 2012, Chicago, IL.

2013    (with Will Hauser) "Confidence in the Police and Fear of Crime: Do Police Force Size and Productivity Matter?" Presented at the annual meetings of the American Society of Criminology, November 22, 2013, Atlanta, GA.

2013.    (with Dylan Jackson) "Adult unemployment and serious property crime: a national case-control study." Presented at the annual meetings of the American Society of Criminology, November 22, 2013, Atlanta, GA.

20

2014   (with Dylan Jackson) "Does Crime Cause Punitiveness?"  Presented at the annual meetings of the American Society of Criminology, November 20, 2014, San Francisco, CA.

2015   "The effect of large capacity magazines on the casualty counts in mass shootings."  Presented at the annual meetings of the American Society of Criminology, November 18, 2015, Washington, D.C.

2015   (with Bethany Mims) "Article productivity among the faculty of criminology and criminal justice doctoral programs, 2010-2014."  Presented at the annual meetings of the American Society of Criminology, November 20, 2015, Washington, D.C.

2016   "Firearms and the lethality of suicide methods."  Presented at the annual meetings of the American Society of Criminology, November 16, 2016, New Orleans, L.A.

2017   "Macro-level research on the effect of firearms prevalence on suicide rates: a systematic review and new evidence."  Presented at the annual meetings of the American Society of Criminology, November 15, 2017, Philadelphia, PA.

2018   "Interstate gun movement is almost entirely due to migration, not gun trafficking." Presented at the annual meetings of the American Society of Criminology, November 16,  2018, Atlanta, GA.

2019   "What do CDC's surveys say about the prevalence of defensive gun use?" Presented at the annual meetings of the American Society of Criminology, November 13, 2019, San Francisco, CA.

2020   "Compliance with universal background check requirements."  Accepted to be presented at the annual meetings of the American Society of Criminology that were to be held in Washington, D.C., November 18-21, 2020, but were cancelled due to Covid-19 issues.

2021   "Do mass shooters favor using large-capacity magazines?"  Presented at the annual meetings of the American Society of Criminology, November 18, 2021, Chicago IL.

2022   "Is the relationship between gun control and violence spurious?"  Presented at the annual meetings of the American Society of Criminology, November 18, 2022, Atlanta, GA.

CHAIR

1983    Chair, session on Race and Crime.  annual meetings of the American Society of Criminology, Denver.

1989    Co-chair (with Merry Morash), roundtable session on problems in analyzing the National Crime Surveys.  annual meetings of the American Society of Criminology, Reno.

1994    Chair, session on Interrupted Time Series Designs. annual meetings of the American Society of Criminology, New Orleans.

1993    Chair, session on Guns, Gun Control, and Violence. annual meetings of the American Society of Criminology, Phoenix.

1995    Chair, session on International Drug Enforcement. annual meetings of the American Society of Criminology, Boston.

1999    Chair, Author-Meets-Critics session, More Guns, Less Crime.  annual meetings of the American Society of Criminology, Toronto.

2000    Chair, session on Defensive Weapon and Gun Use.  annual meetings of the American Society of Criminology, San Francisco.

2002    Chair, session on the Causes of Gun Crime. annual  meetings of the American Society of Criminology, Chicago.

2004    Chair, session on Protecting the Victim.  annual meetings of the American Society of Criminology, Nashville.

DISCUSSANT

1981    Session on Gun Control Legislation, annual meetings of the American Society of Criminology, Washington, D.C.

1984    Session on Criminal Sentencing, annual meetings of the American Society of Criminology, Cincinnati.

1986    Session on Sentencing, annual meetings of the American Society of Criminology, Atlanta.

1988    Session on Gun Ownership and Self-protection, annual meetings of the Popular Culture Association, Montreal.

1991    Session on Gun Control, annual meetings of the American Statistical Association, Atlanta, Ga.

22

1995    Session on International Drug Enforcement, annual meetings of the American Society of Criminology, Boston.

2000    Session on Defensive Weapon and Gun Use, annual meetings of the American Society of Criminology, San Francisco.

2004    Author-Meets-Critic session on Guns, Violence, and Identity Among African-American and Latino Youth, by Deanna Wilkinson.  annual meetings of the American Society of Criminology, Nashville.

2007    Session on Deterrence and Perceptions, University of Maryland 2007 Crime & Population Dynamics Summer Workshop, Aspen Wye River Center, Queenstown MD, June 4, 2007.

2009    Session on Guns and Crime, at the DeVoe Moore Center Symposium On The Economics of Crime, March 26-28, 2009.

2014    Panel discussion of news media coverage of high profile crimes Held at the Florida Supreme Court On September 24-25, 2012, sponsored by the Florida Bar Association as part of their 2012 Reporters' Workshop.

