**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| State of Minnesota by its Attorney General, Keith Ellison,<br><br>          Plaintiff,<br><br>     v.<br><br>Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC,<br><br>          Defendants. | Case No.: 0:22-cv-02694-JRT-JFD |

**FLEET FARM'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

TABLE OF CONTENTS

INTRODUCTION.................................................................................................................. 1

BACKGROUND .................................................................................................................. 3

I.    The State's claims against Fleet Farm have narrowed substantially since this Court's motion-to-dismiss ruling ................................................................. 3

II.   Fleet Farm has robust policies and trainings related to straw purchasing .......... 6

III.  It is undisputed that Fleet Farm did not know Elwood or Horton were straw purchasing ................................................................................................. 7

A.    Sarah Elwood purchased thirteen handguns from Fleet Farm stores, and pleaded guilty to deceiving Fleet Farm ................................................. 7

B.    Jerome Horton purchased twenty-three handguns from Fleet Farm, and pleaded guilty to deceiving Fleet Farm ................................................. 8

IV.   The Truck Yard shooting victims have commenced a separate civil action against Fleet Farm ................................................................................................ 9

LEGAL STANDARD ........................................................................................................... 10

ARGUMENT ...................................................................................................................... 10

I.    The State lacks *parens patriae* standing to advance its common-law claims ................................................................................................................. 10

II.   All of the State's claims fail as a matter of law for lack of proximate causation ........................................................................................................... 15

A.    Fleet Farm's actions were not a substantial cause of any general societal harm resulting from gun violence or trafficking ........................ 16

B.    Fleet Farm did not proximately cause the specific harms resulting from Elwood's or Horton's criminal actions ........................................... 17

III.  The undisputed record establishes additional bases for dismissing each of the State's claims ............................................................................................... 21

A.    The undisputed facts establish the State's public-nuisance claim fails as a matter of law .......................................................................... 21

B.    The aiding-and-abetting claim fails because Fleet Farm did not have "actual knowledge" that Elwood or Horton were straw purchasing ........ 23

C.    The undisputed facts establish the State's negligent-entrustment claim fails .............................................................................................. 24

D.   The undisputed facts establish Fleet Farm has not violated the laws cited by the State to support its negligence and negligence per se claims ................................................................................................ 25

E.   Summary judgment is also warranted on most of the MNGCA claim ................................................................................................ 28

CONCLUSION .................................................................................................... 29

## <u>T<small>ABLE OF</small> A<small>UTHORITIES</small></u>

**Page(s)**

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*,
  458 U.S. 592 (1982) ................................................................................. *passim*

*Am. Arms Int'l v. Herbert*,
  2008 WL 8098466 (D. Md. Feb. 18, 2008) ............................................... 27

*Ashley Cnty. v. Pfizer, Inc.*,
  552 F.3d 659 (8th Cir. 2009) ................................................... 19, 20, 23, 25

*Axelson v. Williamson*,
  324 N.W.2d 241 (Minn. 1982) ................................................................. 15

*Bertelsen v. Walker*,
  2020 WL 11039168 (Minn. Dist. Ct. Nov. 10, 2020) ................................ 25

*Chapman v. Tristar Prods., Inc.*,
  940 F.3d 299 (6th Cir. 2019) ................................................................... 15

*Datalink Corp. v. Perkins Eastman Architects, P.C.*,
  2015 WL 3607784 (D. Minn. June 8, 2015) .............................................. 10

*Doe 169 v. Brandon*,
  845 N.W.2d 174 (Minn. 2014) ................................................................. 15

*Fairmont Cash Mgmt., L.L.C. v. James*,
  858 F.3d 356 (5th Cir. 2017) ................................................................... 27

*In re Firearm Cases*,
  126 Cal. App. 4th 959 (2005) .................................................................. 20

*Gilbert v. Bangs*,
  813 F. Supp. 2d 669 (D. Md. 2011) .......................................................... 27

*Gladden v. Bangs*,
  2012 WL 604027 (E.D. Va. Feb. 23, 2012) ............................................... 27

*Gradjelick v. Hance*,
  646 N.W.2d 225 (Minn. 2002) ................................................................. 15

*Green Plains Otter Tail, LLC v. Pro-Env't, Inc.*,
  953 F.3d 541 (8th Cir. 2020) ................................................................... 19

*Hack v. Johnson*,
    275 N.W. 381 (Minn. 1937).................................................................. 19

*Harrison v. Jefferson Parish Sch. Bd.*,
    78 F.4th 765 (5th Cir. 2023) .......................................................... 12, 14

*Hawaii v. Standard Oil Co. of Cal.*,
    405 U.S. 251 (1972)............................................................................ 11

*Hilligoss v. Cross Cos.*,
    228 N.W.2d 585 (Minn. 1975).......................................................... 18

*Howard v. Columbia Pub. Sch. Dist.*,
    363 F.3d 797 (8th Cir. 2004) ............................................................ 10

*Johnson v. Consumers Coop. Ass'n of Litchfield*,
    2019 WL 1233263 (Minn. Ct. App. Mar. 18, 2019)......................... 16

*Johnson v. Johnson*,
    611 N.W.2d 823 (Minn. Ct. App. 2000) ................................. 3, 24, 25

*Kamal v. Baker Tilly US, LLP*,
    2022 WL 1050053 (D. Minn. Apr. 7, 2022)...................................... 23

*Missouri ex rel. Koster v. Harris*,
    847 F.3d 646 (9th Cir. 2017) ................................................. 12, 14, 15

*Larson v. Dunn*,
    460 N.W.2d 39 (Minn. 1990)............................................................ 28

*Late Corp. of the Church of Jesus Christ of Latter-Day Saints v. United
    States*,
    136 U.S. 1 (1890)................................................................................ 11

*Liedtke v. Runningen*,
    2016 WL 11491381 (D. Minn. June 20, 2016)................................. 28

*Lubbers v. Anderson*,
    539 N.W.2d 398 (Minn. 1995)......................................................... 16

*Mack v. Viking Ski Shop, Inc.*,
    19 N.E.3d 1013 (Ill. App. Ct. 2014) ................................................ 18

*Maldonado Through Ochoa v. City of Sibley*,
    58 F.4th 1017 (8th Cir. 2023) .......................................................... 25

*Maryland v. Louisiana*,
  451 U.S. 725 (1981) ............................................................................ 12, 15

*Mgmt. Registry, Inc. v. A.W. Cos., Inc.*,
  2022 WL 4706702 (D. Minn. Sept. 30, 2022) ........................................ 10

*Minnesota v. Fleet Farm LLC*,
  679 F. Supp. 3d 825 (D. Minn. 2023) ...................................................... 22

*In re N. Mankato City Council*,
  2021 WL 4517273 (Minn. Ct. App. Oct. 4, 2021) .................................... 23

*Nation v. Barr*,
  2019 WL 2027861 (D. Ariz. May 8, 2019) .............................................. 12

*Newport v. United States*,
  2025 WL 579188 (E.D. Cal. Feb. 21, 2025) ............................................ 17

*Ohio v. GMAC Mortg., LLC*,
  760 F. Supp. 2d 741 (N.D. Ohio 2011) .................................................... 14

*Osborne v. Twin Town Bowl, Inc.*,
  749 N.W.2d 367 (Minn. 2008) ................................................................. 17

*People of State of Ill. v. Life of Mid-Am. Ins. Co.*,
  805 F.2d 763 (7th Cir. 1986) .............................................................. 14, 15

*People of State of N.Y. by Abrams v. Holiday Inns, Inc.*,
  656 F. Supp. 675 (W.D.N.Y. 1984) ......................................................... 15

