# EXHIBIT A

Several months ago, Mayor Carter called me with a question after the tragedy a shooting incident in Saint Paul involving the straw purchase of a gun. The straw purchaser was being supplied by a local retailer and Mayor Carter asked if there was something we could do about it.

Today, Mr. Mayor, we take a step toward cutting off the spigot of illegal guns.

Now people have a right to own guns. Those of us who own guns — including me — also have obligation to store and handle them safely. When we purchase them, we also have a legal obligation not to give or resell them to people who legally cannot have them. This includes people convicted of felonies, people with a history of perpetrating domestic violence, and people with mental illness.

Buying a gun for someone you know can't legally have one is called straw purchasing. It's illegal.

Gun dealers and retailers also have obligations under state and federal law that they must meet. This includes stopping straw purchasing. They may only sell guns to people who are legally entitled to have them, and they may not sell guns to people they know — or have a reason to know — are going to give or resell them to other who cannot have them under the law.

That's gun trafficking. It's illegal.

Some gun dealers, though, look the other way. They ignore known red flags and sell guns to people that they have good reason to know will give or resell them to people who can't have them under the law and who will use them to commit violent crimes — ones that hurt and kill people. These dealers put their profits ahead of Minnesotans' lives.

Today, I'm taking action against dangerous and illegal gun trafficking.

**1**

AGO0002211

Earlier this morning, I filed a lawsuit on behalf of the people of Minnesota against gun retailer Fleet Farm for negligently selling firearms to straw purchasers, aiding and abetting these criminals, and contributing to gun trafficking in Minnesota by allowing guns to get into the wrong hands. I am charging Fleet Farm with negligence, negligence per se, negligent entrustment, aiding and abetting, and public nuisance. I'm asking the court to impose tighter controls on Fleet Farm, including independent monitoring of firearms sales, and much more rigorous training of their employees in order to put an end to straw purchasing there. I'm also asking the court to order Fleet Farm to disgorge the profits they made from selling guns to straw purchasers.

**2**

AGO0002212

**What Fleet Farm has done**

Here's what we allege Fleet Farm has done.

As we lay out in the complaint, Fleet Farm has failed to meet its duties and obligations under federal and state law and regulations by selling numerous firearms to straw purchasers.  In doing so, Fleet Farm has **disregarded well known and blatant warning signs of straw purchasing**, including:

- multiple purchases of similar handguns, especially 9mm;
- buying sprees over concentrated periods of time; and
- staggered visits by straw purchasers to different Fleet Farm locations to elude multiple-sale reporting requirements.

These are all hallmark "red flags" of illegal gun trafficking by straw purchasers. Fleet Farm had a duty under the law to **spot and stop this behavior**. Nevertheless, Fleet Farm continued to engage in straw purchase transactions even though they knew, or should have known, that these customers were not making legitimate purchases for themselves and were likely to resell them illegally.

In doing so, Fleet Farm has **profited from the unlawful sale of firearms to sham purchasers** who then transferred these weapons to criminals and other dangerous persons.

3

AGO0002213

**Jerome Horton**

As we detail in the complaint, one of the straw purchasers to whom Fleet Farm sold guns was **Jerome Horton**. As you can see here, **Fleet Farm sold Horton 24 guns** over just a **4-month span**, from June to October 2021.

There were **many red flags** that Horton was a straw purchaser.

- **Fleet Farm sold Horton multiple guns at once on five different days.**

- The guns Fleet Farm sold were nearly all the same 9mm caliber handgun.

- Fleet Farm also sold multiple handguns to Horton in very short periods of time. They sold Horton eight 9mm semiautomatic pistols in a one-week span between July 24-31, 2021.

- On other occasions, Fleet Farm made multiple sales to Horton at the same location within five business days. Horton also staggered purchasing handguns from different Fleet Farm locations.

**These were all red flags**. They put Fleet Farm on notice that Horton was engaged in straw purchasing and unlawful trafficking of firearms, and that he was attempting to evade detection.

Fleet Farm had a duty to stop selling Horton guns. But they kept selling him guns anyway.

**4**

AGO0002214

**Incidents of crime**

Seven guns that Jerome Horton straw-purchased, then illegally trafficked, have been traced to incidents of crime or suspected crime. We're going to talk about two of them today.

- On September 6, 2021, a Glock 9mm pistol that Fleet Farm sold to Horton on July 7, 2021, was found by six-year-old **Olin Norseng** in the front yard of his family's house in south Minneapolis. The gun was likely **discarded** there by suspects involved in an earlier Minneapolis public shooting incident who then raced through the neighborhood as they fled from the police.

  Fortunately, Olin was smart and did the right thing: he told his dad Michael about the gun. Michael secured the gun until police recovered it. They're here today and will tell you their story.

- On October 10, 2021, a 9mm semiautomatic pistol that Fleet Farm sold to Horton on July 31, 2021 was fired in the **Seventh Street Truck Park shooting in Saint Paul**. This pistol was fired by Devondre Phillips, who had a prior felony conviction for aggravated first-degree robbery, making him ineligible to possess firearms or ammunition. An exchange of fire between Phillips and **two other gunmen injured 14 people and tragically killed 27-year-old Marquisha Wiley.**

  **Andrea Weathersby** and **Sedrina Baker** are survivors of that terrible shooting. They are with us today and will tell their story.

**5**

AGO0002215

**Accountability**

Now, **Jerome Horton has been held accountable** under the law. He pled guilty in federal court. He will be sentenced later this month.

Another person involved in Horton's gun-trafficking scheme, **Gabriel Young-Duncan, has been held accountable** under the law. He also pled guilty in federal court. He will be sentenced today.

The shooters in the Seventh Street Truck Park shooting are being held accountable under the law. **The trial of Devondre Phillips will start soon. Ramsey County John Choi is leading that prosecution.**

**The actor that has *not* yet been held accountable** under the law — the actor who sold the gun to Horton and set in motion this chain of deadly events — **is Fleet Farm. I'm starting the process of holding them accountable today.**

6

AGO0002216

**Conclusion**

Under the laws of Minnesota, crime must be investigated by local police and prosecuted by local prosecutors — but that's not the end of the story.  There's more do to and we all have a role to play.

Today, the Attorney General's office is holding a gun retailer accountable, using the tools of a civil lawsuit.

Why? We have people here who have been shot. We have people here who could have been shot. We have people here whose loved one was tragically killed.

I've already been using the civil tools of my office to create safer communities.

- ☐ I filed a civil enforcement action against slumlord Stephen Meldahl for his "eviction for profit" scheme that had tenants living in conditions a judge said were of "Biblical plague proportions." And I won.
- ☐ I recently began an investigation of unlawful and dangerous public nuisances related to two businesses in North Minneapolis that have been the sites of repeated gun violence.

Local prosecutors and the U.S. Attorney are leading criminal prosecutions, as is their role. But we need to **go upstream with civil tools**, too, and turn off the spigot of illegal gun trafficking.

I commend gun retailers that are doing the right thing and meeting their duty to stop straw purchasing and gun trafficking.

To those retailers like Fleet Farm that are turning a blind eye to straw purchasing and feeding gun trafficking and gun violence, **you must stop**. With rights come responsibilities.

**7**

AGO0002217

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------------------------

State of Minnesota, by its    )   File No. 22-cv-2694
Attorney General, Keith       )         (JRT-JFD)
Ellison                       )
                              )
        Plaintiff,            )   St. Paul, Minnesota
                              )   March 12, 2024
vs.                           )   10:03 a.m.
                              )
Fleet Farm,                   )
                              )
        Defendant.            )
------------------------------------------------------------

BEFORE THE HONORABLE JOHN F. DOCHERTY
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

**(MOTION HEARING)**

Proceedings recorded by mechanical stenography;
transcript produced by computer.

ERIN D. DROST, RMR-CRR
(651) 848-1227

```
APPEARANCES
  For the Plaintiff:        Minnesota Attorney General's
                            Office
                            ERIC JOHN MALONEY, ESQ.
                            KATHERINE MOERKE, ESQ.
                            JAMES CANADAY, ESQ.
                            445 Minnesota Street
                            Suite 1200
                            St. Paul, Minnesota 55101

                            University of Minnesota Law
                            Clinics
                            MEGAN M. WALSH, ESQ.
                            CERTIFIED STUDENT ATTORNEYS:
                            ARIELLE HUGEL
                            WILL ROBERTS
                            NICK TAYLOR
                            Mondale Hall
                            229 19th Avenue South
                            Suite 190
                            Minneapolis, Minnesota 55455

  For the Defendant:        Stinson LLP
                            ANDREW W. DAVIS, ESQ.
                            ANDREW LEIENDECKER, ESQ.
                            TODD A NOTEBOOM, ESQ.
                            50 South Sixth Street
                            Suite 2600
                            Minneapolis, Minnesota 55402

  Court Reporter:           ERIN D. DROST, RMR-CRR
                            Suite 146
                            316 North Robert Street
                            St. Paul, Minnesota 55101
```

3

# P R O C E E D I N G S

## IN OPEN COURT

THE COURT:  All right.  We're here this morning for a motion to compel discovery oral hearing.  Case is the State of Minnesota v. Fleet Farm, 22-cv-2694.

