# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota by its Attorney General, Keith Ellison,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC,<br><br>　　　　Defendants. | Case No.: 0:22-cv-02694-JRT-JFD<br><br>**STATE OF MINNESOTA'S MEMORANDUM IN OPPOSITION TO FLEET FARM'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF JOSEPH BISBEE** |

Joseph Bisbee is a former ATF Special Agent and current law enforcement officer who is more than qualified to serve as an expert witness in this case, as he has done in similar cases before. In a transparent attempt to rid the State of much of the testimony of its only expert witness and win a "battle of the experts" by default, Fleet Farm makes a variety of unavailing challenges to Bisbee's expert report and opinions.

Bisbee is qualified to offer his opinions on straw purchasing indicators and Fleet Farm's conduct in this case. His experience and training with the ATF in the exact subject matter areas at issue in this case will render his testimony helpful to the jury and the Court, both in his principal testimony and in rebuttal to Fleet Farm's experts. In attempting to compare Bisbee's qualifications to two of Fleet Farm's experts, Fleet Farm wrongly insists that Bisbee must have their exact background in order to rebut their opinions, while ignoring Bisbee's actual knowledge, experience, and training.

Second, Bisbee's opinions about the harms posed to the public by the firearms sold by Fleet Farm to straw buyers, and his opinion on measures Fleet Farm could take to

improve Fleet Farm operations and prevent future sales to straw buyers, are well-supported by record evidence, scholarly sources, and Bisbee's specialized experience and knowledge.

Third, to the extent Bisbee's report includes summation of record evidence, Bisbee does so in support of his opinions and as required by the federal rules for expert disclosures. Regardless, Fleet Farm's narrative challenge is premature this far in advance of trial.

Finally, the select opinions of Bisbee challenged as "ultimate conclusions" by Fleet Farm are allowed by Federal Rule of Evidence 704 and do not impermissibly tread on this Court's role of informing the jury about the law.

For these reasons, Fleet Farm's motion should be denied.

## BACKGROUND

I.    **For More Than 25 years at the ATF, Joseph Bisbee Investigated Illegal Firearms Trafficking, Including Straw Purchasing and What FFLs Should Do To Stop It.**

As an ATF special agent focused on firearms trafficking, the State's expert Joseph Bisbee spent over two decades investigating how and why criminals acquire firearms. Declaration of Andrew P. Leiendecker, Ex. A (Docs. 181.1 and 182), Expert Report of Joseph Bisbee (Bisbee Rep.) at 1; Declaration of Eric J. Maloney, Ex. 1, Deposition of Joseph Bisbee (Bisbee Dep.) at 33:8–12, 35:20–36:1; 40:1–18. When criminals straw purchase firearms from FFLs, ATF special agents like Bisbee ask how and why it happened. Bisbee Dep. at 39:12–40:18. Indeed, when FFLs failed to prevent illegal straw sales in the cases that ended up on Bisbee's desk, he "would be looking at those policies and procedures of FFLs and [asking] how was that happening," analyzing the reasons the FFL made the illegal sale. *Id.* at 39:12–17. When investigating straw-purchase cases,

Bisbee "would frequently be in contact with FFLs," including to discuss what they should do differently to prevent future straw sales. *Id.* at 39:6–42:25. In other words, Bisbee's role included addressing the interventions necessary to reduce illegal firearm activity, including measures taken to reduce FFLs' failure to detect—or enabling—of straw-purchasing. Thanks to his on-the-ground ATF experience in hundreds of straw purchase investigations, Bisbee is an expert in the affirmative measures FFLs like Fleet Farm should be taking to prevent straw purchasing from happening in the first instance. Bisbee Rep. at 1.

Bisbee's 25-year-plus career at the ATF—specifically his specialized expertise on the root causes of firearm crimes, such as FFLs' failure to identify straw-purchasing—more than qualifies him to testify as an expert in this case. Bisbee's CV shows that he excelled as a firearms special agent from the moment he joined the ATF in 1989. Bisbee Rep. at App'x A. Bisbee received promotions from special agent, to project officer, to assistant country attaché, to group supervisor. *Id.* Bisbee investigated hundreds of firearms trafficking cases from 1989 onward, and in 1995, he was promoted to the Firearms Enforcement Branch of the ATF, where he built on his experience to develop and implement investigative programs within the ATF. *Id.* Bisbee even consulted with other countries on their investigations and training. *Id.* In 2008, Bisbee was labeled "the top federal gun-hunter in DC" by Washingtonian Magazine for his illegal firearms trafficking investigations in Washington, D.C. *Id.* Bisbee has led ATF training for law enforcement in the U.S. and abroad, including providing firearms trafficking training to new agents at the ATF's national academy. *Id.* The educational materials Bisbee developed regarding firearms trafficking, including straw purchasing warning signs, are still used by the ATF

today, including in FFL training. Bisbee Dep. at 44:12–45:8; 309:17–310:12. Since leaving the ATF in 2015, Bisbee continues to serve the public as a peace officer and educate the public about firearm violence prevention through his business Armed With Knowledge. Bisbee Rep. at 1.[1] *Id.*; Bisbee Dep. at 70:10–12.

Bisbee's pedigreed history of snuffing out root causes of firearm trafficking, identifying measures that will have a positive impact on reducing such crimes, and training both industry and law enforcement to do the same, demonstrate why Bisbee is more than qualified to provide expert testimony in this case.

