## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota by its Attorney General, Keith Ellison,<br><br>   Plaintiff,<br><br>  v.<br><br>Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC,<br><br>   Defendants. | Case No.: 0:22-cv-02694-JRT-JFD |

## FLEET FARM'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT ON FLEET FARM AFFIRMATIVE DEFENSES

# T<small>ABLE OF</small> C<small>ONTENTS</small>

I<small>NTRODUCTION</small>........................................................................................................... 1

B<small>ACKGROUND</small> ......................................................................................................... 2

    I.    The State asserts broad and ambiguous claims against Fleet Farm, and
        Fleet Farm asserts a number of affirmative defenses ......................................... 2

    II.   Discovery confirms the State's broad claims have no evidentiary support,
        and that the State and third parties contributed to the harms alleged in the
        complaint........................................................................................................ 4

    III.  In light of the substantial narrowing of the State's claims, Fleet Farm
        agrees to dismiss certain affirmative defenses, but the State refuses to
        stipulate that it is not seeking to recover "monetary relief" ............................ 8

A<small>RGUMENT</small> ............................................................................................................ 10

    I.    Each of the challenged affirmative defenses applies to the State's claims
        and requested relief, and has record support..................................................... 10

        A.   Discovery has established Fleet Farm's right to assert comparative
            fault and related affirmative defenses........................................................ 11

        B.   Because the State has refused to disavow its claim for "damages"
            and "monetary relief," Fleet Farm's damages-related affirmative
            defenses remains proper ............................................................................ 15

    II.   If this case is narrowed to concern only equitable relief, some, but not all,
        of the challenged affirmative defenses remain applicable ................................. 17

        A.   If this case concerns only equitable relief, Fleet Farm's damages-
            based defenses are no longer applicable..................................................... 17

        B.   If this case concerns only equitable relief, Fleet Farm's comparative-
            fault defenses remain applicable ............................................................... 18

C<small>ONCLUSION</small> ......................................................................................................... 20

## T<small>ABLE OF</small> A<small>UTHORITIES</small>

**Page(s)**

**Cases**

*Abers v. Elliott*,
  2006 WL 2053425 (Minn. Ct. App. July 25, 2006)......................................................... 11

*Anderson v. Stream*,
  295 N.W.2d 595 (Minn. 1980)........................................................................................ 11

*Caronia v. Philip Morris USA, Inc.*,
  2011 WL 338425 (E.D.N.Y. Jan. 13, 2011) .................................................................. 18

*Cherne Indus., Inc. v. Grounds & Assocs., Inc.*,
  278 N.W.2d 81 (Minn. 1979)......................................................................................... 19

*Clark v. Est. of Smith, by Vickman*,
  1996 WL 56522 (Minn. Ct. App. Feb. 13, 1996) ......................................................... 12

*N.C. ex rel. Cooper v. Tenn. Valley Auth.*,
  549 F. Supp. 2d 725 (W.D.N.C. 2008) .......................................................................... 20

*State ex rel. Hatch v. Cross Country Bank, Inc.*,
  703 N.W.2d 562 (Minn. Ct. App. 2005)................................................................... 17, 19

*Lines v. Ryan*,
  272 N.W.2d 896 (Minn. 1978)................................................................................... 11, 12

*In re Minnwest Bank Litig. Concerning Real Prop.*,
  873 N.W.2d 135 (Minn. Ct. App. 2015)........................................................................ 18

*Nassar v. Chamoun*,
  2014 WL 4672400 (Minn. Ct. App. Sept. 22, 2014) ..................................................... 11

*Nguyen v. Bonta*,
  720 F. Supp. 3d 921 (S.D. Cal. 2024)............................................................................ 6

*Primerica Life Ins. Co. v. Woodall*,
  38 F.4th 724 (8th Cir. 2022) .......................................................................................... 11

*Soderberg v. Anderson*,
  922 N.W.2d 200 (Minn. 2019)....................................................................................... 14

*State by Humphrey v. Alpine Air Prods., Inc.*,
    490 N.W.2d 888 (Minn. Ct. App. 1992) ....................................................... 19

*TCF Nat'l Bank v. Market Intelligence, Inc.*,
    2014 WL 5205442 (D. Minn. Oct. 14, 2014) ............................................ 10

*Tengvall v. Stuart Corp.*,
    1997 WL 360906 (Minn. Ct. App. July 1, 1997)....................................... 11

**Statutes**

Cal. Penal Code § 27535 ................................................................................... 6, 12

Conn. Gen. Stat. § 29-33 ................................................................................... 6, 12

Md. Code Ann., Pub. Safety § 5-128 ................................................................ 6, 12

Minn. Stat. § 8.31 ............................................................................................... 3, 19

Minn. Stat. § 604.01 ............................................................................................... 11

N.J. Stat. Ann. § 2C:58-2.................................................................................. 6, 12

Va. Code Ann. § 18.2-308.2:2............................................................................ 6, 12

