**CONFIDENTIAL**

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

STATE OF MINNESOTA by its
Attorney General, Keith Ellison,

     Plaintiff,

          Case No. 0:22-cv-02694-JRT-JFD
vs.

FLEET FARM LLC, FLEET FARM GROUP
LLC, and FLEET FARM WHOLESALE
SUPPLY CO. LLC,

     Defendants.

_____

**DEPOSITION OF MICHELLE GRANATO**

_____

     Deposition of MICHELLE GRANATO, taken before me at Henes & Associates, Appleton, Outagamie County, Wisconsin, on the 19th day of June, 2024, A.D., otherwise than as a witness on the trial, in a certain action now pending in the United States District Court, District of Minnesota, wherein the parties thereto are as set forth above.

     - - - - - -

     Jessica Koepsell, RPR, CRR

*1*

Plaintiff's Exhibit

**12**

CONFIDENTIAL

Said MICHELLE GRANATO, having been first duly sworn by me to testify the truth, the whole truth, and nothing but the truth relative to said cause, in answer to oral interrogatories, deposed and made answer as follows:

- - - - - - -

(The examination began at 8:56 a.m. on June 19, 2024.)

- - - - - - -

EXAMINATION

BY MR. MALONEY.

Q     Good morning, Ms. Granato.  Can you please state your name for the record?

A     Michelle Granato.

MR. DAVIS:  Mr.  Maloney, could we go on the record first and designate the deposition as confidential?

MR. MALONEY:  Go ahead, Counsel.

MR. DAVIS:  As we discussed just before coming on the record this morning, consistent -- pursuant to the protective order that exists in this case, we will designate this deposition transcript as confidential.

*5*

HENES & ASSOCIATES REPORTING SERVICE, INC.
www.henesreporting.com  920-733-1835  henes@henesreporting.com

CONFIDENTIAL

MR. MALONEY:  Thank you.

BY MR. MALONEY:

Q    So, Ms. Granato, where do you work currently?

A    Fleet Farm.

Q    And what is your job there?

A    I am a firearms specialist.

Q    I'm going to start with some basic questions here.  Are you represented by a lawyer today?

A    Am I represented?  No.

Q    Do you have a lawyer here today on behalf of Fleet Farm?

A    Yes.

Q    And who is that?

A    Andrew.

Q    Andy Davis?

A    Andy Davis.

Q    Thank you.  And when did this representation begin by Mr. Davis?

A    Last week.

Q    Which day last week?

A    Last Tuesday.

Q    So I'm going to start with some ground rules here so that we can get through this

*6*

CONFIDENTIAL

can answer, if you understand the question.

THE WITNESS: Based on my knowledge at that time, it seemed obvious, but prior to that, I don't know that it would have been.

BY MR. MALONEY:

Q    What seemed obvious?

A    That we had a straw purchaser.

Q    Is that at least in part because there were multiple red flags, right?

A    Not multiple red flags.

Q    But there were multiple guns purchased, correct?

A    But every gun purchase isn't a red flag.

Q    So what, in your opinion, made this -- made it pretty obvious that there was a straw purchase happening here?

A    That I had just worked with ATF, and we knew that we were dealing with a straw purchaser.

MR. MALONEY: Can we play this one more time, Katie?

(Video playing.)

*MR. RADL: So all we can do as a responsible FFL --*

*MS. GRANATO: Those ATF*

*137*

CONFIDENTIAL

*communications should always come through corporate.  We don't want the stores --*

MR. RADL:  Reaching out --

MS. GRANATO:  -- *reaching out every time they feel something suspicious is happening.  So on this slide here, we can see actual 3310 forms.  So we see on the first one we had a transfer date of 7/23, and then two more on 7/27.  Not real suspicious, but, you know, should raise a flag.  But then we see again a few days later the customer's purchases from 7/27, and then there's three more on 7/31.  Does anybody else find this suspicious?  They're coming in.  They're buying 9 millimeters, handguns.  It appears to be pretty obvious what's going on here.*

(Video stopped.)

