## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| State of Minnesota by its Attorney General, Keith Ellison,<br><br>              Plaintiff,<br><br>      v.<br><br>Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC,<br><br>              Defendants. | Case No.: 0:22-cv-02694-JRT-JFD |

## FLEET FARM'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN TESTIMONY OF JOSEPH BISBEE

T<small>ABLE OF</small> C<small>ONTENTS</small>

I<small>NTRODUCTION</small>..............................................................................................................1

A<small>RGUMENT</small> ...................................................................................................................2

    I.     Bisbee has no expertise regarding federal law and guidelines for FFL operations, nor the industry standard for FFL operations...................................2

    II.    Certain of Bisbee's opinions are unsupported, speculative, and unhelpful ..................................................................................................................10

    III.   Bisbee offers improper narrative testimony......................................................13

    IV.   Bisbee's improper "legal opinions" should be excluded...................................16

C<small>ONCLUSION</small> ..............................................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Zurich Ins. Co. v. Guilbeaux,*
  2018 WL 1787886 (S.D. Miss. Apr. 13, 2018)............................................................. 17

*Bhd. Mut. Ins. Co. v. ADT, LLC,*
  2014 WL 2993728 (D. Minn. July 2, 2014) .................................................................. 9

*Clayton v. Heil Co. Inc.,*
  2022 WL 17404792 (D. Ariz. Dec. 2, 2022) ................................................................ 14

*In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products*
  *Liability Litigation,*
  546 F. Supp. 3d 666 (S.D. Ohio 2021) ........................................................... 13, 14, 15

*Great Am. Ins. Co. v. Seaboard Marine, Ltd., Inc.,*
  2019 WL 8503307 (S.D. Fla. June 27, 2019) ............................................................... 17

*Jo Ann Howard & Assocs., P.C. v. Cassity,*
  2018 WL 6110929 (E.D. Mo. Nov. 21, 2018) ............................................................. 17

*K.G. v. Owl City,*
  2023 WL 3735891 (D.N.J. May 31, 2023) .................................................................. 16

*Khoday v. Symantec Corp.,*
  93 F. Supp. 3d 1067 (D. Minn. 2015) ........................................................................... 9

*Khoury v. Philips Med. Sys.,*
  2009 WL 4049911 (D. Minn. Nov. 23, 2009) ............................................................... 9

*McRunnel v. Batco Mfg.,*
  917 F.Supp.2d 946 (D. Minn. 2013) ......................................................................... 6, 7

*Medalen v. Tiger Drylac U.S.A.,*
  269 F. Supp. 2d 1118 (D. Minn. 2003) ................................................................ 10, 11

*Ocasio v. C.R. Bard, Inc.,*
  2015 WL 2062611 (M.D. Fla. May 4, 2015)................................................................ 15

*Ponca Tribe of Indians of Okla. v. Continental Carbon Co.,*
  2009 WL 4547612 (W. D. Okla. Jan. 16, 2009)............................................................ 8

*In re Rezulin Prods. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004)................................................................. 13, 14

*Robinson v. GEICO Gen. Ins. Co.*,
  447 F.3d 1096 (8th Cir. 2006) .......................................................................... 6

*Samuel v. Oromia Media Network*,
  569 F. Supp. 3d 904 (D. Minn. 2021) ............................................................... 17

*Scalia v. Reliance Tr. Co.*,
  2021 WL 795270 (D. Minn. Mar. 2, 2021) ....................................................... 16, 17

*Schaefer-Condulmari v. U.S. Airways Grp., LLC*,
  2012 WL 2920375 (E.D. Pa. July 18, 2012).................................................... 8

*Student Paths LLC v. OnSharp, Inc.*,
  2013 WL 951418 (D. Minn. Mar. 12, 2013) .................................................. 7, 9

*Thomas v. Barze*,
  57 F. Supp. 3d 1040 (D. Minn. 2014) ............................................................. 17

*In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  2016 WL 807377 (E.D. Pa. Mar. 2, 2016)....................................................... 15, 16

*In re Viagra Prods. Liab. Litig.*,
  658 F. Supp. 2d 950 (D. Minn. 2009) ............................................................. 13, 16

*Walker v. CSX Transp. Inc.*,
  650 F.3d 1392 (11th Cir. 2011) ...................................................................... 8

*Weir v. Pioneer Hi-Bred Int'l, Inc.*,
  2000 WL 35533101 (N.D. Iowa Oct. 27, 2000) ............................................. 11, 12

