**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| State of Minnesota by its Attorney General, Keith Ellison, <br><br> Plaintiff, <br><br> v. <br><br> Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC, <br><br> Defendants. | Case No.: 0:22-cv-02694-JRT-JFD <br><br> **FLEET FARM'S NOTICE OF SUPPLEMENTAL AUTHORITY** |

Defendants Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC (together, "Fleet Farm"), hereby provide notice of supplemental authority relating to their Motion for Summary Judgment. *See* ECF Doc. 198.

On June 5, 2025, the United States Supreme Court decided *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. __, 2025 WL 1583281 (U.S. June 5, 2025). In that case, the Mexican government alleged that seven gun manufacturers "aided and abetted unlawful sales routing guns to Mexico drug cartels" by purportedly "fail[ing] to exercise 'reasonable care' to prevent trafficking of their guns into Mexico." *Id.* at *3. The Court concluded the lawsuit was barred by the Protection of Lawful Commerce in Arms Act, 15 U.S.C. § 7901, *et seq.*, because there were no plausible allegations that the manufacturers aided and abetted the "rogue dealers" who trafficked firearms into Mexico. *Id.* at *7-9.

Specifically, the Court explained "[f]ederal aiding-and-abetting law 'reflects a centuries-old view of culpability: that a person may be responsible for a crime he has not

- 1 -

personally carried out' if he deliberately 'helps another to complete its commission.'" *Id.* at *5 (quoting *Rosemond v. United States*, 572 U.S. 65, 70 (2014)).  To aid and abet, "a person must 'take[] an affirmative act in furtherance of that offense' and "must 'intend to facilitate [the offense's] commission.'" *Id.* (quoting *Rosemond*, 572 U.S. at 70).  And the Court explained "routine and general activity that ***happens on occasion to assist in a crime***—in essence, 'incidentally'—is unlikely to count as aiding and abetting." *Id.* at *6 (emphasis added) (quoting *Rosemond*, 572 U.S. at 77 n.8).  For example, "an 'ordinary merchant[]' does not 'become liable' for all criminal 'misuse[s] of [his] goods,' ***even if he knows that in some fraction of cases misuse will occur***." *Id.* (emphasis added) (quoting *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 499 (2023)).  Instead, a merchant "becomes liable only if, beyond providing the good on the open market, he takes ***steps to 'promote'*** the resulting crime and 'make it his own.'" *Id.* (emphasis added) (quoting *United States v. Falcone*, 109 F.2d 579, 581 (2d Cir. 1940)).

Applying these principles, the Court concluded the Mexican government had not plausibly alleged aiding and abetting because there were no allegations that the gun manufacturers did anything beyond "elect to sell guns to, among others, known rogue dealers." *Id.* at *7.  The Court explained that for aiding-and-abetting liability, a defendant must do "more than sell a product to a known lawbreaker," and a defendant does not commit aiding-and-abetting by "treat[ing] rogue dealers just the same as they do law-abiding ones—selling to everyone, and on equivalent terms." *Id.* (citation omitted).  And it was insufficient, the Court explained, to "allege[] that some ... dealers often engage in illegal transactions with Mexican traffickers," that "the manufacturers know that much to

- 2 -

be true," or that "the manufacturers could do more than they do to figure out who those rogue dealers are[] and ... cut off their supply of guns," because at most these "allegations are of 'indifferen[ce],' rather than assistance." *Id.* at \*8 (quoting *Twitter*, 598 U.S. at 500). In short, alleging a defendant "merely allow[ed] some unidentified 'bad actors' to make illegal use of their wares" does not support an aiding-and-abetting theory. *Id.* (quoting *Twitter*, 598 U.S. at 503).

The analysis in *Smith & Wesson* supports granting summary judgment on the State's aiding-and-abetting theory.[1] Fleet Farm has explained there is no evidence that it ***knew*** Elwood or Horton were straw purchasing at the time of the sales. ECF Doc. 200 at 23. This is undisputed.[2] ECF Doc. 220 at 38-39; ECF Doc. 229 at 9-10 & n.8. The State's own expert concedes he "do[es]n't believe" Fleet Farm "willfully and knowingly allowed a straw purchase." ECF Doc. 205-4 at 132-33. *Smith & Wesson* confirms that without such evidence, the aiding-and-abetting claim fails as a matter of law because "routine and general activity that happens on occasion to assist in a crime" is insufficient to prove aiding

---

[1] *Smith & Wesson* discusses the federal aiding-and-abetting doctrine. Both federal and Minnesota aiding-and-abetting are based on the Restatement (Second) of Torts § 876(b), and courts applying Minnesota law often reference the federal aiding-and-abetting doctrine. *E.g.*, *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012) (relying on case applying federal aiding-and-abetting doctrine to determine whether plaintiff sufficiently pleaded aiding-and-abetting under Minnesota law); *see also Twitter*, 598 U.S. at 492 (citing section 876(b) of the Restatement in discussing federal aiding and abetting); *Matthews v. Eichorn Motors, Inc.*, 800 N.W.2d 823, 828 (Minn. Ct. App. 2011) ("The Minnesota Supreme Court has adopted the Restatement (Second) of Torts § 876(b) when defining aiding and abetting in the context of civil tort liability.").

[2] Instead, the State has argued only that "actual knowledge" is not required to prove aiding and abetting. ECF Doc. 220 at 38-39. Fleet Farm has explained that the State's argument is incorrect under Minnesota law. ECF Doc. 229 at 9-10.

and abetting. *Id.* at *6. Likewise, just as it was insufficient in *Smith & Wesson* to argue the manufacturers aided and abetted because they "could [have] do[ne] more … to figure out who th[e] rogue dealers are[] and ... cut off their supply of guns" by not "impos[ing] the kind of controls on their distribution networks that would prevent illegal sales" or "prohibit[ing] dealers from making 'bulk sales,'" *id.* at *5, *8, it is insufficient here for the State to argue Fleet Farm aided and abetted Elwood and Horton because some of the transactions[3] purportedly "raised 'red flags.'" *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 715 (8th Cir. 2019) (affirming grant of summary judgment on aiding-and-abetting theory on this basis). *See* ECF Doc. 200 at 24; ECF Doc. 229 at 10. And just as it was insufficient in *Smith & Wesson* to premise aiding-and-abetting liability on allegations that "some ... sales" to rogue dealers occurred, here the State's aiding-and-abetting theory fails because the State has identified no evidence that Fleet Farm "'participate[d] in' th[e] sales [to Horton and Elwood] 'as in something that [it] wishe[d] to bring about'" or "'s[ought] by [their] action to make' succeed." 2025 WL 1583281, at *7-9.

---

[3] The State's expert agrees that most of Fleet Farm's sales to Elwood and Horton were not wrongful. ECF Doc. 200 at 7-8, 28-29; ECF Doc. 205-4 at 124-31; ECF Doc. 229 at 13-14.

- 5 -

Dated:  June 13, 2025	Respectfully submitted,

        */s/ Andrew W. Davis*
        Todd A. Noteboom (#0240047)
        Andrew W. Davis (#0386634)
        Andrew P. Leiendecker (#0399107)
        Zachary J. Wright (#0402945)
        STINSON LLP
        50 South Sixth Street, Suite 2600
        Minneapolis, MN 55402
        (612) 335-1500
        todd.noteboom@stinson.com
        andrew.davis@stinson.com
        andrew.leiendecker@stinson.com
        zachary.wright@stinson.com

        ***Attorneys for Defendants***