UNITED STATES DISTRICT COURT
District of Minnesota

State of Minnesota

Petitioner,

v.

Fleet Farm LLC, Fleet Farm Group LLC, Fleet Farm Wholesale Supply Co. LLC,

Defendants.

JUDGMENT IN A CIVIL CASE

Case Number: 22-cv-02694-JRT-JFD

☐ **Jury Verdict**.  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court**.  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED THAT:

WHEREAS, this Consent Judgment is entered into between the State of Minnesota, by its Attorney General, Keith Ellison ("Attorney General"), and Defendants Fleet Farm LLC, Fleet Farm Group LLC, and Fleet Farm Wholesale Supply Co. LLC (collectively, "Fleet Farm");

WHEREAS, the Attorney General filed a Complaint against Fleet Farm in Hennepin County District Court on October 5, 2022, alleging that Fleet Farm was liable for negligence, negligence per se, negligent entrustment, aiding and abetting, and public nuisance;

WHEREAS, Fleet Farm removed the case to the United States District Court for the District of Minnesota on October 26, 2022;

WHEREAS, the Attorney General filed an Amended Complaint against Fleet Farm on March 5, 2024, which added a claim for violations of the Minnesota Gun Control Act, Minn. Stat. § 624.7132 ("MNGCA"), based on the Court's grant of the Attorney General's Motion

for Leave to Amend;

WHEREAS, on October 1, 2025, the Court granted in part and denied in part Fleet Farm's motion for summary judgment, dismissing the Attorney General's aiding-and-abetting and negligent-entrustment claims and partially dismissing the Attorney General's claimed violations of the MNGCA, while preserving the remainder of the Attorney General's claims for trial;

WHEREAS, on October 1, 2025, the Court granted the Attorney General's motion for summary judgment on nine of Fleet Farm's affirmative defenses;

WHEREAS, at all relevant times, Fleet Farm has had and continues to have policies, procedures, and trainings related to firearm sales, including on how to monitor for and prevent possible straw purchases;

WHEREAS, before this lawsuit was filed, Fleet Farm had already implemented a corporate-level system for monitoring and evaluating multiple gun purchases across its stores, and Fleet Farm has agreed to further develop this system per the terms of this Consent Judgment;

WHEREAS, the Attorney General and Fleet Farm desire to fully resolve this matter by entering into this Consent Judgment;

NOW THEREFORE, the Parties hereby agree to entry of an order with the following terms and conditions:

**DEFINITIONS**

For purposes of this Consent Judgment, the following definitions apply:

1. "Warning signs of potential straw purchasing" includes the following behavior by a potential firearm purchaser:

    a. multiple purchases of the same or similar firearm, including the same or similar caliber;

    b. purchases requiring a Multiple Handgun report to the ATF (Form 3310.4);

    c. history of purchase(s) requiring a Multiple Handgun report to the ATF (Form 3310.4);

    d. using multiple Fleet Farm retail locations to acquire multiple firearms within a seven-day period;

    e. being accompanied by other individuals who act in a manner that suggests the other individual may be the actual buyer;

    f. using a cell phone to communicate with a third party regarding the transaction in a manner that suggests the third party may be the actual buyer;

    g. giving suspicious or evasive responses to questions posed by a salesperson;

    h. using cash to purchase the firearms in a manner that suggests a third party may be the actual buyer, such as by witnessing an exchange of cash between a third party and the prospective purchaser; and

    i. having past firearms purchase(s) subject to a trace request by the ATF or other law enforcement entity where the time to crime is three years or less.

2. "Firearms Compliance Employee" means any employee in Fleet Farm's corporate-level firearms compliance department.