PROFESSIONAL SERVICE

Editorial consultant -
        American Sociological Review
        American Journal of Sociology
        Social Forces
        Social Problems
        Law and Society Review
        Journal of Research in Crime and Delinquency
        Social Science Research
        Criminology
        Journal of Quantitative Criminology
        Justice Quarterly
        Journal of Criminal Justice
        Violence and Victims
        Violence Against Women
        Journal of the American Medical Association
        New England Journal of Medicine
        American Journal of Public Health
        Journal of Homicide Studies

Grants consultant, National Science Foundation, Sociology Program.

23

Member, Gene Carte Student Paper Committee, American Society of Criminology, 1990.

Area Chair, Methods Area, American Society of Criminology, annual meetings in Miami, November, 1994.

Division Chair, Guns Division, American Society of Criminology, annual meetings in Washington, D.C., November, 1998.

Dissertation evaluator, University of Capetown, Union of South Africa, 1998.

Division Chair, Guns Division, American Society of Criminology, annual meetings in Washington, D.C., November, 1999.

Member of Academy of Criminal Justice Sciences selection committee for Editor of Justice Quarterly, 2007.

Outside reviewer of Dr. J. Pete Blair for promotion to Full Professor in the School of Criminal Justice at Texas State University, San Marcos, 2014.

UNIVERSITY SERVICE

Member, Master's Comprehensive Examination Committee, School of Criminology, 1979-1982.

Faculty Advisor, Lambda Alpha Epsilon (FSU chapter of American Criminal Justice Association), 1980-1988.

Faculty Senate Member, 1984-1992.

Carried out campus crime survey for President's Committee on Student Safety and Welfare, 1986.

Member, Strategic Planning and Budgeting Review Committee for Institute for Science and Public Affairs, and Departments of Physics and Economics, 1986.

Chair, Committee on Ph.D. Comprehensive Examination in Research Methods, School of Criminology, Summer, 1986.

Member, Committee on Ph.D. Comprehensive Examination in Research Methods, School of Criminology, Summer, 1986 to 2016.

Chair, Committee on Graduate Assistantships, School of Criminology, Spring, 1987.

24

Chair, Ad Hoc Committee on Computers, School of Criminology,  Fall, 1987.

Member, Recruitment Committee, School of Criminology,  Spring, 1988; Spring, 1989; and 1989-90 academic year.

Member, Faculty Senate Committee on Computer-Related Curriculum, Spring, 1988 to Fall, 1989.

Chair, Ad Hoc Committee on Merit Salary Distribution, School of Criminology, Spring, 1988.

Chair, Ad Hoc Committee on Enrollment Strains, Spring, 1989.

Member, Graduate Handbook Committee, School of Criminology,  Spring, 1990.

Member, Internal Advisement Committee, School of Criminology Spring, 1990.

University Commencement Marshall, 1990 to 1993.

Member, School of Criminology and Criminal Justice Teaching Incentive Program award committee.

Chair, Faculty Recruitment Committee, School of Criminology and Criminal Justice, 1994-1995.

Chair, Committee on Ph.D. Comprehensive Examination in Research Methods, School of Criminology and Criminal Justice, 1994-1995.

Member, University Computer and Information Resources  Committee, 1995-1998.

Member, University Fellowship Committee, 1995 to 2000.

Member, University Library Committee, 1996 to 1999.

Chair, Electronic Access Subcommittee, University Library Committee, 1998 to 1999.

Member, Ad Hoc Committee on Merit Salary Increase Allocation, School of Criminology and Criminal Justice, 1998-1999.

Member, Academic Committee, School of Criminology and Criminal Justice, 2000-2008t.

Member, Recruiting Committee, School of Criminology and Criminal Justice, 2000-2001.

Member, Promotion and Tenure Committee, School of Criminology and Criminal Justice, 2000-2008.

Chair, Committee on Ph.D. Comprehensive Examination in Research Methods, School of Criminology and Criminal Justice, 2000-2002.

Chair, Promotion and Tenure Committee, School of Criminology and Criminal Justice, 2001-2002.

Faculty Adviser, School of Criminology and Criminal Justice Graduate Student Association, 2001-2010.

Member, ad hoc committee on survey research, School of Criminology and Criminal Justice, 2002.

Coordinator of Parts 2 and 4 of the School of Criminology and Criminal Justice Unit Review, 2002.

Chair, Academic Committee, School of Criminology and Criminal Justice, 2002-2003.

Director, Honors Programs, School of Criminology and Criminal Justice, 2002-?.

Member, University Promotion and Tenure Committee, Fall, 2003 to ?.

Member of University Graduate Policy Committee, Fall 2003 to 2011.

Director of Graduate Studies, School (later College) of Criminology and Criminal Justice, April 2004 to May 2015.