*People v. Sturm, Ruger & Co.*,
  309 A.D.2d 91 (N.Y. Sup. Ct. 2003) ........................................................ 21

*Estate of Pesante ex rel. Pesante v. Geneva Med. Grp.*,
  2002 WL 398517 (N.Y. Super. Ct. Mar. 11, 2002) .................................. 17

*In re Racing Servs., Inc.*,
  619 B.R. 681 (8th Cir. Bankr. App. Panel 2020) ..................................... 14

*Reichel v. Wendland Utz, LTD*,
  11 N.W.3d 602 (Minn. 2024) ................................................................... 18

*In re Retek Inc. Secs. Litig.*,
  621 F. Supp. 2d 690 (D. Minn. 2009) ...................................................... 10

*Rygwall v. ACR Homes, Inc.*,
  6 N.W.3d 416 (Minn. 2024) ..................................................................... 18

*Seals v. Children's Healthcare*,
    2024 WL 5355335 (Minn. Dist. Ct. Sept. 13, 2024) .................................................. 18

*Sellers v. City of St. Paul*,
    1995 WL 238765 (Minn. Ct. App. Apr. 25, 1995) ...................................................... 28

*State v. Minn. Sch. of Bus., Inc.*,
    935 N.W.2d 124 (Minn. 2019) ...................................................................................... 15

*In re TMJ Implants Prods. Liability Litig.*,
    880 F. Supp. 1311 (D. Minn. 1995) ............................................................................. 15

*Witzman v. Lehrman, Lehrman & Flom*,
    601 N.W.2d 179 (Minn. 1999) ...................................................................................... 23

*Young v. Bryco Arms*,
    821 N.E.2d 1078 (Ill. 2004) .......................................................................................... 20

*Zayed v. Associated Bank, N.A.*,
    913 F.3d 709 (8th Cir. 2019) .......................................................................... 3, 23, 24

**Statutes**

15 U.S.C. § 7903 ................................................................................................................ 26

18 U.S.C. § 922 ............................................................................................................ 26, 28

18 U.S.C. § 923 ................................................................................................................ 26

18 U.S.C. § 924 .................................................................................................... 26, 27, 28

Minn. Stat. § 609.74 .................................................................................... 3, 21, 23

Minn. Stat. § 624.7132 ................................................................................................ 27, 28

Minn. Stat. § 624.7133 .................................................................................................... 28

**Court Rules**

Fed. R. Civ. P. 56 .............................................................................................................. 10

**Other Authorities**

27 C.F.R. § 478.21 ............................................................................................................ 27

27 C.F.R. § 478.124 .......................................................................................................... 27

## INTRODUCTION

Discovery has established virtually all of the assumptions underlying the State's claims against Fleet Farm were wrong. When the State filed its complaint in October 2022, it claimed Fleet Farm was responsible for a widespread surge in gun trafficking stemming from untold numbers of straw purchasers. The State's theory was that because two convicted straw purchasers had acquired handguns from Fleet Farm, there ***must*** have been more. In the State's view, Fleet Farm's sales to Sarah Elwood and Jerome Horton were illustrations of a larger problem: Fleet Farm had purportedly turned a blind eye to straw purchasing, causing a gun trafficking epidemic along the way.

The State was given wide latitude to test these assumptions, conducting exhaustive discovery into Fleet Farm's records and personnel. With discovery over, the undisputed record establishes that:

- There is ***no*** evidence of widespread straw purchasing from Fleet Farm's stores.

- There is ***no*** evidence that Fleet Farm's sales to Elwood and Horton were a substantial factor in any alleged increase in gun trafficking or crime in Minnesota.

- There is ***no*** evidence Fleet Farm knew Elwood or Horton were straw purchasing. The State's ***own expert*** agrees that Fleet Farm never "willfully" or "knowingly" allowed a straw purchase to occur.

In short, this case is no longer about "pervasive" wrongdoing. ECF Doc. 79 ("Compl.") ¶ 113. At its core, this case now concerns a single transaction: the sale of three handguns on July 31, 2021, to Jerome Horton, one of which was used—after multiple non-party criminal actions—during the October 2021 gunfight at the Truck Yard bar in Saint

Paul. This change in legal theory—from an alleged systemic proliferation of firearms throughout Minnesota to an isolated incident involving a discrete number of individuals—reveals the fundamental defect in the State's case that requires summary judgment on all of the State's claims.

*First*, the lack of statewide harm means the State no longer has a quasi-sovereign interest in the case necessary to advance common-law claims. Instead, it is now advancing claims based on "injur[ies] to an identifiable group of individual residents." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982). In fact, that group of individuals is ***currently*** suing Fleet Farm in this District for the ***same alleged wrongdoing***. Under these circumstances, the State lacks *parens patriae* standing for its common-law claims, requiring dismissal of all claims except the statutory public-nuisance and Minnesota Gun Control Act ("MNGCA") claims, which fail for other reasons.

*Second*, the State's changed legal theory undermines causation as to ***all*** of its claims because: (1) the State no longer seeks to recover any "costs to the State" resulting from gun trafficking or violence; (2) unrebutted expert testimony establishes Fleet Farm's conduct was not a "substantial factor" causing any increase in gun trafficking in Minnesota; and (3) it is undisputed that the specific harms alleged in this case may have occurred without Fleet Farm's alleged conduct, and multiple intervening criminal acts occurred between Fleet Farm's sales and those specific harms.

*Third*, the undisputed record now establishes independent bases for dismissing each of the State's claims as a matter of law. The public-nuisance claim fails because the State no longer seeks to recover for a "condition" impacting a "considerable number of members

- 2 -

of the public," Minn. Stat. § 609.74, as there are no facts suggesting Fleet Farm caused the only nuisance pleaded in this case: "[t]he unlawful proliferation of firearms" and "creati[on] [of] an illegal secondary market for firearms," Compl. ¶¶ 108-13. The aiding-and-abetting claim fails because the State's expert agrees Fleet Farm did not have "actual knowledge" that Elwood or Horton were straw purchasing. *E.g.*, *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 715 (8th Cir. 2019). The negligent-entrustment claim fails because the record shows Fleet Farm lacked the right to "control" the firearms after selling them, and neither Elwood nor Horton "used" the firearms "in a manner involving unreasonable risk of physical harm." *Johnson v. Johnson*, 611 N.W.2d 823, 826 (Minn. Ct. App. 2000) (citation omitted). The negligence and negligence per se claims fail because there are no facts suggesting Fleet Farm knowingly violated the laws cited as a basis for the negligence claim, or violated the laws cited as the basis for the negligence per se claim. And the MNGCA claim fails to the extent it is premised on sales the State's expert ***agrees were not wrongful***.

This Court should grant summary judgment for Fleet Farm on all of the State's claims, and dismiss this action with prejudice.

<u>**BACKGROUND**</u>

**I.    The State's claims against Fleet Farm have narrowed substantially since this Court's motion-to-dismiss ruling.**

When this case was filed in October 2022, Attorney General Ellison accused Fleet Farm of "turning a blind eye to straw purchasing and feeding gun trafficking and gun violence." Decl. of Andrew W. Davis ("Davis Decl"), Ex. A at 7. The State's complaint

contained similarly broad assertions of misconduct. *E.g.*, Compl. ¶¶ 109-13 (alleging "widespread" and "pervasive" wrongdoing). After nearly two years of discovery, the State has confirmed what Fleet Farm knew to be true: these assertions were wrong.