Let's begin by getting appearances beginning with counsel for the State, please.

MS. MOERKE:  Good morning, Your Honor.  Katie Moerke on behalf of the State.

MR. ROBERTS:  Good morning.  Will Roberts --

THE COURT:  Excuse me.  Excuse me.  In Federal Court, it's appropriate to stand when you address the Court. Thank you.

MS. MOERKE:  Thank you, Your Honor.  Katie Moerke on behalf of the State of Minnesota.

THE COURT:  Morning.

MR. ROBERTS:  Good morning, Your Honor.  Will Roberts, a certified student attorney, on behalf of the State of Minnesota.

THE COURT:  Good morning.

MS. HUGEL:  Good morning, Your Honor.  Arielle Hugel, a certified attorney, on behalf of the State of Minnesota.

THE COURT:  Morning.

and this is out of any post-filing discovery.

After thought, I have decided on October the 1st of 2023 as the end date. That does give the State approximately one year after the complaint was filed, which is either adequate or is going to have to be adequate to their needs. And, therefore, the discovery will be produced up to and including the 1st of October of 2023.

Moving on to the question of the A&D logs, I understand the Form 4473s are technically before the Court, but the parties have indicated that those aren't -- that's not a live dispute as of today.

So for those A&D logs, the question is are we talking about -- well, basically how many guns are we talking about in what period of time. And, again, going through Rule 26 and applying the factors, I find that it is appropriate to order Fleet Farm to produce A&D logs for purchasers who bought four or more handguns within a 14-day period. So that's four or more handguns within a 14-day period.

I understand there is a rifle mentioned in the complaint. This is limited, though, to pistols and revolvers. It does not cover rifles. It does not cover shotguns. This is more than the State -- a larger number than the State proposed. It's a lesser number than Fleet Farm proposed. But it is a number that balances relevance,

THE COURT:  Of course you do.

MR. DAVIS:  If I may.  Your Honor, if possible --

THE COURT:  I hope you all are getting hungry too.

MR. DAVIS:  -- we would like to not be back before you on these issues, so we're taking advantage of your time today respectfully.

THE COURT:  Yeah, that's fine.

MR. DAVIS:  Two additional clarifying questions. On the parameter of the four or more handguns within a 14-day period, would the obligation go just to those purchases within 14 days, or is it the case that if someone has satisfied that requirement, that additional purchases beyond the 14 days would need to be encompassed within the scope?

And then my second question is in connection with the filtering point on the A&D log, you know, if there's a technical issue with filtering, I assume the Court would also find acceptable to redact the log entries that do not relate to the specific handgun purchases at issue?

THE COURT:  Let me understand what you are asking. You have got an A&D log, you know, database.  Let's call it that.  And you're going to go in there and you are going to see that John Smith bought five guns in a week.  And you are going to turn that over, okay?  When you talk about filtering, I thought I understood you, but now that you are

Now your first question is a good one, and I confess that I had not thought of it, and the answer, I'm afraid, is yes.  If John Smith bought five handguns last week, then John Smith's purchases need to be turned over.  Okay?

MR. DAVIS:  Thank you.

THE COURT:  You're welcome.

Anything else?

MS. MOERKE:  Nothing further, Your Honor.  Thank you.

THE COURT:  All right.  Thank you all very much.  Court is adjourned.

(Court adjourned at 11:45 a.m.)

                    *       *       *

I, Erin D. Drost, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter to the best of my ability.


                Certified by:  _s/ Erin D. Drost_
                               Erin D. Drost, RMR-CRR

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| State of Minnesota by its Attorney General, Keith Ellison,<br><br>Plaintiff,<br><br>v.<br><br>Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC,<br><br>Defendants. | Case No.: 0:22-cv-02694-JRT-JFD<br><br>**STATE OF MINNESOTA'S AMENDED RESPONSES TO DEFENDANTS' SECOND SET OF INTERROGATORIES** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff State of Minnesota by its Attorney General, Keith Ellison ("State" or "Plaintiff"), hereby responds and objects to the Second Set of Interrogatories to Plaintiff from Defendants Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC (together, "Fleet Farm" or "Defendants") dated April 26, 2024 (the "Interrogatories" and each, an "Interrogatory") as follows:

**GENERAL OBJECTIONS**

1. The State objects to Defendants' definitions and interrogatories to the extent that they attempt to seek information from state agencies, which are outside of the possession, custody, or control of the State. The Attorney General is an independent constitutional officer of the State of Minnesota and cannot answer for or on behalf of other entities, including state agencies. The scope of the State's answers will be limited to information within the possession, custody, or control of the State. The appropriate mechanism for seeking discovery from any non-party agencies is by way of subpoena.

2.      The State's fact investigation, formal discovery, and trial preparation are continuing. The State's responses are based on information currently known or available after a reasonable inquiry. In addition, to date, Defendants have not completed production of responsive documents to the State's pending discovery requests. The State's responses are, therefore, based only on information currently known or available to it after a reasonable inquiry. The State reserves the right to amend and supplement its responses upon further investigation, discovery, and trial preparation.

3.      Defendant's discovery requests may seek data classified as not public, private, protected nonpublic, or confidential under the Minnesota Government Data Practices Act, Minn. Stat. § 13.01 *et seq*. ("MGDPA"). Pursuant to the Protective Order entered by the Court on August 21, 2023 (ECF Doc. 49), the State may produce and designate certain not public data as confidential.

4.      The State objects generally to Defendants' discovery requests to the extent that they purport to impose burdens, duties, or obligations greater than or contrary to those established by the Federal Rules of Civil Procedure and under the Pretrial Scheduling Order (ECF Doc. 41), Protective Order, or ESI Protocol (ECF Doc. 53).

5.      The State objects generally to these interrogatories to the extent that they purport to require disclosure of information protected from discovery as trial-preparation materials, by the work product doctrine, or by any applicable privilege, including but not limited to attorney-client privilege, deliberative process privilege, investigative files and law enforcement privilege, the common interest doctrine, the public officer privilege (Minn. Stat. § 595.02, subd. 1(e)), or any other applicable privilege.

6. The State objects generally to these interrogatories to the extent they seek information outside of the AGO's possession, custody, or control, and to the extent that they seek information from documents in the possession, custody, or control of Defendants, including documents the State has sought from Defendants in discovery. The State objects to these requests to the extent they seek information about any person's communications or dealings with Defendants to the extent that Defendants have access to this information.

7. The State objects to these discovery requests to the extent that they are not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the proposed discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

8. The State objects generally to these interrogatories to the extent they are vague, ambiguous, cumulative, duplicative, overly broad, or unduly burdensome.

9. The State objects to these interrogatories to the extent they ask the State to draw a legal conclusion.

10. Upon further investigation, discovery and trial preparation, the State reserves the right to alter, revise, amend, correct, clarify or supplement its answers. The State also reserves all questions as to competency, relevancy, materiality, privilege, scope, and admissibility as evidence for any purpose of the information sought by Defendants.

11. The general objections set forth above, and the objections to specific interrogatories set forth below, are made as to matters that are clearly objectionable from the face of each interrogatory or request for production of documents. These objections

3

are made without prejudice to, or waiver of, the State's right to object on all appropriate grounds to specific interrogatories or requests. The State incorporates these general objections into each response below.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 16:**

Identify each purchase of a firearm from a Minnesota Fleet Farm store from January 1, 2017 through October 1, 2023 that you contend was a straw purchase, excluding those purchases alleged in Paragraphs 38 and 54 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 16:**

The State objects to this interrogatory because the State did not receive fulsome firearms transactions records from Fleet Farm until the production of Fleet Farm's A&D logs on April 26, 2024, even though the State requested such records nine months before that on July 20, 2023, and the Court ordered Fleet Farm to produce A&D logs more than six weeks before that on March 12, 2024. As of the date of this response, the State continues review of Fleet Farm's April 26 and other document productions. In addition, the State objects to this interrogatory because the State has not begun, much less completed, depositions in this matter, including the Rule 30(b)(6) deposition of Fleet Farm and individual depositions that Fleet Farm has delayed until June 2024—after the date of this response. Thus, the State's response cannot include information Fleet Farm has so far not provided.

Subject to and without waiving the foregoing objections and general objections, the State responds that, at this point in time, the State contends that the purchases of firearms from a Minnesota Fleet Farm store from January 1, 2017 through October 1, 2023 by

4

Wayne Danielson, on at least November 20, 2019, August 23, 2021, April 8, 2022, and

July 25, 2022 at the Fleet Farm store in Hermantown, Minnesota, were straw purchases, in

addition to the many straw purchases by Jerome Horton and Sarah Elwood identified in the

Complaint.