## II. Bisbee's Experience and Training at the ATF Establish His Qualifications to Testify on the Subjects of His Report and Rebuttal Report.

Since being retained in this case, Bisbee has used his experience, education, and training to (1) provide specialized firearm and straw-purchase information that will be helpful to a jury, and (2) draw appropriate conclusions about Fleet Farm's policies and conduct related to straw purchasing.

### A. Bisbee's initial report contains opinions within Bisbee's specialized firearm knowledge.

In his initial report, Bisbee discusses the regulatory context and underlying events that form his opinions: firearms licensing and sales and ATF form 4473, FFL duties and responsibilities to prevent straw purchasing, warning signs of straw purchasing, Fleet Farm's firearms compliance structure and procedures, Fleet Farm's sales of firearms to

---

[1] Based on his impressive credentials, it is no surprise that Bisbee has previously been retained as an expert on straw purchase indicators, including on FFL training and policies regarding straw purchasing. Bisbee Dep. 17:12–22:6.

straw buyer Jerome Horton and warning signs of straw buying, and Fleet Farm's sales of firearms to straw buyer Sarah Elwood and warning signs of straw buying. *See* Bisbee Rep. at 2–15. Together, Bisbee's analysis of these topics will provide helpful context for the jury of "how and why" Fleet Farm allowed straw sales to go undetected, exactly as Bisbee did at the ATF. Bisbee Dep. at 33:8–12, 35:20–36:1; 40:1–18.

Throughout Bisbee's report, and especially in the sections on Bisbee's analysis of Fleet Farm's sales to straw buyers and Fleet Farm's efforts to prevent straw purchases, Bisbee builds on this context to draw permissible inferences and conclusions about Fleet Farm's straw-purchasing culture and its failures that led to the straw sales to Horton and Elwood. Bisbee Rep. at 16–21. Bisbee concludes his report by opining on the remedial actions Fleet Farm should undertake and summarizing the ten opinions he formed through his analysis. *Id.* at 21–22. Again, working with FFLs to prevent the failure to detect future straw sales by implementing affirmative measures was well within Bisbee's past experience as an ATF special agent. Bisbee Dep. at 40:19–42:25.

Notably, Fleet Farm agrees that Bisbee is qualified to opine on warning signs of straw purchasing and his "observations and assessment" of Fleet Farm's sales to Jerome Horton and Sarah Elwood. Fleet Farm Mem. in Support of Mot. to Exclude Bisbee (Fleet Farm Mem.), Doc. 180, at 2–3, n.1. While Fleet Farm may prefer that Bisbee's opinions go no further than mere "observation and assessment," part and parcel with Bisbee's agreed-upon expertise is his authority to draw the conclusions that follow: that Fleet Farm should *never have made* these sales and, in general, failed to adequately prevent straw purchasing. *E.g.*, Bisbee Rep. at 16 (using details from Horton's sale to form the opinion

that Fleet Farm's lax procedures made it the type of FFL where straw purchasers could "fulfill their illegal agenda while minimizing their risk of being caught"), 19 (describing his opinion that Fleet Farm had a "permissive culture in relation to suspicious firearms transactions including straw purchases" and employees had " ██████████████████ ██████████████████████████████████████████ ██████████ ").

Fleet Farm's acknowledgment of Bisbee's prowess in identifying straw purchase warning signs further shows the importance of his testimony here, where Bisbee and two of Fleet Farm's experts[2] agree that the ATF *does not have* specific requirements for FFLs to prevent straw purchasing. Declaration of Andrew P. Leiendecker, Ex. C (Docs. 181.3 and 182.1), Rebuttal Expert Report of Joseph Bisbee (Bisbee Rebuttal Rep.) at 1–4, 17–18. Instead, "warning signs" form the substance of the ATF's "guidelines," and Bisbee has the knowledge and experience to educate the jury about such warning signs and the processes Fleet Farm should implement to notice these warning signs and take action when they are present to prevent straw sales. *Id.*; *see also* Declaration of Eric J. Maloney, Ex. 2, Deposition of Andrew Graham at 270:1–19 (Fleet Farm's expert agreeing that Bisbee accurately articulated the same straw purchase warning signs as ATF "guidelines").

---

[2] Fleet Farm's third expert, Prof. Gary Kleck, does not believe there are any valid straw purchase warning signs under ATF guidance. Declaration of Eric J. Maloney, Ex. 2 (Doc. 190.2), Deposition of Gary Kleck at 217:14–218:2 (condemning "every other alleged warning sign of a suspicious transaction that's been put forward by the ATF" as "invalidated" or "folk wisdom" that is "uncritically accepted by people in the firearms[] enforcement community").