**Other Authorities**

27 C.F.R. § 478.126a ............................................................................................... 6

4 Minn. Prac., Jury Instr. Guides--Civil CIVSVF 28.91 (6th ed.) ..................... 12

## INTRODUCTION

The State of Minnesota seeks summary judgment on a number of Fleet Farm's affirmative defenses.  At its core, the State's motion is premised on a reality that the State can no longer ignore: its theory of liability against Fleet Farm was **wrong**.  The State has **zero** evidence that Fleet Farm caused any increase in gun trafficking or gun violence in Minnesota, or is responsible for any general societal harms flowing from that criminal conduct.  And the State now concedes it is not seeking to recover from Fleet Farm "proprietary damages" or "incurred costs from providing public services," undoubtedly because there is **zero** evidence in the record of any such damages.  ECF Doc. 193 ("State's Br.") at 2, 11.  Based on this apparent narrowing of the State's claims and requested relief, it seeks dismissal of certain of Fleet Farm's affirmative defenses.

The State's motion should be denied.  Each of the challenged affirmative defenses are properly raised because the State's broad theory of wrongdoing and wide-ranging requested monetary relief remain part of this case.  *E.g.*, ECF Doc. 79 ("Compl.") ¶¶ 62-69, 107-13.  Today, the complaint still seeks to hold Fleet Farm—and Fleet Farm alone—liable for alleged general societal harms following from gun trafficking and gun violence in Minnesota.  Today, the complaint still asserts a public-nuisance claim that contends Fleet Farm has contributed to an "illegal secondary market for firearms that contributed to unlawful possession of firearms and firearm violence" and "unlawful proliferation of firearms" in Minnesota.  *Id.* ¶¶ 107-09.  And today, the complaint still asserts that the State is entitled to recover "damages" and "monetary relief," separate and apart from "civil penalties" and "disgorge[ment]."  *Id.*, Requested Relief ¶¶ 4-7.  In fact, when Fleet Farm

requested that the State stipulate it is no longer seeking "damages" or "monetary relief," *the State refused*.

Unsurprisingly, then, Fleet Farm has maintained a number of affirmative defenses that may be grouped in two categories: (1) affirmative defenses challenging the State's ability to recover for these alleged harms based on comparative fault and related principles; and (2) affirmative defenses challenging the State's entitlement to obtain the "damages" and "monetary relief" pleaded. Unless and until these aspects of the State's case are formally dismissed with prejudice—either by Court order or stipulation of the parties—both categories of affirmative defenses are properly raised, and are supported by the record.

## BACKGROUND

### I. The State asserts broad and ambiguous claims against Fleet Farm, and Fleet Farm asserts a number of affirmative defenses.

The State's complaint asserts that Fleet Farm is responsible for a widespread surge in gun trafficking stemming from untold numbers of straw purchasers. It cites to sales involving convicted straw purchasers Sarah Elwood and Jerome Horton as purported illustrations of a larger problem, asserting Fleet Farm "repeatedly sold handguns to straw purchasers," and that these handguns "pose an ongoing threat to the health and safety of Minnesotans." Compl. ¶¶ 1-2. Among other things, the State asserts Fleet Farm "w[as] a substantial factor in creating … or supplying an illegal secondary market for firearms that contributed to unlawful possession of firearms and firearm violence" in Minnesota, and contends "[w]ithout [Fleet Farm's] conduct, firearm possession, misuse, injury, and death would not have been so widespread." *Id.* ¶¶ 107-09; *see also id.* ¶¶ 62-69. According to

the State, Fleet Farm's conduct amounts to "pervasive" and "widespread interference with public rights and privileges, and … endanger[ed] … public health." *Id.* ¶ 113. The State also asserts Fleet Farm was responsible for harms following certain purchases by Elwood and Horton—principally, the harms resulting from the October 2021 Truck Yard shooting in Saint Paul. *See id.* ¶¶ 4-5, 34-61.

Based on these allegations, the State has demanded wide-ranging relief from Fleet Farm, including:

- "Awarding injunctive relief against Defendants requiring them to abate the public nuisance they have created ….";

- "Awarding judgment against Defendants … for damages for injury sustained as a result of Defendants' repeated breaches of their duties in Minnesota";

- "Ordering Defendants … to disgorge all profits from Defendants' unlawful sales of firearms in Minnesota";

- "Awarding judgment against Defendants … for monetary relief, including but not limited to abatement, to the State … as necessary to remedy the harm and injury to the State resulting from Defendants' acts and omissions …."; and

- "Awarding judgment against Defendants … for civil penalties pursuant to Minnesota Statutes section 8.31, subdivision 3, for each separate violation of Minnesota Statutes sections 609.74 and 624.7132."

*Id.*, Requested Relief ¶¶ 2, 4-7.

In response to these broad claims and demanded monetary and equitable relief, Fleet Farm asserted affirmative defenses relating to several topics,[1] including:

---

[1] Fleet Farm explained it was asserting these defenses "based on a good-faith assessment of the claims known at this time, and without having yet conducted any discovery," and "d[id] not concede that it has the burden of proof on any defense." ECF Doc. 99 at 25.