MR. MALONEY:  Can you stop right there?

BY MR. MALONEY:

Q   So when you're presenting in the webinar back in November 2021, I mean you're not talking about the ATF investigation, are you?

*138*

CONFIDENTIAL

A   I'm talking about knowledge that I had gained from the ATF investigation.

Q   I mean, you're looking at the slide --

MR. MALONEY:  Go back a little bit, Katie, so we have the slide on the screen.

BY MR. MALONEY:

Q   You're describing the content of the two Form 3310s and saying why those forms on their face look suspicious, right?

A   Right.

Q   And you're mentioning indicators such as the purchases happened close in time, right?

A   Yes, because it would fall within that five consecutive days.

Q   You mentioned 9 millimeter, right?

A   Yes.

Q   You mentioned that there were 9 millimeter handguns and which we talked about previously multiple guns of the same caliber can be a warning sign of straw purchasing, right?

A   Right.

Q   So when you're asking in this recording or saying that it's pretty obvious what's going on here, you're referring to looking at the

*139*

CONFIDENTIAL

Jerome Horton, did you review the forms
related to Jerome Horton's purchases from
Fleet Farm?

A   Yes, I did review them.

Q   And did you look at them for all of the
purchases by Jerome Horton or just a subset?

A   I looked at all the forms.

Q   Okay.  And in your review of those forms,
did Fleet Farm complete and receive all the
required Form 4473s for those purchases?

A   Yes.

Q   Did Fleet Farm complete and submit all
required 3310 forms for those purchases?

A   There was one that was missing.

Q   Do you recall for which transaction or
transactions that form was missing?

A   No, I don't.

Q   And, to your knowledge, did Fleet Farm ever
alert the ATF that Horton was a possible
straw buyer?

A   Not to my knowledge.

Q   But you know that the ATF did ask Fleet Farm
for information about Horton's purchases,
right?

A   Yes, I received an e-mail from ATF.

*178*

CONFIDENTIAL

got OAK, still waiting for BRP; is that right?

A   Yes.

Q   OAK is Oakdale?

A   Yes.

Q   And then BRP is Brooklyn Park?

A   Yes.

Q   Do you recall if you ever got the Brooklyn Park 3310s?

A   I -- yes.

Q   Okay.  And it looks like here you got the Oakdale 3310s, too, right?

A   I did get them.

Q   Does this help refresh your memory at all which store had the missing 3310 form that you referenced?

A   It looks like Oakdale.

Q   You think it was Oakdale?

A   It says, Oakdale missing 3310.4 for serial -- and then I gave the serial number.  No e-mail confirmation.  I have e-mailed Jeff Frank asking for them.

Q   You're reading from the second-to-last message --

A   Yes.

*199*

CONFIDENTIAL

Q   -- towards the bottom of the page, right?

A   Yes.

Q   Where it says, OAK missing.  3310.4 for Serial No. AFVB754.  No e-mail confirmation. I have e-mailed Jeff Frank asking for them. No e-mail confirmation for either 3310.4. These damn stores.

A   Yes.

Q   Did Oakdale ever correct the fact that at the time of purchase or sale it did not complete the 3310.4?  Like did it do it later on?

A   I don't remember.

Q   But at least at the time that you were looking at this information, Oakdale was still missing that 3310.4?

A   Yes.

Q   Okay.  What did you mean by *these damn stores*?

A   I think it was more frustration.

Q   About what?

A   We had covered printing the confirmation and printing the e-mail -- or the 3310.

Q   And you were frustrated that, notwithstanding your training, a store had

*200*

CONFIDENTIAL

shifted over the course of this deposition. Your testimony now is that all the 3310.4s that were required to be completed for Fleet Farm sales to Jerome Horton were completed?

A    They were completed and sent to ATF.

Q    Okay.  Were they completed and sent to ATF in a timely fashion as required by law?