*In re Welding Fume Prods. Liab. Litig.*,
  2005 WL 1868046 (N.D. Ohio Aug. 8, 2005) ................................................ 15, 16

*Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*,
  254 F.3d 706 (8th Cir. 2001) .......................................................................... 9

## INTRODUCTION

The State's opposition to Fleet Farm's motion to exclude certain testimony of Joseph Bisbee does not dispute the core problem at the heart of Bisbee's opening and rebuttal reports: Bisbee has virtually no experience, let alone expertise, on several topics on which he proffers testimony.  Indeed, it is undisputed that Bisbee has: (1) never served in a regulatory capacity at ATF; (2) never been responsible for reviewing FFL policies, procedures, or trainings; (3) never compared different FFLs' trainings and policies relating to firearm sales; (4) never provided professional or educational services relating to straw-purchase prevention; (5) never advised or trained an FFL on best practices for selling firearms; and (6) never advised or trained an FFL on best practices for monitoring for straw purchasers.  Despite this dearth of relevant experience, the State would have this Court hold that because Bisbee served in a law-enforcement capacity at ATF, that somehow renders him qualified to "testify about the firearms industry" at large, regardless of whether he has any personal experience in a particular aspect of that industry.  Doc. 211 ("State's Br.") at 12.  Federal Rule of Evidence 702 precludes painting in such broad strokes.  Bisbee is not qualified to opine on matters of FFL regulatory enforcement because his experience is exclusively on ATF's criminal-enforcement side, which is distinct from its regulatory, industry-operations side.  Other portions of Bisbee's testimony are unsupported, improper narrative testimony, and impermissible legal opinion.  Fleet Farm's motion to exclude certain testimony from Bisbee should therefore be granted.

<u>**A**RGUMENT</u>

Rule 702 requires that most of Bisbee's contemplated expert testimony be excluded,[1] for four reasons: (1) Bisbee is not qualified to opine on federal law and guidelines for FFL operations, the industry standard for FFL operations, or Fleet Farm's compliance with the same; (2) Bisbee's suggested remedial measures and his opinion regarding any causal nexus between Fleet Farm sales and future crime are wholly unsupported; (3) much of Bisbee's testimony about Horton's and Elwood's firearm purchases is improper narrative testimony; and (4) Bisbee's testimony that Fleet Farm did not fulfill its duty and failed to exercise appropriate care are impermissible legal opinions.[2]

**I.      Bisbee has no expertise regarding federal law and guidelines for FFL operations, nor the industry standard for FFL operations.**

Bisbee seeks to opine on whether Fleet Farm's operations, and particularly those related to monitoring for and preventing straw purchasing at the point of sale, are consistent with federal laws and guidelines governing FFLs, and the industry-standard approach for FFL operations. *See* Doc. 182 ("Opening Report") at 4-10; Doc. 182-1 ("Rebuttal Report") at 1-5, 9-10, 17-25. Bisbee is not qualified to opine on these topics because his experience

---

[1] Fleet Farm's motion does not challenge Bisbee's ability to review sales footage and documentation for a particular transaction and assess, from a law-enforcement perspective, whether he believes indicia of a straw purchase are present.

[2] The State misses the mark when it characterizes Fleet Farm's arguments as "a transparent attempt to rid the State of much of the testimony of its only expert witness and win a 'battle of the experts' by default." State's Br. 1. Because this case involves numerous legal issues and "facts [that] are complex in nature," *id.* at 20, Fleet Farm chose to identify three different experts with different qualifications, experience, and expertise. The State did not. That the State may now regret its decision to proffer only one expert does not somehow relax the requirements of Rule 702.

is exclusively on the criminal-enforcement side of ATF, not the distinct regulatory-enforcement side. *See* Doc. 180 ("Opening Br.") at 13-17. Specifically, Fleet Farm has explained that, per Bisbee's own testimony, he never served in a "regulatory enforcement personnel" role at ATF, and instead worked "on the criminal enforcement side." *Id.* at 14 (quoting Doc. 181-2 ("Bisbee Tr.")[3] at 37:20-38:6). He has never been responsible for "process[ing] … applications" for prospective FFLs, conducting "ongoing inspections … of FFLs once they are licensed," performing "comprehensive reviews of the policies and procedures [of] an FFL," or "reviewing the training modules that an FFL would have in place [for] its sales personnel." *Id.* (quoting Bisbee Tr. 37:20-39:5, 42:3-16). He likewise has no experience or expertise regarding the industry standard for FFL operations. *Id.* at 15 (citing Bisbee Tr. 200:13-201:19, 202:5-12, 261:14-21, 291:7-17). Consistent with Bisbee's testimony, Fleet Farm's ATF expert has explained that based on the roles Bisbee held at ATF, Bisbee would not have been responsible for conducting compliance inspections of FFLs, or enforcing or training FFLs on their compliance obligations under federal regulations and guidelines. Doc. 183 ¶¶ 10-11, 13-14, 17-18. ***The State does not dispute any of this***. Instead, the State offers three arguments for why Bisbee is qualified to offer the challenged opinions, and each is unavailing.