**INJUNCTIVE RELIEF**

3. Fleet Farm, including its principals, officers, directors, employees, agents, independent contractors, affiliates, subsidiaries, successors, and those acting in concert or participation

with Fleet Farm who receive actual notice of this Order, shall comply with the following terms and provisions:

a. *Straw Purchasing Policies and Procedures*. Fleet Farm must continue its routine practice of updating and maintaining straw purchasing policies and procedures, including by specifically incorporating, at minimum, the terms in paragraphs 3.b–3.i of this Consent Judgment.

b. *Onboarding Training*. Fleet Farm must continue to provide onboarding training for new employees who sell firearms about detecting and preventing straw purchasing. This training must be interactive (including hands-on activities, practice scenarios, and question-and-answer discussions) and conducted by Firearms Compliance Employees, and will continue to include trainings on: (a) warning signs of potential straw purchasing; (b) how to effectively engage in discussions with potential purchasers in order to assess whether a customer exhibits warning signs of potential straw purchasing, including asking questions; (c) being alert during the transaction, including how and when to observe a prospective firearm buyer during the transaction for warning signs of potential straw purchasing; (d) contacting management if warning signs of a potential straw purchase have been observed; and (e) the complete authority that employees have to stop a sale if they suspect a straw purchase.

c. *Continuing Training*. Fleet Farm must continue to provide ongoing, regular, and interactive corporate-level training about detecting and preventing straw purchasing. Such training must be mandatory for all employees at Fleet Farm's Minnesota stores whose job duties include selling firearms, and include, at minimum, the topics referenced in paragraph 3.b of this Consent Judgment.

d. *Compliance Duties*. Fleet Farm must continue to update, maintain, and provide corporate-level training on detecting and preventing straw purchasing; promptly respond to employee reports of suspected straw purchasing; monitor Fleet Farm firearm sales practices for

compliance with straw purchasing training, policies, and procedures; and conduct regular, unannounced compliance checks at Fleet Farm's Minnesota locations through a program to test whether employees are identifying and acting on the warning signs of potential straw purchasing consistent with Fleet Farm's corporate-level training. For the avoidance of doubt, Fleet Farm will not submit background check information to the National Instant Criminal Background Check System or actually transfer firearms in the course of conducting such unannounced compliance checks.

e. *Software*. Fleet Farm must obtain and implement software, to the extent commercially and reasonably available from a third party, that tracks and displays a prospective buyer's firearm purchase history from Fleet Farm stores in Minnesota to Fleet Farm employees at the point of sale, including: (i) the make and model of previously purchased firearm(s); (ii) firearm-related alerts about prior sales requiring 3310.4 forms, any straw purchase alerts, and any other Be-On-the-Lookout ("BOLO") alerts for a prospective buyer; (iii) all prior firearm purchases by the prospective buyer from Fleet Farm stores; and (iv) prior purchases by the prospective buyer for firearms of the same caliber as the firearm(s) currently being purchased (for example, if the current purchase involves a 9mm handgun, any prior purchases of a 9mm handgun will be flagged). The software will track and display this information for firearms purchased after the software is fully implemented. Fleet Farm will continue to train its employees who sell firearms on how to use this software to review and assess customer purchasing patterns, and to assess warnings signs of a potential straw purchase.

f. *Heightened Screening*. Fleet Farm shall instruct its employees who sell firearms that if a prospective firearm buyer displays one or more warning signs of potential straw purchasing that are identified by an employee before making a sale, they must conduct a heightened screening of that prospective firearm buyer before completing a sale. This heightened

screening requires: (i) the salesperson to ask questions to assuage themselves of any concern that the prospective firearm buyer may be straw purchasing, and (2) the salesperson obtaining, at minimum, review and approval by a Firearms Compliance Employee before completing the sale, in addition to any other approvals required under Fleet Farm policy for all firearm sales.

g. *Discipline*. Fleet Farm must update employee discipline policies to reflect the injunctive terms in this Consent Judgment. Fleet Farm will expressly include failing to follow Fleet Farm's updated policies and training on detecting straw purchasing as a "critical error" by an employee, subject to the same discipline as other "critical errors" reflected in Fleet Farm policy.