Chair, Promotion and Tenure Committee, College of Criminology and Criminal Justice, 2005-2006

Served as major professor on Area Paper by Christopher Rosbough, completed in 2012.

Served as member of dissertation committee of Kristen Lavin, dissertation completed in 2012.

Served as member of dissertation committee of Elizabeth Stupi, dissertation completed in 2013.

Served as outside member on two dissertation committees in 2014-2015: Brian Meehan in the Department of Economics and Adam Weinstein in the English Department.  Both dissertations were completed.

26

Served as major professor on Area Paper on legalization of marijuana for Pedro Juan Matos Silva, Spring 2015.  Paper completed.

Served as major professor for doctoral students, Moonki Hong who defended his dissertation on April 14, 2016.

PUBLIC SERVICE

Television, radio, newspaper, magazine, and Internet interviews concerning gun control, racial bias in sentencing, crime statistics, and the death penalty.  Interviews and other kinds of news media contacts include Newsweek, Time, U.S. News and World Report, New York Times, Washington Post, Chicago Tribune, Los Angeles Times, USA Today, Boston Globe, Wall Street Journal, Kansas City Star, Philadelphia Inquirer, Philadelphia News, Atlanta Constitution, Atlanta Journal, Arizona Republican, San Antonio Express-News, Dallas Morning News, Miami Herald, Tampa Tribune, Jacksonville Times-Union, Womens' Day,    Harper's Bazaar, Playboy, CBS-TV (60 Minutes; Street Stories) ABC-TV (World News Tonight; Nightline), NBC-TV (Nightly News), Cable News Network, Canadian Broadcasting Company, National Public Radio, Huffington Post, PolitiFact.com, and many others.

Resource person, Subcommittee on Crime and Justice, (Florida House) Speaker's Advisory Committee on the Future,  February 6-7, 1986, Florida State Capitol.

Testimony before the U.S. Congress, House Select Committee on Children, Youth and Families, June 15, 1989.

Discussant, National Research Council/National Academy of Sciences Symposium on the Understanding and Control of Violent Behavior, April 1-4, 1990, Destin, Florida.

Colloquium on manipulation of statistics relevant to public policy, Statistics Department, Florida State University, October, 1992.

Speech to faculty, students, and alumni at Silver Anniversary of Northeastern University College of  Criminal Justice, May 15, 1993.

Speech to faculty and students at Department of Sociology, University of New Mexico, October, 1993.

Speech on the impact of gun control laws, annual meetings of the Justice Research and Statistics Association, October, 1993, Albuquerque, New Mexico.

Testimony before the Hawaii House Judiciary Committee, Honolulu, Hawaii, March 12, 1994.

27

Briefing of the National Executive Institute, FBI Academy, Quantico, Virginia, March 18, 1994.

Delivered the annual Nettler Lecture at the University of Alberta, Edmonton, Canada, March 21, 1994.

Member, Drugs-Violence Task Force, U.S. Sentencing Commission, 1994-1996.

Testimony before the Pennsylvania Senate Select Committee to Investigate the Use of Automatic and Semiautomatic Firearms, Pittsburgh, Pennsylvania, August 16, 1994.

Delivered lectures in the annual Provost's Lecture Series, Bloomsburg University, Bloomsburg, Pa., September 19, 1994.

Briefing of the National Executive Institute, FBI Academy, Quantico, Virginia, June 29, 1995.

Speech to personnel in research branches of crime-related State of Florida agencies, Research and Statistics Conference, sponsored by the Office of the State Courts Administrator, October 19, 1995.

Speech to the Third Annual Legislative Workshop, sponsored by the James Madison Institute and the Foundation for Florida's Future, February 5, 1998.

Speech at the Florida Department of Law Enforcement on the state's criminal justice research agenda, December, 1998.

Briefing on news media coverage of guns and violence issues, to the Criminal Justice Journalists organization, at the American Society of Criminology annual meetings in Washington, D.C., November 12, 1998.

Briefing on gun control strategies to the Rand Corporation conference on "Effective Strategies for Reducing Gun Violence," Santa Monica, Calif., January 21, 2000.

Speech on deterrence to the faculty of the Florida State University School of Law, February 10, 2000.

Invited address on links between guns and violence to the National Research Council Committee on Improving Research Information and Data on Firearms, November 15-16, 2001, Irvine, California.

Invited address on research on guns and self-defense to the National Research Council Committee on Improving Research Information and Data on Firearms, January 16-17,

28

2002, Washington, D.C.

Invited address on gun control, Northern Illinois University, April 19, 2002.

Invited address to the faculty of the School of Public Health, University of Alabama, Birmingham, 2004.

Invited address to the faculty of the School of Public Health, University of Pennsylvania, March 5, 2004.

Member of Justice Quarterly Editor Selection Committee, Academy of Criminal Justice Sciences, Spring 2007

Testified before the Gubernatorial Task Force for University Campus Safety, Tallahassee, Florida, May 3, 2007.