Fleet Farm operates seventeen stores in Minnesota. Decl. of Kevin McKown ("McKown Decl.") ¶ 3. At all relevant times, these stores were licensed by ATF to sell firearms. *Id.* From 2017 through 2023, these stores sold 184,379 firearms (roughly 4 firearms per day at each store). McKown Decl., Ex. 1. In 2020 and 2021, these stores sold 28,265 handguns (roughly 2 handguns per day at each store). *Id.* And between January 2018 and October 2023, Fleet Farm stores denied more than 500 attempted transactions as potential straw purchases or otherwise suspicious, with more than 125 denials occurring in Minnesota. McKown Decl., Ex. 2.

The State sought extensive discovery in an effort to show that Fleet Farm was fueling an illegal secondary market for firearms. To meet these requests, Fleet Farm produced, among other things, records reflecting all handgun purchases by "purchasers who bought four or more handguns within a 14-day period" between January 1, 2017 and October 1, 2023. Davis Decl., Ex. B at 61:12-19, 67:9-14, 69:1-4. These records documented 1,099 handguns purchased by 96 individuals, including Elwood and Horton. McKown Decl., Exs. 3-19. After producing these records, Fleet Farm asked the State to "[i]dentify each purchase of a firearm from a Minnesota Fleet Farm store from January 1, 2017 through October 1, 2023 that [it] contend[ed] was a straw purchase" or had "been illegally trafficked, or used in a crime." Davis Decl., Ex. C at 4-5. The State has since

identified **only** the "straw purchases by Jerome Horton and Sarah Elwood." *Id.* at 5-6.[1]  In total, the State has identified 28 transactions involving 36 handguns as suspected straw purchases—all of which were known to the State when it filed its complaint.  *See id.*; *infra* pp. 6-7.  Put differently, the State now contends just 0.0195% of the firearms sold by Fleet Farm sales from 2017 through 2023 were sold to straw purchasers.  It is undisputed that **99.9805% of Fleet Farm's sales during this time were proper**.

Moreover, the State has identified only one firearm purchased at a Fleet Farm store being used in a violent crime.  Any violent crime is a tragedy, but this key fact undermines the State's legal theory because it is now undisputed that "[t]he straw purchases of Horton and Elwood cannot be shown to be a significant cause of [any] alleged increase in gun trafficking or gun crime in Minnesota," and "there is no evidence that any of the ultimate recipients of these guns could not have obtained guns from other sources or by other means that did not involve straw purchasing."  Davis Decl., Ex. Q at 9-11; *see also id.*, Ex. R at 14-16 (State's expert declining to dispute these opinions).

---

[1]  The State initially contended four purchases by Wayne Danielson "were straw purchases."  Davis Decl., Ex. C at 4-5.  The record establishes: (1) Fleet Farm sold four handguns to Danielson in single-handgun transactions across thirty-three months, McKown Decl., Ex. 20; (2) Danielson was indicted for dealing firearms without a license, not for straw purchasing, Davis Decl., Ex. D ¶¶ 10-13; (3) the only firearm Danielson purchased from Fleet Farm identified in the indictment was "seized from [Danielson]'s home," *id.* at 6, indicating it was not transferred to any third party; and (4) the district court granted the government's motion to dismiss the charges because it had "insufficient evidence ... to sustain a prosecution," Davis Decl., Exs. E-F.  Since Fleet Farm explained this, *id.*, Ex. G at 9-11, the State has not contested the propriety of these sales, *id.*, Ex. H; *id.*, Ex. I at 15-19.

- 5 -

## II.    Fleet Farm has robust policies and trainings related to straw purchasing.

Fleet Farm has numerous policies and trainings related to firearm transactions, and straw purchasing specifically.

*First*, Fleet Farm requires firearm employees to undergo training before being authorized to sell firearms, including specific training on identifying and preventing possible straw purchases. McKown Decl., Exs. 21-22; Davis Decl., Ex. S at 22:16-24, 36:12-23, 59:14-17. Among many things, Fleet Farm trains employees that purchasing multiple handguns is a potential straw-purchasing indicator. Davis Decl., Ex. S at 30:2-9, 59:4-17; *id.*, Ex. T at 28:14-25, 84:8-85:12.

*Second*, Fleet Farm provides ongoing, quarterly trainings on firearm policies and procedures, including straw purchasing. *E.g.*, McKown Decl., Ex. 23. Among other things, these trainings instruct employees to "ask questions," be aware of "3310.4 Multiple Handgun form alerts," and pay attention for "[e]xchange of money," "[l]ack of interest of firearm from buyer," and "[p]aying cash for more than one firearm." *Id.*, Ex. 23 at 5, 7; *id.*, Ex. 24 at 8; *id.*, Ex. 25 at 15; *id.*, Ex. 26 at 3; *id.*, Ex. 27 at 21.

*Third*, Fleet Farm stores send "Straw Purchase Alerts" and "Be On the Lookout" Alerts to other stores, and "frequently call[] … neighboring stores to … alert them" about potential straw purchasers. McKown Decl., Ex. 22 at 4-6; Davis Decl., Ex. T at 26:6-18, 33:21-34:6, 63:9-65:22; *id.*, Ex. U at 42:4-45:4, 56:5-57:11, 226:7-227:5. Fleet Farm also tracks potential straw purchasers, and since "the start of 2022," corporate-level employees have been able to "monitor[] and evaluat[e] multiple gun purchases" across stores "to

identify possible straw buyers."  Davis Decl., Ex. T at 29:1-24, 33:15-20, 39:4-20, 127:2-22.

## III.     It is undisputed that Fleet Farm did not know Elwood or Horton were straw purchasing.

The only straw purchases the State asserts have occurred at Fleet Farm's stores are certain sales to Sarah Elwood and Jerome Horton.  *Supra* pp. 4-5.  And it is undisputed that Fleet Farm did not "willfully [or] knowingly allow[] a straw purchase" to Elwood or Horton.  Davis Decl., Ex. P at 307:14-308:5.

### A.     Sarah Elwood purchased thirteen handguns from Fleet Farm stores, and pleaded guilty to deceiving Fleet Farm.

Sarah Elwood purchased thirteen handguns from three Fleet Farm stores between June 2020 and May 2021.  McKown Decl., Exs. 28-37.  Each sale occurred *after* Elwood was issued a permit to carry, and *after* NICS directed Fleet Farm to "Proceed" with the transaction.  *Id.*  After being federally charged with straw purchasing, Elwood pleaded guilty to, among other things, "knowingly making false and fictitious oral and written statements" to Fleet Farm and other FFLs that were "intended or likely to deceive those dealers regarding a fact material to the lawfulness of the sales."  Davis Decl., Ex. V at 1. Of Elwood's transactions, the State's expert identifies *only one* that he contends Fleet Farm should have stopped: the May 12, 2021 sale.  *Id.*, Ex. P at 215:16-216:3.[2]  The State has not identified any harms caused by the firearms sold to Elwood on May 12, 2021.

---

[2] Fleet Farm has moved to exclude most of the State's expert's testimony, but is not moving to exclude his testimony regarding his observations and assessment of Fleet Farm's sales to Jerome Horton and Sarah Elwood.

### B.    Jerome Horton purchased twenty-three handguns from Fleet Farm, and pleaded guilty to deceiving Fleet Farm.

Jerome Horton purchased twenty-three handguns from four Fleet Farm stores between June 15 and October 17, 2021.  McKown Decl., Exs. 38-55.  Each of these sales occurred *after* Horton was issued a permit to purchase, and *after* NICS directed Fleet Farm to "Proceed" with the transaction.  *Id.*  After being federally charged with straw purchasing, Horton pleaded guilty to, among other things, "knowingly and voluntarily ma[king] a false written statement to Fleet Farm … in connection with the acquisition of a firearm, [that] was intended and likely to deceive Fleet Farm about a fact material to the lawfulness of the sale of the firearm."  Davis Decl., Ex. W ¶ 2.  Of Horton's transactions, the State's expert has identified eleven that he contends Fleet Farm should have stopped: the sale on June 15, 2021, and those that occurred between July 27 and October 11, 2021.  Davis Decl., Ex. P at 209:20-23, 213:12-24.  He does not contend there was reason to stop any sales to Horton between July 4 and 26, *id.*, and agrees the October 17 sale "was not … improper" because it occurred "at the request of law enforcement," *id.* at 204:20-206:1.