The State reserves the right to amend and supplement its response or otherwise

identify information upon further investigation, discovery, and trial preparation.

**INTERROGATORY NO. 17:**

Identify each firearm sold by a Minnesota Fleet Farm store from January 1, 2017
through October 1, 2023 that you contend has been illegally trafficked, or used in a crime,
as alleged in Paragraphs 62–69 of the Complaint, excluding those sales alleged in
Paragraphs 38 and 54 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 17:**

The State objects to this interrogatory because the State did not receive fulsome

firearms transactions records from Fleet Farm until the production of Fleet Farm's A&D

logs on April 26, 2024, even though the State requested such records nine months before

that on July 20, 2023, and the Court ordered Fleet Farm to produce A&D logs more than

six weeks before that on March 12, 2024. As of the date of this response, the State continues

its review of Fleet Farm's April 26 and other document productions. The State also objects

to this interrogatory as duplicative of Interrogatory No. 16 because a firearm that is straw

purchased has necessarily been illegally trafficked and has also been involved in a crime

simply by virtue of the straw purchase. In addition, the State objects to this interrogatory

because the State has not begun, much less completed, depositions in this matter, including

5

the Rule 30(b)(6) deposition of Fleet Farm and individual depositions that Fleet Farm has delayed until June 2024—after the date of this response.

Subject to and without waiving the foregoing objections and general objections, the State responds that, at this point in time, the State contends that the additional firearms sold from a Minnesota Fleet Farm store from January 1, 2017 through October 1, 2023, which are identified in response to Interrogatory No. 16, have been illegally trafficked or used in a crime because they were all illegal straw purchases, in addition to the many illegal straw purchases by Jerome Horton and Sarah Elwood identified in the Complaint and the use of these firearms in additional crimes as also alleged in the Complaint. The State reserves the right to amend and supplement its response or otherwise identify information upon further investigation, discovery, and trial preparation.

**INTERROGATORY NO. 18:**

For each firearm identified in response to Interrogatory No. 16, state whether Fleet Farm knew or should have known that such purchase was a straw purchase, and if so, identify the factual basis for your assertion that Fleet Farm knew or should have known such purchase was a straw purchase.

**RESPONSE TO INTERROGATORY NO. 18:**

The State objects to this interrogatory as calling for information in Fleet Farm's possession rather than the State's possession. Specifically, the State objects to this interrogatory because the State did not receive fulsome firearms transactions records from Fleet Farm until the production of Fleet Farm's A&D logs on April 26, 2024, even though the State requested such records nine months before that on July 20, 2023, and the Court ordered Fleet Farm to produce A&D logs more than six weeks before that on March 12,

6

2024. As of the date of this response, the State continues review of Fleet Farm's April 26 and other document productions. In addition, the State objects to this interrogatory because the State has not begun, much less completed, depositions in this matter, including the Rule 30(b)(6) deposition of Fleet Farm and individual depositions that Fleet Farm has delayed until June 2024—after the date of this response. Thus, the State's response to this interrogatory cannot include information Fleet Farm has so far not provided.

Subject to and without waiving the foregoing objections and general objections, the State responds that the State does not currently have sufficient information to answer whether Fleet Farm knew or should have known that Fleet Farm's sales of firearms to Wayne Danielson identified in response to Interrogatory No. 16 were straw purchases.

The State reserves the right to amend and supplement its response or otherwise identify information upon further investigation, discovery, and trial preparation.

**AS TO OBJECTIONS:**

Dated:  July 10, 2024

KEITH ELLISON
Attorney General
State of Minnesota

**/s/ Katherine A. Moerke**
ERIC J. MALONEY (#0396326)
Assistant Attorney General
JAMES W. CANADAY (#030234X)
Deputy Attorney General
JASON T. PLEGGENKUHLE (#0391772)
Assistant Attorney General
KATHERINE A. MOERKE (#0312277)
Assistant Attorney General


445 Minnesota Street, Suite 1200
St. Paul, Minnesota 55101-2130
(651) 757-1021
eric.maloney@ag.state.mn.us
james.canaday@ag.state.mn.us
jason.pleggenkuhle@ag.state.mn.us
katherine.moerke@ag.state.mn.us
*Attorneys for State of Minnesota*

**VERIFICATION**

I am Marianne L. Ellis, Manager of Outside Counsel Relationships and Investigator at the Minnesota Attorney General's Office. I have read the State of Minnesota's Responses to Defendants' First Set of Interrogatories ("Responses") dated April 26, 2024, and know the contents thereof. The Responses are true to the best of my current knowledge, recollection, information, and belief based on a reasonable investigation. I make no verification with respect to any objections stated within the Responses.

I declare under penalty of perjury that everything I have stated in this Verification is true and correct.

Executed July 10, 2024                                        By:  /s/ Marianne L. Ellis

Dakota County, Minnesota

9

# EXHIBIT D

23 cr 5 JNE/LIB

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **INDICTMENT** |
| Plaintiff, | 18 U.S.C. § 922(a)(1)(A) |
| | 18 U.S.C. § 924(a)(1)(D) |
| v. | 18 U.S.C. § 924(d)(1) |
| | 28 U.S.C. § 2461(c) |
| WAYNE ROBERT DANIELSON, | |
| Defendant | |

## THE UNITED STATES GRAND JURY CHARGES THAT:

### INTRODUCTORY ALLEGATIONS

1. Federal law requires persons engaged in the business of dealing in firearms to be licensed under the provisions of Title 18, Chapter 44, United States Code. Federal law further requires that, prior to selling firearms to unlicensed persons, licensed dealers in firearms, also known as Federal Firearms Licensees ("FFLs"), must determine the lawfulness of the sale, maintain proper records of the transaction, and contact the National Instant Criminal Background Check System to determine whether the prospective buyer of the firearm is prohibited by law from purchasing or receiving firearms.

2. As part of these federal law requirements, before an FFL may lawfully sell a firearm to an unlicensed person, the unlicensed person must fill out, date, and sign a Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473 – Firearms Transaction Record ("ATF Form 4473"), certifying that all the information provided is "true, correct, and complete." The information and certification statutorily required



SCANNED
JAN 11 2023
U.S. DISTRICT COURT MPLS

FF_0075794

United States v. Wayne Robert Danielson

by ATF Form 4473 enables FFLs to determine if a firearm may lawfully be sold or transferred to a prospective buyer and puts the prospective buyer on notice of certain legal restrictions on the receipt and possession of firearms.

3.     ATF Form 4473 requires the prospective buyer of a firearm, by signing and dating the form, to certify and acknowledge the following statements and advisories, which are printed in bold type: "I certify that my answers . . . are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473. I . . . understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I further understand that the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of Federal law."

4.     One of the Notices, Instructions, and Definitions that the ATF Form 4473 requires the prospective buyer to read is "Question 22. Transferee/Buyer Certification" contained on page 5 of the form. Question 22 references the signature field where the transferee/buyer certifies their truthfulness and understanding of the information above the signature. The "Question 22. Transferee/Buyer Certification" notice states that "it is unlawful for a person to engage in the business of dealing in firearms without a license," and it explains and provides the Federal statutory provisions of when a "person is engaged in the business of dealing in firearms."

2

FF_0075795

United States v. Wayne Robert Danielson

5.    At times material to this Indictment, the defendant, **WAYNE ROBERT DANIELSON**, was not a licensed dealer in firearms within the meaning of Title 18, Chapter 44, United States Code.

6.    From at least in or about May 2019, and continuing through in or about September 2022, the defendant engaged in a regular pattern and practice of purchasing and reselling firearms predominantly to earn a profit.

7.    During this same period, the defendant purchased at least 38 firearms at three different FFLs within the District of Minnesota.