For these same reasons, Bisbee offers well-supported opinions on the remedial measures he recommends that Fleet Farm undertake to improve Fleet Farm's straw-purchasing prevention in the future. *See* Bisbee Rep. at 21. Remedial measures like these are precisely the type of interventions that Bisbee recommended to FFLs in identifying the causes of illegal firearms trafficking in their operations. Bisbee Dep. at 39:12–42:16. Bisbee has sufficient experience and training to opine that measures such as these will help detect and prevent straw purchases and stop crime guns from entering communities. Bisbee Rep. at 21. In sum, Bisbee's initial report—both its context and its conclusions—are well-founded on Bisbee's firsthand experience and training at ATF.[3]

### B.    In rebuttal, Bisbee disputes Fleet Farm's experts' opinions that are contrary to his experience and education.

Just as in his initial report, Bisbee squarely relies on his own education, knowledge, and expertise in firearms trafficking in his rebuttal report. Bisbee rebuts a variety of opinions from all three of Fleet Farm's experts, Andrew Graham, Gary Kleck, and William Napier. *See* Bisbee Rebuttal Rep. at 1–13 (rebuttal to Graham), 14–16 (rebuttal to Kleck), 17–28 (rebuttal to Napier). Much of Bisbee's rebuttal reiterates his conclusions drawn from

---

[3] While Bisbee's experience forms the backbone of his opinions, he also consistently relies on scholarly and regulatory sources where appropriate to provide additional support and context. *E.g.*, Bisbee Rep. at 4–5, n. 20–22 (describing studies on ways to reduce firearm trafficking, including FFL intervention). Moreover, Bisbee familiarized himself with the record in this case to avoid making any assumptions and instead use what individuals themselves experienced, much like he would have as a special agent assisting an FFL in preventing future straw sales. *E.g.*, *id.* at 19–21, n. 142–150 (using deposition testimony and exhibits to discuss why the context of Fleet Farm's July 31 sale of multiple firearms to Horton is an especially concrete basis for the opinion that Fleet Farm failed to adequately prevent straw purchasing).

his agreed-upon expertise on straw-purchasing warning signs and Fleet Farm's failure to stop the sales to Horton and Elwood. *E.g.*, *id.* at 6 (rebutting Graham with the insight that "the lack of accountability for FFLs violating laws and regulations frustrates ATF personnel tasked with investigating firearms trafficking, including straw purchasing"); 14 (rebutting Kleck by explaining that "in my experience investigating trafficking as an ATF special agent, including straw purchasing, straw purchasing from FFLs is a significant way that criminals acquire firearms"); 25 (describing in rebuttal to Napier how Fleet Farm's focus on "physical security and paperwork accuracy" "resulted in a permissive culture in relation to suspicious firearms transactions including straw purchases.").[4] In sum, Bisbee rebuts Fleet Farm's experts with his practical knowledge of what ATF special agents do on the ground and how FFLs like Fleet Farm can impede the ATF's goal of reducing illegal firearm activity with lackluster straw-purchasing practices and a sale-first corporate culture.

## ARGUMENT

Under Federal Rule of Evidence 702, expert testimony is admissible under the following circumstances:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge

---

[4] Again, Bisbee not only relies on his experience but also engages with scholarly sources, including those cited by Defendant's experts, in his rebuttals. *E.g.*, Bisbee Rebuttal Rep. at 14–15, n. 108–115 (analyzing the Koper study cited by Kleck, pointing out that even Koper knew multiple gun sales is a warning sign of a firearm trafficking, and building on that acknowledgement by citing other studies finding the same).

will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 imposes a "basic gatekeeping obligation" on trial judges to ensure that "all expert testimony" is "not only relevant, but reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) (quotation marks omitted)). "Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006); *see Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) (collecting cases and noting that "[c]ases are legion that, correctly, under *Daubert,* call for the liberal admission of expert testimony"). Courts should not "weigh or assess the correctness of competing expert opinions" by "exclud[ing] . . . at the outset," but should instead have competing opinions "tested by the adversary process with competing expert testimony and cross–examination." *Johnson*, 754 F.3d at 562.

## I.    Bisbee Is Qualified to Offer Expert Testimony in This Case.

Bisbee more than possesses the requisite "knowledge, skill, experience, training, or education" to testify as an expert witness in this lawsuit. *See* Fed. R. Evid. 702.

Although an expert witness's area of competence must generally match the subject matter of the witness's testimony, Rule 702 does not mandate specific expertise in the specialized field at issue, nor does Rule 702 require that competing expert witnesses have identical backgrounds and specialties. *See, e.g.*, *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (allowing neurologist to testify about a shoulder injury); *McRunnel v. Batco Mfg.*, 917 F.Supp.2d 946, 952 (D. Minn. 2013) (allowing engineer without a biomechanical background to testify about a grain conveyor). In addition, specific academic education is not required, because "an individual can qualify as an expert where he possesses sufficient knowledge gained from practical experience, even though he may lack academic qualifications in the particular field of expertise." *Fox v. Dannenberg*, 906 F.2d 1253, 1256 (8th Cir. 1990). Any gaps in an expert witness's qualifications or knowledge go to the weight of the testimony, not to admissibility. *Robinson*, 447 F.3d at 1100 (citations omitted).

Fleet Farm challenges Bisbee's qualifications only to the extent he offers opinions on "federal law and guidelines for FFL operations, or the industry standard for FFL operations." Fleet Farm Mem. at 11.[5] In essence, this means that most of the opinions in Bisbee's initial report are not encompassed by this argument.[6] To the extent Bisbee offered

---

[5] Fleet Farm's motion does not encompass Bisbee's testimony on "his views on 'red flags' of straw purchasing from a law-enforcement perspective, as well as his observations and assessment of Fleet Farm's sales to Jerome Horton and Sarah Elwood." Fleet Farm Mem. at 2, n.1.