- Federal preemption, *see* ECF Doc. 99, Affirmative Defense ("AD") No. 1;

- Fleet Farm's activities having "at all times … conformed with its obligations under all applicable … legal and regulatory duties," *id.*, AD No. 2;

- Lack of proximate causation, *id.*, AD No. 3;

- Comparative fault and the roles the State and third parties played in contributing to the harms alleged in the complaint, *id.*, AD Nos. 4-6, 9-11, 13;

- Statute of limitations and repose, and laches, *id.*, AD Nos. 7-8;

- The State's requested relief may have the effect of regulating or limiting the conduct of Fleet Farm or its law-abiding customers in violation of the Second Amendment, *id.*, AD No. 15; and

- Flaws in the State's pleaded monetary relief, *id.*, AD Nos. 12, 14, 16, 17.

## II.    Discovery confirms the State's broad claims have no evidentiary support, and that the State and third parties contributed to the harms alleged in the complaint.

The State was given ample opportunity to develop its theory of liability against Fleet Farm, yet it uncovered *zero* evidence of the systemic wrongdoing alleged in the complaint. Indeed, after conducting exhaustive discovery, the State has confirmed that its case against Fleet Farm is now limited to certain sales to Elwood and Horton, the same sales that were originally alleged in the complaint. ECF Doc. 205-1 at 5-6; ECF Doc. 206 at 10-21; *see also* ECF Doc. 187 at 10. Put another way, the State challenges as suspected straw purchases just 28 transactions across a seven-year discovery period (October 2016 to October 2023), all of which were known to the State when it filed its complaint. *See* Compl. ¶¶ 34-61; ECF Docs. 205-1 at 5-6, 206 at 10-21; *see also* ECF Doc. 187 at 10. And

after failing to provide any documentation—through expert testimony or otherwise—regarding its claims for "damages," "monetary relief," or other societal harms, the State conceded it "will not be seeking damages from Fleet Farm in this action due to the costs to the State associated with investigating, monitoring, treating, policing, and remediating the misuse of firearms." ECF Doc. 205-3 at 23.

It is unclear whether the State still asserts Fleet Farm is responsible for the broader societal harms alleged in the complaint. There is no evidence supporting such an assertion and, at least informally, the State appears to have disavowed this theory of wrongdoing. *E.g.*, ECF Doc. 187 at 10 (admitting "the State's claims [now] pertain ***only*** to guns Fleet Farm sold to two known straw purchasers" (emphasis added)); *id.* at 12 (admitting the State "will not be seeking to prove the *general* prevalence of straw purchasing and its connection to future crime at trial in this case" (emphasis in original)); *id.* at 19 (admitting the State is no longer "focused on how 'significant' the impact of Fleet Farm's sales were [sic] on gun trafficking and violent crime" in Minnesota). Nevertheless, these allegations of broader societal harms remain in the complaint. *E.g.*, Compl. ¶¶ 1-2, 62-69, 107-13.

Discovery also confirmed that the State and third parties bear some responsibility for the harms alleged in the complaint. As to the State, both Elwood and Horton received permits to acquire firearms ***before*** they were able to purchase them from Fleet Farm and other federal firearm licensees ("FFLs"). *See* ECF Docs. 201-2, 202. The State, through its Bureau of Criminal Apprehension, also received notice of ***every*** instance of Elwood and Horton purchasing multiple handguns at one time or within five business days—including ***68*** of the firearms they purchased from non-Fleet Farm FFLs, which Fleet Farm did not

and could not have knowledge of—and seemingly took no action relating to those individuals.[2]  *See* ECF Doc. 201-2 at 26, 44, 54; ECF Doc. 202 at 19, 41, 55, 66, 96; ECF Doc. 205-6 at 94-95; Decl. of Andrew P. Leiendecker ("Leiendecker Decl."), Ex. A at 4-7; 27 C.F.R. § 478.126a.  And the State of Minnesota—unlike other States—has not enacted any laws limiting the number of firearms an individual may purchase during a single transaction or during any particular period of time.[3]  *See* Leiendecker Decl., Ex. B at 19 & n.56; *id.*, Ex. C at 17 & n.20; *id.*, Ex. D at 165:20-170:12; ECF Doc. 190-1 at 13. According to the State's own expert, had such laws been in effect, Elwood and Horton would not have been able to acquire many of the firearms they obtained from Fleet Farm stores (and other FFLs).  *See* Leiendecker Decl., Ex. D at 170:13-22.

As to third parties, the record establishes that numerous persons and entities bear responsibility for the harms alleged in the complaint.  Regarding any alleged general societal harms, expert testimony establishes the non-Fleet Farm FFLs that sold firearms to

---

[2] Notice of multiple handgun purchases was also provided to the Bureau of Alcohol, Tobacco, Firearms and Explosives.  *See* ECF Doc. 201-2 at 26, 44, 54; ECF Doc. 202 at 19, 41, 55, 66, 96; 27 C.F.R. § 478.126a.