A    Yes.

Q    Could you pull up Exhibit 73 from the stack? Sorry to make you dig.  Do you have 73 in front of you, Ms. Granato?

A    Yes, I do.

Q    Could you turn to the page with the Bates number in the bottom right of 2471?

A    Okay.

Q    And, again, this is a text chat thread between you and Mike Radl, correct?

A    Yes.

Q    If you're looking at 2471, about a third of the way down the page, there's a message from Mike Radl at 1:51 p.m.  He says, so I guess 13310 at OAK was never submitted because he had listed, quote, JR in the wrong box, so it didn't trigger for a 3310. Another issue we might need to fix.  They

*243*

CONFIDENTIAL

are making one now and will be submitting it as unusual and scan us a copy.

So based on this chat from Mike Radl, at least one of the 3310s -- one of the 3310s from Oakdale was not submitted on time, correct?

A   It was later submitted.

Q   So at the time of the sale, Oakdale did not submit the 3310 to the ATF or the CLEO, right?

A   Right.

Q   They fixed it later after they caught the problem?

A   Yes.

Q   Okay.  So in the end it was more than just a missing confirmation e-mail?  There was a 3310 that was not submitted at the time of sale, correct?

A   Correct.

MR. MALONEY:  Okay.  That's all I have.

MR. DAVIS:  I have got one more.

FURTHER EXAMINATION

BY MR. DAVIS:

Q   Ms. Granato, just going to that same chat,

*244*

CONFIDENTIAL

STATE OF WISCONSIN      )
                        )  ss.
COUNTY OF OUTAGAMIE     )


          I, Jessica Koepsell, Certified Realtime Reporter and Notary Public in and for the State of Wisconsin, do hereby certify that the attached and foregoing deposition was taken before me at Henes & Associates, Appleton, Outagamie County, Wisconsin, on the 19th day of June, 2024, A.D., at 8:56 a.m.; that it was taken at the request of the adverse parties, upon oral interrogatories; that said MICHELLE GRANATO was sworn by me to tell the truth, the whole truth, and nothing but the truth relative to said cause.

          Dated this 25th day of June, 2024.


                    HENES & ASSOCIATES
                    COURT REPORTING SERVICE



                    _____
                    Jessica Koepsell
                    Registered Professional Reporter
                    Certified Realtime Reporter

My commission expires January 24, 2028.



                                              *246*

CONFIDENTIAL

SIGNATURE PAGE

I, MICHELLE GRANATO, do hereby certify that I have read the foregoing transcript of my testimony in the above-mentioned matter, and it is true and correct as transcribed except for changes noted on the errata sheet.
Dated this 23 day of July, 2024.

_Michelle Granato_
MICHELLE GRANATO

*    *    *    *    *    *    *

Subscribed and sworn to before me:

this 23 day of July, 2024.

_Kari Blaser_
Notary Public

My commission expires 8·31·27.

247

CONFIDENTIAL

ERRATA SHEET

The witness, MICHELLE GRANATO, states she wishes to make the following changes in testimony as originally given:

| PAGE | LINE | SHOULD READ | REASON |
|------|------|-------------|--------|
| 37 | 25 | Maybe | Actual answer |
| 53 | 12 | reference | Actual answer |
| 73 | 4 | Platform | Actual answer |
| 112 | 9 | Mr. Davis | Transcription error |
| 169 | 14 | hear of her | Actual answer |
| 228 | 20 | Rudy is an ATF agent | Actual answer |

*Michelle Granato*
MICHELLE GRANATO

Subscribed and sworn to before me this 23 day of, July BLASER 20 24.

*Kari Blaser*
Notary Public

My commission expires
8-31-27

KARI BLASER
NOTARY PUBLIC
STATE OF WISCONSIN

*248*

HENES & ASSOCIATES REPORTING SERVICE, INC.
www.henesreporting.com  920-733-1835  henes@henesreporting.com