  ***First***, in its "Background" section, the State attempts to recast Bisbee's narrow experience as broad expertise, averring that "ATF special agents ***like Bisbee***" investigated

---

[3] Fleet Farm and the State have provided the Court with different excerpts of Bisbee's deposition transcript. *See* Docs. 181-2, 214. Throughout this reply memorandum, "Bisbee Tr." refers to excerpts contained in Doc. 181-2, unless Doc. 214 is specifically cited.

"how and why" straw purchases occurred, and that "when FFLs failed to prevent illegal straw sales in the cases that ended up on Bisbee's desk, he 'would be looking at those policies and procedures of FFLs and [asking] how was that happening,'" including "analyzing the reasons the FFL made the illegal sale." State's Br. 2 (quoting Bisbee Tr. 39:12-17 (emphasis added)). But Bisbee testified his experience with straw purchasing was limited to *after-the-fact investigations*, focusing on "how criminals access firearms," which involved asking "[h]ow are they accomplishing that? … *so in a way*, we would be looking at those policies and procedures of FFLs and how was that happening." Bisbee Tr. 39:12-21 (emphasis added). Because Bisbee's experience involved an *after the fact* analysis of the actions of the criminal straw purchasers, not the actions of FFLs at the point of sale, he is not qualified to opine on an FFL's policies and procedures related to detecting and preventing straw purchasing before it occurs.

This is the core problem with much of Bisbee's proffered opening and rebuttal testimony: there are critical differences between, on one hand, evaluating a transaction from the *ex post* perspective of conducting a criminal investigation *knowing* a straw purchase has occurred or a crime has been committed, and, on the other hand, from the *ex ante* perspective of assessing what a retailer should be doing to prevent straw purchasing at the point of sale. *See* Doc. 210-1 at 149 (Fleet Farm's industry-operations expert explaining Bisbee is using straw purchasing indicia "as a law enforcement investigatory tool, rather than an indicator that can be monitored for by an FFL at the point of sale"); *id.* at 173 (Fleet Farm's ATF expert explaining Bisbee is evaluating transactions "from the perspective of an investigator, working backgrounds from the 'crime scene' to the last

known purchaser through the investigative process," and not based on "the potential indicia of straw purchasing that ATF instructs FFLs to monitor for at the point of sale"). And during his deposition, Bisbee confirmed that he has no experience, let alone any expertise, with how FFLs should monitor for straw purchasing from the *ex ante*, point-of-sale perspective. Specifically, Bisbee's time at ATF did not entail comprehensively reviewing FFL policies and procedures regarding firearm sales, reviewing the training modules an FFL would use to train its sales personnel, or conducting compliance inspections. Bisbee Tr. 42:3-25. And if Bisbee ever "accompan[ied] regulatory personnel on occasion when they were conducting inspections," he did so "infrequently." *Id.* at 42:23-44:25; Doc. 214 at 45:1-4. In short, "nothing in [Bisbee's] background indicates he has ever worked directly with FFLs on regulatory or compliance matters, let alone specifically on how to monitor for and prevent straw purchases." Doc. 210-1 at 151.

What follows from this is that although Bisbee is qualified to provide the *ex post* law-enforcement perspective on straw purchasing, he is not qualified to provide the *ex ante* regulatory perspective on how an FFL should be monitoring for straw purchasing at the point of sale, or whether an FFL's operations are adequate. Accordingly, Bisbee should be prohibited from testifying on: (1) whether Fleet Farm complied with federal laws and guidelines for FFL operations; or (2) whether Fleet Farm's operations, including its straw-purchasing trainings and procedures, are consistent with FFL industry practice. *See* Opening Br. 13-17.