h. *Trace Requests.* For all trace requests received by Fleet Farm from the ATF where the time from retail sale to trace is three years or less, Fleet Farm shall maintain a list of all such trace requests, including; (a) the date of the trace request; (b) the Fleet Farm store at which the firearm was sold; (c) the firearm serial number; (d) the date of the retail sale; (e) the time between the retail sale and the receipt of the trace request; (f) whether the trace request was a "standard" or "urgent" trace request; and (g) whether a "deny alert" has been entered into the Fleet Farm deny sale database (together, the "Trace Request List"). Fleet Farm shall ensure that its alert system notifies clerks at the point-of-sale if a prospective customer's name appears on the Trace Request List, and any sales to that prospective customer shall be subject to the Heightened Screening procedure described in paragraph 3.f above.

i. *Educational Straw Purchasing Materials*. Fleet Farm must continue to display Don't Lie for the Other Guy or any subsequent ATF training materials about straw purchasing designed for use and display in retail stores in its Minnesota stores.

4. One year after the Court's entry of an Order approving this Consent Judgment, Fleet

Farm must provide the Attorney General with a sworn declaration detailing how Fleet Farm has updated its policies, training, and software (including the name and functionality of the software) in accordance with the injunctive relief provided in paragraphs 3.a–3.i. This report will be treated by the Attorney General as not public data under the Minnesota Government Data Practices Act, Minnesota Statutes Chapter 13.

    5. *Treatment of Certain Confidential Documents*.

        a. The Parties agree to the unsealing of all documents (briefing and exhibits) they previously filed under seal in the above-captioned case, including unredacted versions of documents that were previously publicly filed with redactions, with the exception of: (1) the following documents shall remain under seal: ECF Doc. 203 (Exhibits 1, 3–19); and (2) the following documents may be filed publicly only after completion of the redaction process described in paragraph 5.c below: ECF Doc. 148 (Exhibits A and B), ECF Doc. 203 (Exhibit 2), and ECF Doc. 222 (Exhibits 2, 14). Other than the excepted documents detailed above, these documents will be unsealed and available on the public docket within sixty (60) days of the entry of an order approving this Consent Judgment by the Court.

        b. The Parties further agree that the Attorney General may publicly file into this case unredacted copies of all deposition transcripts and expert reports, including all exhibits, for depositions taken and experts disclosed in the above-captioned case, except: (1) Exhibits 8 (Bisbee deposition), 108, and 110 shall not be publicly filed; and (2) Exhibits 3 (McKown deposition), 7 (Bisbee deposition), 35, 74, 81, 82, 90, 91, 92, 102, 113, 119, 121, 123, 132, 145, 149, 150, 159, 161, 162, 164, 169,

175, 176, 177, 181, 188, and 212 shall only be publicly filed after completion of the redaction process describe in paragraph 3.c below.

c. For the documents described in paragraph 5.a and 5.b above that require the redaction of personally identifying information (including, but not limited to, a Fleet Farm customer's name, address, birthdate, or other personal information) and information otherwise protected by law, Fleet Farm has thirty (30) days following the entry of an order approving this Consent Judgment by the Court to propose any such redaction(s). The Attorney General shall review Fleet Farm's proposed redactions within fourteen (14) days of receiving them, including a review of whether Fleet Farm employee names that Fleet Farm has redacted should be replaced by anonymized unique identifiers to allow for cross-referencing of documents. If the parties cannot resolve a dispute regarding certain redactions, they may bring the dispute to the Court for resolution.

d. The Parties agree that upon completion of the redaction process described in paragraph 5.c above, the above-described documents are no longer designated as confidential under the Protective Order (ECF Doc. 49), and may be made available to the public by the Attorney General. All other documents designated as confidential in this matter retain their designation and will be handled in accordance with the Protective Order.

e. Notwithstanding the foregoing, the Parties hereby acknowledge and agree that no information containing the names, addresses, or other identifying information of Fleet Farm customers shall be made public,

and shall remain confidential; and further, that no information containing names, addresses, or other identifying information of Fleet Farm current or former employees, other than employees who were deposed in this case or were identified in the parties' Rule 26 disclosures, shall be made public but shall remain confidential, except to the extent that such information may already exist in public documents filed in the case.