Gave public address, "Guns & Violence: Good Guys vs. Bad Guys," Western Carolina University, Cullowhee, North Carolina, March 5, 2012.

Invited panelist, Fordham Law School Symposium, "Gun Control and the Second Amendment,"  New York City, March 9, 2012.

Invited panelist, community forum on "Students, Safety & the Second Amendment," sponsored by the Tallahassee Democrat.

Invited address at University of West Florida, Department of Justice Studies, titled "Guns, Self-Defense, and the Public Interest," April 12, 2013.

Member, National Research Council Committee on Priorities for a Public Health Research Agenda to Reduce the Threat of Firearm-related Violence, May 2013.

Invited address at Davidson College, Davidson, NC, April 18, 2014.  Invited by the Department of Philosophy.

Public lecture, "Do Guns Cause Homicide?," Center for the Study of Liberal Democracy, University of Wisconsin-Madison, December 5, 2018.

OTHER ITEMS
Listed in:
Marquis Who's Who
Marquis Who's Who in the South and Southwest
Who's Who of Emerging Leaders in America
Contemporary Authors
Directory of American Scholars

29

Writer's Directory

Participant in First National Workshop on the National Crime Survey, College Park, Maryland, July, 1987, co-sponsored by the Bureau of Justice Statistics and the American Statistical Association.

Participant in Second National Workshop on the National Crime Survey, Washington, D.C., July, 1988.

Participant, Seton Hall Law School Conference on Gun Control, March 3, 1989.

Debater in Intelligence Squared program, on the proposition "Guns Reduce Crime." Rockefeller University, New York City, October 28, 2008.  Podcast distributed through National Public Radio.  Further details are available at http://www.intelligencesquaredus.org/Event.aspx?Event=36.

Subject of cover story, "America Armed," in Florida State University Research in Review, Winter/Spring 2009.

Grants reviewer, Social Sciences and Humanities Research Council of Canada, 2010.

Named one of "25 Top Criminal Justice Professors" in the U.S. by Forensics Colleges website (http://www.forensicscolleges.com/), 2014.

**Appendix B**

Bureau of Alcohol, Tobacco and Firearms (ATF). 2000. Following the Gun: Enforcing Federal Laws Against Firearms Traffickers.

Bureau of Alcohol, Tobacco and Firearms (ATF). 2021. Firearms Trace Data: Minnesota – 2021. Available at https://www.atf.gov/resource-center/firearms-trace-data-minnesota-2021#disclaimer.

Bureau of Alcohol, Tobacco and Firearms (ATF). 2022.  National Firearms Commerce and Trafficking Assessment: Part III: Firearm Trafficking Channels and Methods Used.  Available at https://www.atf.gov/firearms/docs/report/nfcta-volume-iii-part-iii/download.

Bureau of Alcohol, Tobacco and Firearms (ATF). 2023.  Report of Active Firearms Licenses - License Type by State Statistics.  Available at https://www.atf.gov/sites/default/files/ffl_pdf/0323-ffl-list-type-by-state.pdf.

Bureau of Alcohol, Tobacco and Firearms (ATF). 2024.  Enhanced Regulatory Enforcement Policy.  Available at https://www.atf.gov/rules-and-regulations/enhanced-regulatory-enforcement-policy.

Bureau of Justice Statistics (BJS) 2022. Trends and Patterns in Firearm Violence, 1993–2018. Available at https://bjs.ojp.gov/content/pub/pdf/tpfv9318.pdf.

Gove, Walter R., Michael Hughes, and Michael Geerken 1985.  "Are Uniform Crime Reports a valid indicator of Index crimes?"  Criminology 23(3):451-501.

Kleck, Gary. 1997.  Targeting Guns: Firearms and their Control.  NY: Aldine.

Koper, Christopher S. 2005.  "Purchase of multiple firearms as a risk factor for criminal gun use."  Criminology and Public Policy 4(4):749-778.

May, David C., and G. Roger Jarjoura.  Illegal Guns in the Wrong Hands. Lanham: University Press of American.

Minnesota Department of Public Safety. 2024.  Uniform Crime Report.  Available online at dps.mn.gov/divisions/bca/bca-divisions/mnjis/Pages/uniform-crime-reports.aspx.

Sheley, Joseph F. and James D. Wright.  1995.  In the Line of Fire.  NY: Aldine.

State of Minnesota. 2024.  First Amended Complaint. United States District Court, District of Minnesota

Wintemute, Garen. 2010. "Firearm retailers' willingness to participate in illegal gun purchase." Journal of Urban Health 87(5):865-878.

Wright, James D. and Peter H. Rossi. 1986.  Armed and Considered Dangerous: A Survey of Felons and their Firearms.  NY: Aldine.