One firearm purchased by Horton was used in a violent crime.  In October 2021, Devondre Phillips used a handgun purchased by Horton on July 31, 2021, during a gunfight at the Truck Park bar in St. Paul.  Davis Decl., Ex. X.  The following chain of events led to the handgun's use in the gunfight: (1) Horton obtained a permit to acquire a firearm, McKown Decl., Ex. 46 at 3; (2) NICS directed Fleet Farm to "Proceed" with selling to Horton, *id.* at 2; (3) Horton transferred the firearm to Gabriel Young-Duncan, Davis Decl.,

Ex. Y at 7, 14; (4) the firearm came into the possession of "Mo," *id.* at 10; (5) "Mo" sold the firearm to Phillips, *id.*; and (6) Phillips used the firearm during the gunfight, *id.* at 11.

The gunfight resulted in fourteen individuals being wounded and the death of one individual.  *Id.*, Ex. Z at 3.  These are the only persons the State has identified as being harmed by Fleet Farm's alleged conduct.  And after failing to identify any expert testimony regarding claimed "costs to the State" or other societal harms, *id.*, Exs. H, BB, the State conceded it "will not be seeking damages from Fleet Farm in this action due to the costs to the State associated with investigating, monitoring, treating, policing, and remediating the misuse of firearms," *id.*, Ex. I at 22.

## IV.    The Truck Yard shooting victims have commenced a separate civil action against Fleet Farm.

On October 8, 2024, Beth Wiley and Kevin Wiley (as co-trustees for the next-of-kin of Marquisha Wiley), Chassity Ashford, Sherron Ashford, Wayne Germond, Nicholas Guerrero, Danielle Hernandez, Charisma Kyles, Jordan Larson, Keeshara Perry, Paris Pollard, Latosha Skinner, Estan Tyler, Andrea Weathersby, Ernest Whitmore, and Kevaughn Wiley—all claimed direct or indirect victims of the Truck Yard gunfight—filed a civil action against Fleet Farm and Truck Yard.  *Id.*, Ex. AA.  In the *Wiley* action, plaintiffs also assert negligence, negligence per se, and negligent-entrustment claims against Fleet Farm stemming from the July 31, 2021 sale to Horton, and seek recovery for "personal bodily injuries" and "other economic damages."  *Id.* ¶¶ 85-107.[3]

---

[3] Fleet Farm's motion to dismiss the *Wiley* complaint is pending.  *See Wiley v. Fleet Farm LLC*, Case No. 0:24-cv-04135-LMP-JFD, ECF Doc. 22 (D. Minn. Dec. 9, 2024).

## LEGAL STANDARD

Summary judgment should be granted "where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law." *In re Retek Inc. Secs. Litig.*, 621 F. Supp. 2d 690, 697 (D. Minn. 2009). A fact is "material" if "it might affect the outcome of the suit," and a "genuine issue" exists if the evidence "could lead a reasonable jury to return a verdict for either party." *Id.* This Court "must view the facts in the light most favorable to the non-moving party," but the State— as the party "opposing summary judgment"—bears the burden of offering "evidence from which a rational trier of fact could find in [their] favor on each element of a claim." *Id.* To satisfy this burden, the State "must come forward with *specific facts* showing that there is a genuine issue for trial." *Datalink Corp. v. Perkins Eastman Architects, P.C.*, 2015 WL 3607784, at *18 (D. Minn. June 8, 2015) (emphasis added); *see also, e.g.*, *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004) ("The plaintiff may not then simply point to allegations made in her complaint but must identify and provide evidence of specific facts creating a triable controversy." (cleaned up)). This Court may grant summary judgment on all or a portion of a claim. Fed. R. Civ. P. 56(a), (g); *Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 2022 WL 4706702, at *15 (D. Minn. Sept. 30, 2022).

## ARGUMENT

### I. The State lacks *parens patriae* standing to advance its common-law claims.

The State has invoked *parens patriae* standing as the authority for its negligence, negligence per se, negligent-entrustment, and aiding-and-abetting claims. Compl. ¶¶ 7, 14;

*id.*, Requested Relief ¶ 6. The undisputed facts and substantial narrowing of the case establish the State now lacks *parens patriae* standing to continue pursuing these claims.

*Parens patriae* standing exists to prevent "injury to those who cannot protect themselves," *Late Corp. of the Church of Jesus Christ of Latter-Day Saints v. United States*, 136 U.S. 1, 57 (1890), and derives from the notion of "royal prerogative": that "the sovereign … [i]s the superintendent of 'all charitable uses in the kingdom,'" *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 257 (1972) (quoting 3 W. Blackstone, Commentaries *47). The Supreme Court articulated the modern scope of *parens patriae* standing in *Snapp*, and explained that it requires a state "assert an injury to … a 'quasi-sovereign' interest." 458 U.S. at 600-08. A "quasi-sovereign interest" is one "apart from the interests of particular private parties," and its characteristics "fall into two general categories." *Id.* at 607. **First**, "a State has a quasi-sovereign interest in the health and well-being … of its residents ***in general***." *Id.* (emphases added). This requires "more … than injury to an identifiable group of individual residents"—the alleged injury must have been felt by "a ***sufficiently substantial*** segment of [the State's] population." *Id.* (emphasis added). **Second**, "a State has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system." *Id.*[4]

By contrast, a state lacks *parens patriae* standing "to pursue the interests of a private party" because such interests "are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement." *Id.* at

---

[4] This case does not implicate the second quasi-sovereign interest.

602. "In such situations, the State is no more than a nominal party." *Id.* Put simply, if the State is "stepping in to represent the interests of particular citizens," it is "only a nominal party without a real interest of its own" and "will not have standing under the *parens patriae* doctrine." *Id.* at 600. Or as the Supreme Court explained in *Maryland v. Louisiana*, *parens patriae* standing is disfavored where the alleged harm "fall[s] on a small group of citizens who are likely to challenge the [alleged wrongdoing] directly." 451 U.S. 725, 739 (1981). Instead, *parens patriae* is properly invoked only where "the injury alleged affects the general population of a State in a substantial way." *Id.* at 737. Applying *Snapp* and *Maryland*, numerous courts have held "*parens patriae* standing is inappropriate where an aggrieved party could seek private relief." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 652 (9th Cir. 2017); *see also, e.g.*, *Harrison v. Jefferson Parish Sch. Bd.*, 78 F.4th 765, 773 (5th Cir. 2023) ("To invoke the [*parens patriae*] doctrine a state must show that it has a quasi-sovereign interest … and the injury to that interest affects a sufficiently substantial segment of the state's population." (cleaned up)); *Nation v. Barr*, 2019 WL 2027861, at *4-5 (D. Ariz. May 8, 2019) (holding *parens patriae* requires a threat to "the health or well-being of an entire population," and does not authorize claims on behalf of "a particular private party").

These principles establish the State lacks *parens patriae* standing to continue prosecuting its common-law claims against Fleet Farm because those claims are based on harms to an identifiable group of residents, and because those residents are currently seeking private relief from Fleet Farm for the same alleged wrongdoing.