8.    Among the firearms the defendant purchased were the following:

| Date (on or about) | FFL | Firearm |
|---|---|---|
| 5/12/2019 | L&M Virginia | Ruger LCP 380 Auto, serial number 372-208269 |
| 5/12/2019 | L&M Virginia | SCCY CPX2 9, serial number 798919 |
| 7/30/2019 | L&M Virginia | Keltec PMR-30 22, serial number WXB580 |
| 11/20/2019 | L&M Virginia | S&W MP 40 Shield 40, serial number HZF6388 |
| 12/1/2019 | L&M Virginia | SCCY CPX2 9, serial number 796639 |
| 2/28/2020 | L&M Virginia | Hi-Point 1095 TS 10, serial number M05543 |
| 2/28/2020 | L&M Virginia | Marlin 60SN 22, serial number MM15761L |
| 2/28/2020 | L&M Virginia | Ruger LCP 380, serial number 372-220144 |
| 3/18/2020 | L&M Virginia | Hi-Point 45HC 45, serial number X4323235 |
| 4/15/2020 | L&M Virginia | Keltec CP33 22, serial number M2655 |
| 4/30/2020 | L&M Virginia | S&W MP 380 Shield EZ 380, serial number NDP7978 |
| 6/25/2020 | L&M Virginia | Bond Arms Rough N Rowdy 5/410, serial number 216849 |
| 6/25/2020 | L&M Virginia | SCCY CPX2 9, serial number 708828 |
| 3/9/2021 | L&M Virginia | Taurus G2C 9, serial number ACA486095 |
| 3/9/2021 | L&M Virginia | Uberti 357 357, serial number 1873 UL7864 |
| 4/1/2021 | L&M Virginia | Derya Arms RIA Tradition 20, serial number R255935 |
| 4/10/2021 | L&M Virginia | S&W MP 40 Shield 40, serial number JHS4951 |
| 4/20/2021 | L&M Virginia | Mossberg Patriot 6.5, serial number MPR0279603 |
| 4/20/2021 | L&M Virginia | Taurus G2C 9, serial number 1C024313 |

FF_0075796

United States v. Wayne Robert Danielson

| Date (on or about) | FFL | Firearm |
| --- | --- | --- |
| 5/11/2021 | L&M Virginia | Derya Arms RIA Tradition12, serial number R097025 |
| 5/11/2021 | L&M Virginia | Ruger LCP 380, serial number 372-422519 |
| 7/1/2021 | L&M Virginia | Taurus G2C 9, serial number ACA424956 |
| 7/15/2021 | L&M Virginia | Glock G44 22, serial number AFGG483 |
| 7/22/2021 | L&M Virginia | Keltec SUB-2000 9, serial number FGBP46 |
| 7/22/2021 | L&M Virginia | Ruger EC9S 9, serial number 459-60282 |
| 8/4/2021 | L&M Virginia | Taurus G3C 9, serial number ACG996376 |
| 8/10/2021 | L&M Virginia | Ruger Security 9 9, serial number 384-50666 |
| 8/19/2021 | L&M Virginia | Ruger LCP 380, serial number 379-006005 |
| 10/15/2021 | L&M Virginia | Taurus G2C 9, serial number ACK344993 |
| 10/29/2021 | L&M Virginia | Bond Arms Roughneck 357/38, serial number 301535 |
| 10/29/2021 | Dunhams Virginia | Ruger EC9S 9, serial number 459-21708 |
| 12/1/2021 | Dunhams Virginia | Springfield Hellcat 9, serial number BA512382 |
| 12/1/2021 | Dunhams Virginia | Taurus Spectrum 380, serial number 1J011288 |
| 12/6/2021 | Dunhams Virginia | S&W MP 380 Shield EZ 380, serial number REP3088 |
| 1/14/2022 | Dunhams Virginia | Taurus G2C 9, serial number ACK344995 |
| 3/1/2022 | L&M Virginia | Kimber R7/Mako 9, serial number R08431 |
| 4/25/2022 | L&M Virginia | Bond Arms Roughneck 357/38, serial number 301666 |
| 7/8/2022 | Dunhams Virginia | Tisas/SDS 1911A1 service 45, serial number TO6020-22Z05231 |

9. For each transaction completed at the different FFLs within the District of Minnesota, the defendant filled out, dated, and signed an ATF Form 4473, certifying that all the information he provided was "true, correct, and complete," including that he "understood that the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license in a violation of Federal law."

4

United States v. Wayne Robert Danielson

## COUNT 1
(Dealing in Firearms Without a License)

10.    Paragraphs 1 through 9 are re-alleged as if set forth herein.

11.    In or about May 2022 in the State and District of Minnesota, the defendant, in the State and District of Minnesota, the defendant,

**WAYNE ROBERT DANIELSON,**

willfully engaged in the business of dealing in firearms without a license, by devoting time, attention, and labor to dealing in firearms as a regular course of trade and business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms; all in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 924(a)(1)(D).

## COUNT 2
(Dealing in Firearms Without a License)

12.    Paragraphs 1 through 9 are re-alleged as if set forth herein.

13.    On or about September 5, 2022, in the State and District of Minnesota, the defendant, in the State and District of Minnesota, the defendant,

**WAYNE ROBERT DANIELSON,**

willfully engaged in the business of dealing in firearms without a license, by devoting time, attention, and labor to dealing in firearms as a regular course of trade and business to predominantly earn a profit through the repetitive purchase and resale of firearms; all in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 924(a)(1)(D).

5

United States v. Wayne Robert Danielson

## FORFEITURE ALLEGATIONS

If convicted of Count 1 or 2 of this Indictment, the defendant,

## WAYNE ROBERT DANIELSON,

shall forfeit to the United States any firearms, ammunition, magazines, and accessories, involved in or used in connection with such violation including, but not limited to the 14 firearms seized from the defendant's home on September 14, 2022, and any ammunition seized therewith:

1. Hatfield SGL 12-gauge shotgun (S/N: 12520-006543)
2. Keltec PMR30 .22 WMR (S/N: WXB723)
3. SCCY CPX-2 9mm (S/N: C203360)
4. Taurus G3C 9mm (S/N: ACD834892)
5. Taurus Spectrum 380 caliber (S/N: 1J024856)
6. Keltec P17 .22 caliber (S/N: G9486)
7. Ruger LC9 9mm (S/N: 323-91217)
8. Taurus Revolver .357 caliber (S/N: ADC131731)
9. Tisas 1911 (S/N: T0620-22Z05231)
10. Glock 20 Gen 4 10mm (S/N: BXAA303)
11. Mossberg Plinkster .22 caliber (S/N: E014136273)
12. Escort Slugger 12 gauge (S/N: 70-H21PT-006839)
13. Smith and Wesson M&P Shield (S/N: JH54951)
14. Hi-Point model 4595 .45 caliber (S/N: R117598)

all pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c).

6

United States v. Wayne Robert Danielson

## A TRUE BILL

_____  _____

UNITED STATES ATTORNEY        FOREPERSON

7

FF_0075800

# EXHIBIT E

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-5 (JNE/LIB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MOTION FOR DISMISSAL |
| | ) | |
| WAYNE ROBERT DANIELSON, | ) | |
| | ) | |
| Defendant. | ) | |

Pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure, the United States

Attorney for the District of Minnesota hereby moves to dismiss the charges in the Indictment

against the defendant Wayne Robert Danielson.   The basis for the dismissal is that insufficient

evidence currently exists to sustain a prosecution of the defendant.

Dated: September 27, 2023

ANDREW M. LUGER
United States Attorney

*/s David P. Steinkamp*

BY: DAVID P. STEINKAMP
Assistant U.S. Attorney
Attorney ID Number 178470

FF_0075792

# EXHIBIT F

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-5(1) (JNE/LIB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| WAYNE ROBERT DANIELSON, | ) | |
| | ) | |
| Defendant. | ) | |

Pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure the United States Attorney for the District of Minnesota has sought dismissal of the Indictment against the defendant in this matter. Leave of court is granted for the dismissal. The indictment is dismissed without prejudice.

Dated: September 27, 2023

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Court Judge

FF_0075793

# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| State of Minnesota by its Attorney General, Keith Ellison,<br><br>Plaintiff,<br><br>v.<br><br>Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC,<br><br>Defendants. | Case No.: 0:22-cv-02694-JRT-JFD<br><br>**DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendants Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC (together, "Fleet Farm" or "Defendants") hereby provide the following objections and responses to Plaintiff State of Minnesota's July 3, 2024 Second Set of Interrogatories to Defendants ("Interrogatories"):

**GENERAL OBJECTIONS**

1.     The following General Objections apply to the Interrogatories and shall have the same force and effect as if set forth in full in response to each separately numbered Interrogatory.  The assertion of the same, similar, or additional objections or the provision of partial responses to the individual Interrogatories does not waive or modify any of Defendants' General Objections.

2.     Defendants respond to the Interrogatories, including the definitions and instructions referenced therein, subject to the General Objections set forth below.  These limitations and objections, which form a part of Defendants' response to each individual

- 1 -

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Interrogatory, are set forth here to avoid duplication and repetition.  Failure to make a General Objection in the Specific Responses should not be construed as a waiver of any General Objection.

3.    Defendants object to the Interrogatories to the extent they seek information that is protected from disclosure by the attorney-client privilege, the work-product doctrine, and/or any other applicable privilege or protection ("Privileged Information").    The inadvertent production of any Privileged Information shall not be deemed a waiver of any applicable privilege or any other applicable objection.

4.    Defendants object to the Interrogatories to the extent they seek information already in Plaintiff's possession, custody, or control, equally available to Plaintiff and/or in the public domain, or otherwise obtainable from some other source that is more convenient, less burdensome, or less expensive, or for which the burden or expense of the discovery outweighs its likely benefit.

5.    Defendants object to the Interrogatories to the extent they call for the production of information or documents not maintained in the ordinary course of business or not easily retrievable at reasonable expense.