[6] Fleet Farm wrongly claims that Bisbee's initial report is "replete" with testimony about Fleet Farm's compliance with "federal laws and guidelines, or standard FFL industry practice." Fleet Farm Mem. at 16. On pages 4 through 10 of his initial report, Bisbee provides his opinion on the warning signs of straw purchasing and Fleet Farm's policies

opinions on "federal laws and guidelines" or "industry standards," it was largely in his rebuttal report, in response to the opinions of Fleet Farm's experts on those issues. *See* Bisbee Rebuttal Rep. at 4–5 (addressing Graham's third opinion regarding the federal Gun Control Act and ATF regulations), 5–6 (addressing Graham's sixth opinion about Fleet Farm's renewal of ATF licenses), 10–11 (noting Graham's failure to notice that Fleet Farm failed to timely submit an ATF form), 12 (agreeing with Graham's claim that ATF regulations do not specify straw purchase warning signs), 17–22 and 25–27 (applying the "industry standard" warning signs cited by Napier to Fleet Farm's conduct).

Fleet Farm argues that Bisbee cannot rebut Fleet Farm's experts' testimony because Bisbee never served in a "regulatory enforcement personnel" role at the ATF or directly worked for an FFL on straw-purchasing prevention—conveniently, the exact positions held by Fleet Farm's hired experts. Fleet Farm Mem. at 14–15. Although Bisbee has a different source of experience and training than Graham or Napier, Bisbee is equally, if not more, equipped to review Fleet Farm's, or any other FFL's, conduct, policies, procedures, and training to assess what the FFL did to prevent straw purchases and whether that effort was sufficient.

The cases cited by Fleet Farm fail to show an analogous situation where a district court excluded similarly qualified testimony and demanded such an extraordinary fit

and procedures related to straw purchasing. Bisbee Rep. at 4–10. Nowhere in these seven pages does Bisbee opine whether Fleet Farm complied with "federal laws and guidelines, or standard FFL industry practice." Fleet Farm Mem. at 16. Bisbee references the undisputed laws and regulations relevant to this lawsuit, including with respect to ATF Forms 4473 and 3310.4.

between the expert and the subject matter. Unlike the enrollment management expert prohibited from testifying about damages, or the forensic expert prohibited from testifying about enrollment management in *Student Paths*, Bisbee is a former ATF special agent and firearms expert who will testify about the firearms industry. *See Student Paths LLC v. OnSharp, Inc.*, No. 11–2149, 2013 WL 951418, at *3 (D. Minn. Mar. 12, 2013).

And although the allergist in *Schaefer-Condulmari* was not entitled to testify about PTSD, his excluded opinions (unlike Bisbee's opinions here) were beyond the scope of his original report, and his only training in the area was one course in medical school. *Schaefer-Condulmari v. U.S. Airways Grp., LLC*, No. 09–1146, 2012 WL 2920375, at *5 (E.D. Pa. July 18, 2012). Far from the tenuous connection between an allergist who took a single psychiatry course in medical school and his testimony about PTSD, Bisbee's ATF experience is even *more* connected to straw purchasing from FFLs than a neurologist's training was connected to orthopedics in *Robinson*. *See* 447 F.3d at 1101.

Fleet Farm's reliance on *Khoday v. Symantec Corp.* is equally distinguishable. In *Khoday*, this Court limited certain expert testimony on two very specific issues that the expert had no training or experience in, but did admit "opinion[s] or inference[s] based on facts or data," including ones that applied that expert's industry experience and knowledge to the specific products at issue, "[g]iven the expert's] considerable knowledge about the industry." 93 F. Supp. 3d 1067, 1078-79 (D. Minn. 2015) (citation omitted).[7]

---

[7] The remaining cases Fleet Farm relies on for its argument that Bisbee lacks requisite qualifications fail to provide persuasive support because they address a high level of necessary technical training unlike the firearm industry. *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (holding that flood

Here, unlike in *Khoday*, Bisbee has not only "considerable knowledge" about the firearms industry, but also training, education, *and* experience related to FFL operations. *E.g.*, Bisbee Dep. at 179:2-9 (describing how ATF "aid[s] FFLs in determining if sales are lawful"). As described above, Bisbee worked as a special agent with the ATF for more than 25 years. Bisbee Rep. at 1, App'x A. He has substantial training and experience with "hundreds" of investigations into firearms trafficking, including identifying the warning signs of straw purchasing. Bisbee Rep. at 1. While at the ATF, Bisbee developed educational materials regarding firearms trafficking, including straw purchasing warning signs, that are still used by the ATF today with various audiences, including FFLs. Bisbee Dep. at 44:12–45:8; 309:17–310:12. In the course of his firearms investigations, Bisbee frequently reviewed and communicated with FFLs regarding their firearms policies and worked with them to prevent firearm trafficking. Bisbee Dep. at 39:6–42:2.