[3] These states are California, Connecticut, Maryland, New Jersey, and Virginia.  *See* Cal. Penal Code § 27535(a) ("A person shall not make an application to purchase more than one firearm within any 30-day period."); Conn. Gen. Stat. § 29-33(f)(1) ("The Commissioner of Emergency Services and Public Protection shall not issue more than three authorization numbers for sale at retail of a pistol or revolver to any transferee within a thirty-day period …."); Md. Code Ann., Pub. Safety § 5-128(b) ("A person may not purchase more than one regulated firearm in a 30-day period."); N.J. Stat. Ann. § 2C:58-2(a)(7) ("A dealer shall not knowingly deliver more than one handgun to any person within any 30-day period."); Va. Code Ann. § 18.2-308.2:2(R) ("[I]t shall be unlawful for any person who is not a licensed firearms dealer to purchase more than one handgun within any 30-day period.").  The California statute was held unconstitutional in *Nguyen v. Bonta*, 720 F. Supp. 3d 921 (S.D. Cal. 2024).  That decision is on appeal.  *See Nguyen v. Bonta*, Case No. 24-2036 (9th Cir. argued Aug. 14, 2024).

Elwood and Horton had less effective policies and procedures than Fleet Farm for monitoring for and preventing straw purchases. *See* Leiendecker Decl., Ex. C at 9-14. And at least one of these FFLs permitted sales to Horton that would not have occurred under Fleet Farm's policies and procedures. *See id.*, Ex. B at 66-67; *id.*, Ex. C at 44-46. Moreover, Fleet Farm's policy is to never sell a firearm unless and until the FBI's National Instant Criminal Background Check System ("NICS") has directed Fleet Farm to "Proceed" with a sale. *E.g.*, ECF Doc. 203-21 at 14; ECF Doc. 205-1 at 56; Leiendecker Decl., Ex. B at 29-30; *id.*, Ex. C at 24-25. NICS directed Fleet Farm to proceed with ***every*** sale to Elwood and Horton. *See* ECF Docs. 201-2, 202.

The only facts in the record regarding specific harms resulting from a firearm straw purchased by Elwood or Horton relate to the October 2021 Truck Yard gunfight. If the State's theory of liability is accepted, the record establishes at least six persons contributed to that incident:

- **The State**, in issuing Horton a permit to purchase, *see* ECF Doc. 202;

- **The FBI**, in conducting a background check on Horton through its NICS program and telling Fleet Farm to "Proceed" with the sale that included one of the firearms used during the gunfight, *see id.* at 61;

- **Jerome Horton**, in straw purchasing in a manner "intended and likely to deceive" Fleet Farm, *see* ECF Doc. 205-6 at 48-49 ¶ 2,[4] and criminally transferring the firearm to Gabriel Young-Duncan, *see id.* at 77, 84; Leiendecker Decl., Ex. E at 3;

---

[4] Sarah Elwood also admitted to operating in a manner "intended and likely to deceive" Fleet Farm and other Minnesota FFLs. *See* ECF Doc. 205-6 at 35-36.

- **Gabriel Young-Duncan**, in transferring (or causing to be transferred) the firearm to an individual named "Mo," *see* ECF Doc. 205-6 at 80; Leiendecker Decl., Ex. E at 3; *id.*, Ex. F;

- **Mo**, in selling the firearm to Devondre Phillips, *see* ECF Doc. 205-6 at 80; and

- **Devondre Phillips**, in using the firearm during the Truck Yard gunfight, *see id.* at 81.

III.    **In light of the substantial narrowing of the State's claims, Fleet Farm agrees to dismiss certain affirmative defenses, but the State refuses to stipulate that it is not seeking to recover "monetary relief."**

On March 14, 2025, the State requested a meet-and-confer with Fleet Farm regarding "Fleet Farm's intentions regarding Professor Kleck given the upcoming deadline for Daubert motions"[5] and "Fleet Farm's defenses pled as affirmative defenses." Leiendecker Decl., Ex. G at 3. Fleet Farm asked the State on two occasions to inform it of "which specific affirmative defenses" the State wished to discuss. *Id.* at 1-2. The State never responded. *See id.* The parties nevertheless met-and-conferred, and the State indicated it intended to move for summary judgment on all but the first three affirmative defenses pleaded by Fleet Farm.

Following this meet-and-confer, Fleet Farm communicated to the State that it "may be willing to stipulate to the withdrawal of some of [its] affirmative defenses." Leiendecker Decl., Ex. H at 3. Specifically, Fleet Farm indicated, without qualification, that it would "stipulate to the dismissal of its Fifth, Seventh, Eighth, and Tenth Affirmatives Defenses." *Id.* Fleet Farm also indicated it would "stipulate to the dismissal of its Fifteenth Affirmative

---

[5] Dr. Gary Kleck is an Emeritus Professor of Criminology & Criminal Justice at Florida State University. *See* ECF Doc. 190-1 at 2. His opinions are detailed in Fleet Farm's opposition to the State's motion to exclude his testimony.