***Second***, the State argues Bisbee is qualified because "Rule 702 does not mandate specific expertise in the specialized field at issue" so long as "an expert witness's area of

competence … generally match[es] the subject matter of the witness's testimony."  State's Br. 10 (citing *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006); *McRunnel v. Batco Mfg.*, 917 F. Supp. 2d 946, 952 (D. Minn. 2013)).  But the State's reliance on this principle to bolster Bisbee's qualifications rests on the false premise that Bisbee's criminal-investigation work at ATF qualifies him to opine on the firearms industry more generally.  It does not.  Bisbee's "area of competence" is criminal investigations of firearm trafficking, not FFL regulatory enforcement or how FFLs should conduct their operations.  *See* Opening Br. 3-9, 13-17; Doc. 183.

The two cases offered by the State confirm that Bisbee is not qualified to opine on federal law and guidelines for FFL operations or the industry standard for those operations. *See* State's Br. 10.  In *Robinson*, although the Eighth Circuit concluded a neurologist, "[a]s a physician, ... could testify regarding the likely type of injury one would sustain by the impact of the arm into the shoulder joint," it explained Rule 702 "require[s] that the area of the witness's competence **matches the subject matter of the witness's testimony**," and rested its ultimate conclusion on the fact that "[m]ost courts have held that a physician with general knowledge may testify regarding medical issues that a specialist might treat in a clinical setting."  447 F.3d at 1101 (emphasis added) (citation omitted).  Unlike *Robinson*, here the State has not demonstrated that Bisbee's law-enforcement experience "matches the subject matter" of his proposed testimony regarding federal laws and guidelines governing, or the industry-standard practice for, FFL operations at the point of sale. Similarly, in *McRunnel*, the court concluded "a licensed engineer" was qualified to testify regarding how the plaintiff's "arm was pulled into the [grain] conveyor" and the

"warnings" regarding the conveyor, because the expert had specific "training and experience as an agricultural engineer," "experience using and seeing conveyors" and "writing operator's manuals," and had "seen people getting caught in accidents." 917 F. Supp. 2d at 952-53. The relevant inquiry remained whether the subject matter of the proffered testimony was within the realm of the witness's expertise. *See id.*; *see also Student Paths LLC v. OnSharp, Inc.*, 2013 WL 951418, at *3 (D. Minn. Mar. 12, 2013). In contrast to *McRunnel*, here Bisbee did not receive any of the training ATF provides to its industry-operations personnel, has minimal first-hand experience working with FFLs, has never been responsible for reviewing FFL policies relating to gun sales or advising an FFL on best practices for preventing straw purchases, and has never prepared training materials related to straw-purchase prevention.[4]  Bisbee Tr. 37:20-39:5, 41:10-42:16, 44:14-23, 48:12-49:20, 73:5-8, 76:8-77:2.

*Third*, the State attempts to bolster Bisbee's qualifications by asserting "[i]n the course of his firearms investigations, Bisbee *frequently* reviewed and communicated with FFLs regarding their firearms policies and worked with them to prevent firearm trafficking." State's Br. 13 (emphasis added) (citation omitted). This is not an accurate characterization of Bisbee's testimony and experience. What Bisbee actually testified is

---

[4] The State's assertion that "Bisbee developed educational materials regarding firearms trafficking, including straw purchasing warning signs," that "are still used by the ATF today with … FFLs," State's Br. 13, would come as a surprise to Bisbee, who testified unambiguously that he has *never* prepared such materials.  Doc. 214 at 44:22-45:8 (testifying "[n]o, I did not create any specific training where the audience was licensed gun dealers" relating to straw purchasing, and that the materials he prepared for FFLs were "not in relation to straw purchasing").

that "*[w]e* would frequently be in contact with FFLs," but that "*I* would not conduct inspections," and, "*infrequently*," "I would accompany regulatory personnel on occasion when they were conducting inspections." Bisbee Tr. 41:2, 42:23-43:4 (emphases added). As a matter of law, Bisbee's "infrequent[]," hands-off experience does not give him *expertise* on FFL regulatory matters, such as policies, procedures, and best practices for monitoring for straw purchasing at the point of sale.[5]  *E.g.*, *Walker v. CSX Transp. Inc.*, 650 F.3d 1392, 1397 n.19 (11th Cir. 2011) (affirming exclusion of testimony where, among other things, expert's "experience with [at-issue railcar apparatus] *was self-described as* '*infrequent*'" (emphasis added)); *Schaefer-Condulmari v. U.S. Airways Grp., LLC*, 2012 WL 2920375, at *5 (E.D. Pa. July 18, 2012) (expert not qualified where he had only "occasional[]" experience on the topic); *Ponca Tribe of Indians of Okla. v. Continental Carbon Co.*, 2009 WL 4547612, at *5 (W. D. Okla. Jan. 16, 2009) (concluding expert was not qualified to opine on a topic where "[h]e has had no training in th[e] area and only *a minimal amount of experience* doing such work" (emphasis added)).