6. Fleet Farm shall fulfill the terms of this Consent Judgment and Order, and all of Fleet Farm's parents, subsidiaries, successors, officers, employees, agents, independent contractors, affiliates, and those acting in concert or participation with Fleet Farm, who are reasonably expected to be involved in the implementation or compliance with the requirements of this Order shall be bound by this Order so as to accomplish the full relief contemplated by this Order. Fleet Farm shall not affect any change in its form of doing business, organizational identity, organizational structure, affiliations, ownership, or management composition as a method or means of attempting to avoid the requirements of this Order.

**MONETARY RELIEF**

7. Within ninety (90) days of the Court's entry of an Order approving this Consent Judgment, Fleet Farm shall pay the Attorney General $1,000,000 ("Settlement Sum"). The Settlement Sum payment shall be made by wire transfer pursuant to the wire-transfer instructions provided by the Attorney General's Office. The Settlement Sum will be used for any lawful purpose in accordance with Minn. Stat. §§ 8.31 and 8.37, including payment of legal fees and expenses.

**RELEASE**

8. In consideration of the stipulated relief, and contingent upon the Court's entry of the Consent Judgment and Order, the Attorney General and Fleet Farm, by execution of this

Consent Judgment, hereby fully and completely release the other Parties, and any of either's owners, affiliates, and employees, of all claims, causes of action, penalties, fines, damages, and fees raised by the Parties connected with or arising out of the allegations in the Amended Complaint, up to and including the date of October 5, 2022. The Parties expressly acknowledge that this Consent Judgment resolves any Party's claim or potential claim arising from the allegations in the Amended Complaint.

9. Notwithstanding the release given in paragraph 8 of this Agreement, or any other term of this Agreement, the following claims and rights are specifically reserved and are not released:

   a. Any private causes of action, claims, and remedies by persons other than the State and Fleet Farm, including, but not limited to, private causes of action, claims, or remedies provided for under Minn. Stat. § 8.31, against any person or entity, including Fleet Farm;

   b. Any criminal liability;

   c. Any liability arising under Minnesota statutes, laws, or regulations regarding taxation;

   d. Any liability arising under federal or state securities or antitrust codes, laws, or regulations;

   e. Any liability arising under state environmental codes, laws, or regulations;

   f. Any administrative liability, action, enforcement right, or remedy by entities other than the Office of the Minnesota Attorney General acting in its enforcement capacity and not otherwise covered by the release in paragraph 8;

    g. Any liability to the State of Minnesota (or its agencies) for any conduct not covered by the release in paragraph 8; and

    h. Any liability based upon obligations created by this Consent Judgment.

**ENFORCEMENT**

10. This Court retains jurisdiction of this matter for purposes of enforcing this Consent Judgment. The parties may make application as appropriate to enforce or interpret the provisions of this Consent Judgment or to resolve any disputes that arise under this Consent Judgment. The Attorney General reserves the right to maintain any action within his legal authority for such other and further relief as the Attorney General determines is proper and necessary for the enforcement of this Consent Judgment.

11. In any application, motion, or other action brought by the Attorney General to enforce the terms of this Consent Judgment, the Court has authority to award equitable relief.

**GENERAL TERMS**

12. This Consent Judgment is not an admission of liability by Fleet Farm. Fleet Farm continues to deny the Attorney General's allegations.

13. This Consent Judgment constitutes the full and complete terms of the agreement entered into by Fleet Farm and the Attorney General.

14. Nothing in this Consent Judgment relieves Fleet Farm of its obligation to comply with all applicable Minnesota and federal laws and regulations.

15. Nothing in this Consent Judgment shall be construed to limit the power or authority of the State of Minnesota or the Attorney General except as expressly set forth herein.