*First*, the undisputed facts show the State is not seeking to recover for injuries to Minnesota residents "in general." *Snapp*, 458 U.S. at 607. Rather, its claims are based on alleged "injur[ies] to an identifiable group of individual residents," *id.*: the fifteen victims of the Truck Yard shooting (and, possibly, the three "[f]amily members who discovered a firearm purchased from Fleet Farm in their yard"). Davis Decl., Ex. Z at 3; *id.*, Ex. BB at 2-4. The State does not and cannot attribute to Fleet Farm any claimed harms to other residents, let alone to a "***substantial segment*** of [Minnesota's] population." *Snapp*, 458 U.S. at 607 (emphasis added). There is no such evidence in the record: the State has no expert testimony asserting Fleet Farm's conduct has harmed the general public, and Fleet Farm has offered unrebutted testimony that its alleged conduct "cannot be shown to be a significant cause of [any] alleged increase in gun trafficking or gun crime in Minnesota." Davis Decl., Ex. Q at 9. The State's concession that it is not "seeking damages from Fleet Farm in this action due to the costs to the State associated with investigating, monitoring, treating, policing, and remediating the misuse of firearms," *id.*, Ex. I at 22, further establishes that its claims are not premised on alleged harms to the public at large. Disavowing these damages also confirms there is no quasi-sovereign interest in play: the State's claimed harms are wholly derivative of those to an "identifiable group" of Minnesotans, such that it has no discernable interest "apart from the interests of particular private parties." *Snapp*, 458 U.S. at 607.

Numerous courts have concluded states lack *parens patriae* standing in analogous circumstances, including circumstances involving claimed injuries to exponentially more residents. For example, in *Koster*, the Ninth Circuit concluded plaintiff states lacked

*parens patriae* standing to challenge California laws imposing certain requirements on egg farmers because "complete relief would be available to the egg farmers themselves, were they to file a complaint on their own behalf," and the laws were "not alleged to threaten the health of the entire population."  847 F.3d at 652-53.  Likewise, in *Harrison*, the Fifth Circuit concluded Louisiana lacked *parens patriae* standing to challenge a school board's discriminatory policies because its "asserted interest … [wa]s wholly derivative of the interests of" 52,000 students, and "individual students c[ould] sue to get relief from [the] alleged discrimination."  78 F.4th at 773; *see also, e.g.*, *People of State of Ill. v. Life of Mid-Am. Ins. Co.*, 805 F.2d 763, 766 (7th Cir. 1986) (*parens patriae* standing lacking where Illinois Attorney General was "merely a nominal party in th[e] suit to recover for injury to eight consumers"); *Ohio v. GMAC Mortg., LLC*, 760 F. Supp. 2d 741, 749 (N.D. Ohio 2011) (*parens patriae* standing lacking where "the alleged injury was inflicted only on an identifiable group of residents—Ohio homeowners with a mortgage from [defendant] that is in danger of, or already in, foreclosure").

Because the narrowed nature of the State's claims establishes it is seeking to recover for harms to a small, identifiable group of Minnesotans, definitionally the State is no longer seeking to recover for harms felt by a "***substantial segment*** of [Minnesota's] population."  *Snapp*, 458 U.S. at 607 (emphasis added).  Accordingly, the State lacks *parens patriae* standing to continue prosecuting its common-law claims, and those claims should be dismissed.  *E.g.*, *In re Racing Servs., Inc.*, 619 B.R. 681, 685-86 (8th Cir. Bankr. App. Panel 2020) (affirming state lacked *parens patriae* standing where it "failed to show the

requisite injury to a substantial segment of North Dakota's population" and "the record [wa]s devoid of evidence establishing [any] 'indirect effects'" to that population).

*Second*, and relatedly, not only do the State's claims concern alleged harm to "a small group of citizens who are *likely* to challenge the [alleged wrongdoing] directly," *Maryland*, 451 U.S. at 739 (emphasis added), that small group of citizens is *actively litigating* against Fleet Farm and seeking to "obtain complete relief" for the same alleged wrongdoing, *Koster*, 847 F.3d at 651. *See* Davis Decl., Ex. AA. These unusual circumstances confirm the State is "merely a nominal party" lacking *parens patriae* standing. *Life of Mid-Am.*, 805 F.2d at 766; *see also Koster*, 847 F.3d at 652; *Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 306 (6th Cir. 2019) (holding Arizona lacked *parens patriae* standing where "the only injured alleged" was injury to Arizona-based class members in ongoing lawsuit); *People of State of N.Y. by Abrams v. Holiday Inns, Inc.*, 656 F. Supp. 675, 678 (W.D.N.Y. 1984) (concluding New York Attorney General lacked *parens patriae* standing to challenge the same "alleged discriminating practices" that were actively being challenged by individuals).

## II.     All of the State's claims fail as a matter of law for lack of proximate causation.

All of the State's claims against Fleet Farm requires proving Fleet Farm proximately caused the alleged harms.[5]  Proximate cause is absent as a matter of law if "reasonable

---

[5] *E.g.*, *In re TMJ Implants Prods. Liability Litig.*, 880 F. Supp. 1311, 1319 (D. Minn. 1995) (aiding and abetting); *State v. Minn. Sch. of Bus., Inc.*, 935 N.W.2d 124, 134-38 (Minn. 2019) (section 8.31); *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014) (negligence); *Gradjelick v. Hance*, 646 N.W.2d 225, 232 (Minn. 2002) (negligence per se); *Axelson v. Williamson*, 324 N.W.2d 241, 244 (Minn. 1982) (negligent entrustment);

- 15 -

minds" would not find it present. *Lubbers v. Anderson*, 539 N.W.2d 398, 402 (Minn. 1995). Initially, the State sought to attribute two types of harm to Fleet Farm: general societal harm from gun violence and trafficking in Minnesota, and specific harms from certain criminal acts. The undisputed facts establish Fleet Farm was not a legal cause of either type of harm. As to alleged general societal harm, the substantial narrowing of the State's claims establishes this causation theory fails as a matter of law. As for the only specific harm remaining in this case—the Truck Yard shooting—the undisputed record establishes an attenuated causal chain involving no fewer than ***four*** intervening criminal acts, rendering proximate causation absent as a matter of law.

### A.    Fleet Farm's actions were not a substantial cause of any general societal harm resulting from gun violence or trafficking.

The State alleged Fleet Farm was responsible for alleged "widespread" societal harms "to the State and its residents" based on "[t]he unlawful proliferation of firearms." Compl. ¶¶ 108-10; *see also id.* ¶¶ 62-69. This causal theory fails for two reasons.

***First***, with discovery closed, the State has confirmed it is not seeking to recover for "costs to the State associated with investigating, monitoring, treating, policing, and remediating the misuse of firearms," Davis Decl., Ex. I at 22, undoubtedly because there is no evidence in the record of any such harm or associated costs. This alone necessitates holding the State cannot establish "widespread" (or any) societal harm—and thus cannot show Fleet Farm's conduct was a substantial factor contributing to such harm.

---

*Johnson v. Consumers Coop. Ass'n of Litchfield*, 2019 WL 1233263, at *2 (Minn. Ct. App. Mar. 18, 2019) (nuisance).