6.    Defendants object to the Interrogatories to the extent they call for the production of information or documents from outside the relevant time period for discovery, which has been defined by the Court as encompassing October 5, 2016 through October 1, 2023.  *See* Mar. 12, 2024 Hearing Tr. 61:2–7 ("After thought, I have decided on October the 1st of 2023 as the end date.  That does give the State approximately one year after the complaint was filed, which is either adequate or is going to have to be

- 2 -

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

adequate to their needs.  And, therefore, the discovery will be produced up to and including the 1st of October of 2023.”).

7.      Defendants object to any Interrogatory seeking “all” (or “every”) persons, documents, or information on the ground that Defendants cannot guarantee they have located every single person, document, or piece of information responsive to a particular Interrogatory.

8.      Any decision by Defendants to provide any documents or information, notwithstanding the objectionable nature of any parts of the Interrogatories, should not be construed as a stipulation that the material is discoverable, a waiver of Defendants’ objections to these Interrogatories or for future discovery, or an agreement that other requests for similar discovery will be treated in a similar manner.

9.      Defendants object to the Interrogatories to the extent they seek documents and information relating to Fleet Farm retail stores and employees located outside the State of Minnesota.    Unless expressly stated otherwise, Defendants will interpret all Interrogatories to seek only information relating to the seventeen (17) Fleet Farm retail stores identified in paragraph 13 of Plaintiff’s complaint.  *See* ECF Doc. 1-1 ¶ 13.

10.     Defendants reserve the right to object to the relevancy, materiality, or admissibility of any information or documents provided in response to the Interrogatories and to raise any other objection that would require exclusion of such information or documents if offered as evidence at trial.

11.     Defendants’ investigation is ongoing.  Defendants reserve the right to: (i) revise, correct, supplement, amend, modify, or clarify their responses as additional

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

information is discovered in accordance with the Federal Rules; (ii) provide additional responsive information; (iii) modify its objections on grounds including, but not limited to, relevance, undue burden, and/or proportionality; (iv) object to further discovery in this case; (v) rely on any information provided in this case, including, without limitation, in any hearing, proceeding, or trial in this case; and (vi) challenge the authenticity or admissibility of any information in any hearing, proceeding, or trial.

12.    Defendants object to the definition of the terms "Defendants," "Fleet Farm," "you," and "your" as vague and overbroad on the ground that the definition purports to include any of Defendants' "predecessors, successors, divisions, parents, subsidiaries, affiliates, and any other entity in which Fleet Farm has a management or controlling interest," as well as "all present and former directors, officers, and managers of Fleet Farm," to the extent such definition imposes an obligation on Defendants to produce documents not in their possession, custody, or control.  Defendants will construe the terms "Defendants," "Fleet Farm," "you," and "your" to mean Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC, and will interpret this definition to direct the disclosure of responsive, non-privileged information solely in their possession, custody, or control.

13.    Defendants object to the term "Document" as overly broad and unduly burdensome to the extent it purports to expand such definition beyond its meaning in Federal Rule of Civil Procedure 34(a) and Federal Rule of Evidence 1001. Defendant further objects to this definition to the extent it calls for the disclosure of Privileged Information, and to the extent it calls for the disclosure of materials that are not reasonably

- 4 -

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

accessible to Defendant or maintained in the ordinary course of business. Defendant will interpret "Document" in accordance with Federal Rule of Civil Procedure 34(a) and Federal Rule of Evidence 1001.

<strong><u>SPECIFIC RESPONSES AND OBJECTIONS</u></strong>

**INTERROGATORY NO. 16:**

Identify any Fleet Farm employees who have been disciplined in any way for selling a firearm to a suspected straw buyer, describe the reason for discipline, circumstances of the firearm sale, and resulting discipline, and specify whether the disciplined employee(s) sold any firearms to Jerome Horton or Sarah Elwood.

**<u>RESPONSE</u>:**

In addition to the foregoing General Objections, Defendants object to Interrogatory No. 16 on the grounds that it is compound, is overly broad and unduly burdensome, seeks information irrelevant to the claims and defenses in this suit, and is not reasonably calculated to lead to the discovery of admissible evidence. As Plaintiff's amended responses to Defendants' Second Set of Interrogatories makes clear, this case is about Defendants' sales of firearms to Jerome Horton, Sarah Elwood, and Wayne Danielson which renders information regarding Defendants' activities unconnected to those sales irrelevant. *See* July 10, 2024 Amended Responses to Defs.' Second Set of Interrogatories at 4–5 ("[T]he State contends that the purchases of firearms from a Minnesota Fleet Farm store from January 1, 2017 through October 1, 2023 by Wayne Danielson . . . were straw purchases, in addition to the [purchases] by Jerome Horton and Sarah Elwood identified in the Complaint."); *id.* at 6 ("[T]he State contends that the additional firearms . . . identified in response to Interrogatory No. 16, have been illegally trafficked or used in a crime . . . in

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

addition to the [purchases] by Jerome Horton and Sarah Elwood identified in the Complaint and the use of these firearms in additional crimes as also alleged in the Complaint."). Defendants also object to Interrogatory No. 16 on the ground that the phrases "in any way," "suspected straw buyer," "circumstances of the firearm sale," and "resulting discipline" are vague and ambiguous.

Defendants further object to this Interrogatory to the extent it suggests that Fleet Farm has sold firearms to straw purchasers other than Jerome Horton and Sarah Elwood. Again, as Plaintiff has acknowledged in response to Defendants' Second Set of Interrogatories, there is no indication—from Fleet Farm's acquisition and disposition logs or otherwise—that Fleet Farm's Minnesota stores have sold any firearms to straw purchasers apart from the sales to Jerome Horton and Sarah Elwood. *See id.* As for Fleet Farm's Hermantown store's sales to Wayne Danielson, Defendants observe that: (1) Fleet Farm's Hermantown store sold a total of four handguns to Wayne Danielson in four separate, single-handgun transactions over a 33-month period, *see* FF_0013736; (2) Wayne Danielson was not indicted for straw purchasing, but was instead indicted for dealing in firearms without a license, *see United States v. Wayne Robert Danielson*, Case No. 0:23-cr-00005-JNE-LIB, ECF Doc. 11 ¶¶ 10–13 (D. Minn. Jan. 11, 2023); (3) the indictment against Wayne Danielson did not identify any of the four firearms sold by Fleet Farm's Hermantown store among the firearms that are identified as having been purchased from three different Minnesota-based FFLs, *see id.* ¶¶ 7–8; (4) the only firearm that Danielson purchased from Fleet Farm's Hermantown store identified in the indictment was identified as having been "seized from [Danielson]'s home on September 14, 2022," *see id.* at 6,

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

indicating that Danielson did not transfer that firearm to any third party; and (5) the United States brought a motion to dismiss the charges against Wayne Danielson because "insufficient evidence . . . exist[ed] to sustain a prosecution," and that motion was granted, *see id.*, ECF Doc. 47 (D. Minn. Sept. 27, 2023); *id.*, ECF Doc. 48 (D. Minn. Sept. 28, 2023). Defendants further object to Interrogatory No. 16 on the ground that it is duplicative of Interrogatory Nos. 8 and 9, and Requests for Production Nos. 21 and 22. Lastly, Defendants object on the ground that the information sought by Interrogatory No. 16 may be obtained by reviewing the documents that the Court ordered Defendants to produce in its March 12, 2024 order. Defendants have produced responsive business records pursuant to the Court's order. The information Plaintiff seeks in Interrogatory No. 16 may be determined by examining these business records, and the burden of deriving or ascertaining the answer to Interrogatory No. 16 will be substantially the same for both parties.

Subject to and without waiving these objections, and pursuant to Fed. R. Civ. P. 33(d), Defendants refer Plaintiff to the employee records that have been produced in this Action. *See* FF_0040909 – FF_0041327. Answering further, Fleet Farm states that there is no indication that any of the individuals that sold firearms to Jerome Horton or Sarah Elwood had previously been identified as having completed a firearm transfer to an actual or suspected straw purchaser. As may be ascertained from Defendants' document production, four of the individuals who sold firearms to Jerome Horton or Sarah Elwood were subject to firearm-related discipline, but none of these individuals received discipline relating to Defendants' policies for monitoring for and preventing straw purchases or as a result of their selling firearms to Jerome Horton or Sarah Elwood. *See* FF_0041137,

- 7 -

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

FF_0041200, FF_0041264, FF_0041266, FF_0041267, FF_0041315, FF_0041316, FF_0041327.

**INTERROGATORY NO. 17:**

Identify any Fleet Farm employees who have been disciplined in any way for selling a firearm to someone who Fleet Farm learned later was a straw buyer, describe the reason for discipline, circumstances of the firearm sale, and resulting discipline, and specify whether the disciplined employee(s) sold any firearms to Jerome Horton or Sarah Elwood.