Since leaving the ATF, Bisbee works as a police officer in Seattle, Washington and provides expert testimony regarding firearms trafficking issues. Bisbee Dep. at 69:7–72:3. Bisbee has been retained as an expert in litigation involving straw purchase warning signs

---

management expert could not testify about warehousing safety because he had no training or experience and did not otherwise compensate for his lack of familiarity); *Bollom v. Brunswick Corp.*, 453 F. Supp. 3d 1206, 1218 (D. Minn. 2020) (excluding expert with no training in electrical systems); *Bhd. Mut. Ins. Co. v. ADT, LLC*, No. 13–1870 (DSD/JJK), 2014 WL 2993728, at *2 (D. Minn. July 2, 2014) (excluding expert with no training in structural engineering); *Khoury v. Philips Med Sys.*, No. 07–04522 (DSD/SRN), 2009 WL 4049911, at *5 (D. Minn. Nov. 23, 2009) (excluding expert with no training in medical design defects).

and review of FFL policies, procedures, and training materials in at least two different cases since leaving the ATF. Bisbee Dep. at 12:1–21:22.

Straw purchasing is a crime, and Bisbee's experience on the criminal side of ATF informs his proffered opinions about straw purchasing warning signs and FFLs. Fleet Farm *agrees* that Bisbee can testify about warning signs, but Fleet Farm ignores the parts of Bisbee's experience and training involving FFL compliance and operations. In short, Bisbee has the training and experience to rebut the opinions of Graham and Napier.

## II.    Bisbee's Opinions Are Relevant, Well-Supported, and Consistently Apply His Knowledge and Experience to the Facts of This Case.

Fleet Farm asserts that two of Bisbee's opinions are "so fundamentally unsupported" that they should be excluded by the Court. Fleet Farm Mem. at 17 (quotation omitted). Fleet Farm first attacks Bisbee's ninth opinion in his initial report:

> Due to Fleet Farm's failure to prevent straw purchases by Mr. Horton and Ms. Elwood, numerous more firearms are now circulating within the criminal element, which means that more crimes involving these firearms are likely.

Bisbee Rep. at 22.

Bisbee's ninth opinion is well-supported. First, Bisbee's report details that several guns sold by Fleet Farm Horton and Elwood were already recovered in connection with crimes—firmly anchoring Bisbee's opinion in the actual facts of this case in analyzing the likelihood of future crimes tied to the remainder of the Fleet Farm-sold guns. Bisbee Rep. at 11–12; *see* Fed. R. Evid. 702(b) (requiring that testimony be "based on sufficient facts or data").

Second, contrary to Fleet Farm's misreading of his report, Bisbee does not offer "zero authority" for his opinion. Fleet Farm Mem. at 18. Bisbee cites three sources in support of his opinion that multiple sales of guns are a strong indicator of firearms trafficking and future use in later crime, including one source that says that "a number of studies provide indirect indications that guns sold in these transactions are more likely to be trafficked and used in crime." Bisbee Rep. at 4–5 (quoting *Crime Gun Risk Factors: Buyer, Seller, Firearm, and Transaction Characteristics Associated with Gun Trafficking and Criminal Gun Use*, Christopher S. Koper, Journal of Quantitative Criminology, Volume 30, Number 2, June 2014). Bisbee also relies on the fact that Fleet Farm's own firearms compliance employee, Michelle Granato, agreed in her deposition that "straw purchased guns can end up in illegal commerce and be used by criminals to commit crimes." Bisbee Rep. at 3.

Finally, as an ATF investigator for more than 25 years who was involved in hundreds of firearms trafficking investigations, Bisbee is more than qualified to render an opinion on the general connection between straw-purchased guns and the likelihood of their use in future crimes. *See* Bisbee Rebuttal Rep. at 14 ("[I]n my experience investigating trafficking as an ATF special agent, including straw purchasing, straw purchasing from FFLs is a significant way that criminals acquire firearms.") From these hundreds of investigations, Bisbee has significant experience with the disposition and recovery of straw-purchased firearms to support his general opinion that unrecovered straw-purchased firearms pose a significant risk to public safety.

Fleet Farm further takes issue with Bisbee's recommendation of remedial actions that Fleet Farm should undertake to address deficiencies in identifying and preventing straw purchases at Fleet Farm stores. Fleet Farm Mem. at 18–19; Bisbee Rep. at 21. According to Fleet Farm, because Bisbee testified that these remedial actions are not strictly "required by law," he should be excluded from offering opinions about them entirely in this case. Fleet Farm Mem. at 18.

But Fleet Farm cites no case for the proposition that an expert's opinion on future remedial actions can only be tethered to actions "required by law."[8] This narrow focus completely ignores substantive testimony that Bisbee provided in support of his proposed remedies. Bisbee Dep. at 262:9-263:1, 265:14-266:9 (describing rationale for first remedial action), 266:14-267:7 (same for second remedial action), 270:13-271:4 (same for third remedial action), 278:8-279:12 (same for fourth and final remedial action). As demonstrated above, Bisbee's experience and training involving FFL compliance and operations qualify him to testify about Fleet Farm's policies, procedures, and conduct. *See, e.g.*, Bisbee Rep. at 16 (using training and experience to opine that straw buyers target FFLs that are more likely to allow their sales to go through and acknowledging that one of

---

[8] In fact, Fleet Farm's own experts agree that there are essentially no laws or rules that micromanage how FFLs are required to detect and prevent straw purchases. Declaration of Eric J. Maloney, Ex. 3. Deposition of William Napier at 138:14–16 (" ██████████████████████████████████ ██████████████████████████████ "); Declaration of Eric J. Maloney, Ex. 4, Expert Report of Andrew Graham (Graham Rep.) at 13 (" █████████████████████████████████████ ████████████ "). In essence, Fleet Farm appears to want to peg its conduct, and any future injunction ordered by this Court, to the absence of what is "required by law" to absolve itself of the consequences of its actions and the burden of remedying misconduct.

the straw purchasers in this case told the sales associate that two other FFLs would not authorize his sales to bolster that conclusion). A necessary corollary is that Bisbee is equally qualified to provide his opinion on what measures Fleet Farm should implement to address those deficiencies.