Defense, subject to its right to raise this defense if an intervening change in law occurs during the pendency of this matter, including any appeals." *Id.* And Fleet Farm also expressed it would be willing to "stipulate to the dismissal of its Twelfth, Fourteenth, Sixteen[th], and Seventeenth Affirmative Defenses" so long as "in this stipulation, the State formally confirm … that it will not be seeking to recover any monetary damages in this case, nor present evidence of any monetary damages in support of its claims or sought-after remedies." *Id.*

As to this latter category of affirmative defenses, the State responded that it "is not seeking proprietary damages, but … is seeking civil penalties and equitable monetary relief via disgorgement." *Id.* Accordingly, the State indicated it would "not agree to … language indicating that the State will not seek to recover 'monetary relief.'" *Id.* at 2. In response, Fleet Farm explained that "if [it] is going to agree to the dismissal of defenses relating to the State's sought-after monetary relief and damages—***as distinct from*** the disgorgement and civil-penalty remedies it is pursuing—the joint stipulation … [must] be unambiguous that the relief contemplated by paragraphs 4 and 6 of the Requested Relief are no longer in play." *Id.* at 1 (emphasis added). Accordingly, Fleet Farm proposed a joint stipulation that would dismiss its damages-related affirmative defenses, and also "mak[e] clear that the State is disavowing any effort to recover the relief contemplated in paragraphs 4 and 6" (e.g., "damages" and "monetary relief," *see* Compl., Requested Relief ¶¶ 4, 6), while "reserving the right to continue to seek to recover all other pleaded relief," including "the 'disgorgement' and 'civil penalties' remedies … addressed in paragraphs 5 and 7" of the Requested Relief. Leiendecker Decl., Ex. H at 1. The State responded it "is not willing to

- 9 -

stipulate that it is not seeking any relief in accordance with paragraph 6." *Id.* Consequently, the State's position appears to be keeping open the possibility of attempting to seek some "monetary relief" from Fleet Farm separate and apart from "disgorgement" and "civil penalties."

On April 3, the parties filed a joint stipulation to dismiss Fleet Farm's fifth, seventh, eighth, tenth, and fifteenth affirmative defenses, consistent with Fleet Farm's positions described above. *See* ECF Doc. 176.

<u>A</u><u>RGUMENT</u>

To establish entitlement to summary judgment on certain affirmative defenses, the State must demonstrate "there are no genuine issues of material fact" related to the affirmative defense and that "it is entitled to judgment as a matter of law." *TCF Nat'l Bank v. Market Intelligence, Inc.*, 2014 WL 5205442, at *8 (D. Minn. Oct. 14, 2014).  In assessing the State's motion, this Court "must view the facts in the light most favorable to [Fleet Farm] and give [Fleet Farm] the benefit of all reasonable inferences to be drawn from those facts." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**I.    Each of the challenged affirmative defenses applies to the State's claims and requested relief, and has record support.**

The affirmative defenses challenged by the State can be grouped into two categories: (1) defenses regarding the State's ability to recover based on comparative fault and related principles (affirmative defenses four, six, nine, eleven, and thirteen); and (2) defenses regarding the State's claimed entitlement to "damages" and "monetary relief"

(affirmative defenses twelve, fourteen, sixteen, and seventeen). Both categories of defenses apply to the State's claims, and have record support.

### A. Discovery has established Fleet Farm's right to assert comparative fault and related affirmative defenses.

Fleet Farm has asserted five affirmative defenses regarding comparative fault and related principles.[6] Minnesota's comparative-fault scheme defines "fault" as "acts or omissions that are ***in any measure*** negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability." Minn. Stat. § 604.01, subd. 1a (emphasis added). This means that in a negligence case, the factfinder "must have the opportunity to consider the negligence of all parties to the transaction, ***whether or not they be parties to the lawsuit and whether or not they can be liable to the plaintiff or to the other tort-feasors***." *Lines v. Ryan*, 272 N.W.2d 896, 902-03 (Minn. 1978) (cleaned up) (emphasis added); *accord Anderson v. Stream*, 295 N.W.2d 595, 600 (Minn. 1980); *Nassar v. Chamoun*, 2014 WL 4672400, at *4 (Minn. Ct. App. Sept. 22, 2014); *Tengvall*

---

[6] Given how the record has developed and in light of the substantial narrowing of the State's claims, Fleet Farm agrees that its ninth affirmative defense, invoking the doctrines of unclean hands and unjust enrichment, may be dismissed. The unclean-hands doctrine requires the plaintiff's conduct "be unconscionable by reason of a bad motive or because the result brought about by the conduct would be unconscionable," *Abers v. Elliott*, 2006 WL 2053425, at *3 (Minn. Ct. App. July 25, 2006), and "the offending acts typically must be *willful*," *Primerica Life Ins. Co. v. Woodall*, 38 F.4th 724, 726 (8th Cir. 2022). The State's failure to take any meaningful action to guard against the general societal harms pleaded in the complaint, such as by passing laws limiting the number of handguns residents may purchase in a particular time period, is clear evidence of the State's culpability for the harms pleaded in its complaint. But just as there is no evidence that Fleet Farm "willfully" or "knowingly" allowed a straw purchase to occur, ECF Docs. 200 at 7, 205-4 at 133, Fleet Farm acknowledges the record does not reflect "willful" wrongdoing by the State.