*    *    *

The bottom line is that Bisbee had no training on, responsibility for, or direct experience with ATF's regulatory operations or store-level FFL operations. He never served in a regulatory-enforcement capacity at ATF; has never been responsible for approving FFLs, inspecting FFLs, or reviewing FFL policies, procedures, or trainings

---

[5] The State also notes, accurately, that Bisbee has "work[ed] as a police officer" and has previously testified on "firearms trafficking issues." State's Br. 13. The State does not even attempt to argue *how* or *why* this experience renders Bisbee qualified to testify on federal law and guidelines for FFL operations, or the industry standard for FFL operations.

relating to firearm sales; never compared Fleet Farm's comprehensive trainings and policies to those of other Minnesota FFLs; and has never provided services relating to straw-purchase prevention, assessed an FFL's straw-purchasing practices, or advised or trained an FFL on the best practices for selling firearms or for monitoring for straw purchases at the point of sale.  Bisbee Tr. 37:20-39:6, 42:3-25, 44:22-23, 48:12-49:20, 72:18-77:2.  Myriad cases, including cases from this Court, confirm this type of fundamental deficiency in an expert's qualifications must be addressed at the Rule 702 stage, before trial, and is not the appropriate province of cross-examination.  *E.g.*, *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (concluding district court erred by permitting expert testimony on topic where expert "lacked the education, employment, or other practical personal experiences to testify"); *Khoday v. Symantec Corp.*, 93 F. Supp. 3d 1067, 1078-79 (D. Minn. 2015) (barring expert from testifying on matters that "fall outside [his] qualifications" where there was "no evidence that [the expert] has ever been trained in" the proposed topic); *see also Bhd. Mut. Ins. Co. v. ADT, LLC*, 2014 WL 2993728, at *2 (D. Minn. July 2, 2014); *OnSharp, Inc.*, 2013 WL 951418, at *3; *Khoury v. Philips Med. Sys.*, 2009 WL 4049911, at *5 (D. Minn. Nov. 23, 2009).  Consequently, Bisbee should not be permitted to opine on: (1) whether Fleet Farm complied with federal laws and guidelines for FFL operations; or (2) whether Fleet Farm's operations, including its straw-purchasing trainings and procedures, are consistent with FFL industry practice.

**II.    Certain of Bisbee's opinions are unsupported, speculative, and unhelpful.**

Under Rule 702, expert testimony should be excluded if it is mere "say-so," *Medalen v. Tiger Drylac U.S.A., Inc.*, 269 F. Supp. 2d 1118, 1135 (D. Minn. 2003), or will not help the factfinder "understand the evidence" or "determine a fact in issue," Fed. R. Evid. 702.  Applying these standards, two aspects of Bisbee's proposed testimony are improper: (1) his proffered "remedial measures" that Fleet Farm should undertake, which are unsupported; and (2) his opinion, without citing a single source, that "[d]ue to Fleet Farm's failure to prevent straw purchases by Mr. Horton and Ms. Elwood, numerous more firearms are now circulating within the criminal element, which means that more crimes involving these firearms are likely."  Opening Report at 21-22.

Beginning with Bisbee's "remedial measures" opinion, the State concedes that none of the measures contemplated by Bisbee are required by law or sourced to any authority. State's Br. 16-18.  Instead, the State asserts they are based on Bisbee's "experience and training involving FFL compliance."  *Id.* at 16.  As detailed previously, this overstates Bisbee's ATF experience.  Opening Br. 3-9, 13-17; *supra* pp. 3-5.  It also belies Bisbee's testimony, during which he was clear that along with not having any basis in federal law or ATF guidelines,[6] his remedial measures are also ***not*** based on his personal experience

---

[6] Contrary to the State's argument, *see* State's Br. 16 n.8, Fleet Farm's ATF and industry-standards experts have both opined that ATF provides FFLs with a number of guidelines regarding indicia that FFLs should monitor for as potential signs of straw purchasing.  *See* Doc. 210-1 at 6-7, 72-80.  Both experts also opine that Fleet Farm's policies and procedures on monitoring for potential straw purchasing ***exceed*** what is required by ATF guidelines. *See id.* at 23-27, 33-35, 85-95.  The State has not challenged the admissibility of these opinions.