16. Service of notices required by this Consent Judgment shall be served on the following persons, or any person subsequently designated by the parties to receive such notices:

**For the State of Minnesota:**

Katherine Moerke Assistant Attorney General

Office of the Minnesota Attorney General 445 Minnesota Street, Suite 600

St. Paul, Minnesota 55101 katherine.moerke@ag.state.mn.us

**For Fleet Farm:**

Todd Noteboom Stinson LLP

50 South Sixth Street, Suite 2600

Minneapolis, MN 55402 todd.noteboom@stinson.com

Frank Steeves

Executive Vice President & General Counsel Fleet Farm Group LLC

2401 S. Memorial Dr. Appleton, WI 54915 frank.steeves@fleetfarm.com

If mail or email is returned or indicated as undeliverable, notice on the Attorney General shall be made to the Manager or Deputy of the Attorney General's Office's Consumer Protection Division, or any successor division that is responsible for civil enforcement of consumer protection laws.

17. The failure of a party to exercise any rights under this Consent Judgment shall not be deemed to be a waiver of any right or any future rights.

18. This Consent Judgment, including any issues relating to interpretation or enforcement, shall be governed by the laws of the State of Minnesota.

19. Each of the parties is represented by counsel, participated in the drafting of this Consent Judgment, and agrees that the Consent Judgment's terms may not be construed against or in favor of any of the parties by virtue of draftsmanship. This Consent Judgment may be executed in counterparts, each of which constitutes an original, and all of which shall constitute one and the same agreement. This Consent Judgment may be executed by facsimile or electronic copy in any image format.

20. The undersigned counsel represent and warrant that they are fully authorized to execute this Consent Judgment on behalf of the persons and entities indicated below.

21. The person signing this Consent Judgment for each Fleet Farm defendant warrants that they have received all necessary authorizations to execute this Consent Judgment, that each Fleet Farm defendant has been fully advised by its counsel before entering into the Consent Judgment, and that he or she executes this Consent Judgment in an official capacity that binds each Fleet Farm defendant.

22. Each party shall perform such further acts and execute and deliver such further documents as may reasonably be necessary to carry out this Consent Judgment.

23. Fleet Farm must cooperate with the Attorney General and provide all pertinent information needed for the Attorney General to timely complete an IRS Form 1098-F, including relevant Tax Identification Numbers and/or Employer Identification Numbers.

24. The Parties agree that this Consent Judgment shall not constitute an admission of any violation of law and is not intended to be used against any Party in any other civil action or legal proceeding, apart from an action by the Attorney General or Fleet Farm to enforce the terms of this Consent Judgment.

25. Nothing in this Consent Judgment shall impact or modify Fleet Farm's rights and obligations under federal and Minnesota law. The Parties agree that to the extent a conflict exists, or comes into existence, between this Consent Judgment and the requirements of federal law or Minnesota law, such that Fleet Farm cannot comply with this Consent Judgment without violating these requirements, Fleet Farm shall document such conflicts and promptly notify the Attorney General that Fleet Farm intends to comply with the federal or Minnesota requirements to the extent necessary to eliminate the conflict, and the Attorney General may move the Court to review whether the conflict asserted by Fleet Farm actually renders

Fleet Farm unable to comply with this Consent Judgment without violating the requirements of federal or Minnesota law ("Documentation and Notice Procedure"). If Fleet Farm complies with this Documentation and Notice Procedure, it shall not be a breach of this Consent Judgment for Fleet Farm to follow or implement the federal or Minnesota law rather than the terms of this Consent Judgment. This Documentation and Notice Procedure shall apply for five (5) years following entry of the Consent Judgment.

26. The Parties consent to entry of the foregoing Consent Judgment, which will constitute a final judgment. The judgment will take effect immediately upon entry by the clerk of this Court.

Date: 3/16/2026                                                                KATE M. FOGARTY, CLERK