**Second**, to the extent the State still seeks to recover for alleged "widespread" societal harm, it has offered no expert testimony regarding such claimed harms and there is no evidence of such harm in the record.  On the contrary, unrebutted expert testimony establishes "[t]he straw purchases of Horton and Elwood cannot be shown to be a significant cause of [any] alleged increase in gun trafficking or gun crime in Minnesota." Davis Decl., Ex. Q at 9.  Black-letter law provides a defendant may not be held liable for a harm unless the plaintiff satisfies its burden of showing the defendant's conduct was a "substantial factor" in causing that harm.  *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 372 (Minn. 2008).  Because the undisputed facts show Fleet Farm's alleged conduct was not a substantial factor causing any alleged general societal harms from gun trafficking or gun violence, summary judgment should be granted for lack of causation.  *See id.*; *see also, e.g.*, *Newport v. United States*, 2025 WL 579188, at *5 (E.D. Cal. Feb. 21, 2025) (granting summary judgment for lack of causation where plaintiff did not challenge defendant's expert's testimony that their conduct was "not a substantial factor in causing Plaintiff's alleged injuries"); *Estate of Pesante ex rel. Pesante v. Geneva Med. Grp.*, 2002 WL 398517, at *5 (N.Y. Super. Ct. Mar. 11, 2002) (granting summary judgment for lack of causation where plaintiff's expert did not rebut opinion that alleged misconduct was not "a substantial factor in bringing about" decedent's injuries).

### B.    Fleet Farm did not proximately cause the specific harms resulting from Elwood's or Horton's criminal actions.

The only facts in the record regarding specific harms are those resulting from the October 2021 Truck Yard shooting.  Davis Decl., Ex. Z at 3.  There is no evidence of any

other specific harms, and as to this specific harm, the undisputed facts establish proximate cause is lacking as a matter of law, for two independent reasons.

***First***, causation is absent as a matter of law "if the harm would have occurred even without the negligent act." *Reichel v. Wendland Utz, LTD*, 11 N.W.3d 602, 613 (Minn. 2024) (quoting *George v. Est. of Baker*, 724 N.W.2d 1, 11 (Minn. 2006)). The State bears the burden of proving "the harm would not have occurred without the negligent act." *Rygwall v. ACR Homes, Inc.*, 6 N.W.3d 416, 429 (Minn. 2024). Here, Fleet Farm's expert testified that "there is no evidence that any of the ultimate recipients of these guns could not have obtained guns from other sources or by other means that did not involve straw purchasing" from Fleet Farm. Davis Decl., Ex. Q at 9-11 (citations omitted). The State's expert ***did not dispute this testimony***, *see id.*, Ex. R at 14-16, nor is there any contrary evidence in the record. In light of this testimony and the absence of contrary evidence, the State cannot meet its burden of proving the alleged harms "would not have occurred without" Fleet Farm's alleged wrongdoing. *Rygwall*, 6 N.W.3d at 429. Summary judgment should be granted for lack of causation where, as here, plaintiffs' experts cannot "convince the jury, without speculation, that the harm would not have occurred without the negligent act." *Seals v. Children's Healthcare*, 2024 WL 5355335, at *6-7 (Minn. Dist. Ct. Sept. 13, 2024) (cleaned up); *see also, e.g.*, *Mack v. Viking Ski Shop, Inc.*, 19 N.E.3d 1013, 1019 (Ill. App. Ct. 2014) (granting summary judgment where plaintiff "fail[ed] to establish that *but for* defendant's negligence … [the] injury would not have occurred").

***Second***, "[a]s a general rule, a criminal act of a third person is an intervening efficient cause sufficient to break the chain of causation." *Hilligoss v. Cross Cos.*, 228

N.W.2d 585, 586 (Minn. 1975). This is because "furnish[ing] a condition by which the injury by the subsequent independent act of a third person occurred" does not proximately cause that injury. *Hack v. Johnson*, 275 N.W. 381, 385 (Minn. 1937); *see also Green Plains Otter Tail, LLC v. Pro-Env't, Inc.*, 953 F.3d 541, 547 (8th Cir. 2020) (proximate cause is absent if an "intervening efficient cause" "actively worked to bring about a result which would not otherwise have followed from the original negligence" and was not "reasonably foreseeable by the original wrongdoer" (citation omitted)).

Here, the undisputed record establishes the harms resulting from the Truck Yard shooting were not foreseeable to Fleet Farm because: Horton was licensed by Minnesota to purchase firearms, McKown Decl., Exs. 38-55; NICS told Fleet Farm to "Proceed" with every sale to Horton, *id.*; Horton pleaded guilty to operating in ways "intended and likely to deceive" Fleet Farm, Davis Decl., Ex. W ¶ 2; the State's expert has testified Fleet Farm did not "willfully [or] knowingly allow[] a straw purchase" to occur, *id.*, Ex. P at 307:14-308:5; and ***multiple*** unforeseeable criminal acts occurred ***after*** Horton acquired the at-issue firearm from Fleet Farm. Indeed, the undisputed facts establish at least ***four*** unforeseeable criminal acts occurred between the sale and the shooting: (1) Horton's transfer of the firearm to Young-Duncan, Davis Decl., Ex. Y at 7, 14; (2) Young-Duncan's (or another non-party's) transfer of the firearm to "Mo," *id.* at 10; (3) Mo's sale of the firearm to Devondre Phillips, *id.*; and (4) Phillips' use of the firearm during the Truck Yard gunfight, *id.* at 11.

Caselaw from the Eighth Circuit and other jurisdictions establish that where this type of causal chain exists, proximate causation is absent as a matter of law. In *Ashley*

*County v. Pfizer, Inc.*, the Eighth Circuit affirmed the district court's holding that allegations that cold-medicine manufacturers proximately caused a methamphetamine epidemic in Arkansas failed as a matter of law because the criminal acts of individuals "further down the illegal line of manufacturing and distribution" were "sufficient to stand as the cause of the injury." 552 F.3d 659, 670 (8th Cir. 2009) (quotation omitted). Similar to the causal chain here, *Ashley County* involved ***three*** intervening criminal acts: (1) individuals purchasing cold medicine with criminal intent to use it to cook methamphetamine; (2) individuals cooking the medicine into methamphetamine; and (3) individuals distributing methamphetamine into the black market. *Id.* at 668. The Eighth Circuit explained proximate cause was lacking "even if the manufacturers knew that cooks purchased their products" for unlawful purposes, because criminal wrongdoing is not a "natural and probable consequence[]" of selling a lawful product "through highly regulated legal channels." *Id.* at 670-71. So too here: the record establishes Fleet Farm sold "highly regulated" lawful products to Elwood and Horton, after receiving an affirmative message from NICS to "proceed," and unforeseeable criminal actions occurred between Fleet Farm's sale and any alleged harm.

Other courts have similarly held proximate causation is lacking in cases against both firearm manufacturers and sellers for harms caused by independent criminal wrongdoing. *E.g.*, *In re Firearm Cases*, 126 Cal. App. 4th 959, 991 (2005) (granting summary judgment on public-nuisance claim for lack of causation where plaintiffs "target[ed] the manufacturer of a legal, non-defective product that lawfully distributes its product only to [persons] licensed by the federal government"); *Young v. Bryco Arms*, 821 N.E.2d 1078, 1090-91

(Ill. 2004) (granting motion to dismiss for lack of causation where firearm manufacturers and distributors were "in the business of providing a lawful product that may be used unlawfully" and "the person whose criminal conduct directly caused the injur[ies] … was several steps removed from" defendants); *People v. Sturm, Ruger & Co.*, 309 A.D.2d 91, 103 (N.Y. Sup. Ct. 2003) (granting motion to dismiss for lack of causation where lawful "commercial activity" was followed by harms "caused directly and principally by the criminal activity of intervening third parties").

The record in this case establishes that, pursuant to *Ashley County*, *In re Firearm Cases*, *Young*, and *Sturm, Ruger & Co.*, proximate causation is absent as a matter of law, necessitating summary judgment for Fleet Farm on all claims.