**RESPONSE:**

In addition to the foregoing General Objections, Defendants object to Interrogatory No. 17 on the grounds that it is compound, is overly broad and unduly burdensome, seeks information irrelevant to the claims and defenses in this suit, and is not reasonably calculated to lead to the discovery of admissible evidence. As Plaintiff's response to Defendants' Second Set of Interrogatories makes clear, this case is about Defendants' sales of firearms to Jerome Horton, Sarah Elwood, and Wayne Danielson rendering information regarding Defendants' activities unconnected to those sales irrelevant. *See* July 10, 2024 Amended Responses to Defs.' Second Set of Interrogatories at 4–6. Defendants also object to Interrogatory No. 17 on the ground that the phrases "in any way," "circumstances of the firearm sale," and "resulting discipline" are vague and ambiguous.

Defendants further object to this Interrogatory to the extent it suggests that Fleet Farm has sold firearms to straw purchasers other than Jerome Horton and Sarah Elwood. Again, as Plaintiff has acknowledged in response to Defendants' Second Set of Interrogatories, there is no indication—from Fleet Farm's acquisition and disposition logs or otherwise—that Fleet Farm's Minnesota stores have sold any firearms to straw

- 8 -

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

purchasers apart from the sales to Jerome Horton and Sarah Elwood. *See id.* As for Fleet Farm's Hermantown store's sales to Wayne Danielson, Defendants observe that: (1) Fleet Farm's Hermantown store sold a total of four handguns to Wayne Danielson in four separate, single-handgun transactions over a 33-month period, *see* FF_0013736; (2) Wayne Danielson was not indicted for straw purchasing, but was instead indicted for dealing in firearms without a license, *see United States v. Wayne Robert Danielson*, Case No. 0:23-cr-00005-JNE-LIB, ECF Doc. 11 ¶¶ 10–13 (D. Minn. Jan. 11, 2023); (3) the indictment against Wayne Danielson did not identify any of the four firearms sold by Fleet Farm's Hermantown store among the firearms that are identified as having been purchased from three different Minnesota-based FFLs, *see id.* ¶¶ 7–8; and (4) the only firearm that Danielson purchased from Fleet Farm's Hermantown store identified in the indictment was identified as having been "seized from [Danielson]'s home on September 14, 2022," *see id.* at 6, indicating that Danielson did not transfer that firearm to any third party; and (5) the United States brought a motion to dismiss the charges against Wayne Danielson because "insufficient evidence . . . exist[ed] to sustain a prosecution," and that motion was granted, *see id.*, ECF Doc. 47 (D. Minn. Sept. 27, 2023); *id.*, ECF Doc. 48 (D. Minn. Sept. 28, 2023).

Defendants further object to Interrogatory No. 17 on the ground that it is duplicative of Interrogatory Nos. 8, 9, and 16, and Requests for Production Nos. 21 and 22. Lastly, Defendants object on the ground that the information sought by Interrogatory No. 16 may be obtained by reviewing the documents that the Court ordered Defendants to produce in its March 12, 2024 order. Defendants have produced responsive business records pursuant

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

to the Court's order.  The information Plaintiff seeks in Interrogatory No. 17 may be determined by examining these business records, and the burden of deriving or ascertaining the answer to Interrogatory No. 17 will be substantially the same for both parties.

Subject to and without waiving these objections, and pursuant to Fed. R. Civ. P. 33(d), Defendants refer Plaintiff to their response to Interrogatory No. 16.

**INTERROGATORY NO. 18:**

Identify any Fleet Farm employees who have been disciplined in any way for ignoring warning signs of a possible firearm straw purchase, describe the reason for discipline, circumstances of the firearm sale, and resulting discipline, and specify whether the disciplined employee(s) sold any firearms to Jerome Horton or Sarah Elwood.

**RESPONSE:**

In addition to the foregoing General Objections, Defendants object to Interrogatory No. 18 on the grounds that it is compound, is overly broad and unduly burdensome, seeks information irrelevant to the claims and defenses in this suit, and is not reasonably calculated to lead to the discovery of admissible evidence.  As Plaintiff's response to Defendants' Second Set of Interrogatories makes clear, this case is about Defendants' sales of firearms to Jerome Horton and Sarah Elwood, rendering information regarding Defendants' activities unconnected to those sales irrelevant.  *See* July 10, 2024 Amended Responses to Defs.' Second Set of Interrogatories at 4–6.  Defendants also object to Interrogatory No. 18 on the ground that the phrases "in any way," "warning signs," "possible firearm straw purchase," "circumstances of the firearm sale," and "resulting discipline" are vague and ambiguous.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Defendants further object to this Interrogatory to the extent it suggests that Fleet Farm has sold firearms to straw purchasers other than Jerome Horton and Sarah Elwood. Again, as Plaintiff has acknowledged in response to Defendants' Second Set of Interrogatories, there is no indication—from Fleet Farm's acquisition and disposition logs or otherwise—that Fleet Farm's Minnesota stores have sold any firearms to straw purchasers apart from the sales to Jerome Horton and Sarah Elwood. *See id.* As for Fleet Farm's Hermantown store's sales to Wayne Danielson, Defendants observe that: (1) Fleet Farm's Hermantown store sold a total of four handguns to Wayne Danielson in four separate, single-handgun transactions over a 33-month period, *see* FF_0013736; (2) Wayne Danielson was not indicted for straw purchasing, but was instead indicted for dealing in firearms without a license, *see United States v. Wayne Robert Danielson*, Case No. 0:23-cr-00005-JNE-LIB, ECF Doc. 11 ¶¶ 10–13 (D. Minn. Jan. 11, 2023); (3) the indictment against Wayne Danielson did not identify any of the four firearms sold by Fleet Farm's Hermantown store among the firearms that are identified as having been purchased from three different Minnesota-based FFLs, *see id.* ¶¶ 7–8; and (4) the only firearm that Danielson purchased from Fleet Farm's Hermantown store identified in the indictment was identified as having been "seized from [Danielson]'s home on September 14, 2022," *see id.* at 6, indicating that Danielson did not transfer that firearm to any third party; and (5) the United States brought a motion to dismiss the charges against Wayne Danielson because "insufficient evidence . . . exist[ed] to sustain a prosecution," and that motion was granted, *see id.*, ECF Doc. 47 (D. Minn. Sept. 27, 2023); *id.*, ECF Doc. 48 (D. Minn. Sept. 28, 2023).

Defendants further object to Interrogatory No. 18 on the ground that it is duplicative of Interrogatory Nos. 8, 9, 16, and 17 and Requests for Production Nos. 21 and 22.  Lastly, Defendants object on the ground that the information sought by Interrogatory No. 16 may be obtained by reviewing the documents that the Court ordered Defendants to produce in its March 12, 2024 order.  Defendants have produced responsive business records pursuant to the Court's order.  The information Plaintiff seeks in Interrogatory No. 18 may be determined by examining these business records, and the burden of deriving or ascertaining the answer to Interrogatory No. 18 will be substantially the same for both parties.

Subject to and without waiving these objections, and pursuant to Fed. R. Civ. P. 33(d), Defendants refer Plaintiff to their response to Interrogatory No. 16.

**INTERROGATORY NO. 19:**

Explain why Fleet Farm transferred Derrick Hoernke's loss prevention responsibilities to Jana Cartier for a period of time beginning in 2021, including why Mr. Hoernke left his position in loss prevention, why Ms. Cartier subsequently left her position, and why Mr. Hoernke then resumed loss prevention responsibilities, including supervision of Michael Radl, despite retaining the title of "Director of Real Estate and Facilities."

**RESPONSE:**

In addition to the foregoing General Objections, Defendants object to Interrogatory No. 19 on the grounds that it is compound, seeks information irrelevant to the claims and defenses in this suit, and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants also object on the ground that the phrases "loss prevention responsibilities" and "a period of time" are vague and ambiguous.

Subject to and without waiving these objections, Defendants state that in November 2021, Derrick Hoernke was promoted from Director of Loss Prevention and Facilities to

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Director of Real Estate and Facilities. Following Derrick Hoernke's promotion to Director of Real Estate and Facilities, Jana Cartier served as Director Risk Management from November 2021 until May 2023. Jana Cartier departed Fleet Farm in May 2023 to pursue other employment opportunities, at which point Derrick Hoernke—while continuing to perform his duties as Director of Real Estate and Facilities—was also available as a resource for loss-prevention personnel to consult with regarding loss-prevention issues (including firearms issues) until Kevin McKown was hired as Director of Firearm Compliance in December 2023. As indicated in Defendants' Response to Interrogatory No. 2, Brad Hansen was promoted to Loss Prevention Manager in May 2023 (following Jana Cartier's departure from Fleet Farm), and held that position until his departure from Fleet Farm in June 2024. Answering further, Defendants refer Plaintiff to page 27 of the transcript of Derrick Hoernke's June 26, 2024 deposition.

**INTERROGATORY NO. 20:**

Explain why Fleet Farm created the new position of Director of Firearm Compliance, hired Kevin McKown for this new position, and transferred supervision of Michelle Granato to Kevin McKown.