Because the State is seeking equitable injunctive relief against Fleet Farm in this case, Bisbee's opinions on appropriate remedial action will be necessary and helpful to the Court in making its equitable determination as to the appropriate injunctive terms. *See State v. Minn. Sch. of Bus., Inc.*, 935 N.W.2d 124, 134 (Minn. 2019) ("Minnesota Statutes section 8.31, subdivision 3, also broadly authorizes the Attorney General to seek equitable relief to stop conduct that harms consumers."); *Minn. Vikings Football Stadium, LLC v. Wells Fargo Bank, Nat'l Ass'n*, 193 F. Supp. 3d 1002, 1014 (D. Minn. 2016) ("[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts . . . .") (citation and quotation omitted).

Finally, Defendant cites *Weir v. Pioneer Hi-Bred Int'l, Inc.* for the proposition that Bisbee's two opinions described above are improperly speculative. Fleet Farm Mem. at 18–19. In this case alleging wrongful termination and failure to accommodate under the ADA, the court excluded plaintiff's rehabilitation consultant who based his conclusions on his own review of "certain records" and the plaintiff's "subjective opinions," cited no sources, referenced no "standard methodologies," and improperly "address[ed] factual issues for trial." No. C99-3021, 2000 WL 35533101, at *4 (N.D. Iowa Oct. 27, 2000). Significantly, the court concluded that this opinion provided "*no evidence in the record upon which the court can base a conclusion that [the expert's] testimony will provide any*

17

*assistance* to the trier of fact in either understanding the evidence or determining a fact in issue." *Id.* (emphasis added). This is nothing like Bisbee's opinions.

Bisbee's testimony will provide a trier of fact the benefit of his extensive experience at the ATF, where he both enforced the law and worked with FFLs to reduce the crime at issue in this case: straw purchasing. Bisbee's opinions are both rooted in his specialized experience and supported by published sources. *E.g.*, Bisbee Rep. at 4-5 n. 20-22 (citing published sources); Bisbee Dep. at 39:6-42:2 (describing basis for experiential testimony about FFLs and firearm trafficking, including straw purchasing). For these reasons, Bisbee's opinions that Fleet Farm challenges as improperly speculative are not so. Bisbee's opinions will assist the trier of fact in both "understanding the evidence" and "determining a fact in issue." *Weir*, 2000 WL 35533101, at *4.

## III. Bisbee Appropriately Analyzes Relevant Facts and Data To Reach His Opinions.

Fleet Farm next argues that portions of Bisbee's expert reports are "little more than recitations of produced documents and deposition testimony," to which Bisbee "is not applying any specialized knowledge" from which to draw conclusions. Fleet Farm Mem. at 19–21.

Fleet Farm mischaracterizes Bisbee's report by fixating on specific sections that summarize facts and data—much of which is ATF guidance and Fleet Farm testimony and documents similar or identical to what Fleet Farm's own experts summarize and rely on in

their reports[9]—and ignoring that Bisbee then applies and analyzes this information in later sections of his reports. *See, e.g.*, Bisbee Rep. at 10 ("These sales had multiple warning signs that should have been apparent to Fleet Farm personnel."), 15 ("Thus, Fleet Farm should have been able to observe this conduct, and detect and prevent Ms. Elwood's straw purchases."), 19 ("Fleet Farm failed to adequately recognize and train Fleet Farm employees who sold firearms that the presence of multiple warning signs of a straw purchase was a sufficient basis to deny a desired firearms sale."), 20 ("In sum, Fleet Farm failed to ensure the sale of firearms to Ms. Elwood and Mr. Horton were lawful."); *see also* Bisbee Rebuttal Rep. at 25 ("This resulted in a permissive culture in relation to suspicious firearms transactions including straw purchases.").

Fleet Farm's argument also ignores the expert report requirements of the Federal Rules of Civil Procedure, which require an expert report to include "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). This is what Bisbee's report does. Additionally, the Federal Rules of Evidence require an expert opinion to be "based on sufficient facts or data" and have foundational reliability. Fed. R. Evid. 702(b). The facts and data described by Bisbee in his

---

[9] *See, e.g.*, Graham Rep. at 8–18 (summarizing ATF regulations and guidance), 26–37 (summarizing Fleet Farm policies, procedures, and training), 39–67 (summarizing each Fleet Farm sale to Horton and Elwood); Declaration of Eric J. Maloney, Ex. 5, Expert Report of William B. Napier (Napier Rep.) at 4–8 (summarizing ATF and NSSF materials), 21–30 (summarizing Fleet Farm's policies, procedures, and training); 39–43 (summarizing the circumstances and court documents related to Fleet Farm's sales to Horton and Elwood).

report are included pursuant to these rules and ably serve to demonstrate the foundational reliability of his opinions. *See In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, 546 F. Supp. 3d 666, 678 (S.D. Ohio 2021) ("This Court concluded that it was appropriate for a corporate-conduct expert, an expert who would opine on the applicable standard of care, to 'utilize[ ] his expertise and training in analytical chemistry, and his knowledge of how the state of the art methods developed over time, to contextualize the case specific facts against general developments in analytical methods'").