*v. Stuart Corp.*, 1997 WL 360906, at *3 (Minn. Ct. App. July 1, 1997); 4 Minn. Prac., Jury Instr. Guides--Civil CIVSVF 28.91 (6th ed.).  The negligence of "a party that is immune from suit" may also be considered.  *See Lines*, 272 N.W.2d at 903; *accord Clark v. Est. of Smith, by Vickman*, 1996 WL 56522, at *2 (Minn. Ct. App. Feb. 13, 1996).

Accordingly, as part of its defense, Fleet Farm has the right to have the factfinder consider the wrongdoing of, at minimum: (1) the State, (2) the FBI, (3) Jerome Horton and Sarah Elwood, (4) other Minnesota FFLs that sold firearms to Horton and Elwood, (5) the other criminal actors involved in selling firearms on the black market, and (6) Devondre Phillips.  The record in this case supports Fleet Farm's arguments that each of these persons bears some responsibility for the harms alleged by the State:

- **The State**: The State was negligent in licensing Elwood and Horton to purchase firearms, taking no action after receiving notice of every multiple handgun purchase by Elwood and Horton (despite being, alongside the FBI and ATF, the only person with visibility into Elwood's and Horton's purchasing patterns from *all* FFLs, including non-Fleet Farm FFLs), and in failing to enact laws that would have prevented the vast majority of Elwood's and Horton's purchases from both Fleet Farm and other FFLs.  *See* ECF Docs. 201-2, 202, 205-6 at 94-95; *see also* Leiendecker Decl., Ex. A at 4-7; *id.*, Ex. B at 19 & n.56; *id.*, Ex. C at 17 & n.20; *id.*, Ex. D at 165:20-170:22; Cal. Penal Code § 27535(a); Conn. Gen. Stat. § 29-33(f)(1); Md. Code Ann., Pub. Safety § 5-128(b); N.J. Stat. Ann. § 2C:58-2(a)(7); Va. Code Ann. § 18.2-308.2:2(R).

- **The FBI**: The FBI was negligent in conducting NICS background checks of both Elwood and Horton, and instructing Fleet Farm to "Proceed" with all of the sales to

these two individuals.  *See* ECF Docs. 201-2, 202, 203-21 at 14, 205-1 at 56; Leiendecker

Decl., Ex. B at 29-30; *id.*, Ex. C at 24-25.

- **Elwood and Horton**: Elwood and Horton engaged in wrongdoing by operating in ways intended and likely to deceive Fleet Farm and other FFLs, and in transferring certain firearms purchased from Fleet Farm and others FFLs to other criminal actors.  *See* ECF Doc. 205-6 at 35-36, 48-49, 77, 84; Leiendecker Decl., Ex. E at 3.

- **Other Minnesota FFLs**: To the extent the State still asserts claims for general societal harm flowing from straw purchasing, other Minnesota FFLs' were negligent in failing to have robust policies and procedures on monitoring for and preventing straw purchasing, and in selling to Horton despite clear indicators that he was straw purchasing.  *See* Leiendecker Decl., Ex. B at 66-67; *id.*, Ex. C at 9-14, 44-46.

- **Other Criminal Actors**: The record demonstrates multiple intervening criminal acts occurred between Horton's straw purchasing and any ultimate harms involving a straw-purchased handgun, including the unlawful criminal transfers to Gabriel Young-Duncan, "Mo," and Devondre Phillips.  *See* ECF Doc. 205-6 at 80; Leiendecker Decl., Ex. E at 3; *id.*, Ex. F.

- **Devondre Phillips**: Devondre Phillips committed criminal wrongdoing that *directly* caused the specific harms alleged by the State by using a handgun during the Truck Yard gunfight.  *See* ECF Doc. 205-6 at 81.

Even accepting the State's theory against Fleet Farm, each of these actions—including actions by the State[7]—contributed to the general and specific harms alleged in this case.  Fleet Farm is thus entitled to present comparative-fault defenses at trial, and there is evidence in the record supporting such defenses.

In its motion, the State asserts in conclusory terms that "there is no evidence of any negligent or reckless action by the State relating to Fleet Farm's sales to straw buyers." State's Br. 9.  As explained above, that is not true: evidence in the record shows the State was "negligent or reckless" in licensing Elwood and Horton to purchase firearms, taking no action after receiving notice of Elwood's and Horton's multiple handgun purchases, and in failing to enact laws that would have prevented the vast majority of Elwood's and Horton's purchases from Fleet Farm and other FFLs.  *Supra* pp. 5-6, 12.  Moreover, the State's motion ignores the ample record evidence supporting comparative-fault arguments as to the various non-parties, including FFLs the State selectively omitted from this case.[8] *Supra* pp. 6-8, 12-13.

Rather than addressing the merits of Fleet Farm's affirmative defenses, the State attempts a procedural objection, arguing Minnesota's comparative-fault principles apply only to "limit damages."   State's Br. 9.  The State cites ***zero*** caselaw to support this

---

[7] The State's own negligence also supports Fleet Farm's affirmative defense of assumption of risk.  *E.g.*, *Soderberg v. Anderson*, 922 N.W.2d 200, 203 (Minn. 2019) (explaining assumption of risk "is an aspect of contributory negligence, and is part of the calculation of comparative fault").