and work at ATF. *See* Bisbee Tr. 263:9-17, 267:16-19, 268:13-269:2, 272:13-24, 278:22-279:12 (confirming **none** of Bisbee's "remedial measures" are based on his experience at ATF, or based on an assessment of how other FFLs operate in Minnesota). Put simply, **none** of these rationales come from Bisbee's experience; he identifies **zero** experience or knowledge involving **any** remedial measures whatsoever. Accordingly, Bisbee is not applying any expertise in rendering this opinion. He is doing no more or less than the State's attorneys can do, and in fact have already done—Bisbee's "remedial measures" bear a striking similarity to the State's requested injunctive relief. *Compare* Doc. 79, Requested Relief ¶ 2, *with* Opening Report at 21. The "remedial measures" are Bisbee's "say-so"—unsupported by law, guidance, industry practices, scholarly articles, or personal observations and experience—and should be excluded. *Medalen*, 269 F. Supp. 2d at 1135; *see also, e.g.*, *Weir v. Pioneer Hi-Bred Int'l, Inc.*, 2000 WL 35533101, at *4 (N.D. Iowa Oct. 27, 2000) (excluding expert opinion where the report "contain[ed] no evidence of the methodology used to arrive at [the expert's] conclusions," and the "conclusions appear to be completely subjective").

And tellingly, the State does not dispute that Bisbee's "remedial measures" have no relevance to the liability questions in the case, claiming instead that they "will be necessary and helpful **to the Court** in making its equitable determination as to the appropriate injunctive terms." State's Br. 17 (emphasis added). So at minimum, this Court should prohibit Bisbee from testifying on his proposed remedial measures during the liability phase of trial. Instead, if this testimony is allowed, it should be reserved to this Court's consideration of what, if any, injunctive relief is appropriate.

Bisbee's opinion regarding the causal nexus between sales to Elwood and Horton and future crime, *see* Opening Report at 22, should be excluded for similar reasons. Opening Br. 17-18.  The State offers two bases for allowing this opinion, but neither passes muster.

**First**, the State claims this opinion is "firmly anchor[ed] … in the actual facts of this case" because it "analyz[es] the likelihood of future crimes tied to the remainder of the Fleet Farm-sold guns."  State's Br. 14.  But the State has now represented to this Court that: (1) it "will not be seeking to prove the *general* prevalence of straw purchasing and its connection to future crime at trial in this case"; (2) "this case is not about the general population of firearms"; and (3) its case is not "focused on how 'significant' the impact of Fleet Farm's sales w[as] on gun trafficking and violent crime" in Minnesota.  Doc. 187 at 12-13, 19.  Because the State has disavowed seeking to recover for "future crime" in this case, Bisbee's unsupported opinion on the topic no longer concerns a "fact at issue," so should be excluded.  Fed. R. Civ. P. 702.

**Second**, the State claims "Bisbee cites three sources in support of [t]his opinion," State's Br. 15, but those sources are cited for Bisbee's **distinct** assertion that "a multiple sale of firearms is a firearms trafficking indicator," *see* Opening Report at 4-5.  Bisbee does not cite these sources as a basis for his causal-nexus opinion.  Accordingly, this opinion "cites to no sources, published or otherwise," and is the exact type of speculative expert testimony that should be excluded.  *Weir*, 2000 WL 35533101, at *4; *see also* Opening Br. 17-18.

**III.    Bisbee offers improper narrative testimony.**

Much of Bisbee's testimony will not be "helpful" to the factfinder because it consists of mere narrative and summary characterizations of select testimony and documents, and involves no application of any claimed expertise. This type of "expert" opinion is improper. *E.g.*, *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 967 (D. Minn. 2009); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004); *see also* Opening Br. 19-21. The State offers three arguments in response, but none are persuasive.

***First***, the State argues Bisbee's narrative testimony is "included pursuant to" the Federal Rules of Civil Procedure and "demonstrate[s] the foundational reliability of his opinions." State's Br. 19-21. The State bases this argument solely on *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*, 546 F. Supp. 3d 666, 678 (S.D. Ohio 2021). *See* State's Br. 19-21. But *Davol* supports excluding these portions of Bisbee's report. In *Davol*, the defendant sought to exclude portions of an expert report that merely "summarize[d] events." 546 F. Supp. 3d at 676-77. The court agreed that "most of this portion of [the expert's] report is an inadmissible historical recounting" because "[a] history ***without any expert analysis*** or other application of the expert's expertise is simply a factual narrative that 'should be presented to the jury directly.'" *Id.* at 677 (emphasis added) (quoting *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1346 (S.D. Fla. 2010)). For such an analysis to be admissible, the court explained, the expert must "rel[y] on expert knowledge and experience to ***contextualize, analyze, and interpret***" the narrative materials. *Id.* at 678 (emphasis added). The court then excluded