## III.  The undisputed record establishes additional bases for dismissing each of the State's claims.

The State's lack of *parens patriae* standing forecloses its common-law claims, and all of its claims fail for lack of proximate causation.  Even setting these issues aside, independent bases exist for granting summary judgment on each of the State's claims.

### A.  The undisputed facts establish the State's public-nuisance claim fails as a matter of law.

The State asserts a claim under Minnesota's criminal public-nuisance statute, which prohibits "maintain[ing] or permit[ting] a condition which unreasonably … injures or endangers … ***any considerable number of members of the public***."  Minn. Stat. § 609.74 (emphasis added); Compl. ¶¶ 104-13.  This claim fails for two reasons.

***First***, there is no evidence in the record establishing the existence of—let alone that Fleet Farm is responsible for "maintain[ing] or permit[ting]"—the nuisance pleaded in the

- 21 -

complaint. In the complaint, the State contended Fleet Farm engaged in "widespread and persistent" wrongdoing that caused the nuisance of an "unlawful proliferation of firearms" and "illegal secondary market for firearms" in Minnesota. Compl. ¶¶ 108-09, 113. The State also claimed it "incurred and continues to incur substantial costs" responding to this alleged nuisance. *Id.* ¶¶ 109-10. This Court concluded these allegations stated a plausible claim, explaining the alleged nuisance was the "rise in gun crimes" in Minnesota, including the allegation that "between 2019 and 2021 there was a 168% increase in guns being recovered as part of a crime within six months from purchase." *Minnesota v. Fleet Farm LLC*, 679 F. Supp. 3d 825, 844 (D. Minn. 2023) (citing Compl. ¶ 65).

With discovery closed, ***none*** of these allegations have factual support. There is no evidence that Fleet Farm contributed substantially to any increase in gun trafficking or crimes in Minnesota. The State has not offered any expert testimony regarding an "unlawful proliferation of firearms" in Minnesota, let alone testimony (or other evidence) purporting to attribute that "condition" to Fleet Farm's conduct. And the State has disavowed any intention of seeking to recover its claimed "substantial costs" associated with responding to this alleged nuisance. On the contrary, unrebutted expert testimony establishes "[t]he straw purchases of Horton and Elwood cannot be shown to be a significant cause of [any] alleged increase in gun trafficking or gun crime in Minnesota." Davis Decl., Ex. Q at 9-11. The State has failed to put forth any evidence supporting its pleaded nuisance, mandating dismissal of the claim.

***Second***, the undisputed record demonstrates Fleet Farm's alleged conduct did not "injure[] or endanger[]" a "considerable number" of Minnesotans, as required to advance

a public-nuisance claim under section 609.74.  Rather, the State's case against Fleet Farm

has narrowed to alleged injuries and endangerment to less than two dozen Minnesotans.

*See* Davis Decl., Ex. Z at 3; *id.*, Ex. BB at 2-4; *supra* pp. 10-15.  This fact pattern cannot

support a public-nuisance claim, because Minnesota courts have ***never*** recognized injuries

to such a small segment of the population as providing a basis for a public-nuisance claim

under section 609.74.  *Cf. In re N. Mankato City Council*, 2021 WL 4517273, at *5 (Minn.

Ct. App. Oct. 4, 2021) (concluding no nuisance existed under section 609.74 where record

established  only  three  residents  were  "unreasonably  annoyed"  by  condition);  *see also*

*Ashley Cnty.*, 552 F.3d at 673 ("It is not the role of a federal court to expand state law in

ways not foreshadowed by state precedent." (cleaned up)).

> **B.    The aiding-and-abetting claim fails because Fleet Farm did not have
> "actual knowledge" that Elwood or Horton were straw purchasing.**

The State's aiding-and-abetting claim requires proving actual knowledge—*i.e.*, that

Fleet Farm ***knew*** Elwood or Horton were straw purchasing at the time of the sales.  *See*

*Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 186 (Minn. 1999) (explaining

aiding-and-abetting theory requires evidence of "scienter," that "the defendants must *know*

that the conduct they are aiding and abetting is a tort").  Disputes regarding whether a

defendant had "awareness of the conduct in question, that it raised 'red flags,'" or engaged

in conduct "amount[ing] to gross negligence" are insufficient for an aiding-and-abetting

claim to withstand summary judgment.  *Zayed*, 913 F.3d at 715 (cleaned up); *see also*

*Kamal v. Baker Tilly US, LLP*, 2022 WL 1050053, at *10 (D. Minn. Apr. 7, 2022) ("Actual

knowledge is more than awareness that conduct raised 'red flags' that, with the benefit of hindsight, should have prompted further investigation or inquiry." (cleaned up)).

At most, as detailed below, *infra* Section III.E, there may be some disputed facts regarding whether Fleet Farm ***should have known*** a small subset of Elwood's and Horton's transactions were straw purchases. But there are no facts in the record indicating Fleet Farm had "actual knowledge" Elwood or Horton were straw purchasing. In fact, the State's expert testified he "do[es]n't believe that [Fleet Farm] willfully and knowingly allowed a straw purchase." Davis Decl., Ex. P at 307:14-308:5. Although the State may attempt to raise fact disputes regarding whether certain of Elwood's and Horton's transactions "raised 'red flags,'" that is ***exactly*** what *Zayed* instructs is insufficient to withstand summary judgment. 913 F.3d at 715. This is determinative, and establishes Fleet Farm did not "aid-and-abet" Elwood or Horton.

### C. The undisputed facts establish the State's negligent-entrustment claim fails.

The record also establishes the State's negligent-entrustment claim fails for two reasons.

***First***, a negligent-entrustment claim fails as a matter of law where a defendant "had no control of the [property] on the day the [wrongdoing] occurred." *Johnson*, 611 N.W.2d at 827. Accordingly, in *Johnson*, the Minnesota Court of Appeals affirmed the grant of summary judgment for defendants that sold a pickup truck to a third-party, and that third-party's significant other caused a fatal accident by driving the pickup while intoxicated.

- 24 -

*Id.* at 825-27.[6]  Likewise, here there are no facts indicating Fleet Farm controlled the firearms sold to Horton and Elwood at the time that their (and others') wrongdoing occurred, so Fleet Farm cannot be held liable for negligent entrustment.

*Second*, Minnesota law does not condone negligent-entrustment liability where a person *other than the direct entrustee* uses property in a dangerous manner.  *E.g.*, *id.* at 826 (explaining doctrine requires entrustee to "use" the property "in a manner involving unreasonable risk of physical harm" (quotation omitted)).  Here, that is precisely what happened: third parties with no connection to Fleet Farm used certain firearms in a dangerous manner.  Because Fleet Farm did not directly entrust firearms to the individuals who *used* them in a dangerous manner, Minnesota law requires dismissal of the negligent-entrustment claim.  *E.g.*, *Bertelsen v. Walker*, 2020 WL 11039168, at \*3-4 (Minn. Dist. Ct. Nov. 10, 2020) (concluding defendant not liable for negligent entrustment where direct entrustee allowed a third-party to drive vehicle, resulting in an accident).

### D.    The undisputed facts establish Fleet Farm has not violated the laws cited by the State to support its negligence and negligence per se claims.