**RESPONSE:**

In addition to the foregoing General Objections, Defendants object to Interrogatory No. 20 on the grounds that it seeks information irrelevant to the claims and defenses in this suit, and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object on the ground that Interrogatory No. 20 seeks information from beyond the end date for discovery established in the Court's March 12, 2024 Order. As explained in Defendants' First Amended Initial Disclosures, Kevin McKown was hired by

- 13 -

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Fleet Farm as its Director of Firearm Compliance effective December 18, 2023.

Consequently, the creation of the Director of Firearm Compliance position, the hiring of

Kevin McKown, and the individuals that Kevin McKown supervised constitute actions and

information from outside the relevant time period for discovery in this action.

Subject to and without waiving these objections, Defendants state that based on the

October 1, 2023 end date for discovery ordered by the Court, they will not respond to

Interrogatory No. 20.  *See* Mar. 12, 2024 Hearing Tr. 61:2–7.  Answering further,

Defendants refer Plaintiff to pages 12 and 15 through 22 of the transcript of the June 13,

2024 Rule 30(b)(6) deposition of Defendants.

**INTERROGATORY NO. 21:**

Identify and describe all ways that Fleet Farm employees who sell guns are compensated, including all salaries, wages, bonuses, commissions, or SPIFs related to the sale of firearms, firearm accessories, or ammunition.

**RESPONSE:**

In addition to the foregoing General Objections, Defendants object to Interrogatory

No. 21 on the grounds that it is overly broad, unduly burdensome, and not proportional to

the needs of this Action or reasonably calculated to lead to the discovery of admissible

evidence.  The ways in which Fleet Farm compensates its firearm specialists is not relevant

to the claims in this case because, among other reasons, Plaintiff is not claiming that Fleet

Farm's compensation structure has caused any employee to sell a firearm to an actual or

suspected straw purchaser.  Moreover, to the extent Interrogatory No. 21 seeks information

relating to "firearm accessories[] or ammunition," such products are not relevant to

Plaintiff's claims, which concern certain handgun sales to Jerome Horton and Sarah

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Elwood. *See* Mar. 12, 2014 Hearing Tr. 61:12–23. Defendants further object on the ground that the phrase "Fleet Farm employees who sell guns" is vague and ambiguous.

Subject to and without waiving these objections, Defendants state that the firearm specialists and team leads at Fleet Farm's Minnesota stores receive an hourly wage, and the sales managers at Fleet Farm's Minnesota stores receive an annual salary. Firearm specialists, team leads, and sales managers are also permitted to purchase firearms for themselves at a reduced price. Answering further, Defendants state that beginning in 2019, firearm specialists, team leads, and sales managers were eligible to receive $2.50 per firearm sold in a particular month, provided that individual's firearm sales that month exceeded a particular threshold (typically between 10 and 15 firearms per month). Beginning in 2019, Defendants also paid firearm specialists, team leads, and sales managers six percent of the price of firearm accessories purchased alongside a firearm, and two percent of the price of firearm ammunition purchasing alongside a firearm. Beginning in July 2022, Defendants eliminated the monthly threshold requirement for eligibility to receive $2.50 per firearm sold. Answering further, pursuant to Fed. R. Civ. P. 33(d), Defendants refer Plaintiff to FF_0075778, FF_0075782, FF_0075786, FF_0075788, and FF_0075790.

**INTERROGATORY NO. 22:**

Identify and describe all Fleet Farm sales competitions or contests for firearms sales, including the Top Gun contest referenced in FF_0040909–FF_0040929.

- 15 -

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE:**

In addition to the foregoing General Objections, Defendants object to Interrogatory No. 22 on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of this Action or reasonably calculated to lead to the discovery of admissible evidence. Plaintiff has confirmed that it does not allege that any firearm sales from a Minnesota Fleet Farm store between January 1, 2017 through October 1, 2023 was a straw purchase except for certain sales to Jerome Horton, Sarah Elwood, and Wayne Danielson. *See* July 10, 2024 Amended Responses to Defs.' Second Set of Interrogatories at 4–6, and Fleet Farm did not sell any firearms to Jerome Horton, Sarah Elwood, or Wayne Danielson as part of any "sales competition[] or contest[] for firearms sales." Defendants further object to this Interrogatory on the ground that the phrase "sales competitions" and "contests for firearms sales" are vague and ambiguous. Defendants also object to the extent that this Interrogatory purports to ascribe wrongdoing to Defendants on the basis of the "Top Gun Contest" that was held from April 30 to July 1, 2017. Again, Plaintiff has served verified amended responses to Defendants' Second Set of Interrogatories that make clear Plaintiff does not contend that any of Fleet Farm's Minnesota store's firearm sales between January 1, 2017 and October 1, 2023 were improper apart from certain sales to Jerome Horton, Sarah Elwood, and Wayne Danielson. July 10, 2024 Amended Responses to Defs.' Second Set of Interrogatories at 4–6. The only purchases by Jerome Horton and Sarah Elwood occurred in 2020 and 2021, and Wayne Danielson's four separate single-firearm purchases occurred a 33-month period from December 2019 to August 2022. Accordingly, the

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

existence of a "Top Gun Contest" in early 2017 has no relevance to the actual sales or conduct at-issue in this case.

Subject to and without waiving these objections, Defendants state that they are not aware of any "sales competitions or contests" relating to firearm sales apart from the "Top Gun Contest" referenced in Interrogatory No. 22. Answering further, Defendants state that the "Top Gun Contest" referenced in Interrogatory No. 22 was held between April 30, 2017 and July 1, 2017, and that no firearms were sold to Jerome Horton, Sarah Elwood, or Wayne Danielson in connection with this contest. Further, the "Top Gun Contest" made clear that "a 4473 must be completed" before processing any firearm sale. FF_0040910. Answering further, Defendants state that Michelle Granato has occasionally offered prizes to firearm specialists for answering questions regarding firearm-compliance issues correctly. *See* FF_0000934, FF_0000955. Answering further, Defendants refer Plaintiff to pages 245 through 247 of the transcript of Mike Radl's June 20, 2024 deposition and pages 186 through 187 of the transcript of Derrick Hoernke's June 26, 2024 deposition.

**INTERROGATORY NO. 23:**

Identify any straw purchase or "Be On the Look Out" (B.O.L.O.) alerts that were ever entered into the Fleet Farm alert system or issued related to Jerome Horton or Sarah Elwood.

**RESPONSE:**

In addition to the foregoing General Objections, Defendants object to Interrogatory No. 23 on the ground that it is duplicative of Interrogatory Nos. 11 and 12, as well as Requests for Production Nos. 12 and 23 through 26.

- 17 -

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Subject to and without waiving these objections, and pursuant to Fed. R. Civ. P. 33(d), Defendants refer Plaintiff to FF_0042214 and FF_0042289, and states that any straw purchase or BOLO alert related to Jerome Horton or Sarah Elwood would be reflected in FF_0042214 and FF_0042289.  Answering further, Defendants state that, to the best of its knowledge and following a reasonable inquiry, no straw-purchase alert or BOLO alert was issued in connection with Jerome Horton or Sarah Elwood.  Answering further, Defendants state that each sale to Jerome Horton and Sarah Elwood occurred after Fleet Farm's retail stores received a "Proceed" message from NICS, that Fleet Farm's Oakdale store contacted ATF regarding Horton's October 17, 2021 application to purchase a firearm and was specifically directed to proceed with the sale as part of an active ATF law enforcement investigation, that the ATF collected and reviewed all documentation associated with the sale of firearms to Horton (including Form 4473s, Form 3310.4s, and (where applicable) video footage of the purchases), and that in October 2021, an ATF agent communicated to Fleet Farm that "the cooperation she received [from Fleet Farm] was fantastic and everything she requested was provided very quickly," she was "impressed by [Fleet Farm's] organization," and she "expressed that in no way did [Fleet Farm] do anything wrong by selling [Jerome Horton] the firearms" and that "[t]here was nothing in his background that would have rendered a denied response."  FF_0001484.  Answering further, Defendants note that in her guilty plea, Sarah Elwood agreed that she "knowingly ma[de] false and fictitious oral and written statements that were intended or likely to deceive [FFLs] regarding a fact material to the lawfulness of the [firearm] sales," AGO0000207, and that in his guilty plea, Jerome Horton "stipulate[d] and agree[d] that on

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

July 31, 2021, he knowingly and voluntarily made a false written statement to Fleet Farm"

and that this statement "was intended and likely to deceive Fleet Farm about a fact material

to the lawfulness of the sale of the firearm," and that he "made similar false statement in

connection with the purchase of all" other firearms that he purchased from Fleet Farm's

Minnesota stores, AGO0000262 – AGO0000263.

**INTERROGATORY NO. 24:**

Identify and quantify all revenue and profits from Fleet Farm's sales of firearms to
Jerome Horton, Sarah Elwood, and Wayne Danielson.