In general, factual narrations are appropriate where, as here, the facts are complex in nature and narration would assist the trier of fact. *See, e.g., In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 2:12-cv-07263, 2016 WL 807377, at *9 (E.D. Pa. Mar. 2, 2016) ("[The expert]'s explanation of the actions undertaken by the defendants in creating the Tylenol brand is not simply a recitation of facts. He translates the meaning of those actions and what purpose they serve in branding."); *In re Welding Fume Prod. Liab. Litig.*, No. 1:03–CV–17000, 2005 WL 1868046, at *17 (N.D. Ohio Aug. 8, 2005) ("It is through the application of his expertise that [the expert] may allow the trier of fact to better understand what the documents do (and don't) mean, and, thus, what the defendants did (or didn't) know").

The *Ocasio* case Fleet Farm cites actually supports Bisbee's admission as an expert. In that case, the plaintiff's expert sought to testify on FDA regulations and the defendant's noncompliance with them. *Ocasio v. C.R. Bard, Inc.*, No. 8:13-cv-1962, 2015 WL 2062611, at *4 (M.D. Fl. 2015). The court permitted the expert's testimony about the FDA's regulatory process, reasoning that "a lay jury cannot be expected to understand the

complex regulatory framework" at issue in the case. *Id.* (citations omitted). Further, though the court found that mere "summaries" of documents were improper, the court did not exclude the expert but rather *limited* the "commentary on any documents and exhibits in evidence to explaining the regulatory context in which they were created, defining any complex or specialized terminology, or drawing inferences that would not be apparent without the benefit of experience or specialized knowledge." *Id.* (internal quotation omitted).

Here, to the extent Bisbee cites deposition testimony or documents produced in this case, he does so to (1) "draw inferences" that would not be apparent to the jury without his special knowledge, (2) "explain[] the regulatory context in which they were created," or (3) "define[] any complex or specialized terminology." *Id.*; *see, e.g.*, Bisbee Rep. at 4 (using record citations to support the inference that Fleet Farm understood its "███████

███████████████████████████████████████████████████████████

███████"), 4-5 (defining the meaning of and the regulatory context behind ATF Form 3310.4 and using a Fleet Farm training from the record to explain why these forms alert FFLs to straw purchasing activity), 1, 19 (using his specialized knowledge to explain the importance of ATF Form 3310.4 and later contrasting Fleet Farm's failure to use Form 3310.4s to adequately prevent straw purchasing).

A lay person or juror cannot match Bisbee's level of expertise. The remaining cases cited by Fleet Farm for this proposition do not apply for this same reason. *See Clayton v. Heil Co.*, No. CV-19-04724, 2022 WL 17404792, at *5 (D. Ariz. Dec. 2, 2022) (prohibiting an industrial organizational psychology expert with no background in engineering from

testifying on specific design defects when all she offered was an observation "that a lay witness could make"); *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 967 (D. Minn. 2009) (excluding medical chronology because it was no "more or less persuasive than that of a layperson") (citation omitted); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (excluding history of a medication that "a juror is equally capable of constructing").

In any event, Fleet Farm's objection on this basis is premature and would be, if needed, appropriate for resolution at trial, not at the dispositive motion stage. *See, e.g.*, *In re Actos Prods. Liab. Litig.*, 2014 WL 120973, at *10 (W.D. La. Jan. 10, 2014) ("The objection that testimony is 'narrative' is an objection as to form, foundation, or responsiveness, and must be presented at trial"); *In re Yasmin & YAZ Prods. Liab. Litig.*, 2011 WL 6302287, at *8 (S.D. Ill. Dec. 16, 2011) (issues concerning narrative testimony should be "decided at trial in context specific situations"); *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2021 WL 765019, at *41 (N.D. Fla. Feb. 28, 2021) ("The Court will not issue a 'blanket ban' on discussions of internal documents and declines to parse the experts' reports and depositions for statements that may cross the line into improper factual narration.").

For these reasons, the Court should decline Fleet Farm's invitation to pursue the premature and burdensome task of parsing Bisbee's report for the fine line between narration and opinion.

## IV.    Bisbee Properly Opines on Ultimate Issues and Does Not Offer Impermissible Legal Testimony.

Bisbee's opinions are proper examinations of "ultimate issue[s]" in this case, as explicitly allowed by Federal Rule of Evidence 704: "An opinion is not objectionable just because it embraces an ultimate issue." Generally, "expert testimony on legal matters is not admissible" because "[m]atters of law are for the trial judge, and it is the judge's job to instruct the jury on them." *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) (citation omitted). However, "expert testimony that bears on facts that support a legal conclusion may be admissible," including offering an "opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied." *Scalia v. Reliance Tr. Co.*, No. 17-CV-4540, 2021 WL 795270, at *19 (D. Minn. Mar. 2, 2021) (citation and quotation omitted).

In an apparent conflation of Rule 704 and caselaw regarding expert testimony on legal matters, Fleet Farm asserts that Bisbee offers impermissible "ultimate conclusions" on legal issues. Fleet Farm Mem. at 21. Fleet Farm takes issue with only two of Bisbee's opinions:

- Opinion 5: "Fleet Farm stores did not fulfill their duty of ensuring the firearm sales to Mr. Horton and Ms. Elwood were lawful and were not straw purchases."