[8] The evidence of these non-parties' fault also supports Fleet Farm's thirteenth affirmative defense.  But Fleet Farm acknowledges that, given how the record in this case has developed, this defense is duplicative of its other comparative-fault defenses.

argument, and the argument ignores that—as this case is currently pleaded—the State has asserted claims for "monetary relief" and "damages" that it refused to formally disavow earlier this month. *Supra* pp. 8-10. And as discussed below, even if this case were formally narrowed to concern only equitable relief, these affirmative defenses—and the facts underlying them—remain relevant and well-supported. *Infra* pp. 17-20 & n.11. Fleet Farm's comparative-fault related defenses are properly raised, and summary judgment should be denied as to these defenses.

### B. Because the State has refused to disavow its claim for "damages" and "monetary relief," Fleet Farm's damages-related affirmative defenses remains proper.

Fleet Farm's twelfth, fourteenth, sixteenth, and seventeenth affirmative defenses remain viable in light of the State's demand for "damages" and "monetary relief."[9]

Prior to the dispositive-motion deadline, Fleet Farm offered to stipulate to the dismissal of its damages-based affirmative defenses, ***provided*** the State stipulate that it will not seek to recover any of the "damages" or "monetary relief" pleaded in paragraphs 4 and 6 of its Requested Relief, separate and apart from "civil penalties" and "disgorgement" pleaded in paragraphs 5 and 7 of its Requested Relief. Leiendecker Decl., Ex. H at 1-3. The State rejected Fleet Farm's offer. *See id.* at 1.

It is difficult to square the State's recent rejection of Fleet Farm's proposal with its newfound willingness to acknowledge that it is no longer seeking to recover any

---

[9] If this Court orders that—consistent with the State's concession in its brief—the State may not "recover incurred costs from providing public services," State's Br. 11, Fleet Farm's twelfth affirmative defense would no longer be applicable.

"damages." State's Br. 2, 7, 9, 11. But regardless, as of today, claims for "damages" and "monetary relief" are pleaded, making it appropriate for Fleet Farm to maintain damages-related affirmative defenses. And these defenses are supported by the record.

Fleet Farm's fourteenth affirmative defense is that the State's claims for damages and monetary relief are barred because its "alleged damages are speculative, uncertain, or hypothetical." ECF Doc. 99 at 27. This has been borne out by the record, as there is not a single fact or piece of expert testimony evidencing any damages purportedly incurred by the State. By definition, this renders any such damages "speculative," "uncertain," and "hypothetical." Indeed, given the State's damages claims have no evidentiary support and the State now appears to be disavowing any claim to such relief, if anything summary judgment should be granted *for Fleet Farm* on this affirmative defense.

Similarly, Fleet Farm's sixteenth affirmative defense is that the State has "failed to mitigate" any damages it claims to have incurred. ECF Doc. 99 at 28. Like the fourteenth affirmative defense, this defense remains properly pleaded because there is no record evidence of damages incurred by the State. And were the State to attempt to recover any claimed "damages" and "monetary relief," Fleet Farm would be entitled to argue such recovery should be barred in part because the State has taken, and failed to take, certain actions to mitigate such damages—namely, licensing Elwood and Horton, taking no action after receiving documentation of Elwood's and Horton's multiple gun purchases from non-

- 16 -

Fleet Farm FFLs, and failing to limit the number of firearms an individual may purchase during a transaction or over any particular time period. *Supra* pp. 5-6.[10]

## II.    If this case is narrowed to concern only equitable relief, some, but not all, of the challenged affirmative defenses remain applicable.

If—consistent with the State's concession that it "is not seeking damages," State's Br. 7, 9—the State's demand for "damages" and "monetary relief" is dismissed, some, but not all, of Fleet Farm's affirmative defenses may also be dismissed.

### A.    If this case concerns only equitable relief, Fleet Farm's damages-based defenses are no longer applicable.

As detailed above, despite refusing to enter a formal stipulation regarding its damages claims, the State now appears ready to acknowledge it is not pursuing, and cannot pursue, any "damages" in this case. *Supra* pp. 5, 8-10. In light of these concessions, this Court should enter an order confirming the State is not allowed to seek to recover any "damages" or "monetary relief" in this case—subject to its right to continue attempting to recover the equitable relief of civil penalties and disgorgement—or offer any such evidence

---

[10] The State argues Fleet Farm's seventeenth affirmative defense—that the State's requested equitable relief is barred because it has an adequate remedy at law—does not apply because "the State does not need to prove that monetary damages are inadequate to obtain equitable relief." State's Br. 13. This overstates Minnesota law, which provides that although "when the legislature has explicitly authorized the state to obtain injunctive relief to prevent violation of statutes … the legislature has obviated a showing of irreparable harm and inadequate legal remedy," where the State is pursuing common-law claims, "a finding of irreparable harm and inadequacy of legal remedy remains a threshold requirement." *State ex rel. Hatch v. Cross Country Bank, Inc.*, 703 N.W.2d 562, 573-74 (Minn. Ct. App. 2005). So to the extent the State seeks to recover equitable relief for its common-law claims, Fleet Farm's seventeenth affirmative defense remains applicable.

at trial. If such an order is entered, Fleet Farm agrees that its damages-based affirmative defenses may be dismissed.