the vast majority of the expert's opinion that "d[id] not analyze, contextualize, or interpret pertinent factual history," and instead simply recounted record evidence that "is not [a] complicated, technical history of a defendants' conduct beyond the understanding of the average juror." *Id.* The court specifically rejected plaintiff's argument that their expert "[wa]s permitted to review Defendants' internal documents and summarize them," because there is a "distinction between inadmissible narration of internal documents and … [an] expert's ***actual reliance*** on the internal documents in forming his expert opinions." *Id.* at 679 (emphasis added). Because plaintiff "provide[d] no … explanation of how [his expert] actually relied on Defendants' internal documents to reach his opinions," plaintiff had "not m[et] his burden to show this part of [the] expert report is admissible." *Id.*

Here, like *Davol*, sections of Bisbee's report simply offer recitations of selected documents and deposition testimony, with no accompanying ***expert*** analysis whatsoever. *See* Opening Br. 19-20. These sections are "inadmissible narration of internal documents" and testimony, and do not reflect Bisbee utilizing any ***expertise*** to "contextualize, analyze, and interpret" the materials. *Davol*, 546 F. Supp. 3d at 677-78. Rather, Bisbee is "do[ing] no more than counsel for plaintiff will do in argument, *i.e.*, propound[ing] a particular interpretation of defendant's conduct," *In re Rezulin*, 309 F. Supp. 2d at 551, by offering "observation[s] … that a lay witness could make," *Clayton v. Heil Co. Inc.*, 2022 WL 17404792, at *5 (D. Ariz. Dec. 2, 2022). To the extent the State wishes to present Bisbee's narrative testimony to the factfinder, it should be required to do so "***directly*** … through

percipient witnesses and exhibits."[7]  *Ocasio v. C.R. Bard, Inc.*, 2015 WL 2062611, at *4

(M.D. Fla. May 4, 2015) (emphasis added).[8]

   ***Second***, the State **concedes** that Bisbee's report includes narrative testimony, but

asserts that "factual narrations are appropriate where, as here, the facts are complex in

nature and narration would assist the trier of fact."  State's Br. 20; *see also id.* at 2 ("[T]o

the extent Bisbee's report includes summation of record evidence, Bisbee does so in

support of his opinions and as required by the federal rules for expert disclosures.").

Neither of the cases cited by the State support this purported rule of law.  *See id.* at 20.  *In*

*re Tylenol (Acetaminophen) Marketing, Sales Practices & Products Liability Litigation*

explains that "a narrative may be admissible if it involves complicated facts ***which the***

***expert can help extrapolate for the jury***" by "translat[ing] the meaning of th[e] actions

[reflected in documents] and what purpose they serve[d]."  2016 WL 807377, at *9 (E.D.

Pa. Mar. 2, 2016) (emphasis added).  Similarly, *In re Welding Fume Products Liability*

*Litigation* explains that an expert may "review[] and compar[e]" documents and articles

that "are complicated," and "app[ly] … his expertise … [to] allow the trier of fact to better

---

[7] In *Davol*, the court discerned only one "appropriate opinion" in the narrative-history section of the expert report, wherein the expert "contextualizes and refers to research explaining why Defendants' internal communications" regarding "the functional lifetime of" the at-issue product "is dubious in light of his expertise."  546 F. Supp. 3d at 678-79. No similar contextualization appears in the portions of Bisbee's reports that Fleet Farm challenges as improper narrative testimony.  *See* Opening Report at 2-5, 7-10; Rebuttal Report at 4-5, 23-25.

[8] Unlike the expert in *Ocasio*, the narrative testimony challenged by Fleet Farm does not reflect "commentary on … documents and exhibits in evidence … explaining the regulatory context in which they were created" or "defining … complex or specialized terminology."  2015 WL 2062611, at *4.

understand what the documents do (and don't) mean." 2005 WL 1868046, at *17 (N.D. Ohio Aug. 8, 2005). These cases stand only for the unremarkable proposition that it is appropriate for an expert to **apply** his expertise to "**extrapolate**" certain conclusions from documents in the record, to help the factfinder "better understand what the documents … mean." *Tylenol*, 2016 WL 807377, at *9 & n.28 (emphasis added); *Welding Fume*, 2005 WL 1868046, at *17. This is exactly what Bisbee's improper narratives fail to do, because they contain no extrapolation or analysis: rather, they merely "summariz[e] and stat[e] [Bisbee's] advocacy-based interpretation of documents in the record," which the factfinder can "interpret … without [his] assistance." *In re Viagra*, 658 F. Supp. 2d at 967.