Summary judgment should be granted on claims premised on alleged violations of certain laws if "there is no evidence that [defendant] violated" those laws.  *Maldonado Through Ochoa v. City of Sibley*, 58 F.4th 1017, 1021 (8th Cir. 2023).  The State has invoked thirteen laws to support its negligence claim, and nine of those laws to also support

---

[6] *Johnson* also noted Minnesota law had never recognized negligent entrustment "in the context of a sale," which is another basis for granting summary judgment on this claim.  *Id.* at 826; *Bertelsen v. Walker*, 2020 WL 11039168, at \*4 (Minn. Dist. Ct. Nov. 10, 2020) ("[I]n *Johnson* … the Minnesota Court of Appeals held that the doctrine of negligent entrustment did not apply in the area of sales …."); *see also Ashley Cnty.*, 552 F.3d at 673.

its negligence per se claim.  Compl. ¶¶ 74-75, 84.  For any of these laws to provide a basis for its negligence claim, the State must prove Fleet Farm committed a "knowing" violation. *See* 15 U.S.C. § 7903(5)(A)(iii) (exempting only "knowing[] violat[ions] [of] a State or Federal statute applicable to the sale … of [firearms]" from being preempted); Compl. ¶ 75 (alleging "knowing[] violat[ions]" of cited laws).  Here, the record establishes Fleet Farm did not ***knowingly*** violate the thirteen laws cited by the State in support of its negligence claim, Compl. ¶¶ 74-75, and also did not violate the nine laws also cited by the State in support of its negligence per se claim, *id.* ¶ 84:

      **18 U.S.C. §§ 922(a)(1), 923(a)**:  These statutes have not been violated because Fleet Farm's Minnesota stores were "licensed" at all relevant times.  McKown Decl. ¶ 3.

      **18 U.S.C. § 922(a)(6)**:  This statute applies only to the "person" who acquires or attempts to acquire "any firearm … from a … licensed dealer," so cannot provide the basis for liability against Fleet Farm.

      **18 U.S.C. §§ 922(m), 924(a)(3)**:  These statutes have not been violated because there are no facts indicating Fleet Farm "knowingly ma[d]e any false entry in, … fail[ed] to make appropriate entry in, … fail[ed] to properly maintain," or "knowingly … ma[de] any false statement" in ATF-mandated records.

      **18 U.S.C. § 924(a)(1)(A)**:  This statute applies only to the person who "knowingly makes any false statement or representation" in connection with a firearm transaction, so cannot provide the basis for liability against Fleet Farm.

**18 U.S.C. § 924(a)(1)(D)**: This statute has not been violated because there are no facts indicating Fleet Farm "willfully" violated any GCA provisions. *See* Davis Decl., Ex. P at 307:14-308:5.

**27 C.F.R. §§ 478.21(a), 478.124(c)(5)**: These regulations have not been violated because there are no facts indicating Fleet Farm failed to "properly complete[]" or failed to "sign and date" ATF forms. *E.g.*, *Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 359 (5th Cir. 2017); *Gladden v. Bangs*, 2012 WL 604027, at *2 (E.D. Va. Feb. 23, 2012); *Gilbert v. Bangs*, 813 F. Supp. 2d 669, 676 (D. Md. 2011); *Am. Arms Int'l v. Herbert*, 2008 WL 8098466, at *5 (D. Md. Feb. 18, 2008); *see also* McKown Decl., Exs. 28-55.

**27 C.F.R. § 478.124(c)(1)**: This regulation has not been violated because the undisputed facts show Fleet Farm "obtain[ed] a Form 4473" from Elwood and Horton before completing each sale. McKown Decl., Exs. 28-55.

**Minn. Stat. § 624.7132, subd. 15(a)(2)**: The undisputed facts—as confirmed by the State's expert, *see* Davis Decl., Ex. P at 307:14-308:5—establish Fleet Farm did not "know[]" Horton or Elwood were straw purchasing.[7]

**Minn. Stat. § 624.7132, subd. 15(a)(4)**: This statute applies only to the "person who … makes a false statement [to] become a transferee," so cannot provide the basis for liability against Fleet Farm.

---

[7] The State invokes Minn. Stat. § 624.7132, subd. 15(a)(2), only as a basis for their negligence claim, which requires them to prove a "***knowing***" violation by Fleet Farm. *Supra* p. 26. This law is not invoked as a basis for the negligence per se claim. *See* Compl. ¶ 84.

**Minn. Stat. § 624.7133**:  This statute applies only to the "person who purchases …
a firearm," so cannot provide the basis for liability against Fleet Farm.

Additionally, eight laws invoked by the State to support its negligence claim (and
five laws invoked to support its negligence per se claim)[8] are criminal provisions that do
not "expressly or by clear implication" provide for civil liability, so cannot provide a basis
for the State's negligence or negligence per se claims.  *Larson v. Dunn*, 460 N.W.2d 39,
47 n.4 (Minn. 1990); *accord Liedtke v. Runningen*, 2016 WL 11491381, at *10 (D. Minn.
June 20, 2016); *Sellers v. City of St. Paul*, 1995 WL 238765, at *1 (Minn. Ct. App. Apr.
25, 1995).

### E.    Summary judgment is also warranted on most of the MNGCA claim.

The MNGCA provides, in relevant part, that an FFL may not "transfer[] a pistol …
to a person who has made a false statement in order to become a transferee, if the [FFL]
knows or has reason to know the transferee has made the false statement."  Minn. Stat.
§ 624.7132, subd. 15(a)(2).  The undisputed facts establish Fleet Farm did not "know or
ha[ve] reason to know" Elwood or Horton were straw purchasing during sixteen of their
transactions.

As for Elwood, of her ten transactions, the State's expert testified only "the May
12th, 2021, transaction should not have been allowed to proceed."  Davis Decl., Ex. P at
215:16-216:3.  As for Horton, the State's expert testified Fleet Farm should only have
stopped the transactions on June 15 and between July 27 and October 11, 2021.  *Id.* at

---

[8]  18 U.S.C. § 922(a)(6), (m); *id.* § 924(a)(1)(A), (D); *id.* § 924(a)(3); Minn. Stat.
§ 624.7132, subd. 15(a)(2), (4); *id.* § 624.7133.  Compl. ¶¶ 74-75, 84.

209:20-23, 213:12-24. The State's expert does not contend the six transactions involving Horton between July 4 and 26 should have been stopped, *id.*, and agrees the October 17 transaction "was not wrong or improper" because it occurred "at the request of law enforcement," *id.* at 204:20-206:1. Because the State's expert agrees Fleet Farm's nine sales to Elwood between June 20, 2020 and May 6, 2021, and seven sales to Horton between July 4 and 27, and on October 17, 2021, were not wrongful, if this Court declines to dismiss the MNGCA claim in its entirety for lack of causation, *supra* Section II, at minimum it should dismiss the claim to the extent it is premised on these sixteen transactions.[9]

## CONCLUSION

For the foregoing reasons, this Court should grant Fleet Farm's motion for summary judgment.

---

[9] This would result in limiting the claim to Elwood's May 12, 2021 purchase, and Horton's purchases on June 15 and between July 27 and October 11, 2021. Although not relevant to the arguments raised in this motion, if any portion of this claim proceeds to trial, Fleet Farm's expert witnesses will opine that all of Fleet Farm sales to Elwood and Horton, including these sales, were fully compliant with applicable laws and guidelines.

Dated:  April 4, 2025                    Respectfully submitted,

                                         */s/ Todd A. Noteboom*
                                         Todd A. Noteboom (#0240047)
                                         Andrew W. Davis (#0386634)
                                         Sharon R. Markowitz (#0392043)
                                         Andrew P. Leiendecker (#0399107)
                                         Zachary J. Wright (#0402945)
                                         STINSON LLP
                                         50 South Sixth Street, Suite 2600
                                         Minneapolis, MN 55402
                                         (612) 335-1500
                                         todd.noteboom@stinson.com
                                         andrew.davis@stinson.com
                                         sharon.markowitz@stinson.com
                                         andrew.leiendecker@stinson.com
                                         zachary.wright@stinson.com

                                         **ATTORNEYS FOR DEFENDANTS**