**RESPONSE:**

In addition to the foregoing General Objections, Defendants object to Interrogatory

No. 24 on the grounds that it is overly broad and unduly burdensome, and seeks information

not proportional to the needs of this Action.  Defendants also object to this Interrogatory

on the ground that Fleet Farm's sales of firearms to Wayne Danielson are irrelevant

because: (1) Fleet Farm's Hermantown store sold a total of four handguns to Wayne

Danielson in four separate, single-handgun transactions over a 33-month period, *see*

FF_0013736; (2) Wayne Danielson was not indicted for straw purchasing, but was instead

indicted for dealing in firearms without a license, *see United States v. Wayne Robert*

*Danielson*, Case No. 0:23-cr-00005-JNE-LIB, ECF Doc. 11 ¶¶ 10–13 (D. Minn. Jan. 11,

2023); (3) the indictment against Wayne Danielson did not identify any of the four firearms

sold by Fleet Farm's Hermantown store among the firearms that are identified as having

been purchased from three different Minnesota-based FFLs, *see id.* ¶¶ 7–8; and (4) the only

firearm that Danielson purchased from Fleet Farm's Hermantown store identified in the

- 19 -

indictment was identified as having been "seized from [Danielson]'s home on September 14, 2022," *see id.* at 6, indicating that Danielson did not transfer that firearm to any third party; and (5) the United States brought a motion to dismiss the charges against Wayne Danielson because "insufficient evidence . . . exist[ed] to sustain a prosecution," and that motion was granted, *see id.*, ECF Doc. 47 (D. Minn. Sept. 27, 2023); *id.*, ECF Doc. 48 (D. Minn. Sept. 28, 2023).  Defendants further object to Interrogatory No. 24 on the ground that the phrase "profits" is ambiguous.  Defendants will interpret "profits" as meaning the net revenue that Defendants derived from a particular firearm sale.

Subject to and without waiving these objections, Defendants state that the below chart reflects the retail value of each firearm sold to Jerome Horton, Sarah Elwood, or Wayne Danielson, as well as the net revenue that Defendants earned from each sale:

| Firearm Type | Transaction Date | Purchase Price of Firearm | Defendants' Net Revenue from Sale |
|---|---|---|---|
| ACP 200 | Dec. 2, 2019 | $199.99 | $28.97 |
| Canik TP9SF Elite | June 20, 2020 | $599.98 | $115.42 |
| Taurus G2C | July 30, 2020 | $229.50 | $42.09 |
| Taurus Spectrum | Jan. 4, 2021 | $229.99 | $60.97 |
| Taurus PT111G2A | Jan. 11, 2021 | $269.99 | $92.99 |
| Taurus Spectrum | Jan. 31, 2021 | $229.99 | $60.97 |
| Taurus Spectrum | Jan. 31, 2021 | $229.99 | $60.97 |
| HS Produkt XDS Mod.2 | Mar. 15, 2021 | $549.99 | $139.95 |
| Ruger EC9S | May 1, 2021 | $259.99 | $44.66 |
| Smith & Wesson M&P | May 1, 2021 | $549.99 | $98.93 |

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| Firearm Type | Transaction Date | Purchase Price of Firearm | Defendants' Net Revenue from Sale |
|---|---|---|---|
| Glock G19 | May 6, 2021 | $519.99 | $70.97[1] |
| Ruger-57 | May 6, 2021 | $729.99 | $173.82 |
| Glock G17 | May 12, 2021 | $519.99 | $70.97 |
| Ruger-57 | May 12, 2021 | $729.99 | $173.82 |
| Taurus G2C | June 15, 2021 | $269.99 | $89.99 |
| Ruger Security 9 | July 4, 2021 | $349.99 | $58.13 |
| Glock G19 | July 7, 2021 | $519.99 | $70.97 |
| Glock G43X | July 10, 2021 | $490.87 | $112.26 |
| Beretta APX | July 23, 2021 | $379.99 | $60.22 |
| FN USA 503 | July 24, 2021 | $479.99 | $72.81 |
| HS Produkt XDS Mod.2 | July 24, 2021 | $449.99 | $125.96 |
| Glock 26Gen5 | July 26, 2021 | $549.99 | $103.01 |
| Glock G43X | July 27, 2021 | $499.99 | $121.38 |
| Stoeger STR-9C | July 27, 2021 | $349.99 | $76.60 |
| Glock G45 | July 31, 2021 | $549.99 | $103.01 |
| Mossberg MC2C | July 31, 2021 | $419.99 | $104.63 |
| Ruger EC9S | July 31, 2021 | $269.99 | $49.48[2] |
| Glock 19X | Aug. 14, 2021 | $599.99 | $71.37 |
| Glock G19 gen5 | Aug. 20, 2021 | $539.99 | $93.01 |

[1] This figure is based on the average of the sales of Glock G19s at Fleet Farm's Blaine store on May 6, 2021.

[2] This figure is based on the average of the sales of Ruger EC9Ss at Fleet Farm's Blaine store on July 31, 2021.

- 21 -

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Firearm Type | Transaction Date | Purchase Price of Firearm | Defendants' Net Revenue from Sale |
|---|---|---|---|
| Glock 26Gen5 | Aug. 31, 2021 | $549.99 | $103.01 |
| Mossberg MC2C | Aug. 31, 2021 | $419.99 | $91.45 |
| Ruger 22 Charger | Sept. 4, 2021 | $329.99 | $78.95 |
| Glock G17 gen5 | Sept. 13, 2021 | $549.99 | $84.13 |
| Ruger-57 | Sept. 17, 2021 | $649.99 | $82.50 |
| Glock G19 | Sept. 18, 2021 | $519.99 | $70.97 |
| Glock 26Gen5 | Sept. 26, 2021 | $549.99 | $103.01 |
| Radical Firearms RF-15 | Sept. 26, 2021 | $749.99 | $188.71 |
| Taurus G3c | Oct. 11, 2021 | $299.99 | $75.80 |
| Glock 26Gen5 | Oct. 17, 2021 | $549.99 | $99.14 |
| ACP 200 | May 16, 2022 | $259.99 | $68.11 |
| Taurus 605 | Aug. 4, 2022 | $339.99 | $66.56 |

The total net revenue earned by Defendants from the above sales is approximately $3,660.67.

**INTERROGATORY NO. 25:**

Identify whether Fleet Farm has produced all videos in its possession, custody, or control responsive to the State's Document Request No. 15, and identify any videos of Jerome Horton or Sarah Elwood that Fleet Farm once had in its possession but has not produced in this lawsuit, specifying the date, Fleet Farm store, and location of the camera at the Fleet Farm store.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

**RESPONSE:**

In addition to the foregoing General Objections, Defendants object to Interrogatory No. 25 on the grounds that it is compound and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendants state that they have produced all videos in their possession, custody, or control that reflect firearm sales to Jerome Horton or Sarah Elwood. Answering further, Defendants state that these videos reflect Jerome Horton's purchases from Fleet Farm stores on June 15, July 4, 7, 23, 27, and 31, August 20 and 31, September 13, 17, 18, and 26, and October 11 and 17, 2021. *See* FF_0037709 – FF_0037765. Answering further, Defendants state that any videos of Jerome Horton's other firearm purchases from Fleet Farm's Minnesota stores or videos of Sarah Elwood's firearm purchases from Fleet Farm's Minnesota stores were retained in accordance with Fleet Farm's video retention policy—as described in Fleet Farm's February 20, 2024 Amended Response to Plaintiff's Interrogatory No. 13—and that the cameras that recorded such videos would have been located in the same areas as those reflected in the videos that have been produced in this Action. *See* FF_0037709 – FF_0037765.

**AS TO OBJECTIONS:**

Dated:  August 2, 2024

*/s/ Todd A. Noteboom*
Todd A. Noteboom (#0240047)
Andrew W. Davis (#0386634)
Sharon R. Markowitz (#0392043)
Andrew P. Leiendecker (#0399107)
Zachary J. Wright (#0402945)
Stinson LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
todd.noteboom@stinson.com
andrew.davis@stinson.com
sharon.markowitz@stinson.com
andrew.leiendecker@stinson.com
zachary.wright@stinson.com

**ATTORNEYS FOR DEFENDANTS**

## <u>VERIFICATION</u>

I am Derrick Hoernke, Director of Real Estate and Facilities at Fleet Farm Wholesale Supply Co. LLC.  I am authorized to make this representation on behalf of Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC (together, "Fleet Farm").  I have read Fleet Farm's Responses to the Interrogatories above and know the contents thereof.  The Responses are true to the best of my current knowledge, recollection, information, and belief based on a reasonable investigation.  I make no verification with respect to any objections stated within the Responses.

I declare under penalty of perjury that everything I have stated in this Verification is true and correct.

FLEET FARM LLC
FLEET FARM GROUP LLC
FLEET FARM WHOLESALE SUPPLY CO. LLC


DATED this 2nd day of August, 2024.

By: *Derrick Hoeruke*

Director of Real Estate and Facilities

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record via email on August 2, 2024.

/s/ Andrew P. Leiendecker
Andrew P. Leiendecker