- Opinion 6: "Fleet Farm failed to exercise appropriate care as an FFL to ensure that the firearm sales to Mr. Horton and Ms. Elwood were lawful."

Fleet Farm Mem. at 21; Bisbee Rep. at 22. Without further explanation, Fleet Farm claims that these two opinions are "legal conclusions" and then cites a string of caselaw.

But Bisbee's opinions are squarely aimed at ultimate issues, not legal matters, and provide testimony that appropriately "bears on facts that support a legal conclusion." *See Scalia*, 2021 WL 795270, at \*19. In his expert report, Bisbee only mentions "duty" four times and "appropriate care" once. Three of these five mentions come in Bisbee's conclusion and summary of opinions. *See* Bisbee Rep. at 7, 19, 22.  Throughout his report, Bisbee mainly couches the facts he relies upon and his opinions in terms of Fleet Farm's "obligations," including Fleet Farm's "obligation of ensuring that firearm sales were lawful and were not illegal straw purchases." Bisbee Rep. at 16; *see also id.* at 3 ("ATF forms demonstrate the important obligations of FFLs to prevent straw purchases and recognize straw purchasing indicators . . . ."), 7 ("Fleet Farm maintains the appearance of a robust approach to fulfilling their obligations of preventing criminals from accessing firearms."), 17 (referring to Fleet Farm employees' "obligations of paying attention and ensuring a lawful sale"). Analyzing Fleet Farm's obligations, and whether Fleet Farm met those obligations, is permissible expert testimony. "Expert witnesses in all types of litigation render opinions as to what the applicable standard of care is and whether it has been complied with in a particular case." *Hans v. Tharaldson*, No. 3:05-CV-115, 2011 WL 6937598, at \*5 (D.N.D. Dec. 23, 2011) (collecting examples, including insurance industry experts and highway safety specialists). Fleet Farm's obligations, and its compliance therewith, are ultimate issues that Bisbee can opine on without impeding the Court's role of instructing the jury as to the law.

What Bisbee does not do is attempt to explain to the jury what the law is, or whether Fleet Farm has violated the law. *See Hans*, 2011 WL 6937598, at *5 (holding that expert "may not opine as to the ultimate legal issue" of whether the defendant violated a statute). Indeed, in none of his opinions does Bisbee purport to assert "legal implications" of a failure of a duty or ultimate liability, unlike experts in the cases Defendant cites. *Am. Zurich Ins. Co. v. Guilbeaux*, No. 1:16CV354, 2018 WL 1787886, at *2 (S.D. Miss. Apr. 13, 2018) (excluding expert whose testimony sought to reach "legal implications"); *Cattanach v. Burlington N. Santa Fe, LLC*, No. 13-1664, 2015 WL 5521751, at *9 (excluding testimony about "compliance or lack thereof with Minnesota state statutes"); *Jo Ann Howard & Assocs., PC. v. Cassity*, No. 4:09-cv-01252, 2018 WL 6110929, at *2 (E.D. Mo. Nov. 21, 2018) (limiting testimony of expert who proffered four specific opinions on duty and breach in a trusteeship).

In opining that FFLs have an obligation to prevent straw purchases, Bisbee does not even go as far Fleet Farm's own experts, who give explicit opinions on legal standards, statutes, and rules, and Fleet Farm's compliance with them. *See, e.g.*, Graham Rep. at 5–6



("███████████████████████████████████████████ ███████████████████████████████████████████ ███████████"); *see also* Napier Rep. at 46 (opining that Fleet Farm "████████████ ███████████████████████████████████████ " including through "████████ ████████████████████").[10]

---

[10] During their depositions, both Graham and Napier admitted that these opinions were not accurate. State Mem. in Opp. to Summ. J. at 21–22.

Bisbee's opinions about Fleet Farm's obligations and Fleet Farm's failure to satisfy them are permissible expert testimony and should not be excluded.

## CONCLUSION

For the reasons demonstrated above, this Court should deny Fleet Farm's Motion to Exclude Certain Testimony of Joseph Bisbee.

Dated: April 25, 2025

KEITH ELLISON
Attorney General
State of Minnesota

JAMES W. CANADAY (#030234X)
Deputy Attorney General

**/s/ Eric J. Maloney**

ERIC J. MALONEY (#0396326)
JASON PLEGGENKUHLE (#0391772)
KATHERINE MOERKE (#0312277)
Assistant Attorneys General

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2130
james.canaday@ag.state.mn.us
Telephone: (651) 757-1421
eric.maloney@ag.state.mn.us
Telephone: (651) 757-1021
jason.pleggenkuhle@ag.state.mn.us
Telephone: (651) 757-1147
katherine.moerke@ag.state.mn.us
Telephone: (651) 757-1288

**UNIVERSITY OF MINNESOTA GUN
VIOLENCE PREVENTION CLINIC**

MEGAN WALSH (#0394837)
Special Assistant Attorney General

CALLAN SHOWERS
ARIELLE HUGEL
WILLIAM ROBERTS
Certified Student Attorneys

University of Minnesota Law School
190 Mondale Hall
229 19th Avenue South
Minneapolis, MN 55455
Phone: 612-625-5515
wals0270@umn.edu

*Attorneys for State of Minnesota*

27