### B. If this case concerns only equitable relief, Fleet Farm's comparative-fault defenses remain applicable.

Even if this case is formally narrowed to concern only equitable relief, Fleet Farm's comparative-fault defenses remain valid and well-supported. *Supra* pp. 11-14. The State argues these defenses, including the "assumption of risk defense," should be dismissed because it has conceded it "is not seeking damages" from Fleet Farm. State's Br. 9-10. Although the State is correct that any claim for damages is wholly unsupported by the record, it is wrong as to the effect of that reality on the viability of Fleet Farm's comparative-fault defenses.

Tellingly, the State does not offer ***any authority*** supporting its argument that a comparative-fault defense is inapplicable in the context of claims for equitable relief. Nor could it, as the only Minnesota authorities to consider the applicability of comparative-fault principles in the context of injunctive or equitable relief have considered the fault of persons other than the defendant to assess the appropriateness of injunctive relief. *E.g.*, *In re Minnwest Bank Litig. Concerning Real Prop.*, 873 N.W.2d 135, 145 (Minn. Ct. App. 2015) (concluding district court did not abuse its discretion in denying injunctive relief in part based on "the parties' comparable degree of fault"). Likewise, other courts have concluded comparative-fault principles may apply to assess claims for equitable or injunctive relief. *E.g.*, *Caronia v. Philip Morris USA, Inc.*, 2011 WL 338425, at *13 n.5 (E.D.N.Y. Jan. 13, 2011) (observing comparative-fault defense "seems to available to

- 18 -

[defendant] notwithstanding the fact that the plaintiffs are asking only for equitable relief."). This makes good sense, because the two primary categories of equitable relief sought by the State—various injunctive remedies and civil penalties—directly implicate the facts underlying Fleet Farm's comparative-fault defenses.

As for the State's sought-after injunctive relief, a party seeking such relief for common-law claims must first "establish that his legal remedy is not adequate, … and that the injunction is necessary to prevent great and irreparable injury." *Cherne Indus., Inc. v. Grounds & Assocs., Inc.*, 278 N.W.2d 81, 92 (Minn. 1979). If these threshold requirements are met, the district court then considers "the relationship between the parties, the relative harm to the parties if injunctive relief is granted or denied, the party's likelihood of success on the merits, any public interest or public policy that may be involved, and the administrative burdens involved in judicial supervision and enforcement." *State ex rel. Hatch v. Cross Country Bank, Inc.*, 703 N.W.2d 562, 572 (Minn. Ct. App. 2005). And when injunctive relief is explicitly authorized by statute, the district court must consider "[1] whether the state showed that [the defendant] violated or were about to violate the statutes involved and [2] whether injunctive relief would fulfill the legislative purpose of the statute." *Id.* at 573. That numerous other actors, including the State, bear responsibility for the harms alleged in the complaint speaks directly to the question of whether and what injunctive relief, if any, may be appropriate in this case.

As for the State's sought-after civil penalties under Minn. Stat. § 8.31, one of the factors relevant to determining the amount of such penalties is "the good or bad faith of the defendant." *State by Humphrey v. Alpine Air Prods., Inc.*, 490 N.W.2d 888, 897 (Minn.

Ct. App. 1992). Here too, the evidence establishing the viability of Fleet Farm's comparative-fault defenses also supports the argument that Fleet Farm's actions in this case were taken in good faith, and thus support a lower civil penalties award than may otherwise be appropriate.[11]

## CONCLUSION

For the foregoing reasons, this Court should deny the State's Motion for Summary Judgment on Fleet Farm Affirmative Defenses.

---

[11] For this reason, even if this Court concludes that the State is limited to seeking equitable relief and that comparative-fault defenses do not apply to such relief, Fleet Farm should be permitted to introduce the evidence underlying these defenses to support arguments regarding what, if any, injunctive relief and civil penalties should be imposed. *Cf. N.C. ex rel. Cooper v. Tenn. Valley Auth.*, 549 F. Supp. 2d 725, 733-34 (W.D.N.C. 2008) (concluding comparative-fault principles did not apply under Kentucky and Tennessee law in environmental case seeking only injunctive relief, but reiterating "the necessity of 'strictest proof that the plaintiff's own conduct does not produce the result' of which [the state] complains" (quoting *Georgia v. Tenn. Copper Co.*, 206 U.S. 230, 238 (1907))).

Dated:  April 25, 2025

Respectfully submitted,

*/s/ Todd A. Noteboom*
Todd A. Noteboom (#0240047)
Andrew W. Davis (#0386634)
Sharon R. Markowitz (#0392043)
Andrew P. Leiendecker (#0399107)
Zachary J. Wright (#0402945)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
todd.noteboom@stinson.com
andrew.davis@stinson.com
sharon.markowitz@stinson.com
andrew.leiendecker@stinson.com
zachary.wright@stinson.com

**ATTORNEYS FOR DEFENDANTS**