  **Third**, the State cites cases from other district courts to support its assertion that objection to improper narrative testimony should be resolved at trial, not the Rule 702 stage. State's Br. 22. That is not the law in this District. *E.g.*, *In re Viagra*, 658 F. Supp. 2d at 967 (excluding improper narrative testimony at summary judgment stage).

## IV. Bisbee's improper "legal opinions" should be excluded.

  Caselaw is clear that although an expert's testimony may "embrace[] an ultimate issue to be decided by the trier of fact," that testimony becomes improper when it purports to "render a legal opinion." *Scalia v. Reliance Tr. Co.*, 2021 WL 795270, at *21 (D. Minn. Mar. 2, 2021). Bisbee's contemplated testimony crosses this line where he purports to opine that "Fleet Farm stores **did not fulfill their duty** of ensuring the firearm sales … were lawful" and "Fleet Farm **failed to exercise appropriate care** as an FFL." Opening Report at 22 (emphases added). Multiple courts have concluded **this exact language** is a textbook example of an improper "legal opinion" from an expert. *E.g.*, *K.G. v. Owl City*, 2023 WL

3735891, at *6 (D.N.J. May 31, 2023); *Great Am. Ins. Co. v. Seaboard Marine, Ltd., Inc.*, 2019 WL 8503307, at *2 (S.D. Fla. June 27, 2019); *Jo Ann Howard & Assocs., P.C. v. Cassity*, 2018 WL 6110929, at *2 (E.D. Mo. Nov. 21, 2018); *Am. Zurich Ins. Co. v. Guilbeaux*, 2018 WL 1787886, at *2 (S.D. Miss. Apr. 13, 2018); Opening Br. 21-22.

The State offers one substantive response to this issue, contending Bisbee's testimony "appropriately bears on facts that support a legal conclusion," State's Br. 24 (quoting *Scalia*, 2021 WL 795270, *19), and does not "explain ... whether Fleet Farm has violated the law," State's Br. 25.  But this contention cannot be squared with the unambiguous language in Bisbee's report, which opines specifically that Fleet Farm "***did not fulfill [its] duty***" and "***failed to exercise appropriate care***."  Opening Report at 22 (emphases added).  These are not "opinion[s] as to facts," *Scalia*, 2021 WL 795270, *19 (quotation omitted), they are legal conclusions regarding whether the State has proven two elements of its negligence claim.  *E.g.*, *Samuel v. Oromia Media Network*, 569 F. Supp. 3d 904, 909 (D. Minn. 2021) (explaining first two elements of negligence claim are "the existence of a duty of care" and "a breach of that duty").[9]  Accordingly, they fall beyond the province of permissible expert testimony.

---

[9] These opinions stand in stark contrast to those offered by Fleet Farm's ATF and industry-standard experts, whose testimony the State has not sought to exclude and who simply opine on whether Fleet Farm's operations comported with federal requirements and industry expectation, rather than on the ultimate question of whether Fleet Farm did or did not breach its duty of care.  *E.g.*, *Thomas v. Barze*, 57 F. Supp. 3d 1040, 1062 (D. Minn. 2014) (explaining "[l]egal conclusions are distinct from industry practices and standards").

<u>CONCLUSION</u>

This Court should grant Fleet Farm's Motion to Exclude Certain Testimony of Joseph Bisbee.

Dated:  May 9, 2025                              Respectfully submitted,

                                                */s/ Todd A. Noteboom*
                                                Todd A. Noteboom (#0240047)
                                                Andrew W. Davis (#0386634)
                                                Sharon R. Markowitz (#0392043)
                                                Andrew P. Leiendecker (#0399107)
                                                Zachary J. Wright (#0402945)
                                                STINSON LLP
                                                50 South Sixth Street, Suite 2600
                                                Minneapolis, MN 55402
                                                (612) 335-1500
                                                todd.noteboom@stinson.com
                                                andrew.davis@stinson.com
                                                sharon.markowitz@stinson.com
                                                andrew.leiendecker@stinson.com
                                                zachary.wright@stinson.com

                                                **ATTORNEYS FOR DEFENDANTS**